Joseph J. Tabacco, Jr. (75484)
jtabacco@bermanesq.com
Christopher Heffelfinger (118058)
cheffelfinger@bermanesq.com
James C. Magid (233043)
jmagid@bermanesq.com
**BERMAN DEVALERIO PEASE TABACCO
  BURT & PUCILLO**
425 California Street, Suite 2100
San Francisco, CA  94104
Telephone: 415.433.3200
Facsimile:  415.433.6382

[Additional Counsel on Signature Page]

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NORTHSTAR FINANCIAL ADVISORS, INC., on Behalf of Itself and all Others Similarly Situated,<br><br>                              Plaintiff,<br><br>      v.<br><br>SCHWAB INVESTMENTS, CHARLES SCHWAB & CO., INC., CHARLES SCHWAB INVESTMENT MANAGEMENT, INC., and SCHWAB TOTAL BOND MARKET FUND,<br>                              Defendants. | Case No. C-08-4119 SI<br><br>CLASS ACTION<br><br>**NOTICE OF ERRATA TO THE COMPLAINT FOR VIOLATION OF THE INVESTMENT COMPANY ACT OF 1940**<br><br>JURY TRIAL DEMANDED |

1    Plaintiff Northstar Financial Advisors, Inc., respectfully submits this notice of errata to the

2  Complaint for Violation of the Investment Company Act of 1940, previously filed on August 28,

3  2008.

4                                    **ERRATA**

5    Please take notice that plaintiff hereby corrects the Complaint for Violation of the

6  Investment Company Act of 1940 to correct the reference to "$35 million" in paragraph 16 on page

7  3 to "$3.5 million."  Attached hereto as Exhibit A is the Corrected Complaint for Violation of the

8  Investment Company Act of 1940.

9

10  Dated:  September 3, 2008                By:

                                                 CHRISTOPHER T. HEFFELFINGER

11

12                                          Joseph J. Tabacco, Jr
                                            James C. Magid
                                            **BERMAN DEVALERIO PEASE TABACCO**
13                                          **  BURT & PUCILLO**
                                            425 California Street, Suite 2100
14                                          San Francisco, CA  94104
                                            Telephone: 415.433.3200
15                                          Facsimile:  415.433.6382

16                                          **Attorneys for Plaintiff**

17  Of Counsel:

18  Robert C. Finkel (RF2373)
    WOLF POPPER LLP
19  845 Third Avenue
    New York, NY  10022
20  Telephone:  212.759.4600
    Facsimile:  212.486.2093
21
    Marc J. Gross
22  GREENBAUM ROWE SMITH
      & DAVIS LLP
23  75 Livingston Street, Suite 301
    Roseland, NJ  07068
24  Telephone:  973.535.1600
    Facsimile:  973.535.1698
25

26

27

28

[C-08-4119 SI] NOTICE OF ERRATA TO THE COMPLAINT FOR VIOLATION OF THE
INVESTMENT COMPANY ACT OF 1940

                                                                          1

**EXHIBIT A**

Joseph J. Tabacco, Jr. (75484)
jtabacco@bermanesq.com
Christopher Heffelfinger (118058)
cheffelfinger@bermanesq.com
James C. Magid (233043)
jmagid@bermanesq.com
**BERMAN DEVALERIO PEASE TABACCO**
  **BURT & PUCILLO**
425 California Street, Suite 2100
San Francisco, CA  94104
Telephone: 415.433.3200
Facsimile:  415.433.6382

[Additional Counsel on Signature Page]

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NORTHSTAR FINANCIAL ADVISORS, INC., on Behalf of Itself and all Others Similarly Situated, | Case No. C-08-4119 SI |
| | CLASS ACTION |
| Plaintiff, | **CORRECTED COMPLAINT FOR VIOLATION OF THE INVESTMENT COMPANY ACT OF 1940** |
| v. | |
| SCHWAB INVESTMENTS, CHARLES SCHWAB & CO., INC., CHARLES SCHWAB INVESTMENT MANAGEMENT, INC., and SCHWAB TOTAL BOND MARKET FUND, | **JURY TRIAL DEMANDED** |
| Defendants. | |

CORRECTED COMPLAINT FOR VIOLATION OF THE INVESTMENT COMPANY ACT OF 1940

Plaintiff, for its Class Action Complaint, alleges the following upon personal knowledge as to itself and its own acts, and as to all other matters upon information and belief, based upon the investigation made by its attorneys, which included a review of Securities and Exchange Commission ("SEC") filings, news reports and other publicly available materials.

## NATURE OF THE ACTION

1.     This action is brought on behalf of persons who owned shares of the Schwab Total Bond Market Fund (the "Fund") (Ticker: SWLBX) at any time from August 31, 2007 to the present, and were damaged thereby.

2.     The action is brought against the Fund, and affiliated entities, for deviating from the Fund's fundamental investment objective to track the Lehman Brothers U.S. Aggregate Bond Index (the "Index") (Ticker: LBUSTRUU).  Section 8 of the Investment Company Act of 1940 (the "ICA") directs an investment company to recite in its Registration Statement "all investment policies of the registrant . . ., which are changeable only if authorized by shareholder vote," as well as all policies that "the registrant deems matters of fundamental policy." 15 U.S.C. § 80a-8(b) (2) & (3).  Section 13 prohibits a registered investment company from deviating from any such policies "unless authorized by the vote of a majority of its outstanding voting securities." 15 U.S.C. § 80a-13.

