1  DARRYL P. RAINS (CA SBN 104802)
   K.C. ALLAN WALDRON (CA SBN 231866)
2  MORRISON & FOERSTER LLP
   755 Page Mill Road
3  Palo Alto, California  94304-1018
   Telephone: 650.813.5600
4  Facsimile: 650.494.0792
   Email: DRains@mofo.com; KCWaldron@mofo.com
5
   DOROTHY L. FERNANDEZ (CA SBN 184266)
6  MORRISON & FOERSTER LLP
   425 Market Street
7  San Francisco, California  94105-2482
   Telephone: 415.268.7000
8  Facsimile: 415.268.7522
   Email: DFernandez@mofo.com
9
   Attorneys for defendants Schwab Investments, Charles
10 Schwab & Co., Inc., Charles Schwab Investment Management,
   Inc., and Schwab Total Bond Market Fund
11

12

13                     UNITED STATES DISTRICT COURT

14                   NORTHERN DISTRICT OF CALIFORNIA

15                       SAN FRANCISCO DIVISION

16

17 NORTHSTAR FINANCIAL ADVISORS, INC.,      Case No.     CV-08-4119 SI
   on behalf of itself and all others similarly situated,
18                                           CLASS ACTION
                    Plaintiff,
19                                           MOTION TO DISMISS COMPLAINT
           v.
20                                           Date:   January 16, 2009
   SCHWAB INVESTMENTS, CHARLES               Time:   9:00 a.m.
21 SCHWAB & CO., INC., CHARLES SCHWAB        Court:  10
   INVESTMENT MANAGEMENT, INC., and          Judge:  Hon. Susan Illston
22 SCHWAB TOTAL BOND MARKET FUND,

23                  Defendants.

24

25

26

27

28

1

2

**NOTICE OF MOTION AND MOTION TO DISMISS COMPLAINT**

3       TO NORTHSTAR FINANCIAL ADVISORS, INC. AND ITS COUNSEL OF RECORD:

4       PLEASE TAKE NOTICE THAT, on January 16, 2009, at 9:00 a.m. or as soon thereafter

5   as the matter may be heard, in Courtroom 10 of the United States District Court for the Northern

6   District of California, 450 Golden Gate Avenue, San Francisco, California, defendants Schwab

7   Investments, Charles Schwab & Co., Inc., Charles Schwab Investment Management, Inc., and

8   Schwab Total Bond Market Fund, will, and hereby do, move for dismissal of the complaint in this

9   action pursuant to Rules 8 and 12 of the Federal Rules of Civil Procedure and Civil Local Rule 7-

10  2.

11      The motion is based on this notice of motion, the memorandum set forth below, the

12  accompanying declaration of K.C. Allan Waldron, the accompanying request for judicial notice,

13  the reply memorandum, the pleadings and papers on file in this action, and such other written or

14  oral argument as may be presented before the motion is taken under submission by the Court.

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**STATEMENT OF ISSUES**
(Civil Local Rule 7-4)

1.  Does Northstar have standing to sue even though it never owned fund shares and never suffered any injury?

2.  Does section 13(a) of the Investment Company Act of 1940 permit a private right of action?

3.  Does Northstar adequately plead a section 13(a) violation even though defendants' alleged conduct did not violate any of the fund's investment policies?

4.  Was Northstar on inquiry notice of its alleged claims more than one year before filing this action?

5.  Does Northstar adequately plead a breach of fiduciary duty?

6.  Can Northstar plead breach of contract and breach of the covenant of good faith and fair dealing claims by asserting the fund's prospectuses constitute a contract?

# TABLE OF CONTENTS

Page

NOTICE OF MOTION AND MOTION TO DISMISS COMPLAINT ........................................... i

STATEMENT OF ISSUES ................................................................................................. ii

TABLE OF AUTHORITIES ............................................................................................... iv

INTRODUCTION ............................................................................................................. 1

BACKGROUND FACTS ................................................................................................... 2

ARGUMENT .................................................................................................................. 4

I.    NORTHSTAR LACKS STANDING BECAUSE IT DID NOT PURCHASE
      FUND SHARES .................................................................................................... 5

II.   NORTHSTAR'S SECTION 13(A) CLAIM MUST BE DISMISSED ............................. 6

      A.    Section 13(a) Does Not Allow an Implied Private Right of Action ...................... 7

      B.    Northstar Does Not Properly Allege a Violation of Section 13(a) ...................... 9

            1.    The Fund Did Not Deviate from Its Investment Objective........................ 9

            2.    The Fund Did Not Deviate from Its Concentration Policy ...................... 10

      C.    Northstar's Section 13(a) Claim Is Barred by the Statute of Limitations ............. 12

III.  NORTHSTAR'S BREACH OF FIDUCIARY DUTY ALLEGATIONS DO NOT
      STATE A CLAIM. ................................................................................................ 14

      A.    Northstar Does Not Adequately Allege That Each Defendant Owed a
            Fiduciary Duty to Fund Investors ..................................................................... 14

      B.    Northstar Does Not Allege Any Breach of Duties. ............................................. 16

IV.   NORTHSTAR'S THIRD AND FOURTH COUNTS SHOULD BE DISMISSED......... 16

      A.    The Fund's SEC Filings Do Not Constitute a Contract ....................................... 16

      B.    Northstar Alleges No Breach of Contract ............................................................ 17

      C.    The Breach of Covenant of Good Faith and Fair Dealing Claim Should Be
            Dismissed. ........................................................................................................ 18

CONCLUSION ............................................................................................................... 19

1

## TABLE OF AUTHORITIES

2

Page(s)

### CASES

3

4
*Acri v. Varian Assocs.*,
114 F.3d 999 (9th Cir. 1997)...........................................................................14

5
*Batchelder v. Kawamoto*,
147 F.3d 915 (9th Cir. 1998)...........................................................................15

6

7
*Bell Atl. Corp. v. Twombly*,
550 U.S. 544, 127 S. Ct. 1955 (2007) .............................................................5

8

9
*Bellikoff v. Eaton Vance Corp.*,
481 F.3d 110 (2d Cir. 2007)..............................................................................8

10
*Blatt v. Merrill Lynch, Pierce, Fenner & Smith*,
916 F. Supp. 1343 (D.N.J. 1996) ......................................................................7

11

12
*Burks v. Lasker*,
441 U.S. 471 (1979) ...........................................................................................7

13

14
*Careau & Co. v. Sec. Pac. Bus. Credit, Inc.*,
222 Cal. App. 3d 1371 (1990)...........................................................................16

15
*Carma Developers Inc. v. Marathon Dev. Cal., Inc.*,
2 Cal. 4th 342 (1992) .........................................................................................18

16

17
*Cohen v. Stratosphere Corp.*,
115 F.3d 695 (9th Cir. 1997)..............................................................................17

18

19
*Coll v. PB Diagnostic Sys., Inc.*,
50 F.3d 1115 (1st Cir. 1995) ..............................................................................16

20
*Cort v. Ash*,
422 U.S. 66 (1975) ..............................................................................................7

21

22
*Davis & Cox v. Summa Corp.*,
751 F.2d 1507 (9th Cir. 1985)............................................................................15

23

24
*Dura Pharms., Inc. v. Broudo*,
544 U.S. 336 (2005) ............................................................................................9

25
*Eckstein v. Balcor Film Investors*,
58 F.3d 1162 (7th Cir. 1995)..............................................................................13

26

27
*Estate of Bray*,
230 Cal. App. 2d 136 (1964)..............................................................................17

