DARRYL P. RAINS (CA SBN 104802)
K.C. ALLAN WALDRON (CA SBN 231866)
MORRISON & FOERSTER LLP
755 Page Mill Road
Palo Alto, California 94304-1018
Telephone: 650.813.5600
Facsimile: 650.494.0792
Email: DRains@mofo.com; KCWaldron@mofo.com

DOROTHY L. FERNANDEZ (CA SBN 184266)
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, California 94105-2482
Telephone: 415.268.7000
Facsimile: 415.268.7522
Email: DFernandez@mofo.com

Attorneys for defendants Schwab Investments and
Charles Schwab Investment Management, Inc.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| NORTHSTAR FINANCIAL ADVISORS, INC., on Behalf of Itself and All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> SCHWAB INVESTMENTS and CHARLES SCHWAB INVESTMENT MANAGEMENT, INC., <br><br> Defendants. | Case No.  CV-08-4119 SI <br><br> CLASS ACTION <br><br> MOTION TO DISMISS FIRST AMENDED COMPLAINT <br><br> Date:  May 1, 2009 <br> Time:  9:00 a.m. <br> Court:  10 <br> Judge:  Hon. Susan Illston |

**NOTICE OF MOTION AND MOTION TO DISMISS FIRST AMENDED COMPLAINT**

TO NORTHSTAR FINANCIAL ADVISORS, INC. AND ITS COUNSEL OF RECORD:

PLEASE TAKE NOTICE THAT, on May 1, 2009, at 9:00 a.m., or as soon thereafter as the matter may be heard, in Courtroom 10 of the United States District Court for the Northern District of California, 450 Golden Gate Avenue, San Francisco, California, defendants Schwab Investments and Charles Schwab Investment Management, Inc. will, and hereby do, move for dismissal of the first amended complaint in this action pursuant to Rules 8 and 12 of the Federal Rules of Civil Procedure and Civil Local Rule 7-2.

The motion is based on this notice of motion, the memorandum set forth below, the accompanying declaration of K.C. Waldron, the accompanying request for judicial notice, the reply memorandum, the pleadings and papers on file in this action, and such other written or oral argument as may be presented before the motion is taken under submission by the Court.

# STATEMENT OF ISSUES
(Civil Local Rule 7-4)

1.    Must Northstar's claims, all of which allege damages based on a decline in value of shares in the fund, be asserted derivatively rather than as direct claims?

2.    Can Northstar assert a claim for breach of fiduciary duty against Schwab Investments and Charles Schwab Investment Management even though neither Massachusetts nor California law imposes fiduciary duties on these entities running directly to investors?

3.    Can Northstar assert a claim for breach of contract based on the fund's proxy statement and SEC filings when no contract with the fund's investors incorporates these documents by reference? Can Northstar assert such a claim when the fund's SEC filings during the class period expressly permit the challenged conduct?

4.    Can Northstar state a claim for breach of the covenant of good faith and fair dealing when it has not properly pleaded the existence of a contract?

5.    Can fund investors be third-party beneficiaries of the investment advisory agreement between Schwab Investments and Charles Schwab Investment Management when that agreement does not refer to them or state they are intended beneficiaries of the agreement? Can Northstar plead such a claim without identifying any provision of the contract that allegedly was breached?

6.    Can Northstar assert a section 17200 claim without alleging any "injury in fact" and without having any basis for claiming restitution?

1

# TABLE OF CONTENTS

2

**Page**

3  NOTICE OF MOTION AND MOTION TO DISMISS FIRST AMENDED COMPLAINT ........i

4  STATEMENT OF ISSUES...................................................................................................ii

   TABLE OF AUTHORITIES..............................................................................................iv

5  INTRODUCTION ............................................................................................................1

6  ARGUMENT...................................................................................................................2

7  I.      NORTHSTAR'S CLAIMS MUST BE ASSERTED DERIVATIVELY IN
           COMPLIANCE WITH RULE 23.1 ...................................................................2

8  II.     COUNT II DOES NOT STATE A BREACH OF FIDUCIARY DUTY CLAIM ............7

9          A.    Massachusetts Law Applies to Northstar's Breach of Fiduciary Duty Claim........8

           B.    Massachusetts Law Does Not Create a Fiduciary Duty Running from a
10               Fund or Its Advisor Directly to Fund Shareholders............................................10

11         C.    Defendants Owe No Fiduciary Duty to Investors Under California Law............13

   III.    COUNT III DOES NOT PLEAD A CLAIM FOR BREACH OF CONTRACT ............14

12         A.    Northstar Does Not Allege the Formation of Contracts with Investors...............14

13         B.    Schwab Investments Had No Involvement in Investors' Purchase
                 Negotiations..................................................................................................17

14         C.    Northstar Alleges No Breach of Any Contract Provision ..................................18

15 IV.     COUNT IV STATES NO CLAIM FOR BREACH OF THE COVENANT OF
           GOOD FAITH AND FAIR DEALING.............................................................19

16 V.      COUNT V FAILS TO STATE A THIRD-PARTY BENEFICIARY CLAIM ...............20

17         A.    Northstar Does Not Allege Any Breach of the Investment Advisory
                 Agreement.....................................................................................................20

18         B.    Investors Were Not the Express Intended Third-Party Beneficiaries of the
19               Investment Advisory Agreement. ...................................................................21

   VI.     COUNT VI DOES NOT PLEAD A PROPER SECTION 17200 CLAIM .....................22

20         A.    Northstar Does Not Claim to Have Suffered Any Injury-in-Fact........................22

21         B.    Northstar Cannot Seek Restitution....................................................................24

   CONCLUSION................................................................................................................25

22

23

24

25

26

27

28

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

### CASES

*Banjo Buddies, Inc. v. Renosky*,
   399 F.3d 168 (3d Cir. 2005) .................................................................................................9

*Bank of the West v. Super. Ct.*,
   2 Cal. 4th 1254 (1992).........................................................................................................24

*Batchelder v. Kawamoto*,
   147 F.3d 915 (9th Cir. 1998) ...............................................................................................9

*Baugh v. CBS, Inc.*,
   828 F. Supp. 745 (N.D. Cal. 1993) ....................................................................................25

*Berry-Mckee v. Walker*,
   No. C 99-4203 SI, 1999 U.S. Dist. LEXIS 19612 (N.D. Cal. Dec. 10, 1999) ....................25

*Bybee Farms, LLC v. Snake River Sugar Co.*,
   No. CV-06-5007-FVS, 2007 WL 3353765 (E.D. Wash. Nov. 9, 2007)................................9

*Cal. Emergency Physicians Med. Group v. Pacificare of Cal.*,
   111 Cal. App. 4th 1127 (2003) ...........................................................................................21

*Caleb & Co. v. E.I. DuPont De Nemours & Co.*,
   624 F. Supp. 747 (S.D.N.Y. 1985)......................................................................................17

*Californians for Disability Rights v. Mervyn's, LLC*,
   39 Cal. 4th 223 (2006)........................................................................................................23

*Cariaga v. Local No. 1184 Laborers Int'l Union*,
   154 F.3d 1072 (9th Cir. 1998) ............................................................................................15

*Cohen v. Stratosphere Corp.*,
   115 F.3d 695 (9th Cir. 1997) ..............................................................................................16

*Comm. on Children's Television, Inc. v. Gen. Foods Corp.*,
   35 Cal. 3d 197 (1983).........................................................................................................13

*Daro v. Super. Ct.*,
   151 Cal. App. 4th 1079 (2007) ...........................................................................................23

*Dimmick v. Lungren*,
   No. C 98-4137 SI, 1999 WL 111793 (N.D. Cal. Feb. 19, 1999)..........................................25

*Edgar v. MITE Corp.*,
   457 U.S. 624 (1982) .............................................................................................................8

*Everett v. Bozic*,
   No. 05 Civ. 00296 (DAB), 2006 WL 2291083 (S.D.N.Y. Aug. 3, 2006)...........................3, 5

*Fid. Bank Nat'l Ass'n v. Aldrich*,
   No. Civ. A. 3-95-CV-2566H, 1998 WL 120296 (N.D. Tex. Mar. 5, 1998)..........................17

*Forsythe v. Sun Life Fin., Inc.*,
   417 F. Supp. 2d 100 (D. Mass. 2006)..........................................................................3

*Green v. Nuveen Advisory Corp.*,
   186 F.R.D. 486 (N.D. Ill. 1999) ...............................................................................13

*Grosset v. Wenaas*,
   42 Cal. 4th 1100 (2008)...........................................................................................8

*Halebian v. Berv*,
   No. 06 Civ. 4099 (NRB), 2007 WL 2191819 (S.D.N.Y. July 31, 2007) ...........................4, 6

*Hall v. Time, Inc.*,
   158 Cal. App. 4th 847 (2008) .................................................................................23

*Hamilton v. Allen*,
   396 F. Supp. 2d 545 (E.D. Pa. 2005)...............................................................3, 6, 11, 13

*Hausman v. Buckley*,
   299 F.2d 696 (2d Cir. 1962) ......................................................................................8

*Hewitt v. Mobile Research Tech., Inc.*,
   285 Fed. App'x 694 (11th Cir. 2008)........................................................................17

*Howe v. Bank for Int'l Settlements*,
   194 F. Supp. 2d 6 (D. Mass. 2002) ...........................................................................10

*In re BlackRock Mut. Funds Fee Litig.*,
   No. 04 Civ. 164, 2006 WL 4683167 (W.D. Pa. Mar. 29, 2006)..........................................13

*In re Charles Schwab Corp. Sec. Litig.*,
   No. C 08-01510 WHA, 2009 WL 262456 (N.D. Cal. Feb. 4, 2009) ...................................9

*In re Dreyfus Aggressive Growth Mut. Fund Litig.*,
   No. 98 Civ. 4318 (HB), 2000 WL 10211 (S.D.N.Y. Jan. 6, 2000)........................................4

