Joseph J. Tabacco, Jr. (75484)
jtabacco@bermanesq.com
Christopher Heffelfinger (118058)
cheffelfinger@bermanesq.com
James C. Magid (233043)
jmagid@bermanesq.com
**BERMAN DEVALERIO LLP**
425 California Street, Suite 2100
San Francisco, CA  94104
Telephone:  (415) 433-3200
Facsimile:   (415) 433-6382

**Attorneys for Plaintiff Northstar Financial Advisors, Inc.**

**[Additional Counsel Appear on Signature Page]**

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| NORTHSTAR FINANCIAL ADVISORS, INC. on Behalf of Itself and all Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> SCHWAB INVESTMENTS and CHARLES SCHWAB INVESTMENT MANAGEMENT, INC. <br><br> Defendants. | Case No. C 08-04119 SI <br><br> CLASS ACTION <br><br> **PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT** <br><br> Date:          May 1, 2009 <br> Time:         9:00 a.m. <br> Courtroom:   10 <br> Judge:        Hon. Susan Illston |

## **TABLE OF CONTENTS**

STATEMENT OF ISSUES (Civil Local Rule 7-4)....................................................................... 1

PRELIMINARY STATEMENT ............................................................................................... 1

ARGUMENT ........................................................................................................................... 2

I. PLAINTIFF'S SECTION 13(a) CLAIMS ARE DIRECT NOT DERIVATIVE................. 2

    A. The Court's Prior Opinion Established that Plaintiff's Section 13(a) Claims Are Direct, Not Derivative.................................................................................. 2

    B. *Lapidus* holds that Northstar's Section 13(a) Claims Are Direct ............................... 4

II. NORTHSTAR HAS ESTABLISHED A DIRECT CLAIM FOR BREACH OF CONTRACT ....................................................................................................................... 7

III. PLAINTIFF HAS PLED DIRECT CLAIMS FOR BREACH OF FIDUCIARY DUTY AGAINST THE TRUST AND THE INVESTMENT ADVISOR ....................................... 9

    A. Northstar Correctly Asserted Its Fiduciary Duty Claims Under California Law ......... 9

    B. Northstar's Fiduciary Duty Claims Are Viable Under California Law...................... 12

    C. Northstar's Fiduciary Duty Claims Are Also Viable Under Massachusetts Law ...... 14

    D. Northstar Properly Asserted it's Fiduciary Duty Claims as Direct Claims ............... 16

IV. NORTHSTAR HAS PLED A VIABLE THIRD-PARTY BENEFICIARY CLAIM ......... 17

    A. Northstar Alleged a Breach of the Advisory Agreement........................................... 17

    B. The Fund's Investors Were the Express Intended Third-Party Beneficiaries of the Investment Advisory Agreement .............................................................................. 18

V. IF THE COURT DENIES THE DEFENDANT'S MOTION TO COMPEL ARBITRATION AND REACHES THE SECTION 17200 CLAIM, NORTHSTAR HAS ADEQUATELY PLED SUCH A CLAIM. ................................................................. 22

CONCLUSION...................................................................................................................... 24

**TABLE OF AUTHORITIES**

1

2   **Cases**

3   *Appollo Capital Fund, LLC v. Roth Capital Partners, LLC*, 158 Cal.App.4th 226 (2007). 12, 13, 14

4
    *Armstrong World Industries, Inc. v. Superior Court,* 215 Cal. App. 3d 951 (1989) ........................ 8

5
    *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ....................................................... 2, 18
6

7   *Bergeron ex rel. Ridgewood Elec. Power Trust V v. Ridgewood Elec. Power Trust V,*
        No. 07-10622-RGS, 2007 WL 1959209 (D.Mass. July 5, 2007) ................................ 15
8

9   *Blatt v. Merrill Lynch, Pierce, Fenner & Smith,* 916 F. Supp. 1343 (D.N.J. 1996) ........................ 5

10  *Charles Lowe Co. v. XOMOX Corp.*, No. C 95-0498 SI, 1999 WL 1293362
        (N.D. Cal. Dec. 27, 1999) ........................................................................... 19

11
    *Cohen v. Stratosphere Corp.*, 115 F. 3d 695 (9th Cir. 1997)........................................... 8
12

13  *Cortez v. Purolator Air Filtration Prods. Co.*, 23 Cal. 4th 163 (Cal. 2000).................................. 24

14  *Daro v. Superior Court*, 151 Cal. App. 4th 1079 (2007)................................................. 23

15  *Doe v. Harbor Schools, Inc.*, 446 Mass. 245 (2006) ................................................... 15

16  *Edgar v. MITE Corp.*, 457 U.S. 624 (1982) ........................................................... 10

17  *Everett v. Bozic*, No. 05 Civ. 00296 (DAB), 2006 WL 2291083 (S.D.N.Y. Aug. 3, 2006).............. 6

18  *Fogel v. Chestnutt,* 668 F.2d 100 (2d Cir. 1981) ..................................................... 3

19  *Franklin Life Ins. Co. v. Commonwealth Edison Co.*, 451 F. Supp. 602 (S.D. Ill. 1978) ................ 8
20
    *Fraternity Fund Ltd. v. Beacon Hill Asset Management LLC.*, 376 F. Supp. 2d. 385
21      (S.D.N.Y. 2005).................................................................................... 16

22  *Frontier Oil Corp. v. RLI Ins. Co.*, 153 Cal.App.4th 1436 (2007) ................................... 10

23  *Gallus v. Ameriprise Financial Inc.*, No. 07-2945, 2009 WL 928920
24      (8th Cir., April 8, 2009) ............................................................................. 13

25  *Geo. Knight & Co., Inc. v. Watson Wyatt & Co.*, 170 F.3d 210 (1st Cir.1999)............................. 15

26  *Green v. Brown*, 276 F. Supp. 753 (S.D.N.Y. 1967), *remanded on other grounds*,
27      398 F.2d 1006 (2d Cir. 1968)....................................................................... 6

28  [C 08-04119 SI] PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANTS'
    MOTION TO DISMISS FIRST AMENDED COMPLAINT                                              ii

*Green v. Brown*, 398 F.2d 1006 (2d Cir. 1968) .................................................................. 5

*Hayes Children Leasing Co. v. NCR Corp.,* 37 Cal.App.4th 775 (1995) ......................................... 21

*HBOC, Inc. v. New York State Common Ret. Fund*, 339 F.3d 1087 (9th Cir. 2003)........................ 8

*Hotel Employees & Rest. Employees Local 2 v. Vista Inn Mgmt. Co.*,
    393 F. Supp. 2d. 972 (N.D.Cal 2005) .................................................................................. 21

*Hunt v. Alliance N. Am. Gov't Income Trust, Inc.,* 159 F. 3d 723 (2d Cir. 1998) ........................... 5

*In re Cellular 101, Inc.,* 539 F. 3d 1150 (9th Cir. 2008) ............................................................... 3

*In re Charles Schwab Corp. Sec. Litig.*, No C. 08-01510 WHA, 2009 WL 262456
    (N.D.Cal. Feb. 4, 2009)......................................................................................................... 11

*In re Gulf Oil/Cities Serv. Tender Offer Litig.*, 725 F. Supp. 712 (S.D.N.Y. 1989)........................ 8

*In re Hilson*, 448 Mass. 603 (2007) ............................................................................................... 15

*In re Mutual Funds Investment Litigation*, 519 F.Supp.2d. 580 (D.Md. 2007).............................. 12

*In re Nucorp Energy Sec. Litig.*, 661 F. Supp. 1403 (S.D.Cal. 1987) ............................................. 9

*Indiana Electrical Works Pension Trust Fund, IBEW v. Dunn*, C-06-01711 RMW,
    2007 WL 1223220 (N.D. Cal. Mar. 1, 2007)........................................................................ 6

*Jones v. Aetna Cas. & Surety Co.*, 26 Cal.App.4th 1717 (1994).................................................... 20

*Karpus v. Hyperion Capital Management*, No. 96 Civ. 4671 (SAS),
    1996 WL 668860 (S.D.N.Y. Nov. 18, 1996)........................................................................ 5

*Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487 (1941) .......................................................... 9

*Knight v. C.I.R.*, 128 S. Ct. 782 (2008)......................................................................................... 13

*Krouner v. American Heritage Fund, Inc.*, 899 F. Supp. 142 (S.D.N.Y. 1995)............................... 5

*Lapidus v. Hecht*, 232 F.3d 679 (9th Cir. 2000) ................................................................. 1, 4, 5, 6

*Lapidus v. Hecht*, C98-3130 MMC, 2002 WL 1034042 (N.D. Cal. May 17, 2002)....................... 5

*Leighton v. One William St. Fund, Inc.*, No. 64 Civ 2547, 1965 U.S. Dist. LEXIS 9430
    (S.D.N.Y. July 2, 1965) ...................................................................................................... 6

*Maffei v. Roman Catholic Archbishop of Boston*, 449 Mass. 235 (2007) ...................................... 15

*Marks v. Ocwen Loan Servicing*, No. C 07 02-133 S, 2007 U.S. Dist. LEXIS 65590
(N.D. Cal. Aug. 23, 2007) ........................................................................................ 24

