1   QUINN EMANUEL URQUHART & SULLIVAN, LLP
      Richard A. Schirtzer (Bar No. 150165)
2   865 Figueroa St., 10th Floor
    Los Angeles, California 90017
3   Telephone:   (213) 443-3000
    Facsimile:   (213) 443-3100
4   E-mail:      richardschirtzer@quinnemanuel.com

5   QUINN EMANUEL URQUHART & SULLIVAN, LLP
      Karin Kramer (Bar No. 87346)
6     Patrick Doolittle (Bar No. 203659)
      Arthur M. Roberts (*pro hac vice*)
7   50 California Street, 22nd Floor
    San Francisco, California  94111-4788
8   Telephone:   (415) 875-6600
    Facsimile:   (415) 875-6700
9   E-mail:      karinkramer@quinnemanuel.com

10
    Attorneys for defendants Schwab Investments, Charles
11  Schwab Investment Management, Inc., Mariann
    Byerwalter, Donald F. Dorward, William A. Hasler,
12  Robert G. Holmes, Gerald B. Smith, Donald R. Stephens,
    Michael W. Wilsey, Charles R. Schwab, Randall W.
13  Merk, Joseph H. Wender, and John F. Cogan

14                  UNITED STATES DISTRICT COURT

15                NORTHERN DISTRICT OF CALIFORNIA

16                       SAN JOSE DIVISION

17

18  NORTHSTAR FINANCIAL ADVISORS,          Case No. 08-cv-04119 LHK
19  INC., on Behalf of Itself and All Others
    Similarly Situated,                     CLASS ACTION
20
                   Plaintiff,               SCHWAB DEFENDANTS  REPLY IN
21                                          SUPPORT OF MOTION TO DISMISS
         v.                                 SECOND AMENDED CLASS ACTION
22                                          COMPLAINT
    SCHWAB INVESTMENTS, *et al.*,
23                                          Date:     January 13, 2011
                   Defendants.              Time:     1:30 p.m.
24                                          Judge:    Hon. Lucy Koh

25

26

27

28

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ................................................................................................ 1

II.   ARGUMENT .................................................................................................... 2

    A.    Northstar Still Lacks Standing ........................................................... 2

        1.    A post-filing assignment cannot confer standing ........................ 2

        2.    Northstar must assert its claims derivatively ............................. 3

    B.    SLUSA Preempts Northstar's Claims ................................................ 5

    C.    Northstar Has Failed To Plead A Breach Of Fiduciary Duty ................ 7

    D.    Northstar Still Has Failed To Identify A Contract; Its Breach Of Contract
          Claim Therefore Must Be Dismissed ............................................... 10

    E.    Lacking An Underlying Contract, Northstar Cannot Allege A Breach Of A
          Contractual Covenant ..................................................................... 12

    F.    Northstar Was Not A Third-Party Beneficiary Of The Advisory Agreement ........ 13

III.  CONCLUSION ............................................................................................... 15

# **TABLE OF AUTHORITIES**

**Page**

## **Cases**

*Bell Atlantic Corp. v. Twombly,*
  550 U.S. 544 ................................................................................................................11, 14

*California Emergency Physicians Medical Group v. Pacificare of California,*
  111 Cal. App. 4th 1127 (2003) ......................................................................................15

*In re Charles Schwab Corp. Sec. Litig.,*
  257 F.R.D. 534 (N.D. Cal. 2009) ..................................................................................6, 12

*In re Charles Schwab Corp. Sec. Litig.,*
  No. C 08-01510, 2009 WL 1371409, at *4 (N.D. Cal. May 15, 2009) ...........................7

*County of Santa Clara v. Astra USA, Inc.,*
  588 F.3d 1237 (9th Cir. 2009) .......................................................................................14

*DBSI/TRI IV Ltd. P'ship v. United States,*
  465 F.3d 1031 (9th Cir. 2006) .........................................................................................3

*Doe v. Harbor Sch., Inc.,*
  843 N.E.2d 1058 (Mass. 2006) .....................................................................................8, 9

*Everett v. Bozic,*
  No. 05 Civ. 00296 (DAB), 2006 WL 2291083 (S.D.N.Y. Aug. 3, 2006) ........................5

*Fogelin v. Nordblom,*
  521 N.E.2d 1007 (Mass. 1988) ........................................................................................7

*Franklin Life Ins. Co. v. The Commonwealth Edison Co.,*
  451 F. Supp. 602 (S.D. Ill., S. Div. 1978) ....................................................................12

*In re Gulf Oil/Cities Service Tender Offer Litigation,*
  725 F. Supp. 712 (S.D.N.Y. 1989) ................................................................................11

*Hayes Children Leasing Co. v. NCR Corp.,*
  37 Cal. App. 4th 775 (1995) .........................................................................................15

*Hotel Employees and Restaurant Employees Local 2 v. Vista Inn Management Co.,*
  393 F. Supp. 2d 972 (N.D. Cal. 2005) ..........................................................................15

*Indiana Elec. Workers Pension Trust Fund v. Dunn,*
  No. C-06-01711, 2007 WL 1223220 (N.D. Cal. Mar. 1, 2007) ......................................4

*Jackson v. Stuhlfire,*
  547 N.E.2d 1146 (Mass. App. Ct. 1990) ........................................................................4

*Jones v. Aetna Casualty and Surety Co.,*
  26 Cal. App. 4th 1717 (1994) .......................................................................................15

*Kim v. Regents of the Univ. of Cal.*,
    80 Cal. App. 4th 160 (2000) ............................................................12

*Kramer v. Western Pac. Indus., Inc.*,
    546 A.2d 348 (Del. 1988) ...................................................................4

