1

2

3

4

5

6

7

8          UNITED STATES DISTRICT COURT

9         NORTHERN DISTRICT OF CALIFORNIA

10             SAN JOSE DIVISION

11  NORTHSTAR FINANCIAL ADVISORS, INC., )    Case No. 08-CV-04119 LHK
    on Behalf of Itself and All Others Similarly )
12  Situated,                          )
                                       )
13              Plaintiff,             )
                                       )
14      v.                             )
                                       )
15  SCHWAB INVESTMENTS; and MARIANN    )    CORRECTED ORDER GRANTING IN
    BYERWALTER, DONALD F. DORWARD,     )    PART AND DENYING IN PART
16  WILLIAM A. HASLER, ROBERT G.       )    DEFENDANTS' MOTION TO DISMISS
    HOLMES, GERALD B. SMITH, DONALD R. )
17  STEPHENS, MICHAEL W. WILSEY,       )
    CHARLES R. SCHWAB, RANDALL W.      )
18  MERK, JOSEPH H. WENDER and JOHN F. )
    COGAN as TRUSTEES OF SCHWAB        )
19  INVESTMENTS; and CHARLES SCHWAB    )
    INVESTMENT MANAGEMENT, INC.,       )
20                                     )
                Defendants.            )
21  _____  )

22          The Court heard oral argument on defendants' Motion to Dismiss the Second Amended

23  Complaint (Motion) in this matter on January 13, 2011.  For the reasons set forth below, the

24  Motion is GRANTED IN PART and DENIED IN PART.  Plaintiffs are given leave to amend as

25  specified in this Order.

26      I.      Introduction and Procedural History

27

28                              1
    Case No.: 08-CV-04119 LHK
    CORRECTED ORDER GRANTING IN PART AND DENYING IN PART MOTION TO
    DISMISS

**United States District Court**
For the Northern District of California

**United States District Court**
For the Northern District of California

On August 28, 2008, Plaintiff Northstar Financial Advisors, Inc. (Northstar) filed this class action lawsuit on behalf of all persons who owned shares of the Schwab Total Bond Market Fund (the Fund) at any time from August 31, 2007 to the present.  Compl. (Dkt. No. 1) ¶ 1.  Northstar is a registered investment advisory and financial planning firm serving both institutional and individual clients.  *Id*. ¶ 9.  Northstar manages both discretionary and nondiscretionary accounts on behalf of investors in its role as an investment advisor.  *Id*.  Northstar traded through Charles Schwab's Institutional Advisor Platform, and purchased shares in the Fund for its clients.  *Id*. ¶¶ 11-12.

Northstar alleged that defendants deviated from the Fund's investment objective to track the Lehman Brothers U.S. Aggregate Bond Index (the Index) in two ways.  First, Northstar alleged that the Fund deviated from this objective by investing in high risk non-U.S. agency collateralized mortgage obligations (CMOs) that were not part of the Lehman Index and were substantially more risky than the U.S. agency securities and other instruments that comprised the Index.  *Id*. ¶ 3.  Second, Northstar alleged that the Fund deviated from its investment objectives which prohibited any concentration of investments greater than 25% in any industry by investing more than 25% of its total assets in U.S. agency and non-agency mortgage-backed securities and CMOs.  *Id*. ¶ 4.  Northstar alleged that defendants' deviation from the Fund's investment objective exposed the Fund and its shareholders to tens of millions of dollars in losses due to a sustained decline in the value of non-agency mortgage-backed securities.  The Funds' deviation from its stated investment objective caused it to incur a negative total return of 1.09% for the period September 4, 2007 through August 27, 2008, compared to a positive return of 5.92% for the Index over that period.  *Id*. ¶ 5.

Based on these allegations, Northstar asserted the following claims: (1) Violation of Section 13(a) of the Investment Company Act of 1940 (ICA); (2) Breach of Fiduciary Duty; (3) Breach of Contract; and (4) Breach of Covenant of Good Faith and Fair Dealing.  Defendants moved to dismiss the first complaint.  *See* First MTD (Dkt. No. 33).  Judge Illston, to whom this case was

Case No.: 08-CV-04119 LHK
CORRECTED ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS

United States District Court
For the Northern District of California

1    previously assigned, granted in part and denied in part defendants' motion.  *See* Feb. 19, 2009

2    Order (Dkt. No. 74).

3         First, Judge Illston found that Northstar, as lead plaintiff, had no standing to sue regarding

4    securities it had not itself invested in, but that an assignment of claim from one of its client

5    investors "would . . . cure this deficiency."  Feb. 19, 2009 Order at 4.  Northstar had submitted

6    such an assignment, dated December 8, 2008, to the Court in support of its opposition to the First

7    MTD.  *See* Finkel Decl. (Dkt. No. 39) at Ex. F.  Judge Illston also granted leave to amend so that

8    Northstar could state a claim on its own behalf.  *Id*.  Judge Illston also found that there was an

9    implied private right of action under Section 13(a) of the ICA, and that Plaintiffs had stated a

10   claim for violation of shareholders' voting rights under this section.  Feb. 19, 2009 Order at 7, 9-

11   12.  Regarding the asserted state law causes of action, Judge Illston granted Plaintiffs leave to

12   amend their breach of fiduciary duty and breach of contract claims.  Regarding the breach of

13   fiduciary duty claim, Judge Illston did not decide whether Massachusetts or California law would

14   apply to determine whether the defendants owed investors a duty, but that the defendant's

15   admission that "some person or entity" owed a duty to the fund's investors supported granting

16   Plaintiffs leave to amend.  Judge Illston ordered the Plaintiffs to "carefully examine whether each

17   of the defendants named in this claim can in fact be named in such a claim, and under which

18   state's law such a claim is properly brought."  She further held that "[a]fter review of the amended

19   complaint, defendants may renew their motion to dismiss this claim."  Feb. 19, 2009 Order at 14-

20   15.  Judge Illston likewise concluded that it was unclear whether or not Plaintiffs could state a

21   breach of contract claim based on Proxy statements and prospectuses relating to the Fund.

22   Plaintiffs were given leave to amend to "add more specific allegations regarding the language

23   plaintiff relies on to allege the formation of a contract, as well as each defendants' involvement."

24   *Id*. at 15.  Finally, Judge Illston found that the Plaintiffs had stated a claim for breach of the

25   covenant of good faith and fair dealing.  *Id*.  at 15-16.

26        On March 2, 2009, Plaintiffs filed a First Amended Complaint (FAC).  On March 5, 2009,

27   defendants sought and were granted leave to appeal Judge Illston's Order finding a private right of

28

3

Case No.: 08-CV-04119 LHK
CORRECTED ORDER GRANTING IN PART AND DENYING IN PART MOTION TO
DISMISS

action under the ICA § 13(a), and a stay of this action pending the appeal. *See* Dkt. No. 108. Thus, the case was stayed from April 27, 2009 through August 13, 2010 while the appeal was pending. In the interim, the case was reassigned, first to Judge Seeborg, and then to the undersigned. *See* Dkt. Nos. 115, 117. On August 13, 2010, the Ninth Circuit reversed Judge Illston's Order, holding that there is no private right of action under Section 13(a). *Northstar Fin. Advisors, Inc. v. Schwab Invs.*, 615 F.3d 1106, 1122 (9th Cir. 2010).

