UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| JERRY SMIT, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>CHARLES SCWHAB & CO., INC., SCHWAB INVESTMENTS and CHARLES SCHWAB INVESTMENT MANAGEMENT, INC.,<br><br>Defendants. | Case No.: 10-CV-03971-LHK<br><br>ORDER GRANTING-IN-PART AND DENYING-IN-PART DEFENDANTS' MOTION TO DISMISS |

Defendants have moved to dismiss Plaintiff's First Amended Complaint (FAC) pursuant to Federal Rule of Civil Procedure 12(b)(6). This Motion was heard on March 3, 2011. Having considered the parties' briefing and arguments on this Motion, the Court grants-in-part and denies-in-part defendants' Motion.

I.      Introduction

This action is related to another action pending before this Court, *Northstar Financial Advisors Inc. v. Schwab Investments*, No. 08-cv-04119 LHK ("*Northstar*"). In *Northstar*, the plaintiff asserted a putative class action on behalf of investors in the Schwab Total Bond Market Fund (the Fund). Initially, the *Northstar* complaint alleged a claim for violation of Section 13(a) of the Investment Company Act of 1940 (ICA). This claim was sustained by Judge Illston (to whom

1

Case No.: 10-CV-03971-LHK
ORDER GRANTING-IN-PART AND DENYING-IN-PART DEFENDANTS' MOTION TO DISMISS

this case was previously assigned), but on interlocutory appeal the Ninth Circuit held that there is no implied private right of action under this Section. *See Northstar Fin. Advisors, Inc. v. Schwab Invs.*, 615 F.3d 1106, 1122 (9th Cir. 2010). Before the Ninth Circuit's decision, Northstar asserted an individual claim under California's Unfair Competition Law (UCL) based on the underlying alleged violation of the ICA. Cal. Bus. and Prof. Code §§ 17200 et seq.; *see Northstar* Dkt. No. 75 (Northstar FAC). Northstar's claim was later withdrawn and the parties agreed that if Northstar re-asserted it, it would be subject to binding arbitration pursuant to an agreement between Northstar and the *Northstar* defendants. *See Northstar* Dkt. No. 102, April 16, 2009. Northstar filed a Second Amended Complaint (Northstar SAC) on September 28, 2010.

On September 3, 2010, Plaintiff Smit filed a complaint asserting a UCL claim based on the alleged violation of Section 13(a) of the ICA (essentially the individual UCL claim that was asserted and then withdrawn in *Northstar*) on behalf of a putative class of Schwab Total Bond Market Fund investors. *See* Dkt. No. 1 (Compl.). The factual allegations in the initial and amended *Smit* complaints were largely duplicative of those in the *Northstar* FAC.

Briefly, Plaintiff alleged that defendants deviated from the Fund's investment objective to track the Lehman Brothers U.S. Aggregate Bond Index (the Index) in two ways. First, Plaintiff alleged that the Fund deviated from this objective by investing in high risk non-U.S. agency collateralized mortgage obligations (CMOs) that were not part of the Lehman Index and were substantially more risky than the U.S. agency securities and other instruments that comprised the Index. Compl. ¶ 3, FAC ¶ 3. Second, Plaintiff alleged that the Fund deviated from its investment objectives which prohibited any concentration of investments greater than 25% in any industry by investing more than 25% of its total assets in U.S. agency and non-agency mortgage-backed securities and CMOs. *Id*. ¶¶ 4. Plaintiff alleged that defendants made these changes without first holding a shareholder vote, as required by Section 13 of the ICA. *Id*. ¶ 2. Plaintiff alleged that defendants' deviation from the Fund's investment objective exposed the Fund and its shareholders to tens of millions of dollars in losses due to a sustained decline in the value of non-agency mortgage-backed securities. The Funds' deviation from its stated investment objective caused it to

2
Case No.: 10-CV-03971-LHK
ORDER GRANTING-IN-PART AND DENYING-IN-PART DEFENDANTS' MOTION TO DISMISS

incur a negative total return of 4.80% for the period August 31, 2007 through February 27, 2009, compared to a positive return of 7.85% for the Index over that period. *Id*. ¶¶ 5.

On November 10, 2010, defendants moved to dismiss the first *Smit* complaint. In lieu of opposing that motion, Plaintiff Smit filed the FAC on December 2, 2010. The FAC names Charles Schwab & Co., Inc., Schwab Investments (the Trust), and Charles Schwab Investment Management, Inc. (the Investment Advisor) as defendants. Defendants withdrew their original motion to dismiss and filed the Motion considered here on January 5, 2011. The Court heard oral argument on March 3, 2011.

