1   QUINN EMANUEL URQUHART & SULLIVAN, LLP
      Richard A. Schirtzer (Bar No. 150165)
2   865 Figueroa St., 10th Floor
    Los Angeles, California 90017
3   Telephone:   (213) 443-3000
    Facsimile:   (213) 443-3100
4   E-mail:       richardschirtzer@quinnemanuel.com

5   QUINN EMANUEL URQUHART & SULLIVAN, LLP
      Karin Kramer (Bar No. 87346)
6     Patrick Doolittle (Bar No. 203659)
      Arthur M. Roberts (Bar No. 275272)
7   50 California Street, 22nd Floor
    San Francisco, California  94111-4788
8   Telephone:  (415) 875-6600
    Facsimile:   (415) 875-6700
9   E-mail:       karinkramer@quinnemanuel.com

10
    Attorneys for Defendants Schwab Investments, Charles
11  Schwab Investment Management, Inc., Mariann
    Byerwalter, Donald F. Dorward, William A. Hasler,
12  Robert G. Holmes, Gerald B. Smith, Donald R. Stephens,
    Michael W. Wilsey, Charles R. Schwab, Randall W.
13  Merk, Joseph H. Wender, and John F. Cogan

14                    UNITED STATES DISTRICT COURT

15                 NORTHERN DISTRICT OF CALIFORNIA

16                         SAN JOSE DIVISION

17

18
    NORTHSTAR FINANCIAL ADVISORS,          Case No. 08-cv-04119 LHK
19  INC., on Behalf of Itself and All Others
    Similarly Situated,                    CLASS ACTION
20
                          Plaintiff,       NOTICE OF MOTION AND MOTION TO
21                                         DISMISS THIRD AMENDED CLASS
              v.                           ACTION COMPLAINT AND TO STRIKE
22                                         JURY DEMAND
    SCHWAB INVESTMENTS, et al.,
23                                         Date:    August 4, 2011
                          Defendants.      Time:    1:30 p.m.
24                                         Judge:   Hon. Lucy Koh

25

26

27

28

1

## NOTICE OF MOTION AND MOTION TO DISMISS COMPLAINT

2     PLEASE TAKE NOTICE that on August 4, 2011 at 1:30 p.m., in the United States

3   Courthouse, 280 South 1st Street, San Jose, CA 95113, before the Honorable Lucy H. Koh,

4   Defendants Charles Schwab & Co., Inc., Schwab Investments, Charles Schwab Investment

5   Management, Inc., and the Trustees of Schwab Investments (Mariann Byerwalter, Donald F.

6   Dorward, William A. Hasler, Robert G. Holmes, Gerald B. Smith, Donald R. Stephens, Michael

7   W. Wilsey, Charles R. Schwab, Randall W. Merk, Joseph H. Wender and John F. Cogan) will and

8   hereby do move the Court for an order dismissing the Third Amended Complaint ("TAC") with

9   prejudice and striking Plaintiff's jury demand.  This motion is based on the following points and

10   authorities, the pleadings and other documents filed in this action, and any arguments or evidence

11   made during the scheduled hearing.

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

STATEMENT OF ISSUES ...................................................................................... 1

INTRODUCTION ...................................................................................................... 1

BACKGROUND ........................................................................................................ 2

ARGUMENT ............................................................................................................. 3

I.    NORTHSTAR'S BREACH OF FIDUCIARY DUTY CLAIMS SHOULD BE
      DISMISSED ................................................................................................... 3

      A.    No Defendant Owes a Fiduciary Duty to Investors As A Matter Of Law ............... 5

            1.    Schwab Investments ............................................................. 5

            2.    Charles Schwab Investment Management ...................... 6

            3.    The Schwab Trustees ........................................................... 7

      B.    Northstar Has Failed to Allege a Fiduciary Relationship Arising From the
            Parties' Interaction ....................................................................... 7

      C.    Northstar Has Not Alleged a Breach of Duty by Any Defendant ............................ 8

      D.    The Statute of Limitations Bars the Fiduciary Breach Claim Against the
            Schwab Trustees ........................................................................... 9

      E.    Northstar's Breach of Fiduciary Duty Claims, If They Exist At All, Cannot
            Be Asserted Directly .................................................................. 10

      F.    The Aiding-And-Abetting Breach Of Fiduciary Duty Claims Should Be
            Dismissed .................................................................................... 12

II.   NORTHSTAR'S THIRD-PARTY BENEFICIARY CLAIMS SHOULD BE
      DISMISSED ................................................................................................. 13

      A.    SLUSA Preempts the Third-Party-Beneficiary Claim ............................................ 13

      B.    Northstar Was Not a Third-Party Beneficiary of the Advisory Agreement ........... 14

III.  THE COURT SHOULD STRIKE NORTHSTAR'S DEMAND FOR A JURY
      TRIAL .......................................................................................................... 16

CONCLUSION ........................................................................................................ 17

1

## **<u>TABLE OF AUTHORITIES</u>**

2

**<u>Page</u>**

3

### <u>Cases</u>

4    *Arcidi v. Nat'l Ass'n of Gov't Employees, Inc.*,
      856 N.E.2d 167 (Mass. 2006) .................................................................................12

5

6    *In re BlackRock Mut. Funds Fee Litig.*,
      No. 04 Civ. 164, 2006 WL 4683167 (W.D. Pa. Mar. 29, 2006) ...........................7, 12

7    *Cal. Emergency Physicians Med. Group v. Pacificare of Cal.*,
      111 Cal. App. 4th 1127 (2003) ..........................................................................15, 16

8

9    *In re Charles Schwab Corp. Securities Litigation*,
      No. CV 08-01510 WHA 2009 WL 1371409 (N.D. Cal. May 15, 2009) ...................9

10    *Cigal v. Leader Dev. Corp.*,
      557 N.E.2d  1119 (Mass. 1990) ...............................................................................7

11

12    *Cohen v. State St. Bank & Trust Co.*,
      72 Mass. App. 627 (2008) .....................................................................................10

13    *Demoulas v. Demoulas Super Markets, Inc.*,
      677 N.E.2d 159 (Mass. 1997) ................................................................................17

14

15    *Doe v. Harbor Sch., Inc.*,
      843 N.E.2d 1058 (Mass. 2006) ...........................................................................8, 10

16    *Forsythe v. Sun Life Fin., Inc.*,
      417 F. Supp. 2d 100 (D. Mass. 2006) ....................................................................12

