1   QUINN EMANUEL URQUHART & SULLIVAN, LLP
      Richard A. Schirtzer (Bar No. 150165)
2   865 Figueroa St., 10th Floor
    Los Angeles, California 90017
3   Telephone:   (213) 443-3000
    Facsimile:   (213) 443-3100
4   E-mail:      richardschirtzer@quinnemanuel.com

5   QUINN EMANUEL URQUHART & SULLIVAN, LLP
      Karin Kramer (Bar No. 87346)
6     Patrick C. Doolittle (Bar No. 203659)
      Arthur M. Roberts (Bar No. 275272)
7   50 California Street, 22nd Floor
    San Francisco, California  94111-4788
8   Telephone:   (415) 875-6600
    Facsimile:   (415) 875-6700
9   E-mail:      karinkramer@quinnemanuel.com

10
    Attorneys for Defendants Schwab Investments, Charles
11  Schwab Investment Management, Inc., Mariann
    Byerwalter, Donald F. Dorward, William A. Hasler,
12  Robert G. Holmes, Gerald B. Smith, Donald R. Stephens,
    Michael W. Wilsey, Charles R. Schwab, Randall W.
13  Merk, Joseph H. Wender, and John F. Cogan

14                   UNITED STATES DISTRICT COURT

15                  NORTHERN DISTRICT OF CALIFORNIA

16                        SAN JOSE DIVISION

17

18  NORTHSTAR FINANCIAL ADVISORS,          Case No. 08-cv-04119 LHK
19  INC., on Behalf of Itself and All Others
    Similarly Situated,                     CLASS ACTION
20
                        Plaintiff,          REPLY IN SUPPORT OF MOTION TO
21                                          DISMISS THIRD AMENDED CLASS
          v.                                ACTION COMPLAINT AND TO STRIKE
22                                          JURY DEMAND
    SCHWAB INVESTMENTS, et al.,
23                                          Date:    August 4, 2011
                        Defendants.         Time:    1:30 p.m.
24

25

26

27

28

# TABLE OF CONTENTS

**Page**

INTRODUCTION ........................................................................................................ 1

ARGUMENT ............................................................................................................. 2

I.  PLAINTIFF'S FIDUCIARY-DUTY CLAIMS SHOULD BE DISMISSED ...................... 2

    A.  No Fiduciary Relationship Exists As a Matter of Law ............................. 2

    B.  Northstar Has Failed to Allege a Fiduciary Relationship As a Matter of Fact ......... 4

    C.  Northstar Has Failed to Allege a Breach of Duty by Any Defendant ...................... 6

    D.  Northstar's Fiduciary-Duty Claims Cannot Be Asserted Directly ........................... 8

    E.  The Statute of Limitations Bars the Fiduciary-Breach Claim Against the Schwab Trustees ................................................................................. 10

    F.  The Aiding-And-Abetting Breach Of Fiduciary Duty Claims Should Be Dismissed ..................................................................................... 11

II.  NORTHSTAR'S THIRD-PARTY-BENEFICIARY CLAIMS SHOULD BE DISMISSED ................................................................................. 12

    A.  SLUSA Preempts the Third-Party-Beneficiary Claim ........................... 12

    B.  Northstar Was Not a Third-Party Beneficiary of the Advisory Agreement ........... 13

III.  THE COURT SHOULD STRIKE NORTHSTAR'S DEMAND FOR A JURY TRIAL ............................................................................................... 15

CONCLUSION ......................................................................................................... 15

# **TABLE OF AUTHORITIES**

**Page**

## **Cases**

*Anwar v. Fairfield Greenwich Ltd.*,
   728 F. Supp. 2d 372 (S.D.N.Y. 2010) ........................................................................9

*Arcidi v. Nat'l Ass'n of Gov't Employees, Inc.*,
   856 N.E.2d 167 (Mass. 2006) ...........................................................................11, 12

*In re Blackrock Mut. Funds Fee Litig.*,
   No. 04 Civ. 164, 2006 WL 4683167 (W.D. Penn. Mar. 29, 2006) ..........................3, 4

*Branch v. Ernst & Young U.S.*,
   No. Civ. A. 93-10024, 1995 WL 791941 (D. Mass. Dec. 22, 1995) ...........................9

*In re Charles Schwab Corp. Securities Litig.*,
   No. CV 08-01510, WHA 2009 WL 1371409 (N.D. Cal. May 15, 2009) ......................7

*City of Atascadero v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
   68 Cal. App. 4th 445 (1998) ........................................................................................7

*Cohen v. State St. Bank & Trust Co.*,
   72 Mass. App. 627 (2008) ..........................................................................................11

*Copic Ins. Co. v. Wells Fargo Bank, N.A.*,
   No 09-CV-41, 2010 WL 3059160 ..............................................................................8

*Doe v. Harbor Sch., Inc.*,
   843 N.E.2d 1058 (Mass. 2006) ...................................................................................5

*In re Eaton Vance Mut. Funds Fee Litig.*,
   380 F. Supp. 2d 222 (S.D.N.Y. 2005) .........................................................................8

*Fernandes v. Havkin*,
   731 F. Supp. 2d 103 (D. Mass. 2010) .........................................................................5

*Fogelin v. Nordblom*,
   521 N.E.2d 1007 (Mass. 1988) ...................................................................................3

*Forsythe v. Sun Life Fin., Inc.*,
   417 F. Supp. 2d 100 (D. Mass. 2006) .......................................................................10

*Gilbert Fin. Corp. v. Steelform Contracting Co.*,
   82 Cal. App. 3d 65 (1978) .........................................................................................14

*In re Great N. Iron Ore Props.*,
   263 N.W.2d 610 (Minn. 1978) .................................................................................3, 4

*Halebian v. Berv*,
   457 Mass. 620 (2010) ..................................................................................................2

*Hamilton v. Allen,*
    396 F. Supp. 2d 545 (E.D. Pa. 2005) ............................................................3, 6, 9, 10

