United States District Court
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| NORTHSTAR FINANCIAL ADVISORS, INC., on Behalf of Itself and All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>SCHWAB INVESTMENTS; and MARIANN BYERWALTER, DONALD F. DORWARD, WILLIAM A. HASLER, ROBERT G. HOLMES, GERALD B. SMITH, DONALD R. STEPHENS, MICHAEL W. WILSEY, CHARLES R. SCHWAB, RANDALL W. MERK, JOSEPH H. WENDER and JOHN F. COGAN as TRUSTEES OF SCHWAB INVESTMENTS; and CHARLES SCHWAB INVESTMENT MANAGEMENT, INC.,<br><br>Defendants. | Case No. 08-CV-04119 LHK<br><br>ORDER GRANTING DEFENDANTS' MOTION TO DISMISS |

The Court heard oral argument on defendants' Motion to Dismiss the Third Amended Complaint (Third MTD) in this matter on August 4, 2011. For the reasons set forth below, the Motion is GRANTED.

I.      Introduction and Procedural History

On August 28, 2008, Plaintiff Northstar Financial Advisors, Inc. (Northstar) filed its first complaint in this class action lawsuit on behalf of all persons who owned shares of the Schwab Total Bond Market Fund (the Fund) at any time from August 31, 2007 to the present. Compl.

1

(Dkt. No. 1) ¶ 1. Northstar is a registered investment advisory and financial planning firm serving both institutional and individual clients. *Id.* ¶ 9. Northstar manages both discretionary and nondiscretionary accounts on behalf of investors in its role as an investment advisor. *Id.* Northstar traded through Charles Schwab's Institutional Advisor Platform, and purchased shares in the Fund for its clients. *Id.* ¶¶ 11-12.

Although Northstar has amended its Complaint three times, its core allegations remain the same. Northstar alleges that defendants deviated from the Fund's investment objective to track the Lehman Brothers U.S. Aggregate Bond Index (the Index) in two ways. First, Northstar alleged that the Fund deviated from this objective by investing in high risk non-U.S. agency collateralized mortgage obligations (CMOs) that were not part of the Lehman Index and were substantially more risky than the U.S. agency securities and other instruments that comprised the Index. *Id.* ¶ 3; Third Am. Compl. (TAC) ¶ 5. Second, Northstar alleged that the Fund deviated from its investment objectives which prohibited any concentration of investments greater than 25% in any industry by investing more than 25% of its total assets in U.S. agency and non-agency mortgage-backed securities and CMOs. Compl. ¶ 4; TAC ¶ 6. Northstar alleged that defendants' deviation from the Fund's investment objective exposed the Fund and its shareholders to tens of millions of dollars in losses due to a sustained decline in the value of non-agency mortgage-backed securities. The Funds' deviation from its stated investment objective caused it to incur a negative total return of 4.80% for the period September 1, 2007 through February 27, 2009, compared to a positive return of 7.85% for the Index over that period. TAC ¶ 7.

Based on these allegations, Northstar asserted the following claims: 1) Violation of Section 13(a) of the Investment Company Act of 1940 (ICA); 2) Breach of Fiduciary Duty 3) Breach of Contract and 4) Breach of Covenant of Good Faith and Fair Dealing. Defendants moved to dismiss the first complaint. *See* First MTD (Dkt. No. 33). Judge Illston, to whom this case was previously assigned, granted-in-part and denied-in-part defendants' motion. *See* Feb. 19, 2009 Order (Dkt. No. 74).

Judge Illston found that there was an implied private right of action under Section 13(a) of the ICA, and that Plaintiffs had stated a claim for violation of shareholders' voting rights under

2

this section. Feb. 19, 2009 Order at 7, 9-12. Regarding the asserted state law causes of action, Judge Illston granted Plaintiffs leave to amend their breach of fiduciary duty and breach of contract claims.

On March 2, 2009, Plaintiffs filed a First Amended Complaint (FAC). On March 5, 2009, defendants sought and were granted leave to appeal Judge Illston's Order finding a private right of action under the ICA § 13(a), and a stay of this action pending the appeal. *See* Dkt. No. 108. Thus, the case was stayed from April 27, 2009 through August 13, 2010 while the appeal was pending. In the interim, the case was reassigned, first to Judge Seeborg, and then to the undersigned. *See* Dkt. Nos. 115, 117. On August 13, 2010, the Ninth Circuit reversed Judge Illston's Order, holding that there is no private right of action under Section 13(a). *Northstar Fin. Advisors, Inc. v. Schwab Invs.*, 615 F.3d 1106, 1122 (9th Cir. 2010).

In light of this, Northstar[1] filed a Second Amended Complaint (SAC) removing its Section 13(a) claim on September 28, 2010. The SAC (like the TAC) named Schwab Investments (the Trust), its Trustees[2], and Charles Schwab Investment Management, Inc. (the Investment Advisor) as defendants. According to the SAC, the Trust is an investment trust organized under Massachusetts law, and "consists of a series of mutual funds, including the Fund." SAC ¶ 16. The Trust is managed by the Trustees. SAC ¶ 19. Pursuant to a contractual agreement between the Trust and the Investment Advisor, the Investment Advisor serves as the investment manager for the Fund. SAC ¶ 23, 154. The SAC alleged claims based on breach of fiduciary duty (against all defendants), breach of contract (against the Trust), breach of the covenant of good faith and fair dealing (against the Trust and the Investment Advisor), and a claim for third party beneficiary status to the agreement between the Trust and the Investment Advisor (against the Investment Advisor).

