Matthew L. Larrabee, Esq. (SBN 97147)
matthew.larrabee@dechert.com
Joshua D. N. Hess, Esq. (SBN 244115)
joshua.hess@dechert.com
DECHERT LLP
One Bush Street, Suite 1600
San Francisco, CA 94104
Telephone: (415) 262-4500
Facsimile: (415) 262-4555

Attorneys for Defendants

[Additional Counsel On Signature Page]

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| NORTHSTAR FINANCIAL ADVISORS, INC., on behalf of itself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>SCHWAB INVESTMENTS; MARIANN BYERWALER, DONALD F. DORWARD, WILLIAM A. HASLER, ROBERT G. HOLMES, GERALD B. SMITH, DONALD R. STEPHENS, MICHAEL W. WILSEY, CHARLES R. SCHWAB, RANDALL W. MERK, JOSEPH H. WENDER and JOHN F. COGAN, as Trustees of Schwab Investments; and CHARLES SCHWAB INVESTMENT MANAGEMENT, INC.,<br><br>Defendants. | Case No.  08-cv-04119-LHK<br><br>CLASS ACTION<br><br>**DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS FOURTH AMENDED COMPLAINT**<br><br>Date:          October 1, 2015<br>Time:          1:30 P.M.<br>Courtroom:  8, 4th Floor, San Jose<br>Judge:         Hon. Lucy H. Koh |

**NOTICE OF MOTION AND MOTION TO DISMISS FOURTH AMENDED COMPLAINT**

TO NORTHSTAR FINANCIAL ADVISORS, INC. AND ITS COUNSEL OF RECORD: PLEASE TAKE NOTICE THAT, on October 1, 2015, at 1:30 PM or as soon thereafter as the matter may be heard, in Courtroom 8, Fourth Floor, Defendants Schwab Investments, Charles Schwab Investment Management, Inc., Mariann Byerwaler, Donald F. Dorward, William A. Hasler, Robert G. Holmes, Gerald B. Smith, Donald R. Stephens, Michael W. Wilsey, Charles R. Schwab, Randall W. Merk, Joseph H. Wender and John F. Cogan will, and hereby do, move for dismissal of the complaint in this action pursuant to Rule 12 of the Federal Rules of Civil Procedure and Civil Local Rule 7-2.

This motion is based on this notice of motion, the memorandum set forth below, the accompanying declaration of Joshua D. N. Hess, the accompanying request for judicial notice, the reply memorandum, the pleadings and papers on file in this action, and such other written or oral argument as may be presented before the motion is taken under submission by the Court.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# STATEMENT OF ISSUES

(Civil Local Rule 7-4)

1.     Whether any or all of Plaintiff's claims are precluded by the Securities Litigation Uniform Standards Act (SLUSA) because they are brought on behalf of more than 50 people, are based on state law, and allege misrepresentations or omissions of a material fact in connection with the purchase or sale of a covered security.

2.     Whether Plaintiff's claims for breach of fiduciary duty (Counts 1, 2, 8, and 9) or aiding and abetting a breach of fiduciary duty (Counts 3, 4, 10, and 11) are exempt from SLUSA preclusion under the so-called "Delaware carve-out" even though they do not meet the statutory definition of "permissible actions" that are subject to the Delaware carve-out.

3.     Whether Plaintiff can invoke the "Delaware carve-out" to shield its claims for breach of fiduciary duty against Charles Schwab Investment Management, Inc. (Counts 2 and 9), when those claims, brought by a New Jersey plaintiff against a California defendant, cannot properly be asserted under Massachusetts law.

4.     Whether Plaintiff's breach of fiduciary duty claims against the Trustees (Counts 1 and 8) are barred by the statute of limitations because they were first asserted more than three years after the facts were publicly disclosed and Plaintiff acquired actual knowledge of the alleged injury.

5.     Whether Plaintiff's breach of fiduciary duty claims against Schwab Investments (Counts 1 and 8) and/or Charles Schwab Investment Management, Inc. (Counts 1 and 8) fail because neither Defendant owed a fiduciary duty to the shareholders.

6.     Whether Plaintiff's breach of fiduciary duty claims against any or all Defendants (Counts 1, 2, 8, and 9) fail because Plaintiff has not adequately pleaded any breach.

7.     Whether Plaintiff's claims against the Trustees are barred by the limitation of liability clause in the Declaration of Trust.

8.     Whether Plaintiff's aiding and abetting claims (Counts 3, 4, 10, and 11) fail because Plaintiff has not adequately pleaded any underlying breach of fiduciary duty, actual knowledge of such a breach, or active participation in such a breach.

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................................. 1

BACKGROUND ................................................................................................................... 2

PROCEDURAL HISTORY .................................................................................................. 6

LEGAL ARGUMENT .......................................................................................................... 8

I.    All Of Plaintiff's Claims Are Barred By SLUSA .................................................. 8

     A.    Plaintiff's Claims Are Based On Allegations They Either Purchased Or Retained Shares In Reliance On Misrepresentations Of The Fund. .......................................................................................................... 9

     B.    The Misrepresentations Alleged In The 4AC Were Allegedly Made "In Connection With" The Sale Of A Covered Security. ........................ 13

     C.    Plaintiff's Claims Are Not Saved By The "Delaware Carve-Out." .......... 14

         1.    The Delaware Carve-Out Does Not Apply To The Breach Of Contract, Breach Of Covenant, And Third-Party Beneficiary Claims Against All Parties Because They Are Not Asserted Under The Laws Of Massachusetts ........................ 14

         2.    The Delaware Carve-Out Also Does Not Apply To The Breach Of Fiduciary Duty Claims Asserted Against The Advisor Because They Are Not Properly Asserted Under Massachusetts Law .......................................................................... 15

         3.    The Delaware Carve-Out Does Not Apply To Any Claim Because This Case Is Not A "Permissible Action," Even If Brought Under Massachusetts Law. ............................................. 16

II.   Plaintiff's Breach Of Fiduciary Duty Claims Against All Defendants Fail Because Plaintiff Has Not Alleged Any Breach .................................................. 19

III.  Plaintiff's Breach Of Fiduciary Duty Claims Against The Trust And The Advisor Fail Because Plaintiff Has Not Established The Trust Or Advisor Owed Any Duty  To The Shareholders ............................................................. 20

IV.   Plaintiff's Breach Of Fiduciary Duty Claims Against The Trustee Defendants Are Barred By The Statute Of Limitations ....................................... 22

V.    The Trustees Are Protected By A Limitation Of Liability Clause ........................ 24

VI.   Plaintiff's Aiding And Abetting Claims Are Not Adequately Pleaded ............... 25

CONCLUSION ..................................................................................................................... 25

1

2

## <u>TABLE OF AUTHORITIES</u>

3

**CASES**

4

*Arcidi v. Nat'l Ass'n of Gov't Emps., Inc.,*
   856 N.E.2d 167 (Mass. 2006) ............................................................................................. 25

5

6

*Blake v. Smith,*
   22 Mass. L. Rptr. 173 (Mass. Super. Ct. 2006)................................................................... 25

7

*Chokel v. Genzyme Corp.,*
   449 Mass. 272 (2007)........................................................................................................... 22

8

9

*City of Atascadero v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,*
   68 Cal. App. 4th 445 (1998)................................................................................................. 20

10

*Copic Ins. Co. v. Wells Fargo Bank, N.A.,*
   2010 WL 3059160 (D. Colo. Aug. 2, 2010) ....................................................................... 20

11

12

*Crimi v. Barnholt,*
   2008 WL 4287566 (N.D. Cal. Sept. 17, 2008) ............................................................. 18, 19

13

14

*CRS Recovery, Inc. v. Laxton,*
   600 F.3d 1138 (9th Cir. 2010).......................................................................................15, 16

15

16

*Demoulas v. Demoulas Super Mkts, Inc.,*
   424 Mass. 501 (1997)........................................................................................................... 23

17

*Doe v. Harbor Sch., Inc.,*
   843 N.E. 2d 1058 (Mass. 2006) ........................................................................................... 22

18

19

*Faulkner v. ADT Sec. Servs., Inc.,*
   706 F.3d 1017 (9th Cir. 2013).............................................................................................. 25

20

*Fernandes v. Havkin,*
   731 F. Supp. 2d 103 (D. Mass. 2010) .................................................................................. 21

21

22

*Fisher v. Kansas,*
   487 F. Supp. 2d 270 (E.D.N.Y. 2007) ................................................................................. 18

23

24

*Freeman Invs., L.P. v. Pac. Life Ins. Co.,*
   704 F.3d 1110 (9th Cir. 2013)................................................................................................ 9

25

*Garabedian v. Schomer,*
   622 N.E.3d 177 (2014)......................................................................................................... 24

26

27

*Grimmway Enters., Inc. v. PIC Fresh Global, Inc.,*
   548 F. Supp. 2d 840 (E.D. Cal. 2008).................................................................................. 20

28

*Hamilton v. Allen,*
    396 F. Supp. 2d 545 (E.D. Pa. 2005) ...................................................................... 22

*Huang v. Reyes*
    2008 WL 648519 (N.D. Cal. Mar. 6, 2008) ........................................................... 19

*In re Charles Schwab Corp. Sec. Litig.,*
    2009 WL 1371409 (N.D. Cal. May 15, 2009) ....................................................... 19

*In re Hilson,*
    863 N.E. 2d 483 (Mass. 2007) ............................................................................... 22

*In re Keyspan Corp. Sec. Litig.,*
    383 F. Supp. 2d 358 (E.D.N.Y. 2003) ................................................................... 24

*Langer Juice Co. v. Stonhard,*
    2014 WL 346643 (C.D. Cal. Jan. 30, 2014) .......................................................... 25

