Joseph J. Tabacco, Jr. (SBN 75484)
Christopher T. Heffelfinger (SBN 118058)
**BERMAN DEVALERIO**
One California Street, Suite 900
San Francisco, CA 94111
Telephone: (415) 433-3200
Facsimile: (415) 433-6282
Email: jtabacco@bermandevalerio.com
        cheffelfinger@bermandevalerio.com

*Attorneys for Plaintiff Northstar Financial Advisors, Inc.*

[Additional Counsel on Signature Page]

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN JOSE DIVISION

| | |
|---|---|
| NORTHSTAR FINANCIAL ADVISORS, INC., on Behalf of Itself and all Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> SCHWAB INVESTMENTS; MARIANN BYERWALTER, DONALD F. DORWARD, WILLIAM A. HASLER, ROBERT G. HOLMES, GERALD B. SMITH, DONALD R. STEPHENS, MICHAEL W. WILSEY, CHARLES R. SCHWAB, RANDALL W. MERK, JOSEPH H. WENDER and JOHN F. COGAN, as TRUSTEES OF SCHWAB INVESTMENTS; and CHARLES SCHWAB INVESTMENT MANAGEMENT, INC., <br><br> Defendants. | Case No. 5:08-cv-04119-LHK <br><br> CLASS ACTION <br><br> **PLAINTIFF'S MEMORANDUM IN OPPOSITION TO MOTION TO DISMISS FOURTH AMENDED COMPLAINT** <br><br> Date:      October 1, 2015 <br> Time:      1:30 p.m. <br> Courtroom: 8, 4th Floor, San Jose <br> Judge:   Hon. Lucy H. Koh |

1.      Whether defendants waived their arguments under the Securities Litigation Uniform Standards Act ("SLUSA") addressed to plaintiff Northstar Financial Advisor, Inc. ("Northstar")'s breach of fiduciary duty claims when they acknowledged in their motion to dismiss plaintiff's Third Amended Complaint ("3AC") that "Northstar avoided SLUSA preemption for its fiduciary breach claims by asserting them under Massachusetts law and coming within the 'Delaware carve-out.'" Dkt. 182 at 13, fn. 5. *See also Northstar Fin. Advisors, Inc. v. Schwab Invs.*, 779 F.3d 1036, 1049-50 (9th Cir. 2015) ("App. II.") ("Indeed, the Schwab defendants conceded in their motion to dismiss that Northstar avoided SLUSA preemption for its breach of fiduciary duty claims"). Argument I.A.

2.      Whether any of Northstar's claims are preempted by SLUSA where Northstar asserts only claims for breach of contract, breach of fiduciary duty, aiding and abetting the breach of fiduciary duty, breach of the covenant of good faith and fair dealing, and third party breach of contract, none of which alleges or relies on proof of "an untrue statement or omission of a material fact." Argument I.B.

3.      Whether, if any of Northstar's claims implicate SLUSA, such claims are preserved under the "Delaware carve-out" when Northstar explicitly relies on Massachusetts state law for all its claims (other than the claim for third party breach of contract) and Northstar's claims "involve" "communications" "with respect to voting." Argument I.C.

4.      Whether Northstar complied with the three-year statute of limitations for breach of fiduciary duty claims under Massachusetts law when it joined the Trustees as defendants in the 3AC on September 28, 2010, which was within three years of the event defendants argue triggered investors' knowledge of their breach of fiduciary duty claims (*i.e.,* the November 2, 2007 publication of the Total Bond Market Fund ("Fund")'s fiscal year ended August 31, 2007 Annual Report) (pages 1-3 and 65-78 of which are annexed as Exhibit A to the Declaration of Robert C. Finkel In Opposition to Defendants' Motion to Dismiss filed herewith ("Finkel Decl.")). Argument II.

5.　　　　Whether defendants waived their arguments that the Fourth Amended Complaint ("4AC") fails to plead claims for breach of fiduciary duty against the Trust and the Advisor when their counsel admitted at oral argument before the Ninth Circuit that Northstar's allegations of breach of fiduciary duty stated a claim. *See* Exhibit B to the Finkel Decl. at 32:11-33:17.　Argument III.

6.　　　　Whether, if the Court reaches the substance of Northstar's fiduciary duty claims notwithstanding defendants' counsel's admissions, such claims are sufficiently stated under Federal Rule 8(a) pleading standards.　Argument III.A.

7.　　　　Whether defendants waived their arguments with respect to Northstar's aiding and abetting claims because they were not contained in defendants' motion to dismiss the 3AC, and in any event, defendants' arguments are without merit.　Argument IV.

8.　　　　Whether Northstar's claims against the Trustees are barred by the limitation of liability clause in the Declaration of Trust, where defendants had not raised this issue on their motion to dismiss the 3AC and therefore the issue is not ripe on remand, and where the 4AC asserts claims against the Trustees for "willful malfeasance, bad faith, gross negligence, or reckless disregard of their duties."　Argument V.

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ...................................................................................iii

PRELIMINARY STATEMENT ........................................................................... 1

PERTINENT PROCEDURAL BACKGROUND ................................................. 3

ARGUMENT ........................................................................................................ 6

I.      NONE OF PLAINTIFF'S CLAIMS ARE PRECLUDED BY SLUSA ......................... 6

        A.      Schwab Is Foreclosed From Arguing That Northstar's Fiduciary Duty
                Claims Are Precluded By SLUSA .......................................................... 6

        B.      In Any Event, Plaintiff's Contract (and other) Claims Are Not Based on
                "Misrepresentations" And Do Not Implicate SLUSA ......................... 7

        C.      The Delaware Carve-Out Would Preserve Northstar's Claims Even If
                SLUSA Would Otherwise Preclude Them ........................................ 12

                1.      Massachusetts Law Governs Plaintiff's Breach Of Contract Claims .... 12

                2.      Under The "Internal Affairs Doctrine," Massachusetts Law
                        Governs Northstar's Breach Of Fiduciary Duty Claims Against
                        The Advisor. ................................................................... 13

                3.      This Case Is A "Permissible Action" ................................... 15

II.     PLAINTIFF'S CLAIMS AGAINST THE TRUSTEES FOR BREACH OF
        FIDUCIARY DUTY ARE NOT BARRED BY THE STATUTE OF
        LIMITATIONS. ................................................................................ 16

        A.      Judge Illston Previously Rejected Defendants' Statute of Limitations
                Defense ......................................................................... 16

        B.      Plaintiff's Fiduciary Duty Causes of Action Against the Trustees Were
                Timely .......................................................................... 17

III.    HAVING ADMITTED THAT PLAINTIFF ADEQUATELY PLEADED ITS
        FIDUCIARY DUTY CLAIMS, DEFENDANTS ARE PRECLUDED FROM
        ARGUING OTHERWISE ........................................................................... 19

        A.      The 4AC Clearly Alleges Breaches By Each Defendant ................................. 20

        B.      The Trust And The Advisor Owe Duties To Shareholders ............................. 22

IV.     DEFENDANTS HAVE WAIVED AIDING AND ABETTING ARGUMENTS ........ 23

V.      THE LIMITATION OF LIABILITY CLAUSE IN THE DECLARATION OF
        TRUST DOES NOT AFFORD A BASIS TO DISMISS NORTHSTAR'S
        CLAIMS AGAINST THE TRUSTEES ......................................................... 24

CONCLUSION .................................................................................................... 25

# <u>TABLE OF AUTHORITIES</u>

**Cases**

*275 Washington St. Corp. v. Hudson River Int'l, LLC*,
    465 Mass. 16 (2013) ................................................................................. 1

*ACLU v. Masto*,
    670 F.3d 1046 (9th Cir. 2012) ................................................................. 6

*In re Adamson Apparel, Inc.*,
    785 F.3d 1285 (9th Cir. 2015) ............................................................... 20

*Akkerman v. Mecta Corp.*,
    72 Fed. Appx. 652 (9th Cir. 2003) ......................................................... 17

*Arizona v. California*,
    460 U.S. 605 (1983) ............................................................................... 17

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ............................................................................... 20

*Beckett v. Mellon Investor Servs. LLC*,
    329 F. App'x 721 (9th Cir. 2009) ............................................................. 7

*Blake v. Smith*,
    22 Mass. L. Rptr. 173 (Mass. Super. 2006) ........................................... 25

*In re Brown Sch.*,
    368 B.R. 394 (Bankr. D. Del. 2007) ...................................................... 25

*Chadbourne & Parke LLP v. Troice*,
    134 S. Ct. 1058 (2014) ........................................................................... 11

*In re Charles Schwab Corp. Sec. Litig.*,
    No. C 08-01510-WHA, 2009 WL 1371409 (N.D. Cal. May 15, 2009) ......... 21

*In re Charles Schwab Corp. Sec. Litig.*,
    257 F.R.D. 534 (N.D. Cal. 2009) ........................................................... 14

*Chokel v. Genzyme Corp.*,
    449 Mass. 272 (2007) ............................................................................ 23

*City of Ann Arbor Employees' Retirement Sys. v. Gecht*,
    No. C-06-7453 EMC, 2007 WL 760568 (N.D. Cal. March 9, 2007) ............ 16

*Concha v. London*,
    62 F.3d 1493 (9th Cir. 1995) ........................................................... 20, 23

*Crimi v. Barnholt*,
    No. C 08–02249 CRB, 2008 WL 4287566 (N.D. Cal. Sept. 17, 2008) ........ 16

*In re Daisy Sys. Corp.*,
    97 F.3d 1171 (9th Cir. 1996) ................................................................. 23

*Demoulas v. Demoulas Super Markets, Inc.*
  424 Mass. 501 (1997) ............................................................................................... 17

*Digney v. Blanchard,*
  226 Mass. 335 (1917) ........................................................................................... 22, 25

*Doe v. Harbor Schs., Inc.,*
  446 Mass. 245 (2006) ........................................................................................... 17, 22

