Matthew L. Larrabee, Esq. (SBN 97147)
matthew.larrabee@dechert.com
Joshua D. N. Hess, Esq. (SBN 244115)
joshua.hess@dechert.com
DECHERT LLP
One Bush Street, Suite 1600
San Francisco, CA 94104
Telephone: (415) 262-4500
Facsimile: (415) 262-4555

Attorneys for Defendants

[Additional Counsel On Signature Page]

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| NORTHSTAR FINANCIAL ADVISORS, INC., on behalf of itself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>SCHWAB INVESTMENTS; MARIANN BYERWALER, DONALD F. DORWARD, WILLIAM A. HASLER, ROBERT G. HOLMES, GERALD B. SMITH, DONALD R. STEPHENS, MICHAEL W. WILSEY, CHARLES R. SCHWAB, RANDALL W. MERK, JOSEPH H. WENDER and JOHN F. COGAN, as Trustees of Schwab Investments; and CHARLES SCHWAB INVESTMENT MANAGEMENT, INC.,<br><br>Defendants. | Case No. 08-cv-04119-LHK<br><br>CLASS ACTION<br><br>**DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS FOURTH AMENDED COMPLAINT**<br><br>Date:       October 1, 2015<br>Time:       1:30 P.M.<br>Courtroom: 8, 4th Floor, San Jose<br>Judge:     Hon. Lucy H. Koh |

**TABLE OF CONTENTS**

Page

INTRODUCTION ........................................................................................................................... 1
LEGAL ARGUMENT .................................................................................................................. 1
I. SLUSA BARS ALL OF NORTHSTAR'S CLAIMS ....................................................... 1
    A. Plaintiff's Claims Continue To Be Based On Alleged Misrepresentations ............ 1
    B. The Delaware Carve-Out Does Not Save Plaintiff's Claims ................................. 4
        1. All Claims Except The Breach Of Fiduciary Duty Claim Against The Trustees Are Governed By California Law ......................................... 4
        2. Plaintiff's Claims Are Not "Permissible Actions" Within The Meaning Of The Carve Out................................................................... 6
II. PLAINTIFF'S BREACH OF FIDUCIARY DUTY CLAIMS AGAINST ALL DEFENDANTS ARE NOT ADEQUATELY PLEADED ................................................. 8
    A. The Advisor And Trust Owe No Fiduciary Duties To The Shareholders .............. 9
    B. The Trustees Are Shielded By An Exculpatory Clause ....................................... 10
III. PLAINTIFF'S BREACH OF FIDUCIARY DUTY CLAIMS AGAINST THE TRUSTEES ARE TIME BARRED ............................................................................... 11
IV. PLAINTIFF'S AIDING AND ABETTING CLAIMS ARE NOT ADEQUATELY PLEADED ...................................................................................................................... 12
V. DEFENDANTS HAVE NOT WAIVED ANY DEFENSES ASSERTED IN THEIR MOTION TO DISMISS ................................................................................... 12
CONCLUSION ............................................................................................................................ 15

# TABLE OF AUTHORITIES

**CASES**

*Chokel v. Genzyme Corp.*,
    867 N.E.2d 325 (2007) ............................................................................................. 10

*Crimi v. Barnholt*,
    2008 WL 4287566 (N.D. Cal. Sept. 17, 2008) ...................................................... 7, 8

*CRS Recovery, Inc. v. Laxton*,
    600 F.3d 1138 (9th Cir. 2010) ................................................................................ 4, 6

*Digney v. Blanchard*,
    226 Mass. 335 (1917) .................................................................................................. 11

*Faulkner v. ADT Sec. Servs., Inc.*,
    706 F.3d 1017 (9th Cir. 2013) .................................................................................... 10

*Federal Agric. Mortg. Corp. v. It's A Jungle Out There, Inc.*,
    2005 WL 3325051 (N.D. Cal. 2005) .......................................................................... 13

*Freeman Invs., L.P. v. Pac. Life Ins. Co.*,
    704 F.3d 1110 (9th Cir. 2013) ............................................................................ 1, 2, 3

*Hamilton v. Allen*,
    396 F. Supp. 2d 545 (E.D. Pa. 2005) .......................................................................... 10

*Hannon v. Wells Fargo Bank, N.A.*,
    2015 WL 4776305 (N.D. Cal. 2015) .......................................................................... 15

*Herron v. Best Buy Stores, LP*,
    2013 WL 4432019 (E.D. Cal 2013) ........................................................................... 13

*Huang v. Reyes*,
    2008 WL 648519 (N.D. Cal. March 6, 2008) .............................................................. 7

*In re Brocade Commc'ns Sys., Inc. Derivative Litig.*,
    615 F. Supp. 2d 1018 (N.D. Cal. 2009) ........................................................................ 5

*In re Charles Schwab Corp. Sec. Litig.*,
    2009 WL 1371409 (N.D. Cal. May 15, 2009) .............................................................. 8

*In re Parmalat Sec. Litig.*,
    421 F. Supp. 2d 703 (S.D.N.Y. 2006) ......................................................................... 13