3.     The Fund deviated from its stated investment objective by investing in high risk non-U.S. agency collateralized mortgage obligations ("CMOs").  The non-U.S. agency CMOs were not part of the Lehman Index and were substantially more risky than the U.S. agency securities and other instruments that comprised the Index.

4.     The Fund also deviated from its stated fundamental investment objective by investing more than 25% of its total assets in U.S. agency and non-agency mortgage-backed securities and CMOs.   The Fund's investment objectives prohibited any concentration of investments greater than 25% in any industry (other than if necessary to track the Index).

5.     Defendants' deviation from the Fund's investment objective exposed the Fund and its shareholders to tens of millions of dollars in losses stemming from a sustained decline in the

value of non-agency mortgage-backed securities. The Fund's deviation from its stated investment objective caused it to incur a negative total return of 1.09% for the period September 4, 2007 through August 27, 2008, compared to a positive return of 5.92% for the Index over that period.

## JURISDICTION AND VENUE

6.    This Court has jurisdiction over the subject matter of this action under § 44 of the Investment Company Act of 1940 (15 U.S.C. § 80a-43), 28 U.S.C. §§ 1331, 1332(d)(2), and 1367. The plaintiff is diverse from one of the defendants and the amount in controversy exceeds $5 million.

7.    Venue is properly laid in this District under 15 U.S.C. § 80a-43, and 28 U.S.C. § 1391(b). Many of the acts giving rise to the violations of law complained of herein, including the dissemination to shareholders of the Registration Statements, Proxy Statements, and Prospectuses, referenced herein occurred in this District.

## PARTIES

8.    Plaintiff Northstar Financial Advisors, Inc. ("Northstar") is a New Jersey corporation with offices at 46 Beachmont Terrace, North Caldwell, NJ 07006.

9.    Northstar is a registered investment advisory and financial planning firm serving both institutional and individual clients. Northstar manages both discretionary and non-discretionary accounts on behalf of investors in its role as an investment advisor.

10.    With respect to its discretionary accounts, which form the vast majority of its assets under management, Northstar retains discretion over investment decisions.

11.    Northstar trades through Charles Schwab's Institutional Advisor Platform.

12.    Northstar, in purchasing and/or selling shares in the Fund, relied on Charles Schwab & Co., Inc.'s representations as to the Fund's investment objectives. Northstar operates under a fee-based structure based on the total value of assets under management.

13.    On or about August 31, 2007, Northstar had 239,290.193 shares of the Fund under its management.

CORRECTED COMPLAINT FOR VIOLATION OF THE INVESTMENT COMPANY ACT OF 1940                                                                                     2

14.    Defendant Schwab Investments (the "Trust") has its headquarters at 101 Montgomery Street, San Francisco, CA   94104.   Schwab Investments is an investment trust organized under Massachusetts law.   The Trust consists of a series of mutual funds, including the Fund.   The Trust is managed by a Board of Trustees.   The Trust and the Board of Trustees are responsible for filing with the SEC and disseminating to investors documents regarding the Fund. The Trust and the Board of Trustees are also responsible for the Fund's compliance with its stated investment objectives.

15.    Charles Schwab & Co. Inc. ("Schwab" or "Underwriter") is headquartered at 101 Montgomery Street, San Francisco, CA 94104.   Schwab was at all relevant times the principal underwriter for shares of the Fund.   Schwab is responsible for conducting due diligence with respect to the accuracy of representations in Registration Statements and Prospectuses filed with the SEC and mailed to investors with respect to the Fund.   Schwab is the Trust's agent for the purpose of the continuous offering of the Fund's shares.   Schwab is organized under Massachusetts law.

16.    Defendant Charles Schwab Investment Management, Inc. ("Investment Advisor" or "Schwab Management") has its headquarters at 101 Montgomery Street, San Francisco, CA 94104. Schwab Management is the investment advisor to the Fund.   As the Investment Advisor, Schwab Management receives a management fee from the Fund.   The Investment Advisor's management fee is 0.25% of the Fund's net assets, or approximately $3.5 million per year.   In addition the Fund incurs .28% of net assets in other expenses, for a total annual operating expense of .53%.   The Investment Advisor is responsible for adhering to the Fund's stated investment objective.   The Investment Advisor is organized under Massachusetts law.

17.    Defendant Schwab Total Bond Market Fund is a series of Schwab Investments.   The Fund is a member of the Charles Schwab Family of Funds and is a Massachusetts business trust registered under the ICA.   The Fund is advised by the Investment Advisor and employs Schwab as principal underwriter, transfer agent and shareholder services agent.

CORRECTED COMPLAINT FOR VIOLATION OF THE INVESTMENT COMPANY ACT OF 1940                                                                                                          3

18.    Each of the Underwriter, the Trust, the Investment Advisor, and the Fund is under the common control of The Charles Schwab Corp., a publicly traded corporation.

## CLASS ACTION ALLEGATIONS

19.    Plaintiff brings this action as a class action pursuant to Federal Rules of Civil Procedure 23(a) and (b)(3) on behalf of a class consisting of all person or entities who owned shares of the Fund at any time from August 31, 2007 to the present, and suffered damages as a result therefore.  Excluded from the Class are the defendants herein, any subsidiaries or affiliates of the defendants, officers and directors of any of the defendants, heirs, successors and assigns of any of the defendants or their officers and directors, and any entity in which any defendant has a controlling or substantial interest.

20.    The members of the Class are so numerous that joinder of all members is impracticable.  While the exact number of members of the Class is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, the Fund had over $1.5 billion in assets as of August 31, 2007, and 150 million shares outstanding.  Plaintiff thereby concludes that there are thousands of members located throughout the United States in the proposed Class.  Record owners and other members of the Class may be identified from records maintained by the Registrant or its transfer agent and may be notified of the pendency of this action by mail.