28

*Friedlob v. Trustees of the Alpine Mut. Fund Trust,*
    905 F. Supp. 843 (D. Colo. 1995) ................................................................. 13

*Green v. Fund Asset Mgmt., L.P.,*
    19 F. Supp. 2d 227 (D.N.J. 1998) ................................................................. 13

*Grosset v. Wenaas,*
    42 Cal. 4th 1100 (2008) ................................................................................ 16

*Hamilton v. Allen,*
    396 F. Supp. 2d 545 (E.D. Pa. 2005) ........................................................... 15

*Hunt v. Alliance N. Am. Gov't Income Trust, Inc.,*
    159 F.3d 723 (2d Cir. 1998) ........................................................................... 7

*In re Adelphia Commc'n Corp. Sec. & Derivative Litig.,*
    No. 03 MD 1529, 03 Civ 5752, 03 Civ. 5753,
    2005 WL 2087811 (S.D.N.Y. Aug. 30, 2005) ................................................ 6

*In re Tyco Int'l Ltd.,*
    236 F.R.D. 62 (D.N.H. 2006) ......................................................................... 6

*In re Van Wagoner Funds, Inc. Sec. Litig.,*
    382 F. Supp. 2d 1173 (N.D. Cal. 2004) ......................................................... 8

*Indemnified Capital Invs., SA. v. R.J. O'Brien & Assocs., Inc.,*
    12 F.3d 1406 (7th Cir. 1993) ........................................................................... 6

*Karpus v. Hyperion Capital Mgmt., Inc.,*
    96 Civ 4671 (SAS), 1996 WL 668860 (S.D.N.Y. Nov. 18, 1996) .................. 7

*Kaufman v. Dreyfus Fund, Inc.,*
    434 F.2d 727 (3d Cir. 1970) ........................................................................... 5

*Kim v. Regents of the Univ. of Cal.,*
    80 Cal. App. 4th 160 (2000) ......................................................................... 18

*Krouner v. Am. Heritage Fund, Inc.,*
    899 F. Supp. 142 (S.D.N.Y. 1995) ................................................................. 6

*Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson,*
    501 U.S. 350 (1991) ...................................................................................... 12

*Lapidus v. Hecht,*
    232 F.3d 679 (9th Cir. 2000) ........................................................................... 7

*Lapidus v. Hecht,*
    No. C 98-3130, 2002 WL 1034042 (N.D. Cal. May 17, 2002) ...................... 13

*Lefkowitz v. Smith Barney, Harris Upham & Co.*,
    804 F.2d 154 (1st Cir. 1986) ........................................................................... 15

*Lierboe v. State Farm Mut. Auto. Ins. Co.*,
    350 F.3d 1028 (9th Cir. 2003)............................................................................ 5

*McKesson HBOC, Inc. v. New York State Common Retirement Fund, Inc.*,
    339 F.3d 1087 (9th Cir. 2003)........................................................................... 17

*Mendiondo v. Centinela Hosp. Med. Ctr.*,
    521 F.3d 1097 (9th Cir. 2008)........................................................................... 14

*Moose Lodge No. 107 v. Irvis*,
    407 U.S. 163 (1972) ............................................................................................ 6

*O'Shea v. Littleton*,
    414 U.S. 488 (1974) ............................................................................................ 5

*Olmsted v. Pruco Life Ins. Co.*,
    283 F.3d 429 (2d Cir. 2002) ............................................................................... 8

*Omni Fin. Corp v. Cohen*,
    No. 91 CIV 6837, 1994 WL 97125 (S.D.N.Y. Mar. 22, 1994) ........................... 13

*Opera Plaza Residential Parcel Homeowners Ass'n v. Hoang*,
    376 F.3d 831 (9th Cir. 2004)............................................................................... 7

*Orkin v. Taylor*,
    487 F.3d 734 (9th Cir. 2007)............................................................................... 7

*Pac. States Enters., Inc. v. City of Coachella*,
    13 Cal. App. 4th 1414 (1993) ...................................................................... 16, 18

*Pegasus Fund, Inc. v. Laraneta*,
    617 F.2d 1335 (9th Cir. 1980)............................................................................. 8

*Phillips v. Morgan Stanley Dean Witter High Income Advantage Trust III*,
    No. 01 CIV 8139 DC, 2002 WL 31119441 (S.D.N.Y. Sept. 25, 2002) ................. 7

*Powers v. Ryan*,
    No. 00-10295-00, 2001 WL 99230 (D. Mass. Jan. 9, 2001)............................... 15

*Radol v. Thomas*,
    772 F. 2d 244 (6th Cir. 1985)............................................................................. 15

*Rennick v. O.P.T.I.O.N. Care*,
    77 F.3d 309 (9th Cir. 1996)............................................................................... 16

*Richard P. v. Visa Del Mar Child Care Serv.*,
    106 Cal. App. 3d 860 (1980)............................................................................. 17

*Romani v. Shearson Lehman Hutton, Inc.*,
    No. 89-1675-MC, 1990 WL 150011 (D. Mass. Sept. 25, 1990) .............................................. 17

*Shephard v. TCW/DW Term Trust 2000*,
    938 F. Supp. 171 (S.D.N.Y. 1996) ................................................................................................ 9

*Siemers v. Wells Fargo & Co.*,
    No. C 05-04518 WHA, 2006 WL 2355411 (N.D. Cal. Aug. 14, 2006) ................................. 8

*Start v. Apple Computer, Inc.*,
    No. C95-20149 PVT, 1996 WL 161630 (N.D. Cal. Mar. 29, 1996) ..................................... 17

*Touche Ross & Co. v. Redington*,
    442 U.S. 560 (1979) ...................................................................................................................... 7

*Warth v. Seldin*,
    422 U.S. 490 (1975) ...................................................................................................................... 5

*Westlye v. Look Sports, Inc.*,
    17 Cal. App. 4th 1715 (1993) ................................................................................................... 16

*Williams v. Gerber Prods. Co.*,
    523 F.3d 934 (9th Cir. 2008) ...................................................................................................... 5

*Williston Basin Interstate Pipeline Co. v. An Exclusive Gas Storage Leasehold*,
    524 F.3d 1090 (9th Cir. 2008) .................................................................................................... 5

**STATUTES AND RULES**

15 U.S.C.
    § 80a-13(a) ....................................................................................................................... *passim*

28 U.S.C.
    § 1367(c) ...................................................................................................................................... 14

Fed. R. Civ. P.
    8 ..................................................................................................................................................... 4

Cal. Civ. Code
    § 1550 .......................................................................................................................................... 16

**OTHER AUTHORITIES**

ALI/ABA, *Recent Developments In Litigation Involving Mutual Funds and Investment
    Advisers* (May 2008) .................................................................................................................. 8

Witkin, *Summary of California Law*: *Contracts*  (10th ed. 2005)
    § 798 ............................................................................................................................................ 18
    § 799 ............................................................................................................................................ 19
    § 801 ............................................................................................................................................ 18

1

**INTRODUCTION**

2      For ten years, the Schwab Total Bond Market mutual fund closely matched the

3 performance of the Lehman Brothers U.S. Aggregate Bond Index.  (Compl. ¶ 68.)  Then, between

4 September 2007 and early 2008, the fund's performance diverged from the index, losing 1.9

5 percent while the index returned 5.92 percent.  (*Id*. ¶ 71.)  The fund has since gotten back on

6 track.

7      Northstar says the fund temporarily underperformed the Lehman index because it deviated

8 from two of its investment policies.  (Compl. ¶ 72.)  Northstar, however, doesn't allege any

9 policy deviations.  It just twists the terms of those policies to fit its theories.