*In re J.P. Morgan Chase & Co. S'holder Litig.*,
   906 A.2d 766 (Del. 2006)..........................................................................................6

*In re Microsoft Corp. Antitrust Litig.*,
   274 F. Supp. 2d 747 (D. Md. 2003) ..........................................................................23

*In re Shoe-Town, Inc. Stockholders Litig.*,
   No. 9483, 1990 WL 13475 (Del. Ch. Feb. 12, 1990)......................................................10

*In re Textainer P'ship Sec. Litig.,*
   No. C 05-0969 MMC, 2005 WL 1791559 (N.D. Cal. July 27, 2005) .................................... 8

*In re Transkaryotic Therapies, Inc.,*
   954 A.2d 346 (Del. Ch. 2008) .................................................................. 6

*In re Triarc Co. Class & Derivative Litig.,*
   791 A.2d 872 (Del. Ch. 2001) ................................................................... 7

*In re Trump Hotels S'holder Deriv. Litig.,*
   Nos. 95 Civ. 7820 DAB,
   96 Civ. 8527 DAB, 2000 WL 1371317 (S.D.N.Y. Sept. 21, 2000) ................................... 10

*In re U.S. West, Inc. Sec. Litig.,*
   201 F. Supp. 2d 302 (D. Del. 2002) ............................................................ 17

*In re Vantive Corp. Sec. Litig.,*
   283 F.3d 1079 (9th Cir. 2002) ................................................................ 25

*In re VeriSign, Inc. Derivative Litig.,*
   531 F. Supp. 2d 1173 (N.D. Cal. 2007) ......................................................... 9

*In re Wheelabrator Techs. Inc. S'holders Litig.,*
   No. 11495, 1992 WL 212595 (Del. Ch. Sept. 1, 1992) .......................................... 10

*In re Worldcom, Inc.,*
   323 B.R. 844 (S.D.N.Y. Bankr. 2005) .......................................................... 6

*Ind. Elec. Workers Pension Trust Fund v. Dunn,*
   No. C-06-01711 RMW, 2007 WL 1223220 (N.D. Cal. Mar. 1, 2007) .............................. 5, 6

*Jackson v. Stuhlfire,*
   547 N.E.2d 1146 (Mass. App. Ct. 1990) ......................................................... 3

*Jones v. Aetna Cas. & Surety Co.,*
   26 Cal. App. 4th 1717 (1994) ................................................................. 22

*Kamen v. Kemper Fin. Servs.,*
   500 U.S. 90 (1991) ........................................................................... 2

*Kim v. Regents of the Univ. of Cal.,*
   80 Cal. App. 4th 160 (2000) .................................................................. 19

*Lapidus v. Hecht,*
   232 F.3d 679 (9th Cir. 2000) ............................................................ 2, 5, 12

*Law v. Harvey,*
   No. C 07-00134 WHA, 2007 WL 2990426 (N.D. Cal. Oct. 11, 2007) ................................ 7

*Levesque v. Ojala,*
    No. 20034485, 2005 WL 3721859 (Mass. Super. Ct. Dec. 8, 2005) ...................................10

*Marshall v. Standard Ins. Co.,*
    214 F. Supp. 2d 1062 (C.D. Cal. 2000)....................................................................................25

*McKesson HBOC, Inc. v. New York State Common Retirement Fund, Inc.,*
    339 F.3d 1087 (9th Cir. 2003) ................................................................................................16

*Medina v. Safe-Guard Prods., Int'l, Inc.,*
    164 Cal. App. 4th 105 (2008) .................................................................................................23

*Merola v. Exergen Corp.,*
    668 N.E.2d 351 (Mass. 1996) .................................................................................................10

*Mieuli v. DeBartolo,*
    No. C-00-3225 JCS, 2001 WL 777091 (N.D. Cal. May 7, 2001) ...........................................7

*Morton v. Rank Am., Inc.,*
    812 F. Supp. 1062 (C.D. Cal. 1993)..........................................................................................9

*Mutchka v. Harris,*
    373 F. Supp. 2d 1021 (C.D. Cal. 2005)...........................................................................3, 5, 6

*Nagy v. Riblet Prods. Corp.,*
    79 F.3d 572 (7th Cir. 1996) ......................................................................................................9

*Nat'l Rural Telecommns. Co-op. v. DIRECTV, Inc.,*
    319 F. Supp. 2d 1059 (C.D. Cal. 2003)..................................................................................23

*Ochs v. PacifiCare of Cal.,*
    115 Cal. App. 4th 782 (2004) ...........................................................................................21, 22

*Pac. States Enters., Inc. v. City of Coachella,*
    13 Cal. App. 4th 1414 (1993) .................................................................................................19

*Park v. Am. Circuit Breaker Corp.,*
    No. 1:06-CV-00549, 2008 WL 4596234 (M.D.N.C. Oct. 14, 2008)......................................10

*Petersen v. Sec. Settlement Corp.,*
    226 Cal. App. 3d 1445 (1991) ................................................................................................24

*Peterson v. Cellco P'ship,*
    164 Cal. App. 4th 1583 (2008) ...............................................................................................23

*Powers v. Ryan,*
    No. CIV. A 00-10295-00, 2001 WL 92230 (D. Mass. Jan. 9, 2001) .....................................10

*Puentes v. Wells Fargo Home Mortgage, Inc.,*
    160 Cal. App. 4th 638 (2008) .................................................................................................23

*Radol v. Thomas*,
 772 F.2d 244 (6th Cir. 1985) .............................................................................11

*Rennick v. O.P.T.I.O.N. Care, Inc.*,
 77 F.3d 309 (9th Cir. 1996) ...............................................................................15

*Richardson v. Reliance Nat'l Indem. Co.*,
 No. C 99-2952 CRB, 2000 WL 284211 (N.D. Cal. Mar. 9, 2000)......................13

*Sarin v. Ochsner*,
 721 N.E.2d 932 (Mass. App. Ct. 2000) ................................................................3

*Skarbrevik v. Cohen, England & Whitfield*,
 231 Cal. App. 3d 692 (1991) ..............................................................................14

*Smith v. Microskills San Diego L.P.*,
 153 Cal. App. 4th 892 (2007) .............................................................................21

*State Farm Mut. Auto. Ins. Co. v. Super. Ct.*,
 114 Cal. App. 4th 434 (2003) ...........................................................................8, 9

*Steckman v. Hart Brewing, Inc.*,
 143 F.3d 1293 (9th Cir. 1998) ............................................................................25

*Stuchen v. Duty Free Int'l, Inc.*,
 No. CIV.A. 94C-12-194, 1996 WL 33167249 (Del. Super. Ct. Apr. 22, 1996)....10

*Tooley v. Donaldson, Lufkin & Jenrette, Inc.*,
 845 A.2d 1031 (Del. 2004) ...................................................................................3

*ULQ, LLC v. Meder*,
 666 S.E.2d 713 (Ga. Ct. App. 2008) ...................................................................11

*Watson Labs., Inc. v. Rhone-Poulenc Rorer, Inc.*,
 178 F. Supp. 2d 1099 (C.D. Cal. 2001) ..............................................................24

*Weddington Prods. Inc. v. Flick*,
 60 Cal. App. 4th 793 (1998) ...............................................................................15

*Westlye v. Look Sports, Inc.*,
 17 Cal. App. 4th 1715 (1993) .............................................................................15

## STATUTES AND RULES

CAL. BUS. & PROF. CODE
 § 17200 .................................................................................................................22
 § 17203 .................................................................................................................24
 § 17204 .................................................................................................................22

CAL. CIV. CODE
§ 1550 ................................................................................................................. 15
§ 1559 ....................................................................................................... 20, 21, 22

FED. R. CIV. P.
Rule 12(b)(6) ........................................................................................................ 25
Rule 23.1 ............................................................................................................. 2, 7

**OTHER AUTHORITIES**

Fleming, *Regulation of Series Investment Companies Under the Investment Company Act of 1940*, 44 BUS. LAW 1179 (Aug. 1989) ..................................................................... 12

Kirsh, MUTUAL FUND REGULATION,
(2d ed. 2008) ....................................................................................................... 11

REST. (SECOND) OF CONFLICT OF LAWS (1971)
§ 302 ...................................................................................................................... 8
§ 304 ...................................................................................................................... 8

Schonfeld & Kerwin, *Organization of a Mutual Fund*,
49 BUS. LAW 107 (Nov. 1993) ...................................................................... 11, 12

W. Stern, *Bus. & Prof. C. Practice* (2008) .......................................................... 24

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**INTRODUCTION**

Schwab Investments and Charles Schwab Investment Management, Inc., move to dismiss all the claims in this action.

In its earlier order, this Court dismissed Northstar's fiduciary duty claim (Count II) and instructed Northstar "to carefully examine whether each of the defendants named in this claim can in fact be named in such a claim, and under which state's law such a claim is properly brought." (Feb. 19, 2009, Order at 14-15.) Northstar responded by suing two defendants (instead of four) and by asserting its new claim "is asserted under California law." (First Am. Compl. ¶¶ 98, 99.) In both cases, Northstar made the wrong move. The two defendants Northstar selected do not owe fiduciary duties directly to Northstar or the fund's investors. And, under the internal affairs doctrine, Massachusetts law, not California law, governs investors' relationships to these defendants.

This Court also dismissed Northstar's breach of contract claim (Count III) and instructed Northstar "to add more specific allegations regarding the language plaintiff relies on to allege the formation of a contract, as well as each defendant's involvement." (Feb. 19, 2009, Order at 15.) Northstar responded by quoting language from a 1997 proxy statement. But none of that language has anything to do with the formation of a contract, and none of it relates to "the involvement" of Schwab Investments in such a contract.[1]

Northstar also took the opportunity to plead two new state law claims. The first (Count V) is for breach of the management contract between Schwab Investments and Charles Schwab Investment Management, Inc., and is asserted on behalf of fund investors as purported third-party beneficiaries. Northstar, however, does not set out any term of that contract — including any

---

[1] The Court declined to dismiss Northstar's claim for breach of the covenant of good faith and fair dealing (Count IV), holding that Northstar's allegations of "egregious and willful conduct" were "sufficient as a pleading matter." (Feb. 19, 2009, Order at 15.) But we had also moved to dismiss this claim for failure adequately to plead the existence of a contract. Because the Court found Northstar's breach of contract claim did not properly plead the existence of a contract, the Court should also have dismissed Northstar's claim for breach of the covenant of good faith and fair dealing.