*Mills v. Polar Molecular Corp.,* 12 F. 3d 1170 (2d Cir. 1993) ......................................... 8

*Monheit v. Carter*, 376 F. Supp. 334 (S.D.N.Y. 1974) ..................................................... 5

*Muňoz v. County of Imperial*, 667 F.2d 811 (9th Cir. 1982) ............................................ 3

*Northstar Financial Advisors, Inc. v. Schwab Investments*, C 08-4119 SI,
2009 WL 415616 (N.D. Cal. Feb. 19, 2009) ............................................ 2, 9, 10, 11

*Oakland Raiders v. National Football League,* 93 Cal.App.4th 572 (2001)................... 16

*Ohio Bureau of Workers Comp. v. MDL Active Duration Fund, Ltd.*,
476 F. Supp. 2d. 809 (S.D.Ohio 2007) ................................................................... 21

*Omni Financial Corp. v. Cohen*, No. 91 Civ. 6837 (RO) (THK), 1994 WL 97125
(S.D.N.Y. Mar. 22, 1994) ......................................................................................... 5

*Overstock.com, Inc. v. Gradient Analytics, Inc.*, 151 Cal. App. 4th 688
(Cal. App. 1st Dist. 2007) ....................................................................................... 22

*Patsos v. First Albany Corp.*, 433 Mass. 323 (2001) ...................................................... 15

*People ex rel. Kennedy v. Beaumont Inv., Ltd.*, 111 Cal. App. 4th 102
(Cal. App. 6th Dist. 2003) ....................................................................................... 24

*Phillips v. Morgan Stanley*, No. 01 CIV. 8139 DC, 2002 WL 31119441
(S.D.N.Y. Sept. 25, 2002) ......................................................................................... 5

*Potomac Capital Markets Corp. v. Prudential-Bache Corp. Dividend Fund, Inc.*,
726 F. Supp. 875 (S.D.N.Y. 1989) ........................................................................... 5

*Puentes v. Wells Fargo Home Mortgage, Inc.*, 160 Cal. App. 4th 638 (2008)............... 23

*Rodney v. KPMG Peat* Marwick, 143 F.3d 1140 (8th Cir. 1998) ..................................... 5

*S. California Hous. Rights Ctr. v. Ass'n and Los Feliz Towers Homeowners Ass'n.*,
*Bd. of Dirs.* 426 F. Supp. 2d 1061 (C.D. Cal. 2005) ............................................. 22

*Sarin v. Ochsner*, 721 N.E.2d 932 (Mass. App. Ct. 2000) .............................................. 5

*Shersher v. Superior Court*, 154 Cal. App. 4th 1491 (Cal. App. 2d Dist. 2007)............. 23

*Smith v. Microskills San Diego L.P.*, 153 Cal.App.4th 892 (2007) ............................... 19

*Smith v. Smith*, 222 Mass. 102 (1915) ................................................................................ 15

*Sorrenson v. H & R Block, Inc.*, No. CIV.A.99-10268-DPW, 2002 WL 31194868
    (D.Mass. Aug. 27, 2002)............................................................................................... 15

*Spinks v. Equity Residential Briarwood Apartments*, 171 Cal.App.4th 1004 (2009).......... 17, 18, 21

*Strigliabotti v. Franklin Resources, Inc.*, No. C 04-00883 SI, 2005 U.S. Dist. LEXIS 9625
    (N.D. Cal. March 7, 2005) ....................................................................................... 5, 14, 16

*Tooley v. Donaldson, Lufkin, & Jenrette, Inc.*, 845 A.2d 1031 (Del. 2004)................................... 16

*Troyk v. Farmers Group, Inc.*, 171 Cal. App. 4th 1305 (2009)............................................... 22, 23

*Vogel v. Jobs*, No. C 06-5208 JF, 2007 WL 3461163 (N.D.Cal. Nov. 14, 2007) ......................... 16

*Washington Mut. Bank v. Super. Ct*, 24 Cal.4th 906 (2001)...................................................... 9, 10

*Zurich Cap. Markets Inc.*, 332 F. Supp. 2d. 1087 (N.D.Ill. 2004) ................................................ 21

**Statutes**

15 U.S.C. §80(a) ................................................................................................................ 1

15 U.S.C. §80a-13.............................................................................................................. 1

15 U.S.C. §80a-13(a) ......................................................................................... 2, 4, 6, 7, 22

15 U.S.C. §80a-13(a)(3).................................................................................................... 5, 6

Cal. Bus. & Prof. Code §172003 ....................................................................................... 23

Cal. Civil Code §1559 ....................................................................................................... 17

Cal. Civ. Code, §1605....................................................................................................... 8

Cal.Prob. Code §16046(a)................................................................................................. 13

**Other Authorities**

1 A.W. Scott & W.F. Fratcher, *Trusts* §2.4 (4th ed.1987)................................................ 15

*Restatement (Second) of Trusts* §176, p. 381 (1957) ...................................................... 13

1
2

### STATEMENT OF ISSUES
### (Civil Local Rule 7-4)

3
4
5
6

1.    Whether defendants' argument that plaintiff's Section 13(a) claims under the Investment Company Act of 1940, 15 U.S.C. §80(a), are derivative is precluded by the law of the case because this Court's prior February 19, 2009 Opinion necessarily determined that those claims are direct.

7
8

2.    Whether plaintiff's 13(a) claims are direct on behalf of investors or derivative on behalf of the Schwab Total Bond Market Fund (the "Fund").

9
10
11
12
13

3.    Whether plaintiff has stated a claim against Schwab Investments (the "Trust") for breach of contract because the Trust failed to manage the Fund in a manner consistent with investment policies and objectives stated in the July 25, 1997 Proxy Statement (that were only changeable by shareholder vote) and repeated in subsequent Securities and Exchange Commission filings and mailings to investors.

14
15

4.    Whether the Trust and Charles Schwab Investment Management (the "Investment Advisor") breached their fiduciary duties to plaintiff and other investors in the Fund.

16
17

5.    Whether plaintiff and other investors in the Fund were third party beneficiaries of the Trust's Investment Advisory and Administration Agreement with the Investment Advisor.

18
19

6.    Whether plaintiff has stated a claim under section 17200 based on defendants' unlawful conduct.

20

### PRELIMINARY STATEMENT

21
22
23
24
25
26
27

Defendants' renewed motion to dismiss should be denied.  Foremost, defendants' motion violates the law of the case, which holds that beneficial owners of mutual fund shares (and their assignees) have standing to bring direct (not derivative) claims under Section 13(a) of the Investment Company Act, 15 U.S.C. §80a-13.  Additionally, under *Lapidus v. Hecht*, 232 F.3d 679 (9th Cir. 2000), there is no room for doubt that plaintiff Northstar Financial Advisor, Inc.'s Section 13(a) and breach of contract claims are direct, not derivative.  Northstar's fiduciary duty claims are also direct inasmuch as fiduciary duties are owed to both investors and to the Fund.

28

For the reasons further stated herein, defendants' motion to dismiss plaintiff's state claims (breach of contract, breach of fiduciary, third party beneficiary of a contract, and covenant of good faith and fair dealing) should be denied as well.  Those claims are subject to the liberal pleading standards of Fed. R. Civ. P.  As this Court stated in denying in part and granting in part defendants' initial motion to dismiss, "the Court must assume that the plaintiff's [well-pled] allegations are true and must draw all reasonable inferences in the plaintiff's favor."  *Northstar Financial Advisors, Inc. v. Schwab Investments*, C 08-4119 SI, 2009 WL 415616, at *3 (N.D. Cal. Feb. 19, 2009).  "To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must allege 'enough facts to state a claim to relief that is plausible on its face.'"  *Id.* at *4, quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  Unquestionably, Northstar has more than satisfied this standard.  Defendants' motion should be denied in all respects.

## ARGUMENT

## I.     PLAINTIFF'S SECTION 13(a) CLAIMS ARE DIRECT NOT DERIVATIVE

### A.     The Court's Prior Opinion Established that Plaintiff's Section 13(a) Claims Are Direct, Not Derivative

Defendants, on their initial motion to dismiss, conceded that beneficial purchasers have standing to pursue claims under Section 13(a) of the Investment Company Act, 15 U.S.C. §80a-13(a), but argued that Northstar was not a beneficial purchaser.  *See* Defendants' Motion to Dismiss, dated November 20, 2008 at 6 ("Northstar does not allege any right to recover on its claim.  It did not purchase fund shares for its own account, and it did not lose any money in the fund."); Defendants' Reply Memorandum In Support of Motion to Dismiss, dated January 9, 2009 at 1 ("We showed, in our opening brief, that Northstar lacks standing to bring this action because it never purchased or owed fund shares.").  *See also Northstar Financial Advisors, Inc. v. Schwab Investments*, *supra*, 2009 WL 415616, at *5 ("Defendants contend that because Northstar is an investment advisor that only purchased shares for its clients and not for itself, Northstar lacks constitutional standing.").

This Court substantially rejected defendants' motion directed to standing, stating that

1    "Northstar cannot bring claims *on behalf of its clients* simply by virtue of its status as an investment

2    advisor.   The assignment of claims from one of Northstar's clients would, however, cure this

3    deficiency.   The Court also finds that Northstar would likely have standing to sue *in its own right*

4    due to the direct financial injury it alleges that it suffered due to the decline in total value of assets

5    under management."  *Id.* at *7; footnote omitted; emphasis added.