*Lapidus v. Hecht*,
    232 F.3d 679 (9th Cir. 2000) ..............................................................4

*Madden v. Cowen & Co.*,
    576 F.3d 957 (9th Cir. 2009) ..............................................................5

*Merrill Lynch, Pierce, Fenner & Smith Inc. v. Dabit*,
    547 U.S. 71 (2006) ...............................................................................5

*Mills v. Polar Molecular Corp.*,
    12 F.3d 1170 (2d Cir. 1993) ..............................................................11

*Mutchka v. Harris*,
    373 F. Supp. 2d 1021 (C.D. Cal. 2005) ..............................................4

*Northstar Financial Advisors, Inc. v. Schwab Investments*,
    609 F. Supp. 2d 938 (N.D. Cal. 2009) ....................................2, 6, 11

*Northstar Financial Advisors, Inc. v. Schwab Investments*,
    615 F.3d 1106 (9th Cir. 2010) .........................................................4, 9

*O'Brien v. Pearson*,
    67 Mass. App. Ct. 29 (2006) ...............................................................8

*Ohio Bureau of Workers Comp. v. MDL Active Duration Fund, Ltd.*,
    476 F. Supp. 2d 809 (S.D. Ohio 2007) .............................................14

*People v. Williams*,
    34 Cal. 4th 397 (2004) .........................................................................2

*Proctor v. Vishay Intertechnology, Inc.*,
    584 F.3d 1208 (9th Cir. 2009) .........................................................5, 6

*RK Ventures, Inc. v. City of Seattle*,
    307 F.3d 1045 (9th Cir. 2002) .............................................................3

*Simon v. Stang*,
    2010 WL 1460430 (N.D. Cal. Apr. 12, 2010) ....................................6

*Smith v. Microskills San Diego L.P.*,
    153 Cal. App. 4th 892 (2007) ............................................................13

*Spinks v. Equity Residential Briarwood Apts.*,
    171 Cal. App. 4th 1004 (2009) ....................................................13, 14

*Stegall v. Ladner*,
    394 F. Supp. 2d 358 (D. Mass. 2005) .................................................5

*Stickrath v. Globalstar, Inc.*,
    527 F. Supp. 2d 992 (N.D. Cal. 2007) ...................................................................................2

*United States for the Use & Benefit of Wulff v. CMA, Inc.*,
    890 F.2d 1070 (9th Cir. 1989) ...............................................................................................3

*In re Vivendi Universal, S.A. Securities Litigation*,
    605 F. Supp. 2d 570 (S.D.N.Y. 2007) ....................................................................................3

*Wallace v. Malooly*,
    122 N.E.2d 275 (Ill.  1954) .....................................................................................................7

*In Re Wells Fargo Mortgage Backed Certificates Litigation*,
    712 F. Supp. 2d 958 (N.D. Cal. 2010) ...................................................................................2

*Wilbur v. Locke*,
    423 F.3d 1101 (9th Cir. 2005) ...............................................................................................2

*Zurich Capital Markets Inc. v. Coglianese*,
    332 F. Supp. 2d 1087 (N.D. Ill., E.D. 2004) ......................................................................14


## Statutes

15 U.S.C. § 78bb(f)(1)(A)-(B) ...........................................................................................................5

15 U.S.C. § 78bb(f)(1) ......................................................................................................................6


## Other Authorities

Schwarzer, Tashima, Wagstaffe, Federal Civil Procedure Before Trial, The Rutter Group
    ¶ 7:12.1 ....................................................................................................................................3

# I.     __INTRODUCTION__

Plaintiff has now tried three times to plead garden-variety state-law claims.  If its Second Amended Complaint ("SAC") proves anything, it is that Plaintiff cannot do so.  Not only are Plaintiff's claims defective, but the SAC reaffirms that Northstar is an improper representative to allege them.  Northstar never bought or owned shares of the Fund on its own account and has failed to point to a direct injury that would allow it to prosecute this action.

Northstar's SAC is defective for at least the following reasons:

- Northstar, indisputably, did not suffer injury-in-fact, and the post-filing assignment it procured in an effort to obtain standing is insufficient under Ninth Circuit law which requires that standing exist at the commencement of the action;

- Northstar also lacks standing to assert derivative claims seeking damages for the diminution in value of the Fund's shares;

- SLUSA preempts each claim of Plaintiff's complaint because these state law claims all incorporate allegations of misrepresentations and/or omissions, which recent authority requires to be considered in evaluating SLUSA preemption;

- Under the governing law of Massachusetts, none of the defendants are fiduciaries of Plaintiff, nor have they breached any defined fiduciary duty;

- Plaintiff has failed to provide any authority for the concept that a proxy statement is a contract and therefore Plaintiff's breach of contract claim lacks the indispensable element of an enforceable contract;

- In the absence of a contract, Plaintiff cannot maintain a claim for breach of the covenant of good faith and fair dealing, and Judge Illston's ruling on this claim did not—and could not—hold otherwise;

- Plaintiff has been unable to show any language in the Advisory Agreement that "directly" or "explicitly" intends to benefit it individually or as a class, thus negating its third-party beneficiary argument.

Neither the facts nor the law support the claims Plaintiff wants to make.  If Plaintiff is given leave to amend again, this is not a problem that can be cured.  The Schwab Defendants therefore respectfully request that its motion be granted, this time without leave to amend.