In light of this, Plaintiffs filed a Second Amended Complaint (SAC) removing their Section 13(a) claim on September 28, 2010. The SAC named Schwab Investments (the Trust), its Trustees[1], and Charles Schwab Investment Management, Inc. (the Investment Advisor) as defendants. According to the SAC, the Trust is an investment trust organized under Massachusetts law, and "consists of a series of mutual funds, including the Fund." SAC ¶ 16. The Trust is managed by the Trustees. SAC ¶ 19. Pursuant to a contractual agreement between the Trust and the Investment Advisor, the Investment Advisor serves as the investment manager for the Fund. SAC ¶ 23, 154. The SAC alleges claims based on breach of fiduciary duty (against all defendants), breach of contract (against the Trust), breach of the covenant of good faith and fair dealing (against the Trust and the Investment Advisor), and a claim for third party beneficiary status to the agreement between the Trust and the Investment Advisor (against the Investment Advisor).

## II.    Legal Standard

Under Federal Rule of Civil Procedure 12(b)(6), a district court must dismiss a complaint if it fails to state a claim upon which relief can be granted. To survive a motion to dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). This "facial plausibility" standard requires the plaintiff to allege facts that add up to "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). In deciding whether the plaintiff has

---

[1] Mariann Byerwalter, Donald F. Dorward, William A. Hasler, Robert G. Holmes, Gerald B. Smith, Donald R. Stephens, Michael W. Wilsey, Charles R. Schwab, Randall W. Merk, Joseph H. Wender and John F. Cogan

4

Case No.: 08-CV-04119 LHK
CORRECTED ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS

United States District Court
For the Northern District of California

**United States District Court**
For the Northern District of California

1    stated a claim, the Court must assume the plaintiff's allegations are true and draw all reasonable

2    inferences in the plaintiff's favor. *Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987).

3    However, the court is not required to accept as true "allegations that are merely conclusory,

4    unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536

5    F.3d 1049, 1055 (9th Cir. 2008). Leave to amend must be granted unless it is clear that the

6    complaint's deficiencies cannot be cured by amendment. *Lucas v. Dep't. of Corr.*, 66 F.3d 245,

7    248 (9th Cir. 1995).

8        III.    Application

9            a.  Standing

10            Defendants argue that all of Plaintiffs' claims must be dismissed for lack of standing.

11    Defendants argue that because standing must be determined at the time a complaint is filed, and

12    because Northstar did not obtain an assignment of claims until several months after the original

13    complaint was filed, the assignment cannot cure Northstar's original lack of standing.[2] Plaintiffs

14    respond that Judge Illston's dismissal considered the assignment of claim that Plaintiffs now rely

15    upon, held that this assignment would "cure this [standing] deficiency," and gave the Plaintiffs

16    leave to file an amended complaint to cure the standing problem. Feb. 19, 2009 Order at 4.

17            At the hearing on this Motion, defendants focused on a Southern District of New York case

18    finding that a lack of standing at the outset of the case was not curable via a later assignment of

19    claim. *In re SLM Corp. Sec. Litig.*, 258 F.R.D. 112, 115 (S.D.N.Y. 2009). However, in *In re SLM*,

20    the Southern District of New York was determining lead plaintiff status, not dismissing a claim.

21    *Id*. In this context, the court found that because it had appointed a lead plaintiff who was later

22    determined to lack standing, the better course was to appoint a new lead plaintiff who clearly

23    possessed standing at the outset of the action rather than approving the original lead plaintiff's

24    post-filing assignment of claim. The court noted that "[e]ven if [it] held that the assignment was

25    sufficient to cure the lack of standing, the Court of Appeals could hold otherwise. That uncertainty

26    _____

27    [2] Although Judge Illston granted Plaintiffs leave to file claims directly on behalf of Northstar,
      Plaintiffs confirmed at the hearing on this Motion that the asserted claims are all assigned investor
28    claims, and therefore depend on the December 8, 2008 assignment of claim.

5

Case No.: 08-CV-04119 LHK
CORRECTED ORDER GRANTING IN PART AND DENYING IN PART MOTION TO
DISMISS

**United States District Court**
For the Northern District of California

1    requires this Court to proceed with caution. Accordingly, this Court declines to approve the

2    assignment of claims by Westchester Capital's two client funds." Notably, in the *In re SLM*

3    opinion, the court read Judge Illston's prior opinion in the instant case to "allow[] [Northstar] to

4    cure its lack of standing by obtaining an assignment after the court granted the defendants' motion

5    to dismiss." *In re SLM*, 258 F.R.D. at 115.

6         Many of the other cases defendants rely upon simply recite the rule that standing is

7    considered at the outset of the litigation, but do not address how a court should treat a post-filing

8    assignment of claim. *See, e.g., Perry v. Arlington Heights*, 186 F.3d 826, 830 (7th Cir. 1999)

9    (dismissing claim regarding impounding of motor vehicles because plaintiff did not allege that he

10   owned a vehicle and therefore had not been injured at the time of filing; plaintiff's post-filing

11   purchase of a vehicle could not cure the standing problem). In their Reply brief, defendants focus

12   on *United States for the Use and Benefit of Wulff v. CMA, Inc.*, 890 F.2d 1070, 1074-75 (9th Cir.

13   1989), a Ninth Circuit case dismissing claims for lack of standing. *Wulff* is distinguishable,

14   however. In *Wulff*, the assignment of claim occurred after the statute of limitations had run, and

15   there was no relation back to the originally-asserted claims. *Id.* Accordingly, the decision in *Wulff*

16   turned on the statute of limitations and the relation-back issues, not on whether a post-filing

17   assignment of claim might save a claim that was otherwise timely asserted.

18        Defendants do not dispute that Plaintiffs' assignment conferred standing when it was

19   executed; instead, defendants argue that because this assignment occurred after the complaint was

20   filed, it "came too late" to affect Plaintiffs' standing. Mot. at 10. According to this argument, if

21   Northstar had dismissed its original complaint without prejudice and filed a new complaint relying

22   on the assignment of claim, rather than filing an amended complaint, there would be no standing

23   problem now. In that case, standing would have existed at the time the new case was filed. This

24   argument elevates form over substance. Particularly in light of Judge Illston's previous holding

25   that the assignment would cure the Plaintiffs' lack of standing, and direction to the Plaintiffs to file

26   an amended complaint based on the assignment, it would be unfair to Plaintiffs to punish them for

27   relying on the Court's specific instructions. Accordingly, the Court finds that in this particular

28

6

United States District Court
For the Northern District of California

1  circumstance, Judge Illston's order will be construed as granting Plaintiffs leave to file a

2  supplemental pleading under Federal Rule of Civil Procedure 15(d).

3       Although there is no published Ninth Circuit authority on this point, courts in other circuits

4  have found that parties may cure standing deficiencies through supplemental pleadings.  *See Perry*,

5  180 F.R.D. at 337 ("a supplemental complaint may correct deficiencies such as lack of standing.");

6  *Travelers Ins. Co. v. 633 Third Assoc.,* 973 F.2d 82, 87-88 (2d Cir. 1992) (granting plaintiff leave

7  to file a supplemental pleading incorporating events occurring after the complaint was filed in

8  order to establish standing); *Decorative Ctr. of Houston v. Direct Response Publs., Inc.,* 264 F.