## II. Legal Standard

Under Federal Rule of Civil Procedure 12(b)(6), a district court must dismiss a complaint if it fails to state a claim upon which relief can be granted. To survive a motion to dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). This "facial plausibility" standard requires the plaintiff to allege facts that add up to "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). In deciding whether the plaintiff has stated a claim, the Court must assume the plaintiff's allegations are true and draw all reasonable inferences in the plaintiff's favor. *Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987). However, the court is not required to accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008). Leave to amend must be granted unless it is clear that the complaint's deficiencies cannot be cured by amendment. *Lucas v. Dep't. of Corr.*, 66 F.3d 245, 248 (9th Cir. 1995).

## III. Application

### a. ICA 13(a) and 48(a) as Predicates for UCL Claim

Defendants argue that because there is no implied private right of action under the ICA § 13(a) or § 48(a), these statutes cannot serve as the violation underlying a UCL claim. Although Defendants' argument has appeal, the Court finds that this outcome would be inconsistent with

3
Case No.: 10-CV-03971-LHK
ORDER GRANTING-IN-PART AND DENYING-IN-PART DEFENDANTS' MOTION TO DISMISS

United States District Court
For the Northern District of California

case law holding that even statutes with no private right of action can serve as the basis for a UCL claim. *See Stop Youth Addiction, Inc. v. Lucky Stores, Inc.,* 17 Cal. 4th 553, 572 (1998). In *Stop Youth Addiction*, the California Supreme Court held that a private party could state a UCL claim based on an alleged violation of a penal code provision, even though there was no private right to enforce the penal code directly. *Id*. The court found that "even though a specific statutory enforcement scheme exists, a parallel action for unfair competition is proper pursuant to applicable provisions of the [UCL]." *Id*. (internal citations omitted). The court relied on language from the UCL itself: "[u]nless otherwise expressly provided, the remedies or penalties provided by this chapter [i.e., ch. 5, Enforcement, Bus. & Prof. Code, § 17200- 17209] are cumulative to each other and to the remedies or penalties available under all other laws of this state." *Stop Youth Addiction*, 17 Cal. 4th at 573.

Despite the statute's focus on state laws, courts (including this Court) have read the "express bar" requirement to apply to federal laws as well. *See, e.g., Ferrington v. McAfee, Inc.,* No. 10-CV-01455-LHK, 2010 U.S. Dist. LEXIS 106600 at \*44 (N.D. Cal. Oct. 5, 2010) (finding that plaintiff could assert a Lanham Act claim as the predicate for a UCL claim, even though the plaintiff had no standing under the Lanham act; the standing requirement did not impose an "express, absolute bar" which would prohibit enforcement via the UCL); *Hartless v. Clorox Co.,* No. 06CV2705 JAH(CAB), 2007 U.S. Dist. LEXIS 81686 at \*12-\*13 (S.D. Cal. Nov. 2, 2007) (dismissing a UCL claim brought under the Federal Insecticide, Fungicide, and Rodenticide Act (FIFRA) because the legislative history revealed that Congress had considered and "express[ly]" rejected a private right of action under the Act).

In *Northstar*, the Ninth Circuit found that there is no *implied* right of action under the ICA § 13(a).[1] *Northstar*, 615 F.3d at 1118. This decision was based not on an express rejection of such a right, but instead on the lack of an explicit intent to create such a right. *Id*. "[N]othing in the language or context of . . . [the 1970 and 2007 ICA] amendments demonstrates a clear

---

[1] Also in *Northstar*, the Ninth Circuit cited with approval decisions holding that there is no private right of action under the ICA § 48(a). *See In re Salomon Smith Barney Mut. Fund Fees Litig.,* 441 F. Supp. 2d 579, 591-93 (S.D.N.Y. 2006).

4

Case No.: 10-CV-03971-LHK
ORDER GRANTING-IN-PART AND DENYING-IN-PART DEFENDANTS' MOTION TO DISMISS

1  congressional intent to allow private lawsuits to enforce the statute's provisions." *Id*. Although

2  defendants correctly point out that the Ninth Circuit found that enforcement of the ICA was

3  "exclusively" granted to the SEC, this finding was not based on any express language in the ICA

4  itself or in its legislative history. Without an express bar prohibiting private enforcement of the

5  ICA § 13(a), the Court concludes that a UCL claim can proceed on the basis of an alleged violation

6  of this statute.

7        Additional authorities cited by defendants and not already addressed are not helpful to the

8  analysis here. In *Levy v. JP Morgan Chase*, No. 10CV1493 DMS, 2010 U.S. Dist. LEXIS 118232

9  at *11 (S.D. Cal. Nov. 5, 2010), the Court held that "to the extent [the] Plaintiff allege[d] a

10  violation of [the UCL based on the Federal Trade Commission Act]," the Plaintiff had failed to

11  "allege factual content sufficient to state a claim" for violation of the UCL based on violation of

12  the Federal Trade Commission Act.)   Thus, the dismissal appears to be based on a failure to meet

13  Rule 8's pleading requirements rather than on a finding that a FTCA claim could never serve as the

14  basis for a UCL claim. Likewise, in *Ballard v. Chase Bank USA*, No. 10cv790 L(POR), 2010 U.S.