17

18    *In re Eaton Vance Mut. Funds Fee Litig.*,
      380 F. Supp. 2d 222 (S.D.N.Y. 2005) ...................................................................11

19    *Green v. Nuveen Advisory Corp.*,
      186 F.R.D. 486 (N.D. Ill. 1999) ..............................................................................7

20

21    *Halebian v. Berv*,
      457 Mass. 620 (2010) ..............................................................................................5

22    *Halebian v. Berv*,
      631 F. Supp. 2d 284 (S.D.N.Y. 2007) .....................................................................5

23

24    *Hamilton v. Allen*,
      396 F. Supp. 2d 545 (E.D. Pa. 2005) ......................................................6, 7, 8, 11, 12

25    *Howe v. Bank for Int'l Settlements*,
      194 F. Supp. 2d 6 (D. Mass. 2002) .........................................................................6

26

27    *ING Principal Protection Funds Derivative Litig.*,
      369 F. Supp. 2d 163 (D. Mass. 2005) ......................................................................5

28

*Interactive Multimedia Artists, Inc. v. Superior Court*,
    62 Cal. App. 4th 1546 (1998)..................................................................................16

*Jackson v. Stuhlfire*,
    547 N.E.2d 1146 (Mass. Ct. App. 1990).................................................................11

*Jernberg v. Mann*,
    358 F.3d 131 (1st Cir. 2004) ...................................................................................7

*Jones v. Aetna Casualty and Surety Co.*,
    26 Cal. App. 4th 1717 (1994)..................................................................................16

*Kauffman v. Dreyfus Fund, Inc.*,
    434 F.2d 727 (3d Cir. 1970)....................................................................................11

*Levesque v. Ojala*,
    No. 20034485, 2005 WL 3721859 (Mass. Super. Ct. Dec. 8, 2005) ........................6

*Merola v. Exergen Corp.*,
    668 N.E.2d 351 (Mass. 1996) ...................................................................................6

*Micromuse, Inc. v. Micromuse, Plc.*,
    304 F. Supp. 2d 202 (D. Mass. 2004) .....................................................................10

*Mutchka v. Harris*,
    373 F. Supp. 2d 1021 (C.D. Cal. 2005)...................................................................12

*Northstar  Fin. Advisors, Inc. v. Schwab Investments*,
    No. 08cv4119, 2011 WL 1312044 (N.D. Cal. Mar. 2, 2011) ..................................13

*Northstar Financial Advisors, Inc. v. Schwab Investments*,
    615 F.3d 1106 (9th Cir. 2010)...................................................................................2

*O'Brien v. Pearson*,
    449 Mass. 377 (2007)................................................................................................9

*Ochs v. PacifiCare of Cal.*,
    115 Cal. App. 4th 782 (2004)............................................................................15, 16

*Patsos v. First Albany Corp.*,
    433 Mass. 323 (2001)................................................................................................8

*Powers v. Ryan, ,*
    No. CIV. A. 00-10295-00, 2001 WL 92230 (D.  Mass. Jan. 9, 2001) ......................5

*Proctor v. Vishay Intertech. Inc.*,
    584 F.3d 1208 (9th Cir. 2009)..................................................................................14

*Radol v. Thomas*,
    772 F.2d 244 (6th Cir. 1985).....................................................................................6

*Sidney-Vinstein v. A. H. Robins Co.*,
    697 F.2d 880 (9th Cir. 1983)....................................................................................16

*Smith v. Microskills San Diego L.P.*,
    153 Cal. App. 4th 892 (2007)........................................................................................15

*Snow v. Merchants Nat'l. Bank*,
    309 Mass. 354 (1941)..................................................................................................8

*State St. Trust Co. v. Hall*,
    311 Mass. 299 (1942)...............................................................................................7, 8

*Stegall v. Ladner*,
    394 F. Supp. 2d 358 (D. Mass. 2005) ...............................................................6, 7, 8, 11, 12

*ULQ, LLC v. Meder*,
    666 S.E.2d 713 (Ga. Ct. App. 2008) ...........................................................................6

*U.S. Mortgage, Inc. v. Saxton*,
    494 F.3d 833 (9th Cir. 2007)......................................................................................13

*Zucker v. Federated Shareholder Servs. Co.*,
    No. 2:06cv241, 2007 WL 709305 (W.D. Penn. Mar. 5, 2007)...........................................12

**Statutes/Rules**

Cal. Civ. Code § 1559 ...................................................................................................15, 16

15 U.S.C. § 78bb(f)(1) ...................................................................................................13

Fed. R. Civ. P. 12(f) .....................................................................................................16

Fed. R. Civ. P. 23.1 ......................................................................................................12

Mass. Gen. Laws ch. 260, § 2A ......................................................................................10

**Miscellaneous**

14A Howard J. Alperin and Lawrence D. Shubow,
    *Massachusetts Practice Series, Summary of Basic Law* § 8.85 (3d ed. 1996).............................7

**STATEMENT OF ISSUES**

1.      Should Plaintiff's breach of fiduciary duty claims be dismissed because no duty runs from any Defendant to the purported class?

2.      Should Plaintiff's breach of fiduciary duty claims be dismissed for failure to allege any fiduciary duty that has been breached?

3.      Should Plaintiff's breach of fiduciary duty claims against the Trustee Defendants be dismissed because the statute of limitations had run by the time they were filed?

4.      Should Plaintiff's breach of fiduciary duty claims be dismissed because they are derivative claims and Plaintiff has not satisfied the prerequisites for filing a derivative action?

5.      Should Plaintiff's claims for aiding and abetting a breach of fiduciary duty be dismissed because there is no underlying duty or breach?

6.      Should Plaintiff's claims for breach of a third-party beneficiary contract be dismissed because they are pre-empted by SLUSA?

7.      Should Plaintiff's claims for breach of a third-party beneficiary contract be dismissed because there is no express indication in the contract of an intent to benefit investors?

8.      Should Plaintiff's demand for a jury to hear its breach of fiduciary duty claims (including its aiding and abetting of same) be stricken because fiduciary duty claims are equitable in nature and tried to the Court?