*Hartsel v. Vanguard Gr., Inc.,*
    C.A. No. 5394, 2011 WL 2421003 (Del. Ch. June 15, 2011)................................4, 9

*In re Hilson,*
    863 N.E.2d 483 (Mass. 2007) .......................................................................................5

*Hogan v. Baker*
    No. Civ. A. 305CV0073, 2005 WL 1949476 (N.D. Tex. Aug. 12, 2005) ...................6

*Jernberg v. Mann,*
    358 F.3d 131 (1st Cir. 2004) ........................................................................................2

*Jones v. Aetna Cas. & Surety Co.,*
    26 Cal. App. 4th 1717 (1994) ....................................................................................14

*Kaiser Engineers, Inc. v. Grinnell Fire Prot. Sys. Co.,*
    173 Cal. App. 3d 1050 (1985).............................................................................13, 14

*Kauffman v. Dreyfus Fund, Inc.,*
    434 F.2d 727 (3d Cir. 1970) ......................................................................................10

*Lapidus v. Hecht,*
    232 F.3d 679 (9th Cir. 2000).......................................................................................8

*Levesque v. Ojala,*
    No. 20034485, 2005 WL 3721859 (Mass. Super. Ct. Dec. 8, 2005) .........................4

*Loring v. United States,*
    80 F. Supp. 781 (D. Mass. 1948) ................................................................................4

*Micromuse, Inc. v. Micromuse, Plc.,*
    304 F. Supp. 2d 202 (D. Mass. 2004) .......................................................................11

*Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. Cambridge Integrated Servs. Grp., Inc.,*
    171 Cal. App. 4th 35 (2009)................................................................................13, 14

*Nisselson v. Lernout,*
    No. CIVA 03-10843, 2004 WL 3953998 (D. Mass. Aug. 9, 2004) ...........................9

*Patsos v. First Albany Corp.,*
    433 Mass. 323 (2001) ..................................................................................................6

*Paulson v. CNF, Inc,*
    No. C 03-03960, 6 (N.D. Cal. Jan. 13, 2010) ...........................................................14

*Petersen v. Sec. Settlement Corp.,*
    226 Cal. App. 3d 1445 (Cal. Ct. App. 1991) ..............................................................5

*Petrell v. Rakoczy,*
    No. CA 012849, 2005 WL 1683600 (Mass. Super. 2005)..........................................5

*Proctor v. Vishay Intertech. Inc.,*
    584 F.3d 1208 (9th Cir. 2009) ............................................................................................13

*SEC v. Charles Schwab Investment Mgmt. Inc.,*
    No. 11cv136 (N.D. Cal.) (Dkt. Nos. 30, 37) ....................................................................2, 7

*Stegall v. Ladner,*
    394 F. Supp. 2d 358 (D. Mass. 2005) ..........................................................................3, 4, 13

*Strigliabotti v. Franklin Res., Inc.,*
    No. C 04-0083, 2005 WL 645529 (N.D. Cal. Mar. 7, 2005) .............................................4, 6, 9

*Terra Insurance Co. v. N.Y. Life Inv. Mgmt. LLC,*
    717 F. Supp. 2d 883 (N.D. Cal. 2010) ................................................................................7

*Tuttle v. Sky Bell Asset Mgmt., LLC,*
    No. C-10-3588 (N.D. Cal. June 16, 2011) ...........................................................................15

*Zucker v. Federated Shareholder Servs. Co.,*
    No. 06cv241, 2007 WL 709305 (W.D. Penn. Mar. 5, 2007) ....................................................3

**Statutes**

15 U.S.C. § 80a-139(a)..........................................................................................................7

**Codes**

Investment Act of 1940 § 13(a)................................................................................................1

# INTRODUCTION

Courts have been deciding cases about mutual funds since long before Congress enacted the Investment Act of 1940 ("ICA"), yet Plaintiff has failed to identify a single case supporting the claims in its Third Amended Complaint.  Plaintiff has cited no case holding that mutual-fund investors are owed fiduciary duties by the fund, its trustees, or its investment advisor; no case for the proposition that a breach of fiduciary duty claim against a mutual fund can be asserted directly instead of derivatively; and no case holding mutual fund investors are third-party beneficiaries of the contract between the fund and its advisor.  Plaintiff's theories of liability are novel, and this Court would be breaking new ground by permitting them to go forward.

Plaintiff also failed to meet the specific challenges laid down by the Court in its Order of March 2, 2011.  *See* Order, Dkt. No. 175.  There, the Court advised Plaintiff that, to state valid claims it would need to avoid SLUSA through more than "artful drafting," *id.* at 10, and it would need to avoid stating claims that were merely reconstituted versions of Section 13(a) of the ICA.  But as Defendants pointed out in the opening brief, the gravamen of Plaintiff's claims has not changed.  Plaintiff's brief acknowledges its case still revolves around the concept that Defendants caused the Fund to deviate from the Fund's fundamental investment objective without obtaining a majority shareholder vote.  *See* Opp. Br. at 1:13–14 (defendants breached their duty to follow "the Fund's fundamental investment policies (only changeable by majority shareholder vote)").  That claim is precisely what is regulated by Section 13(a) and not subject to private action.  And by relying on the concept that Defendants pledged to follow one course of action but engaged in another to the detriment of the class, Plaintiff continues to allege state law misrepresentation claims in violation of SLUSA.

Plaintiff urges the Court to ignore the law and allow it to go forward anyway because otherwise a "fund's obligations to follow fundamental investment policies" would be "meaningless."  *See* Opp. at 2:21–23.  That is demonstrably inaccurate.  Section 13(a) is enforceable by the SEC, which undertook an investigation and is about to distribute a substantial

1    sum to the same class members Plaintiff represents.[1]  Congress has made sure there is no lack of

2    available remedies for investors who believe they have been wronged, but the claims Plaintiff has

3    chosen are not among them.  Plaintiff has had four opportunities to plead a case.  Defendants

4    respectfully submit it is now time to dismiss all claims with prejudice.