This Court dismissed the SAC on March 2, 2011. The Court found that all of Northstar's claims, as alleged, were precluded by the Securities Litigation Uniform Standards Act of 1998

---

[1] Northstar had standing to assert these claims through an assignment from an individual investor who owned shares of the Fund as of August 31, 2007. *See* March 2, 2011 Order at 5-7.
[2] Mariann Byerwalter, Donald F. Dorward, William A. Hasler, Robert G. Holmes, Gerald B. Smith, Donald R. Stephens, Michael W. Wilsey, Charles R. Schwab, Randall W. Merk, Joseph H. Wender and John F. Cogan

3

Case No.: 08-CV-04119 LHK
ORDER GRANTING MOTION TO DISMISS

United States District Court
For the Northern District of California

(SLUSA), because all the claims alleged misrepresentations or omissions of material fact made in connection with the purchase or sale of the Fund's shares. 15 U.S.C. § 77p. The Court found that "the central theme of the SAC and all of Plaintiffs' claims is that defendants made misrepresentations about how investments in the fund would be managed, that Plaintiffs purchased Fund shares relying on these misrepresentations, and that Plaintiffs were injured when these statements turned out to be false." The one exception was the fiduciary duty claim. Under the Delaware carve-out, this claim was not subject to SLUSA preclusion if brought under the law of the state where the security issuer is organized (here, Massachusetts).

In addition to dismissing based on SLUSA preclusion, the Court found that Northstar had failed to allege a breach of contract claim, despite specific instructions from Judge Illston to "add more specific allegations regarding the language plaintiff relies on to allege the formation of a contract." Feb. 19, 2009 Order at 15. In light of this, Northstar's breach of contract claim and related claim for breach of the covenant of good faith and fair dealing were dismissed with prejudice. Northstar's claim for breach of fiduciary duty was dismissed with leave to amend to address the SLUSA preclusion issue, and to state a non-derivative claim. Northstar's claim for third party beneficiary status was also dismissed with leave to amend to "specify . . . what specific provisions of the Investment Advisor Agreement were allegedly breached, and how." March 2, 2011 Order at 24.

Northstar filed its TAC on March 28, 2011. In the TAC, Northstar identifies two classes of potential plaintiffs. TAC ¶ 65. First, a "Pre-Breach" class, consisting of "all persons or entities who purchased shares of the Fund on or prior to August 31, 2007, and who continued to hold their shares as of August 31, 2007 . . . and were damaged thereafter." *Id*. Second, a "Breach Class," consisting of "all persons or entities who purchased shares of the Fund during the period September 1, 2007 through February 27, 2009 . . . and were damaged thereafter." *Id*. The classes are divided between August 31 and September 1, 2007 because Northstar alleges that "August 31, 2007 is the last day of the fiscal year preceding the one during which the Fund first began deviating from its required fundamental investment policy to seek to track the Lehman Index through the use of an indexing strategy." Northstar alleges that the Fund "reverted back to its

4

Case No.: 08-CV-04119 LHK
ORDER GRANTING MOTION TO DISMISS

required fundamental investment policy" on February 27, 2009 (approximately). TAC ¶ 66. Northstar alleges five causes of action on behalf of each of the two classes, for a total of 10 claims. These are: (1) and (6) breach of fiduciary duty against the Trustees and the Trust; (2) and (7) breach of fiduciary duty against the Investment Advisor; (3) and (8) aiding and abetting breach of fiduciary duty against the Trustees; (4) and (9) aiding and abetting breach of fiduciary duty against the Investment Advisor; (5) and (10) breach of contract as third party beneficiary of the Investment Advisory Agreement against the Investment Advisor.

During oral argument on this Motion, the parties discussed the fact that certain Schwab defendants have entered into a settlement of claims, including Section 13(a) claims, brought by the Securities and Exchange Commission (SEC) based on management of the Fund at issue in this case as well as management of another fund. Northstar and the defendants both agreed that any recovery under the fiduciary duty breach claims asserted in this case would need to be reduced by the amount of recovery obtained by Fund investors through the SEC enforcement action. As Northstar's counsel put it, the fidicuary duty breach claims asserted here are "alter egos" of the Section 13(a) claims enforced by the SEC.

II. Legal Standard

Under Federal Rule of Civil Procedure 12(b)(6), a district court must dismiss a complaint if it fails to state a claim upon which relief can be granted. To survive a motion to dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). This "facial plausibility" standard requires the plaintiff to allege facts that add up to "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). In deciding whether the plaintiff has stated a claim, the Court must assume the plaintiff's allegations are true and draw all reasonable inferences in the plaintiff's favor. *Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987). However, the court is not required to accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008). Leave to amend must be granted unless it is clear that the

5
Case No.: 08-CV-04119 LHK
ORDER GRANTING MOTION TO DISMISS

Case5:08-cv-04119-LHK Document190 Filed08/08/11 Page6 of 18

complaint's deficiencies cannot be cured by amendment. *Lucas v. Dep't. of Corr.*, 66 F.3d 245, 248 (9th Cir. 1995).