*Lattuca v. Robsham,*
    442 Mass. 205 (2004) ............................................................................................. 23

*Madden v. Cowen & Co.,*
    576 F.3d 957 (9th Cir. 2009) ............................................................................ 14, 15

*Massey v. Helman,*
    196 F.3d 727 (7th Cir. 1999) .................................................................................. 17

*Mattel, Inc. v. MGA Entm't, Inc.,*
    782 F. Supp. 2d 911 (C.D. Cal. 2011) ................................................................... 17

*Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Dabit,*
    547 U.S. 71 (2006) ................................................................................................. 13

*Nedlloyd Lines B.V. v. Superior Court,*
    3 Cal. 4th 459 (1992) ............................................................................................. 16

*Northstar Fin. Advis., Inc. v. Schwab Invs.,*
    615 F.3d 1106 (9th Cir. 2010) ............................................................................... 19

*Northstar Fin. Advisor, Inc. v. Schwab Invs.,*
    781 F. Supp. 2d 926 (N.D. Cal. 2011) ("*Northstar I*") .................................... passim

*Northstar Fin. Advisors, Inc. v. Schwab Invs.,*
    807 F. Supp. 2d 871 (N.D. Cal. 2011) ("*Northstar II*") ............................... 7, 11, 21

*Northstar Fin. Advisors, Inc. v. Schwab Invs.,*
    779 F.3d 1036 (9th Cir. 2015) ("*Northstar III*") ............................................. 8, 21

*O'Brien v. Pearson,*
    449 Mass. 377 (2007) ............................................................................................. 19

[08-cv-04119] DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS
FOURTH AMENDED COMPLAINT    -iii-

*Petersen v. Sec. Settlement Corp.*,
226 Cal. App. 3d 1445 (Cal. App. 1991) ................................................................. 21

*Petrell v. Rakoczy*,
2005 WL 1683600 (Mass. July 11, 2005) ................................................................ 21

*SEC v. Charles Schwab Investment Management*,
Case No. CV-11-0136 WHA (N.D.Cal.) ................................................................. 12

*Spinner v. Nutt*,
417 Mass. 549 (1994) ............................................................................................... 26

*Swinden v. Vanguard Grp., Inc.*,
2009 WL 3415376 (N.D. Cal Oct. 21, 2009) .......................................................... 21

*Terra Ins. Co. v. N.Y. Inc. Mgmt. LLC*,
717 F. Supp. 2d 883 (N.D. Cal. 2010) ..................................................................... 20

*Topham v. State Street Corp.*,
957 N.E. 731 (Mas. App. 2011) ............................................................................... 24

*Tuttle v. Sky Bell Asset Mgmt., LLC*,
2010 WL 4807093 (N.D. Cal. Nov. 19, 2010) .......................................................... 9

*U.S. v. Ritchie*,
342 F. 3d 903 (9th Cir. 2003) .................................................................................... 2

**STATUTES**

15 U.S.C. § 77p(d) .................................................................................................... 14

15 U.S.C. § 77p(d)(1)(A) .......................................................................................... 14

15 U.S.C. § 77p(d)(1)(B) ..................................................................................... 14, 17

15 U.S.C. § 80a-13(a) ............................................................................................... 19

Investment Company Act of 1940 .............................................................................. 3

Mass. Gen. Laws ch. 260, § 2A .............................................................................. 23

1

**INTRODUCTION**

2      Like its four predecessors, Plaintiff's Fourth Amended Complaint ("4AC"), ECF No. 214,

3   fails to state a claim against any of the Defendants.  All five of Plaintiff's complaints have been

4   attempts to plead state-law causes of action against the Defendants involving the same two

5   purported misrepresentations, which allegedly induced prospective and current shareholders to

6   buy and/or continue to hold shares in the Total Bond Market Fund (the "Fund").  Specifically, all

7   five complaints allege that the Fund's 1997 Proxy and every subsequent prospectus issued

8   between 1998 and 2009 falsely represented to shareholders that the Fund (1) would track the

9   Lehman Brothers U.S. Aggregate Bond Index and (2) would not invest more than 25% of its

10   assets in collateralized mortgage obligations.  Although, as this Court has observed, this theory

11   presents a classic securities misrepresentation claim, neither the Plaintiff nor any other Fund

12   shareholder has *ever* pursued a federal securities claim under either the 1933 or 1934 Act, no

13   doubt in large part because shareholders would recover little or no damages under those statutes.

14   Indeed, Henry Holz, whose claim Plaintiff purports to assert, actually profited on his brief

15   investment in the Fund.

16      In a stroke of creativity spawned by necessity, Plaintiff has eschewed the traditional

17   federal securities laws and instead has premised its entire case on state law.  However, as this

18   Court has previously recognized (and the Ninth Circuit left conspicuously undisturbed), all of

19   these claims are precluded by the Securities Litigation Uniform Standards Act ("SLUSA").

20   Although Plaintiff has attempted to avoid SLUSA preclusion by deleting overt references to

21   "misrepresentations," such wordsmithing cannot change what this Court has noted was and

22   continues to be the "central theme" of Plaintiff's claims:  "[D]efendants made misrepresentations

23   about how investments in the Fund would be managed, that Plaintiffs purchased Fund shares

24   relying on these misrepresentations, and that Plaintiffs were injured when these statements turned

25   out to be false."  *Northstar Fin. Advisor, Inc. v. Schwab Invs.*, 781 F. Supp. 2d 926, 934 (2011)

26   ("*Northstar I*").  Just as clearly, Plaintiff's recent protestations to the contrary notwithstanding,

27   nothing has changed in the law or the public policy regarding SLUSA to suggest this Court

28   should reverse its prior views.  Consequently, the 4AC is precluded entirely by SLUSA.

[08-cv-04119] DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS
FOURTH AMENDED COMPLAINT        -1-

The breach of fiduciary duty claims in the 4AC should also be dismissed in their entirety for additional reasons.  The 4AC should be dismissed as to all Defendants because it fails to allege any breach of duty other than a violation of the Investment Company Act, which cannot, as a matter of law, provide the basis of a breach claim.  In addition, there are separate and independent grounds to dismiss the fiduciary duty claim with respect to certain Defendants:

Schwab Investments/Charles Schwab Investment Management: the fiduciary duty claim in the 4AC must be dismissed because the 4AC does not establish that either of these entities owed a fiduciary duty to Fund shareholders.

Trustee Defendants: The fiduciary breach claims against the Trustee Defendants must be dismissed because they are barred by the statute of limitations and the liability bar in the Fund's Declaration of Trust.

Finally, the 4AC's claims for aiding and abetting fiduciary breach must fail with respect to all Defendants because Plaintiff fails to plead a primary violation and because it alleges none of the other required elements for those claims.[1]

This is the Plaintiff's *fifth* attempt to state a claim and Defendants' *fourth* motion to dismiss.  Plaintiff has had far more than sufficient opportunity to plead its case.  The 4AC should be dismissed with prejudice and without any further leave to amend.

## BACKGROUND

The Fund is one of a series of mutual funds issued by Schwab Investments (the "Trust"), a Massachusetts business trust.[2]  4AC ¶ 3.  The Fund was previously a government bond fund, but

---

[1]   Given the complexities caused by the assertion of unique claims and defenses that apply to some, but not all, Defendants, Defendants have prepared a short chart summarizing which Defendants assert each of the defenses raised in this motion.  *See* Ex. N to the Declaration of Joshua D. N. Hess ("Hess Decl."), filed herewith.

[2]   The 4AC is expressly based on the Fund's 1997 Proxy Statement and "subsequent SEC filings."  *Id.* ¶ 185.  The principal additional SEC filings referred to in the 4AC are the Fund prospectuses and Statements of Additional Information ("SAIs").  All of these documents are publicly available materials filed with the SEC and subject to judicial notice.  It is appropriate to consider materials on a motion to dismiss where those materials are expressly referred to and incorporated into the allegations in the complaint or where they are subject to judicial notice.  *U.S. v. Ritchie*, 342 F. 3d 903, 908-08 (9th Cir. 2003).  Here all of these filings make up "[t]he terms of [the] contract" that Northstar believes Defendants have breached and thus

the shareholders approved a restructuring of the Fund in the Fall of 1997.  *Id.* ¶ 83.  As set forth in the July 25, 1997 Proxy Statement ("1997 Proxy"), the newly-restructured Fund was renamed the Total Bond Market Index Fund and its investment objective was revised to "attempt to provide a high level of current income consistent with preservation of capital by seeking to track the investment results" of the Lehman Brothers U.S. Aggregate Bond Index (the "Index").  *Id.* ¶ 84 (quoting the 1997 Proxy).  This revised objective is the basis for the first of two alleged misrepresentations on which the 4AC and all of its predecessors are based.  The 1997 Proxy made clear, however, that the Fund would only "seek to track the investment results" of the Index, rather than the *investments* in the Index, because not all securities included in the Index are publicly available.  *Id.* ¶¶ 4, 84 (quoting the 1997 Proxy).  Indeed, the 1997 Proxy made several important disclosures to the shareholders regarding its ability to "track" the results of the Index: (1) the Fund's assets could be invested in securities not included in the Index (Hess Decl. Ex. A (1997 Proxy) at 18); (2) the goal was to have 90% correlation between the performance of the Fund and the Index because "perfect correlation" was "unlikely to be achieved" (*id.* at 24); (3) "tracking error[s]" could "develop[ ]" that may require the Fund to "rebalance[ ]" (*id.*); (4) the "Fund [would] consider alternative arrangements" if a 90% correlation were "not achieved" (*id.*); and (5) the "Fund" intended to "purchase . . . significant amounts of mortgage-backed securities." *Id.* at 20.  The 1997 Proxy also proposed, in the second purported misrepresentation on which this case has always been based, that the Fund would "not concentrate investments in a particular industry or group of industries . . . as concentration is defined under the Investment Company Act of 1940." *Id.* at 33.  However, this proposed change was intended to apply a restriction that would be "more flexible" than the prior concentration limitations.  *Id.*  In addition, there was nothing in the fundamental policies that defined what was or was not considered an industry.  *Id.* With the understanding that the Fund would only "seek" to track the "results" of the Index (but that differences were likely to occur) and that the Fund was adopting a "more flexible"

---

may be considered.  4AC ¶ 185.  Defendants' Request for Judicial Notice, filed concurrently with this motion, seeks judicial notice of Exhibits A-E attached to the Hess Declaration.