*Edgar v. MITE Corp.,*
  457 U.S. 624 (1982) ................................................................................................... 13

*F.D.I.C. v. Jackson,*
  133 F.3d 694 (9th Cir. 1998) ..................................................................................... 25

*Falkowski v. Imation Corp.,*
  309 F.3d 1123 (9th Cir. 2002) ..................................................................................... 7

*Federal Agricultural Mort. Corp. v. It's A Jungle Out There, Inc.,*
  No. C 03-3721 VRW, 2005 WL 3325051 (N.D. Cal. Dec. 7, 2005)........................... 6, 24

*Fernandes v. Havkin,*
  731 F. Supp. 2d 103 (D. Mass. 2010) ...................................................................... 22

*Freeman Invs., L.P. v. Pac. Life Ins. Co.,*
  704 F.3d 1110 (9th Cir. 2013) ............................................................................ 10, 11

*Hannon v. Wells Fargo Bank, N.A.,*
  Case No. 14-CV-05381-LHK, 2015 WL 4776305 (N.D. Cal. Aug. 13, 2015)...... 6, 14, 20

*Herron v. Best Buy Stores, LP,*
  No. 12-cv-02103, 2013 WL 4432019 (E.D. Cal. Aug. 16, 2013).................................. 6

*In re Hilson,*
  448 Mass. 603 (2007) ............................................................................................... 22

*Huang v. Reyes,*
  No. C 07-5950 CRB, 2008 WL 648519 (N.D. Cal. March 6, 2008)............................. 15

*Kaufman v. Kaufman,*
  79 Mass. App. Ct. 1118 (2011)................................................................................. 17

*In re Keyspan Corp. Sec. Litig.,*
  383 F. Supp. 2d 358 (E.D.N.Y 2003) ........................................................................ 19

*In re Kingate Mgmt. Ltd. Litig.,*
  784 F.3d 128 (2d Cir. 2015)...................................................................................... 11

*Koe v. Mercer,*
  450 Mass. 97 (2007) ................................................................................................. 17

*Laker v. Freid,*
  854 F. Supp. 923 (D. Mass. 1994) ............................................................................ 23

*Lapidus v. Hecht,*
    232 F.3d 679 (9th Cir. 2000) ......................................................................... 15

*Lattuca v. Robsham,*
    442 Mass. 205 (2004) ................................................................................. 17

*LeBlanc v. Logan Hilton Joint Venture,*
    463 Mass. 316 (2012) ................................................................................. 14

*Mattel, Inc. v. MGA Entm't, Inc.,*
    782 F. Supp. 2d 911 (C.D. Cal. 2011) ........................................................... 6

*McDermott, Inc. v. Lewis,*
    531 A.2d 206 (Del. 1987) ............................................................................ 14

*In re Metlife Demutualization Litig.,*
    No. CV 00-2258, 2006 WL 2524196 (S.D.N.Y. 2006) ................................... 16

*Meyer v. Putnam Int'l Voyager Fund,*
    220 F.R.D. 127 (D. Mass. 2004) ................................................................. 21

*Miller v. Nationwide Life Ins. Co.,*
    391 F.3d 698 (5th Cir. 2004) ........................................................................ 9

*NES Rentals v. Maine Drilling & Blasting, Inc.,*
    465 Mass. 856 (2013) ................................................................................. 19

*Northstar Fin. Advisors, Inc. v. Schwab Invs.,*
    609 F. Supp. 2d 938 (N.D. Cal. 2009) .................................................. *passim*

*Northstar Fin. Advisors, Inc. v. Schwab Invs.,*
    781 F.Supp.2d 926 (N.D. Cal. 2011) ..................................................... *passim*

*Northstar Fin. Advisors, Inc. v. Schwab Invs.,*
    807 F. Supp. 2d 871 (N.D. Cal. 2011) ................................................... *passim*

*Northstar Fin. Advisors, Inc. v. Schwab Invs.,*
    779 F.3d 1036 (9th Cir. 2015) ............................................................. *passim*

*O'Brien v. Pearson,*
    449 Mass. 377 (2007) ................................................................................. 21

*Patsos v. First Albany Corp.,*
    433 Mass. 323 (2001) ................................................................................. 22

*Payan v. Aramark Mgmt. Servs. Ltd. P'ship,*
    495 F.3d 1119 (9th Cir. 2007) .................................................................... 17

*Petersen v. Sec. Settlement Corp.,*
    226 Cal. App. 3d 1445 (1991) ..................................................................... 22

*Petrell v. Rakoczy,*
    No. CA012849F, 3952005 WL 1683600 (Mass. Super. Ct. July 11, 2005)........ 22

*Proctor v. Vishay Intertechnology, Inc.,*
    584 F. 3d 1208 (9th Cir. 2009) ..................................................................... 9

*Schultz v. Rhode Island Hosp. Trust Nat'l Bank, N.A.*,
    CA No. 88-2870-T, 1993 U.S. Dist. LEXIS 20110 (D. Mass. Nov. 16, 1993) ............... 19

*Selmark Associates, Inc. v. Ehrlich*,
    467 Mass. 525 (2014) ........................................................................................... 23

*Spinner v. Nutt*,
    417 Mass. 549 (1994) ........................................................................................... 24

*State Farm Mut. Auto. Ins. Co. v. Superior Court*,
    114 Cal. App. 4th 434 (Cal. App. 2003) .............................................................. 13

*Stoody-Broser v. Bank of America*,
    No. C 08-02705, 2009 WL 2707393 (N.D. Cal. Aug. 25, 2009) ...................................... 10

*Stoody-Broser v. Bank of America*,
    442 Fed. Appx. 247 (9th Cir. 2011) ..................................................................... 10

*Stoody-Broser v. Bank of America*,
    No. C 08-02705 JSW, 2012 WL 1657187 (N.D. Cal. 2012) ........................................... 10

*Strigliabotti v. Franklin Res., Inc.*,
    No. C04-0083, 2005 WL 645529 (N.D. Cal. March 7, 2005) .................................. 23, 24

*In re Textainer Partnership Securities Litig.*,
    No. C-05-0969 MMC, 2005 WL 1791559 (N.D. Cal. July 27, 2005) ............................ 13

*Tibble v. Edison Intern.*,
    135 S. Ct. 1823 (2015) ......................................................................................... 21

*Topham v. State Street Corp.*,
    80 Mass. App. Ct. 1116 (Mass. App. Ct. 2011) ................................................... 19

*In re Tower Air Inc.*,
    416 F.3d 229 (3d Cir. 2005) ................................................................................ 25

*Tuttle v. Sky Bell Asset Mgmt., LLC*,
    No. C 10-03588 WHA, 2010 WL 4807093 (N.D. Cal. Nov. 19, 2010) ........................ 10

*In re Verisign, Inc. Deriv. Litig.*,
    531 F.Supp.2d 1173 (N.D. Cal. 2007) ................................................................. 13

*Vivien v. WorldCom, Inc.*,
    No. 02-01329 WHA, 2002 WL 31640557 (N.D. Cal. July 26, 2002) ............................ 21

*Voss v. Sutardja*,
    Case Nos. 14-CV-01581 LHK, 2015 WL 349444 (N.D. Cal. Jan. 26, 2015) ................. 14

*Walling v. Beverly Enters.*,
    476 F.2d 393 (9th Cir. 1973) ............................................................................... 11

*Webster v. N.Y. Life Ins. and Annuity Corp.*,
    386 F. Supp. 2d 438 (S.D.N.Y. 2005) .................................................................. 11

**Statutes**

15 U.S.C. § 77p(d)(1) ......................................................................... 7, 12, 15

15 U.S.C. §§ 77p(b), 78bb(f)(1) ................................................................ 7

Mass. Gen. Laws ch. 156D § 2.02(b)(4) ................................................... 25

Mass. Gen. Laws ch. 260 §2A .................................................................. 17


**Rules**

F.R.C.P. 8(a) .......................................................................................... 24

F.R.C.P. 9(b) .......................................................................................... 24

Mass. R. Civ. P. 15(c) ............................................................................ 19

# PRELIMINARY STATEMENT

This class action alleges claims for breach of contract, breach of fiduciary duty, aiding and abetting the breach of fiduciary duty, third party breach of contract, and breach of the covenant of good faith and fair dealing. Northstar's claims derive from a July 25, 1997 Proxy Statement and majority shareholder vote pursuant to which defendant Schwab Investments (the "Trust") established the Fund's fundamental investment objectives (i) "to attempt to provide a high level of current income consistent with preservation of capital seeking to track the investment results of a particular bond index [(the "Index")] through the use of an indexing strategy" (¶¶83-89[1]) and (ii) restricting the concentration of securities in any industry (except as necessary to track the Index) to no greater than 25% (¶¶90-92). Those fundamental investment objectives were only changeable by majority shareholder vote. By August 31, 2007, and for the next eighteen months, defendants[2] caused the Fund to deviate from the Index, resulting in the Fund underperforming the Index by 12.64% (¶¶7, 110-11).[3]

Defendants raise eight "Issues" in support of their motion to dismiss the 4AC. However, only part of Issues 1 and 4 are properly before this Court. The other six issues were not raised by defendants in their motion to dismiss the Third Amended Complaint ("3AC") and thus are not properly the subject of the Ninth Circuit's remand, or are issues that defendants waived or conceded before this Court or the Ninth Circuit.

Specifically, defendants waived part of Issue 1 (SLUSA preclusion of Northstar's claims for breach of fiduciary duty), and Issues 2 and 3 (the applicability of the "Delaware carve out" to the fiduciary duty claims) by not raising and/or by conceding such points in briefing their

---

[1] Unless otherwise stated, all references to ("¶¶ __") are to plaintiff's Fourth Amended Complaint ("4AC") (Dkt. 214).