*Johnson v. Myers,*
    2011 WL 4533198 (N.D. Cal. Sept. 30, 2011) ............................................................. 5

| | |
|---|---|
| *Massey v. Helman*,<br>196 F.3d 727 (7th Cir. 1999) | 13 |
| *Mattel, Inc. v. MGA Entm't, Inc.*,<br>782 F. Supp. 2d 911 (C.D. Cal. 2011) | 13, 15 |
| *Northstar Fin. Advis., Inc. v. Schwab Invs.*,<br>779 F.3d 1036 (9th Cir. 2015) | 8, 9, 14 |
| *Northstar Fin. Advis., Inc. v. Schwab Invs.*,<br>781 F. Supp. 2d 926 (N.D.Cal. 2011) | 4, 14 |
| *O'Brien v. Pearson*,<br>449 Mass. 377 (2007) | 9 |
| *Siegal v. Gamble*,<br>2015 WL 4734741 (N.D. Cal. Aug. 10, 2015) | 5 |
| *Spearman v. U.S. Steel Corp.*,<br>2013 WL 170667 (S.D. Ill. Jan. 16, 2013) | 13 |
| *Spinner v. Nutt*,<br>631 N.E.2d 542 (1994) | 12 |
| *U.S. v. Flores*,<br>176 Fed. App'x. 62 (11th Cir. 2006) | 14 |
| *U.S. v. Vaile*,<br>5 F.3d 544 (9th Cir. 1993) | 14 |
| *Voss v. Sutardja*,<br>2015 WL 349444 (N.D. Cal. Jan. 26, 2015) | 5 |
| *Weber v. Comm. Teamwork, Inc.*,<br>752 N.E.2d 700 (2001) | 12 |

**STATUTES**

| | |
|---|---|
| 15 U.S.C. § 77p(d) | 6 |
| 15 U.S.C. § 77p(d)(B) | 7 |

# INTRODUCTION

The Fourth Amended Complaint ("4AC"), ECF No. 214, like its predecessors, asserts the following claim: Plaintiff and other Total Bond Fund shareholders bought and held Fund shares in reliance upon repeated representations about the Fund's investment practices made by Defendants throughout the class period, which they allege were no longer true as of August 31, 2007, the first day of the class period. This presents a quintessential securities misrepresentation claim that is precluded by the Securities Litigation Uniform Standards Act ("SLUSA"). Plaintiff's claims are not saved by the narrow SLUSA exception known as the "Delaware Carve-Out," because the claims either are not based on Massachusetts law or the alleged misrepresentations did not affect the outcome of any shareholder vote. Further, Plaintiff has not even established the *existence* of fiduciary duties owed directly from the Trust and Advisor to the shareholders, let alone adequately pleaded any breach of fiduciary duty. As for the Trustees, the claims against them are untimely and, in any event, shielded by a valid exculpatory clause. Recognizing the infirmity of its claims, Plaintiff strenuously asks this Court to *ignore* most of Defendants' defenses, and to allow its defective claims to proceed, based on discretionary waiver principles that are not supported by law or fact.

As set forth more fully below and in Defendant's opening brief, this Court was correct when it previously dismissed each of these claims and this Court should reach the same conclusion now.

# LEGAL ARGUMENT

## I. SLUSA Bars All Of Northstar's Claims

### A. Plaintiff's Claims Continue To Be Based On Alleged Misrepresentations

Plaintiff does not and cannot dispute that SLUSA precludes common-law claims when such claims are based on alleged misrepresentations or omissions in connection with the sale of covered securities. *Freeman Invs., L.P. v. Pac. Life Ins. Co.*, 704 F.3d 1110, 1114 (9th Cir. 2013) ("*Freeman*"). Instead, Plaintiff dedicates a substantial amount of its opposition to the unremarkable and undisputed point that cases that *do not* involve alleged misrepresentations or omissions are not precluded by SLUSA. Opp. at 9-12. Defendants do not dispute that basic

Dechert LLP
Attorneys At Law
San Francisco

08-cv-04119] DEFENDANTS' REPLY ISO MOTION AND MOTION TO DISMISS FOURTH AMENDED COMPLAINT

principle, but the question here is whether the claims actually alleged in the 4AC are precluded by SLUSA because they are based on allegations of misrepresentations or omissions. Plaintiff pointedly does not engage Defendants' specific citations to the 4AC's allegations that demonstrate that the claims are repackaged misrepresentation claims, but merely asserts the *ipse dixit* that they are not so.

The Ninth Circuit has ruled that there was a contract in this case, but the Ninth Circuit has also made clear, in *Freeman*, that breach of contract claims can be precluded by SLUSA. When dealing with contracts, which by their very nature contain both promises and representations, *Freeman* makes clear that SLUSA precludes claims for which the "gravamen or essence" is "deceptive statements or conduct." 704 F.3d at 1115-16. In *Freeman*, the Ninth Circuit considered a dispute regarding alleged overpayments for insurance that turned on the *interpretation* of a particular term in a single, bilateral insurance policy that applied to every putative class member. *Id.* There was no allegation that any term in the agreement (or in any other document) was untrue, nor was there any allegation that any plaintiff ever relied on subsequent affirmations that the insurance policy would be interpreted in any particular way. The Court determined that this was not a misrepresentation claim because "plaintiffs need not show that [the defendant] misrepresented the cost of insurance" to show that "theirs is the better reading of the contract term." *Id.* Plaintiff's attempts to fit this case within the *Freeman* framework are unavailing because this case is premised not on contract interpretation, but multiple (purportedly false) representations made throughout the class period and upon which the putative class members expressly relied in deciding whether to purchase or hold their shares in the first place.