21.    Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal and state laws that is complained of herein.

22.    Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class litigation.

23.    Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the Class are:

(a)    Whether the Fund deviated from an investment objective that could only be changed by a shareholder vote;

CORRECTED COMPLAINT FOR VIOLATION OF THE INVESTMENT COMPANY ACT OF 1940                                                                                                            4

(b)     Whether the Fund was obligated to track the Lehman Brothers U.S. Aggregate Bond Index using an indexing strategy;

(c)     Whether the Fund's investments tracked the Lehman Brothers U.S. Aggregate Bond Index using an indexing strategy;

(d)     Whether the Fund concentrated investments of in excess of 25% of its total assets in any one industry;

(e)     Whether non-agency mortgage-backed securities comprise one or more than one "industry."

(f)     Whether agency and non-agency mortgage-backed securities comprise one or more than one "industry."

(g)     Whether the Fund's acts as alleged herein violated the ICA;

(h)     Whether the non-Fund defendants caused the Funds to violate the ICA;

(i)     Whether the members of the Class have sustained damages, and, if so, what is the proper measure thereof.

24.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  As the damages suffered by any individual Class member may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to redress individually the wrongs done to them.  There will be no difficulty in managing this action as a class action.

**SUBSTANTIVE ALLEGATIONS**
**Background and History Prior to the 1997 Shareholder Vote**

25.     The Schwab Total Bond Market Fund (SWLBX) was initiated on March 5, 1993 under a predecessor name – the Schwab Long-Term Government Bond Fund (the "Government Bond Fund") -- as an actively managed bond fund.

26.     According to the Prospectus for the Government Bond Fund dated December 30, 1994, as amended June 30, 1995, the "investment objective" of the Government Bond Fund was "to provide a high level of current income consistent with preservation of capital by investing

CORRECTED COMPLAINT FOR VIOLATION OF THE INVESTMENT COMPANY ACT
OF 1940                                                                                                          5

primarily in securities issued or guaranteed by the United States Government, its agencies or instrumentalities and repurchase agreements covering those securities."

27.     The June 30, 1995 Prospectus also stated that "[the] Fund's investment objective … is fundamental and cannot be changed without approval by holders of a majority of the Fund's outstanding voting shares."

28.     The Prospectus added that "U.S. Government Securities are generally viewed by the Investment Manager as being among the safest of debt securities with respect to the timely payment of principal and interest…."

29.     Schwab was unable to successfully market the Government Bond Fund.

30.     As of August 31, 1997, after more than four years of operations, the Government Bond Fund only had $24.8 million in investment assets.

**The Formation of the Schwab Total Bond Market Index Fund**

31.     On July 25, 1997, Schwab Investment mailed to investors in the Government Bond Fund a Proxy Statement on SEC Form 14A with respect to a shareholder vote "[t]o amend [the] Fund's fundamental investment objective resulting in changing the Fund from [a] Government bond fund[] to [a] bond index fund[] that would include Government and other fixed income securities" (at 2).

32.     The Proxy Statement (at 14) informed investors that the Board of Trustees of the Fund was proposing to change the Fund's then existing investment objective from attempting "to provide a high level of current income consistent with preservation of capital by investing primarily in securities issued or guaranteed by the U.S. Government" to a "proposed investment objective … to attempt to provide a high level of current income consistent with preservation of capital by seeking to track the investment results of a particular bond index through the use of an indexing strategy."

33.     The Proxy Statement added (at 3) that "[i]f its proposed investment objective is approved, the Total Bond Fund would invest in a portfolio of fixed-income securities that seeks to track the Lehman Brothers Aggregate Bond Index."

CORRECTED COMPLAINT FOR VIOLATION OF THE INVESTMENT COMPANY ACT OF 1940                                                                                                          6

34.     The Lehman Index was described in the Proxy Statement (at 18) as "a broad market-weighted index which encompasses the following classes of investment grade fixed-income securities:     U.S. Treasury and agency securities, corporate bonds, international (dollar-denominated) bonds, agency mortgage-backed securities, and asset-backed securities."

35.     The Lehman Index is a proprietary Lehman Brothers index, consisting of over 9,000 separate instruments whose exact composition is not generally available to investors.     The composition of the Index changes from time-to-time.

36.     The Proxy Statement stated with respect to mortgage-backed securities and asset-backed securities (at 21) that "[t]he primary risk of these securities is 'prepayment risk.' Namely that during periods of changing interest rates, the payment streams in the underlying pools will be paid faster … than anticipated."

37.     The Proxy Statement further described (at 22) the "investment process of indexing" by stating that the Fund "would be unable to hold all of the individual issues which comprise the [Index] because of the large number of securities in the [Index]," but that the "Fund would hold a portfolio of fixed-income securities that is managed to closely approximate [the] Index's 'characteristics' of coupon rate, duration, sector, quality and optionality (or convexity)":

> If the proposed investment objective is approved, the Funds would not be managed according to traditional methods of "active" investment management, which involve the buying and selling of securities based upon economic, financial, and market analyses and investment judgment.  Instead, the Investment Manager would utilize a "passive" or "indexing" investment approach, to attempt to track the investment performance of each Fund's Index through statistical sampling and other procedures. The Funds would be unable to hold all of the individual issues which comprise the Indexes because of the large number of securities in the Indexes.  Each Fund would hold a portfolio of fixed-income securities that is managed to closely approximate its Index's "characteristics" of coupon rate, duration, sector, quality and optionality (or convexity).