10      Northstar alleges the fund violated its investment objective by purchasing a type of

11 security — a collateralized mortgage obligation, or "CMO" — not included in the Lehman index.

12 (*Id*. ¶ 3.)  But the fund's prospectuses say expressly that the fund may invest in a wide variety of

13 "debt instruments of domestic and foreign issuers, including . . . collateralized mortgage

14 obligations."  (*See, e.g.*, July 13, 2007 Prospectus at 14, attached as Waldron Decl. Ex. A).  The

15 prospectuses also explain "the fund is not required to invest any percentage of its assets in the

16 securities represented by the index."  (*Id*.)  And they warn:  "the fund's investment in securities

17 that are not included in the index may increase the gap between the performance of the fund and

18 that of the index."  (*Id.* at 17.)  The fund did not violate its stated investment objective by

19 investing in CMOs that were not part of the Lehman index.

20      Northstar also alleges the fund deviated from its concentration policy by investing more

21 than 25 percent of its assets in non-agency mortgage-backed securities.  (Compl. ¶¶ 74-75.)  But,

22 while the fund's concentration policy says the fund will not concentrate investments in a

23 particular industry or group of industries, it goes on to say, explicitly, that non-agency mortgage-

24 backed securities "are not part of any industry for purposes of the fund's concentration policy.

25 This means [the] fund may invest more than 25% of its total assets in privately-issued mortgage-

26 backed securities."  (*Id.* ¶ 78.)  The fund did not violate its concentration policy by investing more

27 than 25 percent of the fund's assets in non-agency mortgage-backed securities.

28

1    The Schwab Total Bond Market fund promised to "attempt" or "seek" to track the

2    Lehman index.  (July 13, 2007 Prospectus at 14; Sept. 1, 2006 SAI at *2, attached to Waldron

3    Decl. as Ex. B.)  But the fund never promised it would always achieve its goal.  Indeed, it warned

4    "there can be no guarantee that [the fund's advisers] will produce the desired results."  (July 13,

5    2007 Prospectus at 17.)

6    Northstar has alleged that the fund temporarily underperformed the Lehman index.  That

7    allegation does not state a claim.  And Northstar has not adequately pleaded any deviation from

8    the fund's investment policies.  Its complaint should be dismissed.

9                                     **BACKGROUND FACTS**

10    *The Schwab Total Bond Market Fund*.  The Schwab Total Bond Market Fund is a fixed

11    income mutual fund that seeks to track the Lehman Brothers U.S. Aggregate Bond Index.

12    (July 13, 2007 Prospectus at 1.)  The Lehman index reflects the performance of the entire U.S.

13    fixed income market, and includes approximately 9,000 bonds of all types, including government,

14    corporate, mortgage-backed, and asset-backed securities with maturities longer than one year.

15    (Compl. ¶¶ 34, 35.)

16    *The Fund's Investment Objective*.  The fund's stated investment objective is:  "to attempt

17    to provide a high level of current income consistent with preservation of capital by seeking to

18    track the investment results of [the Lehman Brothers U.S. Aggregate Bond Index] through the use

19    of an indexing strategy."  (Sept. 1, 2006 SAI at *2.)  This objective is restated, in various ways,

20    throughout the fund's prospectuses and SAIs.[1]

21    The fund's prospectuses explain that, "to pursue [this] goal, the fund primarily invests in a

22    diversified portfolio of debt instruments."  (July 13, 2007 Prospectus at 14.)  "The fund may

23    invest in debt instruments of domestic and foreign issuers, including convertible, preferred,

24    _____

[1] "Mutual funds and closed-end funds . . . are required to have statements of additional
information (SAIs)."  (http://www.sec.gov/answers/mfinfo.htm.)  A fund's "SAI conveys
information about the fund that is not necessarily needed by investors to make an informed
investment decision, but that some investors find useful. The SAI affords the fund an opportunity
to expand discussions of the matters described in the prospectus."  (*Id.*)  The fund's SAIs and
prospectuses are attached as part of the fund's registration statement with the Securities and
Exchange Commission.

28

mortgage-backed or asset-backed securities and collateralized mortgage obligations.  The fund may also invest in derivative instruments, such as swap agreements, options or futures contracts." (*Id.*)

While the fund seeks to track the Lehman index, it is not an "index" fund.  Instead of passively buying all the bonds comprising the index, the fund "uses the index as a guide in structuring the fund's portfolio and selecting its investments," and attempts "to track the performance of the" index by mimicking its characteristics.  (Compl. ¶ 37; July 13, 2007 Prospectus at 14.)  The fund "closely approximate[s] [the] index's 'characteristics' of coupon rate, duration, sector, quality and optionality (or convexity)."  (Compl. ¶ 37.)  This involves the use of "statistical sampling and other procedures," as "the fund's investment adviser applies its own investment techniques and risk analyses in making investment decisions for the fund." (Compl. ¶ 37; July 13, 2007 Prospectus at 17.)  "[T]he fund is not required to invest any percentage of its assets in the securities represented in the index."  (*Id*. at 14.)

Because the fund does not simply buy the bonds comprising the index, its performance will deviate from the index.  Indeed, the fund's prospectuses explain the fund will only "seek a correlation between the performance" of the fund and "that of its Index of 0.9 or better."  (Compl. ¶ 39.)  And the prospectuses warn that "the fund's investment in securities that are not included in the index may increase the gap between the performance of the fund and that of the index."  (*See, e.g.*, July 13, 2007 Prospectus at 17.)  The prospectuses conclude: "a perfect correlation [between the index and the fund] is unlikely to be achieved."  (Compl. ¶ 39.)

*The Fund's Concentration Policy*.  The fund is a diversified fund, and its concentration policy says it may not "concentrate investments in a particular industry or group of industries . . . as concentration is defined under the Investment Company Act of 1940 or the rules or regulations thereunder."  (Sept. 1, 2006 SAI at *39)  "The SEC has presently defined concentration as investing 25% or more of an investment company's net assets in an industry or group of industries."  (*Id.* at *41.)

SEC guidelines allow the fund to implement its concentration policy by choosing "reasonable" industry definitions.  Consistent with this guidance, the fund's SAIs disclose that, in

1   the fund's judgment, mortgage-backed securities "are not part of any industry for purposes of the

2   funds' concentration policies.  This means that [the] fund may invest more than 25% of its total

3   assets in privately-issued mortgage-backed securities."  (Sept. 1, 2006 SAI at *8.)  The SAIs warn

4   that, because mortgage-backed securities are not subject to the 25 percent limit, "the fund [may]

5   be more sensitive to adverse economic, business or political developments that affect privately-

6   issued mortgage-backed securities."  (*Id.*)

7   *Impact of the Credit Crisis on the Fund*.  From 1997 to August 31, 2007, "the Fund

8   substantially performed in a manner consistent with the Index."  (Compl. ¶ 68.)  The fund's total

9   return over this period was about 5.75 percent, compared to 6.04 percent for the Lehman index.

10  (*Id.*)

11  Then came the credit crisis.  Beginning in August 2007, fixed-income securities, housing

12  prices, commodities, and stocks of all kinds declined in value as investors lost confidence in the

13  markets.  The credit markets were particularly hard-hit.  Fixed-income asset write-downs have

14  exceeded $1 trillion, with many large financial institutions forced to take charges of $20 billion,

15  $40 billion, or more.  Just about every owner of fixed-income assets has been hurt in what many

16  have called the worst financial crisis to hit the world since the Great Depression.