1   term allegedly breached by Charles Schwab Investment Management.  Nor does Northstar

2   properly plead that investors were the intended third-party beneficiaries of that agreement.

3          Northstar's other new claim (Count VI) is for violation of section 17200 of California's

4   Business and Professions Code.  Northstar asserts this claim on its own behalf, rather than on

5   behalf of investors in the fund.  (*See* First Am. Compl. ¶ 133.)  But Northstar does not claim to

6   have suffered any "injury in fact" as a result of any unlawful conduct by Schwab, and, because it

7   gave no money to Schwab, it cannot properly claim any right to restitution.

8          Finally — and perhaps most importantly — all of Northstar's claims (including its federal

9   claim under section 13(a) of the '40 Act) seek, as damages, the losses allegedly suffered by

10   investors when the fund's NAV performance fell below that of the Lehman Brothers U.S.

11   Aggregate Bond Index.  (*See* First Am. Compl. ¶¶ 5, 74, 81, 93, 97.)  Claims based on the alleged

12   relative decline of the fund's share value must be asserted derivatively and cannot be asserted on

13   behalf of a class of investors.

14

15                                    **ARGUMENT**

16   **I.     NORTHSTAR'S CLAIMS MUST BE ASSERTED DERIVATIVELY IN
        COMPLIANCE WITH RULE 23.1.**

17          Northstar's claims are all derivative in nature and cannot be asserted as direct class claims.

18   Northstar has not pleaded them as derivative claims and has not complied with Rule 23.1.

19   Because this defect cuts across Northstar's entire complaint, we address it first.

20          The law of the state of incorporation sets out the standards for distinguishing between

21   direct and derivative claims.  *Kamen v. Kemper Fin. Servs.*, 500 U.S. 90, 108-09 (1991).  Schwab

22   Investments is a Massachusetts business trust; Massachusetts law therefore determines whether

23   claims against it are direct or derivative.  (*See* First Am. Compl. ¶ 16.)  Northstar pleads that

24   Charles Schwab Investment Management also is a Massachusetts corporation (*id.* ¶ 17), but it is,

25   in fact, a corporation organized under Delaware law.  (Waldron Decl. Ex. A; Charles Schwab

26   Investment Management, Inc. Corporation Records & Business Registration.)  No matter:  courts

27   typically apply the state law under which a mutual fund is formed to the fund and its investment

28   advisor as well.  *See Lapidus v. Hecht*, 232 F.3d 679, 682 (9th Cir. 2000) (Massachusetts law

1  applied to claims against mutual fund and investment advisor, even though advisor was not a

2  Massachusetts corporation); *Hamilton v. Allen*, 396 F. Supp. 2d 545, 549 (E.D. Pa. 2005)

3  (Massachusetts law applied to shareholder's claims against mutual fund and its investment

4  advisor).[2]

5       Under Massachusetts law, the distinction between direct and derivative claims turns on

6  whether the shareholder plaintiff alleges a direct injury in his personal capacity or alleges an

7  injury to the fund (along with a corresponding decline in the value of the fund's shares).  "[I]f the

8  wrong underlying [the] claim results in harm to a plaintiff shareholder only because the corporate

9  entity has been injured, with the plaintiff's injury simply being his proportionate share of the

10 entity's injury, the harm to the shareholder is indirect and his cause of action is derivative."

11 *Forsythe v. Sun Life Fin., Inc.*, 417 F. Supp. 2d 100, 112 (D. Mass. 2006); *Jackson v. Stuhlfire*,

12 547 N.E.2d 1146, 1148 (Mass. App. Ct. 1990) (a claim "alleging mismanagement or wrongdoing

13 on the part of corporate officers or directors normally states a claim of wrong to the corporation:

14 the action, therefore, is properly derivative") (citation and internal quotations omitted);

15 *Mutchka v. Harris*, 373 F. Supp. 2d 1021, 1027 (C.D. Cal. 2005) (under Massachusetts law, "[i]f

16 the injury merely is a reduction in the price of stock, then the suit must be derivative"); *Everett v.*

17 *Bozic*, No. 05 Civ. 00296 (DAB), 2006 WL 2291083, at *3 (S.D.N.Y. Aug. 3, 2006) ("Courts

18 analyzing Massachusetts . . . law generally have found that a reduction in share price is an

19 indirect injury, the remedy for which may be found in a derivative action.").  Thus, "a shareholder

20 may bring a direct action for injuries done to him in his individual capacity [only] if he has an

21 injury which is separate and distinct from that suffered by other shareholders."  *Sarin v. Ochsner*,

22 721 N.E.2d 932, 934-35 (Mass. App. Ct. 2000) (citation and internal quotations omitted).

23

24 _____

25       [2] In any event, Delaware's law is similar to Massachusetts's.  Under Delaware law, "the
analysis must be based solely on the following questions:  Who suffered the alleged harm – the
26 corporation or the suing stockholder – and who would receive the benefit of the recovery or other
remedy?"  *Tooley v. Donaldson, Lufkin & Jenrette, Inc.*, 845 A.2d 1031, 1035 (Del. 2004).  A
27 claim is direct only if the plaintiff can "demonstrate[] that he or she can prevail without showing
an injury to the corporation."  *Id*. at 1039.
28

1    Northstar's complaint plainly alleges derivative, not direct, claims.  Northstar's theory —

2    a theory which permeates all its claims — is that the fund deviated from its investment policies in

3    two ways:  by investing in collateralized mortgage obligations; and by investing more than 25

4    percent of its assets in mortgage-backed securities.  (*See* First Am. Compl. ¶¶ 3, 4.)  These two

5    alleged wrongs purportedly harmed the fund, because they "exposed the Fund and its

6    shareholders to tens of millions of dollars in losses stemming from a sustained decline in the

7    value of non-agency mortgage-backed securities."  (*Id.* ¶ 5.)  And the value of these losses

8    allegedly can be determined by comparing the fund's NAV performance to the performance of its

9    benchmark — the Lehman Brothers U.S. Aggregate Bond Index.  (*Id.* ¶¶ 80, 81, 93, 94.)

10   Thus, Northstar's theory depends on the fund's alleged underperformance — that is, the

11   decline in the value of fund shares as compared to the Lehman Index.  The fund's shareholders

12   allegedly shared in this alleged underperformance solely by reason of their ownership of fund

13   shares.  Their claims are, therefore, derivative in nature.  This conclusion is confirmed by a quick

14   review of each of Northstar's claims.

15   *Count I — Section 13(a)*.  Count I asserts a claim under section 13(a) of the '40 Act.  It

16   alleges the fund made investments "in violation of a stated fundamental investment policy," and

17   these investments allegedly "caused significant losses to the Fund's shareholders."  (*Id.* ¶ 97.)

18   What were these alleged losses?  The "losses in the Fund's value that resulted from the Fund's

19   deviation from their stated fundament [sic] investment policy."  (*Id.*)

20   This allegation confirms that investors do not claim to have suffered any individualized or

21   personal injury as a result of an alleged violation of section 13(a).  They were not harmed in a

22   way that is "separate and independent from the harm allegedly resulting to the Fund itself."

23   *Halebian v. Berv*, No. 06 Civ. 4099 (NRB), 2007 WL 2191819, at *12 (S.D.N.Y. July 31, 2007)

24   (applying Massachusetts law).  They were, instead, allegedly harmed by a decline in the value of

25   the fund, as measured by its NAV, and they all allegedly shared in this harm by reason of their

26   ownership of fund shares.  Northstar's allegations thus describe an "'undifferentiated harm' that

27   all shareholders suffered and was derived from harm to the Fund[] [itself]."  *In re Dreyfus*

28   *Aggressive Growth Mut. Fund Litig.*, No. 98 Civ. 4318 (HB), 2000 WL 10211, at *4 (S.D.N.Y.

1  Jan. 6, 2000) (claim for decline in value of mutual fund is derivative); *Mutchka*, 373 F. Supp. 2d

2  at 1028; *Everett*, 2006 WL 2291083, at *3.

3          Northstar suggests that part of its section 13(a) claim might involve a denial of

4  shareholders' voting rights; that is, the right of investors to approve a fundamental change in a

5  fund's investment objectives.  (*See* First Am. Compl. ¶ 96.)  But Northstar does not seek a

6  remedy related to voting rights.  It does not pray for an injunction, for example, or for rescission

7  of some corporate action.  Indeed, it does not even purport to represent the investors who owned

8  fund shares in August 2006, when the fund's objective allegedly was changed and when the vote

9  allegedly should have occurred.  (*See id.* ¶ 21 (proposed class period begins on August 31,

10 2007).)  Instead, Northstar's section 13(a) claim prays for only one remedy:  "damages in

11 connection with losses in the Funds' value."  (*Id.* ¶ 97.)

12         This claim, therefore, is derivative in nature.  The key case on this issue is *Lapidus v.*

13 *Hecht*, 232 F.3d 679 (9th Cir. 2000).  In *Lapidus*, the Ninth Circuit drew a careful line between

14 "voting rights" injuries and "diminution in value" injuries.  *Id.* at 683.  It held that a denial of a

15 shareholder's voting rights constitutes a "direct" injury, while a claim asserting a "diminution in

16 the value of" investors' shares as a result of violations of a fund's investment policies alleges

17 "only indirect harm to the shareholders," and must be asserted derivatively.  *Id.* at 683–84.

18         Judge Whyte recently reached the same conclusion in *Indiana Electrical Workers*

19 *Pension Trust Fund v. Dunn*, No. C-06-01711 RMW, 2007 WL 1223220, at *10 (N.D. Cal.