6         Defendants now (re-)argue that the prior motion presented the wrong issue and that no

7    investor has standing to sue "in its own right," but may only sue derivatively on behalf of the Fund.

8    *See* Defendants' Motion to Dismiss First Amended Complaint dated March 26, 2009 ("Def. Mem.")

9    at 2 ("Northstar's claims are all derivative in nature and cannot be asserted as direct class claims.").

10   Inasmuch as defendants' prior motion created "the law of the case" that beneficial holders,

11   assignees, and investment managers (under certain circumstances) have direct claims, defendants are

12   estopped from arguing that beneficial holders may only sue derivatively.

13        A similar circumstance arose in *Fogel v. Chestnutt,* 668 F.2d 100 (2d Cir. 1981).  In *Fogel*,

14   the defendant made certain arguments on appeal but did not argue that the ICA did not provide a

15   private right of action.  On a second appeal in the case, the defendant sought to argue that there was

16   no private right of action.  The Second Circuit rejected the argument, holding that:

17            Defendants are also precluded from now litigating the existence of an implied cause
             of action for damages for their violations of the ICA because of the principle of the
18            law of the case. We begin by dismissing defendants' contention that this principle is
             inapplicable because in Fogel I we did not expressly affirm the existence of a
19            private cause of action. The principle applies as well to everything decided by
             necessary implication. [Citations omitted.].  It would be absurd that a party who has
20            chosen not to argue a point on a first appeal should stand better as regards the law
             of the case than one who had argued and lost.  [668 F.2d at 108.]
21

22   *See also In re Cellular 101, Inc.,* 539 F. 3d 1150, 1155 (9th Cir. 2008) ("We 'need not and do not

23   consider a new contention that could have been but was not raised on the prior appeal.'"), *quoting*

24   *Muñoz v. County of Imperial*, 667 F.2d 811, 817 (9th Cir. 1982).

25        Defendants did not argue that Northstar's claims were derivative on the initial motion, and

26   that issue was necessarily decided by the Court in holding that Northstar had standing to assert the

27   class's claims.  Defendants are now precluded from relitigating the issue.

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### B. *Lapidus* holds that Northstar's Section 13(a) Claims Are Direct

In any event, this Court's February 19, 2009 decision was clearly right in holding that Northstar and the Class had direct claims under Section 13(a). In *Lapidus*, 232 F.3d 679, plaintiff sought "to recover losses [of $9,560.54] sustained by the mutual fund as a result of short sales made without shareholder approval." *Id.* at 680. *Lapidus* was on appeal from a District Court opinion that "concluded that the plaintiffs' claims were derivative claims and that the plaintiffs lacked standing to bring them in a direct action because they did not allege an injury separate and distinct from any injury suffered by all fund shareholders." *Id.* at 681.

The Ninth Circuit, in applying Massachusetts law (because the trust was organized under the laws of Massachusetts), held that to bring a "direct action under Massachusetts law, a plaintiff must allege an injury distinct from that suffered by shareholders generally or a wrong involving one of his or her contractual rights as a shareholder, such as the right to vote." *Lapidus* held that the gravamen of a claim pursuant to Sections 13(a)(2) and 13(a)(3) is the violation of a shareholder's right to vote – to control the fund's fundamental investment objectives and policies – notwithstanding that the violation may also give rise to financial injury:

> [T]he plaintiffs allege violations of their contractual rights as shareholders to vote on proposed changes to the short sale and senior security restrictions spelled out in the registration statement filed with the SEC. These allegations are sufficient to satisfy the injury requirement for a direct action under Massachusetts law.

*Lapidus* was correctly decided for the additional reason that each investor in a mutual fund experiences a direct financial injury from the funds' deviation from a fundamental investment objective or policy depending on the date and price of the investors' purchases and sales, or whether the investor continues to own shares of the Fund. *See* First Amended Complaint for Violation of the Investment Company Act of 1940, dated March 2, 2009 (the "Amended Complaint") (quantifying the 12.64% underperformance of the Fund against the Index from August 31, 2007 through February 27, 2009). That financial injury is not the same for all investors in the Fund. Each investor in the Fund (unlike the Fund itself) has a quantifiable personal financial injury resulting from the Fund's deviation in investment policy or objective. That loss gets passed through to the investor either

[C 08-04119 SI] PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT                4

1    when it sells its shares in the Fund or as reflected as a reduced NAV.  *See Sarin v. Ochsner*, 721

2    N.E.2d 932, 934-35 (Mass. App. Ct. 2000) ("'a shareholder may bring a direct action for injuries

3    done to him in this individual capacity if he has an injury which is separate and distinct from that

4    suffered by other shareholders."') (cited Def. Mem. at 3).

5         Unlike a stock corporation, where the value of the derivative claim may be reflected in the

6    stock's trading price, here the shares are redeemed at NAV and no value can be attributed to a

7    derivative claim.  The Fund itself is not injured because when it redeems a share or is obligated to

8    redeem a share, it passes on the diminution in value caused by the Fund's deviation from a

9    fundamental investment objective or policy to the shareholder.  *See Strigliabotti v. Franklin*

10   *Resources, Inc.*, No. C 04-00883 SI, 2005 U.S. Dist. LEXIS 9625, at *24-25 (N.D. Cal. March 7,

11   2005).

12        Every court that has addressed the private right of action under Section 13(a) has considered

13   the claim to be direct.  *See Lapidus v. Hecht*, 232 F. 3d 679, 681, n. 4; *Hunt v. Alliance N. Am. Gov't*

14   *Income Trust, Inc.,* 159 F. 3d 723, 731-32 (2d Cir. 1998); *Rodney v. KPMG Peat* Marwick, 143 F.3d

15   1140, 1142 (8th Cir. 1998); *Green v. Brown*, 398 F.2d 1006, 1008 (2d Cir. 1968); *Phillips v. Morgan*

16   *Stanley*, No. 01 CIV. 8139 DC, 2002 WL 31119441 (S.D.N.Y. Sept. 25, 2002); *Lapidus v. Hecht*,

17   C98-3130 MMC, 2002 WL 1034042 (N.D. Cal. May 17, 2002); *Karpus v. Hyperion Capital*

18   *Management*, No. 96 Civ. 4671 (SAS), 1996 WL 668860, at *2 (S.D.N.Y. Nov. 18, 1996) ("courts

19   of this jurisdiction have long recognized an implied right of action under this section."); *Blatt v.*

20   *Merrill Lynch, Pierce, Fenner & Smith,* 916 F. Supp. 1343 (D.N.J. 1996): *Krouner v. American*

21   *Heritage Fund, Inc.*, 899 F. Supp. 142, 149 n. 4 (S.D.N.Y. 1995) ("on its face section 13(a)(3)

22   imposes liability upon registered investment companies"); *Omni Financial Corp. v. Cohen*, No. 91

23   Civ. 6837 (RO) (THK), 1994 WL 97125, at *7 (S.D.N.Y. Mar. 22, 1994) (causes of action are

24   recognized where there is a claim that a registered investment company did not obtain the required

25   shareholder approval prior to departing from the investment policy set forth in its still effective

26   registration statement); *Potomac Capital Markets Corp. v. Prudential-Bache Corp. Dividend Fund,*

27   *Inc.*, 726 F. Supp. 87, 93, n.5 (S.D.N.Y. 1989) ("Private rights of action have been recognized under

28

1    Section 13(a)(3)”); *Monheit v. Carter*, 376 F. Supp. 334, 339 (S.D.N.Y. 1974); *Green v. Brown*, 276

2    F. Supp. 753 (S.D.N.Y. 1967) *remanded on other grounds*, 398 F.2d 1006 (2d Cir. 1968); *Leighton*

3    *v. One William St. Fund, Inc.*, No. 64 Civ. 2547, 1965 U.S. Dist. LEXIS 9430, at *8 (S.D.N.Y. July

4    2, 1965)(“Only changes in [fundamental policy], without authorization by the shareholders, result in

5    a violation of 15 U.S.C. § 80a-13(a)(3).”).

6        *Indiana Electrical Works Pension Trust Fund, IBEW v. Dunn*, C-06-01711 RMW, 2007 WL

7    1223220 (N.D. Cal. Mar. 1, 2007), cited by Def. at 5, 6 (applying Delaware law) is distinguishable.

8    There, the class members had no direct financial interest in the assets of the corporation and any

9    recovery of excessive compensation would be paid back to the corporation rather than directly

10   benefit the individual shareholders: “Had the shareholders voted against any of the severance or

11   benefits given to Fiorina, the denied amounts would accrue to the corporation, not directly to any

12   shareholder.” *Id.* at *11.[1]  Shareholders would indirectly benefit however because the value of the

13   derivative claim would arguably be reflected in each share’s trading prices.