## II.     ARGUMENT

### A.     Northstar Still Lacks Standing

#### 1.     A post-filing assignment cannot confer standing

This Court need look no further than the standing issue to dismiss Northstar's SAC in its entirety and without leave to amend.  Northstar has not cured the standing deficiency that previously caused Judge Illston to dismiss its complaint, and it cannot do so.  *See Northstar Financial Advisors, Inc. v. Schwab Investments,* 609 F. Supp. 2d 938, 942 (N.D. Cal. 2009), *rev'd on other grounds*, 615 F.3d 1106 (2010). Standing is determined as of the date the complaint is filed, and it is undisputed that Northstar did not have standing to assert the claims at issue at that time. *See Wilbur v. Locke*, 423 F. 3d 1101, 1107 (9th Cir. 2005), *abrogated on other grounds by Levin v. Commerce Energy, Inc.*, — U.S. —, 130 S.Ct. 2323 (2010).  Although Judge Illston stated that Northstar's lack of standing could be cured by assignment, the parties did not brief, and the Court did not address, the issue Schwab raises here, which is whether an assignment procured after the litigation began abrogates the rule that standing must exist when the litigation is filed. Because Judge Illston did not consider that issue, her decision cannot be read to encompass it.  *See People v. Williams,* 34 Cal. 4th 397, 405 (2004) (cases are not authority for propositions not considered).

An assignment obtained after the litigation commenced cannot confer standing because it conflicts with clear precedent that "[t]he party invoking the jurisdiction of the court cannot rely on events that unfolded after the filing of the complaint to establish its standing."  *Wilbur,* 423 F. 3d 1107.  Just in the past year, this Court has re-affirmed that "strict application of standing principles" is "particularly important in securities litigation."  *In Re Wells Fargo Mortgage Backed Certificates Litigation*, 712 F. Supp. 2d 958, 964 (N.D. Cal. 2010).  Nothing that Northstar alleges in its Opposition to Schwab's Motion to Dismiss can or should undermine the requirement to ensure that constitutional standing is satisfied before a case proceeds.

The cases Northstar relies on to support its claim to standing are inapposite. Neither *Wells Fargo* nor *Stickrath v. Globalstar, Inc.*, 527 F. Supp. 2d 992 (N.D. Cal. 2007) hold that standing can be manufactured after a complaint is filed.  In those cases, the Court merely stated that

1  plaintiffs could amend their complaint to allege facts showing they had standing.  But those facts

2  still must have existed at the commencement of the litigation.

3  　　　　None of the other cases Northstar cites support its argument either.  In *In re Vivendi*

4  *Universal, S.A. Securities Litigation*, 605 F. Supp. 2d 570 (S.D.N.Y. 2007), the Court decided that

5  plaintiff should be allowed a reasonable time to substitute in, or obtain ratification from, the real

6  parties in interest.  *See id.* at 583-585.  But *Vivendi* was decided in the Second Circuit; in the Ninth

7  Circuit, real-party-in-interest, like standing, is determined as of the time the suit is filed.  *United*

8  *States for the Use & Benefit of Wulff v. CMA, Inc.*, 890 F. 2d 1070, 1074-75 (9th Cir. 1989).

9  "Thus, if plaintiff files suit on a claim *before* it has been assigned to plaintiff, the subsequent

10  assignment does *not* cure the real party in interest problem.  The action must be dismissed . . .

11  even if the statute of limitations has run in the interim.  The subsequent assignment does *not*

12  'relate back' to validate the premature lawsuit."  Schwarzer, Tashima, Wagstaffe, Federal Civil

13  Procedure Before Trial, The Rutter Group ¶ 7:12.1.

14  　　　　Because Northstar did not obtain its assignment until after the litigation began, it lacked

15  standing when it filed suit and its complaint must be dismissed.

16  　　　　　　　　**2.**　　　　**Northstar must assert its claims derivatively**

17  　　　　Even if a post-filing assignment could confer standing, Northstar still would lack standing

18  because the claims it alleges are derivative claims of the corporation, not direct claims of

19  shareholders, and Northstar has no standing to assert claims on behalf of the Fund.  *RK Ventures,*

20  *Inc. v. City of Seattle*, 307 F.3d 1045, 1057 (9th Cir. 2002).  Regardless of  how Northstar

21  characterizes its claims, fundamentally they are claims for declines in the Fund's share price and

22  are thus classic derivative claims.  Because the question of whether an action is derivative or direct

23  is a question of standing—and therefore subject matter jurisdiction—it is properly raised in this

24  motion.  *RK Ventures, Inc. v. City of Seattle*, 307 F.3d 1045, 1057 (9th Cir. 2002); *DBSI/TRI IV*

25  *Ltd. P'ship v. United States*, 465 F.3d 1031, 1038 (9th Cir. 2006).  As Northstar points out, the

26

27

28

1   derivative/direct issue was not briefed previously, and its argument that the Court already decided

2   it is therefore incorrect.[1]

3       Relying on *Lapidus v. Hecht*, 232 F.3d 679, 683 (9th Cir. 2000), Northstar argues that its

4   core claim is a direct claim for a voting-rights violation.  But *Lapidus* itself shows why Northstar's

5   conclusion is wrong.  In *Lapidus,* the voting-rights claim was based on Section 13 of the

6   Investment Company Act, *see id.* at 681, a claim that the Ninth Circuit expressly rejected in this

7   case.  *Northstar Financial Advisors, Inc. v. Schwab Investments*, 615 F. 3d 1106, 1108 (9th Cir.

8   2010).   Instead, Northstar asserts a claim for damages based on the diminution in value of shares

9   in the Fund.  *See* SAC, ¶¶ 5, 102, 118, 136, 152.  According to *Lapidus*, a claim where the

10  "alleged injury is inflicted on the corporation and the only injury to the shareholder is the indirect

11  harm which consists of the diminution in the value of his or her shares" is a derivative claim.  *Id.*;

12  *Mutchka v. Harris*, 373 F. Supp. 2d 1021, 1027 (C.D. Cal. 2005) (under Massachusetts law "[i]f

13  the injury merely is a reduction in the price of stock, then the suit must be derivative").