9  Supp. 2d 535, 544 n.22 (S.D. Tex. 2003).  Accordingly, the Court concludes that Plaintiffs' FAC,

10  filed on March 2, 2009, constituted a supplemental pleading approved by Judge Illston's February

11  19, 2009 Order under Rule 15(d).  This supplemental pleading established Plaintiffs' standing to

12  sue based on the asserted assignment of claim.  Therefore, defendants' Motion to Dismiss based on

13  a lack of standing is DENIED.

14       b.  SLUSA Preclusion

15       Defendants argue that Plaintiffs' claims are precluded by the Securities Litigation Uniform

16  Standards Act of 1998 (SLUSA).  15 U.S.C. § 77p.  SLUSA was enacted to prevent a "shift from

17  Federal to State courts" of lawsuits asserting securities law violations in the wake of the Private

18  Securities Litigation Reform Act of 1995 (PSLRA).  *Merrill Lynch, Pierce, Fenner & Smith, Inc. v.*

19  *Dabit*, 547 U.S. 71, 82 (2006) (internal citation omitted).  In order to avoid the PSLRA's

20  requirements, plaintiffs began asserting what were essentially federal securities law claims as state

21  law causes of action in state court.  *Id*.  Congress sought to end this practice by amending the

22  Securities Acts of 1933 and 1934 through SLUSA.

23       SLUSA prohibits class actions brought on behalf of more than 50 people ("covered class

24  actions"), if the action is based on state law and alleges (a) a misrepresentation or omission of a

25  material fact in connection with the purchase or sale of covered security; or (b) that the defendant

26  used or employed any manipulative or deceptive device or contrivance in connection with the

27  purchase or sale of a covered security.  15 U.S.C. §§ 77p, 78bb; *Proctor v. Vishay Intertechnology*

28

Case No.: 08-CV-04119 LHK
CORRECTED ORDER GRANTING IN PART AND DENYING IN PART MOTION TO
DISMISS

United States District Court
For the Northern District of California

*Inc.*, 584 F.3d 1208, 1221-22 (9th Cir. 2009).  The complaint need not allege scienter, reliance, or loss causation in order for SLUSA preclusion to apply.  *See Anderson v. Merrill Lynch Pierce Fenner & Smith, Inc.*, 521 F.3d 1278, 1285-87 (10th Cir. 2008).  In addition, the precluded state law claims need not contain a "specific element" of misrepresentation in order to be precluded by SLUSA.  *Proctor*, 584 F.3d at 1222, n.13.  Plaintiffs concede that this is a "covered class action," that their claims are based on state law, and that the Fund's shares are covered securities under SLUSA.  Plaintiffs dispute the final two elements of SLUSA preclusion: first, that the SAC alleges misrepresentations or omissions of material fact, and second, that any such misstatements or omissions are alleged to have been made "in connection with" the purchase or sale of the Fund's shares.

### i.   Misrepresentations

A careful review of the SAC shows that Plaintiffs allege a number of misrepresentations by defendants.  First, Plaintiffs list a number of Registration Statements and Prospectuses in which Schwab represented that the Fund would pursue a "fundamental indexing strategy 'to track' [the Lehman Brothers] bond index 'through the use of an indexing strategy. . . .'"  SAC ¶¶ 49 – 79.  Plaintiffs allege that defendants repeated these statements in 1997, 1998, 2003, 2004, 2005, 2006, 2007 and 2008.  *Id.*  According to Plaintiffs, these statements of Fund policy attracted many investors to the Fund: "[t]he Index Fund's conversion to an indexing strategy was a great success for Schwab, as net assets increased from $24 million as of August 31, 1997 to approximately $1.5 billion as of August 31, 2007."  SAC ¶ 80.  Then, in the section of the SAC titled "The Fund Substantially Deviates From Its Stated Investment Objective," Plaintiffs allege that the Fund began to deviate from its promises to use an indexing strategy to track the Index.  Plaintiffs allege that the Fund first reported "a material performance deviation from the Index" in a Semi-Annual Report filed on May 6, 2008.  SAC ¶ 95.  Plaintiffs allege that investors "could not anticipate from this Report that the Fund would continue to deviate from the Index" because defendants provided an inaccurate explanation for why the deviation had happened.  SAC ¶¶ 96-97.  Specifically, Plaintiffs allege that defendants blamed the deviation on "the forced selling of securities into a weak bond

Case No.: 08-CV-04119 LHK
CORRECTED ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS

market" when the real cause of Fund's losses was "the deviation of the securities in the Fund from the Index." *Id*. Finally, Plaintiffs allege that the Fund's deviation from the Index "was caused by the Fund's investment of 27.3% of assets as of February 27, 2008 in non-agency collateralized mortgage obligations" and that "[t]his concentration of investments in mortgage backed securities was . . . in violation of the Fund's stated investment objectives that the Fund's assets not be concentrated more than 25% in any one industry." SAC ¶ 103, 106. Plaintiffs allege that this concentration also violated "the Fund's fundamental investment objective to 'seek to track' the Index 'through the use of an indexing strategy." SAC ¶ 109.

All the asserted claims allege Plaintiffs' reliance on the Fund's fundamental investment objectives. In addition, all of the claims allege that Plaintiffs were harmed due to the failure of the Fund to follow those objectives. For example, in their Breach of Fiduciary Duty claim, Plaintiffs assert that they "relied on" defendants to "adhere to the Fund's investment objectives and policies," and that defendants' failure to do so caused Plaintiffs to "sustain[ ] money damages in connection with their ownership of shares in the Fund." SAC ¶¶ 130, 136. Likewise, in their Breach of Contract claim, Plaintiffs allege that they "retained or purchased shares" of the Fund "in consideration of the contractual obligations not to change fundamental investment objectives . . . ," and that they sustained economic damages when the Fund failed to meet these obligations. SAC ¶ 144, 148. In their claim for Third Party Beneficiary of the Investment Advisory Agreement, Plaintiffs allege that defendants appended the Investment Advisory Agreement to the December 29, 1997 Registration Statement "precisely to inform class members of its terms," and that these terms included a requirement that the Investment Advisor "manage the Fund consistent with the Fund's fundamental investment objectives." SAC ¶ 155-58. In addition, this claim alleges that investors were injured when the Investment Advisor "fail[ed] to manage the Fund's assets in a manner consistent with the Fund's fundamental investment objectives." SAC ¶ 164.

In summary, the central theme of the SAC and all of Plaintiffs' claims is that defendants made misrepresentations about how investments in the Fund would be managed, that Plaintiffs purchased Fund shares relying on these misrepresentations, and that Plaintiffs were injured when

Case No.: 08-CV-04119 LHK
CORRECTED ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

1   these statements turned out to be false.  The Court finds that Plaintiffs' claims allege

2   misrepresentations for SLUSA purposes.  In making this determination, the Court must focus on

3   the overall gravamen of the complaint; Plaintiffs cannot avoid SLUSA by artful drafting to avoid

4   the term "misrepresentation."  *See Proctor*, 584 F.3d at 1221-22; *Tuttle v. Sky Bell Asset Mgmt,*

5   *LLC*, No. C10-03588, 2010 U.S. Dist. LEXIS 127839 at *9 (N.D. Cal. Nov. 19, 2010); *Stoody-*

6   *Broser v. Bank of America*, No. C 08-02705, 2009 WL 2707393 at *2 (N.D. Cal. Aug. 25, 2009).