15  Dist LEXIS 130097 at *7-9 (S.D. Cal. Dec. 9, 2010), the court decided that California Civil Code

16  § 2923.6 could not form the "borrowed" claim underlying a UCL claim because it implied no

17  private right of action. However, it stated this holding in a short paragraph of the order without

18  citation to any contrary authority, including *Stop Youth Addiction*.[2]

19        Therefore, defendants' motion to dismiss the FAC because it asserts the ICA §§ 13(a) and

20  48(a) as the basis for a UCL claim is DENIED.

---

[2] At the hearing on this Motion, counsel for defendants argued that another case, *Almond Hill School v. U.S. Dep't of Agric.*, 768 F.2d 1030 (9th Cir. 1985) holds that a statute with an exclusive federal enforcement scheme may not be "borrowed" for enforcement through other laws. However, *Almond Hill* was addressing FIFRA. As discussed above, and in the *Almond Hill* decision itself, FIFRA's legislative history revealed that Congress had contemplated and rejected a private right of action. *Almond Hill*, 768 F.2d at 1038. Defendants have not cited such an express rejection of a private right of action under the ICA § 13(a). In addition, *Almond Hill* determined that FIFRA could not be enforced via a 42 U.S.C. § 1983 action, not a California UCL action. *Id*. Therefore, the Court does not find *Almond Hill* controlling on the precise question presented here.

5
Case No.: 10-CV-03971-LHK
ORDER GRANTING-IN-PART AND DENYING-IN-PART DEFENDANTS' MOTION TO DISMISS

### b. SLUSA Preclusion

Defendants argue that Plaintiff's claims are precluded by the Securities Litigation Uniform Standards Act of 1998 (SLUSA). 15 U.S.C. § 77p. SLUSA was enacted to prevent a "shif[t] from Federal to State courts" of lawsuits asserting securities law violations in the wake of the Private Securities Litigation Reform Act of 1995 (PSLRA). *Merrill Lynch, Pierce, Fenner & Smith Inc. v. Dabit*, 547 U.S. 71, 82 (2006) (internal citation omitted). In order to avoid the PSLRA's requirements, plaintiffs began asserting what were essentially federal securities law claims as state law causes of action in state court. *Id*. Congress sought to end this practice by amending the Securities Acts of 1933 and 1934 through SLUSA.

SLUSA prohibits class actions brought on behalf of more than 50 people ("covered class actions"), if the action is based on state law and alleges a) a misrepresentation or omission of a material fact in connection with the purchase or sale of a covered security; or b) that the defendant used or employed any manipulative or deceptive device or contrivance in connection with the purchase or sale of a covered security. 15 U.S.C. §§ 77p, 78bb; *Proctor v. Vishay Intertechnology Inc.*, 584 F.3d 1208, 1221-22 (9th Cir. 2009). The complaint need not allege scienter, reliance, or loss causation in order for SLUSA preclusion to apply. *See Anderson v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 521 F.3d 1278, 1285-87 (10th Cir. 2008). In addition, the state law claims need not contain a "specific element" of misrepresentation in order to be precluded by SLUSA. *Proctor*, 584 F.3d at 1222, n.13. Plaintiff disputes the final two elements of SLUSA preclusion: first, that the FAC alleges misrepresentations or omissions of material fact, and second, that any such misstatements or omissions are alleged to have been made "in connection with" the purchase or sale of the Fund shares.

### i. Misrepresentations

In the initial Complaint, Plaintiff alleged numerous misrepresentations allegedly made by defendants. Plaintiff listed a number of Registration Statements and Prospectuses in which defendants represented that the Fund would "seek[] to track the investment results of [the Lehman Brothers] bond index through the use of an indexing strategy." Compl. ¶¶ 21-54. Plaintiffs alleged

6
Case No.: 10-CV-03971-LHK
ORDER GRANTING-IN-PART AND DENYING-IN-PART DEFENDANTS' MOTION TO DISMISS

1   that defendants repeated similar statements in 1997, 1998, 2003, 2004, 2005, 2006, 2007, and
2   2008. *Id.* at ¶ 53. According to Plaintiff, these statements of Fund policy attracted many investors
3   to the Fund: "[t]he Fund's conversion to an indexing strategy was a success, as net assets increased
4   from $24 million as of August 31, 1997 to $1.5 billion as of August 31, 2007." Compl. ¶ 43. One
5   of the headings in the Complaint states that "[t]he Fund continually promised to track the U.S.
6   Aggregate Bond Index." Compl. at 13. Then, in the section of the Complaint titled "The Fund
7   Substantially Deviated From Its Stated Investment Objective," Plaintiff alleged that the Fund began
8   to deviate from its promises to use an indexing strategy to track the Index. Plaintiff alleged that the
9   Fund first reported "a material performance deviation from the Index" in a Semi-Annual Report for
10  the period ending February 29, 2008. Compl. ¶ 64. Plaintiff alleged that defendants provided an
11  inaccurate explanation for why the deviation had happened in this Semi-Annual Report. Compl. ¶¶
12  64-66. Specifically, Plaintiff alleged that defendants blamed the deviation on "downward pricing
13  pressure" and "confidence issues" when the real cause of the Fund's losses was "the Fund's
14  concentrated play in non-agency CMOs." *Id.* Plaintiff alleged that this concentration also violated
15  "the Fund's stated investment objectives that the Fund's assets not be concentrated more than 25%
16  in any one industry (except as required by the Index). Compl. ¶ 83.