**INTRODUCTION**

Although now split into ten causes of action framed around two principal claims—breach of fiduciary duty and breach of a third-party beneficiary agreement—Plaintiff's new complaint is merely a reconstituted version of what the Ninth Circuit already said Plaintiff may not do, which is to bring a private action for violating Section 13(a).  *See Northstar Financial Advisors, Inc. v. Schwab Investments*, 615 F.3d 1106, 1122 (9th Cir. 2010).  To the extent Plaintiff seeks to base its complaint on an alleged misrepresentation in a Schwab document that a vote would be obtained before changing the fundamental objective, the claims implicate preemption under the Securities Litigation Uniform Standards Act ("SLUSA").  The Hobson's choice of relying on Section 13(a) or an alleged Schwab misrepresentation dooms the complaint in its entirety.

The ten causes of action are individually infirm as well.  Eight of the claims are based on breach of fiduciary duty.  To invoke the Delaware carve-out and avoid preemption under SLUSA, Plaintiff concedes that its fiduciary duty claims must be pled under Massachusetts law.  But Massachusetts law recognizes no fiduciary duty between any of the Defendants and the members of the purported class.  Hence, because Massachusetts law cannot support any claim where the existence of such a duty is a prerequisite, those eight claims must be dismissed.

The remaining two claims, for breach of an alleged third-party beneficiary contract, also fail because they do not satisfy the stipulations of the Court in its Order Granting In Part And Denying In Part Defendants' Motion To Dismiss ("Order"), Dkt. No. 175, at 23–24.  The Court dismissed the claim as previously pled with leave to amend "to re-assert this claim without triggering SLUSA preclusion, if they can." *Id.* at 24.  Plaintiff has been unable to plead this complaint, including these two claims, without incorporating alleged misrepresentations and omissions.  Because the third-party beneficiary claim in the Second Amended Complaint failed the SLUSA test, the Court deferred the question of whether the agreement in question could "provide a basis for" a third-party beneficiary claim.  *Id.*  Plaintiff still fails to identify any provision in the agreement that *expressly* states an intent to benefit it and, lacking that, it cannot plead a third-beneficiary claim as a matter of law.

Plaintiff has now had four opportunities to plead its case.  Dismissal with prejudice is warranted.

## BACKGROUND

Northstar is an investment advisory firm which purports to represent a class of investors in the Total Bond Market Fund.  The Fund is a series of Defendant Schwab Investments.  Third Amended Class Action Complaint ("TAC"), at ¶¶ 2–3, 30.

Northstar's principal complaint is that Defendants caused the Fund to "deviate from the Fund's fundamental investment objective" without obtaining a "majority shareholder vote." *See, e.g.,* TAC, at ¶¶ 4, 6, 73(a), 82, 95, 96, 112.  According to plaintiff, the Fund's objective was to "seek to track the investment results of the Lehman Brothers U.S. Aggregate Bond Index," but Defendants deviated from this objective by investing in non-U.S. agency CMOs (collateralized

mortgage obligations) that were not part of the Lehman Index.  TAC, at ¶¶ 4, 5.  Plaintiff alleges that as a result of investing more than 25% of the Fund's assets in CMOs, the Fund under-performed its benchmark.  TAC, at ¶ 7.  The decline coincided with a worldwide decline in the financial markets brought on by the unprecedented crisis in the credit markets.  TAC, at ¶ 65.[1]

**ARGUMENT**

As noted, Plaintiff's new complaint is a complicated rendering of essentially two types of claims, breach of fiduciary duty and third-party beneficiary, split into 10 causes of action. Plaintiff divides its claims into "pre-breach" (for those class members who owned shares as of August 31, 2007) and "breach" (for those class members who acquired shares from September 1, 2007 through February 27, 2009), segregated by defendant. TAC, ¶ 1.   To avoid repetitive argument, for purposes of this brief, Defendants collapse the ten claims into their two principal subject matters.

## I.   NORTHSTAR'S BREACH OF FIDUCIARY DUTY CLAIMS SHOULD BE DISMISSED

Plaintiff's attempt to plead the following eight claims based on breaches of fiduciary duty:

- First Cause of Action:  On behalf of pre-breach class against the Schwab Trustees and the Trust;

- Second Cause of Action:  On behalf of the pre-breach class against the Schwab Advisor;

- Third Cause of Action:  On behalf of the pre-breach class against the Trustees for aiding and abetting breach of fiduciary duty by the Advisor;

- Fourth Cause of Action:  On behalf of the pre-breach class against the Advisor for aiding and abetting breach of fiduciary duty by the Trustees;

- Sixth Cause of Action:  On behalf of the breach class against the Trustees and the Trust;

- Seventh Cause of Action:  On behalf of the breach class against the Advisor;

- Eighth Cause of Action:  On behalf of breach class against the Trustees for aiding and abetting breach of fiduciary duty by the Advisor;

---

[1]   Defendants rely on judicial notice for the timing of the worldwide credit crisis.

1    • Ninth Cause of Action: On behalf of the breach class against the Advisor for
         aiding and abetting breach of fiduciary duty by the Trustees.

2

3        Plaintiff's breach of fiduciary duty claims are, in essence, a recasting of its claim under

4    Section 13(a) of the Investment Company Act of 1940 ("ICA").  At the heart of these claims is the

5    allegation that Defendants could not deviate from their fundamental investment objective without

6    a shareholder vote.  Regardless of how Plaintiff denominates the claim, the Ninth Circuit has held

7    that a private plaintiff may not bring that claim, and, for that reason alone, each of the above

8    claims should be dismissed.  This Court recognized as much in its previous Order, stating: "it is

9    not clear that the Plaintiffs can assert a violation of voting rights under the ICA as the basis for a

10   fiduciary duty breach."  Order, Dkt. No. 175, at 20.

11       All eight claims also must be dismissed for three additional reasons.  First, all are

12   dependent upon the existence of a fiduciary duty.  However, under Massachusetts law, no

13   defendant has such a duty.  *See* TAC, at ¶ 123 ("Plaintiff predicates this claim based on the law of

14   the Commonwealth of Massachusetts . . .").[2]  Second, none of Northstar's allegations about the

15   defendants' actions amount to a breach of fiduciary duty.  Therefore, the breach of fiduciary duty

16   claims should be dismissed with prejudice against all defendants.  Additionally, the breach of

17   fiduciary duty claim against the Individual Defendants is barred by the statute of limitations.