5

6                                            **ARGUMENT**

7    **I.      PLAINTIFF'S FIDUCIARY-DUTY CLAIMS SHOULD BE DISMISSED**

8            **A.      No Fiduciary Relationship Exists As a Matter of Law**

9            Plaintiff has abandoned its claim that Charles Schwab Investment Management, Inc.

10   ("CSIM") and Schwab Investments owed direct fiduciary duties to investors as a matter of law,

11   now arguing only the Schwab Trustees owe fiduciary duties to the Fund's investors.  *See* Opp. at

12   5–8.  But under Massachusetts law, which is the only law available to Plaintiff on its fiduciary

13   duty claims, *see* Order, Dkt. No. 175, at 14–15, a direct claim for breach of fiduciary duty by the

14   investors of a Massachusetts business trust cannot be sustained.[2]  *See* Mot. at 5–7.

15           Plaintiff still cites no case holding that such a duty exists.  Instead, Plaintiff

16   mischaracterizes Schwab's position, arguing the "linchpin" of Schwab's argument is that there is

17   no difference between a corporation and a business trust.  Opp. at 5.  To the contrary, Schwab

18   simply pointed out, as have many courts, that corporations are a helpful analogue when discussing

19   the legal structure of business trusts.  *See, e.g., Halebian v. Berv*, 457 Mass. 620, 623 n.4 (2010)

20   (comparing the two entities and stating a business trust "in practical effect is in many respects

21   similar to a corporation").  Because directors of corporations do not owe fiduciary duties to

22   shareholders, *Jernberg v. Mann*, 358 F.3d 131, 135 (1st Cir. 2004), and because "trustees of a

23

24

25

26        [1]   *See SEC v. Charles Schwab Investment Mgmt. Inc.*, No. 11cv136 (N.D. Cal.) (Dkt. Nos. 30,

27   37).
          [2]   CSIM and the Trustees do, however, owe duties to the Fund itself.

28

1    Massachusetts business trust have fiduciary duties similar to" a corporate director's fiduciary

2    duties,[3] it follows that the trustees owe no direct fiduciary duty to the Fund's investors.

3            Schwab's conclusion is supported by the many cases holding that mutual-fund trustees

4    owe no direct fiduciary duties to investors.  *See, e.g., Stegall v. Ladner*, 394 F. Supp. 2d 358, 360,

5    366 (D. Mass. 2005) (holding "directors" of mutual fund owed no direct fiduciary duty to

6    investors);[4] *Hamilton v. Allen*, 396 F. Supp. 2d 545, 551–53 (E.D. Pa. 2005) (holding mutual-fund

7    trustees owed no direct fiduciary duty to investors); *Zucker v. Federated Shareholder Servs. Co.*,

8    No. 06cv241, 2007 WL 709305, at *4 (W.D. Penn. Mar. 5, 2007) (holding no "direct fiduciary

9    duties owed to the shareholders" of a mutual fund by defendants, including trustees); *In re*

10   *Blackrock Mut. Funds Fee Litig.*, No. 04 Civ. 164, 2006 WL 4683167, at *8 (W.D. Penn. Mar. 29,

11   2006) (holding no direct fiduciary duties owed to investors in mutual fund).  Schwab's conclusion

12   is also supported by Plaintiff's inability to provide contrary authority.

13           The two cases Plaintiff cites to support its request to pursue direct fiduciary-duty claims

14   here do not involve mutual funds and are also distinguishable on other grounds.  *Fogelin v.*

15   *Nordblom*, 521 N.E.2d 1007 (Mass. 1988) was a Massachusetts business trust, but it was a family

16   trust, and the duties among family members is the backdrop to the discussion.  The case had

17   nothing to do with mutual funds, and there is likely no business form that could eliminate

18   fiduciary duties in the family context.  Plaintiff's other case, *In re Great N. Iron Ore Props.*, 263

19   N.W.2d 610, 619–20 (Minn. 1978), is not controlling and also has nothing to do with mutual

20   funds.  It is not even clear that the trust at issue there was a Massachusetts business trust.  *See id.*

21   The case contains *dicta* stating that a Massachusetts business trust "is subject to the underlying

22   equitable and fiduciary duties toward trust beneficiaries imposed by the common law of trusts,"

23

24   _____

25       [3]   Sarah E. Cogan and Philip L. Kirstein, "Board Composition and the Role of Fund
26   Directors" ABCs of Mutual Funds 2008, PLI at 14, 16 (2008).
         [4]   Plaintiff's attempt to distinguish *Stegall* fails.  *See* Opp. 5 n.5.  *Stegall* broadly held that, in
27   the mutual-fund context, duties are owed directly only to the fund, and derivatively to investors.
     *See Stegall*, 394 F. Supp. 2d at 366.
28

but there is no Massachusetts case among the authorities it cites, and, given that Northstar may

only rely on Massachusetts law to avoid SLUSA, that point is critical here.  *See id.* at 620 n.19.[5]

Contrary to Plaintiff's assertion, Schwab has not argued that large entities are never subject
to fiduciary duties.  Rather, Schwab has argued, correctly, that in the case of small entities,
fiduciary duties may apply because of the likelihood of actual direct relationships involved among
the participants—the kinds of relationships that would lend themselves to trust and confidence
being reposed by one in another.  Regardless of why courts consistently have held that trustees of
mutual funds owe no direct fiduciary duty to investors—whether it is because mutual funds are
large and complex business trusts, or because they resemble corporations—the fact is that many
cases have so held.  *See, e.g., Stegall v. Ladner*, 394 F. Supp. 2d at 366; *Blackrock Mut. Funds Fee
Litig.*, 2006 WL 4683167, at *8.