III. Application

  a. Breach of Fiduciary Duty

Northstar argues that the Trustees owed fiduciary duties directly to Fund investors as a matter of law, and that the rest of the defendants owed fiduciary duties to the investors as a matter of fact. The Court finds that Northstar has failed to successfully allege a breach of any duty owed directly to Fund investors, and that these claims would have to be asserted derivatively.

The two main cases Northstar relies on for the ability of the Fund investors to sue directly for a breach of fiduciary duty are *Fogelin v. Nordblom*, 402 Mass. 218, 222 (1988), and *In re Great N. Iron Ore Properties,* 263 N.W.2d 610, 620 (Minn. 1978). *Fogelin* involved a Massachusetts Business Trust established in 1957 "for dealing in real estate." *Fogelin,* 402 Mass. at 220. Robert C. Nordblom, one of three trustees, was initially the owner of all 500 shares of common stock of the trust. *Id.* In 1969, Nordblom amended the trust declaration to increase the number of common shares from 500 to 4,000, to create 6,000 preferred shares, and to give both common and preferred shareholders voting rights. *Id.* The 1969 Amendment also stated that no further amendment altering the rights of either class could be made without separate approval of two-thirds of each class. In 1972, the Trustees executed a further amendment which significantly decreased the liquidation value of preferred shares, and significantly increased the majority required for shareholders to make further amendments to the Trust. *Fogelin*, 402 Mass. at 221. In response, the preferred shareholders (who were also all Nordblom's grandchildren) asked the Trustees not to ratify the 1972 Amendment. *Fogelin*, 402 Mass. at 222. The Massachusetts Supreme Court held that the Amendment could not be ratified because, contrary to the 1969 Amendment, it benefited only trustee Nordblom himself, and prejudiced only the preferred shareholder grandchildren. In this context, the Massachusetts Supreme Court held that "[i]t is axiomatic that the BRT trustees stood in a fiduciary relationship to all of the beneficiaries of the trust and, therefore, had a duty not to favor one class of shareholders over another." *Fogelin*, 402 Mass. at 222-23.

Although Northstar focuses exclusively on the first part of the quotation above, it is not clear that *Fogelin* stands for the broad rule Northstar urges—i.e., that trustees of all Massachusetts Business Trusts owe direct fiduciary duties to all beneficiaries of such trusts. As defendants argue, the source of the fiduciary duty in that case could have been based on the fact that the trust was a family trust administering gifts to minors. *See* Reply ISO Third MTD (Third Reply) at 3. Another possible explanation for the court's holding is the unequal treatment of shareholders. As the Ninth Circuit has held, it is proper to find a direct claim for breach of fiduciary duty when a trust beneficiary is injured in a way distinct from other beneficiaries. "A shareholder does not acquire standing to maintain a direct action when the alleged injury is inflicted on the corporation and the only injury to the shareholder is the indirect harm which consists of the diminution in the value of his or her shares." *Lapidus v. Hecht*, 232 F.3d 679, 683 (9th Cir. 2000). The *Fogelin* court's holding appears limited to finding a fiduciary duty on the part of trustees not to favor one class of shareholders over another.

Northstar's other cited case, *Great N. Iron Ore*, is not very helpful.[3] As defendants note, the statement that a Massachusetts business trust "is subject to the underlying equitable and fiduciary duties toward trust beneficiaries imposed by the common law of trusts" was made in dicta. *Great N. Iron Ore Props.,* 263 N.W.2d at 620. The court in *Great N. Iron Ore* did not decide if the trust in question was a Massachusetts business trust or not. *Id.* In addition, as in *Fogelin*, *Great N. Iron Ore* involved alleged unfair treatment of one class of shareholders in comparison to another, and the Minnesota Supreme Court held that the trustees were "under a legal duty to manage the trust 'with equal consideration for the interests of all beneficiaries.'" Thus, as in *Fogelin*, it appears that the holding of *Great N. Iron Ore* is limited to finding a fiduciary duty

---

[3] Northstar also cites *Loring v. United States,* 80 F. Supp. 781, 786 (D. Mass. 1948). However, this case is inapposite. *Loring* held that trustees were not employees of the trust when they acted as trustees, and stated generally that there are differences between trustees of a business trust and corporate directors (who may serve as employees separately from their role as directors). Defendants have cited significant authority analogizing Massachusetts business trusts to corporations, and *Loring* does not undermine this analogy. In fact, *Loring* likened trustees to corporate directors and noted that neither acts as an employee when performing the functions of director or trustee. *See Loring*, 80 F. Supp. at 786. Similarly, Northstar's citation to *Levesque v. Ojala,* No. 2003-4485, 2005 WL 3721859, at *22 (Mass. Super. Ct. Dec. 8, 2005) is inapposite. In that case, the court found a fiduciary relationship between shareholders in a corporation. *Id*.