1   concentration restriction that did not define what constituted an industry, the shareholders

2   approved of the change in investment objective.

3   Following the 1997 Proxy, the Fund continued to offer shares to prospective shareholders,

4   like all open-ended mutual funds, through prospectuses filed with the SEC. From 1997 through

5   February 2009, the end of the purported class period, the Fund filed dozens of revised

6   prospectuses and related Statements of Additional Information ("SAIs") with the SEC, each

7   offering Fund shares to shareholders based upon updated and materially different disclosures on a

8   variety of topics, including the Fund's investment strategies, deviations from the Index, and

9   concentration of assets in CMOs. *See, e.g.*, Hess Decl. Exs. A-E. But according to Plaintiff, each

10  of those subsequently filed prospectuses repeated the same two alleged core misrepresentations

11  regarding tracking and concentration policies and each of them induced shareholders to buy or

12  hold shares. *See, e.g.*, 4AC ¶ 184 ("Subsequent to the 1997 proxy vote, Schwab Investments

13  continued to offer shares in the Fund pursuant to the terms of a contract . . . these same terms

14  were also included in Prospectuses and in Statements of Additional Information"); ¶ 185 ("The

15  terms of the contract . . . were reiterated in Schwab Investments' subsequent SEC filings").

16  Plaintiff expressly pleads that the same two misrepresentations contained in every one of these

17  filings form the very "contract" on which this case is based. *Id.*

18  From August 31, 1997, through August 31, 2007, the Fund's performance was consistent

19  with the Index's performance and the Fund grew from $24 million in assets to approximately $1.5

20  billion. 4AC ¶¶ 108-09. During this time, the Fund repeatedly made public disclosures

21  indicating that it was making investments in securities not contained in the Index. For example,

22  in its January 1998 Prospectus, filed only a few months after the restructuring of the Fund and

23  long before Henry Holz—Northstar's assignor—invested in the Fund, the Fund disclosed that

24  only 65% of its assets would likely be invested in securities contained within the Index. *See* Hess

25  Decl. Ex. B at 10. By 2002, the Fund was no longer guaranteeing that *any* of its assets would be

26  invested in securities contained within the Index. *See* Hess Decl. Ex. C at 8 ("the fund is not

27  required to invest any percentage of its assets in the securities of the index"). Around this time,

28  the Fund also changed its name from the Total Bond Market Index Fund to simply the Total Bond

1    Market Fund.  *See id.*  All of these actions occurred, and were disclosed, five or more years

2    before any alleged breach of fiduciary duty or contract in this case and yet the Fund continued to

3    perform consistently with the Index.  4AC.  ¶¶ 108-09.

4         Beginning in 2005—two years before Holz purchased shares in the Fund—the Fund

5    began to disclose that it was increasing its investments in collateralized mortgage obligations

6    ("CMOs").  Semi-annual reports explained that 2.7% of the Fund's portfolio was invested in

7    CMOs on February 28, 2005, which rose to 3.6% on August 31, 2005 and then 12.8% on

8    February 28, 2006.  *See* Hess Decl. Ex. G at 6, 45; Ex. H at 6, 46; Ex. I at 6, 42.[3]  During this

9    time, the Fund regularly outperformed the Index.  *Id.*  The Fund decided to reduce its investment

10   in CMOs to 11.9% by August 31, 2006, but this resulted in the Fund *underperforming* the Index.

11   *Id.* Ex. J at 10, 40.  The Fund increased its investment in CMOs to 17.7% on February 28, 2007,

12   and, once again, reported that the Fund outperformed the Index.  *Id.* Ex. K at 10, 41.

13        In February 2007, following the rising investment in CMOs and the corresponding

14   improvement in performance, Holz purchased approximately 4,000 shares in the Fund.  4AC

15   ¶ 29.  Importantly, the November 2006 Prospectus, the prospectus Holz receive and pursuant to

16   which he invested in the Fund, expressly warned all current and prospective shareholders that

17   "the fund uses the index as a guide in structuring the fund's portfolio and selecting its

18   investments.  *However the fund is not required to invest any percentage of its assets in the*

19   *securities represented by the index.*"  Hess Decl. Ex. D at 14 (emphasis added).  This prospectus

20   specifically warned that if the non-Index securities in which the Fund invested were to

21   underperform then this could cause a "gap between the performance of the fund and that of the

22   index."  *Id.* at 17.  The July 2007 Prospectus, sent to all current and prospective shareholders *after*

23   Holz had invested in the Fund, repeated these warnings.  Hess Decl. Ex. E at 14, 17.  And yet

24   neither the existence of these warnings nor the publicly-disclosed rising investments in CMOs

25   caused Holz to sell his shares.  Instead, he continued to hold his shares, allegedly in reliance on

26   the representations that the Fund would continue to "seek to track" the Index.  4AC ¶ 84.

27

28   _____

[3]   The annual and semi-annual reports are expressly referenced, and thus incorporated into, the
     4AC.  *See* 4AC ¶ 53 (quoting semiannual reports that were "disseminated to shareholders").

1       Before Holz invested in the Fund, the Fund also disclosed that it believed that "mortgage-

2  backed securities issued by private lenders and not guaranteed by U.S. government agencies or

3  instrumentalities are not part of any industry for purposes of a fund's concentration policy.  This

4  means that a fund may invest more than 25% of its total assets in privately-issued mortgage-

5  backed securities."  Hess Decl. Ex. D at 6.  The same disclosure was made again shortly after he

6  invested in the Fund.  *Id.* Ex. F at 6.  Consistent with this publicly-disclosed guidance, on August

7  31, 2007, the Fund publicly disclosed that it had increased its investment in CMOs to 37%.  4AC

8  ¶ 110.  Although Plaintiff now contests that this investment decision was a breach of contract and

9  fiduciary duties, Holz purchased his shares *after* the Fund publicly stated that it did not consider

10  CMOs to be an industry and therefore would not apply the 25% concentration policy to CMOs .

11  Nevertheless, he still continued to hold his shares after the Fund actually invested, and disclosed

12  that it had invested, more than 25% of its assets in CMOs.

13       Ultimately, due in part to the sudden and unexpected decrease in the market value of

14  various securities, including CMOs, as a result of the severe credit crisis that began in 2007, the

15  portfolio declined in late 2007, causing the Fund to underperform the Index.  The Fund reacted by

16  following its plan under the 1997 Proxy and subsequent prospectuses to "rebalance" the Fund to

17  attempt to bring it more "in line with the Index."  Despite the challenging market environment in

18  2008-2009, the Fund still managed to outperform its peers and was able to begin tracking the

19  results of the Index again by February 27, 2009.  *Id.* ¶ 10.

20                         **PROCEDURAL HISTORY**

21       This is Plaintiff's *fifth* attempt to plead any claim in this case.  Despite the continually

22  evolving articulations of its claims, each complaint alleged that Defendants represented, in

23  numerous disclosures offering the Fund for sale to investors, that they would manage the Fund in

24  a certain manner and they ceased to do so without informing shareholders or seeking their

25  consent.  Of particular relevance, in its Second Amended Complaint ("2AC"), ECF No. 127,

26  Plaintiff asserted the same purely common law claims it now asserts in the 4AC.  This Court

27  dismissed all of these claims as precluded under SLUSA, finding that "the central theme of the

28  [2AC] and all of Plaintiffs' claims is that defendants made misrepresentations about how

DECHERT LLP
ATTORNEYS AT LAW
SAN FRANCISCO

[08-cv-04119] DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS
FOURTH AMENDED COMPLAINT    -6-

investments in the Fund would be managed, that Plaintiffs purchased Fund shares relying on these misrepresentations, and that Plaintiffs were injured when these statements turned out to be false." *Northstar I*, 781 F. Supp. 2d at 934.  The Court granted plaintiffs leave to amend the breach of fiduciary duty and third-party beneficiary claims (for the sole purpose of clarifying under which State's law they were brought) in order to determine whether they satisfied the so-called "Delaware carve-out" to SLUSA preclusion, but the contract and breach of covenant claims were dismissed *with prejudice*.  *Id.* at 938, 944.

Plaintiff subsequently filed a Third Amended Complaint ("3AC") ECF No. 181, alleging only breach of fiduciary duty, aiding and abetting, and third-party beneficiary claims.  This time, pursuant to this Court's guidance that only claims based on Massachusetts law could possibly evade SLUSA preclusion, Plaintiff asserted that the fiduciary breach claims were actually based on Massachusetts law.  3AC ¶¶ 124, 133, 144, 150, 175, 185, 196, 202.  Plaintiff also split its claims between two subclasses:  the "Pre-Breach class," which consists of those shareholders who purchased their shares prior to August 31, 2007, and chose to retain those shares following the disclosure that the Fund had invested 37% of its assets in CMOs; and the "Breach" class, which consists of those shareholders who purchased their shares after August 31, 2007, with full knowledge of the Fund's large investment in CMOs.  *Id.*  This Court dismissed all of the 3AC's claims with prejudice on the grounds that they were derivative claims and Plaintiff had not established that the shareholders were intended third-party beneficiaries of the Investment Advisory Agreement ("IAA") between the Fund and Charles Schwab Investment Management, Inc., the Fund's advisor (the "Advisor").  *See generally Northstar Fin. Advisors, Inc. v. Schwab Invs.*, 807 F. Supp. 2d 871 (N.D. Cal. 2011) ("*Northstar II*").  In dismissing the 3AC, the Court recognized that "[a]lthough Northstar has amended its Complaint three times, *its core allegations remain the same*."  *Id.* at 872 (emphasis added).  The Court did not address Defendants' renewed arguments under SLUSA.