[2] Defendants are the Trust, the Trustees charged with responsibility for the Trust, and Charles Schwab Investment Management, Inc. (the Fund's investment advisor, *i.e.*, the "Advisor"). Defendants, at times, are referenced in the aggregate as "Schwab."

[3] Defendants go outside the complaint to argue that Henry Holz (Northstar's assignor) eked out a small profit (after including monthly dividend payments) over the 14 months in which he owned shares of the Fund. Defendants' Motion to Dismiss Fourth Amended Complaint ("Db") at 1. However, Holz's investment substantially underperformed the Index, which is the true measure of his "benefit of the bargain" damages. *See 275 Washington St. Corp. v. Hudson River Int'l, LLC*, 465 Mass. 16, 28 (2013).

motion to dismiss the 3AC before this Court. *Infra* at 4, 6. Defendants conceded Issues 5 and 6 (concerning whether plaintiff properly alleged the existence or breach of a fiduciary duty against the Advisor or the Trust) at oral argument before the Ninth Circuit. *Infra* at 4-5, 19-20.[4] Defendants did not raise the defenses embraced by Issue 7 (limitation of liability under the Declaration of Trust) or Issue 8 (whether plaintiff properly alleged aiding and abetting liability) on their motion to dismiss the 3AC (Dkt. 182) and therefore may not to assert them now.

Thus, with respect to plaintiff's claims for (i) breach of fiduciary duty and (ii) aiding and abetting breaches of fiduciary duty, there are no existing *appropriate* motions to dismiss (under SLUSA or otherwise). Those claims must go forward through discovery.

As to the only two issues properly before this Court, Issue 1 (SLUSA) should be rejected because plaintiff asserts garden-variety claims for breach of contract (and breach of fiduciary duty) that do even allege or rely on false statements that would cause SLUSA preemption. If any ambiguity existed in March 2011 when this Court dismissed plaintiff's Second Amended Complaint ("2AC") based on SLUSA without prejudice (781 F.Supp.2d 926 (N.D. Cal. 2011) ("March 2011 Op.")), no such ambiguity currently exists in light of the significant amendments plaintiff made in the 3AC and 4AC, and the intervening decisions of the U.S. Supreme Court (*Troice*), Courts of Appeal (*Freeman* and *Kingate*), and District Courts (*Tuttle* and *Stoody-Broser*). Plaintiff strictly alleges that defendants made a contractual commitment to operate the Fund as an index fund, and breached that contract and their fiduciary duties by investing over 25 percent of the Fund's assets in non-agency mortgage backed securities.

With respect to Issue 4, plaintiff first charged the Trustees with breaching their fiduciary duties to investors in the 2AC filed on September 28, 2010. Defendants argue that investors were placed on notice of the breach more than three years prior to that filing because the Fund had invested 37% of its assets in collateralized mortgage securities as early as August 31, 2007. However, that list of securities was not filed with the SEC or available to investors until November 2, 2007, less than three years before the filing of the 2AC. In addition, that list was

---

[4] Defendants do not dispute that the Trustees owed fiduciary duties to investors in the Fund, as the Ninth Circuit held in App. II, at 1057 (Db at 20:14-17).

insufficient to place investors on *actual* notice of the defendants' *repudiation* of its fundamental

investment objective, which Massachusetts law requires to trigger the limitations statute.

Even were the Court to consider the substance of the six other issues (that were waived

or conceded) in defendants' motion to dismiss, it would conclude that defendants' motion is

also without merit as to those issues.

## PERTINENT PROCEDURAL BACKGROUND

Northstar did not sue the Trustees in its initial complaint (Dkt. 1), but only sued the

Trust and the Advisor, among other defendants.  In litigating the motion to dismiss that

complaint, defendants conceded that "[w]e do not argue that no person or entity owes a

fiduciary duty to the fund's investors.  But Northstar has not sued any of the proper defendants -

it has instead sued the fund itself."  Dkt 47 at 12:17-19.   Following the disposition of the first

appeal (in which the Ninth Circuit held that there was no private right of action under the

Investment Company Act of 1940), Northstar filed the 2AC.  In light of defendants' comments

that Northstar had sued the wrong parties, Northstar added the Trustee defendants to the

complaint and asserted claims against them for breaches of fiduciary duty and aiding and

abetting the Advisor's breaches of fiduciary duty (Dkt. 127 at ¶ 20).

In its March 2011 Op., this Court dismissed Northstar's contract claim with prejudice

and dismissed plaintiff's other claims without prejudice with respect to SLUSA.  The Court,

among other things, granted Northstar leave to amend to plead that it was entitled to invoke the

"Delaware carve-out" under SLUSA.  781 F. Supp. 2d at 937-38.

Northstar filed its 3AC on March 25, 2011.  In that amended pleading, plaintiff clarified

that it was not asserting any of its claims based on allegations of misrepresentations or

omissions, and it also explicitly invoked the Delaware carve-out (Dkt. 181, ¶¶ 15, 69).

Defendants moved to dismiss the 3AC (Dkt. 182) raising the following eight Issues :  (1) no

defendant owed a fiduciary duty to investors (pages 3-8); (2) plaintiff had not alleged a breach

of duty by any defendant (pages 8-9); (3) the statute of limitations barred the fiduciary breach

claim against the Trustees (pages 9-10); (4) plaintiff's breach of fiduciary duty claims, if they

existed at all, could not be asserted directly (pages 10-12); (5) the aiding and abetting claim

should be dismissed because no underlying duty or breach had been properly alleged (page 12); (6) SLUSA preempted the third-party beneficiary claim (page 13-14); (7) plaintiff was not a third-party beneficiary of the Investment Advisory Agreement ("IAA") between the Trust and Advisor (page 14-15); and (8) Northstar's demand for a jury trial should be stricken (page 16).

Significantly, defendants did *not* move to dismiss Northstar's aiding and abetting claim on the substantive grounds they now assert (*i.e.*, that plaintiff had not adequately alleged knowing and participatory conduct in the underlying misconduct). Dkt. 182 at 12. Nor did defendants move to dismiss plaintiff's breach of fiduciary duty claims in the 3AC on the basis of SLUSA. Rather, defendants conceded that "Northstar avoided SLUSA preemption for its fiduciary breach claims by asserting them under Massachusetts law and coming within the 'Delaware carve-out.'" Dkt. 182 at 13, fn. 5. *See also* 779 F.3d at 1049-50 ("Indeed, the Schwab defendants conceded in their motion to dismiss" that plaintiff avoided SLUSA preemption on its breach of fiduciary duty claims). Defendants also assert another argument for the first time, *i.e.*, that the Trustees are insulated from liability based on an exculpatory clause in the Trust's Declaration of Trust because plaintiff supposedly has not alleged anything more than ordinary negligence by the Trustees.

Further, at oral argument before the Ninth Circuit, defense counsel conceded Issues 1 and 2 in their motion to dismiss the 3AC (Northstar's claim for breach of fiduciary duty) by acknowledging that Northstar had sufficiently alleged a breach of fiduciary duty, and arguing only that the claim was derivative rather than direct:

| | |
|---|---|
| R. Schirtzer: | So the issue is not whether there are fiduciary duties. The issue is whether those fiduciary claims can be brought directly as Northstar seeks to bring or must be brought derivatively. |
| COURT: | So you agree that they allege a viable claim for breach of fiduciary duty; the only question is who can they -- what kind of lawsuit they can bring, whether it's derivative or not? |
| R. Schirtzer: | I agree that there is sufficient case precedent to suggest that under these circumstances a derivative breach of fiduciary duty claim can be brought. ... |
| COURT: | So you agree -- you answered my question, I just want to know, you agree that there was a breach of fiduciary duty if you accept the allegations of the complaint and the only question is the remedy? |
| R. Schirtzer: | I agree that there could be, under the facts alleged accepted as true, a derivative claim for breach of fiduciary duty. |
| COURT: | So there is a breach of fiduciary duty, the only question is whether it's derivative or not? |

R. Schirtzer:     Yes, your honor.

Finkel Decl., Exhibit B at 32:11-33:17;
http://www.ca9.uscourts.gov/media/view.php?pk_id=0000010864 at minute mark 28:53 to 29:56]

The Ninth Circuit expressly acknowledged defendants' admission in its opinion: "Defendants conceded at oral argument that the allegations in the operative complaint are sufficient to state a cause of action for breach of fiduciary duty." 779 F.3d. at 1056.

In reversing this Court's dismissal of the 3AC, the Ninth Circuit also resolved Issues 4, 5 and 7 raised by defendants in their motion to dismiss the 3AC. Thus, the Court of Appeals held Northstar's claims for breach of fiduciary duty were direct, not derivative (3AC, Issue No 4). 779 F.3d. at 1056-62. It also found that plaintiff had sufficiently alleged claims for breach of contract and for third party beneficiary breach of contract (Dkt. 182, Issue 7). *Id.* at 1050-56, 1062-65. Although not explicitly addressed in App. II, the Ninth Circuit also implicitly reinstated plaintiff's claims for aiding and abetting the breach of fiduciary duty because the only ground for the dismissal had been the dismissal of the underlying fiduciary duty claim; defendants had not otherwise challenged the aiding and abetting claim (Dkt. 182, Issue 5).

The Ninth Circuit remanded the action "for the district judge to 'address the other arguments raised by the parties regarding [Northstar's] claims for breach of fiduciary duty'" (*citing* 807 F. Supp. 2d at 881), and deferred to the district judge "to address the effect of SLUSA on the various common law causes of action." 779 F.3d. at 1065.

In view of the above, the only issues raised by defendants' motion to dismiss the 4AC that are now appropriately before the Court are whether plaintiff's claims for breach of contract and breach of third-party beneficiary of contract are barred by SLUSA (Issue 1 in defendants' present motion; having conceded the applicability of the Delaware carve-out to the breach of fiduciary duty claims), and whether Northstar's claims against the Trustees are barred by the statute of limitations (Issue 4 in defendants' present motion).