Plaintiff would have this Court believe that its claims are based exclusively on "contractual commitments made in 1997" (Opp. at 7), but that position is belied by its own complaint. The claims stated in the 4AC repeatedly invoke both the 1997 proxy statement *and subsequent statements made throughout the class period. See, e.g.*, 4AC ¶¶ 53, 185, 186, and 188. Indeed, Plaintiff could not base its claims on a single 1997 Proxy Statement that the overwhelming majority of shareholders, including Mr. Holz, did not receive, review, vote upon, or even purchase shares in reliance upon. Plaintiff nevertheless argues that this case avoids

SLUSA because it does not rely on statements that "were false when made." Opp. at 9. But this too is belied by Plaintiff's own complaint.

Notably, Plaintiff's complaint does not allege that Mr. Holz represents a class of investors who entered into contracts with the Fund by reviewing the contractual terms in the Proxy Statement in 1997 and purchasing them solely in reliance on the Proxy Statement.[1] Instead, the class consists of those persons who purchased shares after August 31, 2007 (the "Breach" class), or were holding shares as of August 31, 2007 (the "Pre-Breach" class)—a timeframe that commences 10 years after the alleged "contractual commitments" were made. As Plaintiff's complaint necessarily reveals, investors purchasing and holding the Fund during this class period, which first starts in 2007, received numerous disclosures in subsequent Prospectuses and Statements of Additional Information that they allege "reiterated" the statements about the Fund's fundamental investment objectives upon which they base their claims. 4AC ¶¶ 185, 186. Plaintiff further alleges that these statements were no longer true by August 31, 2007, but that shareholders made decisions to hold or invest the Fund in "consideration" of the disclosures they received between 2007 and 2009. *Id.* ¶ 186. Thus, Plaintiff's claims turn on whether or not statements made to shareholders between 2007 and 2009 about the Fund's fundamental investment objectives were true or false *at that time*—after Plaintiff claims the statements were demonstrably untrue—meaning that this case is based on alleged misrepresentations and falls squarely within SLUSA.[2]

Unlike *Freeman*, Plaintiff does not seek *an interpretation* of a single contract term. Instead, Plaintiff seeks a remedy for harms that certain shareholders purportedly suffered in

---

[1] Plaintiff's reliance on the 1997 Proxy vote is irrelevant because Mr. Holz did *not* participate in that vote and neither did any members of the "Breach" class. Even for the "Pre-Breach" class, only shareholders that have held shares prior to July 1997 would have taken part in that vote. And, of course, the alleged misrepresentations made throughout the class period (2007-2009) had no influence on any vote that took place in 1997.

[2] The absurdity of Plaintiff's claims is further demonstrated by the fact that the "Breach" class consists only of shareholders who purchased shares *after* the alleged breach that occurred on or around August 31, 2007. 4AC ¶ 1. Such shareholders could not possibly have been harmed by any alleged breach occurring before they became shareholders and their claims are necessarily based solely on alleged misrepresentations occurring after the alleged breach.

reliance on repeated statements made throughout the class period that allegedly deceived the shareholders into believing the Fund was following certain fundamental investment policies. This Court was correct when it previously recognized that "the central theme of . . . all of Plaintiffs' claims is that defendants made misrepresentations about how investments in the Fund would be managed, that Plaintiffs purchased Fund shares relying on those misrepresentations, and that Plaintiffs were injured when these statements turned out to be false." *Northstar Fin. Advisors, Inc. v. Schwab Invs.,* ("*Northstar I*"), 781 F. Supp. 2d 926, 934 (N.D.Cal. 2011). No amount of "wordsmithing" has altered the sound basis for this prior conclusion and this Court should reach this same conclusion again here.

### B. The Delaware Carve-Out Does Not Save Plaintiff's Claims

#### 1. All Claims Except The Breach Of Fiduciary Duty Claim Against The Trustees Are Governed By California Law

Plaintiff does not dispute that the Delaware Carve-Out can only potentially apply in this case to claims asserted under Massachusetts law, because Massachusetts is the state of incorporation for the Trust. And yet, only Claims 1-4 and 8-11 have been expressly pleaded under Massachusetts law. It is certainly reasonable to infer that the others are not pleaded under Massachusetts law. Plaintiff concedes that its Third Party Beneficiary claims (Claims 5 and 12) are not asserted under Massachusetts law. Opp. at 12. For the remainder of the claims, no particular state law is invoked other than Plaintiff's general pronouncement, consistent with generally accepted legal principles, that "[t]his Court, sitting in diversity, is required to apply California law to plaintiff's claims (including California choice of law)." 4AC ¶ 19. Under California choice-of-law principles, it is well settled that "the party seeking application of foreign law bears the burden to show that the law of a foreign state should apply. At the point [the party] fails to make this showing, we default to forum (California) law." *CRS Recovery, Inc. v. Laxton*, 600 F.3d 1138, 1143-44 (9th Cir. 2010) (citation omitted). Accordingly, even for the claims that do expressly invoke Massachusetts law, Plaintiff still bears the burden of establishing that Massachusetts law actually applies. As for Claims Three and Nine, which allege breach of fiduciary duty claims against the Advisor, Plaintiff cannot invoke Massachusetts law because the

[08-cv-04119] DEFENDANTS' REPLY ISO MOTION AND MOTION TO DISMISS FOURTH AMENDED COMPLAINT        -4-

4AC pleads that Plaintiff is a resident of New Jersey (4AC ¶ 23) and that the Advisor is a resident of California (*id.* ¶ 51). This alone should result in dismissal of Claims Three and Nine.