38.     The Proxy Statement assured investors (at 22) that "[b]efore purchasing or selling a security, the Investment Manager would analyze each security's characteristics and determine whether purchasing or selling the security would help the Fund's portfolio approximate the characteristics of the Index":

CORRECTED COMPLAINT FOR VIOLATION OF THE INVESTMENT COMPANY ACT
OF 1940                                                                                                  7

Before purchasing or selling a security, the Investment Manager would analyze each security's characteristics and determine whether purchasing or selling the security would help the Fund's portfolio approximate the characteristics of the Index. As a result, when the Fund's portfolio as a whole is considered, the Fund's performance and risk is expected to be similar to its Index's performance and risk.

For example, with respect to the "sector characteristic," if U.S. Treasury and agency securities represent approximately 60% of an Index's interest rate risk, then approximately 60% of the respective Fund's interest rate risk would come from such securities. Similarly, if corporate bonds represent 20% of the Fund's interest rate risk, then they would represent approximately 20% of the Fund's interest rate risk. This technique is expected to enable each Fund to track the coupon income and price movements of its respective Index, while minimizing transaction, custodial and accounting costs.

39.     The 1997 Proxy represented (at 23) that the Investment Manager would seek a 90% correlation between the Fund and the Index:

Over the long term, the Investment Manager will seek a correlation between the performance of each Fund, as measured by its net asset value, including the value of its dividend and capital gain distributions, and that of its Index of 0.9 or better. A correlation of 1.0 would indicate perfect correlation, but since each Fund incurs operating expenses, unlike its respective Index, a perfect correlation is unlikely to be achieved. The Investment Manager will monitor the performance of each Fund versus that of its Index on a regular basis. If a tracking error develops, each Fund is rebalanced to help bring it in line with the Index. In the unlikely event that a correlation of 0.9 or better is not achieved, the Board of Trustees of a Fund will consider alternative arrangements.

40.     The 1997 Proxy described (at 2) Schwab's rationale for proposing that the Fund be changed to a index fund as follows:

Schwab has long been an advocate of indexing as an investment strategy. The Board of Trustees believes the proposed bond index funds will offer customers many benefits through the use of an indexing strategy. These benefits include: broad bond portfolio diversification, a consistent investment style, and potentially lower trading costs as a result of lower portfolio turnover and fewer transactions, over the long term. And, all other things being equal, lower costs can translate into higher returns.

The objective of an index fund, unlike an actively managed fund, is to closely track the total return of a benchmark or index for a particular market, or market sector. Because both proposed Funds plan to invest in a larger number and broader range of bonds, the Funds should provide investors a more broadly diversified bond fund investment for their asset allocation plan. The proposed bond index funds could represent excellent choices for the core component of an investor's bond fund holdings and could fulfill the bond portion of an asset allocation plan, whether that plan calls for a longer-term or short-term bond fund.

In addition, the Board of Trustees believes that the proposed bond index funds should have a broader appeal to a larger number of investors. This would permit the Funds to be marketed more effectively, creating economies of scale if assets grow. These economies could be achieved by spreading the Funds' fixed costs over a larger asset base, which would potentially lower the Funds' operating expenses.

CORRECTED COMPLAINT FOR VIOLATION OF THE INVESTMENT COMPANY ACT OF 1940                                                                                                    8

41.    The Proxy Statement sought to assure investors (at 4) that the change to an indexing strategy would not then increase the risk profile of the Fund because 80% of the Fund's assets would still be invested on a current basis in U.S. government or agency bonds, and given the then current composition of the Index, 15% of the portfolio would be invested in investment grade corporate bonds, 4% in international (dollar-denominated bonds), and 1% in asset-backed securities:

> As shown in the two preceding charts, as of June 30, 1997, both of the proposed index Funds would maintain significant positions in U.S. Treasury and agency, and agency mortgage-backed securities – 85.0% for the Short-Term Bond Market Index Fund and 80.0% for the Total Bond Market Index Fund.

> The non-U.S. Treasury/agency securities represented in both indices are all investment grade and quite diversified. As a result, both index Funds are expected to maintain relatively low levels of credit risk. However, given that U.S. Treasury and agency securities have the lowest credit risk compared to other types of fixed income securities, the portfolio management team anticipates that the proposed Funds would have a slightly higher level of credit risk than the current Funds.

42.    The July 25, 1997 Proxy Statement also proposed a change in the Fund's "fundamental investment policies and investment restrictions" regarding concentration of investments.

43.    Previously, the Fund's fundamental investment policies and investment restrictions barred investments of "25% or more of the value of its total assets … in any industry (excluding investments in U.S. government, agency, or instrumentality securities"):

> Each Fund may not:

> Purchase securities (other than securities issued or guaranteed by the U.S. Government, its agencies or instrumentalities) if, as a result of such purchase, 25% or more of the value of its total assets would be invested in any industry. Securities issued by governments or political subdivisions or authorities of governments are not considered to be securities subject to this industry concentration restriction.

44.    The proposed change incorporated the definition of "concentration" under the Investment Company Act of 1940, and gave the Fund discretion to concentrate investments of greater than 25% of total assets in any industry if necessary to track the Lehman Index:

> Each Fund may not concentrate investments in a particular industry or group of industries, or within one state (except with respect to the Total Bond Market Index Fund and the Short Term Bond Market Index Fund, to the extent that the index which

CORRECTED COMPLAINT FOR VIOLATION OF THE INVESTMENT COMPANY ACT OF 1940                                                                9

each Fund seeks to track is also so concentrated) as concentration is defined under the Investment Company Act of 1940 or the rules or regulations thereunder, as such statute, rules or regulations may be amended from time to time.