17  Not surprisingly, the crisis took its toll on the fund.  The fund underperformed the Lehman

18  index by 0.52 percentage points in the third quarter of 2007, by 1.68 percentage points in the

19  fourth quarter, and by 4.56 percentage points in the first quarter of 2008.  By the second quarter,

20  however, the fund was again tracking the index, outperforming it by 0.18 percentage points.

21  The fund attributed its temporary poor performance to "forced selling in the fixed income

22  market," "extreme volatility," and "a flight to quality across all segments of the fixed income

23  market."  (Compl. ¶ 70.)  Northstar, by contrast, alleges the fund underperformed the Lehman

24  index because it invested in non-agency collateralized mortgage obligations and mortgage-backed

25  securities.  (*Id.* ¶¶ 72-74.)

26  **ARGUMENT**

27  Rule 8 obligates Northstar to set forth facts showing it has a plausible chance of prevailing

28  on its claims.  Fed. R. Civ. P. 8(a).  It must allege enough specific facts to push the complaint

MOTION TO DISMISS COMPLAINT
CASE NO. CV-08-4119 SI
pa-1292434

4

1   over "the line between possibility and plausibility." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544,

2   127 S. Ct. 1955, 1966 (2007).  *Accord Williston Basin Interstate Pipeline Co. v. An Exclusive Gas*

3   *Storage Leasehold*, 524 F.3d 1090, 1096 (9th Cir. 2008); *Williams v. Gerber Prods. Co.*, 523 F.3d

4   934, 938 (9th Cir. 2008).  None of Northstar's four counts meets this test.

5        We begin by showing that Northstar is not a proper plaintiff.  Northstar has never owned

6   any shares of the fund; it claims only to have bought and sold shares "on behalf of investors in its

7   role as an investment advisor."  (Compl. ¶ 9.)  That allegation is not enough to confer standing

8   upon Northstar.

9        We next address Northstar's section 13(a) claim and show there is no private right of

10  action under that statute.  We also demonstrate the fund did not violate section 13(a) because it

11  never deviated from its stated investment policies.  And we show that Northstar's section 13(a)

12  claim is barred by the statute of limitations.

13       Finally, we address Northstar's three state law claims for breach of fiduciary duty, breach

14  of contract, and breach of the covenant of good faith and fair dealing.  Like Northstar's section

15  13(a) claim, these claims incorrectly allege that the fund deviated from its investment policies.

16  Northstar also incorrectly assumes the fund's prospectus may be treated as a contract, and they

17  have other pleading defects.

18

19  **I.   NORTHSTAR LACKS STANDING BECAUSE IT DID NOT PURCHASE FUND SHARES.**

20       Standing is the constitutional requirement that a plaintiff have a personal stake in the

21  action.  *Warth v. Seldin*, 422 U.S. 490, 498 (1975); *Lierboe v. State Farm Mut. Auto. Ins. Co.*,

22  350 F.3d 1028, 1022, 1024 (9th Cir. 2003) (action dismissed where named plaintiff lacked any

23  claim); *Kaufman v. Dreyfus Fund, Inc.*, 434 F.2d 727, 736 (3d Cir. 1970) (action dismissed where

24  plaintiff asserted claims against sixty-one mutual funds whose shares he did not own).

25       To have standing, Northstar must have a legal right to recover individually on the claims

26  asserted in its complaint.  *O'Shea v. Littleton*, 414 U.S. 488, 494-95 n.3 (1974) ("if none of the

27  named plaintiffs purporting to represent a class establishes the requisite of a case or controversy

28  with the defendants, none may seek relief on behalf of himself or any other member of the

1   class"). *See Moose Lodge No. 107 v. Irvis*, 407 U.S. 163, 166 (1972) (plaintiff "has standing to

2   seek redress for injuries done to him, but may not seek redress for injuries done to others").

3        Northstar does not allege any right to recover on its claims.  It did not purchase fund

4   shares for its own account, and it did not lose any money in the fund.  It alleges, instead, that it

5   purchased and sold fund shares "on behalf of investors in its role as an investment advisor."

6   (Compl. ¶ 9.)

7        That is not enough.  An investment advisor does not have standing to assert claims on

8   behalf of its clients.  *Indemnified Capital Invs., SA. v. R.J. O'Brien & Assocs., Inc.*, 12 F.3d 1406,

9   1409 (7th Cir. 1993) (losses "incurred in customer accounts accrued only to [the adviser's]

10  customers and [were] too attenuated to create standing for [the adviser]"); *see also In re Tyco

11  Int'l Ltd.*, 236 F.R.D. 62, 72-73 (D.N.H. 2006) (investment advisor did not satisfy "injury in fact"

12  requirement and therefore "lack[ed] standing to sue its clients' behalf").[2]  Northstar lacks

13  standing to pursue this action.

14  **II.**     <u>**NORTHSTAR'S SECTION 13(A) CLAIM MUST BE DISMISSED.**</u>

15       Northstar's first claim arises under section 13(a) of the Investment Company Act of 1940.

16  Section 13(a) regulates changes to a mutual fund's investment policies.  *See* 15 U.S.C. § 80a-

17  13(a).  Under section 13(a), certain investment policy changes — about borrowing money,

18  issuing senior securities, concentrating investments in a certain industry, or altering a fund's

19  fundamental investment objective — cannot be made without the approval of a majority of the

20  fund's investors.  *Id.*

21       Section 13(a), by its express terms, applies only to a "registered investment company."

22  15 U.S.C. § 80a-13(a).  *Krouner v. Am. Heritage Fund, Inc.*, 899 F. Supp. 142, 149 n.4 (S.D.N.Y.

23  1995) ("on its face section 13(a)(3) imposes liability upon registered investment companies but

24  not upon corporate officers or other types of companies").  Schwab Investments is the only

---

25       [2] This is not even a case where Northstar alleges it received specific authorization from its
clients to file suit pursuant to a power of attorney.  *See In re Adelphia Commc'n Corp. Sec. &

26  Derivative Litig.*, No. 03 MD 1529, 03 Civ 5752, 03 Civ. 5753, 2005 WL 2087811, at *3
(S.D.N.Y. Aug. 30, 2005) (investment advisor "obtained specific authority from the Beneficial

27  Owners, by means of power of attorney, to commence this suit for recovery of their losses").

28

1    investment company defendant.  (Compl. ¶ 14.)  The other defendants should not have been

2    named in this count.

3          Section 13(a) does not create any express private right of action, and no private right of

4    action may be implied for it.  In any event, Northstar hasn't properly alleged any deviation from

5    the fund's investment policies in violation of section 13(a).  And Northstar was reasonably on

6    notice of its potential claims more than one year before it filed suit; its section 13(a) claim is

7    barred by the applicable statute of limitations.

8          **A.     Section 13(a) Does Not Allow an Implied Private Right of Action.**

9          Northstar has no private right of action under section 13(a).  The section does not

10   expressly provide for any private remedy.  Northstar thus has the burden of showing a private

11   right of action may be implied under section 13(a).  *Opera Plaza Residential Parcel Homeowners*

12   *Ass'n v. Hoang*, 376 F.3d 831, 835 (9th Cir. 2004) (plaintiff has burden of establishing

13   congressional intent to supply a private right of action).

14         Northstar cannot carry that burden.  Most courts addressing section 13(a) claims have

15   declined to say whether an implied private right of action may be pursued.[3]  Recent decisions,

16   however, reveal a clear trend against implying private rights of action under the '40 Act.