20 Mar. 1, 2007).  In *Dunn*, shareholders asserted breach of fiduciary duty and breach of contract

21 claims, alleging they were denied the right to vote on a severance package awarded to Carly

22 Fiorina.  Judge Whyte concluded these were derivative claims even though the plaintiffs

23 claimed they would have voted against the agreements had they been given the opportunity.  He

24 reasoned:  "[a]lthough plaintiffs argue that they have been injured because they were not given

25 their right to vote, the nature of their claims is essentially mismanagement of corporate assets

26 and derivative in nature."  *Id.*  Judge Whyte also noted that the alleged economic harm was

27 suffered by the corporation, and that "[h]ad the shareholders voted against any of the severance

28 or benefits given to Fiorina, the denied amounts would accrue to the corporation, not directly to

1   any shareholder." *Id.* at *11; *see also In re J.P. Morgan Chase & Co. S'holder Litig.*, 906 A.2d

2   766, 773 (Del. 2006) (although denial of voting rights was a direct claim, no damages could be

3   recovered by shareholders, as all economic harm was suffered by corporation); *In re*

4   *Transkaryotic Therapies, Inc.*, 954 A.2d 346, 362 (Del. Ch. 2008) (direct claim for denial of

5   right to cast an informed vote dismissed because no monetary damages could be awarded); *In*

6   *re Worldcom, Inc.*, 323 B.R. 844, 856 (S.D.N.Y. Bankr. 2005) (shareholders' voting rights

7   claims were derivative because the "Court does not see how the right to vote, in this case, is

8   differentiated from a diminution in value of the shares"); *Halebian*, 2007 WL 2191819, at *12

9   (voting rights claim is derivative where plaintiff did not allege any injury different from an

10  injury to the fund).

11          *Counts II Through V — Breach of Fiduciary Duty and Contract-Based Claims.*

12  Northstar's state law claims similarly allege a derivative theory of damages based on harm to the

13  fund as measured by the decline in the fund's NAV.  Count II alleges that Schwab breached its

14  fiduciary duties to investors by violating "the Fund's stated investment objective and policies."

15  (First Am. Compl. ¶ 109.)  As a result of these breaches, investors allegedly "sustained money

16  damages in connection with their ownership of shares in the Fund."  (*Id.* ¶ 110.)  These damages

17  are derivative in nature.  *Mutchka*, 373 F. Supp. 2d at 1027 (mutual fund shareholders' breach of

18  fiduciary duty claim was derivative because "the injury merely is a reduction in the price of

19  stock"); *Hamilton*, 396 F. Supp. 2d at 552 (fiduciary duty claim is derivative under Massachusetts

20  law because "[p]laintiffs seek essentially to recover for the diminution of assets *to the Funds*").

21          Count III alleges the fund's investment objectives were incorporated into contracts with

22  investors.  Alleged violations of those objectives purportedly caused investors to sustain "money

23  damages in connection with their ownership of shares in the fund."  (First Am. Compl. ¶ 119.)

24  Count IV makes identical allegations based on a theory of breach of the covenant of good faith

25  and fair dealing.  (*Id.* ¶ 124.)  And Count V makes identical allegations on behalf of investors as

26  alleged third-party beneficiaries of the fund's advisory contract.  (*Id.* ¶ 131.)  All these contract-

27  based claims are derivative, because the only injury Northstar alleges is a decline in the value of

28  the fund's shares.  *Ind. Elec. Workers Pension Trust Fund*, 2007 WL 1223220, at *10 (contract

claim is derivative because "the nature of [plaintiffs'] claims is essentially mismanagement of corporate assets"); *see also In re Triarc Co. Class & Derivative Litig.*, 791 A.2d 872, 878 (Del. Ch. 2001) (contract claim regarding executive compensation rejected; alleged injury was not "'separate and distinct from that suffered by other shareholders'") (citation omitted).

*Count VI — Section 17200.* Northstar's new section 17200 claim is also a derivative one. Northstar brings this claim solely on its own behalf; thus, it does not base its damages claim directly on the alleged underperformance of the fund's NAV (because it never owned fund shares). Instead, Northstar pleads that its clients — investors in the fund — "sustained money damages in connection with losses in the Fund's value that resulted from the Fund's deviation from its stated fundamental investment policies." (First Am. Compl. ¶ 138.) Northstar allegedly was hurt indirectly by these losses, in that it "suffered actual financial injury from the diminution of its management fee as a result of the underperformance of the Fund against the Index." (*Id.* ¶ 14.) Northstar's alleged injury is thus inescapably, albeit indirectly, linked to the performance of the fund's shares. That makes Northstar's section 17200 claim a derivative one. *Law v. Harvey*, No. C 07-00134 WHA, 2007 WL 2990426, at *6-7 (N.D. Cal. Oct. 11, 2007) (section 17200 claim was derivative because "the corporation is the one suffering injuries"); *Mieuli v. DeBartolo*, No. C-00-3225 JCS, 2001 WL 777091, at *16 (N.D. Cal. May 7, 2001) (section 17200 claim was derivative "to the extent that [it] is based on plaintiff's allegations of mismanagement, conversion and self-dealing").

Northstar's claims are all derivative. The damages its seeks on all its claims derive from the decline in the value of the fund's shares as compared to the Lehman Index. As a result, Northstar was obligated to comply with Rule 23.1, which imposes special procedural requirements on derivative claims. Northstar admittedly has not complied with these procedures. Northstar's complaint must therefore be dismissed.

## II.   COUNT II DOES NOT STATE A BREACH OF FIDUCIARY DUTY CLAIM.

Northstar's task, in re-pleading its fiduciary duty claim (Count II), could not have been more clear. This Court ordered Northstar "to carefully examine whether each of the defendants

1   named in this claim can in fact be named in such a claim, and under which state's law such a

2   claim is properly brought."  (Feb. 19, 2009, Order at 14-15.)

3        Northstar's responses did not correct the defects identified by the Court.  Northstar now

4   sues two defendants — Schwab Investments and Charles Schwab Investment Management —

5   even though neither entity owed a fiduciary duty directly to the fund's investors.  And Northstar

6   has pleaded that California law applies to its claim, even though California's internal affairs

7   doctrine mandates the application of Massachusetts law.  (First Am. Compl. ¶¶ 98-110.)

8        **A.**     <u>**Massachusetts Law Applies to Northstar's Breach of Fiduciary Duty Claim.**</u>

9        We begin with the application of California's choice-of-law rules.  One of California's

10  choice-of-law rules is the "internal affairs doctrine."  *State Farm Mut. Auto. Ins. Co. v. Super. Ct.*,

11  114 Cal. App. 4th 434, 442-49 (2003).  "The internal affairs doctrine is a conflict of laws

12  principle which recognizes that only one State should have the authority to regulate a

13  corporation's internal affairs -- matters peculiar to the relationships among or between the

14  corporation and its current officers, directors, and shareholders -- because otherwise a corporation

15  could be faced with conflicting demands."  *Edgar v. MITE Corp.*, 457 U.S. 624, 645 (1982).

16  "[U]niform treatment of the shareholders of a corporation is an important objective which can

17  only be attained by having their rights and liabilities with respect to the corporation governed by a

18  single law."  REST. (SECOND) OF CONFLICT OF LAWS, § 304, cmt. c (1971); *State Farm Mut. Auto.*

19  *Ins. Co.*, 114 Cal. App. 4th at 443 ("[i]t would be impractical to have issues such as these

20  governed by the conflicting local law rules of two or more states") (citation omitted).

21       California's internal affairs doctrine applies "to matters that involve 'the relations inter se

22  of the corporation, its shareholders, directors, officers, or agents.'"  *Grosset v. Wenaas*, 42 Cal.

23  4th 1100, 1106-07 n.2 (2008) (citing REST. (SECOND) OF CONFLICT OF LAWS § 302, cmt. a

24  (1971)).  This includes a claim by shareholders of breach of fiduciary duty where the claim

25  involves alleged mismanagement or a violation of internal corporate policies.  *Hausman v.*

26  *Buckley*, 299 F.2d 696, 703 (2d Cir. 1962) ("the 'internal affairs' rule has been applied repeatedly

27  in order to determine the fiduciary duty of a foreign corporation's directors"); *In re Textainer*

28  *P'ship Sec. Litig.*, No. C 05-0969 MMC, 2005 WL 1791559, at *5 (N.D. Cal. July 27, 2005)

MOTION TO DISMISS FIRST AMENDED COMPLAINT     8
CASE NO. CV-08-4119 SI
pa-1325614

1   ("courts have consistently applied the internal affairs doctrine to claims for breach of fiduciary

2   duty"); *In re VeriSign, Inc. Derivative Litig.*, 531 F. Supp. 2d 1173, 1215 (N.D. Cal. 2007)

3   (internal affairs doctrine applied to fiduciary duty claims related to backdated options); *Morton v.*

4   *Rank Am., Inc.*, 812 F. Supp. 1062, 1070 & n.12 (C.D. Cal. 1993) (law of state of incorporation

5   applied to breach of fiduciary duty claim related to director's use of corporate assets); *State Farm*

6   *Mut. Auto. Ins. Co.*, 114 Cal. App. 4th at 443 (courts "have consistently applied the law of the

7   state of incorporation to the entire gamut of internal corporate affairs") (citation omitted).

8        Indeed, Judge Alsup recently relied on the internal affairs doctrine in applying

9   Massachusetts law to a fiduciary duty claim involving the same defendants and another Schwab

10   mutual fund. *In re Charles Schwab Corp. Sec. Litig.*, No. C 08-01510 WHA, 2009 WL 262456,

11   at *15 (N.D. Cal. Feb. 4, 2009) (citing *Batchelder v. Kawamoto*, 147 F.3d 915, 920 (9th Cir.