14       Defendants’ reliance on *Lapidus* is far off the mark.  Defendants cite *Lapidus* in error for the

15   proposition that all claims for money damages are always derivative and that only claims for

16   injunctive relief are direct.  *See* Def. March 26, 2009 Mem. at 5 (*Lapidus* “held that a denial of a

17   shareholder’s voting rights constitutes a ‘direct’ injury, while a claim asserting a ‘diminution in the

18   value of’ investors’ shares as a result of violations of a fund’s investment policies alleges ‘only

19   indirect harm to the shareholders.’”)  This portion of *Lapidus* alleged violations of Section 18(f) of

20   the ICA, which contains statutory (as opposed to voting) restrictions with respect to the issuance of

21   senior securities.  *Id.* at (“Unlike plaintiffs’ claims under sections 80a-13(a)(2) and (3), their direct

22   claim under section 80a-18f is not based on an injury to their voting rights.”).

23       Given the clarity of *Lapidus* and the Court’s prior holding that Northstar and the class have

24   direct claims for financial injury, defendants’ further motion to dismiss Northstar’s Section 13(a)

25   claim must be denied.

26   _____

27   [1]    Each of the other cases cited by Schwab is similarly distinguishable.  *See, e.g,. Everett v.*
     *Bozic*, No. 05 Civ. 00296 (DAB), 2006 WL 2291083 (S.D.N.Y. Aug. 3, 2006) (failure to preserve
     assets only indirectly harms investors).

28   [C 08-04119 SI] PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANTS'
     MOTION TO DISMISS FIRST AMENDED COMPLAINT                                         6

## II.      NORTHSTAR HAS ESTABLISHED A DIRECT CLAIM FOR BREACH OF CONTRACT

This Court, in its February 19, 2009 Order, neither granted nor denied defendants' motion to dismiss Northstar's breach of contract claim, but rather directed Northstar, inasmuch as it was amending the complaint in any event, "to add more specific allegations regarding the language plaintiff relies on to allege the formation of a contract, as well as each defendants' involvement." 2009 WL 415616, at *33.

Northstar's Amended Complaint is compliant with the Court's directive.  Northstar's breach of contract claim is the functional equivalent of its Section 13(a) claim, although denominated under state law rather than federal law.  The Amended Complaint limits "the language plaintiff relied on to allege the formation of a contract" (*id.*) to those obligations identified in the 1997 Proxy Statement, which was mailed by Schwab Investments to investors and filed with the SEC, which were (i) mandatory, (ii) only changeable by majority shareholder vote, and (iii) breached by the Trust's operations of the Fund.  Those mandatory terms that formed the basis for a contract with investors were that:  (i) the Fund would "seek to track the [Lehman Index] by means of an indexing strategy," and (ii) the Fund would invest no more than 25% of the Fund's total assets in any "industry."  *See* Amended Complaint, ¶¶ 34-38, 40-42, 46-48, 50-55, and 112-118.   Contrary to Schwab's contentions, the Fund's SEC filings *do* "contain specific commitments to performance."  *See* Def. March 26, 2009 Mem. at 15.[2]

The Amended Complaint also clarifies that Schwab Investments is the only defendant that

---

[2]      The Trust argues that it should not be liable for breach of contract with respect to the Fund's concentration policy subsequent to September 2006 because the Trust disclosed on page 8 of a Statement of Additional Information (that was not in the ordinary course mailed to investors), the Trust's interpretation of the term "industry" -- that "mortgage-backed securities issued by private lenders … are not part of any industry for purposes of the funds' concentration policies."  *See* Def. March 26, 2009 Mem. at 18.   However, this court has already found that the Fund could not indirectly deviate from the Fund's fundamental investment policy by applying an unreasonable interpretation of the term "industry."  *See* 2007 WL 415616, at *26.   Nor could defendants, by the same logic, violate the contract by applying an unreasonable interpretation to a contract term. Moreover, defendants do not address that the Fund's over-concentration in non-agency mortgage-backed securities also breached the Trust's contractual obligation to pursue an indexing strategy.

contracted with Northstar and the Class.  Schwab Investments issued and redeemed shares of the Fund in direct privity with investors.

There was also consideration for the contract.  Old investors retained shares and new investors purchased shares in consideration for Schwab's contractual obligations.  An agreement to forego a legal right (such as the right to sell shares) is adequate consideration for a contract.  Civ. Code, § 1605; *Armstrong World Industries, Inc. v. Superior Court* (1989) 215 Cal. App. 3d 951, 957, 264 Cal. Rptr. 39.

Because the Fund's fundamental investment objective and fundamental investment policy were mandatory, and can only be changed by shareholder vote, they were binding on the Trust with respect to all subsequent shareholders who purchased shares.  *See Mills v. Polar Molecular Corp.,* 12 F. 3d 1170, 1176 (2d Cir. 1993) ("The failure to carry out a promise made in connection with a securities transaction is normally a breach of contract."); *In re Gulf Oil/Cities Serv. Tender Offer Litig.*, 725 F. Supp. 712, 728 (S.D.N.Y. 1989) (accepting, without discussion, that an Offer to Purchase was a contract with shareholders); *Franklin Life Ins. Co. v. Commonwealth Edison Co.*, 451 F. Supp. 602, 605 (S.D. Ill. 1978) (It is unquestioned that the redemption terms contained in a prospectus create a contract between the corporation and its shareholders).  The terms of that contract were reiterated by the Trust in SEC filings subsequent to the 1997 Proxy Statement.  *See, e.g.*, ¶ 53 (Registration Statement and Prospectus dated January 15, 1998), ¶ 68 (Statement of Additional Information dated May 6, 2002), ¶ 71 (Statement of Additional Information dated November 15, 2003).  Other documents paraphrased the contractual terms.  *See, e.g.,* ¶ 70 (Prospectus dated June 13, 2008:  the Fund "is designed to offer high current income by tracking the performance of the" Lehman Index).

The Court, in the February 19, 2009 opinion, found that the cases cited by defendants "do not broadly hold that these documents can never constitute contracts."  2009 WL  415616, at *32. Nonetheless defendants cite to those same opinions already rejected by the Court.  *See McKesson HBOC, Inc. v. New York State Common Ret. Fund*, 339 F.3d 1087, 1092 (9th Cir. 2003) and *Cohen*

*v. Stratosphere Corp.*, 115 F. 3d 695, 701 (9th Cir. 1997).[3] Clearly, Northstar has sufficiently pled a direct claim for breach of contract. Defendants' motion to dismiss should be denied.

## III. PLAINTIFF HAS PLED DIRECT CLAIMS FOR BREACH OF FIDUCIARY DUTY AGAINST THE TRUST AND THE INVESTMENT ADVISOR

Defendants' renewed motion to dismiss Northstar's fiduciary duty claims is entirely without merit and should be denied. Under California and Massachusetts law, both the Trust and the Investment Advisor owed direct fiduciary duties to investors in the Fund. Northstar is not required to assert these claims derivatively.

### A. Northstar Correctly Asserted Its Fiduciary Duty Claims Under California Law

Northstar's First Amended Complaint asserts direct fiduciary duty claims only against the Trust and the Investment Advisor under California law. Northstar has discontinued its claims against the Fund and the Fund's Underwriter. *See* Amended Complaint, ¶¶ 98-99; *Northstar Financial Advisors, Inc., supra* at *9 ("Plaintiff is directed to carefully examine whether each of the defendants named in this claim can in fact be named in such claim, and under which state's law such a claim is properly asserted.").

The executive officers of the Trust and of the Advisor are located in San Francisco, California. Amended Complaint, ¶¶ 16-17. The SEC filings at issue in this action were prepared in and issued out of California. Although the Trust is a Massachusetts corporation, and the Investment Advisor is a Delaware corporation, the clear focus of investment activity and the defendants' interaction with class members is in California. *See*, *e.g.*, Waldron Decl., Exhibits B-F (SEC documents issued out of California).

It is well settled that "[a] federal court exercising pendent jurisdiction over state law claims must apply the choice of law rules of the state in which it sits." *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941); *In re Nucorp Energy Sec. Litig.*, 661 F. Supp. 1403, 1412 (S.D.Cal. 1987).

---

[3] For the same reasons as the Class' Section 13(a) seek a direct recovery, the Class' contract claims are direct as well.

[C 08-04119 SI] PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS FIRST AMENDED COMPLAINT                                    9

1    To resolve conflict-of-law issues, California courts employ the three-pronged "government

2    interest analysis" test. *Washington Mut. Bank v. Super. Ct*, 24 Cal.4th 906, 919 (2001). Under the

3    government interest analysis, courts must first determine whether the applicable rules of law of the

4    potentially concerned jurisdictions materially differ. *Id.* The party arguing that foreign law governs

5    has the burden to identify the applicable foreign law and demonstrate that it materially differs from

6    California law. *Frontier Oil Corp. v. RLI Ins. Co.*, 153 Cal.App.4th 1436, 1465 (2007). If the trial

7    court finds the laws are materially different, it must proceed to the second step and determine what

8    interest, if any, each state has in having its own law applied to the case. *Washington Mut. Bank*, 24

9    Cal.4th at 919. Only if the trial court determines that the laws are materially different and that each

10   state has an interest in having its own law applied, must the court take the final step and select the

11   law of the state whose interests would be "more impaired" if its law were not applied. *Id.* at 920.