14      The mere fact that Northstar uses the words "voting rights" in its complaint does not

15  convert this derivative claim to a direct one.  It is appropriate for the Court to look beyond the

16  form of the claim, and analyze the "'nature of the wrong alleged' and the relief, if any, which

17  could result if plaintiff were to prevail."  *Kramer v. Western Pac. Indus., Inc.*, 546 A.2d 348, 351

18  (Del. 1988).[2]  Employing that analysis, alleged "voting rights" claims may be revealed as nothing

19  other than derivative claims for mismanagement of corporate assets.  *See Indiana Elec. Workers*

20  *Pension Trust Fund v. Dunn*, No. C-06-01711, 2007 WL 1223220, at *10 (N.D. Cal. Mar. 1,

21  2007) ("[a]lthough plaintiffs argue that they have been injured because they were not given their

22  right to vote, the nature of their claims is essentially mismanagement of corporate assets and

23  derivative in nature").  That is certainly true here where the "nature of the wrong alleged" is that

24

25      [1]  The Court's only ruling on standing was to grant Schwab's motion to dismiss for lack of
26  standing.  Dkt. No. 74, p. 4.
        [2]  Although *Kramer* is a Delaware case, in *Lapidus* the Ninth Circuit approved of citing to
27  Delaware law to construe Massachusetts law on the derivative-direct distinction and even cited to
    *Kramer*.  *See* 232 F.3d at 683.
28

the Fund lost value because of "mismanagement and wrongdoing" by Schwab in administering the Fund, which is "properly derivative." *Jackson v. Stuhlfire*, 547 N.E.2d 1146, 1148 (Mass. App. Ct. 1990). The relief Northstar seeks, which is principally compensation for the diminution in the value of its shares, is the hallmark of a derivative claim. *See* SAC, ¶¶ 5, 102, 118, 136, 152; *See, e.g., Everett v. Bozic*, No. 05 Civ. 00296 (DAB), 2006 WL 2291083, at *3 (S.D.N.Y. Aug. 3, 2006) ("a reduction in share price is an indirect injury," remedied by a derivative action); *Stegall v. Ladner*, 394 F. Supp. 2d 358, 364 (D. Mass. 2005) (claims against mutual fund were derivative because they "relate to a diminution in the total assets of the Funds").[3]

**B.     SLUSA Preempts Northstar's Claims**

The essence of Northstar's response to SLUSA pre-emption is that, having lost its Section 13 federal claim, it would be unfair to deprive it of state-law claims too. But, because of rampant past abuse, Congress has carefully considered and decided how securities claims should proceed, and Northstar's state-law claims are themselves an unfair attempt to circumvent that considered decision. *See Merrill Lynch, Pierce, Fenner & Smith Inc. v. Dabit*, 547 U.S. 71, 82 (2006) (rather "than face the obstacles set in their path by the Reform Act, plaintiffs and their representatives began bringing class actions under state law," so Congress passed SLUSA).

Northstar does not contest that its claims meet virtually all of the elements of SLUSA pre-emption. It focuses its argument on one element only, whether it has alleged a misrepresentation or omission of material fact.[4] *See* 15 U.S.C. § 78bb(f)(1)(A)–(B). Northstar argues that its complaint does not satisfy this element because it alleges contract and fiduciary-duty claims, which do not require a misrepresentation or omission. But "[m]isrepresentation need not be a

---

[3]  Northstar also argues that it may assert its claim directly because mutual funds and corporations are different. Courts uniformly have rejected that argument. *See Everett v. Bozic*, 2006 WL 2291083, at *4 (S.D.N.Y. Aug. 3, 2006).

[4]  Northstar does not appear to dispute the other four elements, although it mentions the "in connection with" requirement. *See* Opp. Br. 19:2–5. If it is challenging this element, its challenge fails because Northstar alleges "existing investors retained shares and new investors purchased shares" in reliance upon the fund's allegedly misleading SEC filing. SAC ¶ 145. This is sufficient to meet the "in connection with" requirement. *See Madden v. Cowen & Co.*, 576 F.3d 957, 965–66 (9th Cir. 2009) (requirement construed broadly).

1   specific element of the claim to fall within the Act's preclusion." *Proctor v. Vishay*

2   *Intertechnology, Inc.*, 584 F.3d 1208, 1222, n.13 (9th Cir. 2009).  When a plaintiff incorporates

3   misrepresentation or omission allegations into a claim, as Northstar does here,[5] those allegations

4   are taken into account when considering SLUSA preemption.  The only question for the Court is

5   whether Northstar alleges, *anywhere* in the SAC, some type of material misrepresentation or

6   omission.  *Id.* (and cases cited therein).[6]

7           Northstar alleges several misrepresentations and incorporates all of them into its claims.

8   *See* Mtn. at 7.  But Northstar now argues that these were not misrepresentations because they were

9   "honestly believed" when they were made (Opp. at 20), which does not help it for several reasons.