7   Where, as here, the alleged state law claims rely on alleged misrepresentations, this element of

8   SLUSA is met—even if the state law claims do not require any misrepresentation.

9        For example, the Fifth Circuit found a breach of contract claim precluded by SLUSA, even

10   though the underlying claim required no misrepresentation.  *Miller v. Nationwide Life Ins. Co.*, 391

11   F.3d 698, 702 (5th Cir. 2004), *cited with approval in Proctor*, 584 F.3d at 1222 n.13.  Like

12   Plaintiffs in this case, the *Miller* plaintiffs claimed that a contract had been formed based on the

13   terms of a prospectus, which allegedly stated that no trading fees would be imposed.  *Miller*, 391

14   F.3d at 701-02.  The plaintiffs claimed the contract was breached when trading fees were imposed

15   despite this term.  *Id*.  The Fifth Circuit found this claim precluded by SLUSA, because it was

16   based on allegations that Nationwide had made false promises of fee-free trading which were later

17   broken.  *Id*.  Even though the contract claim did not *require* any allegations of misrepresentation,

18   the plaintiff had in fact alleged misrepresentations in the contract claim, and therefore SLUSA

19   applied.  *Id*.

20        Likewise, in *Tuttle*, Judge Alsup of this district found that state law claims which did not

21   themselves require allegations of misrepresentation were nevertheless precluded by SLUSA.  In

22   *Tuttle*, the complaint alleged that "defendants 'assured' plaintiffs that their money would be placed

23   in 'massively diversified investments,'" but that these assurances "assertedly [were] an illusion."

24   *Tuttle*, 2010 U.S. Dist. LEXIS 127839 at *13-14.  Judge Alsup concluded that "the essence of the

25   complaint is that defendants misrepresented the manner in which plaintiffs' money was to be

26   invested."  *Id*.

27

28

Case No.: 08-CV-04119 LHK
CORRECTED ORDER GRANTING IN PART AND DENYING IN PART MOTION TO
DISMISS

**United States District Court**
For the Northern District of California

1   In another ruling from this district, Judge White found that state law claims of breach of

2   fiduciary duty brought on behalf of a class of trust beneficiaries (similar to the breach of fiduciary

3   duty claim asserted here) were precluded by SLUSA.  *Stoody-Broser*, 2009 WL 2707393 at *3-*4.

4   Despite the fact that the complaint did not directly allege any misrepresentations, the Court found

5   that "the essence of the complaint is that defendants misrepresented and omitted material facts

6   relating to the investment in Columbia Funds, such as conflicts of interest and increased expenses

7   related to the investment.  Because federal law comprehensively regulates the purchase and sale of

8   mutual fund shares and requires the disclosure of material information about the fund's objectives,

9   performance, fees and interests of its managers, courts have recognized that state law class action

10   claims that challenge excessive fees and other aspects of mutual fund investments of necessity

11   involve misstatements . . . ."  *Stoody-Broser*, 2009 WL 2707393 at *3.

12   Plaintiffs argue that the statements from the SAC cited above are not properly characterized

13   as misrepresentations, because they were generally true at the time they were made, and only

14   became false or misleading after the beginning of the class period.  "Schwab successfully operated

15   the Fund as an index fund for over ten years – from August 31, 1997 until after August 31, 2007."

16   *See* Plaintiffs' Opp'n. to Mot. (Opp'n.) (Dkt. No. 158) at 19.  However, this argument does not

17   remove the claims from SLUSA's scope.  Even if Plaintiffs now allege the statements were true at

18   some point, the class definition starts the clock for the class claims at the moment Plaintiffs allege

19   the statements became untrue – "from August 31, 2007 through February 27, 2009."  At the

20   hearing on this Motion, Plaintiffs stated that the complained-of deviation from the Index began at

21   the start of the class period, and Plaintiffs' complaint makes clear that at this point, Plaintiffs

22   contend that the defendants' previous representations and assurances about the Fund became

23   untrue.  Although Plaintiffs allege that defendants disclosed a change in concentration policy in

24   2007, Plaintiffs also allege that defendants provided false reasons for why the Fund subsequently

25   deviated from the Index in a May 6, 2008 Semi-Annual Report.  SAC ¶¶ 111, 95-97.  Moreover,

26   the SAC alleges that defendants continued to make misrepresentations about the Fund's investment

27   policy during the class period.  Consequently, contrary to Plaintiffs' argument at the hearing,

28

11

1   removal of the May 6, 2008 Semi-Annual Report false explanation would not save the claims from

2   SLUSA preclusion, because Plaintiffs have claimed many misrepresentations throughout the SAC

3   and within each of their claims.

4   The authority Plaintiffs cite is distinguishable. Plaintiffs argue that the Ninth Circuit has

5   held that state-law contract claims are not precluded by SLUSA, but Plaintiffs fail to acknowledge

6   that the question turns on whether or not the contract claim implicates a misstatement or omission

7   made in connection with the purchase of a security. Plaintiffs rely on a non-precedential Ninth

8   Circuit opinion for this supposed distinction between "fraud and non-fraud claims." Opp'n. at 19.

9   *Beckett v. Mellon Investor Servs*. LLC, 329 F. App'x 721, 723-24 (9th Cir. 2009). In fact, *Beckett*

10  held that it was error to dismiss without leave to amend where contract claims might have been

11  stated based on an investment firm's failure to sell shares in a timely manner, and where the

12  plaintiff alleged no "statements regarding these actions or that some material fact relating to them

13  was omitted." *Id*. Because such claims had no relationship to any alleged misrepresentations, they

14  were not precluded by SLUSA. Likewise, in *Falkowski v. Imation Corp.*, No. 01-16113, 2002 U.S.

15  App. LEXIS 28037 at *16-17 (9th Cir. Oct. 29, 2002), the Ninth Circuit held that breach of

16  contract claims based on employee stock-option contracts were not precluded by SLUSA. *Id*.

17  Contrary to Plaintiffs' reading, this was not simply because the claims were breach of contract

18  claims, but because these claims did not relate in any way to the allegations of misrepresentation

19  that resulted in preclusion of other asserted claims. The breach of contract claims asserted that

20  employees' employment status had been wrongfully terminated. This claim was totally

21  independent from claims that the defendant had inflated the value of its stock by concealing

22  information about an impending accounting write-off. *Id*.

23  Finally, Plaintiffs rely on another Judge Alsup decision, and urge that the "exact issue"

24  presented here was addressed in that case. *In re Charles Schwab Corp. Secs. Litig.*, 257 F.R.D.

25  534, 551 (N.D. Cal. 2009) (finding a claim of breach of fiduciary duty not precluded by SLUSA).