17  After defendants moved to dismiss the Complaint, in part on the ground that the asserted
18  claim was precluded by SLUSA, Plaintiff filed the FAC. In the FAC, Plaintiff has avoided using
19  the word "misrepresentation" and has omitted references to some alleged misrepresentations found
20  in the first Complaint. However, the basic outline of alleged events underlying the claim remains
21  the same. Plaintiff alleges that defendants made statements about the fund and how it would
22  manage investors' money. Specifically, Plaintiff alleges that from the time it was converted to an
23  indexing fund to the beginning of the class period, the Fund represented that it would "seek[] to
24  track the investment results of [the Lehman Brothers] bond index through the use of an indexing
25  strategy." FAC ¶¶ 22-54. The Plaintiff cites statements that "assured investors that '[b]efore
26  purchasing or selling a security, the Investment Manager would analyze each security's
27  characteristics and determine whether purchasing or selling the security would help the Fund's
28  
7
Case No.: 10-CV-03971-LHK
ORDER GRANTING-IN-PART AND DENYING-IN-PART DEFENDANTS' MOTION TO DISMISS

portfolio ***approximate*** the characteristics of the Index." FAC ¶ 29 (emphasis in original). Plaintiff alleges that such statements were repeated in numerous disclosure documents relating to the Fund. FAC ¶ 43, 53-54. In addition, Plaintiff alleges that the change to an indexing strategy attracted many more investment dollars to the fund as of August 31, 2007. FAC ¶ 44. Finally, Plaintiff alleges that as of the beginning of the class period, the "Fund was converted from a diversified fund that would seek to track the Index into a concentrated real-estate bond fund . . . without holding the required shareholder vote." FAC ¶ 58.

Fundamentally, Plaintiff's claim is that investors invested in the Fund believing that their money would be managed in a certain way based on the disclosures defendants made about the Fund, that defendants did not keep their word, and that Plaintiff suffered losses as a result. The Court finds that Plaintiff's claim alleges misrepresentations for SLUSA purposes. In making this determination, the Court must focus on the overall gravamen of the complaint; Plaintiff cannot avoid SLUSA by artful drafting to avoid the term "misrepresentation." *See Proctor*, 584 F.3d at 1221-22; *Tuttle v. Sky Bell Asset Mgmt, LLC*, No. C10-03588, 2010 U.S. Dist. LEXIS 127839 at *9 (N.D. Cal. Nov. 19, 2010); *Stoody-Broser v. Bank of America*, No. C 08-02705, 2009 WL 2707393 at *2 (N.D. Cal. Aug. 25, 2009). Where, as here, the alleged state law claim relies on alleged misrepresentations, this element of SLUSA is met—even if the state law claim does not require any misrepresentation.

For example, the Fifth Circuit found a breach of contract claim precluded by SLUSA, even though the underlying claim required no misrepresentation. *Miller v. Nationwide Life Ins. Co.*, 391 F.3d 698, 702 (5th Cir. 2004), *cited with approval in Proctor*, 584 F.3d at 1222 n.13. The *Miller* plaintiffs claimed that a contract had been formed based on the terms of a prospectus, which allegedly stated that no trading fees would be imposed. *Miller*, 391 F.3d at 701-02. The plaintiffs claimed the contract was breached when trading fees were imposed despite this term. *Id*. The Fifth Circuit found this claim precluded by SLUSA, because it was based on allegations that Nationwide had made false promises of fee-free trading which were later broken. *Id*. Even though

8

Case No.: 10-CV-03971-LHK
ORDER GRANTING-IN-PART AND DENYING-IN-PART DEFENDANTS' MOTION TO DISMISS

the contract claim did not *require* any allegations of misrepresentation, the plaintiff had in fact alleged misrepresentations in the contract claim, and therefore SLUSA applied. *Id*.