18

19

20   _____

21       [2]  Plaintiff attempts to create the necessary duty based on a statement in an earlier brief by
     prior counsel for Schwab that it did "not argue that no person or entity owes a fiduciary duty to the

22   Fund's investors."  Order, Dkt. No. 175, at 20.  The argument is unavailing for three reasons.
     First, as Schwab's counsel pointed out at a prior hearing, the fiduciary duties that do exist to

23   protect investors are between the Trustees and the corporation and those would need to be
     adjudicated through a derivative claim.  *See* Tr. of Jan. 13, 2011 hearing at 50-51.  Second,

24   plaintiff cites no authority for the proposition that it can create a duty under Massachusetts law
     based on a rhetorical statement in a brief.  Third, the Schwab Defendants have never stated that

25   defendants in this action owe such a duty.  In fact, defendants made that statement in the context

26   of arguing they did *not* owe such a duty.  *See* Schwab Reply, Dkt. No. 47, at 17.  One entity that

27   likely does owe such a duty to some of the Fund investors, for example, is plaintiff  Northstar,
     who acted as the financial advisor to certain investors in the Fund.

28

**A.      No Defendant Owes a Fiduciary Duty to Investors As A Matter Of Law**

Under Massachusetts law, defendants do not owe a fiduciary duty to Northstar or any other class member.  Instead, if the Trustees and Advisor Defendants owe a duty to anyone, it is only to Schwab Investments, the business trust that issued the Fund shares.  Northstar cannot prove otherwise.  In all of Northstar's many briefs in this case, it has not cited a single authority showing that a mutual fund, its trustees, or its investment advisor owe fiduciary duties directly to investors.

**1.      Schwab Investments**

Schwab Investments is the business trust that sponsors the Fund.  TAC, ¶ 30.  A business trust "in practical effect is in many respects similar to a corporation."[3]  *Halebian v. Berv*, 457 Mass. 620, 623 n.4 (2010).   "[N]o Massachusetts case recognizes a fiduciary duty owed by a corporation to a shareholder."  *Powers v. Ryan*, No. CIV. A. 00-10295-00, 2001 WL 92230, at *3 (D. Mass. Jan. 9, 2001); *see also Howe v. Bank for Int'l Settlements*, 194 F. Supp. 2d 6, 28-29 (D. Mass. 2002) (court is unaware of any Massachusetts authority "to the effect that a corporation itself owes a fiduciary duty to its shareholders"); *Merola v. Exergen Corp.*, 668 N.E.2d 351, 353 n.3 (Mass. 1996) (claim by minority shareholder dismissed; "the claim for breach of fiduciary duty lies only against the majority shareholder, not against the corporation"); *Levesque v. Ojala*, No. 20034485, 2005 WL 3721859, at *22 n.32 (Mass. Super. Ct. Dec. 8, 2005) (shareholder could not assert fiduciary duty claim against corporation; "'no Massachusetts law (and [this court is] unaware of any) to the effect that a corporation itself owes a fiduciary duty to its shareholder'") (quoting *Howe*, 194 F. Supp. 2d at 28–29.).

The same rule obtains for mutual funds: "there is insufficient basis to find that the law of . . . Massachusetts imposes [a fiduciary] duty running to the individual investors of a mutual fund." *Hamilton v. Allen*, 396 F. Supp. 2d 545, 553 n.14 (E.D. Pa. 2005) (holding "no personal fiduciary

---

[3]   Because of their similarity, courts apply general Massachusetts corporate law to breach of fiduciary duty claims relating to business trusts.  *See, e.g., Halebian v. Berv*, 631 F. Supp. 2d 284, 291–96 (S.D.N.Y. 2007) (applying general Mass. corporate law to derivative fiduciary-duty claim involving mutual fund); *ING Principal Protection Funds Derivative Litig.*, 369 F. Supp. 2d 163, 170 (D. Mass. 2005) (same).

1   duty is owed to individual investors"); *Stegall v. Ladner*, 394 F. Supp. 2d 358, 360, 366 (D. Mass.

2   2005) (holding "directors, advisors, and affiliates" of mutual fund owed no direct fiduciary duty to

3   investors).

4          The rule is based on common sense and the best interest of shareholders.  "[I]t would make

5   no sense to hold [the company] responsible for its manager's breaches of a fiduciary duty to [the

6   company] and its members, as it would shift the cost of that breach to the company (and indirectly

7   to its members), thereby shifting the cost to the very parties harmed by the breach."  *ULQ, LLC v.*

8   *Meder*, 666 S.E.2d 713, 718 (Ga. Ct. App. 2008); *see also Radol v. Thomas*, 772 F.2d 244, 258

9   (6th Cir. 1985) ("Liability for breach of the directors' fiduciary obligation could not possibly run

10  against the corporation itself, for this would create the absurdity of satisfying the shareholders'

11  claims against the directors from the corporation, which is owned by the shareholders").

12         The breach of fiduciary duty claim against Schwab Investments should be dismissed.

13              **2.        Charles Schwab Investment Management**

14         Charles Schwab Investment Management, Inc. ("CSIM") is the Fund's investment advisor.

15  TAC, at ¶ 48.  As the TAC reveals, the advisor has no direct relationship with the Fund's

16  investors.  Rather, its relationship is with the Fund, who it advises and who pays its management

17  fee.  *Id.*

18         Courts consistently hold that investment advisors like CSIM do not owe fiduciary duties

19  directly to investors.  *See In re BlackRock Mut. Funds Fee Litig.*, No. 04 Civ. 164, 2006 WL

20  4683167, at *8 (W.D. Pa. Mar. 29, 2006) (dismissing breach of fiduciary duty claims because

21  mutual fund investment advisor owed no direct duty to investors); *Hamilton*, 396 F. Supp. 2d at

22  552 (dismissing fiduciary-duty claim against investment advisors because "there is insufficient

23  basis to find that the law of either Ohio or Massachusetts imposes such a [fiduciary] duty running

24  to the individual investors of a mutual fund"); *Green v. Nuveen Advisory Corp.*, 186 F.R.D. 486,

25  490 (N.D. Ill. 1999) (holding investment advisor of closed-end funds owed no duty directly to

26  shareholders).  *Cf. In re Daisy Sys. Corp.*, 97 F.3d 1171, 1178 (9th Cir. 1996) (discussing financial

27  advisor's duty to its own client, in this case the fund); *Stokes v. Henson*, 217 Cal. App. 3d 187,

28

195 (1990) (same); *Stegall*, 394 F. Supp. 2d at 360, 366 (holding "directors, advisors, and affiliates" of mutual fund owed no direct fiduciary duty to investors).