The only reported case to hold that a direct fiduciary duty is owed to mutual-fund investors
is *Strigliabotti v. Franklin Res., Inc.*, No. C 04-0083, 2005 WL 645529 (N.D. Cal. Mar. 7, 2005), a
case that has been criticized numerous times for its holding and which Plaintiff does not even cite
for the proposition.[6]  *See, e.g., Hartsel v. Vanguard Gr., Inc.*, C.A. No. 5394, 2011 WL 2421003,
at *17 (Del. Ch. June 15, 2011) (listing cases).  Yet Plaintiff asks the Court to join with
*Strigliabotti* in being the only Court to hold such a duty exists.  Schwab respectfully submits that
the Court should decline.

**B.     Northstar Has Failed to Allege a Fiduciary Relationship As a Matter of Fact**

Plaintiff argues that because it has pled that investors reposed trust and confidence in the
Schwab defendants, it has met the standard for pleading the existence of a fiduciary relationship
based on fact.  If such rote allegations were all that were necessary to show the kind of
*relationship* that must exist for fiduciary duties to apply, then anyone could plead around the law

---

[5]  Plaintiff also cites *Loring v. United States*, 80 F. Supp. 781, 786 (D. Mass. 1948), which
merely stands for the unremarkable proposition that there are some differences between corporate
directors and business-trust trustees.  And *Levesque v. Ojala*, No. 20034485, 2005 WL 3721859,
at * (Mass. Super. Ct. Dec. 8, 2005), only makes the general statement that a trustee owes a duty
to his beneficiaries but it did not involve mutual funds or any type of Massachusetts business trust.

[6]  Plaintiff later cites *Strigliabotti* for a different proposition.  *See* Opp. at 10.

1  holding no fiduciary duty exists in normal commercial relationships.  Classes of consumers could

2  claim they "trusted" the dealership from whom they purchased their defective vehicle or the cell

3  phone company from whom they purchased their equipment.  There would be no end to breach of

4  fiduciary duty claims.

5      The two Massachusetts cases Plaintiff relies on illustrate the point that a fact-based

6  fiduciary relationship requires a personal *relationship*.  *In re Hilson*, 863 N.E.2d 483, 493 (Mass.

7  2007) involved an attorney acting as escrow agent for an individual's funds.  *Doe v. Harbor Sch.,*

8  *Inc.*, 843 N.E.2d 1058, (Mass. 2006) dealt with a fiduciary duty between a resident and a

9  counselor of a group home.  These personal relationships are a far cry from the commercial

10  distance between a mutual fund and its investors.  Plaintiff has not shown any direct relationship

11  for any investor in this case, such as the ones that existed in *Hilson* and *Doe*, and when the parties

12  have not interacted directly, generally no fiduciary duty can arise as a matter of fact.  *See, e.g.,*

13  *Fernandes v. Havkin*, 731 F. Supp. 2d 103, 110 (D. Mass. 2010) (no fiduciary duty where

14  "plaintiff and defendant lacked any direct relationship, certainly not one of deep, personal trust

15  and respect"); *Petrell v. Rakoczy*, No. CA012849, 2005 WL 1683600 at *4 (Mass. Super. 2005)

16  (no fiduciary duty where diocese "did not have any personal contact with the parishioners of each

17  parish so as to create an awareness that individual parishioners relied upon them for guidance or

18  advice"); *Petersen v. Sec. Settlement Corp.*, 226 Cal. App. 3d 1445, 1455 (Cal. Ct. App. 1991) (no

19  fiduciary duty between broker and customers absent a "direct and personal relationship").

20      The only facts Northstar alleges to show the existence of a fiduciary duty are generic

21  marketing materials.  For example, Plaintiff alleges Defendant Randall Merk wrote in a form letter

22  to shareholders, "Thank you for investing with us."  TAC ¶ 50.  Plaintiff fails to explain how this

23  benign statement to shareholders and others like it could ever support the existence of a fiduciary

24  duty, nor has Plaintiff cited any case stating that when a commercial party uses the word "trust," it

25  thereby becomes a fiduciary of any customer who sees or hears it.

26      Plaintiff also argues a fiduciary relationship arose by virtue of what CSIM and the Trustees

27  did for the Fund, such as invest the Fund's assets and decide investment strategy.  *See* Opp. at 9–

28  10.  But as Plaintiff itself argues, a fact-based relationship must exist because of the nature of the

1   relationship, not the tasks carried out pursuant to the relationship.  Plaintiff cites no case law

2   showing that when a mutual-fund advisor or its trustees simply do the tasks they are supposed to

3   do, somehow a fiduciary duty arises between them and the investors.  If the law were otherwise,

4   all mutual funds would be fiduciaries of their investors and Plaintiff's brief would be filled with

5   supporting authority, instead of devoid of it.

6        Plaintiff also cites *Strigliabotti*, 2005 WL 645529, believing it supports its argument that it

7   has sufficiently pleaded the existence of a fiduciary duty.  Even if Plaintiff could rely on a

8   California case, which this Court has said it cannot,[7] the case has been harshly criticized and

9   marginalized. *See, e.g., Hogan v. Baker*, No. Civ.A. 305CV0073, 2005 WL 1949476, at *4 (N.D.

10  Tex. Aug. 12, 2005) (stating *Strigliabotti's* "reasoning is at odds with the overwhelming majority

11  of courts who have addressed this issue").

12       Finally, Plaintiff has not distinguished Schwab's authorities, which rejected arguments just

13  like the one Plaintiff makes here.  Plaintiff's only comment on *Hamilton*, 396 F. Supp. 2d at 552

14  n.14 (rejecting existence of personal fiduciary relationship based in part on mutual fund's

15  marketing material), is that it "has not been cited with approval or otherwise by a court in

16  Massachusetts," which is no distinction at all particularly given its fairly recent vintage.  *See* Opp.

17  at 6 n.9.  Plaintiff says nothing whatsoever on this point about *Patsos v. First Albany Corp.*, 433

18  Mass. 323, 335 (2001) (business relationship between broker and customer does not become a

19  general fiduciary relationship merely because an uninformed customer reposes trust in a broker

20  who is aware of a customer's lack of sophistication).  Plaintiff thus has failed to allege a fiduciary

21  relationship arose as a matter of fact and this claim should be dismissed.