7
Case No.: 08-CV-04119 LHK
ORDER GRANTING MOTION TO DISMISS

not to favor one class of beneficiaries over another. Again, this is consistent with the Ninth Circuit's finding in *Lapidus* that standing to assert a direct action depends on whether the corporation or the shareholder is injured. For example, it is possible to imagine a trustee action that benefits the trust overall, but disadvantages one class of shareholders in comparison to another. *Fogelin*, *Great N. Iron Ore*, and *Lapidus* suggest that a shareholder claim in these circumstances would be direct.

As defendants point out, with one exception, the only cases cited by either party to consider whether a mutual fund trustee owes fiduciary duties *directly* to mutual fund investors under Massachusetts law have concluded either that no such duty is owed, or that the claim to assert a breach of fiduciary duty must be brought derivatively (because the duty is owed to the mutual fund rather than to individual investors).[4] *In Stegall v. Ladner,* 394 F. Supp. 2d 358 (D. Mass. 2005), the court concluded that a fiduciary duty to maximize the value of trust shares by participating in class action settlements was owed by trustees of a Massachusetts business trust to the trust rather than directly to the trust's beneficiaries. The Court analogized a Massachusetts business trust mutual fund to a corporation:[5]

> In short, the pooling of resources, collective assets, expenses, and management to a great extent restrict the duties owed to individual investors. That defendants do not owe a duty directly to plaintiff in this setting is not the same as saying that no duties to individual investors are owed. In the context of the mutual fund, *at least so far as decisions affecting all shareholders in the same way are concerned*, managers owe a duty to the fund itself. Plaintiff enjoys the benefits of that duty, but does so derivatively. Consequently, he is empowered to enforce that duty, but must do so on behalf of the fund after providing the fund an opportunity to take action on its own behalf.

*Stegall,* 394 F. Supp. 2d at 366 (emphasis added).

---

[4] The exception is *Strigliabotti v. Franklin Resources, Inc.*, No. C 04-00883 SI, 2005 WL 645529 at *7-8 (N.D. Cal. Mar. 7, 2005). However, defendants correctly note that many of the authorities discussed herein have declined to follow *Strigliabotti*. The Court previously distinguished this case and finds the authorities discussed in this Order to be more persuasive authority. *See* March 2, 2011 Order at 20.

[5] Both parties in this case recognize that generally, directors of a corporation owe no fiduciary duties directly to shareholders. *See* Third Opp'n at 5; Third Mot. at 5; *Jernberg v. Mann,* 358 F.3d 131, 135 (1st Cir. 2004) ("a director or officer of a corporation does not occupy a fiduciary relation to individual stockholders") (internal citation omitted). Instead, their fiduciary duties are owed to the corporation itself. This distinction is critical because it determines whether a claim may be brought directly or must be brought derivatively, on behalf of the corporation or trust.

8
Case No.: 08-CV-04119 LHK
ORDER GRANTING MOTION TO DISMISS

Defendants cite another case in which plaintiff mutual fund investors asserted a claim for breach of fiduciary duty based on the fund's trustees "carelessly or negligently fail[ing] to seek compensation from settlement of certain securities class action suits." *Hamilton v. Allen,* 396 F. Supp. 2d 545, 560 (E.D. Pa. 2005). The *Hamilton* court relied on the rule that there is no direct fiduciary relationship between corporate directors and shareholders and concluded that the plaintiffs could not bring a direct claim for the diminution in fund value resulting from the alleged breach of duty. *Id*., 396 F.Supp 2d at 552. Northstar criticizes *Hamilton* for relying on corporations law rather than trusts law, but the court stated that it did so because "there appear to be no cases in which Massachusetts or Ohio courts considered the applicability of these principles to claims filed by investors in mutual funds." *Id*. at 550. Likewise, in *Forsythe v. Sun Life Fin., Inc.,* 417 F. Supp. 2d 100, 112 (D. Mass. 2006)[6], the court found that plaintiffs could not state a direct claim for breach of fiduciary duty by trustees of a Massachusetts business trust. The court held that "[u]nder Massachusetts law, if the wrong underlying claim results in harm to a plaintiff shareholder only because the corporate entity has been injured, with the plaintiff's injury simply being his proportionate share of the entity's injury, the harm to the shareholder is indirect and his cause of action is derivative." *Id*.

Several other district court decisions follow the reasoning of *Hamilton*, *Stegall* and *Forsythe* and conclude that when investors in Massachusetts business trust mutual funds bring fiduciary duty breach claims asserting a harm that affects all investors equally, no direct duty is owed to the investors and the claims are therefore derivative of duties owed to the trust. *See Zucker v. Federated Shareholder Servs. Co.,* No. 06cv241, 2007 U.S. Dist. LEXIS 15186, at *11 (W.D. Penn. Mar. 5, 2007) (relying in part on *Stegall*); *In re Blackrock Mut. Funds Fee Litig.,* No 04 Civ 164, 2006 U.S. Dist. LEXIS 13846 at *29-*30 (W.D. Penn. Mar. 29, 2006) (same); *Everett v. Bozic*, No. 05 Civ. 00296(DAB), No. 2006 U.S. Dist. LEXIS 55824, at *15 (S.D.N.Y. Aug. 3, 2006) (dismissing fiduciary duty claims predicated on diminution of value in a mutual fund as derivative without deciding "whether such a direct [fiduciary] duty exists or not").