On April 28, 2015, the Ninth Circuit reversed certain holdings of this Court that dismissed claims under the 2AC and 3AC.  Specifically, the Ninth Circuit held that (1) Plaintiff could directly assert breach of fiduciary duty claims against the Trustee defendants, (2) SEC disclosure

[08-cv-04119] DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS FOURTH AMENDED COMPLAINT      -7-

1   documents, including the 1997 Proxy, created a contract under which the Fund agreed to manage

2   the Fund pursuant to set investment objectives and concentration limits, and (3) Plaintiff had

3   adequately pleaded that the Fund's shareholders were intended beneficiaries of the IAA.

4   *Northstar Fin. Advisors, Inc. v. Schwab Invs.*, 779 F.3d 1036 (9th Cir. 2015) ("*Northstar III*").

5   The Ninth Circuit expressly declined to consider, let alone disturb, this Court's prior rulings

6   regarding SLUSA preclusion, instead leaving that determination to this Court on remand. *Id.* at

7   1050.

8        On June 25, 2015, Northstar filed the 4AC, which asserts the same claims as the 3AC, but

9   also re-pleads the breach of contract and breach of covenant claims from the 2AC that this Court

10  had previously held were precluded by SLUSA.  The breach of fiduciary duty and aiding-and-

11  abetting claims are pleaded under Massachusetts law while the remaining claims are all asserted

12  under California law.  The core factual predicate of this case—the two alleged

13  misrepresentations—remains virtually unchanged from the 2AC, which this Court held was

14  precluded under SLUSA.  The only thing that has changed is a transparent effort in the 4AC to

15  avoid SLUSA preclusion by deleting Plaintiff's previously chosen characterization of the 1997

16  Proxy and subsequent prospectuses as containing "misrepresentations" and providing

17  "assurances."  The content of those same filings, of course, has not changed a whit.

18                                **LEGAL ARGUMENT**

19  **I.     All Of Plaintiff's Claims Are Barred By SLUSA**

20        The 4AC is a prime example of a plaintiff attempting to artfully plead its way out of

21  SLUSA's reach by merely striking words such as "misrepresentation," but otherwise leaving

22  precluded claims intact.  As with Plaintiff's four prior complaints, the gravamen of all of its

23  claims in the 4AC is that Defendants misrepresented the investment strategy of the Fund, both in

24  the 1997 Proxy and in subsequent prospectus offerings to shareholders, both prior to and

25  throughout the class period.  According to all five complaints, shareholders not only bought, but

26  held, Fund shares in reliance on those purported misrepresentations.  Plaintiff is thus attempting

27  to "assert[] what were essentially federal securities law claims as state law causes of action," even

28

1  though such gamesmanship is the precise practice that SLUSA was intended to "end." *Northstar*

2  *I*, 781 F. Supp. 2d at 933.

3        As this Court has already recognized, "SLUSA prohibits class actions brought on behalf

4  of more than 50 people . . . if the action is based on state law and alleges (a) a misrepresentation

5  or omission of a material fact in connection with the purchase or sale of [a] covered security; or

6  (b) that the defendant used or employed any manipulative or deceptive device or contrivance in

7  connection with the purchase or sale of a covered security." *Id.* at 933. There is no dispute that:

8  (1) this case is a purported class action of more than 50 people; (2) shares in the Fund are

9  "covered securities" within the meaning of SLUSA; and (3) Plaintiffs have asserted exclusively

10  state law claims. The only remaining question is whether Plaintiffs have alleged "a

11  misrepresentation or omission of a material fact in connection with the purchase or sale of a

12  covered security" and this Court has already correctly concluded that each of Plaintiffs' claims

13  satisfies this element of the statute as well. Although the 4AC uses new language to characterize

14  its claims, the substance of the claims themselves remain unchanged from the 2AC.

15        **A.    Plaintiff's Claims Are Based On Allegations They Either Purchased Or Retained Shares In Reliance On Misrepresentations Of The Fund.**

16        The test of whether a claim is precluded under SLUSA is not one that turns on whether the

17  word "misrepresentation" is used. Instead, courts must "look to the substance of the allegations"

18  and "plaintiffs cannot avoid preclusion through artful pleading that removes the covered words . .

19  . but keeps the covered concepts." *Freeman Invs., L.P. v. Pac. Life Ins. Co.*, 704 F.3d 1110, 115

20  (9th Cir. 2013) (internal quotation omitted); *see also Tuttle v. Sky Bell Asset Mgmt., LLC*, 2010

21  WL 4807093, at *5 (N.D. Cal. Nov. 19, 2010) ("Plaintiffs cannot avoid SLUSA by utilizing artful

22  drafting which refrains from using the exact words 'misrepresentation' or 'omission.'").[4]

23        A comparison of claims previously dismissed as precluded under SLUSA in this case and

24  the 4AC reveals that Plaintiff's central theme has not changed since the inception of this case.

---

26  [4]  At the case management conference held on June 24, 2015, Plaintiff cited *Freeman*

27  *Investments* for the incorrect proposition that contract claims purportedly cannot be precluded
   by SLUSA. But *Freeman Investments* could not be more explicit in stating that SLUSA "bars
   class actions brought under state law, whether styled in tort, *contract* or breach of fiduciary

28  duty." 704 F.3d at 1114 (emphasis added).

1    Plaintiff's initial complaint made clear that its claims were premised on purported

2    misrepresentations that Defendants made about the Fund's investment objectives (Complaint

3    ("Compl."), ECF No.1, ¶¶ 32-34, 36-42, 44-45, 47-51, 54, 64-67, 69), that "Northstar. . . relied on

4    Charles Schwab & Co., Inc.'s representations as to the Fund's investment objectives," and that

5    those representations were false because the Fund actually violated the investment objectives. *Id.*

6    ¶ 12.  The initial complaint also expressly pleaded that Defendants' disclosure that CMOs are not

7    an "industry," and thus the 25% concentration limit did not apply, was a fraudulent statement

8    because Defendants purportedly knew this disclosure to be false at the time it was made. *Id.* ¶¶

9    78, 79.

10        After the Ninth Circuit ruled that Plaintiff had no viable claim under the ICA and returned

11   the case to this Court, Plaintiff continued to assert the same misrepresentation-based claims in the

12   2AC, now relying solely on state-law causes of action based on contract and breach of fiduciary

13   duty theories.  As summarized in Defendants' motions to dismiss the 2AC, Plaintiff made the

14   following allegations:

15           Northstar alleges the fund issued a proxy statement representing it would attempt to
             provide high current income and preservation of capital using an indexing strategy and it
16           "assured" investors it would carefully analyze the characteristics of each security it sold.
             [2AC ¶¶50, 77]  The proxy statement, says Northstar, "represented" that the fund would
17           "seek a 90% correlation" between the fund and its index, and that this strategy would not
             increase the fund's risk profile. [*Id.*  ¶¶58, 61]  Northstar also alleges that the fund was
18           marketed to investors as a conservative investment. [*Id.*  ¶¶78, 81]  These representations
             later allegedly were proved false because the fund deviated from its stated objectives.  [*Id.*
19           ¶¶95-96]  Indeed, according to Northstar, the fund later offered investors a false
             explanation when its share price began to decline.  [*Id.*  ¶ 97]
20

21   Motion to Dismiss Second Amended Complaint at 7.  ECF No. 150.

22        On the basis of these allegations, this Court correctly concluded that "the central theme of

23   the [2AC] and all of Plaintiffs' claims is that defendants made misrepresentations about how

24   investments in the Fund would be managed, that Plaintiffs purchased Fund shares relying on

25   those misrepresentations, and that Plaintiffs were injured when these statements turned out to be

26   false." *Northstar I*, 781 F. Supp. 2d at 934.  Based on Plaintiff's insistence that it could replead

27   these claims, this Court granted Plaintiff leave to amend.

28

DECHERT LLP
ATTORNEYS AT LAW
SAN FRANCISCO

[08-cv-04119] DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS
FOURTH AMENDED COMPLAINT        -10-

Plaintiff has now filed two additional amended complaints (their fourth and fifth complaints in this action), but neither changes the central theme of their case. Although the Court did not reach the issue of SLUSA preclusion with respect to Northstar's first attempt to avoid SLUSA (the 3AC), the Court correctly observed with respect to that complaint that "[a]lthough Northstar has amended its Complaint three times, *its core allegations remain the same*." *Northstar II*, 807 F. Supp. 2d at 872 (emphasis added). With the 4AC, that fact has not changed.[5] Like the precluded 2AC, the 4AC still alleges that the Fund issued a proxy statement representing that it would follow an indexing strategy; that there would be a 90% correlation between the Fund and the Index; and that the indexing strategy would not increase the Fund's risk profile. *See id.* ¶¶ 89, 163(c). The only change to these allegations is Plaintiff's removal of specific language about "informing" or "assuring" investors. And the 4AC still alleges that these representations were proved false because the Fund, in actuality, did not follow the investment objectives that had been repeatedly represented to the shareholders. *See, e.g., id.* ¶¶ 5, 110, 118, 258. Further, the 4AC pleads that even after these representations were proved false, shareholders continued to hold or purchase shares in reliance on these false representations, which were repeated in subsequent SEC filings. *See id.* ¶ 186. This Court previously pointed to each of these allegations in the 2AC to support dismissal under SLUSA, and it should do so again. *Northstar I*, 781 F. Supp. 2d at 934-936.