I.  **NONE OF PLAINTIFF'S CLAIMS ARE PRECLUDED BY SLUSA**

    A.    **Schwab Is Foreclosed From Arguing That Northstar's Fiduciary Duty Claims Are Precluded By SLUSA**

In their motion to dismiss Northstar's 3AC, Schwab did not argue that Northstar's fiduciary duty claims were precluded by SLUSA. They confined their SLUSA challenge to plaintiff's third-party beneficiary breach of contract claim. Dkt. 182 at 1:12-13, 13:8-14:16. In fact, defendants affirmatively conceded that Northstar had "avoided preemption for its fiduciary duty claims by asserting them under Massachusetts law and coming within the 'Delaware carve-out' to SLUSA." *Id.* at 13, n.5. *See also Northstar*, 779 F.3d at 1049-50 (recognizing that Schwab had waived its SLUSA argument with respect to the breach of fiduciary duty claims).

Defendants are foreclosed from now arguing that SLUSA precludes Northstar's breach of fiduciary duty claims. *First*, defendants are not permitted to raise that argument because they failed to present it in their motions to dismiss the 3AC. "The filing of an amended complaint will not revive the right to present by motion defenses that were available but were not asserted in timely fashion prior to the amendment of the pleading.'" *Federal Agricultural Mort. Corp. v. It's A Jungle Out There, Inc.*, No. C 03-3721 VRW, 2005 WL 3325051, at *5 (N.D. Cal. Dec. 7, 2005) (quoting Wright & Miller, 5D *Federal Practice & Procedure* § 1388, at 491-92 (3d ed. 2004)); *accord Herron v. Best Buy Stores, LP*, No. 12-cv-02103, 2013 WL 4432019, at *4 (E.D. Cal. Aug. 16, 2013). *Second,* the doctrine of judicial estoppel precludes parties from "changing positions according to the exigencies of the moment." *ACLU v. Masto*, 670 F.3d 1046, 1065 (9th Cir. 2012) (quoting *New Hampshire v. Maine*, 532 U.S. 742 (2001)); *see also Hannon v. Wells Fargo Bank, N.A.*, Case No. 14-CV-05381-LHK, 2015 WL 4776305, at *6 (N.D. Cal. Aug. 13, 2015). Thus, defendants are bound by their earlier concession.[5]

---

[5] Defendants' citations for the proposition that they are entitled to raise new defenses to the 4AC (Db at 16, fn. 10) are inapposite not only because they go against the weight of authority (*see Fed. Agr. Mort. Corp.*, 2005 WL 3235071 at *5), but also because they had expressly conceded the applicability of the carve-out in prior proceedings. *See, e.g., Mattel, Inc. v. MGA Entm't, Inc.*, 782 F. Supp. 2d 911, 1017 (C.D. Cal. 2011) (referencing "previously unmentioned affirmative defenses").

**B.    In Any Event, Plaintiff's Contract (and other) Claims Are Not Based on "Misrepresentations" And Do Not Implicate SLUSA**

SLUSA prohibits a class action brought on behalf of more than 50 people if the action is based on state law and alleges (a) "an untrue statement or omission of a material fact in connection with the purchase or sale of a covered security;" or (b) "that the defendant used or employed any manipulative or deceptive device or contrivance in connection with the purchase or sale of a covered security."  15 U.S.C. §§ 77p(b), 78bb(f)(1).

In its March 2011 Op., the Court stated that "the central theme of the [2]AC and all of Plaintiffs' claims is that defendants made misrepresentations about how investments in the Fund would be managed" and that plaintiff's state law claims were barred by SLUSA.  781 F. Supp. 2d at 934-35.  The Court, however, granted plaintiff leave to amend (i) to plead compliance with the "Delaware carve-out" applicable to claims "based upon the statutory or common law of the State in which the issuer ... is organized," 15 U.S.C. § 77p(d)(1)(A); and (ii) "[b]ecause Plaintiffs could conceivably amend their pleadings to avoid SLUSA preclusion."  *Id.* at 937-38.

Plaintiff disagreed with the Court's March 2011 Op., among other reasons, because the 2AC contained no allegations of misrepresentations or omissions.  The 2AC only contained allegations of contractual commitments made in 1997 and subsequently breached.  As such, Northstar believed (and continues to believe) that none of its claims warranted dismissal.[6] Nonetheless, plaintiff complied with the Court's March 2, 2011 directions and did not include in the 3AC any allegations that could even arguably be found to concern misrepresentations with respect to the Fund's fundamental investment objectives.  Among other things, Northstar deleted references to a Semi-Annual Report to Shareholders for the period ended February 27, 2008, which Northstar had alleged misrepresented the true reason for Schwab's underperformance compared to the Index.  *See* 2AC [Dkt. 127] ¶¶ 95-97 (allegations omitted from the 3AC and 4AC).  Moreover, plaintiff clarified in the 3AC that its state law claims were

---

[6] Among the cases cited by plaintiff to the Court for this proposition were *Beckett v. Mellon Investor Servs. LLC*, 329 F. App'x 721, 723-24 (9th Cir. 2009); *Falkowski v. Imation Corp.*, 309 F.3d 1123, 1131-32 (9th Cir. 2002); and *In re Charles Schwab Corp. Secs. Litig.*, 257 F.R.D. 534, 551 (N.D. Cal. 2009), each of which – as with this action – alleged claims for breach of contract or breach of fiduciary duty that were not grounded on allegations of misrepresentations or omissions and found not to be precluded by SLUSA.

based on Massachusetts state law (the state of the Trust's formation) and that plaintiff was entitled to rely on the "Delaware carve-out." *See, e.g.*, Dkt. 181, ¶15; 4AC, ¶15.[7]

Northstar also divided its claims between investors in the Fund prior to the Fund's deviation from the Index on or about August 31, 2007 (the "pre-breach period") (Causes of Action 1-7), and investors in the Fund subsequent to the Fund's deviation from the Index from August 31, 2007 through February 29, 2009 (the "post-breach period") (Causes of Action 8-14). Although Northstar did not allege misrepresentations in either the pre-breach, or post-breach periods, plaintiff thought it appropriate to separate the two periods in the event the Court were to come to a contrary conclusion.

The Court did not reach the issue of SLUSA preclusion. Instead, it dismissed the 3AC principally on the grounds that the breach of fiduciary duty claims had to be brought derivatively. *See* 807 F. Supp. 2d 871, 881 (N.D. Cal. 2011).

Following the Ninth Circuit ruling in App. II, Northstar amended its complaint. The 4AC contains essentially the same allegations as the 3AC, except adds back the breach of contract and breach of covenant of fair dealing claims that were reinstated by the Ninth Circuit (4AC, Causes of Action 6-7 and 13-14). SLUSA does not apply to any claims asserted in the 4AC. Northstar makes no claims of misrepresentations or omissions with respect to the purchase or sale of securities.[8] And several cases decided after the Court's ruling on the 2AC make it clear that by not alleging or being dependent on proving a falsehood, plaintiff's claims are not precluded by SLUSA (discussed *infra* at 10-11).

As to the allegations in its 4AC, Northstar first contends that defendants had contractual and fiduciary obligations to invest the Fund's assets consistently with the Fund's fundamental investment policy to seek to track the Index. 4AC, ¶¶ 83-109. Plaintiff then alleges that defendants breached both their contractual and fiduciary obligations by causing the Fund to

---

[7] Because of the number of changes between the 2AC and 4AC, plaintiff does not believe that a red-line of the changes would be of assistance to the Court.

[8] Defendants argue that plaintiff also relies on other statements in support of its contention that the Trust and Advisor owe fiduciary duties to investors. Db at 11:19-12:4. Those statements were also true at the time made and plaintiff relies on them for being true because they accurately describe Schwab's relationship of "trust" with its investors. *See* 4AC, ¶53.

deviate from its fundamental investment objective when it subsequently invested in high-risk non-agency CMOs. *Id*, ¶¶ 106-22.

Although Schwab argues that the "gravamen" of Northstar's 4AC is that "Defendants misrepresented the investment strategy of the Fund, both in the 1997 Proxy and in subsequent prospectus offering to shareholders" (Db at 8:23-24), this is not true. Northstar does not allege that Schwab's contractual undertakings were false when made, but rather that Schwab failed to adhere to its contractual undertakings. The Ninth Circuit correctly characterized Northstar's claim as alleging that the managers of the Fund "failed to adhere to two of the Fund's fundamental investment objectives; namely, that it seek to track a particular index and that it not over-concentrate its investments in any one industry." 779 F.3d. at 1039. That Schwab failed to advise shareholders for eighteen months (beginning in the fall of 2007; the "Breach Period") that it was breaching its contract with investors does not convert a garden-variety breach of contract and breach of fiduciary duty claim into a fraud claim. *See Beckett, Falkowski, and Charles Schwab,* cited *supra* at note 6 (finding against SLUSA preemption because state law claims were not based on misrepresentations).[9] Indeed, the Ninth Circuit's holding that the 2AC sufficiently pled a breach of contract claim (779 F.3d at 1050-56) disposes of Schwab's argument that the contract claim is really a fraud claim in "sheep's clothes."

Certainly, plaintiff's third party breach of contract claim, which focuses on the Advisor's performance of duties for the Fund under the Investment Advisory Agreement (*see* 4AC, ¶¶ 156-71 and 208-23), does not implicate *any* allegations of misrepresentations or SLUSA.