Plaintiff attempts to salvage its fiduciary breach claims against the Advisor (Claims Three and Nine) by pressing an unprecedented and overbroad interpretation of the "internal affairs doctrine." Opp. at 13. In order for the internal affairs doctrine to apply, the claims must be be brought under the law of the state of incorporation or derivatively. Numerous authorities, including those cited by Plaintiff, hold that claims against third parties are not subject to the law of a company's state of incorporation unless asserted derivatively on behalf of that company. *See Siegal v. Gamble*, 2015 WL 4734741, at *5 n. 6 (N.D. Cal. Aug. 10, 2015) (internal affairs doctrine does not apply, in part, because "[t]his is not a derivative action"); *Voss v. Sutardja*, 2015 WL 349444, at *6 (N.D. Cal. Jan. 26, 2015) ("To determine which jurisdiction's substantive law to apply *in a shareholder derivative action*, California courts look to the 'internal affairs doctrine.'") (emphasis added). Indeed, Plaintiff's opposition cites language from *Voss* stating the internal affairs doctrine is intended to ensure that "a corporation" is not "faced with conflicting demands" – a scenario that could *only* occur in a derivative action. Opp. at 13. There is no dispute that these claims are indisputably *not* derivative claims asserted on the Trusts' behalf. Rather, these claims are premised on allegations that the Advisor breached a duty owed *directly to the shareholders*. *Id.* at 22-23. Such a claim does <u>not</u> implicate the "internal affairs" of the Trust because the Advisor is a third party that is wholly independent from the Trust. *See In re Brocade Commc'ns Sys., Inc. Derivative Litig.*, 615 F. Supp. 2d 1018, 1036 (N.D. Cal. 2009) ("The Court is not convinced, however, that the internal affairs doctrine mandates that [foreign] law apply to tort claims brought against [third parties] who are not fiduciaries of [the plaintiff company].").

Further, the Advisor's relationship with the Trust is governed by the Investment Advisory Agreement ("IAA") between them, which Plaintiff concedes is expressly governed by California law. Opp. at 14. Contractual choice-of-law provisions override the internal affairs doctrine. *See Johnson v. Myers,* 2011 WL 4533198, at *8 (N.D. Cal. Sept. 30, 2011) ("In cases in which the parties have made choice-of-law arguments based upon both contractual clauses and the internal

affairs doctrine, the Ninth Circuit (applying California law) and the California Supreme Court both have analyzed the choice-of-law clauses before the internal affairs doctrine . . . indicat[ing] strong presumptions in favor of enforcing contractual choice-of-law provisions.") (citing *Batchelder v. Nobuhiko Kawamoto,* 147 F.3d 915, 918–20 (9th Cir.1998) *and Nedlloyd Lines B.V. v. Superior Court,* 3 Cal.4th 459, 464–71 (1992)).[3]

Regarding Plaintiff's breach of contract and breach of covenant claims, they are presumptively based on California law given that Plaintiff did *not* expressly plead these claims under Massachusetts law (as it did with the fiduciary breach claims) and it has relied almost exclusively on California law to support these claims in prior briefing. *See, e.g.,* Opp. to Second Am. Compl. ("2AC") (ECF No. 158) at 7-8; *see also CRS Recovery, Inc.*, 600 F.3d at 1143-44 (Plaintiff's burden to invoke foreign law). Indeed, Plaintiff has expressly argued to this Court that "business trusts are created by the acts of the parties and are neither organized under, nor dependent on, any statute or statutory sanction for their existence . . . [i]t is therefore questionable whether the internal affairs doctrine is even applicable to such trusts." Opp. to 2AC at 8 n.13. Nevertheless, even if these claims were based on Massachusetts law (which they are not), *none* of them would be protected by the Delaware Carve-Out because, as set forth below, this is not a "permissible action" within the meaning of the statute.

### 2. Plaintiff's Claims Are Not "Permissible Actions" Within The Meaning Of The Carve Out

After previously and incorrectly representing to this Court that the Delaware Carve-Out covers *any* claim asserted under Massachusetts law, Plaintiff now recognizes that the Delaware Carve-Out only covers a far narrower subset of "permissible actions" asserted under Massachusetts law. *See* 15 U.S.C. § 77p(d)(B) (defining "permissible actions"). Plaintiff asserts that its claims constitute a "permissible action" involving "any recommendation, position, or other communication with respect to the sale of securities of the issue[] that . . . concerns

---

[3] Plaintiff faults Defendants for now arguing that California law should apply to these claims when Defendants previously argued for the application of Massachusetts law. Plaintiff ignores that it *also* "repeatedly and vociferously" took a position contrary to the one it now asserts on this same issue. *See, e.g.,* Opp. to 2AC at 7-8.

decisions of those equity holders with respect to voting their securities . . . " *Id.* In order for this case to be considered a "permissible action" under that theory, the specific misrepresentation on which the claims are based must be some form of "recommendation, position, or other communication" that influenced an actual "decision[ ] of [the] equity holders with respect to voting their securities." *Id.* But here, the only alleged vote that actually took place was in 1997, and there is no allegation in the 4AC that there was any misrepresentation with respect to that vote. Instead, the alleged misrepresentations only dealt with the types of investments the Fund would make and had already made. There is no alleged misrepresentation that was made to influence any decision on how to vote shares. Plaintiff only asserts that no shareholder vote was sought. The *absence* of a vote – therefore the absence of any communication – does not transform this case into a "permissible action" under the Delaware Carve-Out. *See Huang v. Reyes*, 2008 WL 648519, at *5 (N.D. Cal. March 6, 2008) ("the carve-out . . . appl[ies] where . . . the corporation issues proxy statements requesting that the shareholders vote").