45.     The rationale of the proposed change, according to the Proxy Statement, was to incorporate the SEC's interpretation of the term "concentration" from the Investment Company Act of 1940 (which at the time was and remains 25%) to give the Fund greater flexibility in the event of future changes in interpretation:

> The current self-designated restriction specifically limits a Fund's investments to less than 25% of a Fund's total assets in a particular industry. Under the Proposal, this current self-designated restriction will be eliminated and replaced by a more flexible proposed restriction. The proposed restriction would continue to prevent each Fund from "concentrating" its investments in a single industry or in a state, except if the Index that the Fund tracks is "concentrated" in a particular industry or state. Further, to provide flexibility, the concept of "concentration" in a Fund's proposed restriction is articulated so as to always track the current meaning of "concentration" under the 1940 Act.

> At present, "concentration" is interpreted under the 1940 Act in a manner consistent with each Fund's current self-designated restriction (25% or more). However, in order to achieve greater flexibility (if for instance the percentage limitation were to be changed by the SEC), the proposed restriction would eliminate the specific percentage reference and instead define the term "concentration" with respect to the meaning conferred under the 1940 Act. Because the present interpretation of the percentage limit of "concentration" under the 1940 Act is the same as the current concentration restriction, it is not expected that there would be any immediate impact on a Fund's operations as a result of approving this aspect of the proposed concentration restriction. Any future change in operations would occur only if the SEC staff changed its interpretation of what constitutes "concentration."

46.     There has been no subsequent change in the SEC's interpretation of what constitutes "concentration."

47.     On September 25, 1997, Schwab Investments reported that the shareholders of the Schwab Government Fund had approved the amendment to the Fund's "fundamental investment objective … to allow [the] Fund to pursue an indexing strategy":

> As a result of the amendment referenced in Item No. 1 above, as of November 1, 1997, the name of the Schwab Short/Intermediate Government Bond Fund will be changed to the Schwab Short-Term Bond Market Index Fund, and the name of the Schwab Long-Term Government Bond Fund will be changed to the Schwab Total Bond Market Index Fund. As a result of the shareholder vote, each Fund's fundamental investment objective is amended to allow each Fund to pursue an indexing strategy. The Schwab Short-Term Bond Market Index Fund will seek to track the Lehman Brothers Short (1-5) Government/Corporate Index and the Schwab Total Bond Market Index Fund will seek to track the Lehman Brothers Aggregate

CORRECTED COMPLAINT FOR VIOLATION OF THE INVESTMENT COMPANY ACT OF 1940                                                                                          10

Bond Index.  Each index is market-weighted and designed to track the performance of broad segments of the bond market.

48.    Schwab Investments further reported that shareholders approved the change in the Fund's fundamental investment policies and restrictions with respect to the concentration of investments.

49.    The Registration Statement and Prospectus dated January 15, 1998 for the Total Bond Fund and the Schwab Short-Term Total Bond Market Index Fund (at page 10), issued after the 1997 shareholder vote, reiterated the Fund's investment objective to track a bond index:

INVESTMENT OBJECTIVES:

Each Fund's investment objective is to attempt to provide a high level of current income consistent with preservation of capital by seeking to track the investment results of a particular bond index through the use of an indexing strategy.

Each Fund's investment objective is fundamental, which means that it may be changed only by vote of a majority of a Fund's shareholders.

50.    The Prospectus further stated (at 10) that the Lehman Brothers Aggregate Bond Index was the index against which the Total Bond Fund would be tracked:

THE INDEXES are the Lehman Brothers Mutual Fund Short (1-5)

Government/Corporate Index (the Short-Term Index) for the Short Bond Fund and the Lehman Brothers Aggregate Bond Index (the Aggregate Bond Index) for the Total Bond Fund.

51.    The same representation as to the Fund's investment objective was contained in subsequent Prospectuses for the Fund, as well as in Statements of Additional Information incorporated by reference into the Prospectuses.

52.    A Statement of Additional Information contains a more comprehensive discussion of material facts than is contained in a Prospectus.

53.    The Fund's conversion to an indexing strategy was a success, as net assets increased from $24 million as of August 31, 1997 to $1.5 billion as of August 31, 2007.

54.    Schwab Investments, in the August 31, 1998 Reports to shareholders emphasized the conservative nature of the Fund's indexed securities:

Schwab's Bond Index Funds seek to track the total returns of broadly diversified bond indices.  And because index funds generally result in lower portfolio turnover

CORRECTED COMPLAINT FOR VIOLATION OF THE INVESTMENT COMPANY ACT OF 1940                                                                                             11

and fewer transactions—and therefore lower trading costs—you could potentially realize higher returns.

In addition to some of the same benefits of equity index funds, including broad diversification, lower expenses, consistent investment style and straightforward choices, bond index funds can also provide the added benefit of high credit-quality investments. Schwab's Bond Index Funds are designed to maintain high credit-quality standards because the indices they seek to track primarily comprise U.S. Treasuries, government agency securities and government agency mortgage-backed securities; the remaining bonds in the indices are investment-grade corporate bonds rated AAA through BBB the four highest credit ratings. [Emphasis added.]