17         The trend began with *Cort v. Ash*, 422 U.S. 66, 78 (1975), and *Touche Ross & Co. v.*

18   *Redington*, 442 U.S. 560, 575 (1979).  These landmark decisions indicate that the "central

19   inquiry" must be "whether Congress intended to create . . . a private cause of action."  *Id.*; *see*

20   *also Orkin v. Taylor*, 487 F.3d 734, 738 (9th Cir.) (congressional intent is "cornerstone of the

21   analysis"), *cert. denied*, 128 S. Ct. 491 (2007); *Opera Plaza*, 376 F.3d at 834 (private right of

22   action is "basically a matter of statutory construction") (quoting *Transamerica Mortgage*

23   *Advisors, Inc. v. Lewis*, 444 U.S. 11, 15 (1979)).

---

24         [3] *See, e.g.*, *Burks v. Lasker*, 441 U.S. 471, 474 (1979); *Lapidus v. Hecht*, 232 F.3d 679,
     681 n.4 (9th Cir. 2000); *Hunt v. Alliance N. Am. Gov't Income Trust, Inc.*, 159 F.3d 723 (2d Cir.
25   1998); *Phillips v. Morgan Stanley Dean Witter High Income Advantage Trust III*, No. 01 CIV
     8139 DC, 2002 WL 31119441 (S.D.N.Y. Sept. 25, 2002).  *But see Blatt v. Merrill Lynch, Pierce,*
26   *Fenner & Smith*, 916 F. Supp. 1343, 1357 (D.N.J. 1996) (allowing private right of action under
     section 13(a)(3)); *Karpus v. Hyperion Capital Mgmt., Inc.*, 96 Civ 4671 (SAS), 1996 WL 668860,
27   at *2 (S.D.N.Y. Nov. 18, 1996) (same).

28

1    The trend picked up steam six years ago when the Second Circuit found no congressional

2    intent to allow implied rights of action for sections 26(f) and 27(i) of the '40 Act.  *Olmsted v.*

3    *Pruco Life Ins. Co.*, 283 F.3d 429 (2d Cir. 2002).  The Second Circuit began by presuming that,

4    because the '40 Act contains only one express private right of action, "Congress did not intend"

5    to allow other implied private claims.  *Id.* at 431-32.  The court then identified "three additional

6    features of the statute" that "strengthened" its conclusion.  *Id.* at 432.  First, the court observed

7    that the '40 Act speaks in terms of "prohibitions," rather than "rights-creating language."  *Id.*

8    at 432-33.  "Statutes that focus on the person regulated rather than the individuals protected create

9    'no implication of an intent to confer rights on a particular class of persons.'"  *Id.* at 433 (citation

10   and quotations omitted).  Second, the court concluded that the '40 Act's explicit provision "for

11   enforcement of all ICA provisions . . . by the . . . SEC" suggests "Congress intended to preclude"

12   private actions.  *Id.* (citation omitted).  And third, the court determined that, because "Congress

13   explicitly provided for a private right of action in Section 36(b) of the Act," the "omission of an

14   explicit private right to enforce other sections was intentional."  *Id.*[4]

15   No court since 2002 has implied a private right of action under any provision of the

16   '40 Act.  ALI/ABA, *Recent Developments In Litigation Involving Mutual Funds and Investment*

17   *Advisers*, at 532 (May 2008) ("Since *Olmsted*, each of the more than two dozen courts to consider

18   the issue has found that no implied private right of action exists under various sections of the

19   Act.")  And district courts within the Ninth Circuit have consistently refused to imply private

20   rights of action under the '40 Act.  *See, e.g., Siemers v. Wells Fargo & Co.*, No. C 05-04518

21   WHA, 2006 WL 2355411, at *21-23 (N.D. Cal. Aug. 14, 2006) (no private remedy under section

22   48(a)); *In re Van Wagoner Funds, Inc. Sec. Litig.*, 382 F. Supp. 2d 1173, 1189-90 (N.D. Cal.

23   2004) (no private remedy under section 34(b)).  Those courts found support for their holdings in

24   the Ninth Circuit's decision in *Pegasus Fund, Inc. v. Laraneta*, 617 F.2d 1335, 1341-42 (9th Cir.

25   ———————————————

26   [4] The Second Circuit recently reiterated these conclusions in *Bellikoff v. Eaton Vance Corp.*, 481 F.3d 110 (2d Cir. 2007), where it rejected implied private rights of action for sections

27   34(b), 36(a), and 48(a) of the '40 Act.  *Id.* at 117 (quoting *Olmsted*, 283 F.3d at 433-34 & n.4 (collecting cases).)

28

1   1980), where the court noted it is "doubtful" that any '40 Act statute can be enforced by private

2   action in light of the Supreme Court's recent jurisprudence.

3        Northstar has asserted a claim under a statute that does not allow actions by private

4   investors.  It has no legal basis for asserting a private claim under section 13(a).

5        **B.      Northstar Does Not Properly Allege a Violation of Section 13(a).**

6        Section 13(a) provides that an investment company may not deviate from its fundamental

7   investment objective "unless authorized by the vote of a majority of its outstanding voting

8   securities."  15 U.S.C. § 80a-13(a)(3).  It also prohibits any deviation "from [the fund's] policy in

9   respect of concentration of investments in any particular industry or group of industries."  *Id*.  The

10  fund did not deviate from either of these standards.

11       **1.      The Fund Did Not Deviate from Its Investment Objective.**

12       The fund's stated investment objective is "to attempt to provide a high level of current

13  income consistent with preservation of capital by seeking to track the investment results of [the

14  Lehman Brothers U.S. Aggregate Bond Index] through the use of an indexing strategy."  (Sept. 1,

15  2006 SAI at *2.)  Northstar says the fund deviated from this objective by "fail[ing] to invest in

16  bond securities that tracked the Lehman Brothers U.S. Aggregate Bond Index."  (Compl. ¶ 86.)

17       Northstar cannot, of course, state a claim simply by alleging the fund failed to track the

18  index.  The fund never guaranteed it would always achieve its goal.  It only promised to "attempt"

19  or "seek" to track the index.  (July 13, 2007 Prospectus at 14; Sept. 1, 2006 SAI at *2.)  And it

20  clearly warned "there can be no guarantee that [the fund's advisers] will produce the desired

21  results" or that the "fund will achieve its investment objective."  (July 13, 2007 Prospectus at 17;

22  Sept. 1, 2006 SAI at *3.)  *See Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 345 (2005) (securities

23  laws not intended "to provide investors with broad insurance against market losses"); *Shephard v.*

24  *TCW/DW Term Trust 2000*, 938 F. Supp. 171, 173, 180 (S.D.N.Y. 1996) (claim based on alleged

25  losses dismissed where fund did not deviate from stated policies).

26       Northstar claims, though, that the poor performance was "caused by the Fund's

27  investment of 27.3% of [its] assets . . . in non-agency collateralized mortgage obligations

28  ("CMOs") which "were significantly more risky than" the securities in the Lehman index.

MOTION TO DISMISS COMPLAINT                          9
CASE NO. CV-08-4119 SI
pa-1292434

1   (Compl. ¶¶ 3, 72-74.)  Investing in CMOs, of course, did not violate the fund's investment

2   objective.  The fund's prospectuses state clearly that the fund invests in a wide variety of bonds,

3   including CMOs.  (*See, e.g.*, July 13, 2007 Prospectus at 14.)  And the fund's SAIs contain a

4   many-page-long description of CMOs.  (Sept. 1, 2006 SAI at *24-26.)  Investing in CMOs was

5   clearly part of the fund's strategy.[5]

6       To make out a claim, Northstar would have to plead facts showing the fund's portfolio, as

7   a whole, deviated from the fund's goal of mimicking the characteristics of the Lehman index.