12   1998)).  In so doing, Judge Alsup joined a host of courts applying the internal affairs doctrine to

13   claims by shareholders for breach of fiduciary duty involving mismanagement or violation of

14   corporate policies.  *See, e.g., Banjo Buddies, Inc. v. Renosky*, 399 F.3d 168, 179 n.10 (3d Cir.

15   2005) (fiduciary duty claim against director for overcharging company involved corporation's

16   "internal affairs"); *Nagy v. Riblet Prods. Corp.*, 79 F.3d 572, 576-77 (7th Cir. 1996) (minority

17   shareholder's claim for breach of fiduciary duty governed by law of state of incorporation; "the

18   liability of corporate investors and directors for intra-corporate affairs almost invariably depends

19   on the law of the place of incorporation" under the "'internal affairs'" doctrine); *Bybee Farms,*

20   *LLC v. Snake River Sugar Co.*, No. CV-06-5007-FVS, 2007 WL 3353765, at *2-3 (E.D. Wash.

21   Nov. 9, 2007) (internal affairs doctrine applied to fiduciary duty claim against president for

22   mismanagement).

23        Schwab Investments is a business trust formed under Massachusetts law.  California's

24   internal affairs doctrine thus mandates that Massachusetts law be applied to Northstar's fiduciary

25   duty claim against Schwab Investments.  Charles Schwab Investment Management is

26   incorporated in Delaware, but, because investors had no direct financial interest in that entity,

27   Massachusetts law also governs Northstar's claims against Charles Schwab Investment

28   Management.  *Batchelder*, 147 F.3d at 920 (plaintiff's "prerogative to step into the shoes of the

1    parent corporation as derivative plaintiff, or of the subsidiary as double derivative plaintiff, must

2    be determined by the law of the place of incorporation of the company in which he holds an

3    interest"); *Park v. Am. Circuit Breaker Corp.*, No. 1:06-CV-00549, 2008 WL 4596234, at *14-15

4    (M.D.N.C. Oct. 14, 2008) (shareholder's fiduciary duty claim governed by law of state of

5    incorporation of parent company, not other entities in which shareholder had no direct ownership

6    interest).[3]

        **B.      Massachusetts Law Does Not Create a Fiduciary Duty Running from a Fund
7                or Its Advisor Directly to Fund Shareholders.**

8

9            Under Massachusetts law, a corporation does not owe a fiduciary duty directly to its

10   shareholders.  *Howe v. Bank for Int'l Settlements*, 194 F. Supp. 2d 6, 28-29 (D. Mass. 2002)

11   (court is unaware of any Massachusetts authority "to the effect that a corporation itself owes a

12   fiduciary duty to its shareholders"); *Powers v. Ryan*, No. CIV. A 00-10295-00, 2001 WL 92230,

13   at *3 (D. Mass. Jan. 9, 2001) (no case under Massachusetts law "recognizes a fiduciary duty

14   owed by a corporation to a shareholder"); *see Merola v. Exergen Corp.*, 668 N.E.2d 351, 353

15   (Mass. 1996) (claim by minority shareholder dismissed; "the claim for breach of fiduciary duty

16   lies only against the majority shareholder, not against the corporation"); *Levesque v. Ojala*,

17   No. 20034485, 2005 WL 3721859, at *22 n.32 (Mass. Super. Ct. Dec. 8, 2005) (shareholder

18   could not assert fiduciary duty claim against corporation; "'no Massachusetts law (and [this court

19   is] unaware of any) to the effect that a corporation itself owes a fiduciary duty to its

20   shareholder'") (quoting *Howe*, 194 F. Supp. 2d at 28-29.)  This rule holds true in the mutual fund

21          [3] In any event, Delaware's fiduciary duty law is similar to Massachusetts's.  Delaware law
22   does not create a fiduciary relationship between a corporation and its shareholders.  *In re
     Wheelabrator Techs. Inc. S'holders Litig.*, No. 11495, 1992 WL 212595, at *9 (Del. Ch. Sept. 1,
23   1992) (corporation does not owe fiduciary duty under Delaware law).  Nor does Delaware law
     impose a fiduciary duty upon investment advisors who provide advice under contract to mutual
24   funds.  *In re Shoe-Town, Inc. Stockholders Litig.*, No. 9483, 1990 WL 13475, at *7 (Del. Ch. Feb.
     12, 1990) ("those serving as mere agents are generally *not* characterized as trustees and therefore
25   do not stand in a fiduciary relationship with the shareholders"); *Stuchen v. Duty Free Int'l, Inc.*,
     No. CIV.A. 94C-12-194, 1996 WL 33167249, at *11 (Del. Super. Ct. Apr. 22, 1996) (no
26   fiduciary relationship between shareholders and corporation's investment banker); *In re Trump
     Hotels S'holder Deriv. Litig.*, Nos. 96 Civ. 7820 DAB, 96 Civ. 8527 DAB, 2000 WL 1371317, at
27   *18 (S.D.N.Y. Sept. 21, 2000) (same).

28

1   context:  "there is insufficient basis to find that the law of . . . Massachusetts imposes [a fiduciary]

2   duty running to the individual investors of a mutual fund."  *Hamilton*, 396 F. Supp. 2d at 553 n.14

3   ("no personal fiduciary duty is owed to individual investors").

4          The reason for this rule is obvious: "it would make no sense to hold [the company]

5   responsible for its manager's breaches of a fiduciary duty to [the company] and its members, as it

6   would shift the cost of that breach to the company (and indirectly to its members), thereby

7   shifting the cost to the very parties harmed by the breach."  *ULQ, LLC v. Meder*, 666 S.E.2d 713,

8   718 (Ga. Ct. App. 2008); *see also Radol v. Thomas*, 772 F.2d 244, 258 (6th Cir. 1985) ("Liability

9   for breach of the directors' fiduciary obligation could not possibly run against the corporation

10  itself, for this would create the absurdity of satisfying the shareholders' claims against the

11  directors from the corporation, which is owned by the shareholders").

12         Schwab Investment thus owes no fiduciary duty directly to its shareholders.  Northstar,

13  however, attempts to plead around this problem.  It alleges that "Class members are not

14  shareholders of the Trust, but rather are shareholders of the Fund."  (First Am. Compl. ¶ 99.)  In

15  this, Northstar is plainly mistaken.

16         Schwab Investments is the issuer of investors' shares.  Schwab Investments is a registered

17  investment company under the Investment Company Act.  (*Id.* ¶ 16.)  "An investment company is

18  a vehicle that pools investor money for the purpose of investing in securities."  Kirsch, MUTUAL

19  FUND REGULATION, § 1:1, at 1-2 (2d ed. 2008).  Like most mutual funds, Schwab Investments is a

20  "separate legal entit[y]" organized "as a business trust or corporation."  *Id.* at 1-6.  And, like

21  many mutual funds, Schwab Investments is organized as a Massachusetts business trust.  (First

22  Am. Compl. ¶ 16.)

23         The fund, by contrast, is what is known as a "series fund," meaning that it is one of a

24  series of mutual funds offered by Schwab Investments.  Massachusetts law permits business trusts

25  to sponsor series of funds, and, in turn, the trust agreement governing Schwab Investments

26  permits it to issue "[s]hares of the Trust . . .  in one or more series as the Trustees may, without

27  shareholder approval, authorize."  (Waldron Decl. Ex. B; Agreement and Declaration of Trust,

28  Art. III § 1.)  *See* Schonfeld & Kerwin, *Organization of a Mutual Fund*, 49 BUS. LAW 107, 127

1  (Nov. 1993); Fleming, *Regulation of Series Investment Companies Under the Investment*

2  *Company Act of 1940*, 44 BUS. LAW 1179, 1179-80 (Aug. 1989) ("series fund has two or more

3  portfolios of securities, each offering a separate series or class of stock to investors").

4       The fund thus has no separate corporate existence. It has no registered shares, has never

5  issued shares, and has not offered to sell shares by means of a prospectus. Investors in the fund

6  purchase shares of Schwab Investments, which must segregate the assets of each fund series and

7  permit each series' shareholders to "vote separately on matters not affecting all series alike."

8  Schonfeld & Kerwin, 49 BUS. LAW at 116.

9       The fund's registration statement and SAIs clearly disclose this information. They explain

10  that "each fund is a series of Schwab Investments," and make it clear that investors are

11  "shareholders of a Massachusetts business trust." (Waldron Decl. Ex. C; Sept. 1, 2006 Statement

12  of Additional Information at *1, 84; *see also id.* Ex. D; Apr. 16, 1993 Registration Statement at

13  20.) But, of course, Northstar knows all this. After all, its complaint alleges that "[t]he Trust

14  consists of a series of mutual funds, including the Fund." (First Am. Compl. ¶ 16.)

15       Northstar's effort to position itself outside of Massachusetts's rule barring fiduciary duty

16  claims against the corporation, then, is based on a premise that is false as a matter of law.[4] The

17  fund's investors are shareholders of Schwab Investments, and, accordingly, are subject to

18  Massachusetts's prohibition of fiduciary duty claims by shareholders against their corporation.

19       Massachusetts law likewise does not impose fiduciary duties on an investment advisor

20  who, under contract, performs advisory services for a mutual fund. The other defendant sued by

21  Northstar — Charles Schwab Investment Management — is the investment advisor to Schwab

22  Investments. Its relationship, established by contract, is with Schwab Investments. It has no

23

24      [4] Northstar's argument is similar to one made, and rejected, in *Lapidus v. Hecht*. 232 F.3d

25  at 683. *Lapidus* involved a "Massachusetts business trust and open-ended series investment company which offer[ed] shares" in a family of mutual funds. As here, "[e]ach fund [wa]s a

26  series of the trust." *Id.* at 680. The Ninth Circuit analogized the investment trust, with its different series of funds, to a corporation with different classes of stock. It then concluded that,

27  regardless of the fund owned by shareholders, any claim by them "relating to the capital stock as an entirety, *or a particular class of stock*," must be asserted as a derivative claim. *Id.* at 683.