12   Defendants do not even address, let alone satisfy, their burden that Massachusetts law should

13   apply under the government interest analysis.[4] Rather, defendants incorrectly argue that the internal

14   affairs doctrine applies to this case and that Massachusetts law should apply because the Trust is a

15   Massachusetts corporation. *See* Def. Mem. at 8-10. The internal affairs doctrine is applicable only

16   to matters "peculiar to the relationships among or between the corporation and its current officers,

17   directors, and shareholders." *Edgar v. MITE Corp.*, 457 U.S. 624, 645 (1982). Defendants

18   wrongly attempt to characterize Northstar's fiduciary duty claims as those of a shareholder against

19   its corporation to invoke the internal affairs doctrine and avail itself to Massachusetts law. *See* Def.

20   Mem. at 10-12. This Court stated on the initial motion to dismiss that "none of defendants' 'internal

21   affairs' cases squarely addresses whether a breach of fiduciary duty claim such as the one alleged

22   here -- that investments were made in violation of stated investment objectives -- is subject to the

23   narrowly applied doctrine." *Northstar Financial Advisors, Inc.*, 2009 WL 415616, at *9. Despite the

24   Court's clear directive, defendants have failed to identify any controlling authority that mandates the

25

---

26   [4] Northstar argued that California has a greater interest in the application of its law to the
     relationship between the Trust and the Investor Advisor, on the one hand, and investors, on the other
27   hand. *See* Northstar's initial Memorandum in Opposition to Defendants' Motion to Dismiss, dated
     December 11, 2008, at 17-19. Defendants have yet to respond to this analysis.

28   [C 08-04119 SI] PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANTS'
     MOTION TO DISMISS FIRST AMENDED COMPLAINT                                    10

1   application of the internal affairs doctrine to the claims in this case.   *See id.* at 9, n.7 (noting that

2   defendants' cases do not hold "that all breach of fiduciary duty claims are governed by the internal

3   affairs doctrine.").

4       Moreover, defendants' reliance upon Judge Alsup's recent decision is misplaced. Defendants

5   contend that there, the Court applied the internal affairs doctrine "to a fiduciary duty claim involving

6   the same defendants and another Schwab mutual fund." Def. Mem. at 9 (citing *In re Charles Schwab*

7   *Corp. Sec. Litig.*, No C. 08-01510 WHA, 2009 WL 262456, at *15 (N.D.Cal. Feb. 4, 2009).

8   However, the fiduciary duty claim in that case was strikingly different than the direct claim brought

9   on behalf of the investors in the present matter.

10      There, the Complaint alleged that each defendant was a fiduciary of the fund and that "each

11  had inside information regarding the alleged misrepresentations and were therefore aware that the

12  fund's value would decline due to the risky nature of its holdings." *Id.*   The Complaint further

13  alleged "that other funds within the Schwab family had invested in the YieldPlus Fund, and that

14  defendants caused those other funds to withdraw, at the expense of members of the class." *Id.*   The

15  theory of that case was that other Schwab-related investors were allowed to benefit from insider

16  information, which damaged all YieldPlus shareholders equally.   Clearly, Judge Alsup's decision to

17  apply the internal affairs doctrine to those allegations is not instructive to this Court's inquiry --

18  whether a breach of fiduciary duty claim based upon an essentially commercial relationship between

19  the Trust and the Investment Advisor, on the one hand, and investors on the other hand is "subject to

20  the narrowly applied [internal affairs] doctrine." *Id*.

21      Contrary to defendants' characterization, Northstar's fiduciary duty claims against the Trust

22  and the Investment Advisor do not represent claims asserted by a shareholder against its corporation,

23  corporate officers, or directors and are therefore outside of the scope of the "narrowly applied"

24  internal affairs doctrine. *Northstar Financial Advisors, Inc*, 2009 WL 415616, at *9.   Indeed, the

25  Amended Complaint makes clear that "[t]he relationship of Class members to the defendants is not

26  as a shareholder to the corporation, but rather as an investor in the Fund to the Trust (charged with

27  the responsibility for managing the Fund) and to the Investment Advisor (charged with the

28

1   responsibility for investing the Fund's assets)."  *See* Amended Complaint, ¶¶ 98-99.

2          In disputing Northstar's position, defendants contend that the Fund "has no separate

3   corporate existence," "has no registered shares," "has never issued shares" and that "the funds

4   investors are shareholders of Schwab Investments, and accordingly, are subject to Massachusetts's

5   prohibition of fiduciary duty claims by shareholders against their corporation." *See* Def Mem. at 12.

6   Defendants' analysis is incorrect.

7          Mutual fund investors, particularly investors in a series of funds, are *not* shareholders of the

8   business trust that issues the funds.[5]  Since the Fund's investors are not shareholders of the Trust or

9   the Investment Advisor, defendants' arguments in support of the internal affairs doctrine, and the

10  application of Massachusetts' law, are entirely without merit.

11         Accordingly, since defendants have failed to establish that the narrowly applied internal

12  affairs doctrine is applicable to the specific claims of this case, the government interests analysis is

13  the appropriate choice-of-law doctrine.  As defendants have not even attempted to meet their burden,

14  the Court is required to apply California law to Northstar's fiduciary duty claims.

15         Finally, California law is applicable because the Investment Advisor's fiduciary duty to the

16  investors arises from the Advisory Agreement, by which the Investment Advisor was charged with

17  the responsibility for investing the Fund's assets.  In addition to being an issue of contract

18  interpretation subject to state law, the Advisory Agreement expressly provides that it is "governed

19  by the laws of the State of California."  *See* Waldron Decl., Ex. F., at 6.

20         **B.     Northstar's Fiduciary Duty Claims Are Viable Under California Law**

21         Under California law, in order to plead a cause of action for breach of fiduciary duty, a

22  plaintiff must show the existence of a fiduciary relationship, its breach, and damage caused by the

---

23  [5]  In *In re Mutual Funds Investment Litigation*, 519 F.Supp.2d. 580 (D.Md. 2007), the court

24  addressed, in detail, the structure of a "series" of mutual funds issued by an investment company that
    is organized as a business trust.  Notably, the court discussed the investors' relationship to the fund

25  and the investment company that manages the fund.  Under this "series" structure, an "independent
    entity associated with a family of funds files as a registered investment company and lists various

26  funds it maintains as separate 'series.'" *Id.* at 588.   Here, Schwab Investments is a registered
    investment company associated with a family of funds, including the Fund at issue.  The court

27  clarified that "no individual investor owns shares in the entity that registers as an investment
    company that issues separate series[.]" *Id.* at 589.

28  [C 08-04119 SI] PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANTS'
    MOTION TO DISMISS FIRST AMENDED COMPLAINT                                    12

1    breach.  *Appollo Capital Fund, LLC v. Roth Capital Partners, LLC*, 158 Cal.App.4th 226, 244

2    (2007).  Defendants incorrectly contend that neither the Trust, nor the Investment Advisor, "entered

3    into fiduciary relationships directly with the funds investors." Def. Mem. at 13.

4           The "key factor" in the existence of a fiduciary relationship "lies in the control by a person

5    over the property of another."  *Appollo Capital Fund, LLC*, 158 Cal.App.4th at 246.  Further,

6    "before a person can be charged with a fiduciary obligation, he must either knowingly undertake to

7    act on behalf and for the benefit of another, or must enter into a relationship which imposes that

8    undertaking as a matter of law." *Id.*

9           Here, Northstar pled facts sufficient to establish that both defendants entered into fiduciary

10   relationships with the Fund's investors.  The Amended Complaint alleges that the Trust was

11   "responsible for the oversight of the Fund's investments, the oversight of the activities of the

12   Investment Advisor, and the accuracy of the Trust's SEC filings." *See* Pl. Am. Cmplt, ¶ 100.

13   Moreover, "the Trust had discretion to operate the Fund, subject to the Fund's stated fundamental

14   investment policies, and [investors] were reliant on the Trust for the operation of the Fund." *Id.*  By

15   accepting these obligations, the Trust clearly agreed to "act on behalf and for the benefit" of the

16   Fund's investors, and had control "over the property of" the investors.  *Appollo Capital Fund, LLC*,

17   158 Cal.App.4th at 246.  *See also Gallus v. Ameriprise Financial Inc.*, No. 07-2945, 2009 WL

18   928920, at *3 (8th Cir., April 8, 2009) ("[M]ost mutual funds are created, organized, and managed

19   by external investment advisers-an arrangement that gives the adviser a significant amount of control

20   over the fund it serves.").

21          Additionally, the Trust and the Fund's investors comprise a trustee/beneficiary relationship,

22   which gives rise to fiduciary obligations as a matter of law. *See Knight v. C.I.R.*, 128 S. Ct. 782, 788

23   (2008) ("The trustee is under a duty to the beneficiary to use reasonable care and skill to preserve the

24   trust property.") (quoting *Restatement (Second) of Trusts* § 176, p. 381 (1957)). *See also Uniform*

25   *Prudent Investor Act*, West's Ann.Cal.Prob. Code § 16046(a) ("a trustee who invests and manages

26   trust assets owes a duty to the beneficiaries of the trust to comply with the prudent investor rule.").

27          Northstar has also alleged that the Investment Advisor "owed [investors] a fiduciary duty to

28

1    manage the Fund's assets with the care and prudence of a professional in like circumstances and to

2    adhere to the Fund's investment objectives and policies." *See* Amended Complaint, ¶ 105.  The

3    investors relied upon the Investment Advisor's expertise and diligence in managing the Fund's

4    assets.  *Id.*   The Fund's Prospectus explains that the Investment Advisor "oversees the asset

5    management and administration of the funds" and its officers have day-to-day responsibility for the

6    management of the Fund.  *See* Waldron Decl., Ex. E., at 31.