10  First, SLUSA does not require an allegation of scienter; it only requires an allegation of

11  misrepresentation or omission.  *See* 15 U.S.C. § 78bb(f)(1).  Second, the complaint alleges that the

12  Fund deviated from its investment objectives before February 2008.  SAC ¶ 103.  Yet several of

13  the alleged misrepresentations came *after* that and therefore conflict with Northstar's "honest

14  belief" defense to its own allegations.  Northstar alleges a misrepresentation (1) in an amended

15  prospectus of June 2008, *id.* at ¶ 75; (2) on Schwab's website on July 31, 2008, *id.* at ¶ 79; and (3)

16  in a February 27, 2008 Semi-Annual Report, *id.* at ¶ 97.   Third, Northstar's entreaty that Schwab

17  was being "honest" when it made the statements cannot be found in its complaint, which portrays

18  Schwab as anything but honest.  *See, e.g.,* SAC, ¶ ¶ 97, 100 (alleging that Schwab gave an untrue

19  explanation for underperformance).  Arguments in Nothstar's brief cannot replace its pleading and

20  merely represent another attempt to artfully argue around federal securities claims.

21

22

23

24      [5]   *See* SAC ¶¶ 120, 137, 149, 153.

25      [6]   Northstar quotes language from Judge Alsup in *In re Charles Schwab Corp. Sec. Litig.*, 257
    F.R.D. 534, 551 (N.D. Cal. 2009) to argue that allegations incorporated into a claim should be
26  disregarded.  However, Judge Alsup's opinion was prior to *Proctor,* which controls.  *See also*
    *Simon v. Stang*, 2010 WL 1460430, at *7 (N.D. Cal. Apr. 12, 2010) (SLUSA preempted state
27  claim because it incorporated a misrepresentation, despite not being an element of that claim).

28

1

### C.  <u>Northstar Has Failed To Plead A Breach Of Fiduciary Duty</u>

2   Judge Illston's final direction to Northstar when she dismissed its breach of fiduciary duty

3   claim was to "carefully examine whether each of the defendants named in this claim can in fact be

4   named in such a claim, and under which state's law such a claim is properly brought."  *Northstar,*

5   609 F. Supp. 2d at 950.  Northstar has done neither.  Although it alleges that it brings the claim

6   under California law (SAC, ¶ 121), it argues both Massachusetts and California law in its

7   opposition to this motion.  And as to the liability of the respective defendants, rather than

8   clarifying their respective alleged roles, Northstar instead added eleven individual defendants and

9   piled on a hodge-podge of allegations from any document that used the word "trust" or

10  "fiduciary"—regardless of what those terms meant in context or who stated them about whom—

11  making it impossible to figure out the basis of this claim as to any single defendant.   Moreover,

12  the claim is such a muddle that it cannot fairly serve as the basis for any action going forward.

13  Despite the allegation in their complaint regarding the applicability of California law,

14  Northstar does not dispute that Massachusetts law applies to this breach of fiduciary duty claim

15  against a Massachusetts mutual fund.  Schwab cited multiple authorities supporting the fact that

16  the internal affairs doctrine applies to this case (Mtn. at 11); Northstar failed to address these cases

17  or to provide any competing authority of its own, concluding instead that it was "unnecessary to

18  consider it," despite Judge Illston's admonition that Northstar do so.  *See* Opp. at p. 8, fn. 13.[7]

19  Schwab will therefore analyze this claim under Massachusetts law.

20  Under Massachusetts law, none of the named defendants owe a fiduciary duty to Northstar

21  because a corporation, including a mutual fund, is not a fiduciary of its shareholders.  *See*  Mtn. at

22  13-15.  Again, Northstar fails to address Schwab's authority, choosing instead to unearth two

23  inapposite cases, including one decided under Illinois law.  Neither case addresses an open-end

24  mutual fund with thousands of investors, many entering and exiting the Fund daily, which at one

25  ───────────────

26  [7]  Northstar only says that it is "questionable" whether the doctrine applies here.  Although
    Northstar claims Schwab did not cite any cases holding the doctrine applies to mutual funds,
27  Schwab did.  *See* Open. Br. 11–12 (citing *In re Charles Schwab Corp. Sec. Litig.*, 257 F.R.D. 534
    (N.D. Cal. 2009)

28

time managed $1.5 billion in assets and had 150 million shares outstanding.  (SAC ¶ 37.)  Instead, both cases consider whether fiduciary obligations arise in small trusts with a finite number of investors who had personal relationships to the trust.  In *Fogelin v. Nordblom*, 521 N.E.2d 1007 (Mass. 1988), the facts appear to describe a family trust; *Wallace v. Malooly*, 122 N.E.2d 275 (Ill. 1954) involved a small real estate trust.  Neither announced a global rule for Massachusetts mutual funds or can be read to undermine the numerous authorities to the contrary that Schwab cited in its opening brief.  Massachusetts law acknowledges the reality that relationships between shareholders and directors of small corporations are different than those in large ones and impose a more "exacting" fiduciary duty.  *O'Brien v. Pearson*, 851 N.E.2d 1093, 1097 (Mass. App. Ct. 2006), *rev'd on other grounds*, 868 N.E.2d 118 (2007).

Northstar also fails to address or dispute the case law Schwab cited holding that the investment advisory entity does not have a fiduciary relationship to the shareholders.  Rather, its obligations run to the Fund with whom it has its relationship.  *See* Mtn. at 13.  Northstar's conclusory allegations that each Defendant held itself out as "interrelated" and each was under "common control" (Opp. at 9) still do not depict a fiduciary relationship.

As to the newly added trustee defendants, Massachusetts law is also clear that no fiduciary relationship runs to the shareholders.  Northstar neither disputes the law Schwab cites (*see* Mtn. at 14) nor cites any competing authority.  As it did with the other defendants, it chooses to rely on allegations irrelevant to any claim of fiduciary duty, such as that the trustees "had actual knowledge that the funds safeguarded to Schwab for investment were of great significance to investors . . ."  (SAC, ¶ 132)  Such knowledge could also have been held by any number of people, connected or unconnected with Schwab, but that would not confer fiduciary status on each of them, and Northstar has cited no authority that it confers such status on the trustees either.  Schwab does not believe this is what Judge Illston had in mind when she advised Northstar to "carefully examine" whether defendants were properly named in the complaint.