26  However, Judge Alsup himself distinguished the *Charles Schwab* decision in *Tuttle*. The fiduciary

27  duty claim in *Charles Schwab* was not based on any misrepresentations because the "plaintiffs

28

Case No.: 08-CV-04119 LHK
CORRECTED ORDER GRANTING IN PART AND DENYING IN PART MOTION TO
DISMISS

**United States District Court**
For the Northern District of California

readily agreed that defendant properly disclosed the change in its concentration policy but argued that the change was nevertheless improper." *Tuttle*, 2010 U.S. Dist. LEXIS 127839 at *15.  In contrast, here, the Plaintiffs allege that although defendants reported the Fund's change in concentration policy and its deviation from the Index, they covered up the true reason for this deviation by providing a false explanation in the May 6, 2008 Semi-Annual Report.  SAC ¶¶ 96-97.  The Ninth Circuit has held that "[m]isrepresentation need not be a specific element of the claim to fall within [SLUSA's] preclusion," and has cited other appellate decisions finding breach of contract claims precluded by SLUSA.  *Proctor*, 584 F.3d at 1222 n.13, citing *Miller*, 391 F.3d at 701-02.

In this case, the asserted misrepresentations are the basis for all of Plaintiffs' claims as currently pled.  Thus, the Court concludes that this element of SLUSA preclusion is met.

ii.   In Connection With

Although Plaintiffs' main argument against SLUSA preclusion is that there are no alleged misrepresentations, Plaintiffs also contend that the "in connection with the purchase or sale of a covered security" element of SLUSA preclusion is not met.  Plaintiffs assert almost no support for this position, and there is little to be found.  The Supreme Court has adopted a broad construction of "in connection with."  *See Dabit*, 547 U.S. at 86.  The alleged misrepresentation need only "'coincide' with a security transaction—whether by the plaintiff or by someone else."  *Dabit*, 547 U.S. at 85.  Thus, the Supreme Court has found that SLUSA precludes "holder" claims, where the plaintiff alleges harm based on "wrongfully-induced holding."  Plaintiffs who purchased stock "before any relevant misrepresentation," and were only injured by not later selling the stock due to alleged misrepresentations, meet the SLUSA "in connection with" requirement.  *Dabit*, 547 U.S. at 76, 78.

Here, the claimed class period is defined as the time during which the Fund deviated from the Index.  Plaintiffs define the class as anyone who owned or purchased shares of the Fund during this time.  Plaintiffs further allege that during this time, defendants' many statements about the Fund tracking the Index were not true, because defendants impermissibly concentrated the Fund's

13

Case No.: 08-CV-04119 LHK
CORRECTED ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS

United States District Court
For the Northern District of California

1   assets in non-governmental CMOs.  Plaintiffs further allege that defendants provided a false

2   explanation for the initial deviation of the Fund from the Index, such that Plaintiffs "could not have

3   anticipated" that further deviations would occur.  SAC ¶¶ 96-97.  Overall, there is no question that

4   Plaintiffs' allegations arise "in connection with" the purchase or sale of covered securities, as

5   required by SLUSA.  The Supreme Court has explained that SLUSA preclusion is to be given a

6   broad construction, in part, because it does not entirely prevent state law claims from being

7   brought.  "SLUSA does not actually pre-empt any state cause of action.  It simply denies plaintiffs

8   the right to use the class-action device to vindicate certain claims.  The Act does not deny any

9   individual plaintiff, or indeed any group of fewer than 50 plaintiffs, the right to enforce any state-

10  law cause of action that may exist."  *Dabit*, 547 U.S. at 87.

11

12

13                  iii.   Delaware carve-out

14          Finally, regarding the breach of fiduciary duty claim, Plaintiffs belatedly argued (in a

15  submission of additional authority filed after the hearing on this Motion) that if the Court applied

16  Massachusetts law to this claim, SLUSA should not apply pursuant to the "Delaware carve-out."

17  This provision of SLUSA states that, notwithstanding the preclusion provision, "a covered class

18  action . . . that is based upon the statutory or common law of the State in which the issuer is  . . .

19  organized (in the case of any other entity) may be maintained in a State or Federal court by a

20  private party."  15 U.S.C. 77(p)(d)(1)(a).  The Plaintiffs state in the SAC that the fiduciary duty

21  claim is "asserted under California law" but that it is "viable under Massachusetts law as well."

22  SAC ¶ 121.  To the extent Plaintiffs rely on California law to establish their claim, the claim is

23  precluded by SLUSA.  To the extent Plaintiffs rely on Massachusetts law, the claim is not

24  precluded.

25          Plaintiffs' other claims (breach of contract, breach of the covenant of good faith and fair

26  dealing, and third party beneficiary claims) appear to be based exclusively on California law, as

27  Plaintiffs have primarily cited cases interpreting California law (and no Massachusetts law cases)

28

                                                    14

United States District Court
For the Northern District of California

1 in arguing against their dismissal.  Plaintiffs' failure to argue that the carve-out should apply to any

2 other claim is further support for this conclusion.  Thus, no other claim is affected by the Delaware

3 carve-out.

4       Accordingly, the Court finds that as pled, all of Plaintiffs' claims, with the exception of the

5 breach of fiduciary duty claim to the extent it is premised exclusively on Massachusetts law, are

6 precluded by SLUSA.  The claims are therefore DISMISSED.  Because Plaintiffs could

7 conceivably amend their pleadings to avoid SLUSA preclusion, the Court grants leave to amend.

8 *See Knappenberger v. City of Phoenix*, 566 F.3d 936, 942 (9th Cir. 2009).  Plaintiffs are given

9 leave to amend as outlined in this Order.[3]

10       The Court will now analyze the sufficiency of each of Plaintiffs' claims separate from the

11 SLUSA preclusion issue.

12

13       c.   Contract Claim

14       In the SAC, Plaintiffs allege that a contract was formed between Fund investors and the

15 Trust.  Plaintiffs allege that a July 25, 1997 Proxy Statement (the 1997 Proxy Statement) proposed

16 changes to the fundamental investment objective of the Fund, and "formed the terms of a contract

17 to provide shareholders with voting rights in that those 'fundamental investment objectives' were

18 only changeable by shareholder vote."  SAC ¶ 52.  Plaintiffs allege that the contract was formed

19 when Plaintiffs held or purchased shares of the Fund.  SAC ¶ 145.

20       Defendants argue that Plaintiffs have not sufficiently alleged the formation of an

21 enforceable contract.  Defendants cite two Ninth Circuit decisions holding that statements in

22 prospectuses do not automatically become contract terms.  *See McKesson v. HBOC, Inc. v. New*

23 *York State Common Ret. Fund, Inc.,* 339 F.3d 1087, 1092-93 (9th Cir. 2003); *Cohen v.*

24 *Stratosphere Corp.,* 115 F.3d 695 (9th Cir. 1997).  Although Judge Illston previously noted that

25 these cases do not broadly hold that a prospectus can never be a contract, as defendants point out,

26

27

28
_____
[3] Defendants raised the SLUSA preclusion issue for the first time in the instant motion to dismiss.

Case No.: 08-CV-04119 LHK
CORRECTED ORDER GRANTING IN PART AND DENYING IN PART MOTION TO
DISMISS

**United States District Court**
For the Northern District of California

1   these cases do apply traditional contract law concepts such as offer, acceptance, and consideration

2   in evaluating claims that securities disclosure documents are contracts.