Likewise, in *Tuttle*, Judge Alsup of this district found that state law claims which did not themselves require allegations of misrepresentation were nevertheless precluded by SLUSA. In *Tuttle*, the complaint alleged that "Defendants assured plaintiffs that their money would be placed in 'massively diversified' investments," but that that these assurances "assertedly [were] an illusion." *Tuttle*, 2010 U.S. Dist. LEXIS 127839 at *13-14. Judge Alsup concluded that "the essence of the complaint is that defendants misrepresented the manner in which plaintiffs' money was to be invested." *Id*. In this regard, the allegations in *Tuttle* are similar to those asserted here, and the Court finds the *Tuttle* decision persuasive.

In another ruling from this district, Judge White found that state law claims of breach of fiduciary duty brought on behalf of a class of trust beneficiaries were precluded by SLUSA. *Stoody-Broser*, 2009 WL 2707393 at *3-*4. Despite the fact that the complaint did not directly allege any misrepresentations, the Court found that "the essence of the complaint is that defendants misrepresented and omitted material facts relating to the investment in Columbia Funds, such as conflicts of interest and increased expenses related to the investment. Because federal law comprehensively regulates the purchase and sale of mutual fund shares and requires the disclosure of material information about the fund's objectives, performance, fees and interests of its managers, courts have recognized that state law class action claims that challenge excessive fees and other aspects of mutual fund investments of necessity involve misstatements . . . ." *Stoody-Broser*, 2009 WL 2707393 at *3.

Plaintiff argues that the statements from the FAC cited above are not properly characterized as misrepresentations, because they were generally true at the time they were made, and only became false or misleading after the beginning of the class period. Plaintiff criticizes defendants for relying on "statements that *were true when made*, but became incorrect years later." However, this does not remove the claims from SLUSA's scope. Even though Plaintiff alleges the statements were true at some point, the class definition starts the clock for the class claims on May 31, 2007,

9

Case No.: 10-CV-03971-LHK
ORDER GRANTING-IN-PART AND DENYING-IN-PART DEFENDANTS' MOTION TO DISMISS

at the moment Plaintiff alleges the statements became untrue. FAC ¶ 74. This is the date that Plaintiff claims the Fund "materially deviated from its fundamental investment policy of tracking the investments of the Index and of investing primarily in a diversified portfolio of debt instruments to track the performance of the Index." FAC ¶ 55. At this point, Plaintiff contends that the defendants' previous representations and assurances about the Fund were no longer accurate. As defendants point out, the initial Complaint also alleged several misstatements made later in 2007 and 2008, during the middle of the class period. Compl. ¶¶ 53, 63-69. Although Plaintiff has amended her allegations to refer more vaguely to "subsequent" Prospectuses and Statements of Additional Information rather than identifying the 2007 and 2008 statements, Plaintiff's claim relies on the assertion that these statements became untrue. FAC ¶ 43. Although Plaintiff has obviously tried to excise all references to misrepresentations from the FAC, her claim is fundamentally that defendants misrepresented what they would do with the Fund and that Plaintiff and the class were harmed when the Fund failed to track the Index as a result.

   Plaintiff cites a number of cases holding that in order to state a claim for securities fraud under Section 10(b) of the Securities and Exchange Act of 1934, plaintiffs must cite a statement that was knowingly untrue when it was made. *See, e.g., In re Syntex Corp. Secs. Litig.,* 95 F.3d 922, 929 (9th Cir. 1996) (finding that forward-looking statements not known to be false when made did not meet the Federal Rule of Civil Procedure 9(b) standard for pleading fraud). However, it is not necessary for plaintiffs to assert scienter, reliance, or loss causation in order for SLUSA preclusion to apply. *See Anderson,* 521 F.3d at 1285-88 (finding claims brought under Sections 11 and 12 of the Securities and Exchange Act of 1933, which require no allegation of scienter, precluded by SLUSA). In decisions such as *Miller*, claims have been found to be precluded by SLUSA even if the alleged misrepresentations were not knowingly false when made. *Miller*, 391 F.3d at 699, 701 (finding breach of contract claim based on no-fee term from initial prospectus claim precluded by SLUSA, even though the initial prospectus was supplemented by later disclosures indicating that fees would apply, such that the initial prospectus was accurate when issued).

10

Case No.: 10-CV-03971-LHK
ORDER GRANTING-IN-PART AND DENYING-IN-PART DEFENDANTS' MOTION TO DISMISS

The additional authority Plaintiff cites is distinguishable as well. Plaintiff relies on a pre-*Tuttle* Judge Alsup decision, and urges that the "exact issue" presented here was addressed in that case. *In re Charles Schwab Corp. Secs. Litig.*, 257 F.R.D. 534, 551 (N.D. Cal. 2009) (finding claims of breach of fiduciary duty and breach of contract not precluded by SLUSA). However, Judge Alsup himself distinguished the *Charles Schwab* decision in *Tuttle*. The fiduciary duty and contract claims in *Charles Schwab* were not based on any misrepresentations because the "plaintiffs readily agreed that defendant properly disclosed the change in its concentration policy but argued that the change was nevertheless improper." *Tuttle*, 2010 U.S. Dist. LEXIS 127839 at *15. Unlike Judge Alsup in Charles Schwab, here the Court cannot find that the alleged misrepresentations are "really irrelevant" to Plaintiff's claim. *Charles Schwab*, 257 F.R.D. at 551.