The breach of fiduciary-duty claim against CSIM should be dismissed.

### 3.   The Schwab Trustees

The Schwab Trustees are the individual trustees of Schwab Investments who manage the Fund.  TAC, ¶ 40.  A mutual fund's trustees are analogous to a corporation's board of directors. *See State St. Trust Co. v. Hall*, 311 Mass. 299, 302-03 (1942); Sarah E. Cogan and Philip L. Kirstein, "Board Composition and the Role of Fund Directors" ABCs of Mutual Funds 2008, PLI at 14, 16 (2008) ("The fiduciary duties of trustees of a Massachusetts business trust are not specified by statute, although judicial decisions have stated that trustees of a Massachusetts business trust have fiduciary duties similar to the statutory fiduciary duties of directors of a Massachusetts corporation.")

Under Massachusetts law, "[a] director or officer of a corporation does not occupy a fiduciary relation to individual stockholders."  Rather, the fiduciary duty of a corporate officer runs to the corporation.  *Jernberg v. Mann*, 358 F.3d 131, 135 (1st Cir. 2004) (quoting 14A Howard J. Alperin and Lawrence D. Shubow, *Massachusetts Practice Series, Summary of Basic Law* § 8.85 (3d ed. 1996); *see also Cigal v. Leader Dev. Corp.*, 557 N.E.2d 1119, 1123 (Mass. 1990) (fiduciary duty ran to corporation/association rather than shareholder/member).  Because the fund trustees function like directors of a corporation, they are subject to the same fiduciary duties as corporate directors. *See State St. Trust Co.*, 311 Mass. at 302–03; Cogan et al., *supra*, at 14, 16; *Stegall*, 394 F. Supp. 2d at 360, 366 (holding "directors, advisors, and affiliates" of mutual fund owed no direct fiduciary duty to investors).

The breach of fiduciary duty claim against the Schwab Trustees should be dismissed.

### B.   Northstar Has Failed to Allege a Fiduciary Relationship Arising From the Parties' Interaction

Impliedly acknowledging that no fiduciary duty is owed as a matter of law, Northstar has attempted to argue in past briefing that a fiduciary relationship arose as a matter of fact.  Although fiduciary relationships can "arise from the nature of the parties' interactions," *Doe v. Harbor Sch.,*

*Inc.*, 843 N.E.2d 1058, 1064 (Mass. 2006), Northstar alleges no facts showing that one arose here.
Instead, its claim to a fiduciary relationship is based on features shared by all mutual funds, such
as investment advisers administering the Fund and managing assets, and on generic letters in
annual reports to shareholders which used some variation of, "Thank you for placing your trust in
Schwab Funds." *See* TAC ¶ 50.  If this were enough to create a fiduciary relationship, then the
law in Massachusetts would be the opposite of what it is, and corporations and mutual funds as a
rule would be considered fiduciaries of individual mutual fund investors, which they are not.  *See
Hamilton*, 396 F. Supp. 2d at 552 n.14 (rejecting existence of personal fiduciary relationship based
in part on mutual fund's marketing material); *Patsos v. First Albany Corp.*, 433 Mass. 323, 335
(2001) (business relationship between broker and customer does not become a general fiduciary
relationship merely because an uninformed customer reposes trust in a broker who is aware of a
customer's lack of sophistication), *citing Snow v. Merchants Nat'l. Bank*, 309 Mass. 354, 360–61
(1941).

There is no allegation that Northstar or any investor in the fund had the kind of relationship
described in *Doe* that would trump the normal rule and impose a fiduciary obligation here.  In fact,
the Complaint reveals the opposite.  In the case of the only individual investor identified in the
TAC, Henry Holz, the allegation is that he was a client of Northstar, who apparently acted as his
investment advisor and/or financial planner.  TAC, at ¶¶ 24, 29.  There is no basis to derive from
those facts that Mr. Holz relied on any Schwab Defendant for anything.

### C.    Northstar Has Not Alleged a Breach of Duty by Any Defendant

Plaintiff also has not alleged anything that amounts to a cognizable breach of duty, even if
such a duty could be found.  Although Plaintiff phrases the breach in multiple ways, as indicated
above, it all boils down to the claim that defendants were not permitted to deviate from the Fund's
investment objectives without a vote.  TAC, ¶ 128.  While Northstar's complaint does not
explicitly identify the source of this alleged duty, Northstar appears to rely on the requirements of
the ICA.  *See id.* at ¶¶ 89–90, 96.  But under Massachusetts law, a failure to meet a statutory
obligation does not necessarily result in a fiduciary breach.  *O'Brien v. Pearson*, 449 Mass. 377,

1   385 n.7 (2007) (violation of statutory duty to obtain shareholder approval prior to sale of

2   corporation's primary asset did not constitute breach of fiduciary duty).

3       Judge Alsup rejected precisely this claim in *In re Charles Schwab Corp. Securities*

4   *Litigation*, No. CV 08-01510 WHA, 2009 WL 1371409, at *6–*7 (N.D. Cal. May 15, 2009).  In

5   that case, the plaintiffs asserted that defendants breached their fiduciary duty by permitting a

6   concentration in mortgage-backed securities in violation of a mutual fund's investment objectives.

7   The Court concluded that plaintiffs had "entirely fail[ed] to explain how the alleged violation of

8   the [Investment Company Act] would activate any non-ICA fiduciary duties."  *Id.* at *6.  Judge

9   Alsup recognized that what the plaintiffs were trying to do was "re-characterize statutory ICA

10  obligations as non-ICA fiduciary violations."  *Id.* at *7.  That is exactly what Northstar is doing

11  here.  Its ICA claim was dismissed, and in its place Northstar is attempting to manufacture a

12  fiduciary breach claim out of the same conduct, which Judge Alsup said could not be done.

13      Northstar therefore cannot establish that the defendants breached their purported fiduciary

14  duties to shareholders simply because they allegedly violated a provision of the Investment

15  Company Act.  Northstar's claim for breach of fiduciary duty should be dismissed for this reason

16  as well.

17
18      **D.      The Statute of Limitations Bars the Fiduciary Breach Claim Against the
                Schwab Trustees**

19      Northstar's September 28, 2010 complaint added to the litigation, for the first time, eleven

20  individual Schwab Trustees.[4]  The three-year statute of limitations bars assertion of this claim

21  against these new defendants.