22       **C.    Northstar Has Failed to Allege a Breach of Duty by Any Defendant**

23       Plaintiff also has failed to allege anything amounting to a breach of duty.  The crux of

24  Plaintiff's complaint is that Defendants failed to comply with the Fund's stated investment

25  objectives.  *See* TAC ¶ 128.  The allegations of paragraph 128 boil down to a failure to comply

26  with the Fund's fundamental policies.  *See id.*  But this is only actionable because of the

27  ───────────────

28       [7]   Order, Dkt. No. 175, at 20.

1    Investment Company Act of 1940 ("ICA"), which requires mutual funds to obtain shareholder

2    approval before straying from a mutual fund's fundamental policies.  *See* 15 U.S.C. § 80a-139(a).

3    Judge Alsup already has held a breach of fiduciary duty claim cannot be based on a violation of

4    the ICA.  *See In re Charles Schwab Corp. Securities Litig.*, No. CV 08-01510 WHA, 2009 WL

5    1371409, at *6–*7 (N.D. Cal. May 15, 2009) (stating plaintiffs "entirely fail[ed] to explain how

6    the alleged violation of the ICA would activate any non-ICA fiduciary duties").[8]

7           Plaintiff cites two cases, but neither show Plaintiff has properly stated a breach of fiduciary

8    duty.  Both cases involve financial institutions that made investment recommendations to

9    individual customers.  The first, *City of Atascadero v. Merrill Lynch, Pierce, Fenner & Smith,*

10   *Inc.*, 68 Cal. App. 4th 445 (1998), does not involve a mutual fund and has allegations going far

11   beyond those at issue here, including that the defendant concealed the risks of making a particular

12   investment, misled investors, advanced its own monetary interests at the investors' expense, and

13   charged excessive commissions.  *Id.* at 484.  Unsurprisingly, the court held those allegations

14   established a breach of fiduciary duty.  *Id.*  Nothing close to that is alleged here.  Plaintiff's other

15   case, *Terra Insurance Co. v. N.Y. Life Inv. Mgmt. LLC*, 717 F. Supp. 2d 883, 894 (N.D. Cal.

16   2010), simply denies summary judgment, holding an investment advisor could have violated its

17   fiduciary duty to a client by failing to disclose "any material information related to its investment

18   advice."  It does not involve a mutual fund, and Plaintiff makes no allegations regarding the failure

19   to disclose material information.[9]

20

21

   _____

22        [8]  Plaintiff cannot distinguish *Charles Schwab*.  Like this case, *Charles Schwab* involved the

23   implicit allegation that a violation of the ICA also constituted a violation of a fiduciary duty.  2009
     WL 1371409, at *6.  Although Plaintiff tries to distinguish *Charles Schwab* because the plaintiff

24   there only argued for a violation of the duty of loyalty, that makes no difference because the
     fundamental claim is the same: Defendants allegedly did not follow the Fund's fundamental

25   investment policies, which is only a violation because of the ICA.

26        [9]  Plaintiff also cites *Copic Ins. Co. v. Wells Fargo Bank, N.A.*, No 09-cv-41, 2010 WL
     3059160, but it appears to be largely irrelevant.  It dealt only with whether a party could seek

27   punitive damages, did not involve a mutual fund, and in no way addresses the sufficiency of a
     claim for violation of fiduciary duty.  *Id.*

28

1    Plaintiff also claims Schwab argues "that a violation of voting rights cannot serve as the

2    basis of a state law action."  Opp. at 11.  Schwab, however, does not make that argument; rather, it

3    is the nature of the voting-rights claim that is determinative here.  Plaintiff replaced its original

4    ICA claim, which was dismissed by the Ninth Circuit, with a fiduciary-duty claim premised on the

5    same conduct.  Plaintiff cannot pour old wine into a new bottle and try to resell it as new wine, as

6    Judge Alsup held in *Charles Schwab.  See* 2009 WL 1371409, at *7 (plaintiffs were trying to "re-

7    characterize statutory ICA obligations as non-ICA fiduciary violations.").  Plaintiff's fiduciary-

8    duty claims should be dismissed.

9    **D.      Northstar's Fiduciary-Duty Claims Cannot Be Asserted Directly**

10    As shown above, if Plaintiff's claim is based on an alleged violation of voting rights, it

11    cannot be sustained under the Ninth Circuit's holding in *Northstar.*  And as this Court already

12    stated, "If Plaintiffs' fiduciary duty claim were read without reference to voting rights, it would

13    seem that the asserted harm affects all shareholders equally, and is therefore derivative."  Order,

14    Dkt. No. 175, at 20.  Plaintiff has failed to navigate that Hobson's choice, and cannot do so

15    because the law is so squarely against it.  Under Massachusetts law, a "shareholder does not

16    acquire standing to maintain a direct action when the alleged injury is inflicted on the corporation

17    and the only injury to the shareholder is the indirect harm which consists of the diminution in the

18    value of his or her shares."  *Lapidus v. Hecht*, 232 F.3d 679, 683 (9th Cir. 2000).  Here, the

19    alleged harm to the class was the diminution in the value of their shares, "and all shareholders who

20    held shares during the class period were [allegedly] damaged."  *In re Eaton Vance Mut. Funds Fee*

21    *Litig.*, 380 F. Supp. 2d 222, 236 (S.D.N.Y. 2005) (holding claims against mutual fund were

22    derivative).