---

[6] Superseded on other grounds by statute as noted in *Ark. Teacher Ret. Sys. v. Alsop,* No. 06-11459-RCL, 2007 U.S. Dist. LEXIS 99152, at *29 n.16 (D. Mass. Aug. 29, 2007)

9
Case No.: 08-CV-04119 LHK
ORDER GRANTING MOTION TO DISMISS

1     Northstar has failed to cite a single case finding a direct claim for breach of fiduciary duty
2 against mutual fund trustees by trust beneficiaries.[7] In support of its argument that its claims are
3 direct, Northstar argues that it is error to focus on the fact that it seeks the diminution in trust share
4 values as its damages. Northstar cites a District of Massachusetts case noting that "what
5 differentiates a direct from a derivative suit is neither the nature of the damages that result from the
6 defendant's alleged conduct, nor the identity of the party who sustained the brunt of the damages,
7 but rather the source of the claim of right itself. If the right flows from the breach of a duty owed
8 by the defendants to the corporation, the harm to the investor flows through the corporation, and a
9 suit brought by the shareholder to redress the harm is one 'derivative' of the right retained by the
10 corporation." *Branch v. Ernst & Young U.S.,* No. Civ. A. 93-10024-RGS, 1995 WL 791941 (D.
11 Mass. Dec. 22, 1995). *Branch* involved a bank investor's claims that he had invested based on
12 misrepresentations made by third party Ernst & Young. *Branch*, 1995 WL 791941 at *3.
13 Defendant Ernst & Young argued that the investor's claims were derivative of the bank's. In
14 rejecting this, the court held that because the bank had benefited from the alleged
15 misrepresentations, it had sustained no injury by them, and therefore could not have pursued
16 Branch's claims. *Branch*, 1995 WL 791941 at * 6. Thus, the claims were not derivative. In
17 distinguishing derivative claims, the court noted that "the challenged claims in this case are not
18 premised upon an allegation that Ernst & Young's misfeasance caused a decline in the subsidiary
19 banks' value." Thus, *Branch* is consistent with the holdings of the many authorities cited above
20 (including several more-recent District of Massachusetts decisions) finding that "[u]nder
21 Massachusetts law, if the wrong underlying claim results in harm to a plaintiff shareholder only
22 because the corporate entity has been injured, with the plaintiff's injury simply being his
23 proportionate share of the entity's injury, the harm to the shareholder is indirect and his cause of
24 action is derivative." *Forsythe*, 412 F. Supp. 2d at 112.

---

[7] Although the court in *Strigliabotti v. Franklin Resources, Inc.*, No. C 04-00883 SI, 2005 WL 645529 at *7-8 (N.D. Cal. Mar. 7, 2005), found a direct claim for breach of fiduciary duty by mutual fund shareholders against trustees, Northstar does not cite *Strigliabotti* for this proposition in the Third Opposition.

10
Case No.: 08-CV-04119 LHK
ORDER GRANTING MOTION TO DISMISS

1    Although Northstar alleges that the putative class was harmed through a change of the Fund's fundamental investment objective without the required shareholder vote, the Court finds that this does not convert the claims to direct claims, despite the Ninth Circuit's holding in *Lapidus* that a claim for violation of contractual shareholder voting rights "satisf[ies] the injury requirement for a direct action under Massachusetts law" and confers standing to pursue individual claims. *Lapidus*, 232 F.3d at 683. The Ninth Circuit's holding was based on the requirement that "a plaintiff must allege an injury distinct from that suffered by shareholders generally *or* a wrong involving one of his or her contractual rights as a shareholder, such as the right to vote. *Id.* (emphasis added). Here, the Court previously found that Northstar has failed to plead a contract between the Trust and its beneficiaries, so there are no contractual rights to assert.[8]

Northstar's other arguments as to why the fiduciary duty breach claims cannot be derivative are without merit. Northstar argues that its fiduciary duty breach claims must not be derivative because each shareholder was injured to a different degree depending on the number of shares purchased and their buy and sell dates. This argument is inconsistent with the holdings of all the cases cited herein finding no direct claim for damages affecting all shareholders by decreasing share values, including the holding in *Lapidus*. Northstar also argues that because a trust itself holds no property, the Trust could not have sustained any injury as a result of the alleged mismanagement. But, as defendants point out, the courts in both *Hamilton* and *Forsythe* explicitly found that diminution-of-value injuries were directly felt by the trusts at issue in those cases. *See Hamilton,* 396 F. Supp. 2d at 552; *Forsythe,* 417 F. Supp. 2d at 112. Indeed, this holding is implicit in all the cited decisions finding that claims against mutual fund trustees are derivative. Finally, Northstar argues that it would be inequitable to allow the defendants to benefit from their own wrongs. While this is true, it does not mean that there cannot be a derivative claim on behalf

---

[8] Northstar cites to this Court's holding in a related case for the proposition that a voting rights violation based on Section 13(a) can serve as the predicate for a claim of violation of California's Unfair Competition Law (UCL). *Smit v. Charles Schwab & Co.,* No. 10-CV-03971-LHK, 2011 U.S. Dist. LEXIS 25589 at *7-*8 (N.D. Cal. Mar. 8, 2011). The Court's conclusion rested, in part, on the expansive interpretation of what may serve as a predicate unlawful act for a UCL claim adopted by California courts. *Id*. at * 6. Northstar has failed to cite any authority suggesting that an equally broad reading should be given to fiduciary duty breach claims under Massachusetts law; on the contrary, *Lapidus* suggests that only *contractual* voting rights would give rise to a direct claim.