In fact, the 4AC includes additional allegations that the Defendants made untruthful representations to the Fund's shareholders. Plaintiff specifically alleges that Defendants "had knowledge superior to the Fund's shareholders regarding the composition of the Fund's holdings and the compliance with the Fund's fundamental investment objectives and policies" and thus had a "duty to deal fairly, honestly and in good faith with plaintiff and the other member Class members," but breached that duty. *See* 4AC ¶¶129-130. Defendants purportedly made *repeated* representations in various prospectuses, proxies, statements of additional information, and

---

[5]    Indeed, Plaintiff concedes that there is no difference between the 4AC and 3AC, other than the reinsertion of the previously dismissed contract claims and "wordsmithing." *See* Motion for Leave to File Fourth Amended Complaint (ECF No. 206) at 1.

[08-cv-04119] DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS FOURTH AMENDED COMPLAINT      -11-

1   marketing materials from 1997 until the end of the class period that shareholders could "trust"

2   Defendants to follow particular investment objectives.  *See id.* ¶ 53 ("All defendants repeatedly

3   assumed fiduciary duties in SEC filings disseminated to shareholders and repeatedly thanked

4   investors for placing their 'trust' in Schwab").  Further, Plaintiff's claims are not based on a

5   single "contract" but on various statements that were made in multiple prospectuses, registration

6   statements, and SAIs throughout the class period in which Defendants purportedly "reiterated"

7   the representations made in the 1997 Proxy Statement.  *See Id.* ¶ 185 (terms of 1997 proxy

8   statement "reiterated" in " Schwab Investments' subsequent SEC filings . . . and in *each*

9   subsequent Prospectus and Statement of Additional Information" ) (emphasis added); *id.* ¶ 188

10  (noting that Defendants promised they would not "deviate[ ] from the composition of the [Index]"

11  in "the 1997 Proxy Statement and subsequent prospectuses and SAIs").  Even though Plaintiff

12  believes that the Fund was no longer following its investment objectives by August 2007, thus

13  rendering any statement suggesting compliance with the objectives untrue, Plaintiff specifically

14  alleges that certain class members purchased new shares after this point (the "Breach" class) and

15  the remaining class retained their shares beyond this point (the "Pre-Breach" class) all in reliance

16  on these continuing, and purportedly false, representations made through the end of the class

17  period in 2009.  *See id.* ¶ 186 ("existing investors retained shares and new investors purchased

18  shares *in consideration* of the contractual obligation not to change fundamental investment

19  objectives without a shareholder vote") (emphasis added).[6]

20          This Court has already ruled that these same allegations, as stated in the 2AC, are barred

21  by SLUSA.  In their second attempt to fix that fatal flaw, Plaintiffs have now alleged vaguely

22  what was previously alleged directly:  Plaintiff seeks to represent a class of people who, relying

23

24  [6]   Additional evidence that Plaintiff intends to avoid SLUSA by litigating a securities fraud case
        under the guise of common-law tort and contract claims can be found in other documents
25      recently generated in this litigation.  For example, Plaintiff has recently served a request for
        the production of "[a]ll documents concerning any *allegations of misrepresentation*"
26      regarding "the manner in which [the fund] was sold or promoted" as well as six additional
        requests that exclusively seek statements and representations made in Defendants' marketing
27      materials.  *See* Hess Decl. Ex. M (Plaintiff's First Request For Production Of Documents)
        Nos. 15, 76-81.
28

1  on representations that the Fund would "seek to track" the performance of the Index and would

2  not invest more than 25% in any particular industry, invested and/or retained shares in the Fund.

3  Although Plaintiff now asserts that some of these representations may have been true when they

4  were made, Plaintiff alleges they were untrue by August 31, 2007, when the Fund publicly

5  disclosed it had invested 37% of its assets in CMOs, at which point shareholders in the "Breach"

6  class purchased their shares and shareholders in the "Pre-Breach" class decided to retain their

7  shares in reliance on these allegedly false statements.[7]  Setting aside the issue of whether it is

8  plausible that any shareholder was relying on these purportedly false or misleading

9  representations at a time when the Fund's actual investments were a matter of public knowledge,

10  SLUSA makes clear that these claims must be pleaded under the federal securities laws and not as

11  the state-law claims asserted here.

12      **B.**      **The Misrepresentations Alleged In The 4AC Were Allegedly Made "In**
13                    **Connection With" The Sale Of A Covered Security.**

14        It is well-established that the phrase "in connection with the sale of a covered security" is

15  intended to have a broad construction and this element is satisfied so long as the

16  misrepresentation "coincide[s] with a securities transaction—whether by the plaintiff or by

17  someone else." *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Dabit,* 547 U.S. 71, 85-86 (2006).

18  As this Court has recognized, this broad construction includes "holder" claims where, as here,

19  "Plaintiffs . . . purchased stock 'before any relevant misrepresentation' and were only injured by

20  not later selling the stock due to alleged misrepresentations." *Northstar I*, 781 F. Supp. 2d at 937

21  The "Pre-Breach" class asserts only "holder" claims on behalf of the shareholders who continued

22  to hold their shares beyond August 31, 2007, in reliance on reaffirmed representations that

---

23  [7]  This Court has already ruled that even if Plaintiff takes the position that the alleged

24  misrepresentations were true statements at the time they were made, that position does not
save the claims from SLUSA preclusion because the class definition includes people who

25  purportedly relied on these statements after the point where they became untrue.  *See*
*Northstar I*, 781 F. Supp. 2d at 936 ("Even if Plaintiffs now allege the statements were true at

26  some point, the class definition starts the clock for the class claims at the moment Plaintiffs
allege the statements became untrue—'from August 31, 2007, through February 27, 2009'").

27  Plaintiff still asserts the same class period and does not even attempt to respond to the Court's
sound conclusion on this issue.

28

1   purportedly were  no longer true.  The Breach class even more obviously alleges claims based on

2   misrepresentations "in connection with the sale of a covered security" because the reaffirmed

3   statements from the 1997 Proxy Statement and subsequent prospectuses were already allegedly

4   untrue at the time those shareholders purchased their shares.  As previously recognized,

5   "Plaintiffs assert almost no support for [their] position [that this element has not been satisfied],

6   and there is little to be found."  *Id.*  The 4AC makes no attempt to improve Plaintiffs' argument

7   on this issue.

8        **C.**    **Plaintiff's Claims Are Not Saved By The "Delaware Carve-Out."**

9        The so-called "Delaware carve-out," as set forth in 15 U.S.C. § 77p(d), allows a Plaintiff

10  to bring certain "permissible actions" that would otherwise be precluded by SLUSA only when

11  the Plaintiff asserts class action claims under "the statutory and common law of the State in which

12  the issuer is incorporated or organized."  15 U.S.C. § 77p(d)(1)(A).  However, even if a claim is

13  asserted under the law of the issuer's State of incorporation, only a select few categories of cases

14  meet the statutory definition of "permissible actions."  15 U.S.C. § 77p(d)(1)(B).  As summarized

15  by the Ninth Circuit, a "permissible action" for purposes of the Delaware carve-out must meet *all*

16  of the following elements:  "(1) a "recommendation, position, or other communication with

17  respect to the sale of securities," (2) "made by or on behalf of" the issuer or its affiliate to the

18  shareholders of the issuer, and (3) "concern[ing]" shareholder decisions "with respect to voting

19  their securities, acting in response to a tender or exchange offer, or exercising dissenters' or

20  appraisal rights." *See Madden v. Cowen & Co*., 576 F.3d 957, 969 (9th Cir. 2009).  Contrary to

21  Plaintiff's assertion that *all* of its "causes of action fall under the 'Delaware Carve-Out'" (4AC ¶

22  72), Plaintiff has not alleged a factual basis that would allow the Delaware carve-out to save any

23  of its claims.

24         **1.**    **The Delaware Carve-Out Does Not Apply To The Breach Of Contract,**

25              **Breach Of Covenant, And Third-Party Beneficiary Claims Against All**
            **Parties Because They Are Not Asserted Under Massachusetts Law.**

26       As a threshold matter, the Delaware carve-out applies only when claims are asserted under

27  the laws of the State in which the issuer is incorporated.  The issuer in this case—the Fund—is a

28  Massachusetts business trust and so the Delaware carve-out could conceivably apply only to

1  claims asserted under Massachusetts law.  But only Plaintiff's breach of fiduciary duty and

2  aiding-and-abetting claims (Claims 1-4, 8-11) are asserted under Massachusetts law.  The

3  remaining claims for breach of contract, breach of covenant of good faith and fair dealing, and

4  third-party beneficiary are explicitly asserted under *California* law.  4AC ¶ 19.[8]  As a matter of

5  law, the Delaware carve-out cannot possibly save the claims asserted under California law from

6  SLUSA preclusion.

7           **2.      The Delaware Carve-Out Also Does Not Apply To The Breach Of**
                      **Fiduciary Duty Claims Asserted Against The Advisor Because They**
8                     **Are Not Properly Asserted Under Massachusetts Law.**

9           The Delaware carve-out also cannot apply to the breach of fiduciary duty claims against

10  the Advisor for the separate reason that those claims are not properly brought under

11  Massachusetts law.  Plaintiff "predicat[es]" its two claims for breach of fiduciary duty against the

12  Advisor (Claims Three and Nine) on Massachusetts law (4AC ¶¶ 136, 206), but does not plead

13  any facts that would establish a basis for Massachusetts law to apply to these claims.  The 4AC

14  pleads that Plaintiff is a resident of New Jersey (*id.* ¶ 23) and that the Advisor is a resident of

15  California (*id.* ¶ 51).  Even if Plaintiff could establish that the Advisor owed fiduciary duties

16  directly to Plaintiff, which is not correct (*see infra* Section III), Plaintiff cannot establish how the

17  breach of such a duty by a California company to a New Jersey plaintiff would be subject to

18  Massachusetts law.   Because the complaint pleads no facts that would justify application of

19  Massachusetts law, California law applies by default.  *See CRS Recovery*, *Inc.*, 600 F. 3d at 1143-

20  44.