Of the cases the Court cited in its March 2011 Op. in support of its finding of SLUSA preemption (*see* 781 F.Supp.2d at 935), two are distinguishable because they involved allegations of false statements or omissions of material facts. *See Proctor v. Vishay Intertechnology, Inc.,* 584 F. 3d 1208, 1221-22 (9th Cir. 2009); *Miller v. Nationwide Life Ins. Co.*, 391 F.3d 698, 702 (5th Cir. 2004). The two other opinions relied on by the Court were

---

[9] Defendants' SLUSA arguments just make up facts. *See, e.g.,* Db at 12:10-11(arguing falsely that 4AC, ¶ 188 contains allegations of defendants' false promises).

limited by subsequent decisions.  In *Tuttle v. Sky Bell Asset Mgmt., LLC*, No. C 10-03588

WHA, 2010 WL 4807093 (N.D. Cal. Nov. 19, 2010), Judge Alsup had dismissed plaintiffs'

breach of fiduciary duty claim because "[p]laintiffs describe misrepresentations without using

the word." *Id.* at *5.  However, Judge Alsup denied the defendants' motion to dismiss the

amended complaint after the plaintiffs had removed the offending words, finding that the claim

no longer implicated SLUSA:

> Whereas the original complaint focused on the "illusion" that the investments were being handled by knowledgeable staff, the amended complaint emphasizes that defendants had an obligation to act with care and failed to do so…. Any remaining references to misrepresentations or omissions can be properly described as extraneous details. [*Tuttle*, 2011 WL 208060, at *2 (N.D. Cal. Jan. 21, 2011).]

Similarly, in *Stoody-Broser v. Bank of America*, No. C 08-02705, 2009 WL 2707393

(N.D. Cal. Aug. 25, 2009), Judge White had dismissed the plaintiff's complaint for breach of

fiduciary duty against a trust administrator on SLUSA grounds without leave to amend after

finding that the plaintiff had "framed the pleading in an effort to avoid SLUSA preemption" and

that "the essence of the complaint is that Defendants misrepresented and omitted material facts"

relating to the fund's investments.  *Id.* at *2-4.  The Ninth Circuit directed the lower court to

grant the plaintiff leave to amend, reasoning that claims on behalf of a trust's beneficiaries for

breach of fiduciary duty do not violate SLUSA so long as the complaint does not allege

misrepresentations, omissions, or fraudulent practices coincidental to the violation.  442 Fed.

Appx. 247, 249 (9th Cir. 2011).  On remand, Judge White denied the defendants' renewed

motion to dismiss the amended complaint, holding that "where the original complaint alleged

that Plaintiff and other trust beneficiaries similarly situated were misled about the investment of

their trust assets, the amended complaint alleges merely that Defendants fail to act with due care

under their fiduciary obligations to do so."  2012 WL 1657187, at *4 (N.D. Cal. May 10, 2012).

In *Freeman Invs., L.P. v. Pac. Life Ins. Co.,* 704 F.3d 1110 (9th Cir. 2013), the Ninth

Circuit's most recent pronouncement on point, the Court held that terms such as "systematic

concealment" and "deceitful conduct" do not convert a garden-variety contract claim into a

fraud claim.  *Id.* at 1115.  In that case, the Court held that the only issue in dispute was whether

the defendant had violated the terms of a variable annuity and not its *mens rea* with respect to the breach:

> Plaintiffs thus raise a dispute about the meaning of a key contract term, and the success of their claim will turn on whether they can convince the court or jury that theirs is the accepted meaning in the industry . . . To succeed on this claim, plaintiffs need not show that Pacific misrepresented the cost of insurance or omitted critical details. They need only persuade the court that theirs is the better reading of the contract term. [*Id.*]

The Court of Appeals also observed that the mere fact that a plaintiff alleges that a defendant acted with a culpable state of mind in breaching the contract, does not convert a contract claim to a fraud claim:

> "[W]hile a contract dispute commonly involves a 'disputed truth' about the proper interpretation of the terms of a contract, that does not mean one party omitted a material  fact by failing to anticipate, discover and disabuse the other of its contrary interpretation of a term in the contract." *Webster v. N.Y. Life Ins. and Annuity Corp.*, 386 F. Supp. 2d 438, 441 (S.D.N.Y. 2005). Just as plaintiffs cannot avoid SLUSA through crafty pleading, defendants may not recast contract claims as fraud claims by arguing that they "really" involve deception or misrepresentation. *Id.*; *see also Walling v. Beverly Enters.*, 476 F.2d 393, 397 (9th Cir. 1973) ("Not every breach of a stock sale agreement adds up to a violation of the securities law."). [*Id.* at 115-16.]

The Ninth Circuit concluded by stating "Plaintiffs allege that their insurer promised one thing and delivered another.  That's a straightforward contract claim that doesn't rest on misrepresentation or fraudulent omission."  *Id.* at 1118.

The reasoning of *Freeman* was adopted by the U.S. Supreme Court.  *See Chadbourne & Parke LLP v. Troice*, 134 S. Ct. 1058, 1069 (2014) (*quoting Wharf (Holdings) Ltd.*, 532 U.S. 588, 596 (2001) (recognizing that "ordinary state breach-of-contract claims" are "actions that lie outside the [Securities Exchange] Act's basic objectives").  The Second Circuit did so as well in *In re Kingate Mgmt. Ltd. Litig.,* 784 F.3d 128 (2d Cir. 2015).  *Kingate* found that claims for "breach of contractual, fiduciary, or tort-based duties owed to Plaintiffs to provide competent management" (among other things) "would not require any showing of false conduct on the part of Defendants," and therefore "such allegations are not precluded by SLUSA."  *Id.* at 151-52. *Kingate* directed trial courts to identify which allegations are "necessary" to the claims and which are "inessential" or "extraneous."  *Id.* at 132, 142.  "State law claims that do not depend

on false conduct are not within the scope of SLUSA, even if the complaint includes peripheral, inessential mentions of false conduct." *Id.* at 132.

Not surprisingly, defendants here fail to cite let alone address any of the above cases holding that breach of contract or breach of fiduciary duty claims should not be dismissed on the basis of SLUSA—a clear acknowledgement that the SLUSA landscape has shifted since the Court issued its March 2011 Op.

### C. The Delaware Carve-Out Would Preserve Northstar's Claims Even If SLUSA Would Otherwise Preclude Them

Even if the Court were to find that (a) plaintiff's claims are potentially precluded by SLUSA and (b) Schwab has not waived its carve-out arguments by conceding them in briefing the 3AC, it should find that defendants' carve-out arguments lack merit.

#### 1. Massachusetts Law Governs Plaintiff's Breach Of Contract Claims

Under the Delaware carve-out, even covered class actions that involve claims of misrepresentation or omission are not subject to dismissal provided they are "based upon the statutory and common law of the State in which the issuer is . . . organized" and constitute "permissible actions" defined by the statute. 15 U.S.C. § 77p(d)(1)(A). Defendants argue that the carve-out cannot "save" plaintiff's contract claims because those claims purportedly "are asserted under *California* law," not the law of Massachusetts, where the Trust is organized. Db at 15:1-6 (emphasis in original). This argument must be rejected.

With the exception of its third party beneficiary claims, Northstar does *not* assert any of its claims under California law. Rather, plaintiff alleges that in determining which law to apply "a California court will generally apply the *internal affairs doctrine* and give deference to the state law of the state of formation of the Trust (Massachusetts)." 4AC, ¶19 (emphasis added). Applied here, the doctrine mandates the application of Massachusetts law. This is identical to arguments previously made by defendants on choice of law. *See* Motion to Dismiss First Amended Complaint (Dkt. 88 at 8) ("California's internal affairs doctrine mandates the application of Massachusetts law")).

As this Court stated earlier this year:

The internal affairs doctrine is a conflict of laws principle which recognizes that only one State should have the authority to regulate a corporation's internal affairs—matters peculiar to the relationships among or between the corporation and its current officers, directors, and shareholders—because otherwise a corporation could be faced with conflicting demands. *Quoting Edgar v. MITE Corp.*, 457 U.S. 624, 645 (1982).

*Voss v. Sutardja*, Case Nos. 14-CV-01581 LHK, 2015 WL 349444, at *6 (N.D. Cal. Jan. 26, 2015). California has codified the doctrine in Corporations Code section 2116, which "unambiguously directs courts to apply the law of the jurisdiction of incorporation in suits concerning the internal affairs of the corporation." *Id*. at *7.

Northstar's contract claims all concern defendants' failure to manage the Fund consistently with the Fund's fundamental investment objectives, which shareholders had expressly been asked to and did approve, and from which defendants could not depart absent another shareholder vote. Such claims involve "matters" peculiar to the relationships among or between the Trust, Trustees, the Advisor, and shareholders. *See In re Verisign, Inc. Deriv. Litig.*, 531 F. Supp.2d 1173, 1214-15 (N.D. Cal. 2007) (law of state of incorporation "applies to all causes of action that implicate the Company's internal affairs," including claims for breach of contract); *State Farm Mut. Auto. Ins. Co. v. Superior Court*, 114 Cal. App. 4th 434, 443-46 (Cal. App. 2003) (applying internal affairs doctrine to breach of contract claim and also citing cases that applied doctrine to voting rights disputes).

> **2.** **Under The "Internal Affairs Doctrine," Massachusetts Law Governs Northstar's Breach Of Fiduciary Duty Claims Against The Advisor.**

Defendants also argue that Northstar cannot invoke the Delaware carve out on its claims against the Advisor for breach of fiduciary duty because California law governs such claims. Db at 15:16-17. This argument is also defeated by the internal affairs doctrine. Plaintiff's fiduciary duty claims against the Advisor—expressly predicated on Massachusetts law (*see* 4AC, ¶¶136, 153, 206, 223)—concern the Advisor's management of the assets of the Trust. These are core internal affairs matters. *See In re Textainer Partnership Securities Litig.*, No. C-05-0969 MMC, 2005 WL 1791559, at *5, 20 (N.D. Cal. July 27, 2005) (noting that "courts have consistently applied the internal affairs doctrine to claims for breach of fiduciary duty"); *In*

*re Verisign, Inc. Deriv. Litig.*, 531 F.Supp.2d at 1215 (applying internal affairs doctrine to claims for breach of fiduciary duty and gross mismanagement); *Voss*, 2015 WL 349444, at *7.