Plaintiff advocates a far broader application of the Delaware Carve-Out to apply to any claim involving "voting rights"—an ambiguous phrase that does not appear in the language of the statute. *Compare* 4AC ¶ 15 (alleging the claim survives SLUSA because it "relate[s] . . . to voting rights") *with* 15 U.S.C. § 77p(d) (Carve-Out applies to "permissible actions" addressing misrepresentations that "concern[ ] decisions of those equity shareholders with respect to voting their securities"). Without citing to any authority, Plaintiff asserts that any case in which a shareholder alleges that a shareholder vote *should* have occurred is protected by the Carve-Out. But this would be an exception that swallows the rule and would entirely eviscerate SLUSA. Every activist shareholder would be incentivized to include an allegation that any disputed action should have been subject to a shareholder vote as a means of circumventing SLUSA preclusion.

As established in Defendants' opening brief, Plaintiff's view has been rejected. In *Crimi v. Barnholt*, 2008 WL 4287566, at *3 (N.D. Cal. Sept. 17, 2008), a "holding" group alleged that specific misrepresentations had prevented them from "mak[ing] an informed decision concerning whether they should continue holding their shares." The Court held that these claims were not saved by the Carve-Out because merely alleging that a shareholder held shares in reliance on a

misrepresentation "do[es] not meet the requirement that the complaint involve a recommendation or communication about shareholders' decisions with respect to voting their securities . . ." *Id.* at *4 (internal quotation omitted). On the other hand, a "voting" group alleged that a separate and different misrepresentation deprived them "of their ability to make an informed decision" *during a shareholder vote* to approve the issuance of certain stock options. *Id.* at *3. Those claims, unlike Plaintiff's here, "constituted a communication with respect to the sale of securities concerning decisions of . . . stockholders with respect to voting their securities." *Id.* Plaintiff claims that the shareholders purchased or held shares in reliance on repeated misrepresentations, but Plaintiff does not and cannot allege that such representations influenced any shareholder vote. Hence, the Delaware Carve-Out is not applicable and does not save Plaintiff's claims.

## II. Plaintiff's Breach Of Fiduciary Duty Claims Against All Defendants Are Not Adequately Pleaded

Defendant's opening brief established that Plaintiff could not maintain a breach of fiduciary duty claim under Massachusetts law because it was expressly premised on the allegation that the shareholders had not been afforded an opportunity to vote on a change of the Fund's fundamental investment objectives. Any obligation that may have existed to hold a shareholder vote on this issue would have been based on Section 13(a) of the Investment Company Act ("ICA"), but no private cause of action exists to enforce Section 13(a) and Massachusetts courts do not allow litigants to create statutory causes of action by asserting them under the guise of fiduciary breach claims. Mot. at 19; *see also In re Charles Schwab Corp. Sec. Litig.*, 2009 WL 1371409, at *6 (N.D. Cal. May 15, 2009) (plaintiff "entirely fail[ed] to explain how the alleged violation of the ICA would activate any non-ICA fiduciary duties").

In response, Plaintiff now jettisons its prior position and, instead, argues that its fiduciary breach claims are *not* based on any change in the fundamental investment objectives without shareholder approval. *See* Opp. at 21 n.14. Plaintiff also concedes that "the mere fact that Schwab invested more than 25% of its assets in CMOs was not in and of itself sufficient to indicate . . . that the Trustees had repudiated their fiduciary duties." *Id*. at 18. Instead, Plaintiff now claims in its opposition that the fiduciary breach claim is a general allegation that the Fund

underperformed expectations and that this somehow violates the duties of care and loyalty. *Id.* at 21. Plaintiff's new position is a remarkable about-face from the way it characterized this case to the Ninth Circuit. *See Northstar Fin. Advisors, Inc. v. Schwab Invs.*, ("*Northstar II*"), 779 F.3d 1036, 1056 (9th Cir. 2015) ("Northstar alleged that the Schwab defendants breached their fiduciary duties by failing to ensure that the Fund was managed in accordance with the fundamental investment objectives *and by changing the Fund's fundamental investment objectives without obtaining required shareholder consent*") (emphasis added). The 4AC relies on the same theory of the case, asserting that "the Schwab Trustees and Trust breached their fiduciary duties" when they "changed the Fund's fundamental investment objectives and policies without obtaining required shareholder authorization." 4AC ¶ 131.