55.      The government agency mortgage-backed securities referenced in the Fund's SEC documents and included in the Lehman Index were issued by the Governmental National Mortgage Association ("Ginnie Mae"), the Federal National Mortgage Association ("Fannie Mae") and the Federal Home Loan Mortgage Corporation ("Freddie Mac"). Ginnie Mae, Fannie Mae, and Freddie Mac are U.S. Government agencies (also known as Government Sponsored Enterprises ("GSEs")) established by Congress to facilitate residential mortgage loans.

56.      The GSEs purchased and securitized mortgage loans that met established criteria for creditworthiness.

57.      The government agency mortgage-backed securities referenced in the 1998 Annual Report as contained in the Index were fixed income pass-through securities, in which all principal and interest on the underlying mortgages is passed through to the mortgage-backed securities investor.

58.      The type of securities that could be acquired by those agencies are restricted by their government charters.

59.      Ginnie Mae benefits from an express U.S. Government guarantee of payment on its securities.

60.      Both Fannie Mae and Freddie Mac benefit from an implied U.S. Government guarantee of payment on its securities by virtue of their status as U.S. chartered institutions.

61.      The mortgage-backed securities issued by Ginnie Mae, Fannie Mae and Freddie Mac, and maintained in the Lehman Index, had the highest credit quality among mortgage-backed securities.

62.     The Statement of Additional Information dated May 6, 2002, reported that the Fund had changed its name to the Schwab Total Bond Market Fund:

> Prior to May 6, 2002, . . . Schwab Total Bond Market Fund was named Schwab Total Bond Market Index Fund.

63.     In the ordinary course of defendants' business, this Statement of Additional Information was not mailed to investors.

64.     The May 6, 2002 Statement of Additional Information, incorporated by reference into the May 6, 2002 Prospectus, continued to state that the Fund's investment objective was unchanged and could only be changed by a majority shareholder vote, which had not occurred:

> Each fund's investment objective is to attempt to provide a high level of current income consistent with preservation of capital by seeking to track the investment results of a particular bond index through the use of an indexing strategy.
>
>     *        *        *
>
> The indexes are the Lehman Brothers Mutual Fund Short (1-5 Year) U.S. Government/Credit Index for the Schwab Short-Term Bond Market Fund (the Short-Term Index), and the Lehman Brothers U.S. Aggregate Bond Index for the Schwab Total Bond Market Fund (the U.S. Aggregate Bond Index).
>
>     *        *        *
>
> The U.S. Aggregate Bond Index is a market-capitalization weighted index of investment-grade debt securities with maturities of greater than one year.
>
>     *        *        *
>
> Each fund's investment objective may be changed by vote of a majority of its outstanding voting shares.

65.     Schwab Investments issued a further Registration Statement and Prospectus with regard to the Fund dated November 15, 2003.

66.     Beginning with that Prospectus and in subsequent Prospectuses issued by Schwab Investments with respect to the Fund, including the Prospectus dated June 13, 2008, defendants prominently reported in large type-face at the front of the Prospectus that the Fund was "designed to offer high current income by tracking the performance of the Lehman Brothers U.S. Aggregate Bond Index" and was "intended for investors seeking to fill the fixed income component of their asset allocation plan":

CORRECTED COMPLAINT FOR VIOLATION OF THE INVESTMENT COMPANY ACT OF 1940                                                                    13

THE SCHWAB TOTAL BOND MARKET FUND TM is designed to offer high current income by tracking the performance of the Lehman Brothers U.S. Aggregate Bond Index. The fund invests primarily in a diversified portfolio of investment-grade debt instruments. The fund is intended for investors seeking to fill the fixed income component of their asset allocation plan.

67.    The Statement of Additional Information attached to the November 15, 2003 Prospectus – and all subsequent Statements of Additional Information -- reaffirmed that the Fund would continue to track the Index until that investment objective was changed by shareholder vote:

> Each fund's investment objective is to attempt to provide a high level of current income consistent with preservation of capital by seeking to track the investment results of a particular bond index through the use of an indexing strategy.

> *    *    *

> The indexes are the Lehman Brothers Mutual Fund Short (1-5 Year) U.S. Government/Credit Index for the Schwab Short-Term Bond Market Fund (the Short-Term Index), and the Lehman Brothers U.S. Aggregate Bond Index for the Schwab Total Bond Market Fund (the U.S. Aggregate Bond Index).

> The Short-Term Index is a market-capitalization weighted index of investment-grade debt securities with maturities between one and five years. The U.S. Aggregate Bond Index is a market-capitalization weighted index of investment-grade debt securities of greater than one year.

> *    *    *

> Each fund's investment objective may be changed by vote of a majority of its outstanding voting shares.

68.    From August 31, 1997 through August 31, 2007, the Fund substantially performed in a manner that was consistent with the Index, returning an annualized rate of 5.75% compared to 6.04% for the Index -- within the 10% deviation anticipated by the Investment Manager.

69.    As stated in the Fund's annual and semi-annual reports, this degree of deviation between the Fund and the Index occurred "mainly because, unlike the Index, the Fund incurs operating expenses and trading costs and must keep a small part of its assets in cash for paying expenses and processing shareholder orders."

**The Fund Substantially Deviates From Its Stated Investment Objective**

70.    The Fund first reported a material deviation from the Index in its Semi-Annual Report for the period ended February 28, 2008:

> The Schwab Total Bond Market Fund returned 3.41% underperforming Lehman Brothers U.S. Aggregate Bond Index, which was up 5.67%. Risk aversion

and forced selling in the fixed income market, combined with persistent volatility, impacted the fund as investors remained cautious of all non-Government securities irrespective of underlying credit quality.  Under these conditions of extreme volatility, U.S. Treasuries outperformed all other fixed income securities.