8   (*See* Compl. ¶ 37.)  But Northstar's complaint does not allege that the fund failed to approximate

9   the "index's 'characteristics' of coupon rate, duration, sector, quality and optionality (or

10  convexity)."  (*Id.*)  And it does not allege how, if at all, CMOs contributed to some supposed

11  failure to approximate the index's characteristics.  Northstar cannot state a claim under section

12  13(a) simply by alleging the fund failed to track the Lehman index or invested in CMOs.

## 2.       The Fund Did Not Deviate from Its Concentration Policy.

14      The fund's concentration policy limits the fund's investments in any one industry to less

15  than 25 percent of the fund's assets.  (Compl. ¶¶ 43, 45.)  Northstar alleges the fund violated this

16  concentration policy by investing more than 25 percent of its assets in mortgage-backed

17  securities.  (*Id.* ¶¶ 3, 75-79.)  Although it does not say it expressly, Northstar necessarily has to be

18  arguing that mortgage-backed securities are a single "industry" for purposes of the fund's

19  concentration policy.

20      Neither the '40 Act nor any SEC regulation defines "industry."  But the SEC's staff has

21  published guidelines relating to registration statements for mutual funds.  SEC Release No. IC-

22  13436 (Aug. 12, 1983).  Guide 19, entitled "Concentration of Investments in Particular

23  Industries," sets out the SEC staff's views on the meaning of "industry" for purposes of a

24  concentration policy.  It states:

---

25      [5] The fund, of course, regularly disclosed all of its holdings, by category, in regular filings
    with the SEC and regular reports to investors.  (*See, e.g.*, Feb. 28, 2005 Semi-Annual Report

26  at 45-51, attached as Waldron Decl. Ex. D.)  These reports fully disclosed the fund's CMO
    holdings.  Northstar knew full well that the fund invested in CMOs, and it knew precisely what

27  percentage of the fund's assets were allocated to CMOs in any financial quarter.

28

1

2

3

4

5

> In determining industry classifications . . . [a] registrant . . . may select its own industry classifications, but such classifications must be reasonable and should not be so broad that the primary economic characteristics of the companies in a single class are materially different.  Registrants selecting their own industry classifications must be reasonable and should disclose them (a) in the prospectus in the case of policy to concentrate, or (b) in the Statement of Additional Information in the case of a policy not to concentrate.

6

*Id.* at *74.

7

As permitted by this guidance, the fund typically has relied on the industry classifications

8

provided in the Global Industry Classification Standard classification system developed by

9

Morgan Stanley and Standard & Poors.  And, as permitted by Guide 19, the fund also periodically

10

has "select[ed] its own industry classifications."  Starting in 2006, the fund determined to classify

11

non-agency mortgage-backed securities as not part of any industry — just as it was permitted to

12

do under Guide 19.

13

In so doing, the fund conformed to common industry practice.  For example, the Pacific

14

Investment Management Company ("PIMCO"), the largest investment company manager of fixed

15

income funds, has for years taken the very same position.  PIMCO's SAIs state that, "[i]n the case

16

of privately issued mortgage-related securities, the Funds take the position that mortgage-related

17

securities do not represent interests in any particular 'industry' or group of industries."  (Feb. 27,

18

2008 SAI for PIMCO at 15, Waldron Decl. Ex. C.)  Moreover, no standard industry classification

19

system of which we are aware defines "mortgage-backed securities" as an industry — for the

20

obvious reason that securities backed by mortgages are not an "industry" any more than the

21

homeowners who took out those mortgages are an "industry."

22

Guide 19 affords the fund discretion to adopt "reasonable" industry classifications, and the

23

fund's decision not to classify mortgage-backed securities as a single "industry" was clearly

24

reasonable.  *See* SEC Release No. IC-13436, at *74.  The commonly accepted understanding of

25

"industry" aggregates companies which produce similar products (such as the automobile

26

industry or the steel industry).  Mortgage-backed securities, by contrast, are a form of security,

27

not a product.  Mortgage-backed securities are no more an industry than "preferred stock" and

28

"convertible debentures" are industries.

As required by Guide 19, the fund fully disclosed its decision on the classification of mortgage-backed securities. The fund's November 15, 2005 SAI, as amended on Sept. 1, 2006, disclosed:

> [T]he funds have determined that mortgage-backed securities issued by private lenders do not have risk characteristics that are correlated to any industry and, therefore, the funds have determined that mortgage-backed securities issued by private lenders are not part of any industry for purposes of the funds' concentration policies. This means that a fund may invest more than 25% of its total assets in privately-issued mortgage-backed securities, which may cause the fund to be more sensitive to adverse economic, business or political developments that affect privately-issued mortgage-backed securities.

(Sept. 1, 2006 SAI at *8.) The fund thus disclosed precisely how it uses the word "industry." And the fund clearly disclosed that it does not treat mortgage-backed securities as an industry for purposes of its concentration policy.[6]

Northstar's complaint does not properly allege the fund deviated either from its fundamental investment objective (seeking to track the Lehman index) or from its concentration policy (limiting investments in any one industry to less than 25 percent of the fund's assets). As a result, Northstar's section 13(a) claim must be dismissed.

## C.   Northstar's Section 13(a) Claim Is Barred by the Statute of Limitations.

The fund began investing in CMOs as early as 2005. It invested more than 25 percent of its assets in non-agency mortgage-backed securities starting in the fall of 2006. Both of these events were publicly disclosed in the fund's SEC filings and in its reports to investors. Northstar must have known the facts underlying its claims more than one year before it filed this action.

Because section 13 has no express private right of action, it has no statutorily prescribed limitations period. But, in *Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson*, 501 U.S. 350, 361-62 (1991), the United States Supreme Court held that the standard one-year statute of

---

[6] Of course, the fund also disclosed its entire holdings. (*See, e.g.*, Nov. 30, 2006 Form N-Q, Quarterly Schedule of Portfolio Holdings at *1-*5, Waldron Decl. at Ex. E.) Those disclosures list the securities in the fund's portfolio by category and state each category's percentage of total assets. One of the categories is "mortgage-backed securities." Northstar thus knew precisely how much of the portfolio was invested in mortgage-backed securities.

1   limitations/three-year statute of repose period for securities claims should be applied to claims

2   based on an implied private right of action.  Subsequent courts have applied this holding to

3   implied rights of action under the '40 Act.  *See*, *e.g.*, *Green v. Fund Asset Mgmt., L.P.*,

4   19 F. Supp. 2d 227 (D.N.J. 1998); *Friedlob v. Trustees of the Alpine Mut. Fund Trust*,

5   905 F. Supp. 843, 855 (D. Colo. 1995); *Lapidus v. Hecht*, No. C 98-3130, 2002 WL 1034042, at

6   *7 (N.D. Cal. May 17, 2002) ("claim for violation of § 13(a) of the 1940 Act must be filed no

7   later than one year from the date the violation should have been discovered in the exercise of

8   ordinary diligence, but in no event more than three years from the date of the alleged violation").

9            The one-year "constructive notice" limitations period begins to run when a plaintiff

10  receives actual or constructive notice of the factual basis for his claims.  *Green*, 19 F. Supp. 2d

11  at 233.  And a plaintiff is deemed to have constructive notice when the factual basis for his claims

12  is disclosed in SEC filings.  *Id.* (nature of plaintiff's claims was disclosed "in the prospectuses

13  and registration statements which were filed with the SEC"); *Eckstein v. Balcor Film Investors,*

14  58 F.3d 1162, 1168-69 (7th Cir. 1995) (applying California law, holding SEC filings constitute

15  notice and start the one-year statute of limitations); *Omni Fin. Corp. v. Cohen*, No. 91 CIV 6837,

16  1994 WL 97125, at *10 (S.D.N.Y. Mar. 22, 1994) (complaint dismissed where underlying facts

17  "were made known in various filings with the SEC and in annual reports to the shareholders . . . .