28

1   direct relationship with, and owes no duties to, the shareholders of Schwab Investments.  *See*,

2   *e.g.*, *In re BlackRock Mut. Funds Fee Litig.*, No. 04 Civ. 164, 2006 WL 4683167, at *8 (W.D. Pa.

3   Mar. 29, 2006) ("fiduciary duties regarding management of corporate funds runs to the

4   corporation, not the shareholders"); *Hamilton*, 396 F. Supp. 2d at 552 ("there is insufficient basis

5   to find that the law of either Ohio or Massachusetts imposes such a [fiduciary] duty running to the

6   individual investors of a mutual fund"); *Green v. Nuveen Advisory Corp.*, 186 F.R.D. 486, 490

7   (N.D. Ill. 1999) (investment advisor owed no duty directly to shareholders).[5]

8           **C.        Defendants Owe No Fiduciary Duty to Investors Under California Law.**

9           Northstar pleads its fiduciary duty claim is allowed under California law, but California

10  law produces the same result as Massachusetts law.  Under California law, "before a person can

11  be charged with a fiduciary obligation, he must either knowingly undertake to act on behalf of

12  and for the benefit of another, or must enter into a relationship which imposes that undertaking as

13  a matter of law."  *Comm. on Children's Television, Inc. v. Gen. Foods Corp.*, 35 Cal. 3d 197, 221

14  (1983).  Northstar does not plead any facts suggesting that Schwab Investments or Charles

15  Schwab Investment Management entered into fiduciary relationships directly with the fund's

16  investors.

17          Northstar previously argued for application of California law, but cited no authority for its

18  claim.  (Feb. 19, 2009, Order at 14.)  Now Northstar argues that Schwab Investments must owe a

19  duty to its shareholders, but, as already explained, courts have concluded it makes no sense for a

20  corporation to take on liability when it can only act through its managers and employees.  *See*

21  *supra* at § II(B).  Similarly, Charles Schwab Investment Management owes no duty directly to the

22  fund's investors, because its relationship is with Schwab Investments, not the fund's shareholders.

23  *Cf. Richardson v. Reliance Nat'l Indem. Co.*, No. C 99-2952 CRB, 2000 WL 284211, at *10

24  (N.D. Cal. Mar. 9, 2000) (under California law, accountancy firm did not owe a fiduciary duty

25

26          [5] Finally, neither Schwab Investments nor Charles Schwab Investment Management owed
    any fiduciary duty to Northstar.  Northstar does not claim to have contracted with, transacted
27  business with, or formed any other relationship with these entities that might give rise to a
    fiduciary relationship.  (*See* First Am. Compl. ¶¶ 8-15.)
28

1  directly to an executive of its client); *Skarbrevik v. Cohen, England & Whitfield*, 231 Cal. App. 3d

2  692, 703-04 (1991) (attorney for corporation does not owe duty to corporation's shareholders).

3  **III.   COUNT III DOES NOT PLEAD A CLAIM FOR BREACH OF CONTRACT.**

4       When it dismissed Northstar's prior breach of contract claim, this Court instructed

5  Northstar "to add more specific allegations regarding the language plaintiff relies on to allege the

6  formation of a contract, as well as each defendants' involvement." (Feb. 19, 2009, Order at 15.)

7       Northstar made many changes to its breach of contract claim, but none of the changes

8  includes "specific allegations" about "the formation of a contract." (*Id.*) Northstar did not add

9  any allegations about any discussions, negotiations, or communications between any investor and

10  anyone at Schwab Investments (the alleged contracting party). Northstar did not add any

11  allegations about contractual terms, consideration, or mutual assent. And while Northstar pleads

12  that the contract includes a proxy statement issued in 1997, it has not added any allegations as to

13  how this ten-year-old SEC filing purportedly was incorporated by reference into agreements

14  allegedly made in and after 2007.

15       Similarly, Northstar's new allegations do not include anything new about Schwab

16  Investments' purported "involvement." (*See* Feb. 19, 2009, Order at 15.) Northstar's new

17  allegations do not say Schwab Investments played any role in forming any contracts with

18  investors, and they do not allege that Schwab Investments played any role in the supposed breach

19  of those contracts. Northstar, in short, did not do what the Court asked. Its breach of contract

20  claim should again be dismissed.

21       **A.   Northstar Does Not Allege the Formation of Contracts with Investors.**

22       Northstar's contract theory goes something like this. Each class member placed a

23  purchase order for fund shares. Each purchaser dealt either directly with "Schwab" (meaning,

24  presumably, Charles Schwab & Co., Inc., the fund's underwriter) or indirectly through his or her

25  independent investment advisor. Each of these purchases somehow included "the terms of a

26  contract that the Trust would cause the Fund to continue to adhere to its fundamental investment

27  objectives and policies contained in the 1997 Proxy Statement and reiterated in Prospectuses and

28

1  in Statements of Additional Information." (First Am. Compl. ¶ 116.) Investors allegedly

2  "accepted the terms of that contract by purchasing shares in the Fund." (*Id.*)

3      Note that Northstar never points to any contract, or any other document, making the

4  fund's 1997 proxy statement, and subsequent SEC filings, part of any contract with investors.

5  How did all these SEC filings become part of each investor's purchase contract?  Northstar does

6  not say.  They were not incorporated by reference.  *See Cariaga v. Local No. 1184 Laborers Int'l*

7  *Union*, 154 F.3d 1072, 1074 (9th Cir. 1998) (language in one document is not incorporated by

8  reference into another document unless the reference is "'clear and unequivocal'") (citation

9  omitted).  And they were not part of any "bargaining" between Schwab Investments and class

10  members — after all, investors had no direct dealings with Schwab Investments, as they

11  purchased their shares through financial advisors or other intermediaries.

12      Moreover, the fund's 1997 proxy statement, and other SEC filings, do not bear any of the

13  hallmarks of a contract.  (Waldron Decl. Ex. H; July 25, 1997, Schwab Investments Proxy

14  Statement.)  They do not identify anyone as contracting parties.  *Westlye v. Look Sports, Inc.*, 17

15  Cal. App. 4th 1715, 1728 (1993) (ability to identify parties "essential to the validity of a

16  contract").  They do not state the typical terms of a sales contract, like the unit price, total price,

17  or payment terms.  *See* CAL. CIV. CODE § 1550 (contract must identify the parties to the

18  agreement, reflect their mutual assent, have a lawful object, and show consideration); *Rennick v.*

19  *O.P.T.I.O.N. Care, Inc.*, 77 F.3d 309, 315 (9th Cir. 1996) (mutual consent a "basic tenet of

20  contract law"); *Weddington Prods. Inc. v. Flick*, 60 Cal. App. 4th 793, 811 (1998) ("there is no

21  contract" "[i]f . . . a supposed 'contract' does not provide a basis for determining what obligations

22  the parties have agreed to").  They do not reflect any consideration — after all, investors who

23  received the 1997 proxy statement had already made their investments, and are not alleged to

24  have given anything additional once the vote was held.  CAL. CIV. CODE § 1550 (consideration

25  necessary element of a contract).  And the fund's SEC filings do not contain specific

26  commitments to performance.  To the contrary:  the prospectuses state that the funds reserve

27  certain rights, including the right "[t]o withdraw or suspend any part of the offering made by this

28  prospectus."  (Waldron Decl. Ex. E; July 13, 2007 Prospectus at 40.)

1       These characteristics, typical of SEC filings, explain why the Ninth Circuit has, at least

2  twice, concluded that a prospectus is not a contract. *Cohen v. Stratosphere Corp.*, 115 F.3d 695

3  (9th Cir. 1997), involved the initial public offering of Stratosphere Corporation. Investors

4  submitted applications to purchase shares in the offering and tendered payment for those shares,

5  but, because the offering was oversubscribed, they "did not receive all of the Units for which they

6  subscribed." *Id.* at 699. Plaintiffs argued that the prospectus "was an offer that was accepted

7  when the investors submitted subscription agreements and tendered payment." *Id.* at 701. But

8  the Ninth Circuit held the prospectus, plus payment, "did not create enforceable contracts" with

9  investors. *Id.* at 700–01. "At most, the Prospectus was a solicitation of offers, to be submitted in

10  the form of subscription agreements." *Id.* at 701. As a result, "the mutual assent and intent to be

11  bound that are required for the formation of a contract" were "absent." *Id.*

12       And, in *McKesson HBOC, Inc. v. New York State Common Retirement Fund, Inc.*,

13  339 F.3d 1087, 1092–93 (9th Cir. 2003), the Ninth Circuit held that a prospectus seeking

14  shareholder approval for a merger was not a contract. That case involved McKesson's ill-fated

15  acquisition of HBOC and its subsequent efforts to recover "unjust enrichment" from HBOC's

16  former shareholders. HBOC's shareholders argued that McKesson could not pursue equitable

17  remedies because a contract — the prospectus — governed the parties' relationship. But, once

18  again, the Ninth Circuit recognized that a prospectus "is a disclosure document (Form S-4)

19  required under the federal securities laws." *Id.* at 1092. To be sure, the prospectus was used as a

20  "solicitation of the shareholders' vote," but that did not convert the prospectus "into a contractual

21  offer." *Id.* The Ninth Circuit reasoned:

22             Although the Securities Act refers to the prospectus as a
             communication "which offers any security for sale," "the term

23             'offer' has a different and far broader meaning in securities law
             than in contract law."

24

25  *Id.* (citations omitted).