7             Pursuant to the Investment Advisory Agreement, the Investment Advisor was charged with

8    broad fiduciary responsibilities to the Fund and its investors, including compliance with all

9    applicable SEC Regulations and the 1940 Act.  *See* Waldron Decl., Ex. F.  As such, the Investment

10   Advisor knowingly undertook "to act on behalf and for the benefit" of the Fund and its investors,

11   and retained control "over the property" of the investors.  *Appollo Capital Fund, LLC*, 158

12   Cal.App.4th at 246.

13            Finally, this Court has already sustained state law fiduciary duty claims against investment

14   advisors similar to the ones Northstar asserts in this matter.  *See Strigliabotti v. Franklin Resources,*

15   *Inc.*, No. C 04-00883 SI, 2005 WL 645529, at *8 (N.D.Cal. March 7, 2005) ("[F]iduciary duties are

16   alleged for each defendant to each Fund for which it provided advisory services.  The Court agrees

17   … that the claim comports with the requirements of notice pleading.").

18            Accordingly, Northstar has established a fiduciary relationship between the Fund's investors

19   and both defendants.[6]

20      **C.    Northstar's Fiduciary Duty Claims Are Also Viable Under Massachusetts Law**

21            Even if the Court applies Massachusetts law to Northstar's fiduciary duty claims,

22   Defendants' Motion to Dismiss is without merit.  Defendants incorrectly argue that Northstar's

23   fiduciary duty claims are not sustainable under Massachusetts law because "a corporation does not

24   owe a fiduciary duty to its shareholders."  Def. Mem. at 10.  Defendants' argument misses the point

25   entirely.  As explained in detail above, the investors are not shareholders of the Trust or the

26   ────────────────────────

27   [6] Northstar has also pled facts sufficient to establish the other requisite elements of a fiduciary duty claim, namely, breach of the duty and damages.  Defendants' Motion to Dismiss does not challenge these elements of Northstar's fiduciary duty claims.

28   [C 08-04119 SI] PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANTS'
     MOTION TO DISMISS FIRST AMENDED COMPLAINT                            14

1  Investment Advisor and their claims against defendants are not representative of shareholder claims

2  against its corporation.

3       Under Massachusetts law, a fiduciary duty exists "when one reposes faith, confidence, and

4  trust in another's judgment and advice." *Doe v. Harbor Schools, Inc.*, 446 Mass. 245, 252 (2006).  Its

5  central tenet is the "'duty on the part of the fiduciary to act for the benefit of the other party to the

6  relation as to matters within the scope of the relation.'" *Id.* (quoting 1 A.W. Scott & W.F. Fratcher,

7  Trusts § 2.4 (4th ed.1987)).  While some fiduciary relationships are created by law, others arise from

8  the nature of the parties' interactions. *Id.*  Indeed, Massachusetts law recognizes that fiduciary duties

9  may arise in particular factual situations, "to some degree on an ad hoc basis." *Sorrenson v. H & R*

10 *Block, Inc.*, No. CIV.A.99-10268-DPW, 2002 WL 31194868, at *1 (D.Mass. Aug. 27, 2002).  *See*

11 *also Geo. Knight & Co., Inc. v. Watson Wyatt & Co.,* 170 F.3d 210, 216-17 (1st Cir.1999)).

12      It is well settled that the relationship between a trustee and its beneficiary is fiduciary as a

13 matter of law.  *Maffei v. Roman Catholic Archbishop of Boston*, 449 Mass. 235, 247 (2007); *Smith v.*

14 *Smith*, 222 Mass. 102, 106 (1915).  The creation of a trustee/beneficiary relationship "depends on the

15 intention of the parties as manifested by their words and conduct."  *In re Hilson*, 448 Mass. 603, 615

16 (2007).  Investors in funds managed and held by a business trust are recognized as beneficiaries of

17 the business trust.  *See Bergeron ex rel. Ridgewood Elec. Power Trust V v. Ridgewood Elec. Power*

18 *Trust V*, No. 07-10622-RGS, 2007 WL 1959209 (D.Mass July 5, 2007) (referring to investors of

19 business trusts as beneficiaries).  *See*, *e.g.*, Amended Complaint, ¶¶ 101-08 (alleging that the Trust's

20 SEC disclosures establish that the Trust had undertaken fiduciary duties to safeguard investors'

21 assets).

22      Moreover, the Investment Advisor owed the Fund's investors a fiduciary duty pursuant to its

23 obligations under the Advisory Agreement.  The Investment Advisor had discretion and control --

24 subject to the Board of Trustees of the Trust – in the management of the Fund's assets.  *See* Waldron

25 Decl., Ex. F., at 1.  In this regard, the Fund's investors' relationship with the Investment Advisor

26 was similar to that of a stockbroker and an investor.

27      The law is well settled in Massachusetts that a stockholder who retains control and discretion

28 [C 08-04119 SI] PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS FIRST AMENDED COMPLAINT                              15

over the investments of a customer's assets assumes broad fiduciary duties. *See Patsos v. First Albany Corp.*, 433 Mass. 323, 333-34 (2001) ("where the account is 'discretionary,' meaning that the customer entrusts the broker to select and execute most if not all of the transactions without necessarily obtaining prior approval for each transaction, the broker assumes broad fiduciary obligations that extend beyond individual transactions."). The Investment Advisor had discretion over investment decisions pertaining to the Fund's assets and therefore, assumed fiduciary obligations directly to the Fund's investors.

Accordingly, Northstar's fiduciary duty claims are viable under Massachusetts law. The Court should deny defendants' motion to dismiss Count II.

### D.    Northstar Properly Asserted it's Fiduciary Duty Claims as Direct Claims

As set forth above, the Trust and Investment Advisor owed fiduciary duties directly to the class members. Therefore, the class members' direct fiduciary duty claims against defendants are sustainable and are not required to be asserted derivatively. *See Tooley v. Donaldson, Lufkin, & Jenrette, Inc.*, 845 A.2d 1031, 1039 (Del. 2004) (to assert direct claims, "[t]he stockholder must demonstrate that the *duty breached was owed to the stockholder* and that he or she can prevail without showing an injury to the corporation.") (emphasis added); *Strigliabotti*, 2005 WL 645529, at *8 (citing *Tooley* in direct/derivative analysis); *Vogel v. Jobs*, No. C 06-5208 JF, 2007 WL 3461163, at *2 (N.D.Cal. Nov. 14, 2007) (noting that the derivative/direct claims analysis under Delaware law is the same as that of California law); *Oakland Raiders v. National Football League,* 93 Cal.App.4th 572, 586 n. 5 (2001) ("[W]e may properly rely on corporate law developed in the State of Delaware given that it is identical to California corporate law for all practical purposes."). *See also Fraternity Fund Ltd. v. Beacon Hill Asset Management LLC.*, 376 F. Supp. 2d. 385, 408-09 (S.D.N.Y. 2005) (a shareholder may sue individually "when the wrongdoer has breached a duty owed to the shareholder independent of any duty owing to the corporation wronged.").

Moreover, this Court has previously held that similar state law claims can be asserted as direct claims against mutual fund investment management companies, where as here, the plaintiffs claims were brought "based on individual injuries suffered by themselves and other investors, not

1    injury to the Funds themselves[.]"  *Strigliabotti*, 2005 WL 645529, at *7-8.

2    **IV.    NORTHSTAR HAS PLED A VIABLE THIRD-PARTY BENEFICIARY CLAIM**

3           Northstar's First Amended Complaint establishes that the Fund's shareholders were intended

4    third-party beneficiaries of the Advisory Agreement between the Trust and the Investment Advisor,

5    and that the Investment Advisor breached the Advisory Agreement.  *See* Amended Complaint,

6    Count V, ¶¶ 125-31.  As such, Northstar has properly asserted a direct claim on behalf of the

7    investors against the Investment Advisor.

8           Defendants erroneously argue two points:  (i) Northstar did not allege any breach of the

9    Investment Advisory Agreement; and (ii) the Fund's investors were not the intended third-party

10   beneficiaries of the Advisory Agreement.  These arguments ignore the allegations set forth in

11   Northstar's First Amended Complaint and disregard the plain terms of the Advisory Agreement and

12   its underlying purpose.

13          It is well settled that "California law permits third-party beneficiaries to enforce the terms of

14   a contract made for their benefit."  *Spinks v. Equity Residential Briarwood Apartments*, 171

15   Cal.App.4th 1004, 1021 (2009) (citing *Principal Mutual Life Ins. Co. v. Vars, Pave, McCord &*

16   *Freedman*, 65 Cal.App.4th 1469, 1485, 77 Cal.Rptr.2d 479 (1998)).[7]  That authority is codified in

17   California Civil Code § 1559, which states:  "A contract, made expressly for the benefit of a third

18   person, may be enforced by him at any time before the parties thereto rescind it."  *Id.*

19          **A.    Northstar Alleged a Breach of the Advisory Agreement**

20          Defendants' contention that Northstar did not allege a breach of the advisory agreement is

21   clearly without merit.  Indeed, the Amended Complaint alleges that the Investment Advisor

22   "breached the terms of its Investment Advisory Agreement with the Trust by failing to manage the

23   Fund's assets in a manner consistent with the Fund's fundamental investment objectives and

24   policies[.]"  *Id.*, ¶ 130.  Defendants attempt to circumvent the Investment Advisor's obligations by

25   arguing that the Advisory Agreement does not make the Investment Advisor "strictly liable under

26

27   ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯
     [7] The express terms of the Advisory Agreement require the application of California law.  *See*
     Waldron Decl. Ex. F § 11.