Northstar also argues that a fiduciary relationship arose "as a matter of fact."  Fiduciary relationships can "arise from the nature of the parties' interactions," *Doe v. Harbor Sch., Inc.*, 843 N.E.2d 1058, 1064 (Mass. 2006), but Northstar alleges no facts showing that one arose here.  Its

1   claim is based on features shared by all mutual funds, such as investment advisers administering

2   the Fund and managing assets, and on annual reports which used some variation of, "Thank you

3   for placing your trust in Schwab Funds." *See* SAC ¶ 129. If this were enough to create a fiduciary

4   relationship, then the law in Massachusetts would be the opposite of what it is and corporations

5   and mutual funds as a rule would be considered fiduciaries, which they are not. There is no

6   allegation that Northstar or any investor in the fund had the kind of relationship described in *Doe*

7   that should cause the Court to trump the normal rule and impose a fiduciary obligation here.

8        Northstar also has failed to plead a violation of any fiduciary duty. It cites no case

9   supporting its position that an alleged deviation from a fund's investment objectives constitutes a

10  fiduciary-duty violation. Northstar's response to Defendants' authorities showing that

11  preservation of the right to vote is not a fiduciary duty  is that they are not "compelling" (Opp. at

12  11), even though one is from the Massachusetts high court and one from Judge Alsup in a case

13  involving another Schwab mutual fund. Whether Northstar calls it a "duty of care," or "improper

14  use" of the Trust assets, the underlying violation it relies on is still the alleged violation of the

15  Section 13(a) of the Investment Company Act; as such, this claim is merely an attempt to end-run

16  the Ninth Circuit decision in this case that Section 13(a) does not include a private right of action.

17  *See Northstar Financial Advisors, Inc. v. Schwab Investments*, 615 F.3d 1106 (9th Cir. 2010).

18       Regarding Schwab's statute-of-limitations argument, Northstar wrongly claims the Court

19  has already decided the issue. The Court only addressed the statute of limitations for Northstar's

20  now-dismissed Section 13(a) claim, which has a different accrual standard. *See* Feb. 19, 2009

21  Order, Dkt. No. 74, at 13. Under Massachusetts law, the three-year period for a fiduciary-duty

22  claim accrues when a plaintiff has "[a]ctual knowledge of injury suffered at a fiduciary's hands,

23  not knowledge of the consequences of that injury (i.e., a legal claim against the fiduciary)."

24  *Harbor Sch.*, 843 N.E.2d at 1067. Northstar alleges the Fund's total return tracked the Lehman

25  Index's until "approximately August 31, 2007 and [] *dramatically* . . . deviated thereafter." *See*

26  SAC ¶ 118. These are Northstar's own words, and once the Fund dramatically deviated from the

27  Lehman Index, which Northstar believed the Fund had to track, Northstar had "[a]ctual knowledge

28  of [the] injury." *Harbor Sch.*, 843 N.E.2d at 1067.

**D.**     **Northstar Still Has Failed To Identify A Contract; Its Breach Of Contract Claim Therefore Must Be Dismissed**

The centerpiece of Northstar's contract claim—that references to two proposals in a 1997 proxy statement created a contract between the Trust and shareholders concerning voting rights— is not supported by logic, fact, or law.  Neither proxy statements, nor any other unspecified disclosure documents that Northstar relies on to cobble together a contract, serve that purpose.

As a matter of logic, if Northstar is correct that required disclosure documents create contracts, then the Ninth Circuit's ruling that there is no private right of action under Section 13(a) is a nullity because the decision can always be circumvented merely by alleging that the disclosure documents constitute a contract.    That result is antithetical to the Ninth Circuit's conclusion, after thorough analysis, that enforcement of shareholder voting rights "remains exclusively with the SEC." *Id.* at 1122.

As a matter of fact, the complaint fails to allege how the proposals in the 1997 proxy statement can form a contract.  The proxy statement is a solicitation for votes on the proposals.  It does not contain language of offer or acceptance.  Who would the contracting parties be?  Would they include only those who voted for the proposals, or would they include those who voted against and those who abstained?  What would those contracting parties have been agreeing to on their side?  There is nothing in the 1997 proxy statement that requires investors to do anything as a result of the proxy statement, even if they voted in favor of the proposals. No one was required to buy shares, sell shares, or hold shares.  They were not even required to vote.  Although Northstar alleges in rote fashion that "existing investors retained shares and new investors purchased shares in consideration of the contractual obligations not to change fundamental investment objectives without a shareholder vote" (SAC, ¶ 145), this allegation cannot be credited where the complaint does not even allege that shareholders read or relied on the 1997 proxy statement.  Many would not even have been shareholders at the time.

Northstar attempts to conceal the deficiencies in relying on a proxy solicitation by peppering the newly-pleaded breach of contract claim with non-specific references to other disclosure documents, including prospectuses and SAIs (statements of additional information).