3          For example, when evaluating the alleged contract in *McKesson*, the Ninth Circuit found

4   that there was no contract between shareholders and McKesson based on a prospectus that solicited

5   shareholder votes to approve a merger between McKesson and HBOC. *McKesson*, 339 F.3d at

6   1092. First, the Ninth Circuit found that shareholders were not parties to the merger agreement

7   itself. *Id*. Next, it found that although shareholders were asked to vote on the proposed merger,

8   and were told that the merger could not proceed without shareholder approval, nothing in the

9   solicitation of shareholder votes constituted a contractual offer to be accepted, and distinguished

10  securities offers from contractual offers. *Id*. The Ninth Circuit found that simply voting on the

11  proposed merger did not constitute "acceptance" in the contractual sense. *Id*. Finally, the court

12  distinguished tender offers, which can constitute contractual offers (to be accepted by a tender of

13  shares). *Id.,* 339 F.3d at 1092-93. Likewise, in *Cohen*, the Ninth Circuit found that the prospectus

14  could not be an offer because, by its own terms, it did not make a "firm commitment" on the part of

15  the alleged offeror. *Cohen*, 115 F.3d at 701. The prospectus was properly viewed as a solicitation

16  of offers, and because these offers were never accepted, no contract was formed. *Id*. "The mutual

17  assent and intent to be bound that are required for the formation of a contract to sell securities,

18  therefore, is absent in this case." *Id*.

19         Perhaps mindful of this authority, which was previously cited by defendants, Judge Illston

20  specifically ordered the Plaintiffs to "add more specific allegations regarding the language plaintiff

21  relies on to allege the formation of a contract, as well as each defendant's involvement." Feb. 19,

22  2009 at 15. Plaintiffs responded by simply asserting that the 1997 Proxy Statement formed a

23  contract between Fund investors and the Trust. Plaintiffs do not argue that shareholders accepted

24  an offer by voting on the 1997 Proxy Statement (and, in light of the Ninth Circuit's guidance in

25  *McKesson*, this is probably not a viable argument). Instead, Plaintiffs argue that they accepted the

26  offer of the proposals in the 1997 Proxy Statement by providing the consideration of purchasing or

27  retaining shares (presumably during or before the class period, which began ten years after the

28

Case No.: 08-CV-04119 LHK
CORRECTED ORDER GRANTING IN PART AND DENYING IN PART MOTION TO
DISMISS

United States District Court
For the Northern District of California

1997 Proxy Statement, in 2007). Opp'n. at 5; SAC at ¶¶ 144-145. Plaintiffs appear to argue that after the 1997 Proxy Statement was approved by shareholders and redefined the fundamental investment objective of the Fund, future shareholders "accepted" the offer of a mutual fund operated in accordance with these objectives by purchasing or holding shares. Although Plaintiffs identify the 1997 Proxy Statement as supplying the terms of the offer, they also reference and rely upon defendants' repetition of these terms in various other SEC-required disclosure documents. *See* SAC ¶¶ 71-94.

Relying on *McKesson*, Judge Alsup rejected an almost-identical argument in another class-action litigation brought by holders of Charles Schwab mutual fund shares. *In re Charles Schwab Corp. Sec. Litig., No.* C 08-01510, 2009 U.S. Dist. LEXIS 44859 at *9-10 (N.D. Cal. May 15, 2009). As Judge Alsup explained, "[P]laintiffs contend that when each investor purchased shares of the fund, the investor entered a contract with the fund and each of its trustees. The contract allegedly included not only the sale of fund shares but also each and every term of the registration statements and SAIs . . . [t]he alleged breach occurred when defendants changed this no-concentration policy by redefining the term 'industry' to permit greater investment in mortgage-backed securities, *without a shareholder vote*." *Id.* (emphasis in original). Judge Alsup concluded that plaintiffs had not successfully pled the formation of a contract. Plaintiffs offered "no coherent theory" explaining how the various SEC filings had been incorporated into a contract, and rejected Plaintiffs' argument that they were accepted by plaintiffs' purchase of the funds. *Id.* at *13.

The Court finds the *In re Charles Schwab* decision persuasive, and concludes that Plaintiffs have failed to successfully allege the formation of a contract. If Plaintiffs are correct that each SEC-required disclosure statement issued regarding the Fund was incorporated into an evolving contract between the Trust and investors, the fact that a September 1, 2006 Statement of Additional Information was issued which stated that the Fund would, from then on, cease to treat "mortgage-backed securities issued by private lenders" as a separate industry and therefore could invest more than 25% of the Fund's assets in this area would seem to defeat Plaintiffs' contract claim. If this became a term of the contract between Plaintiffs and the Trust when investors held or subsequently

17

Case No.: 08-CV-04119 LHK
CORRECTED ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS

purchased shares, then the Trust could not have breached this contract by over-investing in MBS, as Plaintiffs claim.

Plaintiffs have not cited any persuasive authority finding that a contract was formed in even remotely similar factual circumstances. In *Mills v. Polar Molecular Corp.*, 12 F.3d 1170 (2nd Cir. 1993), the plaintiff and his employer signed a settlement agreement whereby the plaintiff agreed to dismiss claims in exchange for the employer's promise to register shares of stock issued to the plaintiff. *Mills*, 12 F.3d at 1173-74. The plaintiff alleged that the employer failed to do so, and the Second Circuit found that this "may have stated a claim" against the employer. However, there was no question that the settlement agreement was a contract. *Mills*, 12 F.3d at 1177. Likewise, in *In re Gulf Oil*, 725 F.Supp. 712 (S.D.N.Y. 1989), the court found that a tender offer to shareholders created a contract when shareholders accepted it by tendering shares. *In re Gulf Oil* 725 F.Supp. at 728. But, this is not very helpful because, as described above, the Ninth Circuit has distinguished the "tender offer" line of cases in finding no contract in *McKesson*. In a tender offer situation, there is a clear offer (the offer to purchase shares) and acceptance (tendering of the shares). Plaintiffs have alleged no such straightforward theory of contract formation here. Finally, Plaintiffs cite *Franklin Life Ins. Co. v. Commonwealth Edison Co.,* 451 F. Supp. 602, 605 (S.D. Ill. 1978). In this case, the Southern District of Illinois found that redemption provisions in a prospectus issued with preferred stock constituted binding contract terms, which shareholders accepted by purchasing the stock. As defendants point out, in so holding, the court noted that "[i]t is unquestioned that the redemption terms of preferred stock issues create a contract between the corporation and its stockholders." *Id.*, 451 F. Supp. 602 at 613; *accord, D.E. Shaw Laminar Portfolios, LLC v. Archon Corp.,* No. 2:07-CV-01146, 2010 U.S. Dist. LEXIS 135867 at *6-8 (D. Nev. Dec. 22, 2010).

Judge Illston specifically charged Plaintiffs to "add more specific allegations regarding the language plaintiff relies on to allege the formation of a contract, as well as each defendants' involvement." Plaintiffs have failed to persuade the Court that a contract was formed based on the 1997 Proxy Statement or the other disclosure documents referenced in the SAC. Because Plaintiffs

18

**United States District Court**
For the Northern District of California

**United States District Court**
For the Northern District of California

1   were previously given leave to amend this claim and have failed to state a claim, their breach of

2   contract claim is dismissed WITH PREJUDICE.