In contrast, here, the Plaintiff alleges that the Fund's statements that it had converted to an indexing strategy continued to draw investors to the Fund during the class period, after the Fund allegedly deviated from such an indexing strategy. FAC ¶ 44. Even in opposition to this Motion, Plaintiff argues that "Schwab took hundreds of dollars from [Plaintiff] and wrongfully retained it when Schwab revoked the Fund's bedrock conservative nature and deviated from its fundamental investment policies . . . ." Opp'n at 19-20. The Ninth Circuit has held that "[m]isrepresentation need not be a specific element of the claim to fall within [SLUSA's] preclusion," and has cited other appellate decisions finding breach of contract claims (which require no allegation of misrepresentation) precluded by SLUSA. *Proctor*, 584 F.3d at 1222 n.13, citing *Miller*, 391 F.3d at 701-02.

The Court finds that Plaintiff's claims as currently pled allege misrepresentations. Thus, the Court concludes that this element of SLUSA preclusion is met.

### ii. In Connection With

Although Plaintiff's main argument against SLUSA preclusion is that there are no alleged misrepresentations, Plaintiff also contends that the "in connection with the purchase or sale of a covered security" element of SLUSA preclusion is not met. Plaintiff asserts almost no support for this position, and there is little to be found. The Supreme Court has adopted a broad construction

11
Case No.: 10-CV-03971-LHK
ORDER GRANTING-IN-PART AND DENYING-IN-PART DEFENDANTS' MOTION TO DISMISS

of "in connection with." *See Dabit*, 547 U.S. at 86. The alleged misrepresentation need only "'coincide' with a securities transaction—whether by the plaintiff or by someone else." *Dabit*, 547 U.S. at 85. Thus, the Supreme Court has found that SLUSA precludes "holder" claims, where the plaintiff alleges harm based on "wrongfully-induced holding." A Plaintiff who purchased stock "before any relevant misrepresentation," and was only injured by not later selling the stock due to alleged misrepresentations, meets the SLUSA "in connection with" requirement. *Dabit*, 547 U.S. at 76, 78.

Here, the claimed class period is defined as the time during which the Fund allegedly deviated from the Index. Plaintiff defines the class as anyone who owned or purchased shares of the Fund during this time. Plaintiffs further allege that during this time, defendants' many previous statements about the Fund tracking the Index were not true, because defendants impermissibly concentrated the Fund's assets in non-governmental CMOs without holding a shareholder vote. Plaintiffs further allege that investors continued to invest in the Fund during this time based on the "Fund's conversion to an indexing strategy." FAC ¶ 44. Overall, there is no question that Plaintiff's allegations arise "in connection with" the purchase or sale of covered securities, as required by SLUSA. The Supreme Court has explained that SLUSA preclusion is to be given a broad construction, in part, because it does not entirely prevent state law claims from being brought. "SLUSA does not actually pre-empt any state cause of action. It simply denies plaintiffs the right to use the class-action device to vindicate certain claims. The Act does not deny any individual plaintiff, or indeed any group of fewer than 50 plaintiffs, the right to enforce any state-law cause of action that may exist." *Dabit*, 547 U.S. at 87.

Accordingly, the Court finds that as currently pled, Plaintiff's claim alleges misrepresentations and is precluded by SLUSA. Therefore, defendants' Motion is granted on this ground. However, Plaintiff is given leave to amend to avoid SLUSA preclusion.

At the hearing on this Motion, counsel for Plaintiff argued that because Plaintiff's UCL claim is based on a violation of the ICA § 13(a) and 48(a), Plaintiff must establish the investment objective of the Fund and the fact that it subsequently deviated from this objective without a

12

Case No.: 10-CV-03971-LHK
ORDER GRANTING-IN-PART AND DENYING-IN-PART DEFENDANTS' MOTION TO DISMISS

shareholder vote in order to plead this claim. Plaintiff's counsel further argued that this claim could be made even if defendants had publicly disclosed their intention to change the investment policy, so long as they deviated from the policy without a vote. Thus, Plaintiff urges that she must be able to state a claim for violation of the ICA § 13(a) and 48(a) without alleging misrepresentations and implicating SLUSA. Although the Court finds that the current pleading alleges misrepresentations and therefore implicates SLUSA, the Court accepts that a UCL claim based solely on an alleged voting rights violation could be made that would not implicate SLUSA. Based on Plaintiff's counsel's representations at the hearing, the Court believes that such a claim could be made without SLUSA preclusion even it required the Plaintiff to establish that the Fund had a fundamental investment objective from which it deviated. Therefore, the Court gives Plaintiff leave to amend to state a claim for violation of her voting rights. Any extraneous allegations regarding representations about the Fund not necessary to state this claim should be removed from the amended pleading.