22      A claim for breach of fiduciary duty in Massachusetts is subject to a three-year statute of

23  limitations.  Mass. Gen. Laws ch. 260, § 2A.  The limitations period begins to run when the

24  plaintiff has actual knowledge "that she has been injured by the fiduciary's conduct."  *Doe*, 446

25  _____

26      [4]   Schwab raised this argument in its motion to dismiss the Second Amended Complaint when
27  the Schwab Trustees were first added, but the Court has yet to address it.  *See* Mtn. to Dismiss 2d
    Compl., Dkt. No. 150, at 16.

28

1   Mass. at 254.  "Actual knowledge of injury suffered at a fiduciary's hands, not knowledge of the

2   consequences of that injury (i.e., a legal claim against the fiduciary) sets the three-year statute of

3   limitations in play."  *Id.* at 256–57.  Plaintiff has not alleged, and cannot allege, that Schwab

4   concealed the facts.

5           The allegations of the TAC establish that the three-year period expired before the Trustees

6   were added.  Northstar alleges that it was apparent the fund no longer tracked the Lehman index

7   by September 1, 2007. The complaint includes a chart, "prepared on a Bloomberg terminal,"

8   demonstrating "how closely correlated the Fund was to the Index until after August 31, 2007 and

9   how dramatically the Fund deviated" thereafter.  TAC, at ¶ 117.  Once the Fund "dramatically

10  deviated from the Lehman Index, which Northstar believed the Fund had a legal obligation to

11  track, Northstar had "[a]ctual knowledge of [the] injury."  *Harbor Sch.*, 843 N.E.2d at 1067

12  (holding actual knowledge of injury, not knowledge of its consequences, triggers accrual).

13          This claim is therefore barred as against the new individual defendants.  *See Cohen v. State

14  St. Bank & Trust Co.*, 72 Mass. App. 627, 630-32 (2008) (claim barred against investment advisor

15  where plaintiff knew of the investment objective applied by his investment managers and of his

16  losses); *Micromuse, Inc. v. Micromuse, Plc.*, 304 F. Supp. 2d 202, 215 (D. Mass. 2004) (statute of

17  limitations enforced because plaintiff "had actual knowledge" that it "had not received that to

18  which it was entitled").

19          **E.      Northstar's Breach of Fiduciary Duty Claims, If They Exist At All, Cannot Be
                      Asserted Directly**

20
21          Northstar alleges an injury that all investors suffered equally and therefore it must assert its

22  claim derivatively.  The Court suggested as much in its prior Order.  In dismissing Northstar's

23  Second Amended Complaint, the Court said that absent Northstar's ICA voting-rights claim,

24  which was dismissed, "it would seem that the asserted harm affects all shareholders equally, and is

25  therefore derivative."  Order, Dkt. No. 175, at 20.  Indeed, that is exactly what Massachusetts law

26  says.

27          Breach of fiduciary duty claims against mutual fund directors, trustees, and advisors are

28  uniformly categorized as derivative under Massachusetts law.  *See, e.g., Hamilton*, 396 F. Supp.

2d at 550–52 (holding mutual fund investor's claims for breach of the fiduciary duty against fund trustees and advisors "must be brought as a derivative suit"); *In re Eaton Vance Mut. Funds Fee Litig.*, 380 F. Supp. 2d 222, 235 (S.D.N.Y. 2005) (holding claims against mutual fund directors and advisers must be brought derivatively and stating "if a plaintiff alleges mismanagement of funds . . . or breach of fiduciary duty resulting in a diminution of the value of the corporate stock or assets," claim is derivative); *Stegall*, 394 F. Supp. 2d at 366 (holding breach of fiduciary duty claim against mutual fund directors and advisors must be asserted derivatively and stating "if a plaintiff alleges mismanagement of funds . . . or breach of fiduciary duty" resulting in diminution of shares "the claim is one held by the corporation itself); *see also Jackson v. Stuhlfire*, 547 N.E.2d 1146, 1148 (Mass. Ct. App. 1990) ("[A] complaint alleging mismanagement or wrongdoing on the part of corporate officers or directors normally states a claim of wrong to the corporation: the action, therefore, is properly derivative.").

Courts also look to the nature of the injury suffered by the mutual fund investors. Invariably, they hold that, under Massachusetts law, because mutual fund investors are harmed by fiduciary breaches only "indirect[ly] through their status as shareholders of the Funds," their claims are derivative.  *In re Eaton Vance Mut. Funds Fee Litig.*, 380 F. Supp. 2d at 235–36 (holding claims against mutual fund directors and advisers must be brought derivatively); *see also Kauffman v. Dreyfus Fund, Inc.*, 434 F.2d 727, 732–34 (3d Cir. 1970) (rejecting notion that mutual fund differs materially from corporation and holding mutual-fund investor's claims were derivative); *Stegall*, 394 F. Supp. 2d at 364 (holding mutual fund investor's claim against fund's advisor and directors derivative because "Plaintiff's allegations relate to a diminution in the total assets of the Funds"); *Mutchka v. Harris*, 373 F. Supp. 2d 1021, 1028 (C.D. Cal. 2005) (holding mutual-fund investor's fiduciary breach claim against fund trustees, advisors and affiliates was derivative because plaintiff's "injury is identical to every other investor's"); *Hamilton v. Allen*, 396 F. Supp. 2d at 552 (holding mutual fund investor's fiduciary breach claim against fund trustees and advisors was derivative because "Plaintiffs seek essentially to recover for the diminution of assets *to the Funds*"); *Forsythe v. Sun Life Fin., Inc.*, 417 F. Supp. 2d 100 (D. Mass. 2006) (holding breach of fiduciary duty claims against mutual fund advisor and trustees must be

1   asserted derivatively); *Zucker v. Federated Shareholder Servs. Co.*, No. 2:06cv241, 2007 WL

2   709305, at *4 (W.D. Penn. Mar. 5, 2007) (dismissing breach of fiduciary duty claim against

3   mutual fund advisor and trustees because claim must be asserted derivatively); *In re Blackrock*

4   *Mut. Funds Fee Litig.*, 2006 WL 4683167, at *7–8 (W.D. Penn. Mar. 29, 2006) (dismissing breach

5   of fiduciary duty claims because mutual fund investment advisor owed no direct duty to

6   investors).