23    Plaintiff has not meaningfully distinguished or responded to the many cases Schwab cited

24    in its opening brief, which all hold that breach of fiduciary duty claims against mutual-fund

25    directors, trustees, and advisors are derivative under Massachusetts law.  *See* Mot. at 10–12; *see*

26    *also Hartsel v. Vanguard Gr., Inc.*, C.A. No. 5394, 2011 WL 2421003, at *17 (Del. Ch. June 15,

27    2011) (holding "any injury to Plaintiffs based on a diminution in value of their [mutual fund]

28    shares is secondary and derivative to the alleged injury suffered by the Funds themselves").  While

1   every case Schwab cited involved mutual funds, *see* Mot. at 10–12, none of Plaintiff's cases do.[10]

2   Plaintiff has not cited a single case holding that investors in a mutual fund can bring fiduciary-

3   duty claims directly, rather than derivatively, against the investment advisor and trustees.

4          Plaintiff's argument that the differences in individual damages transforms the claims from

5   derivative to direct is wrong and is not supported by *Anwar v. Fairfield Greenwich, Ltd.*, 728 F.

6   Supp. 2d 372, 402 (S.D.N.Y. 2010).  *See* Opp. at 17.   *Anwar* was not a mutual-fund case; it

7   involved investors in a hedge fund that invested in the Madoff Ponzi scheme.  *See* 728 F. Supp. 2d

8   372, at 400–02.  In the mutual-fund context, Plaintiff's theory has been rejected.  *See Hamilton*,

9   396 F. Supp. 2d at 552 (rejecting holding of *Strigliabotti*, which was that claim was direct because

10  "each shareholder in the fund 'had a direct and separate amount directly and permanently

11  subtracted from the value of his or her shares'") (quoting *Strigliabotti*, 2005 WL 645529, at *7).

12  Even in derivative cases, damages can vary greatly from shareholder to shareholder, depending on

13  the amount of shares an investor held and when the investor bought and sold them, yet that does

14  not convert the investors' claims to direct claims.  Plaintiff has not cited any cases showing that,

15  under Massachusetts law, varying degrees of damages among investors has any bearing on

16  whether a claim is direct or derivative.

17         Plaintiff next argues that because the Fund itself purportedly owned no property, its claims

18  are direct.  In support of this proposition, Plaintiff cites exactly nothing.  There is no indication

19  that it makes any difference whether property is legally held by the Fund or by the Trustees.  And

20  even if Plaintiff is right that the Trustees hold title to the Fund's assets, this is a common feature of

21  all mutual funds, including the funds at issue in the many cases holding that fiduciary-violation

---

23     [10]   *See* Opp. 16–17 (citing *Branch v. Ernst & Young U.S.*, No. Civ. A. 93-10024, 1995 WL
24  791941 (D. Mass. Dec. 22, 1995) (involving suit by bankruptcy trustee against debtor bank's
    outside auditor); *Nisselson v. Lernout*, No. CIVA 03-10843, 2004 WL 3953998 (D. Mass. Aug. 9,
25  2004) (dismissing shareholders' claims arising out of merger because they were derivative, not
    direct); *Anwar v. Fairfield Greenwich Ltd.*, 728 F. Supp. 2d 372, 400–02 (S.D.N.Y. 2010)
26  (plaintiffs were investors in a hedge fund that invested in Madoff Ponzi scheme, and were owed
    direct duties by certain defendants, were tortiously induced to invest, and hedge funds existed
27  solely to defraud plaintiffs)).

1   claims just like Plaintiff's must be asserted derivatively.  *See* Mot. at 10–12.  This is not

2   something that distinguishes this case from any other.

3        Plaintiff also claims the Fund itself suffered no harm, and the claims must therefore be

4   direct.  *See* Opp. at 18.  But several courts have held that the mutual fund itself suffers the harm

5   from a breach of fiduciary duty, and the investors suffer harm only derivatively.  *See, e.g.,*

6   *Kauffman v. Dreyfus Fund, Inc.*, 434 F.2d 727, 733 (3d Cir. 1970) (holding claim against mutual

7   fund was derivative because "injury [was] inflicted upon [] corporation"); *Hamilton*, 396 F. Supp.

8   2d 545, 552 (holding "allegations . . . establish that the Funds suffered harm from a breach of

9   fiduciary duty, [but] there is insufficient basis to find that the law of . . . Massachusetts imposes

10  such a duty running to the individual investors of a mutual fund"); *Forsythe v. Sun Life Fin., Inc.*,

11  417 F. Supp. 2d 100, 112 (D. Mass. 2006) (holding injury from alleged fiduciary breach

12  "occur[ed] primarily and directly to the [mutual] Funds and only indirectly to the plaintiffs by

13  virtue of their status as investors").

14       Finally, Plaintiff's argument that it would be inequitable to allow recovery to go to the

15  Fund is effectively a wholesale rejection of the concept of derivative lawsuits.  In all derivative

16  suits, alleged wrongdoers may incidentally benefit from any recovery, but the ultimate

17  beneficiaries are investors and shareholders.  Plaintiff's claims, to the extent they exist at all,

18  should have been asserted derivatively, and Plaintiff's failure to do so requires dismissal.

19
    **E.      The Statute of Limitations Bars the Fiduciary-Breach Claim Against the
20            Schwab Trustees**

21       Plaintiff's newly added claims against the Trustees are time barred because investors knew

22  about their claims on September 1, 2007.  Plaintiff protests that Schwab has mischaracterized its

23  allegations about when investors knew the Fund was allegedly deviating from its fundamental

24  policies.  Schwab only points out what is in Plaintiff's own complaint, which is that the Lehman

25  Index's returns and the Fund's returns were closely correlated "until after August 31, 2007 and []

26  dramatically the Fund began to deviate from the Index in late 2007 through February 27, 2009."

27  TAC ¶ 117.  Plaintiff also uses August 31, 2007 as the date dividing its pre- and post-breach

28  classes, underscoring the significance of that date in the pleadings.  TAC ¶ 1.  If the returns

1  correlated until August 31, 2007 and "dramatically" deviated thereafter, as Northstar alleges, then

2  investors should have known of their alleged injury.