11
Case No.: 08-CV-04119 LHK
ORDER GRANTING MOTION TO DISMISS

1    of the Trust.  Any recovery would go to the Trust and therefore, ultimately, to the beneficiaries of
2    the Trust.
3           Northstar claims that the defendants breached their fiduciary duty by failing to follow the
4    Fund's fundamental investment objectives, and to comply with the 25% concentration policy, and
5    caused the Fund to fail to track the Index as a result.  Because the complained-of acts allegedly
6    caused the Fund's shares to diminish in value equally for all shareholders, the Court finds that
7    Northstar's fiduciary duty claim must be asserted derivatively.  In light of *Lapidus*, which holds
8    that diminution-in-value claims alleged by mutual fund shareholders are derivative under
9    Massachusetts law, the Court finds that Northstar's fiduciary duty claims against the defendants are
10   derivative.
11          At the hearing on this Motion, Northstar first argued that it would not have standing to
12   bring a derivative claim, and then argued that if the fiduciary duty breach claims were found to be
13   derivative, it could amend its complaint to assert demand futility.  However, Northstar's fiduciary
14   duty breach claim is brought under Massachusetts law.  As of July 1, 2004, Massachusetts law
15   requires that a written demand be made before a derivative suit may be brought.  Mass. Gen. Laws
16   ch. 156D, § 7.42.  There are no exceptions (such as futility of demand) to this requirement.  *See*
17   *ING Principal Prot. Funds Derivative Litig.,* 369 F. Supp. 2d 163, 170 (D. Mass. 2005) (dismissing
18   derivative claims against a mutual fund organized as a Massachusetts business trust based on the
19   fact that plaintiffs had failed to make a demand).  Because Northstar admittedly did not meet the
20   demand requirements of Massachusetts law before bringing suit, these claims cannot be saved by
21   amendment.  Therefore, these claims are DISMISSED with prejudice.  In light of this finding, the
22   Court does not address the other arguments raised by the parties regarding Plaintiff's claims for
23   breach of fiduciary duty, including whether claims against the Trustees were timely and whether
24   Northstar successfully pled a fiduciary duty arising as a matter of fact.
25          b.   Aiding and Abetting Breach of Fiduciary Duty
26          In addition to its breach of fiduciary duty claims, Northstar has asserted several claims for
27   aiding and abetting in the asserted breaches of fiduciary duty.  *See* 4AC Claims 3, 4, 8 and 9.  In
28   order to state a claim for aiding and abetting in the breach of fiduciary duty, a plaintiff must allege

12
Case No.: 08-CV-04119 LHK
ORDER GRANTING MOTION TO DISMISS

1   an underlying breach of fiduciary duty. *Arcidi v. Nat'l Ass'n of Gov't Emps., Inc.,* 856 N.E.2d 167,
2   174 (Mass. 2006). Because the Court has concluded that Northstar's fiduciary duty claims are
3   derivative claims, the aiding and abetting claims must also be brought derivatively. Therefore, the
4   Court DISMISSES Northstar's aiding and abetting breach of fiduciary duty claims with prejudice.

5             c. Third Party Beneficiary Status

6       Northstar's fifth and tenth claims are for breach of the Investment Advisor Agreement
7   (IAA)[9] between the Investment Advisor and the Trust. Northstar claims that Fund investors were
8   third party beneficiaries to this agreement. In support of this claim, Northstar alleges that the
9   Investment Advisor was required to "manage the Fund consistent with the Fund's fundamental
10  investment objectives and policies." TAC ¶¶ 156, 210. Northstar identifies several provisions of
11  the IAA in its TAC, noting that the Investment Advisor was required to "supervise or perform . . .
12  all aspects of the operations of the Schwab Funds;" to "provide general economic and financial
13  analysis and advice to the [Fund];" to provide a "continuous investment program for the Schwab
14  Funds, including investment research and management as to all securities and investments and cash
15  equivalents in the [Fund];" to "determine from time to time what securities and other investments
16  will be purchased, retained or sold" by the Fund; to "assist in all aspects of the operations of the
17  [Fund];" to "comply with all applicable Rules and Regulations of the SEC;" and to "comply with
18  the provisions of the [ICA] of 1940 in buying or selling portfolio securities." TAC ¶¶ 159, 211.
19  Northstar asserts that the Investment Advisor breached the IAA by "failing to invest the Fund's
20  assets consistent with the Fund's fundamental investment policy to 'seek to track' the Index
21  'through the use of an indexing strategy'" and by "'concentrating' more than 25% of the Fund's
22  total assets in 'investments in a particular industry or group.'" TAC ¶¶ 165; 217. The internal
23  quotations come not from the IAA itself but from Proxy statements distributed to shareholders.