21

22  ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯
    [8]     The 4AC includes a confusing allegation that "[i]nasmuch as Massachusetts law supports
23          plaintiff's claims, plaintiff has no reason to believe a California state court would apply
            California substantive law to any claims that would otherwise be subject to Massachusetts law
24          to protect an important California state public policy."  4AC ¶ 20.  But the 4AC contains no
            allegation that the breach of contract, breach of covenant, or third-party beneficiary claims
25          would actually be subject to Massachusetts law and, as Northstar acknowledges, absent the
            invocation of another State's law, California law applies by default.  *Id.*; *CRS Recovery, Inc.*
26          *v. Laxton*, 600 F.3d 1138, 1143-44 (9th Cir. 2010) ("Under California choice-of-law rules, the
            party seeking application of foreign law bears the burden to show that the law of a foreign
27          state should apply.  At the point [the party] fails to make this showing, we default to forum
            (California) law.").
28

[08-cv-04119] DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS
FOURTH AMENDED COMPLAINT        -15-

1       Indeed, the primary source upon which Plaintiff bases the Advisor's purported fiduciary

2  duty is the IAA between the Advisor and the Trust.  4AC ¶¶ 137-38.  But the IAA contains an

3  express choice-of-law clause stating that it "shall be governed by the laws of the State of

4  California," which Plaintiff previously recognized.  2AC ¶ 159.  Thus, to the extent that the IAA

5  imposes any purported fiduciary duty on the Advisor with respect to Plaintiff, the IAA's choice-

6  of-law clause requires California law to apply.  *See Nedlloyd Lines B.V. v. Superior Court*, 3 Cal.

7  4th 459, 470 (1992) ("we hold a valid choice-of-law clause, which provides that a specified body

8  of law 'governs' the 'agreement' between the parties, encompasses all causes of action arising

9  from or related to that agreement, regardless of how they are characterized, including tortious

10  breaches of duties emanating from the agreement or the legal relationships it creates").

11       Plaintiff's baseless attempt to invoke of Massachusetts law to cover this claim is plainly a

12  tactical attempt to avoid SLUSA preemption, but it provides Plaintiff with no refuge because

13  there are no facts or law to support a Massachusetts choice of law.  Under California choice-of-

14  law doctrine, which applies here, this claim must be asserted under the laws of either California

15  or New Jersey because Plaintiff cannot establish why any other State would have an interest in

16  applying its law to wholly-foreign parties and, accordingly, this claim cannot avoid SLUSA

17  preemption under the Delaware carve-out.[9]  *CRS Recovery*, 600 F.3d at 1143-44; n. 8, *supra*.

18           **3.**     **The Delaware Carve-Out Does Not Apply To Any Claim Because This**
19                 **Case Is Not A "Permissible Action," Even If Brought Under**
                  **Massachusetts Law.**

20       A determination that the claims are based on the laws of the State in which the issuer is

21  incorporated is only the *beginning* of the analysis to determine whether the Delaware carve-out

22  will spare an otherwise precluded claim under SLUSA.[10]  15 U.S.C. § 77p(d)(1)(B) is clear that

---

23  [9]    At this time, it is not necessary to determine whether California or New Jersey law applies to
24  this claim.  It is sufficient to conclude that the claim is not properly brought under the laws of
Massachusetts.

25  [10]   This Court has not previously had an opportunity to consider each of the elements required
26  under a full analysis of the Delaware carve-out because when Plaintiff initially raised this
issue it incorrectly suggested to the Court that the only question was whether the claims were
27  asserted under Massachusetts law.  *See* Pl. Opp. to Mtn. to Dismiss Second Amended Compl.
(ECF No. 158), at 21 n. 25.  Although this standard was incorrect, at the time none of
28  Plaintiff's claims had been asserted under Massachusetts law so a full analysis of the carve-

1   the Delaware carve-out applies only to certain "permissible actions," which include only two

2   specific types of class actions.  The first type, involving "the purchase or sale of securities by the

3   issuer or an affiliate of the issuer exclusively from or to holders of equity," is plainly inapplicable

4   because this case does not involve the sale or purchase of shares "exclusively" with current

5   shareholders.  *Id.*  Rather, the purchase of Fund shares was open to other Schwab customers and

6   members of the public.  The second type involves "any recommendation, position, or other

7   communication with respect to the sale of securities of the issuer that (I) is made by or on behalf

8   of the issuer or an affiliate of the issuer to holders of equity securities of the issuer; *and* (II)

9   concerns decisions of those equity holders with respect to voting their securities, acting in

10  response to a tender or exchange offer, or exercising dissenters' or appraisal rights."  *Id.*

11  (emphasis added)  Plaintiff also cannot establish that its claims fit within this second category.

12          This case does not involve a "tender or exchange offer" and it does not involve

13  the exercise of dissenters or appraisal rights.  Lacking any other viable option to

14  characterize this case as a "permissible action," Plaintiff predictably pleads the bald legal

15  conclusion in the 4AC that this case "relate[s] . . . to voting rights" (4AC ¶ 15), based on

16  Plaintiff's belief that a shareholder vote *should* have occurred before the Fund invested

17  more than 25% in CMOs.  But this misstates the standard.  Rather than applying to any

18  case with any arguable and tangential connection to "voting rights,"[11] the statutory

19  language limits "permissible actions" to those cases that "concern[ ] decisions of . . .

20  equity holders with respect to voting their securities."  This standard says nothing about

21  "voting rights" but is, instead, focused on whether a vote that actually occurred was

22  improperly influenced by misrepresentations.  Here, no vote occurred and common sense

23

24          out was unnecessary.  Plaintiff has now filed an amended pleading, superseding all prior
        pleadings, and it is well-established that all applicable defenses may now be asserted.  *See*

25      *Massey v. Helman*, 196 F.3d 727, 735 (7th Cir. 1999) ("amended complaint opens the door
        for defendants to raise new and previously unmentioned affirmative defenses"); *see also*

26      *Mattel, Inc. v. MGA Entm't, Inc.*, 782 F. Supp. 2d 911, 1017 (C.D. Cal. 2011).

27  [11]  If Plaintiff's unsupported legal standard were law, every shareholder lawsuit would be able to
        avoid SLUSA merely by alleging that a vote should have occurred prior to the disputed

28      corporate action.  The statutory limitation on "permissible actions" would be meaningless.

[08-cv-04119] DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS
FOURTH AMENDED COMPLAINT        -17-

1    dictates that the misrepresentations alleged in this case cannot "concern[ ] decisions" that

2    were never made because it is undisputed that the putative class members were not asked

3    to vote in the first place.  Accordingly, for all the reasons set forth above, this case is not

4    a "permissible action" within the meaning of the Delaware carve-out.[12]

5          A recent decision from this District, *Crimi v. Barnholt*, 2008 WL 4287566 (N.D. Cal.

6    Sept. 17, 2008), is instructive.  In *Crimi*, shareholders of KLA filed breach of fiduciary duty

7    claims based on KLA's alleged failure to disclose that it had issued backdated stock options to its

8    senior executives.  The Court divided the claims into two categories: "holder" claims and

9    "voting" claims.  The "holder" claims were based on allegations that the failure to disclose this

10   information had prevented the shareholders from "mak[ing] an informed decision concerning

11   whether they should continue holding their shares," whereas the "voting" claims arose from

12   allegations that the non-disclosure had deprived shareholders "of their ability to make an

13   informed decision" regarding certain stock issuances and an executive compensation plan that

14   were the subject of a shareholder vote.  *Id.* at *3.  The court held that the "holder" claims were

15   precluded by SLUSA, but the "voting" claims were saved by the Delaware carve-out.  Here,

16   Plaintiff's breach of fiduciary duty claims directly resemble the "holder" claims in *Crimi* because

17   Plaintiff alleges that the Fund's lack of transparency regarding its investment objectives caused

18   the shareholders to purchase or hold their shares.  4AC ¶ 186.  Unlike the "voting" claims in

19   *Crimi*, where a vote was actually held and information was concealed from shareholders to

20   influence the outcome, Plaintiff's entire claim in the 4AC is premised on the fact that there was

21   no shareholder vote in the first place.  *See, e.g.,* 4AC ¶ 4.  If no vote was held, there could be no

22   misrepresentations or omissions that could influence or manipulate the outcome of the vote.  As

23

24   [12]  The misrepresentations alleged in this case address the Fund's investment strategies without
         "directly discussing the sale of securities" and this distinction provides an additional basis to
25       find that the carve-out does not apply.  *Fisher v. Kansas*, 487 F. Supp. 2d 270, 280 (E.D.N.Y.
         2007) *aff'd*, 288 F. App'x 721 (2d Cir. 2008).  As recognized in *Fisher*, although SLUSA
26       applies broadly to any case that has a "connection" to alleged misrepresentations, courts
         narrowly interpret the language limiting the Delaware carve-out to representations made "with
27       respect to the sale of securities."  *Id.*  Plaintiff has not identified a specific misrepresentation
         that "directly discuss[es] the sale of securities" and, accordingly, cannot seek refuge within
28       the Delaware carve-out.  *Id.*

such, this case is not a "permissible action" and the Delaware carve-out does not apply. *See, e.g.*, *Huang v. Reyes* 2008 WL 648519, *5 (N.D. Cal. Mar. 6, 2008) ("the carve-out . . . appl[ies] where . . . the corporation issues proxy statements requesting that the shareholders vote").