In fact, defendants repeatedly and vociferously argued earlier in this litigation that the claims were governed by such law. *See, e.g.*, Dkt 88 at 8-10 (quoted *supra* at 12; 150 at 10-12. Moreover, in *In re Charles Schwab Corp. Sec. Litig.*, 257 F.R.D. 534 (N.D. Cal. 2009), a case alleging that most of the same Schwab defendants as are named in this action, including the Advisor, breached their fiduciary duties in connection with failing to follow the investment policies of another Schwab Fund created by the Trust, the YieldPlus Fund (*see* 4AC, ¶¶64-65), the defendants *agreed* that Massachusetts law should be applied: "As both sides recognize, because the fund is a Massachusetts trust, plaintiffs' fiduciary-duty claim should be analyzed under Massachusetts law." *Id.* at 554. Defendants should therefore be estopped from arguing against the application of Massachusetts law to plaintiff's claims against the Advisor. *See Hannon*, 2015 WL 4776305, at *6 (the doctrine of judicial estoppel prevents "a party from asserting inconsistent positions in different cases").

Finally, for a number of reasons, plaintiff is not and should not be relegated to prosecuting its fiduciary duty claims against the Advisor under the law chosen in the IAA between the Trust and the Advisor. First, Northstar's fiduciary duty claims against the Advisor are based on common law fiduciary duties the latter owes directly to the Fund's shareholders, *see*, *e.g.*, 4AC, ¶¶57, 60, 138-141, 208, *not* on the IAA. Second, "[w]here a contractual relationship creates a duty of care to third parties, the duty rests in tort, not contract." *See LeBlanc v. Logan Hilton Joint Venture*, 463 Mass. 316, 328 (2012). Third, the Advisor's duties (and fiduciary obligations) derive in the first instance from the Trust's Declaration of Trust, which, of course, is expressly governed by Massachusetts law. *See* Ex. L to Hess Decl. (Dkt. 218-12) at Art. IV, § 6 and Art. IX, § 6. Fourth, the entire point of having the law of the state of the organization apply to "the entire gamut of internal corporate affairs" under the internal affairs doctrine is to "serve[] the vital need for a *single*, constant and equal law to avoid fragmentation of continuing, interdependent internal relationships." *See McDermott, Inc. v. Lewis*, 531 A.2d 206, 216 (Del. 1987) (emphasis added).

### 3. This Case Is A "Permissible Action"

Assuming Northstar needed to invoke the Delaware carve-out, this case would also be deemed a "permissible action" under the "voting" prong of the carve-out because, as plaintiff alleges consistently with the statute, this case "involves" a "communication with respect to the sale of securities of the issuer that [] is made by or on behalf of the issuer or an affiliate of the issuer to holders of equity securities of the issuer; and [] concerns decisions of [the Fund's] equity holders with respect to voting their securities." *See* 4AC, ¶15; *see also* 15 U.S.C. § 77p(d)(1)(B).   In fact, by conceding on the 3AC that the Delaware carve-out applied to plaintiff's fiduciary duty claims (*see* Dkt. 182, at 13, n.5), Schwab necessarily acknowledged that this is a "permissible action" as defined by SLUSA.

Defendants nevertheless assert that Northstar may not invoke the "voting" prong, first by arguing that this case does not involve a tender or exchange offer or the exercise of dissenters or appraisal rights.  Db at 17:12-13.  But as Judge Breyer held in one of the very cases defendants cite, *Huang v. Reyes*, No. C 07-5950 CRB, 2008 WL 648519, at *5 (N.D. Cal. March 6, 2008), the "voting" prong is not limited to such "extraordinary corporate transactions."

Defendants further protest that the voting prong cannot be invoked because "no vote occurred."  Db at 18:21.  This argument, for which defendants provide no authority, is also defective.  First, a vote *did* take place pursuant to a proxy statement, *i.e.*, the vote under which shareholders approved the imposition of the Fund's fundamental policies.  4AC, ¶¶179-83.  Plaintiff also alleges that the Trust "continued to offer shares in the Fund pursuant to the terms of a contract that Schwab Investments would preserve shareholders' voting rights."  4AC, ¶¶179-86.  *See* App. II at 1052 ("Northstar's breach of contract cause of action rests on the deviation by defendants from two fundamental investment objectives, which required a shareholder vote to be changed, without first obtaining shareholder approval.  Until the fundamental investment objectives were amended by shareholder vote, the investors had a contractual right to have the Fund managed in accordance with those objectives") citing *Lapidus v. Hecht,* 232 F.3d 679, 681-83 (9th Cir. 2000).

Indeed, the carve-out need only "*involve*[]" communications "*with respect to*" voting, 15 U.S.C. § 77p(d)(1)(B), terms of the statute that have been broadly construed.  *See In re Metlife Demutualization Litig.*, No. CV 00-2258, 2006 WL 2524196, at *6 (S.D.N.Y. 2006) ("involves" as used in the carve-out "is quite broad"); *City of Ann Arbor Employees' Retirement Sys. v. Gecht*, No. C-06-7453 EMC, 2007 WL 760568, *3-7 (N.D. Cal. March 9, 2007) (interpreting "with respect to" broadly).[10]

## II. PLAINTIFF'S CLAIMS AGAINST THE TRUSTEES FOR BREACH OF FIDUCIARY DUTY ARE NOT BARRED BY THE STATUTE OF LIMITATIONS.

### A. Judge Illston Previously Rejected Defendants' Statute of Limitations Defense

Defendants argue that adding the Trustees as defendants in the 2AC on September 28, 2010 violated Massachusetts' three-year statute of limitations because investors had knowledge of the Trustee's wrongdoing *prior* to September 28, 2007.  Specifically, defendants argue that:

> [T]he 4AC concedes that that deviation became public knowledge no later than August 31, 2007, when Defendants disclosed in a prospectus that 37% of the Fund's assets had been invested in non-agency CMOs.  [Db at 23:19-22 (citing 4AC ¶ 110).]

Of course, we concede no such thing,[11] and in any event, this same argument was previously rejected by Judge Illston.  In their motion to dismiss the initial complaint, defendants argued that plaintiff's cause of action under the Investment Company Act (based on facts similar to plaintiff's breach of fiduciary duty claim in the 2AC) was time-barred, having accrued once the Fund disclosed in SEC filings its over-concentration in non-agency CMOs.  Dkt. 33 at 12-13.  Judge Illston (applying general federal law) rejected this defense, holding that "when plaintiff was on notice of its claims … raise[s] factual issues that are inappropriate for resolution

---

[10] *Crimi v. Barnholt,* No. C 08–02249 CRB, 2008 WL 4287566 (N.D. Cal. Sept. 17, 2008) (cited Db at 18-19) is distinguishable.  There, plaintiff asserted holder claims with respect to disclosure of financial information, and did not challenge defendants' contention that those claims did not implicate plaintiff's right to vote.  *Id.* at *4.  The court reached a contrary holding with respect to the plaintiff's voting claims.  *Id.* at *5.  Here, in contrast, plaintiff claims that the Fund's deviation from its fundamental investment policy implicated investors' voting rights to control the Fund's fundamental investment policies (¶ 4) and thus is akin to that aspect of *Crimi* that involved voting rights.

[11] As discussed below, defendants' citation to 4AC, ¶110 as alleging that there was a prospectus dated August 31, 2007 that "disclosed" this information is odd, since there is no such prospectus and certainly no such prospectus referenced in ¶110.

at this stage of the litigation."  609 F. Supp. 2d 938, 948 (N.D Cal. 2009).  Defendants are barred from relitigating this issue.  *Arizona v. California*, 460 U.S. 605, 618 (1983) ("when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case").  *See also Koe v. Mercer*, 450 Mass. 97, 101 (2007) ("Generally, an issue concerning what the plaintiff knew or should have known is a factual question that is appropriate for the trier of fact").

### B. Plaintiff's Fiduciary Duty Causes of Action Against the Trustees Were Timely

Even were this Court to reconsider Judge Illston's ruling, defendants' motion must be denied.  A statute of limitation constitutes an affirmative defense.  The defendant bears the burden of proving that plaintiff's claims are time-barred.  *See Kaufman v. Kaufman*, 79 Mass. App. Ct. 1118, 1118 (2011); *Payan v. Aramark Mgmt. Servs. Ltd. P'ship,* 495 F.3d 1119, 1122-23 (9th Cir. 2007).  Here, defendants fail to carry their burden as they provide *no* evidence demonstrating that plaintiff's claims are time-barred as a matter of law.  *See Akkerman v. Mecta Corp.,* 72 Fed. Appx. 652, 654 (9th Cir. 2003) (reversing grant of motion to dismiss finding the existence of disputed facts).

Pursuant to Mass. Gen. Laws ch. 260 §2A, a breach of fiduciary claim must be commenced within three years "after the cause of action accrues."  "Accrual" transpires when the plaintiff receives "actual knowledge that she has been injured by the fiduciary's conduct." *Doe v. Harbor Schs., Inc*., 446 Mass. 245, 254 (2006); *see also Demoulas v. Demoulas Super Markets, Inc.* 424 Mass. 501, 518-520 (1997) ("a cause of action does not accrue until the trustee repudiates the trust *and* the beneficiary has actual knowledge of that repudiation"). "Constructive knowledge [of the injury] is insufficient."  *Lattuca v. Robsham*, 442 Mass. 205, 213 (2004).  *See also* Db at 23 (the injury "occurs at the time that the trustee allegedly repudiates the trust and the statute of limitations begins to run at the time of the plaintiff acquires actual knowledge of that repudiation.").

As defendants acknowledge, the 4AC makes clear that "[t]he deviation in the reported NAV for the Fund compared to the Index prior to September 28, 2007 was not greater than 1%, and certainly insufficient to establish plaintiff's actual knowledge of the claim against the

Trustees." Db at 23:6-9 (citing ¶47). The 4AC further provides a chart demonstrating that, as of August 2007, the Fund's reported NAV was "closely correlated" to the Index, and did not deviate from the Index until late 2007. 4AC, ¶121.