It is disingenuous for Plaintiff to argue now that its breach of fiduciary duty claim is actually broader than a simple claim for violation of the fundamental investment objectives. Indeed, Plaintiff recently represented to the U.S. Supreme Court that its entire case is premised on the allegation that Defendants "failed to adhere to the Fund's mandatory fundamental investment objective to seek to track the Index" since the beginning of this litigation in 2008. *See* Supplemental Declaration of Joshua Hess ("Supp. Hess Decl.") Ex. O (Opp. to Pet. for Writ of Cert.) at 5. Plaintiff's new theory that the Trustees made unidentified investments at unknown times that were vaguely "speculative, irresponsible and risky," provides no details that are sufficient to survive a motion to dismiss. Accordingly, the fiduciary breach claims are incurably derivative of a Section 13(a) claim that Plaintiff has no private right of action to bring, or fail to meet the basic pleading standards of *Twombly* and *Iqbal*, and must be dismissed.[4]

### A. The Advisor And Trust Owe No Fiduciary Duties To The Shareholders

Plaintiff does not dispute that the Ninth Circuit found only that the *Trustees* held fiduciary duties to the shareholders. It also effectively concedes that a fiduciary relationship does not exist as a matter of law between the Advisor or the Trust on one hand and the shareholders on the

---

[4] To the extent Plaintiff's claim is premised on the Fund's alleged violation of its fundamental investment objectives, it should be dismissed. *O'Brien v. Pearson*, 449 Mass. 377, 385 n.7 (2007) (violation of a *statutory* obligation does "not amount to a breach of fiduciary duty").

other. Instead, such fiduciary obligations can only be inferred based on the unique facts of the relationship between the two parties. Defendants demonstrated that a close and personal relationship was required and Plaintiff counters, without pointing to any substantive difference between the tests, that there must be a relationship based on agreed-upon "faith and confidence." Opp. at 22. Semantics aside, Plaintiff tacitly agrees that there must be some allegation of a uniquely close relationship to create a fiduciary duty as a matter of fact. But no such close, personal relationship or relationship of confidence has been pleaded and it cannot be established by the marketing materials on which Plaintiff primarily relies. *See Hamilton v. Allen*, 396 F. Supp. 2d 545, 553 (E.D. Pa. 2005) (dissemination of marketing materials does not establish a fiduciary duty).

Alternatively, Plaintiff relies on allegations that the a fiduciary relationship was established by the Advisor's provision of services *to the Fund*, but such services were expressly governed by the IAA and any violation of that agreement can give rise only to a breach of contract claim and not a breach of fiduciary duty claim. *Chokel v. Genzyme Corp.*, 867 N.E.2d 325, 330-31 (2007) ("[w]hen rights of stockholders arise under a contract . . . the obligations of the parties are determined by reference to contract law, and not by fiduciary principles that would otherwise govern"). Although Plaintiff now claims that the Advisor's conduct, as pleaded, "fall[s] squarely outside the scope of [the IAA]" (Opp. at 23), Plaintiff cannot deny that the IAA governs the relationship between the Advisor and the Trust and any obligation that the Advisor may have had to make any particular type of investments on the Fund's behalf is based entirely on its contractual obligations, as stated in the IAA. Accordingly, under *Chokel*, the contractual relationship governs and the breach of fiduciary duty claim fails.

**B.     The Trustees Are Shielded By An Exculpatory Clause**

Plaintiff does not dispute the existence of a "limitation of liability" clause in the Declaration of Trust that allows a Trustee to be held liable only for conduct arising from "willful malfeasance, bad faith, gross negligence, or reckless disregard" of their duties. Plaintiff has an obligation to allege more than a "threadbare recital" of the Trustees' state of mind. *Faulkner v. ADT Sec. Servs., Inc.*, 706 F.3d 1017, 1020 (9th Cir. 2013) (quoting *Ashcroft v. Iqbal*, 556 U.S.

[08-cv-04119] DEFENDANTS' REPLY ISO MOTION AND MOTION TO DISMISS FOURTH AMENDED COMPLAINT          -10-

662, 678 (2009)). Plaintiff asserts that it has purportedly satisfied this standard merely by alleging the boilerplate statement that "Trustees acted with willful malfeasance, bad faith, gross negligence, or reckless disregard of their duties." (Opp. at 24 (citing 4AC ¶ 133)) But this allegation does nothing more than parrot the exact same language that is found in the exculpatory clause and it is difficult to imagine a balder recital of the required statement of mind. Recognizing the inadequacy of the pleading, Northstar begs the Court to avoid consideration of this issue under waiver principles (addressed *supra*), or that the clause is somehow confusing, or that this is a fact-intensive inquiry. *Id*. at 24-25. The failure to allege *any* facts to support the allegation, however, is precisely why the claim fails.[5]

### III. Plaintiff's Breach Of Fiduciary Duty Claims Against The Trustees Are Time Barred

In addition to all of the defects above, Plaintiff does not dispute that its fiduciary breach claims against the Trustees are completely time-barred if Plaintiff had actual knowledge that they had "repudiated the Trust" more than three years prior to September 28, 2010—the date Plaintiff first sued the Trustees. As set forth in the Defendants' motion, Plaintiff had actual knowledge that the Fund had exceeded the 25% cap (and had underperformed the Index) on August 31, 2007. Plaintiff alleges in the 4AC that "[b]y August 31, 2007, the Trustees and the Advisor began to cause the Fund to deviate from the Index. As of August 31, 2007, 37.0% of the total assets of the Fund were invested in non-agency [CMOs]." 4AC ¶ 110. Now, Plaintiff claims that it did not know about this investment until it received the Annual Certified Shareholder report on November 2, 2007. *Id*. at 18. This is directly belied by the 4AC, which cites an Annual Report sent to shareholders, dated August 31, 2007, that unequivocally states that 37% of the Fund's assets were invested in CMOs and that the Fund had underperformed the Index. *See* 4AC ¶ 56; Hess Suppl. Decl. Ex. P (August 31, 2007 Annual Report) at 10, 41. Accordingly, if there was a fiduciary duty not to exceed the 25% concentration limit and to track the Index, Plaintiff had