During the period, the financial markets experienced liquidity and confidence issues as the collapse of the subprime mortgage market and related credit turmoil cascaded into other sectors.  Correspondingly, a reprising of risk premiums and a flight to quality across all segments of the fixed income market contributed to downward pricing pressure, with prices for many non-U.S. Treasury securities falling regardless of their quality or fundamentals.  In order to maintain liquidity, many investors were forced to sell high quality at depressed prices.  This selling pressure occurred at the same time demand for non-U.S. Treasury securities was weakest, and as a result prices were driven down even further.

71.    From September 4, 2007 through August 27, 2008, the Fund returned negative 1.09% compared to a positive return of 5.92% for the Index – a total underperformance of 7.00% in absolute terms (including interest payments).

72.    According to schedules appended to the February 28, 2008 Semi-Annual Report, the Fund's deviation in performance from the Index was caused by the Fund's investment of 27.3% of assets as of February 28, 2007 in non-agency collateralized mortgage obligations ("CMOs").

73.    The CMOs in the Fund's portfolio were not issued by government agencies.  Rather they were issued by financial institutions through subsidiaries and backed by residential loans that did not conform to the agencies' high loan underwriting requirements.

74.    Moreover, non-agency CMOs purchased by the Investment Manager for the Fund represented tranches of mortgage-backed securities, such as principal only or interest only payments, and were significantly more risky than the agency-issued mortgage-backed securities that were part of the index.  Included in the Fund's portfolio were CMOs sponsored by such subprime lenders as Citigroup, Merrill Lynch, Countrywide, Bear Stearns, IndyBank, Lehman, and Washington Mutual.

75.    This concentration of investments in mortgage backed securities was in violation of the Fund's stated investment objectives that the Fund's assets not be concentrated more than 25% in any one industry (except as required by the Index).

76.    Subsequent analyses of other bond index funds that represent that they track the Lehman Bros. Aggregate Bond Index indicates that as of February 28, 2008, the Lehman

Government Index had a 0% weighting in non-agency mortgage-backed securities, and a 37% weighting in agency mortgage-backed securities.

77.     Moreover, according to the February 28, 2008 Semi-Annual Report, the Fund was invested 45.4% in agency and non-agency mortgage backed securities.

78.     Defendants have taken the position, as stated in the Statement of Additional Information dated November 15, 2007, as amended June 13, 2008 (at 6), to justify the Fund's over-concentration in non-agency mortgage-based securities and CMOs, that non-agency mortgage-backed securities "are not part of any industry for purposes of a fund's concentration policy:

> Based on the characteristics of mortgage-backed securities, the funds have determined that mortgage-backed securities issued by private lenders and not guaranteed by U.S. government agencies or instrumentalities are not part of any industry for purposes of a fund's concentration policy.  This means that a fund may invest more than 25% of its total assets in privately-issued mortgaged-backed securities, which may cause the fund to be more sensitive to adverse economic, business or political developments that affect privately-issued mortgage-backed securities.

79.     Defendants recognized, however, as stated above, that the non-agency investments are a concentration within one "industry" because they share common characteristics that "may cause the fund to be more sensitive to adverse economic, business or political developments that affect privately-issued mortgage-backed securities."

80.     The Fund's investment in CMOs were made at a time when there was increased concern with the quality of mortgage lending.

81.     For example, on June 28, 2007, the Department of Treasury, Federal Reserve System, Federal Deposit Insurance Corp., and National Credit Union Administration, issued a joint Statement on Subprime Mortgage Lending "to address subprime mortgage products and lending practices."

82.     The Fund's investment in CMOs at this time, in light of all circumstances, was speculative, irresponsible and a gross deviation from the Fund's fundamental investment policies and a breach of the defendants' fiduciary duties.

CORRECTED COMPLAINT FOR VIOLATION OF THE INVESTMENT COMPANY ACT OF 1940                                                                                                      16

83.    The attached chart prepared on a Bloomberg terminal, comparing the Schwab Fund's change in total return to the Lehman Index's change in total return over the period December 31, 2004 through August 21, 2008, demonstrates how closely correlated the Schwab Bond Fund was to the Index until approximately August 31, 2007 and how dramatically the Bond Fund has deviated from the Index thereafter:



84.    The magnitude of under performance between the Fund and the Index were not the result of unforeseen economic circumstances, but rather the gross deviation by the Investment Manager from the Fund's stated investment objective, by investing 45.4% of the Fund's total assets in mortgage-backed-securities and 27.3% of the Fund's total assets in non-agency CMOs.

**COUNT I:**
**FOR VIOLATION OF SECTION 13(A) OF THE INVESTMENT COMPANY ACT**
**(AGAINST ALL DEFENDANTS)**

85.    Plaintiff repeats and realleges the allegations contained in the foregoing paragraphs as if fully set forth herein.  This Count is asserted on behalf of members of the Class for violation of § 13(a) of the ICA, 15 U.S.C. § 80a-13(a).

86.    The Defendant Fund's conduct, as described above, deviated from the Fund's investment policy that was changeable only by a shareholder vote, and a deviation from a policy

CORRECTED COMPLAINT FOR VIOLATION OF THE INVESTMENT COMPANY ACT
OF 1940                                                                                                   17

1   recited in the Funds' Registration Statement as a "fundamental investment policy" in that, as

2   detailed above, the Fund failed to invest in bond securities that tracked the Lehman Brothers U.S.