18  Thus Plaintiff knew or should have known by that time").

19           The fund disclosed its purchases of CMOs in its February 28, 2005 Semi-Annual Report

20  and in subsequent reports and filings.  (*See, e.g.*, Feb. 28, 2005 Semi-Annual Report at *45.)  The

21  fund informed investors in its September 1, 2006 SAI that non-agency mortgage-backed

22  securities were not part of any industry for purposes of its concentration policy, and it reported in

23  its November 30, 2006 Quarterly Schedule of Portfolio Holdings that non-agency mortgage-

24  backed securities exceeded 25 percent of its portfolio.  (Sept. 1, 2006 SAI at *8; Form N-Q,

25  Quarterly Schedule of Portfolio Holdings at *1-*5.)  These facts have been repeated in numerous

26  subsequent reports and filings.

27           Northstar thus had constructive notice of the facts underlying its claims more than one

28  year before it filed this action.  Its section 13(a) claim is barred by the statute of limitations.

III.   **NORTHSTAR'S BREACH OF FIDUCIARY DUTY ALLEGATIONS DO NOT STATE A CLAIM.**

Northstar's remaining three claims arise under state law.  Of course, if the Court dismisses Northstar's section 13(a) claim, it may decline to exercise supplemental jurisdiction over the complaint's state law claims.  28 U.S.C. § 1367(c); *Acri v. Varian Assocs.*, 114 F.3d 999, 1001 (9th Cir. 1997) (court should decline to exercise supplemental jurisdiction when federal claims are dismissed).

There are other reasons to dismiss Northstar's breach of fiduciary duty claim.  Northstar has not properly alleged that each of the four defendants owed a fiduciary duty to the fund's investors.  And, because the claim depends on supposed violations of the two investment policies at issue in Northstar's section 13(a) claim, Northstar has not adequately alleged any breach of a fiduciary duty.

A.   **Northstar Does Not Adequately Allege That Each Defendant Owed a Fiduciary Duty to Fund Investors.**

Northstar's complaint does not explain why any of the four defendants owes a fiduciary duty to the fund's investors.  It simply states, without more, that all the "defendants" had a "fiduciary relationship" with the fund's investors.  (Compl. ¶¶ 89-90.)  Bare legal conclusions do not satisfy Rule 8's pleading requirements.  *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1103-04 (9th Cir. 2008) (complaint "must provide more than 'a formulaic recitation of the elements of a cause of action'") (citing *Twombly*, 127 S. Ct. at 1965).

The fund itself — Schwab Investments[7] — is a Massachusetts business trust.[8]  (Compl.

¶ 14.)  No case under Massachusetts law "recognizes a fiduciary duty owed by a corporation to a

shareholder."  *See Powers v. Ryan*, No. 00-10295-00, 2001 WL 99230, at *3 (D. Mass. Jan. 9,

2001).  The reason is simple:  just like the directors of a corporation, the fund's trustees

administer the trust "for the benefit of the beneficial owners, the shareholders."  *Radol v. Thomas*,

772 F. 2d 244, 258 (6th Cir. 1985).  "Liability for breach of the directors' fiduciary obligation

could not possibly run against the corporation itself, for this would create the absurdity of

satisfying the shareholders' claims against the directors from the corporation, which is owned by

the shareholders."  *Id*.  As such, Schwab Investments did not owe any fiduciary duty to Northstar

or the fund's investors.

Charles Schwab & Co., Inc., is one of the fund's broker-dealers, and it is responsible for

the underwriting, distribution, and sales of fund shares.  (*See* Compl. ¶ 15.)  It has no ongoing

responsibilities to investors who purchase fund shares, and it plays no generalized advisory role

for the fund's investors.  An underwriter and seller of mutual fund shares does not have a

fiduciary relationship with the fund's investors under Massachusetts law.  *See*, *e.g.*, *Lefkowitz v.

Smith Barney, Harris Upham & Co*., 804 F.2d 154, 155 (1st Cir. 1986) ("a simple stockbroker

customer relationship does not constitute a fiduciary relationship in Massachusetts").

Finally, the fund's investment adviser is Charles Schwab Investment Management, Inc.

(Compl. ¶ 16.)  The advisor has no direct relationship of any kind with the fund's investors.

Instead, its contract is with the trust, and its contractual investment management duties are owed

to the trust, not the trust's investors.  *Hamilton v. Allen*, 396 F. Supp. 2d 545, 551 n.12, 553 n.14

---

[7] Northstar names the Schwab Total Bond Market Fund as a defendant, but the fund is just
a series of the Schwab Investments trust.  The trust is considered the registrant and the issuer of
the fund's shares.

[8] Massachusetts law applies because the fund is organized under the laws of
Massachusetts.  Under the "internal affairs" doctrine, the Court must apply the law of the state of
incorporation to a claim of breach of fiduciary duty.  *See*, *e.g.*, *Batchelder v. Kawamoto*, 147 F.3d
915, 920 (9th Cir. 1998) (rights of shareholders are determined by law of state of incorporation
under "internal affairs" doctrine); *Davis & Cox v. Summa Corp.*, 751 F.2d 1507, 1527 (9th Cir.
1985) ("internal affairs" doctrine applies to breach of fiduciary duty claim).

1    (E.D. Pa. 2005) (investment advisor has no "special relationship" with fund investors; fiduciary

2    duty claim discussed).

3         **B.      Northstar Does Not Allege Any Breach of Duties.**

4         Northstar alleges that the defendants breached their supposed fiduciary duties "by the acts

5    and omissions set forth above."  (Compl. ¶¶ 89-90.)  We assume this cursory allegation means to

6    say the defendants all played some role in the fund's alleged deviations from its policies to seek

7    to track the Lehman index and to avoid concentrating its assets in any one industry.  But, as

8    explained above, Northstar's complaint does not properly allege any violation of the fund's

9    investment policies.  For this reason, Northstar's complaint also does not properly allege any

10   breach of fiduciary duties.  *See supra* § III.B.

11   **IV.    NORTHSTAR'S THIRD AND FOURTH COUNTS SHOULD BE DISMISSED.**

12        Northstar's last two claims — for breach of contract and breach of the covenant of good

13   faith and fair dealing — depend on a "contract" that doesn't exist.

14        **A.      The Fund's SEC Filings Do Not Constitute a Contract.**

15        Before Northstar can plead a breach of contract, it must plead a contract.  *See*, *e.g.*, *Pac.

16   States Enters., Inc. v. City of Coachella*, 13 Cal. App. 4th 1414, 1425 (1993).[9]  Here, Northstar

17   says the contracts are the fund's "1997 Proxy and subsequent prospectuses."  (Compl. ¶ 93.)