26

27

28

This Court has noted, correctly, that these cases "do not broadly hold that these documents can never constitute contracts."  (Feb. 19, 2009, Order at 15.)[6]  What *Cohen* and *McKesson* hold, instead, is that traditional contract law must be applied to determine whether an SEC filing contains the mutual promises, price terms, evidence of mutual assent, and evidence of mutual consideration necessary to the formation of a legally enforceable contract.  In most situations, SEC filings — which, after all, are styled as disclosure documents, not agreements — fail these tests.  *See, e.g.*, *Fid. Bank Nat'l Ass'n v. Aldrich*, No. Civ. A. 3-95-CV-2566H, 1998 WL 120296, at *2 (N.D. Tex. Mar. 5, 1998) (claim that "Merger Agreement, Proxy Statement, and the National Banking Act" created contract rights dismissed because plaintiffs "have not shown the existence of a contract"); *In re U.S. West, Inc. Sec. Litig.*, 201 F. Supp. 2d 302, 309 (D. Del. 2002) (proxy statement was not a promise supporting a claim of promissory estoppel), *aff'd*, 65 Fed. App'x 856 (3d Cir. 2003) (unpubl.); *Hewitt v. Mobile Research Tech., Inc.*, 285 Fed. App'x 694, 696 (11th Cir. 2008) (unpubl.) ("The 8-K form filed with the Commission is neither a contract nor an assignment").

Northstar's revised contract claim does not include allegations sufficient to show the fund's 1997 proxy statement, and subsequent prospectuses and SAIs, were all incorporated into each investor's purchase of fund shares.  Whatever contracts these investors made, they did not include all of Schwab Investments' proxy statements and SEC filings.

**B.     Schwab Investments Had No Involvement in Investors' Purchase Negotiations.**

The Court's order instructed Northstar to "add more specific allegations regarding . . . each defendants' involvement" regarding "the formation of a contract" and the purported breach of that contract.  (Feb. 19, 2009, Order at 15.)  Northstar, however, did not add any allegations about the "involvement" of Schwab Investments, the only defendant alleged to have been party to

---

[6] Tender offer proxy statements, for example, have, on some occasions, been held to form the basis of a contract with a tendering shareholder.  *See, e.g.*, *Caleb & Co. v. E.I. DuPont De Nemours & Co.*, 624 F. Supp. 747, 749-50 (S.D.N.Y. 1985) (assumes that tender offer proxy statement is a contractual offer).

1   any contract with investors.  (*See* First Am. Compl. ¶¶ 111-119.)  Northstar does not say one

2   word about Schwab Investments' role in dealing with investors — for the obvious reason that

3   investors purchased fund shares through investment advisors like Northstar.  Nor does Northstar

4   allege what role Schwab Investments played in the alleged deviations from the fund's investment

5   objectives.  (*See id.* ¶ 118.)

6          Because Northstar did not comply with the Court's instructions, its breach of contract

7   claim against Schwab Investments should be dismissed.

8          **C.      Northstar Alleges No Breach of Any Contract Provision.**

9          Northstar's contract claim focuses on statements contained in a 1997 proxy statement.

10  Northstar never explains how this ten-year-old document became part of purchase agreements

11  entered into on or after August 31, 2007 (when Northstar's proposed class period begins).  (*See*

12  First Am. Compl. ¶ 21.)

13         But, in some ways, that is the least of Northstar's problems with this theory.  The

14  particular portions of the 1997 proxy statement (and subsequent fund prospectuses and SAIs)

15  quoted by Northstar were changed in September 2006 — that is, exactly one year before the

16  beginning of Northstar's proposed class period.  Northstar alleges that the fund's earlier SEC

17  filings prohibited it from investing more than 25 percent of its assets in mortgage-backed

18  securities, and that Schwab Investments allegedly breached this "contract" term when it "caused

19  the Fund to concentrate more than 25% of its net assets in mortgage backed securities, including

20  CMOs, without a subsequent shareholder vote."  (*Id.* ¶¶ 114, 118.)  But, on September 1, 2006,

21  the fund's SAI was amended to state, explicitly, that the fund would no longer consider

22  "privately-issued mortgage-backed securities" as an industry for purposes of the fund's

23  concentration policy:

24               [T]he funds have determined that mortgage-backed securities issued
                 by private lenders do not have risk characteristics that are correlated
25               to any industry and, therefore, the funds have determined that
                 mortgage-backed securities issued by private lenders are not part of
26               any industry for purposes of the funds' concentration policies.  This
                 means that a fund may invest more than 25% of its total assets in
27               privately-issued mortgage-backed securities, which may cause the
                 fund to be more sensitive to adverse economic, business or political
28

developments that affect privately-issued mortgage-backed securities.

(Waldron Decl. Ex. C at *8.)  In other words, the fund's SAI was changed to explicitly permit what Northstar claims was earlier prohibited by contract.

Investors who purchased on or after August 31, 2007, cannot claim that their so-called contracts with Schwab Investments incorporated by reference the fund's outdated proxy statement and prospectuses, but did not incorporate the fund's current prospectuses and SAIs.  Northstar's breach of contract claim fails for this reason as well.

## IV. COUNT IV STATES NO CLAIM FOR BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING.

The Court previously declined to dismiss Northstar's claim for breach of the covenant of good faith and fair dealing (Count IV) because its allegations of "egregious and willful conduct" were "sufficient as a pleading matter."  (Feb. 19, 2009, Order at 15.)  We do not contest that ruling.

But a claim for breach of the covenant of good faith and fair dealing must be based on the existence of an underlying contract.  *Kim v. Regents of the Univ. of Cal.*, 80 Cal. App. 4th 160, 164 (2000) ("the existence of a contractual relationship is a prerequisite for any action for breach of the covenant"); *Pac. States Enters., Inc. v. City of Coachella*, 13 Cal. App. 4th 1414, 1425 (1993) (demurrer to claim for breach of covenant of good faith and fair dealing properly sustained in absence of valid contract).

This Court, in its earlier order, dismissed Northstar's breach of contract claim.  Accordingly, it should also have dismissed Northstar's claim for breach of the covenant of good faith and fair dealing.  If the Court again concludes that Northstar has failed to plead the existence of an enforceable contract, then it should also dismiss this claim for breach of the covenant of good faith and fair dealing.

## V.  COUNT V FAILS TO STATE A THIRD-PARTY BENEFICIARY CLAIM.

Northstar has asserted a new state law claim (Count V) for breach of the management contract between Schwab Investments and Charles Schwab Investment Management, Inc.  This claim is asserted on behalf of fund investors as purported third-party beneficiaries.

There is, of course, a management contract between Schwab Investments and Charles Schwab Investment Management.  (Waldron Decl. Ex. F; Investment Advisory and Administrative Agreement.)  Indeed, the agreement is publicly available and has been filed with the SEC as an exhibit to Schwab Investments' registration statement.  Northstar, however, has not chosen to attach the agreement or cite any of its terms.  Instead, it alleges, without citation, that this agreement "required the Investment Advisor, among other things, to manage the Fund consistent with the Fund's fundamental investment objectives and policies."  (First Am. Compl. ¶ 127.)  The agreement, in fact, contains no such term.

Northstar also alleges that all the fund's investors were the intended third-party beneficiaries of the agreement.  (*Id.* ¶ 128.)  But, to qualify as a third-party beneficiary, a plaintiff must show both that the contract was made expressly for the benefit of the plaintiff, and that the contract clearly expresses that intent.  CAL. CIV. CODE § 1559.  Northstar's complaint does not contain these allegations.

### A.  Northstar Does Not Allege Any Breach of the Investment Advisory Agreement.

The "Investment Advisory and Administration Agreement," dated June 15, 1994, sets out Charles Schwab Investment Management's obligations towards Schwab Investments.  It empowers Charles Schwab Investment Management to "supervise or perform for the Schwab Funds all aspects of the operations of the Schwab Funds . . . provide general economic and financial analysis and advice . . . and provide a continuous investment program for the Schwab Funds . . . ."  (Waldron Decl. Ex. F § 3.)  Charles Schwab Investment Management agreed to perform these services using "the same skill and care" as "it would use in providing services" to its own fiduciary accounts, and to comply "with all applicable Rules and Regulations of the SEC" and other governmental authorities.  (*Id.*)  In return, Schwab Investments agreed to hold Charles

1   Schwab Investment Management harmless "for any error of judgment or mistake of law or for

2   any loss suffered by the Trust in connection with the performance of" its duties so long as the

3   error did not amount to "willful misfeasance, bad faith or gross negligence . . . or from reckless

4   disregard . . . of its obligations and duties." (*Id.* § 8.)

5       Notably, none of these provisions does what Northstar alleges:  make Charles Schwab

6   Investment Management strictly liable under contract for allegedly failing to "manage the Fund

7   consistent with the Fund's fundamental investment objectives and policies."  (First Am. Compl.

8   ¶ 127.)

9       Northstar's Count V must be dismissed for failure properly to allege the specific terms of

10  the advisory agreement or any breach of a term of that agreement.

> ### B.    Investors Were Not the Express Intended Third-Party Beneficiaries of the Investment Advisory Agreement.

13      Non-parties can sue to enforce a contract only if they are the express intended

14  beneficiaries of that contract.  California Civil Code section 1559 states:  "A contract, made

15  expressly for the benefit of a third person, may be enforced by him at any time before the parties

16  thereto rescind it."[7]  Courts interpreting this provision have consistently held that the word

17  "expressly" means the contract must state the intent to benefit a third-party "in an express

18  manner; in direct or unmistakable terms; explicitly; definitely; directly."  *Smith v. Microskills San*

19  *Diego L.P.*, 153 Cal. App. 4th 892, 898 (2007) (citation omitted); *see Cal. Emergency Physicians*

20  *Med. Group v. Pacificare of Cal.*, 111 Cal. App. 4th 1127, 1138 (2003) (health care provider not

21  express third-party beneficiary of contracts between patients and their insurer); *Ochs v.*

22  *PacifiCare of Cal.*, 115 Cal. App. 4th 782, 795-96 (2004) (same).

23      The investment advisory agreement between Schwab Investments and Charles Schwab

24  Investment Management does not identify any intended third-party beneficiaries.  And while

25  Northstar alleges the fund's shareholders "were known and intended beneficiaries" of the

26

27      [7] California law applies pursuant to a choice of law clause in the agreement.  (Waldron
    Decl. Ex. F § 11.)