28   [C 08-04119 SI] PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANTS'
     MOTION TO DISMISS FIRST AMENDED COMPLAINT                              17

1   contract" for failing to mange the fund in accordance with the Fund's fundamental investment

2   objectives and policies. *See* Def. Mem. at 21. Defendants wrongly contend that Northstar's claim

3   "must be dismissed for failure to properly allege the specific terms of the advisory agreement" that

4   were breached. *Id.*

5         First, the terms of the Advisory Agreement unambiguously charge the Investment Advisor

6   with performing "all aspects of the operations of the Schwab Funds," which include, but are not

7   limited to: determining what securities and other investments will be purchased, retained or sold by

8   the Fund; furnishing statistical and research data; preparing the Trust's Annual and Semi-Annual

9   Reports to shareholders and amendments to its Registration Statements; preparing and filing Notices

10  with the SEC; keeping and maintaining the financial accounts and records of the Fund; "generally

11  assist[ing] in all aspects of the operations of the" Fund; and complying "with all applicable Rules

12  and Regulations of the SEC." *See* Waldron Decl. Ex. F § 3. Notably, the Advisory Agreement also

13  requires the Investment Advisor to comply with the provisions of the Investment Company Act of

14  1940 in buying or selling any portfolio securities. *Id.* at § 3(d).

15        Thus, the Advisory Agreement conferred broad obligations upon the Investment Advisor

16  with respect to the overall management of the Fund -- the most fundamental of which would include

17  management of the Fund in accordance with the Fund's fundamental investment objectives and

18  policies. It would make little, if any, sense if the Investment Advisor was free to deviate from the

19  Fund's fundamental investment objectives during its management of the Fund. Defendants' narrow

20  reading of the Advisory Agreement -- and its suggestion that the Investment Advisor was not

21  obligated to manage the Fund in accordance with the its fundamental investment objectives simply

22  because the Agreement does not explicitly provide so -- is entirely without merit. Northstar's

23  allegation that the Investment Advisor breached the Advisory Agreement plainly satisfies the

24  "liberal notice pleading" requirement. *See Bell Atl. Corp., supra.*

25      **B.**    **The Fund's Investors Were the Express Intended Third-Party Beneficiaries of**
26              **the Investment Advisory Agreement**

27        The test for determining whether a contract was made for the benefit of a third person "is

28

1   whether an intent to benefit a third person appears from the terms of the contract." *Spinks*, 171

2   Cal.App.4th at 1022.  Where as here, the "terms of the contract necessarily require the promisor to

3   confer a benefit on a third person, then the contract, and hence the parties thereto, contemplate a

4   benefit to the third person." *Id.*  Indeed, "the parties are presumed to intend the consequences of a

5   performance of the contract." *Id.*  Moreover, while "it is not enough that the third-party would

6   incidentally have benefited from performance," the third-party "need not be named or identified

7   individually to be an express beneficiary."  *Id.* at 1022-23.  Third parties may enforce a contract

8   where -- as Northstar has done -- they show that they are members "of a class of persons for whose

9   benefit it was made." *Id.* at 1023.

10   Here, the Fund's investors comprise a "class of persons" that the Advisory Agreement

11   intended to benefit.  For example, the Advisory Agreement charges the Investment Advisor with

12   investing the Fund's assets, communicating with the Fund's investors through annual reports,

13   compiling research and statistical data and complying with relevant SEC requirements.   These

14   responsibilities, among others, were for the benefit of the Fund and its investors.  In fact, the Trust

15   appended a copy of the Investment Advisory Agreement to an amendment to the Trust's

16   Registration Statement dated December 29, 1997 (Waldron Decl., Exh. F), precisely to inform class

17   members of its terms.

18   Defendants rely on *Smith v. Microskills San Diego L.P.*, 153 Cal.App.4th 892, 898 (2007),

19   for the proposition that the contract must state the intent to benefit a third-party "in an express

20   manner; in direct or unmistakable terms; explicitly; definitively; directly." *See* Def. March 26, 2009

21   Mem. at 21.  However, defendants have not established that the Advisory Agreement does not meet

22   this standard.  Rather, defendants argue that the "investment advisory agreement between Schwab

23   Investments and Charles Schwab Investment Management does not identify any intended third-party

24   beneficiaries." *Id.*  As set forth above, such identification is not required under California law, as

25   long as the third-party "can show that he is a member of a class for whose benefit the contract was

26   made."  *Charles Lowe Co. v. XOMOX Corp.*, No. C 95-0498 SI, 1999 WL 1293362, at *7 (N.D. Cal.

27   Dec. 27, 1999).

28

1    *Smith* involved a class action brought by a student against a vocational school.  *Smith*, 153

2   Cal.App.4th at 894-95.  The school filed a motion to compel arbitration pursuant to a provision in

3   the student's private loan note and argued that it was a third-party beneficiary of the note between

4   the student and the private lender.  *Id.*  In finding that the school was not a third-party beneficiary of

5   the note, the court reasoned that the note lacked any evidence of the parties' intent to manifest a

6   benefit on a third-party and that there was "no obvious reason an independent lender … would have

7   an interest in how [the school] resolves disputes over its educational obligations to its students."  *Id.*

8   at 899.  As such, the parties' interests in executing the note did not support the school's position that

9   it was an intended third-party beneficiary.  Here, in contrast, the sole objective of the Advisory

10  Agreement is the successful management of the Fund -- an interest that without question

11  contemplates the benefit of the Fund's investors.  Accordingly, the court's reasoning in *Smith* is

12  wholly inapplicable.

13       Additionally, defendants' suggestion that the Fund's investors were merely "incidental

14  beneficiaries" must be rejected.  While defendants correctly point out that incidental beneficiaries of

15  a contract do not possess enforceable rights thereto, defendants cannot establish that the Advisory

16  Agreement only "incidentally or remotely" benefited the Fund's investors.

17       In *Jones v. Aetna Cas. & Surety Co.*, 26 Cal.App.4th 1717, 1721 (1994) (cited Def. Mem. at

18  22), the lessor (Danville L&M Limited) maintained rental income insurance providing coverage for

19  damage or destruction from fire or other perils.  Plaintiff Jones was the lessee of the premises, and

20  according to the Court's opinion, his lease provided that "Jones's rent would be equitably reduced to

21  the extent lessor received proceeds from the rental income insurance."  *Id.*.  The insurance contract,

22  however, was silent as to Jones's financial interest in the contract of insurance.  The California

23  appellate court, in affirming the dismissal below, appropriately reasoned that a "third party may

24  qualify as a beneficiary under a contract where the contracting parties must have intended to benefit

25  that third party and such intent appears on the terms of the contract."  *Id.* at 1724.

26       Here, the Advisory Agreement that governed the manner in which the Fund and its assets

27  were managed was expressly intended to benefit the class members who invested in, and owned, the

28  [C 08-04119 SI] PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANTS'
     MOTION TO DISMISS FIRST AMENDED COMPLAINT                                     20

Fund.  There could be no other intended beneficiary of the Agreement than the fund-owners themselves.

Moreover, defendants' argument that "an alleged injury is not enough to confer third-party beneficiary status," ignores the clear allegations set forth in the Amended Complaint.  *See* Def. Mem. at 21.  Northstar expressly alleged that "Class members were known and intended beneficiaries" of the Advisory Agreement, and did not base its third-party beneficiary claim solely upon an alleged injury.  *See* Amended. Complaint, ¶ 128.

Several courts have considered, and sustained, similar claims that investors are third-party beneficiaries of advisory agreements between investment companies and investment advisors.  *See Ohio Bureau of Workers Comp. v. MDL Active Duration Fund, Ltd.*, 476 F. Supp. 2d. 809, 824 (S.D.Ohio 2007) (Institutional investor, as third-party beneficiary of advisory agreement between investment fund and investment advisor, stated claim for breach of contract against advisor, where fund contracted for advisor's investment management services and *delegated general authority to advisor to manage investment and reinvestment of fund's assets and administer fund's business*) (emphasis added); *Zurich Cap. Markets Inc.*, 332 F. Supp. 2d. 1087, 1121-22 (N.D.Ill. 2004) (holding that a shareholder plaintiff sufficiently pled that it was a third-party beneficiary to an investment advisor contract).

Finally, whether parties to a contract intended to benefit a third-party is an issue of fact that should not be decided on a motion to dismiss.  *Hotel Employees & Rest. Employees Local 2 v. Vista Inn Mgmt. Co.*, 393 F. Supp. 2d. 972, 987 (N.D.Cal 2005) ("Such an inquiry depends ultimately on questions of fact that are inappropriate on the present motion to dismiss"); *see also Hayes Children Leasing Co. v. NCR Corp.,* 37 Cal.App.4th 775, 790 (1995) (holding that the question of third-party beneficiaries to a contract involves questions of fact).