For example, Northstar alleges in paragraph 144 that the terms of the contract were "reiterated" in "subsequent SEC filings, including the January 15, 1998 Prospectus, and in each subsequent Prospectus and Statement of Additional Information incorporated by reference into the Prospectus and made a part of the Prospectus." *See also*, SAC, ¶ 147.   If Northstar is suggesting that "reiteration" of alleged contract terms in other documents, *ipso facto,* turns those other documents into contracts as well, it has cited no authority for that proposition.  Nor has Northstar provided the most basic information within its claim of which other documents it is relying on for this purpose. Schwab is entitled to know specifically who agreed to what and when and is not required to guess at those basic details.  Northstar's allegations do not meet the standard of *Bell Atlantic Corp. v. Twombly,* which advanced the requirement for a properly pled claim from "conceivable" to "plausible."  550 U.S. 544, 570 (2007).  Especially after Judge Illston specifically directed Northstar to allege the details of the contract, *Northstar,* 609 F. Supp. 2d at 950, Northstar's continued deficient factual allegations should lead to final dismissal of this claim.

Northstar also has failed to adduce supporting legal authority for its proposition that proposals in proxy statements, or voting rights, in any context, rise to the level of a contractual commitment that a private party may enforce.  None of the cases Northstar cites supports its position.  To the contrary.  Because those cases illustrate circumstances where contracts do result, as a group they further demonstrate why Northstar's allegations are inadequate.

Each case Northstar cites shows how a contract can arise in the context of a securities transaction, but none is like this case.  In *Mills v. Polar Molecular Corp.*, 12 F. 3d 1170 (2d Cir. 1993), the contracts at issue were employment  and sales representative agreements—recognizable as contracts because they were directly between the company and individuals, each of whom had rights and obligations as a result of their agreement.  Within those contracts were provisions by which the company promised shares of company stock to each individual and promised to register those shares.  When the company failed to register the shares, the individuals had claims for breach of contract, an uncontroversial claim under those circumstances.

*In re Gulf Oil/Cities Service Tender Offer Litigation*, 725 F. Supp. 712 (S.D.N.Y. 1989) looked at two securities-related documents and decided that one gave rise to contractual rights and

one did not.  The two documents were an Offer to Purchase, made to shareholders, and a merger agreement, to which the shareholders were not parties.  The shareholders tendered shares in response to the Offer to Purchase, thus creating contract rights for the shareholders.  *Id.* at 718, 728.  By contrast, the merger agreement was with a third party and the fact that it had an impact on the shareholders was not sufficient to create contractual rights for them.

Finally, in *Franklin Life Ins. Co. v. The Commonwealth Edison Co.*, 451 F. Supp. 602 (S.D. Ill., S. Div. 1978), the court found only that redemption provisions in a prospectus, which the plaintiffs had read and relied on, gave rise to a contract right where those provisions were breached.  The Court's ruling was based on longstanding law that the redemption terms of a preferred stock issue create a contract between a corporation and its shareholders.  *Id.*  at 613. Northstar has pointed to no law here, longstanding or otherwise, holding that proxy statements soliciting votes on proposals create contract rights.

There is no shortage of claims available to disappointed investors, but breach of contract based on a proxy statement is not one of them.  Nor, as Judge Alsup opined, may a plaintiff "simply allege in conclusory fashion the existence of an overarching contract consisting of a swath of evidently distinct documents.  Merely pleading such an ill-defined contract in conclusory fashion does not suffice."  *In re Charles Schwab Corp. Sec. Litig.*, No. C 08-01510, 2009 WL 1371409, at *4 (N.D. Cal. May 15, 2009).

### E.   Lacking An Underlying Contract, Northstar Cannot Allege A Breach Of A Contractual Covenant

Northstar argues that its claim for breach of the covenant of good faith and fair dealing should survive even without a contract because, it says, Judge Illston ruled it was properly pled, and because breach of the covenant does not require breach of a specific provision of the contract. Northstar also claims it can maintain this claim against the Investment Advisor defendant, even though it is not a party to the contract alleged.  None of these arguments has merit.

There is no credible argument that a claim for breach of the covenant can exist without an underlying contract.  Schwab cited *Kim v. Regents of the Univ. of Cal.,* 80 Cal. App. 4th 160, 164 (2000) for this proposition in its opening brief, and plaintiff does not distinguish the case nor deny

1   the point, nor could it.  If the contract claim does not survive, then the breach of covenant claim

2   must be dismissed along with it.

3          Judge Illston's order cannot fairly be read as preserving this claim in the absence of a

4   contract, as Northstar urges. Judge Illston considered the breach of contract and breach of

5   covenant claims together and her ruling on the two claims should be read together as well.  She

6   denied the motion to dismiss the covenant claim based only on the fact that no further pleading of

7   "egregious and willful" conduct was needed; Schwab does not contest that aspect of the ruling.

8   Judge Illston apparently did not consider or overlooked the issue raised here, which is that the

9   claim depends upon the contract.  Inasmuch as she found the pleading of the breach of contract

10  claim insufficient, the only way to harmonize her two rulings is to read them to mean that the

11  breach of the covenant claim can go forward only if Northstar properly pleads the existence of a

12  contract. To permit the claim to go forward in the absence of a contract claim would be error and a

13  waste of everyone's time and resources.

14         Northstar also argues that it should be permitted to maintain this claim against the

15  Investment Advisor entity by relying on its allegation that it was the third-party beneficiary of an

16  agreement between the Investment Advisor and the Trust.  Granting leave to amend on this point

17  would be futile because, as explained below, the Third Party Beneficiary claim cannot be

18  sustained either.