3           d.   Breach of Covenant of Good Faith and Fair Dealing Claim

4         The covenant of good faith and fair dealing is an implied term of a contract.  *Smith v. City*

5   *and County of San Francisco*, 225 Cal. App. 3d 38, 49 (1990).  Without a valid contract, there can

6   be no implied term.  *Id.*  Because the Court has concluded that the Plaintiffs have failed to allege

7   the existence of any valid contract, the claim for breach of the implied covenant must fail as well.

8   *Foley v. Interactive Data Corp.*, 47 Cal. 3d 654, 690 (1988).  Because the Court has dismissed

9   Plaintiffs' contract claim with prejudice, no amendment can save the implied covenant claim.

10  Accordingly, Plaintiffs' Breach of Covenant of Good Faith and Fair Dealing claim is DISMISSED

11  WITH PREJUDICE.

12          e.   Fiduciary Duty Claim

13        At the hearing on this Motion, Plaintiffs agreed with defendants' argument that because the

14  Trust is organized under Massachusetts law, Massachusetts law applies in determining whether or

15  not a claim is derivative.  Interpreting Massachusetts law, the Ninth Circuit has previously found

16  that injuries affecting all trust shareholders equally are derivative in nature.  *Lapidus v. Hecht*, 232

17  F.3d 679, 683 (9th Cir. 2000).  Derivative claims must be asserted through a shareholder derivative

18  action, including compliance with the demand-futility requirement of Federal Rule of Civil

19  Procedure 23.1.  Defendants argue that Plaintiffs' claims "do not allege any direct injury to

20  investors in the fund . . . [b]ecause Northstar seeks money damages arising from the way the fund

21  was managed, its claims are derivative and must be pleaded in compliance with Rule 23.1."  Mot.

22  at 5.  However, in *Lapidus*, the Ninth Circuit also held that a claim for violation of contractual

23  shareholder voting rights "satisf[ies] the injury requirement for a direct action under Massachusetts

24  law" and confers standing to pursue individual claims.  *Lapidus*, 232 F.3d at 683.  In the SAC, the

25  Plaintiffs allege that defendants breached their fiduciary duties to Plaintiffs by failing "to require a

26  majority shareholder vote prior to deviating from the Fund's stated fundamental investment

27  objectives."  SAC ¶ 134.  The Plaintiffs repeat the denial-of-voting-rights allegation throughout the

28

Case No.: 08-CV-04119 LHK
CORRECTED ORDER GRANTING IN PART AND DENYING IN PART MOTION TO
DISMISS

United States District Court
For the Northern District of California

1    SAC and the claim for breach of fiduciary duty.  Therefore, at first blush, it might appear that

2    Plaintiffs have sufficiently stated a direct injury under Massachusetts law, because they claim that

3    defendants violated Plaintiffs' contractual voting rights.

4        However, as discussed above, the Court has found that the Plaintiffs have failed to state a

5    claim for breach of contract, because they have not successfully alleged the formation of a contract.

6    The only other asserted basis for Plaintiffs' alleged voting rights in the SAC is the ICA.  However,

7    Plaintiffs cannot directly assert a violation of the ICA regarding voting rights.  *Northstar*, 615 F.3d

8    at 1122.  Accordingly, it is not clear that the Plaintiffs can assert a violation of voting rights under

9    the ICA as the basis for a fiduciary duty breach.  If Plaintiffs' fiduciary duty claim were read

10   without reference to voting rights, it would seem that the asserted harm affects all shareholders

11   equally, and is therefore derivative.  "A shareholder does not acquire standing to maintain a direct

12   action when the alleged injury is inflicted on the corporation and the only injury to the shareholder

13   is the indirect harm which consists of the diminution in the value of his or her shares."  *Lapidus*,

14   232 F.3d at 683.

15       Plaintiffs cite *Strigliabotti v. Franklin Resources, Inc.*, No. C 04-00883 SI, 2005 WL

16   645529 at *7-8 (N.D. Cal. Mar. 7, 2005) for the proposition that because of the difference between

17   a corporation's stock and mutual fund shares, "no value can be attributed to a derivative claim"

18   against a mutual fund, and even a diminution in value claim should be considered individual.

19   Opp'n. at 23.  This case is distinguishable on several grounds.  First, it was interpreting California,

20   not Massachusetts law.  *Strigliabotti*, 2005 WL 645529 at *23-24.  Second, the harm alleged in

21   *Strigliabotti* related to fees charged directly to investors (rather than to a diminution in share

22   value).  *Id.* at *25.

23       Until Plaintiffs have stated a claim for breach of fiduciary duty that does not implicate

24   SLUSA and that is not derivative, the Court finds it unnecessary to determine whether or not any of

25   the named defendants potentially owed a fiduciary duty to Plaintiffs, although the Court notes (as

26   Judge Illston previously noted) defendants' previous admission that they did "not argue that no

27   person or entity owes a fiduciary duty to the Fund's investors."  Feb. 19, 2009 Order at 14-15; *see*

28
                                                          20

Case No.: 08-CV-04119 LHK
CORRECTED ORDER GRANTING IN PART AND DENYING IN PART MOTION TO
DISMISS

1    *Everett v. Bozic*, No. 05 Civ. 00296(DAB), 2006 WL 2291083 at *4 (S.D.N.Y. Aug. 3, 2006)

2    (dismissing fiduciary duty claims predicated on diminution of value in a mutual fund as derivative

3    without deciding "whether such a direct [fiduciary] duty exists or not.").

          f.   Third Party Beneficiary of the Investment Advisor Agreement

5           Plaintiffs' fourth claim is for breach of the Investment Advisor Agreement between the

6    Investment Advisor and the Trust.  Plaintiffs claim that they were third party beneficiaries to this

7    agreement.  In support of this claim, Plaintiffs allege that the Investment Advisor was required to

8    "manage the Fund consistent with the Fund's fundamental investment objectives and policies."

9    SAC ¶ 155.  Specifically, Plaintiffs claim that the Investment Advisor Agreement required the

10   Investment Advisor to determine "what securities and other investments will be purchased,

11   retained or sold" by the Fund, to prepare shareholder reports and required disclosures to the SEC,

12   maintain records about the Fund, and comply with all SEC rules.  SAC ¶ 156.  The Plaintiffs

13   further allege that the Investment Advisor Agreement required the Investment Advisor to manage

14   the fund "in accordance with the Fund's fundamental investment objectives and policies."  SAC ¶

15   157.  The Plaintiffs did not append a copy of the Investment Advisor Agreement to the SAC, but

16   the defendants have submitted a copy and requested judicial notice of it, and the Plaintiffs have

17   subsequently cited and relied on this submission in briefing.  *See* Calia Decl. ISO Mot., Ex. D.  The

18   Court may take judicial notice of documents which are referenced in but not appended to the

19   pleadings, and whose authenticity no party disputes.  *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir.

20   1994) (overruled on other grounds by *Galbraith v. County of Santa Clara*, 307 F.3d 1119 (9th Cir.

21   2002).  Accordingly, defendants' request for judicial notice of the Investment Advisor Agreement

22   is granted.

23          Defendants argue that because the Investment Advisor Agreement itself does not

24   "explicitly, directly, definitely or in unmistakable terms" state the intent to benefit the Fund's

25   investors, Plaintiffs cannot establish third party beneficiary status.  *Smith v. Microskills San Diego*

26   *L.P.,* 153 Cal. App. 4th 892, 898 (2007).  Under California law, a contract must be clear in its

27   *intention* to benefit a third party in order for that party to establish beneficiary status.  *Id*.; Cal.