          c. Standing

Defendants argue that Plaintiff cannot establish standing under the UCL, because she has not demonstrated that she lost money as a result of the allegedly unlawful act constituting unfair competition. Mot. at 10. In support of this argument, defendants argue that over the time period that she owned her shares, and during the class period, Plaintiff earned dividends which offset the drop in share price. Thus, defendants argue that overall, Plaintiff gained money by her investment in the Fund. Focusing on this "net gain," defendants argue that Plaintiff has suffered no loss and therefore has no standing under the UCL. In addition, defendants argue that Plaintiff cannot establish standing because she has failed to allege that she lost anything as a result of the Fund's deviation.

Plaintiff responds that she need only assert "an identifiable trifle of economic injury" to satisfy the UCL standing requirements. *Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 330 n.15 (2011) (internal citations omitted). In *Kwikset*, the California Supreme Court also noted that the latest amendments to the UCL standing requirements were designed "to eliminate standing for

13

Case No.: 10-CV-03971-LHK
ORDER GRANTING-IN-PART AND DENYING-IN-PART DEFENDANTS' MOTION TO DISMISS

those *who have not engaged in any business dealings with would-be defendants* and thereby strip such unaffected parties of the ability to file shakedown lawsuits, while preserving for actual victims of deception and other acts of unfair competition the ability to sue and enjoin such practices. *Kwikset,* 51 Cal. 4th at 317 (emphasis added; internal quotations omitted). Clearly, Plaintiff engaged in business with Schwab. She invested money in the Fund and presumably paid management fees to defendants, since she seeks disgorgement of "management or other fees" in her Prayer for Relief. As Plaintiff points out, the injury required for standing under the UCL need not be compensable as a remedy under the UCL. *See Kwikset*, 51 Cal. 4th at 336 ("That a party may ultimately be unable to prove a right to damages (or, here, restitution) does not demonstrate that it lacks standing to argue for its entitlement to them.") (internal citation omitted).

Given the UCL standing principles set forth in *Kwikset*, the Court finds that Plaintiff has sufficiently alleged economic loss resulting from the alleged unlawful activity. Plaintiff alleges that Fund share values declined when the Fund deviated from its fundamental investment objective without first holding a shareholder vote. Even if Plaintiff gained money through dividends, as defendants claim, Plaintiff's argument is that she would have gained more if the Fund had not deviated from its investment objective. This alleged loss satisfies the "identifiable trifle" of economic harm required for standing under the UCL. Therefore, defendants' Motion to Dismiss on the basis of a lack of standing is DENIED.

      d. Available Remedies Under the UCL

Defendants argue that Plaintiff cannot seek the diminution-of-value of the Fund shares as a remedy under the UCL, because such a recovery would constitute damages rather than restitution, and damages are not available under the UCL. Defendants are correct that available remedies under the UCL are limited to injunctive relief and restitution. *See Korea Supply Co. v. Lockheed Martin Corp.,* 29 Cal. 4th 1134, 1147 (2003). Defendants are also correct that when considering restitution under the UCL, the focus "is on the plaintiff's loss. It is typified by the situation where the disgorged money or property came from the prospective plaintiff in the first instance." *Feitelberg v. Credit Suisse First Boston LLC,* 134 Cal. App. 4th 997, 1013 (2005). In *Feitelberg*,

14

Case No.: 10-CV-03971-LHK
ORDER GRANTING-IN-PART AND DENYING-IN-PART DEFENDANTS' MOTION TO DISMISS

the plaintiff alleged a UCL claim based on misleading investment advice published by the defendant, and claimed the diminution of value of the securities he held as "nonrestitutionary disgorgement." In finding that such a remedy was not available under the UCL, the court rejected the plaintiff's argument that diminution-in-share-value was an available remedy under the UCL. *Feitelberg*, 134 Cal. App. 4th at 1006. The Court of Appeals upheld the lower court's finding that restitution must be "based upon what has been received from the plaintiffs by the defendant improperly under the terms of the statute." *Id*. Because differential in the value of the stock was not something received by the defendants from the plaintiffs, it could not be awarded to the plaintiffs as restitution under the UCL. The Court finds the Court of Appeals' reasoning in *Feitelberg* applicable here.