7          To the extent Northstar seeks to rely on a violation of voting rights as the basis for its

8   breach of fiduciary duty claims, it is barred by the Ninth Circuit's *Northstar* decision and Judge

9   Alsup's decision in *In re Charles Schwab Corp. Securities Litigation*, 2009 WL 1371409, at *6–

10  *7.  Beyond that invalid voting rights claim, nothing distinguishes Northstar's case from the

11  consistent line of cases holding that a mutual-fund investor's claims for breach of fiduciary duty

12  against the fund's advisor and trustees were derivative.  Because the only claims Northstar can

13  allege that do not violate *Northstar* are derivative claims, Northstar's failure to comply with the

14  demand requirement for asserting derivative claims is an additional basis for dismissal.  *See* Fed.

15  R. Civ. P. 23.1 (stating plaintiff must make demand upon directors before asserting derivative

16  action).

17

18  **F.      The Aiding-And-Abetting Breach Of Fiduciary Duty Claims Should Be
        Dismissed**

19         Northstar also alleges aiding-and-abetting breach of fiduciary duty claims against Charles

20  Schwab Investment Management, Inc. and the Schwab Trustees.  TAC, at ¶¶ 143–48 (Count 3),

21  149–54 (Count 4), 195–200 (Count 8), 201–206 (Count 9).   To state an aiding-and-abetting claim,

22  Plaintiff must first allege an underlying breach of fiduciary duty.  *Arcidi v. Nat'l Ass'n of Gov't*

23  *Employees, Inc.*, 856 N.E.2d 167, 174 (Mass. 2006) (aiding and abetting claim requires showing

24  underlying breach of fiduciary duty).  Because no duty or breach has been properly alleged against

25  any party, this claim should be dismissed.

26

27

28

1   **II.    NORTHSTAR'S THIRD-PARTY BENEFICIARY CLAIMS SHOULD BE
           DISMISSED**

2
3          Plaintiff alleges identical third-party beneficiary claims in its Fifth and Tenth Causes of

4   Action.  The only difference is that one is on behalf of the pre-breach class and the other on behalf

5   of the breach class.  Plaintiff has failed to cure either problem identified by the Court with its

6   previously dismissed third-party beneficiary claim.  It still fails to avoid SLUSA preemption, and

7   it still fails to identify anything in the Investment Advisory Agreement showing that the agreement

8   was expressly intended for the benefit of shareholders.

9          **A.      SLUSA Preempts the Third-Party-Beneficiary Claim**

10         Northstar's allegations  again collide directly with SLUSA preemption.[5]  The Complaint is

11  still based on allegations of misrepresentations and omissions and its third-party beneficiary claim

12  should be dismissed.

13         SLUSA bars securities class actions based on state law when five conditions exist: (1) the

14  case is a "covered class action;" (2) the complaint asserts a claim under state law; (3) the case

15  involves a "covered security;" and (4) the complaint contains allegations concerning a

16  misrepresentation or omission of material fact; and (5) the alleged misstatement or omission was

17  made "in connection with" the purchase or sale of a security.  15 U.S.C. § 78bb(f)(1); *U.S.*

18  *Mortgage, Inc. v. Saxton*, 494 F.3d 833, 843-44 (9th Cir. 2007).  Although the third-party

19  beneficiary claim does not require a misrepresentation, "the precluded state law claims need not

20  contain a 'specific element' of misrepresentation in order to be precluded by SLUSA."  *Northstar*

21  *Fin. Advisors, Inc. v. Schwab Investments*, No. 08cv4119, 2011 WL 1312044, at *4 (N.D. Cal.

22  Mar. 2, 2011) (citing *Proctor v. Vishay Intertech. Inc.*, 584 F.3d 1208, 1222 n.13 (9th Cir. 2009).

23         This Court already held that the Second Amended Complaint satisfied all elements of

24  SLUSA preemption.  *See* Order, Dkt. No. 175, at 8–14.  The Third Amended Complaint does not

25  ───────────────────

26         [5]   Northstar avoided SLUSA preemption for its fiduciary breach claims by asserting them
        under Massachusetts law and coming within the "Delaware carve-out."  *See* Order, Dkt. No. 175
27      at 14–15.  But the third-party beneficiary claim is made under California law and is therefore
        subject to SLUSA.  *See* Decl. of Kevin Calia, Exh. D, Dkt. No. 152-4, at ¶ 11 (agreement
28      governed by California law).

1   differ in any material respects.  Although Northstar has removed some of its alleged

2   misrepresentations, the core claim remains the same: Schwab allegedly told investors it would

3   track the Lehman Index and not concentrate its investments in a particular industry, but then did

4   the opposite.[6]

5       Northstar alleges Schwab made several statements in a 1997 Proxy Statement that Schwab

6   was "obligated" to follow.  TAC ¶¶ 80–96.  According to Northstar, Schwab said it would "track

7   the investment results" of the "Lehman Brothers Aggregate Bond Index."  *Id.* at ¶ 81.  Schwab

8   also allegedly said it would concentrate more than 25% of the Fund's assets in a single industry

9   only if necessary to track the Lehman Index.  *Id.*, at ¶ 89.  Northstar alleges Schwab broke both of

10  these "obligations."  *Id.*, at ¶¶ 94–96, 106–112.

11      The Schwab Trustees and the Advisor allegedly "began to cause the Fund to deviate from

12  the Index," *id.*, at ¶ 106, in violation of their commitment to track it. *Id.*, at ¶ 81.  And the Trustees

13  and Advisor allegedly invested "37% of the total assets of the Fund in non-agency collateralized

14  mortgage obligations," *id.*, at ¶ 106, which was in violation of the Fund's "stated investment

15  objectives," *id.*, at ¶¶ 89, 110.  Like Northstar's other complaints, the Third Amended Complaint

16  claims Schwab promised one thing but did another.  It is therefore preempted by SLUSA.

17      **B.     Northstar Was Not a Third-Party Beneficiary of the Advisory Agreement**

18      In its order dismissing the Second Amended Complaint, the Court said Northstar "cannot

19  point to any language in the Investment Advisor Agreement identifying a beneficiary class to

20  which they belong."  Order, Dkt. No. 175, at 23.  Northstar still has not done so, so its claim

21  should be dismissed.

22      Non-parties can sue to enforce a contract only if they are the express, intended

23  beneficiaries of that contract. California Civil Code § 1559 states a "contract, made expressly for

24  the benefit of a third person, may be enforced by him at any time before the parties thereto rescind

25  it."  Courts interpreting this provision have held consistently that the word "expressly" means the

26  ―――――――――――――

27      [6]  Schwab only addresses the misrepresentation element of SLUSA because the allegations
    regarding the other four elements are identical to those in the Second Amended Complaint.