3       Plaintiff also argues that because investors did not have access to the composition of the

4  Lehman Index, they could not have discovered their claims.  *See* Opp. at 15.  That misses the

5  point; knowledge of the Index's composition is irrelevant.  What is relevant is the Fund's returns

6  compared to the Index's returns, and, as just explained, the TAC suggests it was apparent to

7  investors the Fund deviated from the Index after August 31, 2007.  *See* TAC ¶ 117.  The fiduciary-

8  duty claims against the Trustees should be dismissed as time barred.  *See Cohen v. State St. Bank

9  & Trust Co.*, 72 Mass. App. 627, 630-32 (2008) (claim barred against investment advisor where

10 plaintiff knew of the investment objective applied by his investment managers and of his losses);

11 *Micromuse, Inc. v. Micromuse, Plc.*, 304 F. Supp. 2d 202, 215 (D. Mass. 2004) (statute of

12 limitations enforced because plaintiff "had actual knowledge" that it "had not received that to

13 which it was entitled").

14
15       **F.     The Aiding-And-Abetting Breach Of Fiduciary Duty Claims Should Be
                   Dismissed**

16       Because Plaintiff has failed to allege a breach of fiduciary duty by any defendant, its

17 aiding-and-abetting breach of fiduciary duty claims against Charles Schwab Investment

18 Management, Inc. and the Schwab Trustees must be dismissed.[11]  *See Arcidi v. Nat'l Ass'n of

19 Gov't Employees, Inc.*, 856 N.E.2d 167, 174 (Mass. 2006) (aiding and abetting claim requires

20 showing underlying breach of fiduciary duty).

21
22
23
24
_____

25    [11]  Plaintiff believes that Schwab has conceded two of three elements of aiding-and-abetting
26 liability—namely, that the defendant knew of the breach and participated in it.  *See* Opp. 14 n.14.
   Although Schwab did not address these elements in its briefing, and instead focused only on the
27 most obvious deficiency in Plaintiff's pleading, Schwab has not conceded anything and maintains
   that no element of aiding-and-abetting liability has been effectively pled.
28

## II.     NORTHSTAR'S THIRD-PARTY-BENEFICIARY CLAIMS SHOULD BE DISMISSED

### A.     SLUSA Preempts the Third-Party-Beneficiary Claim

The Court dismissed Plaintiff's earlier complaint as precluded by SLUSA because the "central theme of the SAC and all of Plaintiffs' claims is that defendants made misrepresentations about how investments in the Fund would be managed, that Plaintiffs purchased Fund shares relying on these misrepresentations, and that Plaintiffs were injured when these statements turned out to be false."  Order, Dkt. No. 175, at 9–10.  This is still the central theme of Plaintiff's complaint, and the third-party-beneficiary claim should be finally dismissed.

Plaintiff argues that, because it split its claims into pre-breach and post-breach claims, the pre-breach claims at the very least are not precluded.  *See* Opp. at 23–24.  Plaintiff believes its only allegation related to the pre-breach period is that Defendants "had a fiduciary duty to invest those assets consistent with the Fund's fundamental investment policy to seek to track the Index . . . [and] Defendants breached that duty by causing the Fund to deviate from that fundamental investment objective."  *Id.*  But these claims (fifth and tenth claims for relief) are asserted against the Schwab Advisor (CSIM) only and Plaintiff does not argue in its brief that CSIM had a fiduciary duty to investors as a matter of law.  Further, its claim of duty based on fact is specious, *see supra* Part I.B., so it cannot rely on such a duty as the basis for its claim.  Therefore, Plaintiff's claim can only be based on statements in the Fund's filings, which were all allegedly made in the pre-breach period.  TAC ¶¶ 85, 89, 94.  Moreover, the Court has already held Plaintiff's allegation that Defendants said they would invest assets in a particular way, but then did not, qualified as a SLUSA misrepresentation.  *See* Order, Dkt. No. 175, at 9–10.

Regardless of when the misrepresentations allegedly were made, Plaintiff has not explained why it makes any difference whether Defendants made misrepresentations during the pre- or post-breach periods.  In the SLUSA preemption analysis, the only question is whether the complaint, fairly read, sounds in misrepresentation, and if it does, the complaint is precluded.  *See Proctor v. Vishay Intertech. Inc.*, 584 F.3d 1208, 1222 n.13 (9th Cir. 2009).  Here, the TAC, just like its predecessor, alleges a misrepresentation and is therefore precluded by SLUSA.

**B.     Northstar Was Not a Third-Party Beneficiary of the Advisory Agreement**

To sue on a contract, one who is not expressly designated as a beneficiary must "show[] that he or she is a member of the class for whose *express* benefit the contract was made." *Kaiser Engineers, Inc. v. Grinnell Fire Prot. Sys. Co.*, 173 Cal. App. 3d 1050, 1055 (1985) (emphasis added). If Plaintiff could point to such a provision in the contract, it would be front and center in its brief. But it is nowhere to be found. Instead, Plaintiff argues that because the "Fund's investors are the beneficial owners of the Fund's assets . . . the Fund is a class to which the investors belong." Opp. at 19. First, the Fund is its own legal entity, not a class of beneficiaries. *See Stegall*, 394 F. Supp. 2d at 362 (stating each mutual fund "is a separate corporate entity"). And second, Plaintiff's argument fails entirely to meet the requirement of showing that they are a class for whose express benefit the contract was made.

Plaintiff further argues for an extremely broad formulation of the third-party-beneficiary doctrine based on *Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. Cambridge Integrated Servs. Grp., Inc.*, 171 Cal. App. 4th 35 (2009). *National Union* was a very different case. There, an insurer provided excess workers' compensation insurance to a bank and agreed to reimburse the bank for payments exceeding $250,000 per injury. *See id.* at 40–41. The bank also had an agreement with a claims administrator that administered the workers' compensation claims. *Id.* at 41. Importantly, the bank's agreement with the claims administrator expressly required the claims administrator to notify the bank's excess-insurance carrier of any claim for which notification was required under the excess-insurance policy, which the administrator had in its possession. *Id.* And even when claims exceeded the $250,000 limit, in practice the administrator would continue to handle them on behalf of the excess-insurance carrier. *Id.* The court held that the excess-insurance carrier could enforce the agreement between the administrator and the bank because (1) the administrator's handling of claims directly benefited the excess-insurance carrier because the administrator's duty was to reduce the size of claims; (2) the contract required the administrator to administer all claims, including the ones that were paid for by the excess-insurance carrier; (3) the "contract expressly anticipated that the Bank might have an excess insurance carrier;" and (4) the

1    administrator was required to notify the excess-insurance carrier according to the terms of the

2    excess-insurance policy. *Id.* at 52.