24      As the Court previously noted, under California law, a contract must be clear in its *intention*
25  to benefit a third party in order for that party to establish beneficiary status. *Id.*; Cal. Civil Code §
26  1559 ("a contract, made expressly for the benefit of a third person, may be enforced by him at any
27  time before the parties thereto rescind it."). "[T]he third person need not be named or identified

---

[9] The Court previously took judicial notice of the IAA. *See* March 2, 2011 Order at 21.

13
Case No.: 08-CV-04119 LHK
ORDER GRANTING MOTION TO DISMISS

1  individually to be an express beneficiary." *Kaiser Eng'rs v. Grinnell Fire Prot. Sys. Co.,* 173 Cal.
2  App. 3d 1050, 1055 (1985) (internal citations omitted). "By judicial construction, the term
3  'expressly' in Civil Code section 1559 has come to mean merely the negative of 'incidentally.' In
4  other words, Civil Code section 1559 excludes enforcement of a contract by persons who are only
5  incidentally or remotely benefited by it . . . [a] third party may enforce a contract if it can be shown
6  that he or she is a member of the class for whose express benefit the contract was made." *Id*.
7  (internal citations omitted).

8  The IAA does not expressly mention Fund investors, but it does mention the Fund.
9  Northstar argues that because investors are the beneficial owners of the Fund, the Fund is a "class
10 for whose express benefit the contract was made." However, the Fund and the investors are legally
11 separate, and Northstar has cited no authority holding that they should be considered indistinct for
12 these purposes. Therefore, the Court must determine if Northstar has successfully stated a claim
13 that investors should be entitled to enforce the IAA even though they are not expressly mentioned
14 in it (neither specifically, nor as members of a class).

15 Northstar cites a recent California appellate decision finding that an excess insurance
16 provider was a third-party beneficiary to a contract between an employer and a claims
17 administrator. *Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. Cambridge Integrated Servs. Grp.,*
18 *Inc.,* 171 Cal. App. 4th 35, 51 (2009). The excess insurance provider (National Union) insured
19 workers' compensation claims over $250,000. *Id.* The Cambridge contract provided that the
20 claims administrator, Cambridge, must notify any excess insurer of certain claims, as specified by
21 the excess insurance policy. *Id*. In addition, any claim covered by National Union would continue
22 to be administered by Cambridge. *Id*. The court concluded that National Union was a third party
23 beneficiary to the Cambridge contract for two "interrelated" reasons. First, if Cambridge
24 performed its duties as required and limited worker's compensation claims, this would directly
25 benefit National Union by reducing what it must pay out in excess insurance. *Id*. Second,
26 Cambridge was obligated to perform claims administration directly for National Union if the
27 claims exceeded $250,000. *Id*. Northstar relies on the court's statement that the benefit to
28 National Union was not incidental because it "flow[ed] directly from one of the purposes of the

14
Case No.: 08-CV-04119 LHK
ORDER GRANTING MOTION TO DISMISS

1  contracting parties, which was to limit the Bank's liability for workers' compensation claims," and
2  argues that likewise, the benefit to investors under the IAA was not incidental because the value of
3  the Fund's shares would directly rise or fall depending on the investment decisions made by the
4  Investment Advisor.

5  Northstar also cites *Escalante v. Minn. Life Ins. Co.,* No. 09cv1843-L(BLM), 2010 U.S.
6  Dist. LEXIS 127463, at *6 (S. D. Cal. Dec. 2, 2010). In this case, the plaintiff had entered into a
7  life insurance contract. *Id*. Under a contract between the plaintiff's mortgage lender and the life
8  insurer, plaintiff could make payments on the life insurance policy together with her mortgage
9  payments, and the lender would forward the life insurance premiums to the insurer. *Id*. Plaintiff
10 alleged that coverage under the life insurance policy was denied because the lender failed to
11 forward payments to the insurer. *Id*. Although the court provided limited analysis of the
12 agreement between the lender and the insurer, it appears that plaintiff was mentioned as a class of
13 persons intended to benefit from the agreement (that is, insureds who pay premiums to their
14 mortgage lenders). *Id*. The court concluded that the agreement directly benefited the plaintiff,
15 because the agreement made it much more convenient for the plaintiff to make payments, and this
16 benefit was not incidental because it was a necessary consequence of the agreement. *Id*.
17 Therefore, the plaintiff adequately pled a claim for third-party beneficiary status to the agreement.

18 Finally, Plaintiffs submitted supplemental authority finding that partners were third-party
19 beneficiaries to an agreement between the partnership and an auditor. *Tuttle v. Sky Bell Asset*
20 *Mgmt., LLC,* No. C-10-3588 (N.D. Cal. June 16, 2011). This result was based on the agreements
21 themselves and on allegations that that "[t]he engagement letters reflect an understanding and
22 agreement that the audit reports would be sent to the Limited Partners. The Auditors Defendants
23 understood and agreed that their audit reports would be sent to the Limited Partners." *Id*. at 2.