## II.   Plaintiff's Breach Of Fiduciary Duty Claims Against All Defendants Fail Because Plaintiff Has Not Alleged Any Breach

In addition to being barred by SLUSA, the 4AC fails to sufficiently plead a breach of any fiduciary duty against any Defendant.  Plaintiff pleads no facts to support its allegation that the Fund made inappropriately risky or speculative investments but, instead, bases its claims entirely on the rehashed assertion that Defendants breached their fiduciary duties by causing the Fund to change its investment objectives without first obtaining a shareholder vote.  *See* 4AC ¶ 131.  Even assuming *arguendo* that the Fund did change its investment objectives—and it did not—the only reason a shareholder vote would have been required is because of the statutory requirement found in Section 13(a) of the ICA.  15 U.S.C. § 80a-13(a).  But, as previously recognized in this case, Plaintiff has no private right to enforce Section 13(a).  *Northstar Fin. Advis., Inc. v. Schwab Invs.*, 615 F.3d 1106, 1115 (9th Cir. 2010).  Accordingly, Plaintiff has re-pleaded the same claim as a breach of fiduciary duty claim in an attempt to create a private cause of action where none exists for this alleged statutory violation.  The Massachusetts Supreme Court has made clear that the violation of a *statutory* obligation does "not amount to a breach of fiduciary duty."  *O'Brien v. Pearson*, 449 Mass. 377, 385 n.7 (2007).  Even if Plaintiff could prove facts demonstrating that any Defendant had violated the ICA, those same facts would not also establish an independent breach of fiduciary claim covering the same conduct.  *See In re Charles Schwab Corp. Sec. Litig.*, 2009 WL 1371409, at *6 (N.D. Cal. May 15, 2009) (plaintiff "entirely fail[ed] to explain how the alleged violation of the [ICA] would activate any non-ICA fiduciary duties").  The ICA claim was dismissed and Plaintiff cannot resurrect it merely by alleging the exact same facts and conduct and calling it a breach of fiduciary duty.

When this argument was raised previously, Plaintiff primarily relied on *California* cases to support its Massachusetts breach of fiduciary duty claim.  *See* Opp. to Mot. to Dismiss 3AC (ECF No. 185) at 11.  Notably, however, each of these cases held that there had been a breach of

[08-cv-04119] DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS FOURTH AMENDED COMPLAINT    -19-

1    fiduciary based, in part, on allegations that the defendants had misrepresented or omitted material

2    information. *See, e.g.*, *City of Atascadero v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 68 Cal.

3    App. 4th 445, 484 (1998) (fiduciary breach claim adequately pleaded because of alleged "active

4    concealment" and "fraudulent misrepresentations"); *Terra Ins. Co. v. N.Y. Inc. Mgmt. LLC*, 717

5    F. Supp. 2d 883, 894 (N.D. Cal. 2010) (fiduciary breach claim adequately pleaded because of

6    alleged failure to disclose material information).[13] Here, Plaintiff expressly and repeatedly

7    disclaims that its claims are based on misrepresentations and omissions because, if they were,

8    then they are precluded by SLUSA.  Plaintiff cannot have its argument both ways: either Plaintiff

9    has alleged misrepresentations and omissions that would result in its fiduciary duty claims being

10   precluded by SLUSA or Plaintiff alleges only a violation of the ICA, which cannot serve as the

11   basis for a fiduciary breach claim.[14]

12   **III.    Plaintiff's Breach Of Fiduciary Duty Claims Against The Trust And The Advisor**
     **Fail Because Plaintiff Has Not Established The Trust Or Advisor Owed Any Duty**
13   **To The Shareholders**

14          Although the Ninth Circuit has held that the *Trustees* owed fiduciary duties directly to the

15   shareholders, it did not make any similar ruling with respect to the Trust itself or the Advisor.

16   *Northstar III*, 779 F.3d at 1056-57 (addressing only whether the Trustees owed a fiduciary duty to

17   the shareholders).  It is axiomatic that if Plaintiff intends to assert a claim for breach of fiduciary

18   duty against these Defendants directly then they must first adequately allege the existence of such

19   a duty.  *Swinden v. Vanguard Grp., Inc.*, 2009 WL 3415376, at *5 (N.D. Cal Oct. 21, 2009) ("An

20

21
     _____

22   [13]   Plaintiff also relied upon inapplicable cases including *Grimmway Enters., Inc. v. PIC Fresh*
           *Global, Inc.*, 548 F. Supp. 2d 840, 847 (E.D. Cal. 2008), which dealt with an unopposed
23         motion for summary judgment seeking to hold an individual liable as a control person for an
           entity whose liability was not in dispute, and *Copic Ins. Co. v. Wells Fargo Bank, N.A.*, 2010
24         WL 3059160 (D. Colo. Aug. 2, 2010), which dealt only with whether a party could seek
           punitive damages, did not involve a mutual fund, and did not address the sufficiency of a
25         claim for fiduciary duty.  *See* Opp. to Mot. to Dismiss 3AC (ECF No. 185) at 11.

26   [14]   At minimum, Plaintiff cannot establish that Trustee Defendants Wender or Cogan breached
           their fiduciary duties because Plaintiff pleads that "the Schwab Trustees and Trust breached
27         their fiduciary duties" by changing the investment objective and exceeding the 25%
           concentration limit "on or about August 31, 2007" (4AC ¶ 131), but Wender and Cogan did
28         not become Trustees until June 2008, nearly a full year *after* the alleged breach.  *Id.* at 45.

1  action for breach of fiduciary duty requires the plaintiff to allege the existence of a fiduciary

2  relationship").

3       As this Court has already recognized, Plaintiff has previously conceded that neither the

4  Trust nor the Advisor owe fiduciary duties directly to the shareholders as matter of law but,

5  instead, tries to establish the existence such duties as a matter of fact.  *See Northstar II*, 807 F.

6  Supp. 2d at 876 ("Northstar argues that the Trustees owed fiduciary duties directly to Fund

7  investors as a matter of law, and that the rest of the defendants owed fiduciary duties to the

8  investors as a matter of fact.").  But to plead the existence of a fiduciary duty as a matter of fact

9  under Massachusetts law (which applies to the Trust) or California law (which applies to the

10  Advisor), Northstar must plead facts sufficient to demonstrate a close and personal relationship

11  between the defendant and the shareholder.  *See, e.g.*, *Fernandes v. Havkin*, 731 F. Supp. 2d 103,

12  110 (D. Mass. 2010) (no fiduciary duty where "plaintiff and defendant lacked any direct

13  relationship, certainly not one of deep, personal trust and respect"); *Petrell v. Rakoczy*, 2005 WL

14  1683600, at *4 (Mass. July 11, 2005) (no fiduciary duty where diocese "did not have any personal

15  contact with the parishioners of each parish so as to create an awareness that individual

16  parishioners relied upon them for guidance or advice"); *Petersen v. Sec. Settlement Corp.*, 226

17  Cal. App. 3d 1445, 1455 (Cal. App. 1991) (no fiduciary duty absent a "direct and personal

18  relationship").  The 4AC is devoid of factual allegations suggesting that either the Trust or the

19  Advisor ever held such a personal relationship with any shareholder, let alone all of them.

20       In an attempt to establish the existence of this relationship, the 4AC alleges that the

21  Advisor sent generic marketing materials to the shareholders thanking them for their investment

22  and using boilerplate marketing terms such as "we're working hard to uphold the best interests of

23  our shareholders."  4AC ¶ 53.  But such broadly distributed marketing materials do not create

24  fiduciary relationships.  *See Hamilton v. Allen*, 396 F. Supp. 2d 545, 553 (E.D. Pa. 2005)

25  (rejecting argument that dissemination of advertising material with promise to "act in

26  [shareholders'] full best interest" establishes a fiduciary duty).  If the law were otherwise, nearly

27  every service company, financial or otherwise, in the country could be said to have a fiduciary

28  relationship with every individual who has ever received marketing materials from that company

1    regardless of whether the sender and recipient actually had a direct or personal relationship.

2    Proof of an ongoing and personal relationship, beyond the mere delivery and receipt of marketing

3    materials, are necessary in order to generate a fiduciary duty as a matter of fact.  *See, e.g.*, *In re*

4    *Hilson*, 863 N.E. 2d 483, 493 (Mass. 2007) (fiduciary duty exists as a matter of fact where "there

5    is substantial evidence to support the conclusion that respondent was acting as an escrow agent

6    for the broker and the seller"); *Doe v. Harbor Sch., Inc.*, 843 N.E. 2d 1058, 1062, 1064 (Mass.

7    2006) (fiduciary duty exists as a matter of fact between a "one-on-one counselor" and his ward

8    where "the undisputed record leaves no doubt" that the counselor "was in a formal position of

9    authority over [ward], and responsible, among other things, for her practical education in

10   independent living").  Plaintiff does not adequately plead that a similarly close relationship

11   existed between the Advisor or the Trust and every individual shareholder.