Schwab's argument based on ¶110 of the 4AC, that "plaintiff concedes that that deviation became public knowledge no later than August 31, 2007," misstates Northstar's allegations. Paragraph 110 only alleges that as of the August 31, 2007, the Fund had invested 37.0% of its assets in CMOs. Indeed, the source for ¶110 is Schwab's Annual Certified Shareholder Report, which was filed with the SEC on November 2, 2007, *less* than three years before plaintiff added the Trustees in the 2AC. *See* Finkel Decl., Exhibit A.

Even the November 2, 2007 report did not put plaintiff on actual notice of its fiduciary duty claims. The mere fact that Schwab invested more than 25% of its assets in CMOs was not in and of itself sufficient to indicate to investors that the Trustees had repudiated their fiduciary duties. The Lehman Index consisted of "over 9,000 separate instruments whose exact composition is not generally available to investors," and as defendants argue, the Fund was not required to hold only securities that were part of the Index. *See* Db at 3 (1997 Proxy Statement). In fact, the 1997 Proxy Statement had explicitly stated that the Fund intended to "purchase … significant amounts of mortgage-backed securities" (*quoting* Db 3; 1997 Proxy Statement at 20) so long as "when the Fund's portfolio as a whole is considered, the Fund's performance and risk is expected to be similar to its Index's performance and risk." 4AC, ¶89; 1997 Proxy Statement at 22. Considering Schwab's standing in the investment community and the clarity of the Fund's fundamental investment objective to track the Index, investors had no reason to suspect that the Fund was not engaging in other strategies that had positioned the Fund "as a whole" to track the Index.

Nor was the investment in CMOs sufficient to give investors actual knowledge of a concentration in one industry in light of Schwab's suggestion that CMOs are not a separate industry (*see* Db at 3) ("there was nothing in the fundamental policies that defined what was or

was not considered an industry").[12]  *See also Hess Decl.*, Exh. D at 6 (referencing the Trust's belief that mortgage backed securities issued by private lenders are not part of any industry).  It is thus plain that, as of September 28, 2007, investors were bereft of any information that would provide "actual knowledge" that Schwab had "repudiated the trust."  *See* Db at 23.

Defendants' reliance on "public policy" rationales for statutes of limitation (Db at 24) is misguided.  The fiduciary duty claims against the Trustees arise from the same "conduct, transaction, or occurrence" plaintiff alleged as against the Trust and Advisor in the initial complaint and the 1AC (Dkt. 3-1; 75), and thus in any event relate back under Mass. R. Civ. P. 15(c).  *NES Rentals v. Maine Drilling & Blasting, Inc.,* 465 Mass. 856, 865 (2013) (Massachusetts relation-back doctrine is "more liberal than other jurisdictions"); *Schultz v. Rhode Island Hosp. Trust Nat'l Bank, N.A.*, CA No. 88-2870-T, 1993 U.S. Dist. LEXIS 20110, *15 (D. Mass. Nov. 16, 1993) (same; allowing addition of new defendants as claims in both pleadings arose from same events surrounding subject securities offering).[13]

## III.  HAVING ADMITTED THAT PLAINTIFF ADEQUATELY PLEADED ITS FIDUCIARY DUTY CLAIMS, DEFENDANTS ARE PRECLUDED FROM ARGUING OTHERWISE

That defendants move to dismiss Northstar's breach of fiduciary duty claims is both surprising and troubling.  Early in this litigation, defendants admitted that "'[w]e do not argue that no person or entity owes a fiduciary duty to the fund's investors.'"  609 F.Supp.2d at 949 n.8.  Moreover, as the Ninth Circuit observed, "Defendants conceded at oral argument that the allegations in the operative complaint are sufficient to state a cause of action for breach of fiduciary duty."  779 F.3d. at 1056; Finkel Decl., Exh. B at 32:11-33:17.  Defendants are bound by their admissions and estopped from arguing that plaintiff fails to plead breach of fiduciary

[12] The 37.0% CMO figure in the November 2, 2007 Report is referenced *once*, in a table, without *any* discussion or explanation, and in the middle of a fourteen-page balance sheet that was itself part of a 206-page document.  *See* Finkel Decl. Ex. A.

[13] The two cases defendants cite in support of their argument are inapposite.  *In re Keyspan Corp. Sec. Litig.*, 383 F. Supp. 2d 358 (E.D.N.Y 2003), concerned whether SEC filings may be considered on a motion to dismiss; the Court never discussed statutes of limitation or a plaintiff's actual knowledge of its claim.  In *Topham v. State Street Corp.*, 80 Mass. App. Ct. 1116 (Mass. App. Ct. 2011), the Court dismissed the plaintiff's contract claim, which sought to rely on defendant's alleged oral representations.  *Topham* says nothing about the statute of limitations.

duty causes of action. *See In re Adamson Apparel, Inc.*, 785 F.3d 1285, 1294 (9th Cir. 2015) ("We have every right to treat this concession at oral argument as binding on the Trustee."); *Masto*, 670 F.3d at 1064-65 (representation at oral argument constituted binding judicial admission); *Hannon*, 2015 WL 4776305, at *6.

If the Court reaches the substance of defendants' challenges to Northstar's breach of fiduciary duty claims, it will find that all such claims are well stated. This conclusion is inescapable given that such claims are governed by F.R.C.P. 8(a), which requires only a "short and plain statement of the claim showing that the pleader is entitled to relief"); *Concha v. London*, 62 F.3d 1493, 1502-3 (9th Cir. 1995); *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (a pleading need only be "plausible").

### A.    The 4AC Clearly Alleges Breaches By Each Defendant

Defendants first argue that Northstar "pleads no facts to support its allegations that the Fund made inappropriately risky or speculative investments but, instead, bases its claims entirely on the rehashed assertion that Defendants breached their fiduciary duties by causing the Fund to change its investment objectives without first obtaining a shareholder vote." Defendants then contend that Northstar cannot predicate a breach of fiduciary duty claim on such conduct, which it argues derives from a statutory obligation created by Section 13(a) of the Investment Company Act ("ICA") for which there is no private right of action. Db at 19:6-25.

Defendants can only make this argument by deliberately mischaracterizing Northstar's complaint and ignoring its allegations. The *entire* case is about defendants investing in risky securities in ways that were not permitted by the Fund's fundamental investment policies. Indeed, at the very outset of the 4AC, Northstar alleges: "defendants, acting in breach of their fiduciary duties and in violation of shareholders' contractual rights, caused the Fund to deviate from the Fund's fundamental investment objective" (¶4); "defendants caused the Fund to maintain investments in high-risk non-U.S. agency collateralized mortgage obligations," which "were substantially more risky that the U.S. agency securities and other instruments that comprised the Index" defendants were obligated to track (¶5); defendants deviated from the

concentration limits (¶6); and, as a result of the foregoing, defendants caused shareholders to lose tens of millions of dollars (¶7).

The 4AC fleshes out all of these allegations in abundant detail. *See* 4AC, ¶¶83-123 (describing the formation of the Fund, the establishment of its fundamental investment policies, and the deviation from those policies by defendants through investing in a speculative and irresponsible manner); and ¶¶131, 142 (alleging that defendants breached their fiduciary duties by failing to ensure that the property held by the Trustees was invested in accordance with the Fund's fundamental investment objectives).

Moreover, far from being predicated on the statutory obligations of ICA Section 13(a), defendants' alleged fiduciary breaches are based on defendants' violations of common law fiduciary duties, including, among others, the duty of care, the duty to preserve trust property, the duty to act with the highest integrity and in the best interests of the Trust beneficiaries, and the duty of loyalty. *See* 4AC ¶¶131, 142.[14]

Northstar's allegations plainly state fiduciary duty breaches. As the Supreme Court stated recently, "under trust law, a fiduciary normally has a continuing duty of some kind to monitor investments and remove imprudent ones. A plaintiff may allege that a fiduciary breached the duty of prudence by failing to properly monitor investments and remove imprudent ones." *Tibble v. Edison Intern.*, 135 S. Ct. 1823, 1828-29 (2015). *See also Vivien v. WorldCom, Inc.*, No. 02-01329 WHA, 2002 WL 31640557, at *4 (N.D. Cal. July 26, 2002) (plaintiff's adequately stated fiduciary duty claims based on allegations that defendants failed to investigate and evaluate an investment and invest prudently); *Digney v. Blanchard*, 226 Mass.

---

[14] Because Northstar does not base its fiduciary duty claims simply on the violation of the statutory obligations of ICA Section 13(a), defendants' reliance on *O'Brien v. Pearson*, 449 Mass. 377 (2007), and *In re Charles Schwab Corp. Sec. Litig.*, No. C 08-01510-WHA, 2009 WL 1371409 (N.D. Cal. May 15, 2009) is misplaced. It does bear mention, however, that defendants also mischaracterize such cases, which do *not* support defendants' claim that a breach of fiduciary duty cannot be predicated on the deprival of voting rights even if there is no private right of action under Section 13(a). In fact, the authority is to the contrary. *See Smit v. Charles Schwab & Co., Inc.*, No. 10-CV-03971-LHK, 2011 WL 846697 (N.D. Cal. Mar. 8, 2011) (though a voting rights violation could not be prosecuted under Section 13(a), it could, nevertheless, serve as the basis of a claim under California's Unfair Competition Law); *see also Meyer v. Putnam Int'l Voyager Fund*, 220 F.R.D. 127, 130 (D. Mass. 2004) (breach of federally-created duty may establish "element of the state tort.") (citation omitted).

335, 337 (1917) (trustee violated trust by "acting plainly beyond his powers").  Plaintiffs alleges this very fiduciary malfeasance and much more.