---

[5] Plaintiff's citation to *Digney v. Blanchard*, 226 Mass. 335, 337 (1917) is inapposite because it recognized only that an exculpatory clause will not shield a Trustee that commits a "willful and intentional breach of trust," but such conduct is not adequately pleaded here. Similarly, Plaintiff's statement that exculpatory clauses do not shield a Trustee from a breach of duty of loyalty claim is irrelevant because no breach of loyalty claim has been pleaded.

actual knowledge that this duty had been repudiated no later than August 31, 2007.[6]

Plaintiff also half-heartedly claims that the claims relate back to the original pleading. To be clear, the original complaint in this case—titled "Complaint for Violation of the Investment Company Act of 1940" did not include the original Trustees as defendants and made no allegations regarding any of the Trustees' conduct. Plaintiff amended that complaint, titling the amendment the "First Amended Complaint For Violation of the Investment Company Act of 1940," and *still* chose not to assert any claim against the Trustees or even allege any of the Trustees' conduct. The addition of a new party will only relate back to a prior complaint where it is based on the same conduct, but, since *none* of the Trustees' conduct was alleged in the original complaint, it will not relate back here. *See Weber v. Comm. Teamwork, Inc.*, 752 N.E.2d 700, 717 (2001) (claim "does not relate back" where "specific conduct . . . occurred before [plaintiff] commenced her action . . . and in those pleadings there is no allegation concerning this conduct, or any charge relating to it.").

## IV. Plaintiff's Aiding And Abetting Claims Are Not Adequately Pleaded

Plaintiff does not dispute that the Aiding and Abetting claims must fail in the absence of any underlying liability. Regarding whether Plaintiff has adequately pleaded this claim even if there were underlying liability, Plaintiff alleges only that various Defendants were "affiliated and under common control" and "knew of such breaches and actively participated in, rendered substantial assistance to, or encouraged such breaches of fiduciary duty." Opp. at 24. Simply being "affiliated" is not sufficient to establish aiding and abetting liability. *See Spinner v. Nutt*, 631 N.E.2d 542, 546 (1994) ("the plaintiff must show that the defendant knew of the breach and actively participated in it such that he or she could not reasonably be held to have acted in good faith"). And Plaintiff's claim that Defendants "knew of such breaches and actively participated" is nothing more than a "threadbare" recitation of the required elements of an aiding and abetting

---

[6] Plaintiff correctly notes that the Opening Brief inadvertently referred to this document as a "prospectus," rather than an "annual report," but it is not credible that Plaintiff was unaware of which document was being referred to considering this same document is expressly incorporated into the 4AC.

claim. Opp. at 24 (citing 4AC ¶¶ 148, 154). Further, it is a legal conclusion entitled to no deference; hence the aiding and abetting claims should be dismissed.

## V. Defendants Have Not Waived Any Defenses Asserted In Their Motion To Dismiss

Given the wealth of authority, described above, demonstrating that Plaintiff still has failed to craft a valid claim, despite *five* opportunities to do so, it is perhaps unsurprising that Plaintiff's primary argument to save the latest incarnation of its claims has nothing to do with the purported adequacy of its pleading. Instead, and contrary to the Ninth Circuit's clear direction that this Court should consider SLUSA arguments in the "first instance," Plaintiff now takes the remarkable position that Defendants are unable to assert certain defenses, including the SLUSA defense, under discretionary waiver principles. This argument is easily discarded.

This Court is well aware of this case's complicated seven-year history. Plaintiff has seen fit to amend its complaint four times already and the law recognizes that, in fairness, a Defendant too is offered the same opportunity to assert new defenses and positions each time Plaintiff files an amended complaint. *See, e.g., Mattel, Inc. v. MGA Entm't, Inc.*, 782 F. Supp. 2d 911, 1017 (C.D. Cal. 2011) (defendant "is entitled to reassert previously waived affirmative defenses in response to [an] amended pleading."); *see also Massey v. Helman*, 196 F.3d 727, 735 (7th Cir. 1999) (amended complaint "opens the door" to raise previously unasserted affirmative defenses); *Spearman v. U.S. Steel Corp.*, 2013 WL 170667, at *3 (S.D. Ill. Jan. 16, 2013) ("It is well-settled that the filing of an amended complaint supersedes previous complaints and 'opens the door for defendants to raise new and previously unmentioned affirmative defenses.'") (internal citation omitted); *In re Parmalat Sec. Litig.*, 421 F. Supp. 2d 703, 713 (S.D.N.Y. 2006) (same). Plaintiff's authority is not to the contrary.[7] This principle makes sense: If one party is afforded a clean slate to write a new complaint then the other party should be afforded the same opportunity

---

[7] In *Federal Agric. Mortg. Corp. v. It's A Jungle Out There, Inc.*, 2005 WL 3325051, at *4 (N.D. Cal. 2005), the court ultimately concluded that the disputed issue—timeliness—had not been waived even though "the amended complaint did not modify the claims asserted in the original complaint." *Herron v. Best Buy Stores, LP*, 2013 WL 4432019, at * 4 (E.D. Cal 2013) found an argument waived under circumstances not present here. At most, these cases demonstrate that a finding of waiver is discretionary, but they do not suggest this Court should find waiver here.