3   Aggregate Bond Index.

4         87.    The above-noted investments made in violation of a stated fundamental investment

5   policy caused significant losses to the Fund's shareholders, as alleged above.  As described above,

6   Plaintiff and other members of the Class have suffered substantial damages in connection with

7   losses in the Funds' value that resulted from the Funds' deviation from their stated fundament

8   investment policy.

                                    **COUNT II:**
9                         **FOR BREACH OF FIDUCIARY DUTY**
                             **(AGAINST ALL DEFENDANTS)**
10

11        88.    Plaintiff repeats and realleges the allegations contained in the foregoing paragraphs

12  as if fully set forth herein.  This Count is asserted on behalf of members of the Class for breach of

13  fiduciary duty.

14        89.    By virtue of their relationship with plaintiff and the members of the Class,

15  defendants stood in a fiduciary relationship with plaintiff and the members of the Class, and had a

16  duty to act in good faith and with utmost loyalty to plaintiff and the members of the Class, to

17  protect the interests of the Fund, to supervise the activities of the Fund's Investment Advisor, and

18  to refrain from doing anything that would cause injury to the Fund or deprive plaintiff and the

19  members of the Class of profit or advantage to which they were otherwise entitled.

20        90.    Defendants breached their fiduciary duties to plaintiff and the members of the Class

21  by the acts and omissions set forth above.

22        91.    By virtue of the wrongful conduct of defendants, plaintiff and the members of the

23  Class have been injured in connection with their ownership of shares in the Fund.

24

25

26

27

28

CORRECTED COMPLAINT FOR VIOLATION OF THE INVESTMENT COMPANY ACT
OF 1940                                                                                              18

**COUNT III:**
**FOR BREACH OF CONTRACT**
**(AGAINST ALL DEFENDANTS)**

92.     Plaintiff repeats and realleges the allegations contained in the foregoing paragraphs as if fully set forth herein.  This Count is asserted on behalf of members of the Class for breach of contract.

93.     The defendants violated the terms of the contract with the Fund's shareholders as set forth in the 1997 Proxy and subsequent prospectuses and more fully described above, by directing the purchases or allowing the Fund to direct the purchases, of the above referenced securities, that deviated from the composition of the Lehman Brothers U.S. Aggregate Bond Index.

94.     By virtue of the wrongful conduct of defendants, plaintiff and the members of the Class have been injured in connection with their ownership of shares in the Fund.

**COUNT IV:**
**FOR BREACH OF CONVENANT OF GOOD FAITH AND FAIR DEALING**
**(AGAINST ALL DEFENDANTS)**

95.     Plaintiff repeats and realleges the allegations contained in the foregoing paragraphs as if fully set forth herein.  This Count is asserted on behalf of members of the Class for breach of the covenant of good faith and fair dealing.

96.     Defendants have a common law duty of good faith and fair dealing with respect to investors in the Fund.

97.     Defendants violated the covenant of good faith and fair dealing by inducing investors to purchase and hold shares in the Fund by stating that it was the Fund's fundamental investment objective, changeable only by a shareholder vote, to track the Lehman Index, and to invest no more than 25% of the Fund's total assets in any one industry.

98.     Defendants, in violation of the covenant of good faith and fair dealing, engaged in speculation with the Fund's assets by investing more than 25% of the Fund's total assets in CMO securities that were not contained in the Lehman Index.

99.     By virtue of the wrongful conduct of defendants, plaintiff and the members of the Class have been injured in connection with their ownership of shares in the Fund.

CORRECTED COMPLAINT FOR VIOLATION OF THE INVESTMENT COMPANY ACT OF 1940                                                                                       19

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for relief and judgment, as follows:

A.    Determining that this action is a proper class action and certifying plaintiff NorthStar as a representative of the Class under Rule 23 of the Federal Rules of Civil Procedure;

B.    Appointing Wolf Popper LLP and Greenbaum Rowe Smith & Davis LLP as Class Counsel;

C.    Awarding compensatory damages in favor of Plaintiff and the members of the Class against all Defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

D.    Disgorging from Defendants for the benefit of the Class any management or other fees forfeited by Defendants' deviation from the Fund's fundamental investment objectives;

E.    Awarding Plaintiff and the Class their reasonable costs and expenses    incurred    in this action, including counsel fees and expert fees;

F.    Awarding recessionary damages; and

G.    Such equitable, injunctive or other relief as deemed appropriate by the Court.


**JURY DEMAND**

Plaintiff hereby demands a trial by Jury.

Dated:  September 3, 2008

By: _____
    CHRISTOPHER T. HEFFELFINGER

Joseph J. Tabacco, Jr.
James C. Magid
**BERMAN DEVALERIO PEASE TABACCO
  BURT & PUCILLO**
425 California Street, Suite 2100
San Francisco, CA  94104
Telephone: 415.433.3200
Facsimile:  415.433.6382

**Attorneys for Plaintiff**

Of Counsel:

Robert C. Finkel (RF2373)

CORRECTED COMPLAINT FOR VIOLATION OF THE INVESTMENT COMPANY ACT
OF 1940

20

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

WOLF POPPER LLP
845 Third Avenue
New York, NY  10022
Telephone:  212.759.4600
Facsimile:  212.486.2093

Marc J. Gross
GREENBAUM ROWE SMITH
 & DAVIS LLP
75 Livingston Street, Suite 301
Roseland, NJ  07068
Telephone:  973.535.1600
Facsimile:  973.535.1698

CORRECTED COMPLAINT FOR VIOLATION OF THE INVESTMENT COMPANY ACT
OF 1940                                                                                                          21