18        But these SEC disclosure documents lack the essential characteristics of any valid

19   contract.  To be valid, a contract must identify the parties to the agreement, reflect their mutual

20   assent, have a lawful object, and show consideration.  Cal. Civ. Code § 1550.  The fund's SEC

21   filings do not meet any of these requirements.  They do not identify any contracting parties.  *See*

22   *Westlye v. Look Sports, Inc.*, 17 Cal. App. 4th 1715, 1728 (1993) (ability to identify parties

23   "essential to the validity of a contract").  They do not reflect mutual assent.  *See Rennick v.*

24   _____

25        [9] Under California's governmental interest conflicts analysis, California will apply its own
     laws where there is no "true conflict" with the laws of another jurisdiction.  *See*, *e.g.*, *Grosset v.*
26   *Wenaas*, 42 Cal. 4th 1100, 1119 (2008).  Because California and Massachusetts have similar laws
     relating to breach of contract, the Court may apply California law.  *Compare Coll v. PB*
27   *Diagnostic Sys., Inc.*, 50 F.3d 1115, 1122 (1st Cir. 1995) (applying Massachusetts law) *with*
     *Careau & Co. v. Sec. Pac. Bus. Credit, Inc.*, 222 Cal. App. 3d 1371, 1388 (1990).

28

1   *O.P.T.I.O.N. Care*, 77 F.3d 309, 315 (9th Cir. 1996) (mutual consent a "basic tenet of contract

2   law"). And they do not show consideration, because the investment policies disclosed in those

3   filings are required by the Investment Company Act of 1940. Promising to do "what one is

4   already legally bound to do cannot be consideration." *Estate of Bray*, 230 Cal. App. 2d 136, 142

5   (1964) (quotation omitted); *Start v. Apple Computer, Inc.*, No. C95-20149 PVT, 1996 WL

6   161630, at *2 (N.D. Cal. Mar. 29, 1996).

7          For these reasons, the Ninth Circuit has rejected breach of contract claims based on

8   prospectuses. In *Cohen v. Stratosphere Corp.*, 115 F.3d 695, 701 (9th Cir. 1997), the court

9   concluded that a prospectus did not constitute a "binding contract," and that even submitting

10  subscription agreements and payment did not form a "contract of purchase" in a "best efforts"

11  stock offering. And, in *McKesson HBOC, Inc. v. New York State Common Retirement Fund, Inc.*,

12  339 F.3d 1087, 1092 (9th Cir. 2003), the court held that a prospectus is a "disclosure document,"

13  and refused to "convert [defendant's] solicitation of the shareholders' vote into a contractual

14  offer." The *McKesson* court concluded that, while the "Securities Act refers to a prospectus as a

15  communication 'which offers any security for sale,' . . . 'the term 'offer' has a different and far

16  broader meaning in securities law than in contract law.'" *Id.* (citations omitted); *see also*

17  *Romani v. Shearson Lehman Hutton, Inc.*, No. 89-1675-MC, 1990 WL 150011, at *1 (D. Mass.

18  Sept. 25, 1990) (prospectus "had no impact on plaintiff's rights and obligations under the

19  previously executed sales contract").

20          **B.      Northstar Alleges No Breach of Contract.**

21          Even if the fund's SEC filings were a "contract," Northstar has not adequately pleaded

22  that any provision of those filings was "breached." Northstar pleads the defendants "breached"

23  "by directing the purchases or allowing the Fund to direct the purchases, of the above-referenced

24  securities, that deviated from the composition of the Lehman Brothers U.S. Aggregate Bond

25  Index." (Compl. ¶ 93.) But Northstar has not pleaded the existence of any contractual provision

26  that bars the fund from investing in securities that were not part of the "composition of the"

27  Lehman index. In fact, the fund's policies plainly allow it to invest in securities outside the

28  index. *See, e.g.*, *Richard P. v. Visa Del Mar Child Care Serv.*, 106 Cal. App. 3d 860, 867-68

MOTION TO DISMISS COMPLAINT
CASE NO. CV-08-4119 SI                              17
pa-1292434

1  (1980) (demurrer to breach of contract claim sustained where defendant complied with terms of

2  agreement).

3  **C.     The Breach of Covenant of Good Faith and Fair Dealing Claim Should Be Dismissed.**

4

5  Northstar's final count is for a breach of the covenant of good faith and fair dealing.

6  (Compl. ¶¶ 95-99.)  The covenant of good faith and fair dealing is a recognition that every

7  contract carries with it an implicit "covenant by each party not to do anything which will deprive

8  the other parties thereto of the benefits of the contract."  1 Witkin, *Summary of California Law*:

9  *Contracts* § 798 (10th ed. 2005) (citations omitted).  "The essence of the good faith covenant is

10  *objectively reasonable conduct*."  *Id.* § 801.  This covenant is "read into contracts to protect the

11  express contractual promises of the contract."  *Kim v. Regents of the Univ. of Cal.*, 80 Cal.

12  App. 4th 160, 164 (2000).

13  Of course, "the existence of a contractual relationship is a prerequisite for any action for

14  breach of the covenant."  *Id.* (demurrer sustained where plaintiff and defendant did not have a

15  contractual relationship).  Northstar's good faith and fair dealing claim must, as a result, be

16  dismissed, because the fund's SEC filings do not constitute an enforceable contract.  *Pac. States*

17  *Enters., Inc.*, 13 Cal. App. 4th at 1425 (claim for breach of covenant of good faith and fair dealing

18  dismissed where no valid contract).  Northstar's claim also fails to allege the fund did anything

19  not allowed under its prospectuses.  *See, e.g.*, *Carma Developers Inc. v. Marathon Dev. Cal., Inc.*,

20  2 Cal. 4th 342, 374 (1992) ("We are aware of no reported case in which a court has held the

21  covenant of good faith may be read to prohibit a party from doing that which is expressly

22  permitted by an agreement.").  The claim must be dismissed for this reason as well.

23  In any event, Northstar has not alleged the essential element of any good faith and fair

24  dealing claim — that defendants did something "which will deprive the other parties thereto of

25  the benefits of the contract."  Witkin, *Contracts* § 798 (citations omitted).  Northstar does not

26  allege any such conduct.  (*See* Compl. ¶¶ 95-99.)  All it says is that the defendants "induc[ed]

27  investors to purchase and hold shares in the Fund" and "engaged in speculation with the Fund's

28  assets by investing more than 25% of the Fund's total assets in CMO securities that were not

1  contained in the Lehman index." (Compl. ¶¶ 97, 98.) That alleged conduct does not rise to the

2  level of "[s]ubterfuge and evasions," "evasion of the spirit of the bargain, lack of diligence and

3  slacking off, willful rendering of imperfect performance, abuse of a power to specify terms, and

4  interference with or failure to cooperate in the other party's performance" that constitutes a

5  breach of good faith or fair dealing. *See, e.g.,* Witkin, *Contracts* § 799.

6  ### CONCLUSION

7        The Schwab Total Bond Market mutual fund deviated temporarily from the index it seeks

8  to track. Regrettable, to be sure. But also understandable given the disclosures provided to

9  investors and the unprecedented turmoil in the financial markets.

10        Nothing in Northstar's complaint shows the fund violated its stated investment objective

11  to attempt to track the Lehman index. Nothing in Northstar's complaint shows the fund violated

12  its investment policies by investing in CMOs. And nothing in Northstar's complaint

13  demonstrates the fund deviated from its concentration policy by investing more than 25 percent of

14  its assets in non-agency mortgage-backed securities.

15        At bottom, all Northstar has alleged is that the fund failed, temporarily, to track the index.

16  That is not a securities law violation or a violation of any state or common law. As a result,

17  Northstar's complaint must be dismissed.

18  Dated: November 20, 2008                DARRYL P. RAINS
                                            DOROTHY L. FERNANDEZ
19                                          K.C. ALLAN WALDRON
                                            MORRISON & FOERSTER LLP
20

21

22                                          By:  _____/s/ Darryl P. Rains_____
                                                      Darryl P. Rains
23
                                                Attorneys for Defendants
24

25

26

27

28