28

1   agreement, Northstar's complaint does not identify any clause stating the agreement was "made

2   expressly for the benefit" of investors.  (*See* First Am. Compl. ¶ 128.)  Northstar's third-party

3   beneficiary allegations are, therefore, insufficient.  CAL. CIV. CODE § 1559.

4        Northstar adds that the fund's shareholders "suffered actual and direct financial damages

5   as a result of" Charles Schwab Investment Management's alleged breaches of the investment

6   advisory agreement.  (First Am. Compl. ¶ 131.)  But an alleged injury is not enough to confer

7   third-party beneficiary status.  It "is well settled that Civil Code section 1559 excludes

8   enforcement of a contract by persons who are only incidentally or remotely benefited by it."

9   *Jones v. Aetna Cas. & Surety Co.*, 26 Cal. App. 4th 1717, 1724 (1994); *Ochs*, 115 Cal. App. 4th

10  at 795 ("incidental beneficiaries of a contractual agreement" cannot sue for breach of contract).

11       Northstar's new third-party beneficiary contract claim fails properly to allege the breach

12  of any contractual term, and is asserted on behalf of investors who do not qualify as intended

13  third-party beneficiaries.  Count V must therefore be dismissed.

14  **VI.**   **COUNT VI DOES NOT PLEAD A PROPER SECTION 17200 CLAIM.**

15       Northstar's other new state law claim is for violation of section 17200 of California's

16  unfair competition law.  CAL. BUS. & PROF. CODE § 17200.  Northstar does not allege this claim

17  on behalf of a class of investors in the fund; instead, this count "is asserted by Northstar."  (First

18  Am. Compl. ¶ 133.)

19       Northstar, however, has no standing to assert a section 17200 claim, because it does not

20  claim to have suffered any "injury in fact" — that is, any "invasion of a legally protected

21  interest."  And Northstar is not able to seek restitution — the only economic remedy available

22  under section 17200 — because it does not claim that Schwab wrongfully obtained any monies

23  from it.

24       **A.**   **Northstar Does Not Claim to Have Suffered Any Injury-in-Fact.**

25       Section 17204, as amended in 2004, limits the persons who can sue under section 17200.

26  It provides that a private individual can assert a section 17200 claim only if he "has suffered

27  injury in fact" and "has lost money or property as a result of such unfair competition."  CAL. BUS.

28

1 & PROF. CODE § 17204; *see Californians for Disability Rights v. Mervyn's, LLC*, 39 Cal. 4th 223,

2 227 (2006); *Daro v. Super. Ct.*, 151 Cal. App. 4th 1079, 1098 (2007).

3      An "injury in fact" consists of "'an actual or imminent invasion of a legally protected

4 interest.'"  *Hall v. Time, Inc.*, 158 Cal. App. 4th 847, 853 (2008) (citation omitted).  Because

5 Northstar relies on the "unlawful" prong of section 17200, it must base its claim on some

6 unlawful invasion of its own legal rights.  The predicate "unlawful" acts alleged in Northstar's

7 complaint, however, have nothing to do with Northstar.  The first "unlawful" act was a supposed

8 violation of section 13(a) of the '40 Act.  (First Am. Compl. ¶ 134.)  But that provision does not

9 create any legally protected interest in favor of Northstar.  All it does is prohibit certain conduct

10 by registered investment companies and afford investors certain voting rights.  Northstar, because

11 it was not a fund investor, did not share in those rights.  Northstar lacks standing to assert a

12 section 17200 claim for an alleged violation of section 13(a).  *Daro*, 151 Cal. App. 4th at 1098.

13      Northstar also claims that the defendants' alleged breaches of contract can form the

14 predicate "unlawful" acts underlying its section 17200 claim.  But, here again, Northstar does not

15 claim to have been a party to those contracts — all of the contracts alleged in its complaint

16 allegedly were made with, or made for the benefit of, the fund's shareholders.  Northstar does not

17 claim any of these alleged breaches constituted an "actual or imminent invasion of a legally

18 protected interest" belonging to it (rather than its clients).  *Hall*, 158 Cal. App. 4th at 853;

19 *Peterson v. Cellco P'ship*, 164 Cal. App. 4th 1583 (2008) (plaintiffs were not injured-in-fact by

20 seller's lack of license to sell the insurance plaintiffs purchased); *Medina v. Safe-Guard Prods.,*

21 *Int'l, Inc.*, 164 Cal. App. 4th 105, 114 (2008) (plaintiff "hasn't suffered any loss *because* of

22 [defendant's] unlicensed status").[8]

23      Finally, Northstar pleads that the "breaches of fiduciary duties" alleged in its complaint

24 were "unlawful" acts covered by section 17200.  (First Am. Compl. ¶ 134.)  But Northstar does

25

26      [8] Moreover, a breach of contract is not an "unlawful" business practice under section
17200.  *Puentes v. Wells Fargo Home Mortgage, Inc.*, 160 Cal. App. 4th 638, 645 (2008); *In re*

27 *Microsoft Corp. Antitrust Litig.*, 274 F. Supp. 2d 747, 750 (D. Md. 2003); *Nat'l Rural*
*Telecommns. Co-op. v. DIRECTV, Inc.*, 319 F. Supp. 2d 1059, 1074-75, 1077 (C.D. Cal. 2003).

28

MOTION TO DISMISS FIRST AMENDED COMPLAINT      23
CASE NO. CV-08-4119 SI
pa-1325614

1  not allege it had any fiduciary relationship with Schwab; the fiduciary duty claim alleged in its

2  complaint is asserted on behalf of investors, not Northstar.  Northstar's only relationship with

3  Schwab was a purely contractual one with Charles Schwab & Co., Inc.[9]

4        Northstar cannot say that any supposed breach of fiduciary duties by Schwab invaded any

5  right belonging to Northstar, rather than to the fund's shareholders.  Northstar therefore lacks

6  standing to assert a section 17200 claim, because it does not claim to have suffered any "injury in

7  fact," that is, any invasion of its own legal rights and interests.

8        **B.      Northstar Cannot Seek Restitution.**

9        Section 17200 does not allow damages claims.  Instead, it permits claims for restitution.

10  CAL. BUS. & PROF. CODE § 17203; W. Stern, *Bus. & Prof. C. Practice* § 8:2 at 8-1 (2008) ("[t]wo

11  remedies are available to private litigants bringing claims under §§17200 and 17500:  injunction

12  and restitution").

13        Northstar does not pray for an injunction, and it cannot properly seek restitution, because

14  it does not claim that Schwab Investments or Charles Schwab Investment Management

15  "wrongfully obtained" any money from it.  A restitution claim lies only against someone who has

16  "wrongfully obtained" monies from the plaintiff.  CAL. BUS. & PROF. CODE § 17203; *see also*

17  *Bank of the West v. Super. Ct.*, 2 Cal. 4th 1254, 1266 (1992) (monetary relief limited to

18  "disgorgement of money that has been wrongfully obtained"); *Watson Labs., Inc. v. Rhone-*

19  *Poulenc Rorer, Inc.*, 178 F. Supp. 2d 1099, 1122 (C.D. Cal. 2001) (restitution means "getting

20  back" money, not "getting money").

21        Northstar's complaint does not allege it paid any monies to Schwab Investments or

22  Charles Schwab Investment Management.  Instead, it claims that it suffered "money damages in

23

24        [9] Northstar's relationship with Charles Schwab & Co., Inc., was not a fiduciary one.  Their

25  contract forbids Northstar to "represent or imply in any way that Schwab and [Northstar] are
    affiliated or have any relationship except as investment manager and clearing broker."  (Waldron

26  Decl. Ex. G; July 16, 1996 Investment Manager Service Agreement § 2 "IM's Relationship to
    Schwab".)  This contract does not create a fiduciary relationship.  *Petersen v. Sec. Settlement*

27  *Corp.*, 226 Cal. App. 3d 1445, 1454 (1991) (clearing broker that provided no investment
    recommendations owed no fiduciary duty to account holder).

28

connection with losses in the Fund's value." (First Am. Compl. ¶ 138.)  This is not a proper basis

for a restitution claim.  *See, e.g., Marshall v. Standard Ins. Co.*, 214 F. Supp. 2d 1062, 1073-74

(C.D. Cal. 2000) (disgorgement of profits held improper remedy for section 17200 claim);

*Baugh v. CBS, Inc.*, 828 F. Supp. 745, 757–58 (N.D. Cal. 1993) (restitution requires that

defendant have taken something in value from plaintiff).

## CONCLUSION

After granting a motion to dismiss, a court "must . . . decide whether to grant leave to

amend."  *Berry-Mckee v. Walker*, No. C 99-4203 SI, 1999 U.S. Dist. LEXIS 19612, at *5 (N.D.

Cal. Dec. 10, 1999).  "Although there is a general rule that parties are allowed to amend their

pleadings, it does not extend to cases in which any amendment would be an exercise in futility."

*Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293, 1298 (9th Cir. 1998) (leave to amend denied

following dismissal pursuant to Rule 12(b)(6)); *see also In re Vantive Corp. Sec. Litig.*, 283 F.3d

1079, 1097 (9th Cir. 2002) (dismissal affirmed where it "would [have] be[en] pointless to give the

plaintiffs yet another chance to amend"); *Dimmick v. Lungren*, No. C 98-4137 SI, 1999 WL

111793, at *2, 4 (N.D. Cal. Feb. 19, 1999) (complaint dismissed with prejudice where any

amendment would be "futile").

Northstar has had two chances to plead its complaint — the second time with the benefit

of direct judicial guidance.  Its failure to correct the errors identified previously by this Court

suggests it would be "futile" and "pointless" to allow further leave to amend.  We therefore

respectfully request that Northstar's complaint be dismissed with prejudice.

Dated: March 26, 2009

DARRYL P. RAINS
DOROTHY L. FERNANDEZ
K.C. ALLAN WALDRON
MORRISON & FOERSTER LLP

By: _____/s/ Darryl P. Rains_____
Darryl P. Rains

Attorneys for defendants Schwab Investments
and Charles Schwab
Investment Management, Inc.