While the Advisory Agreement does not expressly state that the Fund's investors were intended third-party beneficiaries -- which the law does not require -- it does not suggest otherwise. If the Court is unable to determine the parties' intentions pursuant to the language of the Advisory Agreement, it is required to employ ordinary methods of contract interpretation, which may include

[C 08-04119 SI] PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS FIRST AMENDED COMPLAINT                              21

1   "reference to the circumstances under which [the Advisory Agreement] was made, and the matter to

2   which it relates." *Spinks*, 171 Cal.App.4th at 1024.  Evidence of the "circumstances and negotiations

3   of the parties is both relevant and admissible."  *Id.*  Based upon the limited record at this early stage

4   in the litigation, it is impossible for the Court to consider these factors if deemed necessary.

5        Northstar's Amended Complaint sufficiently alleges that the Fund's shareholders were

6   intended third-party beneficiaries of the Advisory Agreement and that the Investment Advisor

7   breached its obligations and caused the Class members to sustain damages.  The Court should deny

8   defendants' motion to dismiss Count V.

9   **V.   IF THE COURT DENIES THE DEFENDANT'S MOTION TO COMPEL
        ARBITRATION AND REACHES THE SECTION 17200 CLAIM, NORTHSTAR
10       HAS ADEQUATELY PLED SUCH A CLAIM.**

11        Northstar has opposed defendants' motion to compel arbitration in a pleading filed

12   concurrently with this memorandum in opposition.  The Court need only address the merits of the

13   Section 17200 Claim if it denies defendants' motion to compel arbitration.  In that event, Northstar's

14   claim would survive the motion to dismiss.

15        First, Northstar has adequately pled standing under Section 17204 because it suffered an

16   "injury in fact" that was caused by defendants' unlawful conduct.  "Injury in fact" can be established

17   by a showing of "[a]n injury to a tangible property interest, such as money …."  *See Troyk v.*

18   *Farmers Group, Inc.*, 171 Cal. App. 4th 1305, 1347 (2009).  As asserted in the Amended Complaint,

19   Northstar was paid a management fee based on the reported asset values of its clients' Schwab

20   accounts.  Thus, when the value of the Fund was adversely affected by defendants' violation of

21   Section 13(a) of the Investment Company Act, Northstar's clients lost money on their investment,

22   and Northstar's management fees dropped in lock step. *Overstock.com, Inc. v. Gradient Analytics,*

23   *Inc.*, 151 Cal. App. 4th 688, 716 (Cal. App. 1st Dist. 2007) (concluding plaintiff had standing when

24   the defendants' unlawful conduct "result[ed] in diminution in value of its assets and decline in its

25   market capitalization and other vested interests.").  This direct loss of fees due to defendants'

26   conduct is more than sufficient to establish "injury in fact" for standing purposes. *S. California*

27   *Hous. Rights Ctr. v. Ass'n and Los Feliz Towers Homeowners Ass'n. Bd. of Dirs.* 426 F. Supp. 2d

28

1   1061, 1069 (C.D. Cal. 2005) (plaintiff had standing when it alleged it had lost financial resources

2   and diversion of staff from other cases to investigate claim.)

3       Second, and contrary to defendants' assertions, Northstar has also alleged a sufficient nexus

4   between its unlawful conduct and Northstar's "injury in fact" to confer standing.  Under the test set

5   forth in *Daro v. Superior Court*, the case cited by defendants, the "causation" element of standing is

6   only broken when a complaining party would suffer the same harm "whether or not a defendant

7   complied with the law."   151 Cal. App. 4th 1079, 1099 (2007) ("tenants would suffer the same

8   injury regardless of whether the owners complied with or violated the Subdivided Lands Act");

9   *accord, Troyk*, 171 Cal. App. 4th, at 1349.[8]  Northstar readily meets this test.  Defendants' deviation

10  from its investment policies led to a visible and significant differential in the value of the Fund from

11  what it would have been had defendants remained true to its stated policy of tracking the Lehman

12  Index and not investing heavily in non-agency collateralized mortgage obligations.   Hence, if

13  defendants had complied with its own investment objectives, and thus Section 13(a) of the

14  Investment Company Act, Northstar and Northstar's clients would not have suffered such an

15  economic loss.[9]   There is no inequity in holding defendants responsible for Northstar's financial

16  losses.   Northstar was an independent Schwab registered representative that purchased and sold

17  securities on behalf of its clients in direct privity with Schwab.  Northstar's method of compensation

18  was common among Schwab independent investment advisors.   Defendants had actual knowledge

19  that Schwab independent investment advisors were compensated on this basis.    Amended

20  Complaint, ¶¶ 9-14, 135-36, 138.

21      And finally, Northstar has also sought a permissible remedy of a restitutionary nature.  Cal.

22  Bus. & Prof. Code §172003; *Shersher v. Superior Court*, 154 Cal. App. 4th 1491, 1497 (Cal. App.

23

24  [8] Though not necessary for the determination of the appeal, the *Troyk* court also noted that it
    "discern[ed] no legislative intent from Proposition 64's language that would require a standard of
25  causation more stringent than the 'a substantial factor' standard that applies to negligence actions . . .
    ."  *Id.* at n.33.  Thus, Northstar does not have to establish that Schwab's deviation was the *sole* factor
26  that led to its loss.

    [9] Also contrary to Defendant's contention, a claim for breach of contract can form the predicate for a
27  Section 17200 claim when the conduct at issue is also alleged as "unlawful," as Northstar does here.
    *Puentes v. Wells Fargo Home Mortgage, Inc.*, 160 Cal. App. 4th 638, 645 (2008).

28  [C 08-04119 SI] PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANTS'
    MOTION TO DISMISS FIRST AMENDED COMPLAINT                              23

2d Dist. 2007)  ("it has become a common practice for plaintiffs asserting a UCL claim . . .  to seek 'restitution' in order to invoke the court's broad equitable powers, even though the term 'restitution' does not accurately describe the relief sought"); *Cortez v. Purolator Air Filtration Prods. Co.*, 23 Cal. 4th 163, 180 (Cal. 2000) (noting that Section 17203 "is, as our cases confirm, a grant of broad equitable power").   Under Section 17200, the emphasis is not on the benefit conferred to the defendant, but rather on restoring the victim to the *status ante.  People ex rel. Kennedy v. Beaumont Inv., Ltd.*, 111 Cal. App. 4th 102, 135 (Cal. App. 6th Dist. 2003).

Here, a determination that defendants violated Section 13 of the ICA by deviating from the Fund's investment objectives and a concomitant return of the fees it otherwise would have been entitled to but for defendants' wrongful conduct would restore the *status quo ante*. As such, Northstar is entitled to restitution in an amount equal to the fees it was entitled to before defendants' unlawful activity caused the Fund to drop in value.[10]

## CONCLUSION

For the reasons stated above, defendants' motion to dismiss be denied.

Dated:  April 10, 2009

**WOLF POPPER LLP**

By:  /s/ Robert C. Finkel            .
           ROBERT C. FINKEL
           (*admitted Pro Hac Vice*)

845 Third Avenue
New York, NY  10022
Telephone:  (212) 759-4600
Facsimile:  (212) 486-2093

---

[10] While the First Amended Complaint does use the word "damages" in connection with its Section 17200 Claim, for the reasons stated herein, the relief sought is restitutionary in nature and therefore available.  *See Marks v. Ocwen Loan Servicing*, No. C 07 02-133 S, 2007 U.S. Dist. LEXIS 65590, at *9 (N.D. Cal. Aug. 23, 2007) (concluding that though plaintiff used term "disgorgement" in her complaint, the remedy sought was restitutionary and thus available under Section 17200).

[C 08-04119 SI] PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS FIRST AMENDED COMPLAINT                                          24

1   Marc J. Gross
    **GREENBAUM ROWE SMITH**
2     **& DAVIS LLP**
    75 Livingston Street, Suite 301
3   Roseland, NJ  07068
    Telephone:  (973) 535-1600
4   Facsimile:  (973) 535-1698

5   Joseph J. Tabacco, Jr.
6   Christopher T. Heffelfinger (118058)
    James C. Magid (233043)
7   **BERMAN DEVALERIO LLP**
    425 California Street, Suite 2100
8   San Francisco, CA  94104
    Telephone: (415) 433-3200
9   Facsimile:  (415) 433-6382

10  **Attorneys for Plaintiff Northstar**
11  **Financial Advisors, Inc.**

12
        I, Christopher T. Heffelfinger, am the ECF user whose ID and password are being used to
13
    file Plaintiff's Memorandum in Opposition to Defendants' Motion To Dismiss First Amended
14
    Complaint.  In compliance with General Order 45, X.B., I hereby attest that Robert C. Finkel, co-
15
    counsel for Plaintiff Northstar, has concurred in this filing.
16

17                                          s/ Christopher T. Heffelfinger

18

19

20

21

22

23

24

25

26

27

28
    [C 08-04119 SI] PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANTS'
    MOTION TO DISMISS FIRST AMENDED COMPLAINT                              25