19         **F.**      **Northstar Was Not A Third-Party Beneficiary Of The Advisory Agreement**

20         Northstar has been unable to point to anything in the Investment Advisory And

21  Administration Agreement between Schwab Investments and Charles Schwab Investment

22  Management, Inc. that "explicitly," "directly," "definitely," or in "unmistakable terms" shows an

23  intent by the parties to benefit investors through this agreement.  *See Smith v. Microskills San*

24  *Diego L.P.*, 153 Cal. App. 4th 892, 898 (2007).  Instead, the agreement speaks explicitly and

25  unmistakably of creating obligations "for" and "to" the Schwab Investments Trust (e.g.:  "will

26  supervise or perform for the Schwab Funds;" will "provide general …analysis and advice to the

27  Schwab Funds;" ). Mtn., Exh. D, p. 1.  This fact distinguishes the contract here from the contracts

28  in every case Northstar cites in support of its third-party beneficiary argument.

Northstar's authorities illustrate the difference between a legitimate third-party beneficiary agreement and the agreement on which it relies in this case. Its leading case, *Spinks v. Equity Residential Briarwood Apts.*, 171 Cal. App. 4th 1004 (2009), is a good example of what is lacking in Northstar's complaint.  Northstar cites *Spinks* to argue that an intent to benefit a third party can be found even if the third party is not specifically named in the contract so long as the third party is among the class of persons for whose benefit the agreement was made.  *Spinks* involved an agreement which expressly stated its purpose was to provide leased housing for a company's temporary employees.  The plaintiff was one such employee, the "class" of employees was specifically identified as the "occupants" in the lease, and the particular plaintiff was individually identified in a lease extension letter.  There are no comparable facts here identifying investors in the Fund as a subject of the agreement between the investment advisor and the Trust.  Similarly, in *County of Santa Clara v. Astra USA, Inc.*, 588 F. 3d 1237 (9th Cir. 2009), the contract under consideration resulted from legislation that required drug manufacturers to enter into pricing agreements with the government for the benefit of federally funded medical clinics.  It was thus apparent that the essential purpose of the agreement was to benefit the clinics, even though they were not the direct contracting parties.  Most importantly, the agreement explicitly referenced the clinics and the benefit they were to receive, stating that the "'Manufacturer *agrees* . . . to charge *covered entities* [i.e., the federally funded clinics covered by the legislation] a price for each unit of the drug that does not exceed' the ceiling price of that drug." *Id.* at 1245 (emphasis in original).

Northstar cites two cases in a footnote that purportedly support the argument that investors are third-party beneficiaries of agreements between investment companies and their advisors, but neither case is of value here.  In *Ohio Bureau of Workers Comp. v. MDL Active Duration Fund, Ltd.*, 476 F. Supp. 2d 809 (S.D. Ohio 2007), the court appeared to apply a standard that is directly opposite to California law, which was whether there was any language in the agreement "which categorically refutes plaintiffs (sic) argument . . . ." *Id.* at 824.  And in *Zurich Capital Markets Inc. v. Coglianese*, 332 F. Supp. 2d 1087 (N.D. Ill., E.D. 2004), the Court's only ruling on the point was that plaintiffs were not required to plead supporting facts on a breach of contract claim.

1    *Id.* at 1122.  It is doubtful whether such a ruling would be forthcoming now, under the stricter

2    pleading regime established by *Twombly*, 550 U.S. 544.

3            Northstar's argument that the "sole objective of the Advisory Agreement is the successful

4    management of the Fund" does not speak to the question that its third-party beneficiary claim

5    raises, which is for whose "direct" and "explicit" benefit is this particular agreement?  Nor is the

6    question answered in the letter attached to Schwab's 2005 Annual Report in which Mr. Schwab

7    noted in general terms the commitment the managers bring to the stewardship of the Fund for the

8    shareholders.  Rather, that question must be answered by looking at the terms of the agreement

9    itself, all of which speak to the investment advisor's obligations to and for the Fund, and none of

10   which create an obligation running from the investment advisor to the shareholders.

11           Northstar's final point, that this issue cannot be decided at the pleading stage, is

12   demonstrably incorrect.  In both *California Emergency Physicians Medical Group v. Pacificare of*

13   *California,* 111 Cal. App. 4th 1127, 1138 (2003) and *Jones v. Aetna Casualty and Surety Co.*, 26

14   Cal. App. 4th 1717, 1724-25 (1994), the Courts dismissed the third-party beneficiary allegations

15   on demurrers.  Northstar's cited authorities do not undermine the fact that the Court can make this

16   decision now.  In *Hayes Children Leasing Co. v. NCR Corp.*, 37 Cal. App. 4th 775, 790 (1995),

17   the Court held that the issue in that case involved questions of fact that could not be raised for the

18   first time on appeal.  And in *Hotel Employees and Restaurant Employees Local 2 v. Vista Inn*

19   *Management Co.*, 393 F. Supp. 2d 972, 986-87 (N.D. Cal. 2005), the Court was unable to decide

20   the issue on a motion to dismiss because a necessary agreement was not a subject of judicial notice

21   and was not before the Court.  These impediments do not exist here.

22   **III.    <u>CONCLUSION</u>**

23           For the reasons set forth herein,  the Schwab Defendants respectfully request that the

24   Second Amended Complaint be dismissed in its entirety, without leave to amend.

25

26

27

28

1

2

3    DATED:  December 21, 2010         QUINN EMANUEL URQUHART &
                                       SULLIVAN, LLP
4

5

6                                      By  /s/
                                          Karin Kramer
7
                                       Attorneys for defendants Schwab Investments,
8                                      Charles Schwab Investment Management, Inc.,
                                       Mariann Byerwalter, Donald F. Dorward, William
9                                      A. Hasler, Robert G. Holmes, Gerald B. Smith,
                                       Donald R. Stephens, Michael W. Wilsey, Charles
10                                     R. Schwab, Randall W. Merk, Joseph H. Wender,
                                       and John F. Cogan
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Reply in Support of Motion to Dismiss Second Amended Class Action Complaint