Case No.: 08-CV-04119 LHK
CORRECTED ORDER GRANTING IN PART AND DENYING IN PART MOTION TO
DISMISS

**United States District Court**
For the Northern District of California

1   Civil Code § 1559 ("a contract, made expressly for the benefit of a third person, may be enforced

2   by him at any time before the parties thereto rescind it.").  "[T]he third person need not be named

3   or identified individually to be an express beneficiary."  *Kaiser Eng'rs v. Grinnell Fire Prot. Sys.*

4   *Co.,* 173 Cal. App. 3d 1050, 1055 (1985) (internal citations omitted).  Rather, it is the intention of

5   the contracting parties that must expressly seek to benefit the third party.

6       There are several ways to show that a third party is an intended beneficiary of a contract

7   even if he is not specifically named in the contract.  One is to show that the contract expressly

8   names a class of beneficiaries, and that the plaintiff belongs to the class.  *See, e.g., Kaiser Eng'rs*

9   173 Cal. App. 3d at 1055.  "While the beneficiary need not be named in the contract, he must be a

10  member of a class referred to and identifiable therein."  *Kirst v. Silna*, 103 Cal. App. 3d 759, 763

11  (1980).  Alternatively, a non-party may be a beneficiary to a contract that does not name the party

12  if that contract discharges a separate contractual duty owed to the non-party.  *See Gilbert Financial*

13  *Corp. v. Steelform Contracting Co.,* 82 Cal. App. 3d 65, 70 (1978).  In sum, Civil Code Section

14  1559 "excludes enforcement of a contract by persons who are only incidentally or remotely

15  benefited by it."  *Kaiser*, 173 Cal. App. 3d at 1055.

16      If a contract does not clearly evince the intent to benefit a third party, that party is not a

17  beneficiary of the contract.  For example, a treating physician is generally not considered an

18  intended beneficiary to a contract between a health care service provider and a patient, even if the

19  contract could result in payments to the physician.  *Ochs v. PacifiCare of California*, 115 Cal. App.

20  4th 782, 795 (2004) ("Generally speaking, a health care service provider's agreement to pay for

21  medical care is intended to benefit the enrollees, not treating physicians with whom there is no

22  contractual relationship.").  Even though the treating physicians might be entitled to payments

23  through the health service provider, and therefore could incidentally benefit from the service

24  contract, the *intent* of the contract is to benefit enrollees, not treating physicians, and therefore

25  treating physicians are not third party beneficiaries.  *Ochs*, 115 Cal. App. 4th at 795.  Defendants

26  argue that the investors are like these treating physicians, only incidentally benefiting from the

27  Investment Advisor Agreement.  The Court is not persuaded, based on the present record, that

28
                                                  22

**United States District Court**
For the Northern District of California

1   Plaintiffs' third party beneficiary claim is as remote as defendants claim.  The Plaintiffs allege that

2   the Agreement required the Investment Advisor to manage the investments of the Fund, prepare

3   regular reports to shareholders and the SEC, keep records, and comply with SEC rules.  The value

4   of Plaintiffs' investments in the Fund would change directly depending on the Investment

5   Advisor's management of the Fund.

6          The authorities cited by Plaintiffs are not particularly helpful, because these cases discuss

7   contracts that expressly name a class of beneficiaries, where the plaintiffs alleged that they were

8   class members.  For example, in *Spinks v. Equity Residential Briarwood Apartments*, 171 Cal. App.

9   4th 1004, 1021 (2009), the court found that there was a triable issue as to whether an apartment

10  lease agreement between an employer and the owner of the apartment intended the employee, who

11  was residing in the apartment while she worked away from home, as a beneficiary.  Even though

12  the employee was not directly named in the lease, the lease agreement identified the employer's

13  "temporary staff" as beneficiaries, and the plaintiff belonged to the class of temporary staff.  In

14  addition, the employee introduced a lease extension letter which expressly identified her as a

15  beneficiary.  Thus, the appellate court found that there was a triable issue as to whether the

16  employee was a third party beneficiary to the lease agreement.  Likewise, in *County of Santa Clara*

17  *v. Astra USA*, 588 F.3d 1237, 1243-45 (9th Cir. 2009), the Ninth Circuit found that federally-

18  funded health clinics were third-party beneficiaries of a contract between the federal government

19  and drug manufacturers.  However, this finding was based on express language in the contract that

20  prohibited drug manufacturers from over-charging "covered entities" for drugs.  *Astra USA*, 588

21  F.3d at 1243-45 (interpreting federal common law).  As in *Spinks*, the plaintiffs were third party

22  beneficiaries because they were in the class of express beneficiaries named in the contract.  These

23  cases are not helpful to Plaintiffs because they cannot point to any language in the Investment

24  Advisor Agreement identifying a beneficiary class to which they belong.

25         The Court has already concluded that Plaintiffs' breach of contract claim based on the

26  Investment Advisor Agreement, as currently pled, is precluded by SLUSA.  Given that the parties

27  devoted limited briefing to the question of whether Plaintiffs can qualify as third party

28

                                                    23

Case No.: 08-CV-04119 LHK
CORRECTED ORDER GRANTING IN PART AND DENYING IN PART MOTION TO
DISMISS

1   beneficiaries, and that the Court has not found this briefing particularly helpful, the Court declines

2   to decide now whether or not the Investment Advisor Agreement can provide a basis for such a

3   claim.  Plaintiffs are hereby given leave to amend their complaint to re-assert this claim without

4   triggering SLUSA preclusion, if they can.  In addition to avoiding SLUSA preclusion, Plaintiffs are

5   directed to specify in any amended complaint what specific provisions of the Investment Advisor

6   Agreement were allegedly breached, and how.

7          IV.    Conclusion

8          The Court finds that, as currently pled, all of Plaintiffs' claims, except Plaintiffs' breach of

9   fiduciary duty claim if it is based exclusively on Massachusetts law, are precluded by SLUSA.

10  Despite having been given leave to amend, Plaintiffs have failed to state a claim for breach of

11  contract or breach of the implied covenant of good faith and fair dealing; these claims are

12  DISMISSED WITH PREJUDICE.  Plaintiffs' claims for breach of fiduciary duty and third-party

13  beneficiary are DISMISSED WITH LEAVE TO AMEND as specified in this Order.  In order to

14  avoid SLUSA, Plaintiffs must plead claims that are wholly distinct from any allegations of

15  misrepresentation, as held in *Proctor*.  *Proctor*, 584 F.3d at 1221-22.  If Plaintiffs are unable to

16  resolve the issues discussed herein, these claims will be dismissed with prejudice.  Plaintiffs shall

17  file any Third Amended Complaint **by March 22, 2011**.

18  **IT IS SO ORDERED.**

19  Dated: March 2, 2011

20                                                          LUCY H. KOH
                                                            United States District Judge

21

22

23

24

25

26

27

28

Case No.: 08-CV-04119 LHK
CORRECTED ORDER GRANTING IN PART AND DENYING IN PART MOTION TO
DISMISS

**United States District Court**
For the Northern District of California