Plaintiff argues that *Feitelberg* should not control because in that case, the plaintiffs had given nothing at all to the defendant.[3] In contrast, here, counsel for Plaintiff states that because Plaintiff entrusted money to the Fund, and because Plaintiff owned and could redeem her shares in the Fund at any time, defendants should be responsible to plaintiff for the differential in Fund share price and the Index. The problem with this argument is that Plaintiff never gave defendants the differential in share price. As Plaintiff's counsel articulated at the hearing on this Motion, the share value was always Plaintiff's, and Plaintiff could redeem the value of her shares at any time. When the shares' value dropped in comparison to the Index, the difference was not transferred to defendants. The Court therefore concludes that the diminution-in-share-value of Fund shares cannot be claimed by Plaintiff as a restitutionary remedy for the alleged ICA violations. Accordingly, the defendants' Motion to Dismiss is granted-in-part, and Plaintiff's claim for the reduction in value of Fund shares is DISMISSED with prejudice.

However, the FAC suggests that Plaintiff did pay fees to some or all of the defendants in exchange for management of the Fund. Assuming that Plaintiff can amend the FAC to avoid

---

[3] Plaintiff cites *Rosales v. Citibank*, 133 F. Supp. 2d 1177, 1181 (N.D. Cal. 2001) for the proposition that UCL plaintiffs may seek restitution of funds provided to a defendant even if defendant has lost them. However, *Rosales* turned on the fact that the bank was potentially required by law to reimburse any funds wrongfully withdrawn from the plaintiff's account, and therefore "may [have been] wrongfully in the possession of [plaintiff's] money." *Id*.

15
Case No.: 10-CV-03971-LHK
ORDER GRANTING-IN-PART AND DENYING-IN-PART DEFENDANTS' MOTION TO DISMISS

1   SLUSA preclusion, she may be able to state a claim for restitution of some portion of fees paid to
2   defendants. The Court orders that in any Second Amended Complaint, the Plaintiff clarify the
3   connection between the allegedly unlawful act and Plaintiff's payments to defendants.

      e. Derivative vs. Direct Claim

   Defendants argue that Plaintiff's claim must be dismissed because it is derivative in nature, and because Plaintiff fails to plead that the required demand was made. Because the Trust is organized under Massachusetts law, Massachusetts law applies in determining whether or not a claim is derivative. Interpreting Massachusetts law, the Ninth Circuit has previously found that injuries affecting all trust shareholders equally are derivative in nature. *Lapidus v. Hecht*, 232 F.3d 679, 683 (9th Cir. 2000). Derivative claims must be asserted through a shareholder derivative action, including compliance with the demand-futility requirement of Federal Rule of Civil Procedure 23.1. Defendants argue that Plaintiff's claim is derivative, because the "gravamen" of Plaintiff's FAC seeks "redress for a reduction in the share price of the Fund." Reply at 11. However, in *Lapidus*, the Ninth Circuit also held that a claim for violation of contractual shareholder voting rights "satisf[ies] the injury requirement for a direct action under Massachusetts law" and confers standing to pursue individual claims. *Lapidus*, 232 F.3d at 683. In the FAC, Plaintiff alleges that defendants violated the ICA § 13(a) by changing "a fundamental investment policy of the Fund without holding the required shareholder vote." FAC ¶ 58. Denial of a shareholder vote is the basis for the ICA violation which serves as the predicate to Plaintiff's UCL claim. Furthermore, the Court has determined in this Order that Plaintiff cannot seek diminution-in-share-value as a remedy under the UCL. Therefore, under *Lapidus*, Plaintiff has asserted a direct action.

      f. Statute of Limitations

   Defendants argue that, to the extent that Plaintiff's claim is based on the change in concentration policy which Plaintiff alleges occurred on September 1, 2006, the claim is time-barred. The UCL imposes a four-year statute of limitations, and the first Complaint was not filed until September 3, 2010—two days too late, according to defendants. On this basis, defendants

16
Case No.: 10-CV-03971-LHK
ORDER GRANTING-IN-PART AND DENYING-IN-PART DEFENDANTS' MOTION TO DISMISS

United States District Court
For the Northern District of California

argue that the allegations in Plaintiff's complaint relating to the September 1, 2006 disclosure should be stricken. *See* Reply at 13. However, the FAC alleges that the unlawful deviation occurred on May 31, 2007, when the "non-agency CMO concentrations exceeded 25% of net assets. . . ." *See* FAC ¶ 68. This is the same date on which the class period begins. FAC ¶ 74. Under a fair reading of the FAC, the statute of limitations period would not begin before May 31, 2007. Therefore, defendants' Motion to Dismiss on statute of limitations grounds is DENIED.

IV. Conclusion

The Court finds that Plaintiff's UCL claim as currently pled is precluded by SLUSA. In addition, the Court finds that Plaintiff may not seek diminution-in-share-value as a remedy for a UCL violation, as such an award would not be restitutionary. Plaintiffs shall file any Second Amended Complaint within **21 days of the date of this Order.**

**IT IS SO ORDERED.**

Dated: March 8, 2011

_____
LUCY H. KOH
United States District Judge

17
Case No.: 10-CV-03971-LHK
ORDER GRANTING-IN-PART AND DENYING-IN-PART DEFENDANTS' MOTION TO DISMISS