28

1    contract must state the intent to benefit a third-party "in an express manner; in direct or

2    unmistakable terms; explicitly; definitely; directly."  *Smith v. Microskills San Diego L.P.*, 153 Cal.

3    App. 4th 892, 898 (2007) (citation omitted); *see Cal. Emergency Physicians Med. Group v.

4    Pacificare of Cal.*, 111 Cal. App. 4th 1127, 1138 (2003) (health care provider not express third-

5    party beneficiary of contracts between patients and their insurer); *Ochs v. PacifiCare of Cal.*, 115

6    Cal. App. 4th 782, 795-96 (2004) (same).

7         The Court has already taken judicial notice of the Investment Advisory Agreement

8    between Schwab Investments and CSIM.  *See* Order, at 21; Decl. of Kevin Calia, Exh. D, Dkt. No.

9    152-4.  And as noted above, the Court stated that Northstar was unable to point to anything in the

10   agreement that meets the requirements of the law.  Plaintiff has not cured that problem.  Instead,

11   Plaintiff points to language in instruments other than the agreement to support its argument,

12   including the 1997 Proxy Statement and a letter to shareholders.  TAC, at ¶¶ 160, 161, 168.  But

13   the letter was already pled in the dismissed third-party beneficiary claim of the Second Amended

14   Complaint and was not deemed adequate.  *See* Sec. Am. Compl., Dkt. No. 127, at ¶ 161.  And the

15   references to the 1997 Proxy Statement do not allege any language stating the Investment

16   Advisory Agreement was intended for the benefit of shareholders.  TAC, at ¶¶ 160, 161.  The fact

17   that the Schwab Advisor may have been "under [an] obligation" to "comply with the Fund's

18   investment objectives" does not come close to satisfying the requirement that the Investment

19   Advisory Agreement itself "expressly" state an intent to benefit the investors.

20        This lack of reference to a beneficiary class including Plaintiff contrasts with the express

21   language of the Advisory Agreement creating obligations "for" and "to" the Schwab Investments

22   Trust (e.g., "will supervise or perform for the Schwab Funds;" will "provide general . . . analysis

23   and advice to the Schwab Funds").  Calia Decl., Exh. D, Dkt. No. 152-4, at 1.  The drafters of the

24   agreement understood how to identify its beneficiaries, yet they did not include any language

25   identifying the investors as beneficiaries.

26        This is an issue that can be decided on the pleadings.  In both *California Emergency

27   Physicians Medical Group v. Pacificare of California,* 111 Cal. App. 4th 1127, 1138 (2003) and

28   *Jones v. Aetna Casualty and Surety Co.*, 26 Cal. App. 4th 1717, 1724-25 (1994), the Courts

1  dismissed the third-party beneficiary allegations on demurrers.  The Agreement is before the Court

2  and it does not "expressly" benefit Northstar.  At best, Northstar is an incidental beneficiary.  But

3  it "is well settled that Civil Code section 1559 excludes enforcement of a contract by persons who

4  are only incidentally or remotely benefited by it."  *Jones v. Aetna Cas. & Surety Co.*, 26 Cal. App.

5  4th 1717, 1724 (1994); *Ochs*, 115 Cal. App. 4th at 795 ("incidental beneficiaries of a contractual

6  agreement" cannot sue for breach of contract).  Northstar cannot show it was an intended

7  beneficiary of the Agreement and this claim should be dismissed.

8  **III.    THE COURT SHOULD STRIKE NORTHSTAR'S DEMAND FOR A JURY TRIAL**

9       Federal Rule of Civil Procedure 12(f) authorizes a court to strike portions of a pleading

10  that are "redundant, immaterial, impertinent or scandalous."  "[T]he function of a 12(f) motion to

11  strike is to avoid the expenditure of time and money that must arise from litigating spurious issues

12  by dispensing with those issues prior to trial."  *Sidney-Vinstein v. A. H. Robins Co.*, 697 F.2d 880,

13  885 (9th Cir. 1983).

14       Under California law, fiduciary-duty claims are equitable in nature, *see Interactive*

15  *Multimedia Artists, Inc. v. Superior Court*, 62 Cal. App. 4th 1546, 1555–56 (1998), and "a party is

16  not entitled to a jury trial in an equitable action," *Interactive Multimedia Artists, Inc.*, 62 Cal. App.

17  4th at 1556.  In *Interactive Multimedia Artists*, a shareholder brought a claim for breach of

18  fiduciary duty against corporate directors and majority shareholders.  The defendants in that case

19  moved to strike the plaintiff's demand for a jury trial, and the Court granted it, holding that the

20  claim was equitable in nature.  *Id.* at 1555–56.  Similarly, under Massachusetts law there is no

21  right to a jury trial for a breach of fiduciary duty claim.  *See Demoulas v. Demoulas Super*

22  *Markets, Inc.*, 677 N.E.2d 159, 178 (Mass. 1997) (holding "no constitutional right to a jury trial

23  when the cause of action arises in equity," and a "shareholder derivative action that . . . is

24  grounded on a breach of trust has traditionally been considered an equitable proceeding").

25       Under both California and Massachusetts law, Northstar is not entitled to a jury trial on its

26  equitable fiduciary breach claims (including its aiding and abetting claims) and its demand for one

27  should be struck.

28

1

## CONCLUSION

2          For the reasons set forth herein,  the Schwab Defendants respectfully request that the Third

3   Amended Complaint be dismissed in its entirety, without leave to amend.

4

5   DATED:  April 25, 2010                    QUINN EMANUEL URQUHART &
                                              SULLIVAN, LLP
6

7

8                                            By  /s/
                                                Karin Kramer
9
                                                Attorneys for defendants Schwab Investments,
10                                              Charles Schwab Investment Management, Inc.,
                                                Mariann Byerwalter, Donald F. Dorward, William
11                                              A. Hasler, Robert G. Holmes, Gerald B. Smith,
                                                Donald R. Stephens, Michael W. Wilsey, Charles
12                                              R. Schwab, Randall W. Merk, Joseph H. Wender,
                                                and John F. Cogan
13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Memorandum in Support of Motion to Dismiss Third Amended Complaint and Motion to Strike Jury Demand