3          In contrast to the agreement in *National Union*, which had express references to the

4    excess-insurance carrier and to the administrator's duty to notify the excess-insurance carrier of

5    claims, the Investment Advisory Agreement here does not expressly mention Fund investors.

6          Plaintiff argues that the benefit to the Fund's investors "flows directly" from the purposes

7    of the Advisory Agreement. *See* Opp. at 21. It believes that because performance of the contract

8    benefits investors, then investors are intended third-party beneficiaries. *See id.* Although the

9    Investment Advisory Agreement provides an incidental benefit to investors, it is "well settled" that

10   the third-party-beneficiary doctrine "excludes enforcement of a contract by persons who are only

11   incidentally or remotely benefitted by it." *Jones v. Aetna Cas. & Surety Co.*, 26 Cal. App. 4th

12   1717, 1724 (1994).

13         Plaintiff's argument leads to absurd outcomes. For example, CSIM presumably has

14   employment contracts with portfolio managers that buy and sell securities for the Fund. This

15   contract benefits investors as a class, but surely no investor would have standing to sue a portfolio

16   manager for breach of the employment agreement. California courts have drawn a bright line,

17   which is that a contract must expressly benefit a party in order for that party to sue as a third-party

18   beneficiary. *See Kaiser Engineers*, 173 Cal. App. 3d at 1055. If the Court were to blur that line

19   by adopting Plaintiff's view, then any party who receives some benefit from a contract between

20   two other parties could sue to enforce its terms. That is not California law.

21         Plaintiff's final argument is based on the Court's statement that a "non-party may be a

22   beneficiary to a contract that does not name the party if that contract discharges a separate

23   contractual duty owed to the non-party." Order, Dkt. No. 175, at 22 (citing *Gilbert Fin. Corp. v.*

24   *Steelform Contracting Co.*, 82 Cal. App. 3d 65, 70 (1978)). There is no such contractual duty

25   between the Fund and the investors, as this Court already has held. *See* Order, Dkt. No. 175, at

26   15–19. Plaintiff also cites *Paulson v. CNF, Inc.*, No. C 03-03960, at 6 (N.D. Cal. Jan. 13, 2010),

27   which held that employees were intended third-party beneficiaries of a contract between their

28   employer and an auditor, who was hired to discharge the employer's duties to the employees under

1    ERISA.  As explained above, the Fund itself has no statutory or fiduciary duties to investors, and

2    Plaintiff has not identified the source of any such duty.  Nor has Plaintiff cited the specific

3    provisions of the Investment Advisory Agreement that would discharge any purported duty.

4              Plaintiff submitted as supplemental authority an order in *Tuttle v. Sky Bell Asset Mgmt.,*

5    *LLC*, No. C-10-3588 (N.D. Cal. June 16, 2011).  There, partners in a limited partnership sued an

6    auditor, claiming they were third-party beneficiaries of the agreement between the auditor and the

7    partnership.  The Order holds that the limited partners have standing to sue because the

8    "engagement letters were made with the specific intent that the audit reports were [to] be

9    distributed to the Limited Partners," and the auditors "understood and agreed that their audit

10   reports would be sent to the Limited Partners."  *Id.* at 1–2.  The agreement in that case "reflect[ed]

11   an understanding" that the auditor had direct duties to the limited partners to share the auditor's

12   work product.  There is no similar understanding alleged here.  This cursory order, which has

13   nothing to do with mutual funds, is not authority for creating entirely new law in the mutual-fund

14   arena.

15             Plaintiff has not cited any case holding that investors in a mutual fund can be third-party

16   beneficiaries of an investment-advisory agreement, and Defendants likewise have been unable to

17   find any.  If the Court adopted Plaintiff's position, it appears that it would be the first to do so.

18   Plaintiff has failed to justify such a dramatic expansion of the third-party-beneficiary doctrine, and

19   Defendants respectfully ask the Court to dismiss this claim.

20   **III.    THE COURT SHOULD STRIKE NORTHSTAR'S DEMAND FOR A JURY TRIAL**

21             In response to Schwab's motion to strike Plaintiff's jury-trial demand, Plaintiff only says

22   that the Court should decide this later.  *See* Opp. at 25 n.26.  Plaintiff offers no other response to

23   Schwab's case law and no reason why the Court cannot decide this issue now.  Accordingly,

24   Plaintiff's request for a jury trial on its equitable breach of fiduciary duty claim should be struck.

25                                        **<u>CONCLUSION</u>**

26             For the reasons set forth herein, Defendants respectfully request that the Third Amended

27   Complaint be dismissed in its entirety, without leave to amend.

28

1   DATED:  June 30, 2011                    QUINN EMANUEL URQUHART &
                                             SULLIVAN, LLP
2

3

4                                            By  /s/ Karin Kramer
                                                Karin Kramer
5

6                                            Richard A. Schirtzer
                                             Patrick C. Doolittle
7                                            Arthur M. Roberts

8
                                             Attorneys for defendants Schwab Investments,
9                                            Charles Schwab Investment Management, Inc.,
                                             Mariann Byerwalter, Donald F. Dorward, William
10                                           A. Hasler, Robert G. Holmes, Gerald B. Smith,
                                             Donald R. Stephens, Michael W. Wilsey, Charles
11                                           R. Schwab, Randall W. Merk, Joseph H. Wender,
                                             and John F. Cogan
12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28