24 The agreements in Northstar's cited cases are distinguishable from the IAA on several
25 grounds. First, at least regarding the agreement in *National Union*, it is clear that the agreement
26 expressly mentioned an excess insurer. Although National Union itself was not named in the
27 agreement, the agreement named a class of persons (excess insurers) to which National Union
28 belonged. Likewise, although the opinion is somewhat unclear, it appears that the plaintiff in

15
Case No.: 08-CV-04119 LHK
ORDER GRANTING MOTION TO DISMISS

*Escalante* was a member of a class (insured mortgagors) mentioned specifically in the relevant contract. And in *Tuttle*, the court concluded that the agreements "reflected the understanding" that audit reports would be sent to partners. Second, all of the agreements in question benefitted the plaintiff third parties directly. Cambridge's claims administration would reduce National Union's exposure to claims, and National Union received claims administration directly from Cambridge once claims exceeded $250,000; Escalante was able to pay her mortgage and insurance premium in one convenient step; and the partners in *Tuttle* received copies of the auditors' reports.

As summarized in the Court's March 2, 2011 Order, if a contract does not clearly evince the intent to benefit a third party, that party is not a beneficiary of the contract. It is not enough for a plaintiff to identify a benefit he will receive if the contract is performed; the plaintiff must show that the contracting parties intended that he, specifically, receive this benefit. For example, in *Jones v. Aetna Cas. and Sur. Co.,* 26 Cal. App. 4th 1717, 1722 (1994), the plaintiff leased property for his restaurant. The lease agreement required the lessor to obtain rental income insurance coverage for damage to the property, to be paid by the lessee. In the case of damage, the lease stated that plaintiff's rent would be reduced by the amount of any insurance recovery. *Jones,* 26 Cal. App. 4th at 1721. Despite the fact that the plaintiff would benefit in case of an insurance payout, the court found that plaintiff was not a third-party beneficiary to the insurance agreement between the lessor and the insurer. The insurance agreement itself did not mention the plaintiff, and did not demonstrate that the lessee and the insurer intended to benefit the plaintiff by entering it. *Id*. at 1725.

Northstar asks the Court to expand the third-party beneficiary concept beyond the outlines set forth by the California appellate courts, described above. None of Northstar's cited authority allowed third parties to enforce contracts that did not mention the third party at all (either expressly, or by naming a class of persons to whom the third party belonged)[10]. Although the

---

[10] At the hearing on this Motion, when asked if it had any authority allowing a party to enforce a contract as a third-party beneficiary even though it was not named explicitly or as a member of a class of beneficiaries, Northstar cited *Johnson v. Holmes Tuttle Lincoln-Mercury Inc.,* 160 Cal. App. 2d 290, 301 (1958). However, in *Johnson*, the court approved the jury's conclusion that an oral contract to provide public liability insurance for an automobile was undertaken for the benefit of the public, and that the plaintiff accident victims were members of the class (the public)

16
Case No.: 08-CV-04119 LHK
ORDER GRANTING MOTION TO DISMISS

*National Union* court states that "the third party need not be identified as a beneficiary, or even named, in the contract," in order to enforce it, the facts of that case show that National Union, as a member of the class of excess insurers, *was* named in the contract. *National Union* cited *Prouty v. Gores Tech. Grp.,* 121 Cal. App. 4th 1225 (2004) in support of that statement, but in *Prouty*, the third-party beneficiaries were also named as a class in the provision of the contract they were entitled to enforce. *See Prouty*, 121 Cal. App. 4th at 1233. Both *National Union* and *Prouty* explain that "[t]he fact that [the third party] is incidentally named in the contract, or that the contract, if carried out according to its terms, would inure to his benefit, is not sufficient to entitle him to demand its fulfillment. It must appear to have been the intention of *the parties* to secure to him personally the benefit of its provisions." *Id*.; *Nat'l Union* at 51.

It is undisputed that the IAA does not explicitly mention the Fund investors, and the Court finds that its references to the Fund do not equate to referencing a class of beneficiaries to which the Fund investors belong. Based on the language of the IAA itself, the Fund's intention in entering the agreement was to "retain the Investment Adviser to furnish investment advisory, administrative, and certain accounting and record-keeping services to the investment portfolios of the Trust [including the Fund at issue here]." *See* IAA (Dkt. No. 152, Ex. D). Although, as the Court previously noted, the Fund's share values (and therefore the Fund investor's investment values) would change depending on the Investment Advisor's actions, the benefit to Fund investors was incidental to the purposes of the IAA. As Northstar argues, a finding that investors enjoy third-party beneficiary status to enforce this contract would mean that investors could enforce any third-party contracts if the execution of such contracts affected the value of the Fund. This rule would be overbroad, likely encompassing employment agreements between the Investment Advisor and its employees. The Court previously ordered Northstar to amend its third party beneficiary claims, and deferred ruling on the question of whether Fund investors could claim third party beneficiary status based on the IAA. In light of the parties' additional briefing on this issue,

---

intended to benefit from this contract. *Id*. Therefore, *Johnson* does not support the finding Northstar urges.

17

Case No.: 08-CV-04119 LHK
ORDER GRANTING MOTION TO DISMISS

the Court concludes that Fund investors are not third party beneficiaries to the IAA.  Accordingly, these claims are hereby DISMISSED with prejudice.

### IV. Conclusions

For the reasons set forth above, Northstar's claims are DISMISSED with prejudice.  The Clerk shall close the file.

**IT IS SO ORDERED.**

Dated: August 8, 2011

_____
LUCY H. KOH
United States District Judge