12       Plaintiff also alleges that the Advisor acquired a fiduciary duty simply by performing its

13   function as an advisor to a mutual fund.  4AC ¶ 57-58.  But, as Plaintiff expressly acknowledges,

14   any services the Advisor provided to the Fund were the result of its contractual obligations under

15   the IAA (4AC ¶ 138), which was heavily negotiated by independent, sophisticated parties and is

16   reconsidered and renewed pursuant to federal law on an annual basis.  Massachusetts law is clear

17   that "[w]hen rights of stockholders arise under a contract . . . the obligations of the parties are

18   determined by reference to contract law, and not by the fiduciary principles that would otherwise

19   govern."  *Chokel v. Genzyme Corp.*, 449 Mass. 272, 278 (2007).  Plaintiff failed to cite any

20   authority at all supporting the contrary position in prior briefing and, to Defendants' best

21   knowledge, none exists.  *See* Pl. Opp to Motion to Dismiss 3AC (ECF No. 185) at 8-10.

22   **IV.    Plaintiff's Breach Of Fiduciary Duty Claims Against The Trustee Defendants Are
          Barred By The Statute Of Limitations**

23

24       The 4AC's fiduciary breach claims against the Trustee Defendants must also be dismissed

25   for the additional reason that they are time-barred.  As it concedes in the 4AC, Plaintiff's breach

26   of fiduciary duty claim is subject to a three-year statute of limitations.  4AC ¶ 47; Mass. Gen.

27   Laws ch. 260, § 2A.  Plaintiff first added the Trustees as defendants in this lawsuit on September

28   28, 2010, meaning that Plaintiff's fiduciary breach claim against the Trustees is time-barred if it

arose prior to September 27, 2007. Plaintiff pleads that "beginning on or about August 31, 2007, the Schwab Trustees and Trust breached their fiduciary duties." 4AC ¶ 131. Plaintiff failed to assert its claim against the Trustees within three years after the alleged breach on or about August 31, 2007, and those claims are now time barred.

Recognizing that its claim is untimely, Plaintiff has now pleaded the legal conclusion that these claims should nevertheless be treated as timely because "[t]he deviation in the reported NAV for the Fund compared to the Index prior to September 28, 2007 was not greater than 1%, and certainly insufficient to establish plaintiff's actual knowledge of the claim against the Trustees prior to September 28, 2007." 4AC ¶ 47. This is not the appropriate trigger for the statute of limitations under Massachusetts law. For breach of fiduciary duty claims against trustees, the "injury" occurs at the time that the trustee allegedly repudiates the trust and the statute of limitations begins to run at the time the plaintiff acquires actual knowledge of that repudiation. *See, e.g.*, *Lattuca v. Robsham*, 442 Mass. 205, 213 (2004) ("we consistently have held that a cause of action for breach of fiduciary duty does not arise until the beneficiary is aware that repudiation has occurred"); *Demoulas v. Demoulas Super Mkts., Inc.*, 424 Mass. 501, 518 (1997) ("Our decisions . . . have consistently indicated that a cause of action does not accrue until the trustee repudiates the trust *and* the beneficiary has actual knowledge of that repudiation."). Here, Plaintiff claims that the Trustees breached their fiduciary duties, in part, by investing more than 25% of the Fund's assets in CMOs (4AC ¶¶ 6, 131), but the 4AC concedes that that deviation became public knowledge no later than August 31, 2007, when Defendants disclosed in a prospectus that 37% of the Fund's assets had been invested in non-agency CMOs. 4AC ¶ 110. The Fund's shareholders are charged with actual knowledge of the statements contained in this prospectus. *See In re Keyspan Corp. Sec. Litig.*, 383 F. Supp. 2d 358, 374 (E.D.N.Y. 2003) ("courts have recognized the SEC website as a 'recognized channel of distribution,' and have charged investors with knowledge of documents posted there"); *see also Topham v. State Street Corp.*, 957 N.E. 731, *2 (Mas. App. 2011) (citing *In re Keyspan*). Thus, even if Plaintiff had adequately pleaded a claim for breach of fiduciary duty (which, as set forth

1   *supra*, it did not), the 4AC proves Plaintiff knew about this claim more than three years before

2   filing suit against the Trustees.  Accordingly, the claim against the Trustees is time-barred.[15]

3         Plaintiff's assertion that it is afforded some unspecified grace period based entirely on the

4   comparative performance of the Fund and the Index is not supported by Massachusetts law.[16]

5   The important "policy reasons for the statute of limitations," including "minimiz[ing] the

6   prejudice following from the passage of time" and avoiding the litigation of "stale" matters,

7   would be hopelessly frustrated if a plaintiff, when the existence of facts believed to constitute a

8   breach of fiduciary duty are known to him, could nonetheless wait until the realization of some

9   unspecified degree of financial loss– an event that could have take years to occur if it ever occurs

10  at all—before filing a claim.  *Garabedian v. Schomer*, 622 N.E.3d 177, *2 (2014).

11        Plaintiff knew all the facts that it believes constitute a breach of fiduciary duty by August

12  31, 2007, but chose to wait more than three years before asserting any claim against the Trustees.

13  The law does not permit such a delay.  Plaintiff's breach of fiduciary duty claims against the

14  Trustees are time-barred.

15  **V.    The Trustees Are Protected By A Limitation Of Liability Clause**

16        The Schwab Investments Declaration of Trust, expressly incorporated into the 4AC (¶¶17,

17  98) provides that the Trustees are liable only for conduct arising from "willful malfeasance, bad

18  faith, gross negligence, or reckless disregard" of their duties.  Hess Decl. Ex. L, at Art. VII § 2.

19  Plaintiff alleges no facts to support liability on these terms, relying instead only on a conclusory

20  allegation (¶ 133) that constitutes nothing more than a "[t]hreadbare recital[]" of the Trustees'

21

22  [15]   In all likelihood, Plaintiff acquired "actual knowledge" of its claims far earlier than August

23  31, 2007.  As described *supra* pages 3-6, the Fund publicly disclosed as early as 1998 that it
     *never* intended to perfectly track the Index and it repeatedly disclosed a gradual decrease in

24  the amount of expected overlap between Fund and Index investments.  To the extent that
     Plaintiff bases its breach of fiduciary duty claim on a failure to perfectly mirror the Index,

25  Plaintiff had actual knowledge of this "failure" years before the class period even begins.

26  [16]   In addition to being legally flawed, Plaintiff's argument is utterly unworkable.  Although it
     claims 1% deviation would have been insufficient to provide "actual knowledge," Plaintiff's

27  assertion begs the question as to what amount of deviation would be sufficient.  The answer to
     that question might differ for every shareholder, which, at a minimum, would create an

28  insuperable obstacle to class certification in this case.

DECHERT LLP
ATTORNEYS AT LAW
SAN FRANCISCO

[08-cv-04119] DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS
FOURTH AMENDED COMPLAINT      -24-

1   state of mind.  *Faulkner v. ADT Sec. Servs., Inc.*, 706 F.3d 1017, 1020 (9th Cir. 2013) (quoting

2   *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  Because Plaintiff has failed to allege facts

3   establishing anything beyond ordinary negligence, all the claims against the Trustees fail as a

4   matter of law.  *Blake v. Smith*, 22 Mass. L. Rptr. 173, at *11 (Mass. Super. Ct. 2006) (dismissing

5   fiduciary duty claim against corporate directors because "plaintiff's well-pleaded allegations state

6   no more than due care claims, which are barred by the exculpatory provision"); *see also Langer*

7   *Juice Co. v. Stonhard*, 2014 WL 346643, at *11 (C.D. Cal. Jan. 30, 2014) (dismissing claims on a

8   motion to dismiss based on "limitation of liability and limitation of remedies clauses").

9   **VI.   Plaintiff's Aiding And Abetting Claims Are Not Adequately Pleaded**

10          Because Plaintiff has not adequately pleaded any claims for breach of fiduciary—and such

11   claims are precluded by SLUSA even if they *were* adequately pleaded—Plaintiff's aiding-and-

12   abetting claims (Claims 3-4, 10-11) must also be dismissed because such claims cannot be

13   maintained in the absence of an underlying claim for breach of fiduciary duty.  *See Arcidi v. Nat'l*

14   *Ass'n of Gov't Emps., Inc.*, 856 N.E.2d 167, 174 (Mass. 2006).  Further, the 4AC is devoid of

15   factual allegations establishing that (1) any Defendant had actual knowledge that any other

16   Defendant was breaching a fiduciary duty or that (2) any Defendant received such knowledge and

17   decided to actively participate in the breach.  *See Spinner v. Nutt*, 417 Mass. 549, 556 (1994)

18   ("the plaintiff must show that the defendant knew of the breach and actively participated in it

19   such that he or she could not reasonably be held to have acted in good faith").

20                                   **CONCLUSION**

21          For the foregoing reasons, the 4AC should be dismissed as to all Defendants with

22   prejudice.

23   Dated:  July 24, 2015                     Respectfully Submitted,

24                                             DECHERT LLP
25                                             By:  /s/  Joshua D. N. Hess
                                               Matthew L. Larrabee
26                                             Joshua D. N. Hess
                                               One Bush Street, Suite 1600
27                                             San Francisco, CA 94104
                                               *Attorneys for Defendants*
28

[08-cv-04119] DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS
FOURTH AMENDED COMPLAINT        -25-

1

2

QUINN EMANUEL URQUHART &
SULLIVAN, LLP

3

4

By: _/s/ Karin Kramer_____
Richard A. Schirtzer
Karin Kramer
Arthur Roberts
50 California Street, 22nd Floor
San Francisco, CA 94111

5

6

7

8

9

10

*Attorneys for Mariann Byerwaler, Donald F.
Dorward, William A. Hasler, Robert G.
Holmes, Gerald B. Smith, Donald R. Stephens,
Michael W. Wilsey, Charles R. Schwab,
Randall W. Merk, Joseph H. Wender and John
F. Cogan*

11

12

15661975.22.LITIGATION

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DECHERT LLP
ATTORNEYS AT LAW
SAN FRANCISCO

[08-cv-04119] DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS
FOURTH AMENDED COMPLAINT        -26-