### B.    The Trust And The Advisor Owe Duties To Shareholders

Defendants next contend that neither the Advisor nor Trust owed shareholders any fiduciary duties.  According to them, Northstar must plead facts sufficient "to demonstrate a close and personal relationship between the defendant and the shareholder," and cannot rely on statements in defendants' marketing materials.  Db at 21:8-22:11.

Defendants misstate the correct standard to apply and deliberately mischaracterize Northstar's allegations.  Contrary to defendants' contention, a "close and personal relationship" is not required.[15]  Rather, a fiduciary duty arises whenever one reposes faith and confidence in another's integrity, advice or judgment, and the other accepts or assumes that confidence, including with respect to the management and control of property.  *See*, *e.g.*, *In re Hilson*, 448 Mass. 603, 615 (2007); *Doe*, 446 Mass. at 252.

Northstar has alleged these circumstances with specificity as to both the Advisor and Trust.  *See* 4AC, ¶¶ 53-63, 67, 127-31, 137-42, 199-01, 207-12.  The Advisor acted similarly to an investment advisor with discretionary authority over a client's assets.  The Advisor had full control over the investment of the Fund's assets; the Fund's shareholders had none.  Such discretionary investment authority gives rise to fiduciary duties.  *See Patsos v. First Albany Corp.*, 433 Mass. 323, 333 (2001) ("where the account is 'discretionary,' … the broker assumes broad fiduciary obligations that extend beyond individual transactions").

---

[15] The cases defendants rely on are inapposite.  *Fernandes v. Havkin*, 731 F. Supp. 2d 103, 109 (D. Mass. 2010) simply restates the proposition that "under Massachusetts law, the relationship between a lender and a borrower, *without more*, does not establish a fiduciary relationship (emphasis added); in *Petrell v. Rakoczy*, No. CA012849F, 3952005 WL 1683600, at *1, 4 (Mass. Super. Ct. July 11, 2005), a parishioner alleged that a rector of an Episcopal church and the church breached fiduciary duties when the rector "took advantage of" the plaintiff.  The trial court acknowledged that a fiduciary duty could arise where "one places his/her utmost trust and confidence in another's advice or judgment," but it held that "the unique organizational structure between the Episcopal Diocese and the various parishes does not provide for the creation of a fiduciary relationship between the diocese and its parishioner members"; *Petersen v. Sec. Settlement Corp.*, 226 Cal. App. 3d 1445 (1991), involved a claim against a *clearing* broker, who have long been held not to owe fiduciary duties to remote customers.

Northstar's allegations establish that the Advisor and Trust owed fiduciary obligations to investors. *See Strigliabotti v. Franklin Res., Inc.*, No. C04-0083, 2005 WL 645529, at *8 (N.D. Cal. March 7, 2005) (rejecting defendants' argument that allegations of fiduciary relationships were not sufficiently alleged); *Laker v. Freid*, 854 F. Supp. 923, 927 (D. Mass. 1994) ("there is no precise, comprehensive definition of circumstances that give rise to a fiduciary relationship"). *Accord In re Daisy Sys. Corp.*, 97 F.3d 1171, 1178 (9th Cir. 1996). *See also Concha*, 62 F.3d at 1501-02 (persons who accepted discretion to manage plan may be considered fiduciaries).

Defendants' argument that the Advisor's duties are determined exclusively by its contract with the Trust, and "not by the fiduciary principles that would otherwise govern," Db at 22:12-21, does not withstand scrutiny. Indeed, under the IAA itself, the Advisor was required to "use the same skill and care in providing [its] services as it would use in providing services to fiduciary accounts." Dkt. 152-4 at 2. Finally, *Chokel v. Genzyme Corp.*, 449 Mass. 272, 278 (2007) does not aid defendants, as it simply stands for the proposition that "when the challenged conduct at issue in a case is clearly contemplated by the terms of the parties' written agreements, [we] have declined to find liability for breach of fiduciary duty." *Selmark Associates, Inc. v. Ehrlich*, 467 Mass. 525, 537 (2014). The actions challenged here— defendants' systematic and risky deviation from the Fund's fundamental investment objective— were not contemplated by, and clearly fall squarely *outside* the scope of, the Advisor's contract with the Trust. *See id.*

## IV. DEFENDANTS HAVE WAIVED AIDING AND ABETTING ARGUMENTS

The Ninth Circuit remanded defendants' motion to dismiss the 3AC with instructions to "address the other arguments raised by the parties regarding [Northstar's] claims for breach of fiduciary duty[.]" The only argument defendants made with respect to aiding and abetting liability in their motion to dismiss the 3AC was that it lacked an underlying breach (Dkt. 182 at 12), a claim defendants' counsel conceded at oral argument and was dispositively rejected by the Ninth Circuit (779 F.3d at 1056-62). Because defendants failed to raise those arguments in

their previous motions to dismiss, they cannot raise them now. *Federal Agricultural Mort. Corp.*, 2005 WL 3325051, at *5, and cases cited *supra* at 6.

Such arguments are specious in any event. Plaintiff expressly alleges that the Trustees and the Advisor "knew of such breaches and actively participated in, rendered substantial assistance to, or encouraged such breaches of fiduciary duty" by the other, including by enabling the other to invest in assets that did not track the Index. *E.g.*, 4AC ¶¶148, 154. The Trustees and Advisor could only have done so by knowingly and actively participating in each other's breaches. Not only were they affiliated and under common control, *see id.*, ¶¶2, 31, 41, 50-51, 129, 171, 198-99, but also they were *jointly* responsible for managing the Fund's assets consistent with its *express* investment policies, *id.*, ¶60. These allegations are more than sufficient to state aiding and abetting claims under the applicable notice pleading standards of F.R.C.P. 8(a), *Strigliabotti*, 2005 WL 645529, at *8, particularly since "knowledge, and other conditions of a person's mind may be alleged generally." F.R.C.P. 9(b).[16]

## V. THE LIMITATION OF LIABILITY CLAUSE IN THE DECLARATION OF TRUST DOES NOT AFFORD A BASIS TO DISMISS NORTHSTAR'S CLAIMS AGAINST THE TRUSTEES

Defendants also claim that a "limitation of liability" clause in the Declaration of Trust shields the Trustees from all liability. They argue that the Trustees may be held liable only for "willful malfeasance, bad faith, gross negligence, or reckless disregard" of their duties, and that Northstar alleges nothing "beyond ordinary negligence." Db at 24:16-25:8. This argument does not warrant dismissal of *any* claims against the Trustees. First, defendants are barred from raising arguments not made in their previous motions to dismiss. *Federal Agricultural Mort. Corp.*, 2005 WL 3325051, at *5, and cases cited *supra* at 8.

*Second*, far from being "threadbare," Northstar's allegations that the Trustees acted with "willful malfeasance, bad faith, gross negligence, or reckless disregard of their duties" (4AC, ¶133) are based on the Trustees' failure to discharge their *principal* duties to ensure that the Fund's assets were invested as required by the Trust's governing documents. Defendants

---

[16] *Spinner v. Nutt*, 417 Mass. 549, 556 (1994), is distinguishable. There, the court affirmed the dismissal of aiding and abetting claims against attorneys based merely on the allegation that they gave their clients legal advice.

cannot seriously argue that plaintiff's allegations regarding the Fund's systematic deviation from its investment mandate alleges nothing more than ordinary negligence by the Trustees.

*Third*, even if it were applicable, the limitation clause cannot protect the Trustees from liability for acting beyond their powers in making unauthorized investments of the Trust's assets. *See Digney*, 226 Mass. at 337. Moreover, as a matter of law, the clause cannot shield the Trustees from liability for breaches of duties of loyalty and numerous other duties because, at most, the clause may be applied only to claims for breach of the duty of care. *Blake v. Smith*, 22 Mass. L. Rptr. 173, at *6 (Mass. Super. 2006); *see also* M.G.L.A. 156D § 2.02(b)(4).

*Fourth*, it is premature to even consider the clause, as its language is unclear. In fact, it appears that the clause does not provide any insulation to a given trustee from liability for his or her *own* misconduct. In all events, the interpretation and operation of the clause, which is in the nature of an affirmative defense, cannot be resolved on the pleadings. *See In re Tower Air Inc.*, 416 F.3d 229, 242 (3d Cir. 2005); *In re Brown Sch.*, 368 B.R. 394, 401 (Bankr. D. Del. 2007).

*Finally*, whether the Trustees' alleged misconduct constitutes "willful malfeasance, bad faith, gross negligence, or reckless disregard of duties," (Db 24:16) as Northstar alleges, raises intensely fact-bound questions that also cannot be determined on a motion to dismiss. *F.D.I.C. v. Jackson*, 133 F.3d 694, 700 (9th Cir. 1998).

<u>**CONCLUSION**</u>

For the reasons set forth herein, Northstar respectfully submits that the Court should deny defendants' motion to dismiss the 4AC.

Dated: August 26, 2015

**BERMAN DeVALERIO**

By: __s/Christopher T. Heffelfinger__
    Christopher T. Heffelfinger (118058)
Joseph J. Tabacco, Jr. (75484)
One California Street, Suite 900
San Francisco, CA 94111
Telephone: (415) 433-3200
Facsimile: (415) 433-6382
Email: jtabacco@bermandevalerio.com
      cheffelfinger@bermandevalerio.com

*Local Counsel*

Robert C. Finkel (admitted *pro hac vice*)
**WOLF POPPER LLP**
845 Third Avenue
New York, NY  10022
Telephone:  (212) 759-4600
Facsimile:   (212) 486-2093
Email: rfinkel@wolfpopper.com

Marc J. Gross (admitted *pro hac vice*)
**GREENBAUM ROWE SMITH & DAVIS LLP**
75 Livingston Street, Suite 301
Roseland, NJ  07068
Telephone:  (973) 535-1600
Facsimile:   (973) 535-1698
Email: mgross@greenbaumlaw.com

***Attorneys for Plaintiff Northstar Financial
Advisors, Inc.***