1 to defend against that complaint. Plaintiff was not required to amend its complaint—and that
2 amendment was opposed by Defendants—but, having been afforded the opportunity to amend for
3 the fourth time, Plaintiff should not be permitted to evade scrutiny of these amended claims and
4 must address all defenses that may rightly be asserted. Indeed, Plaintiff offers no rationale for
5 this Court to proceed with claims that are fatally flawed on the merits.[8]

Plaintiff's primary "waiver" argument is that this Court should avoid consideration of whether its breach of fiduciary duty claims are precluded by SLUSA because of two statements regarding Plaintiff's breach of fiduciary duty claim that Defendants made while litigating their motion to dismiss the Third Amended Complaint ("3AC") before this Court and at oral argument before the Ninth Circuit. *See* Opp. at 4. In both instances, the primary dispute was over standing arguments that would have precluded any need to address the additional defenses raised here. Moreover, these statements merely suggested that Defendants were not presently challenging this Court's prior order that the Delaware Carve-Out could apply to *any* claim asserted under Massachusetts law (*Northstar I.*, 781 F. Supp. 2d at 937), which was, in turn, based on an incorrect statement of the law found in Plaintiffs' Opposition to Defendants' Motion to Dismiss the 2AC (ECF No. 158 at 21 n.25). However, the Ninth Circuit was aware of both of these statements and pointedly did *not* direct this Court to enter dismissal of those claims on remand. Instead, the Ninth Circuit ordered this Court to consider SLUSA issues "in the first instance." *Northstar II.*, 779 F.3d at 1050.

At most, those statements constitute a mistaken statement of law—indeed they were repetitions of Plaintiff's erroneous statement—upon which neither the parties nor the Court ultimately relied. Even if this Court were to consider either of these statements a "waiver" (and they are not), this Court is not barred from reviewing Defendants' argument because Plaintiff does not even attempt to establish any showing of prejudice. *See, e.g., U.S. v. Vaile*, 5 F.3d 544, at *1 (9th Cir. 1993) ("the court retains discretion to review waived objections based purely on law if no prejudice will be suffered by the opposing party"); *U.S. v. Flores*, 176 Fed. App'x. 62,

---

[8] Plaintiff does not contend that Defendants' SLUSA-based opposition to the breach of contract or breach of covenant claims have been waived.

Dechert LLP
Attorneys At Law
San Francisco

63 n. 1 (11th Cir. 2006) ("consider[ing] the merits of [waived] claims" where opposing party "will not be prejudiced").[9]

Plaintiff's additional argument that Defendants now assert several defenses that had not been raised in responding to the 3AC is baseless. Many of these defenses *were* raised in opposition to the first three complaints issued in this action. But, in any case, the filing of an amended complaint opens the door to "new and [previously] unmentioned affirmative defenses." *Mattel, Inc.*, 782 F. Supp. 2d at 1017, n.35. This Court should exercise its discretion to address the plain legal deficiencies raised in Defendants' motion.

**CONCLUSION**

For the foregoing reasons, the 4AC should be dismissed as to all Defendants with prejudice.

Dated: September 10, 2015                     Respectfully Submitted,

                                                         DECHERT LLP

                                                        By: /s/ Joshua D.N. Hess
                                                        Matthew L. Larrabee
                                                        Joshua D. N. Hess
                                                        One Bush Street, Suite 1600
                                                        San Francisco, CA 94104

                                                        *Attorneys for Defendants*

---

[9] Plaintiff's reliance on "judicial estoppel" is similarly misguided. "Judicial estoppel" applies when a party takes on a position, *succeeds on that position*, and then switches position. *Hannon v. Wells Fargo Bank*, *N.A.*, 2015 WL 4776305, at * 6 (N.D. Cal. 2015) (judicial estoppel applies only where parted "gain[ed] an advantage" from the prior position). This is simply not the case here.

[08-cv-04119] DEFENDANTS' REPLY ISO MOTION AND MOTION TO DISMISS FOURTH AMENDED COMPLAINT          -15-

| | |
|---|---|
| 1 | QUINN EMANUEL URQUHART & SULLIVAN, LLP |
| 2 | |
| 3 | By: /s/ Karin Kramer |
|   | Richard A. Schirtzer |
| 4 | Karin Kramer |
|   | Arthur Roberts |
| 5 | 50 California Street, 22nd Floor |
|   | San Francisco, CA 94111 |
| 6 | |
| 7 | *Attorneys for Mariann Byerwaler, Donald F. Dorward, William A. Hasler, Robert G. Holmes, Gerald B. Smith, Donald R. Stephens, Michael W. Wilsey, Charles R. Schwab, Randall W. Merk, Joseph H. Wender and John F. Cogan* |