1
2
3
4
5
6
7
8

UNITED STATES DISTRICT COURT

9

NORTHERN DISTRICT OF CALIFORNIA

10

SAN JOSE DIVISION

11

| | |
|---|---|
| 12 NORTHSTAR FINANCIAL ADVISORS INC., et al., | Case No. 08-CV-04119-LHK |
| 13        Plaintiffs, | **ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS FOURTH AMENDED COMPLAINT** |
| 14      v. | |
| 15 SCHWAB INVESTMENTS, et al., | Re: Dkt. No. 217 |
| 16        Defendants. | |
| 17 | |

18    Plaintiff Northstar Financial Advisors, Inc. ("Northstar") brings this action against Schwab

19 Investments, the members of the Board of Trustees of Schwab Investments, and Charles Schwab

20 Management, Inc. (collectively, the "Defendants"). Before the Court is Defendants' motion to

21 dismiss Plaintiff's Fourth Amended Complaint ("FAC"). *See* ECF No. 214 ("FAC"); ECF No.

22 217 ("Mot."). Having considered the parties' submissions, the relevant law, and the record in this

23 case, the Court hereby GRANTS in part and DENIES in part Defendants' motion to dismiss.

24 **I.    BACKGROUND**

25    **A. Factual Background**

26     On August 28, 2008, Northstar filed its first complaint ("Original Complaint") in this

27

28

United States District Court
Northern District of California

putative class action on behalf of all persons who owned shares of the Schwab Total Bond Market Fund (the "Fund") at any time from August 31, 2007 to the present. ECF No. 1 ("Compl.") ¶ 1. Northstar is a registered investment advisory and financial planning firm that serves both institutional and individual clients. *Id.* ¶ 9. Northstar manages both discretionary and nondiscretionary accounts on behalf of investors in Northstar's role as an investment advisor. *Id.* Northstar traded through Charles Schwab's Institutional Advisor Platform, where it purchased shares in the Fund for its clients. *Id.* ¶¶ 11–12.

Although Northstar has amended its Complaint four times, Northstar's core allegations remain the same. Northstar alleges that Defendants deviated from the Fund's investment objective to track the Lehman Brothers U.S. Aggregate Bond Index (the "Index") in two ways. First, Northstar alleges that, beginning around August 31, 2007, the Fund deviated by investing in high risk non-U.S. agency collateralized mortgage obligations ("CMOs") that were not part of the Lehman Index and that were substantially more risky than the U.S. agency securities and other instruments that comprised the Index. *See id.* ¶ 3; FAC ¶ 5. Second, Northstar alleges that, beginning around August 31, 2007, the Fund deviated from the Fund's investment objectives (which prohibited any concentration of Fund assets greater than 25% in any one industry, unless such concentration was necessary in order to track the Index) by investing more than 25% of the Fund's total assets in U.S. agency and non-agency mortgage-backed securities and CMOs. Compl. ¶ 4; FAC ¶ 6. Northstar alleges that Defendants' deviation from the Fund's investment objectives exposed the Fund and the Fund's shareholders to tens of millions of dollars in losses due to a sustained decline in the value of non-agency mortgage-backed securities. According to Northstar, the Funds' deviation caused the Fund to incur a negative total return of 4.80% for the period of September 1, 2007, through February 27, 2009, compared to a positive return of 7.85% for the Index over this same period. FAC ¶ 7.

**B. Procedural History**

    **1.** *Northstar I*

Case No. 08-CV-04119-LHK
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS FOURTH AMENDED COMPLAINT

Based on the allegations described above, Northstar asserted the following four claims against a number of Schwab-related entities[1] in the Original Complaint: (1) violation of § 13(a) of the Investment Company Act of 1940 ("ICA"); (2) breach of fiduciary duty; (3) breach of contract; and (4) breach of the covenant of good faith and fair dealing.  Compl. ¶¶ 85–99.  Northstar's § 13(a) claim was asserted under federal law; Northstar's remaining claims were asserted under state law.  On November 20, 2008, Defendants moved to dismiss the Original Complaint.  *See* ECF No. 33 ("First MTD").  U.S. District Judge Susan Illston, to whom this case was previously assigned, granted in part and denied in part Defendants' motion.  *See* ECF No. 74 ("*Northstar I*").

First, Judge Illston found that Northstar did not have standing to bring any of the claims asserted in the Original Complaint because Northstar "only purchased shares for its clients and not for itself."  *Northstar I* at 3.  Judge Illston, however, granted Northstar leave to amend because Northstar could plausibly cure this deficiency by receiving an assignment of claims from one of Northstar's clients.  *Id.* at 4.  Second, Judge Illston found that there was an implied private right of action under § 13(a) of the ICA and that Northstar had stated a claim for violation of shareholders' voting rights under this section.  *Northstar I* at 7, 9–12.  Finally, turning to Northstar's state law causes of action, Judge Illston dismissed Northstar's breach of fiduciary duty claim with leave to amend.  Judge Illston instructed Northstar "to carefully examine whether each of the defendants named in this claim can in fact be named in such a claim, and under which state's laws such a claim [may be] properly brought."  *Id.* at 14–15.  Because of the close relationship between Northstar's breach of fiduciary duty claim and Northstar's breach of contract claim, Judge Illston also granted Northstar leave to amend the breach of contract claim.

---

[1] In Northstar's Original Complaint, Northstar brought suit against Schwab Investments, Charles Schwab & Co., Charles Schwab Investment Management, Inc., and Schwab Total Bond Market Fund.  Compl. ¶¶ 14–17.  In Northstar's First Amended Complaint, Northstar brought suit against Schwab Investments and Charles Schwab Investment Management, Inc.  ECF No. 75 ¶¶ 16–17.  Northstar's Second Amended Complaint, Third Amended Complaint, and Fourth Amended Complaint name Schwab Investments, the members of the Board of Trustees of Schwab Investments, and Charles Schwab Management, Inc. as Defendants.  ECF Nos. 127, 181, 214.

Case No. 08-CV-04119-LHK
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS FOURTH
AMENDED COMPLAINT

United States District Court
Northern District of California

*Id.* at 15.  Judge Illston denied Defendants' motion to dismiss Northstar's breach of the covenant of good faith and fair dealing claim.  *Id.* at 15–16.

### 2. *Northstar II*

On March 2, 2009, Northstar filed its First Amended Complaint.  On March 5, 2009, Defendants filed a motion which sought leave to file an interlocutory appeal of Judge Illston's order.  Defendants sought only to challenge Judge Illston's finding that Northstar could assert a private right of action under § 13(a) of the ICA.  This motion was granted, ECF No. 108, and this action was stayed pending the outcome of Defendants' appeal.  This case was stayed from April 27, 2009, through August 13, 2010.  In the interim, this case was reassigned, first to U.S. District Judge Richard Seeborg, and then to the undersigned.  *See* ECF Nos. 115 & 117.  On August 13, 2010, the Ninth Circuit reversed Judge Illston's order, and held that there is no private right of action under § 13(a).  *Northstar Fin. Advisors, Inc. v. Schwab Invs*. ("*Northstar II*"), 615 F.3d 1106, 1122 (9th Cir. 2010).

### 3. *Northstar III*

In light of *Northstar II*, Northstar filed, on September 28, 2010, a Second Amended Complaint ("SAC") which did not include a § 13(a) claim.  Northstar also asserted an assignment of claims from Henry Holz, a client of Northstar's who had owned shares of the Fund as of August 31, 2007, in an attempt to address the standing issue previously identified by Judge Illston.  *See* ECF No. 127 ("SAC") ¶ 15.

The SAC named Schwab Investments (the "Trust"), the members of the Board of Trustees of Schwab Investments (the "Trustees"),[2] and Charles Schwab Investment Management, Inc. (the "Advisor") as Defendants.[3]  According to the SAC, the Trust is an investment trust organized under Massachusetts law, and "consists of a series of mutual funds, including the Fund."  SAC ¶

---

[2] Mariann Byerwalter, Donald F. Dorward, William A. Hasler, Robert G. Holmes, Gerald B. Smith, Donald R. Stephens, Michael W. Wilsey, Charles R. Schwab, Randall W. Merk, Joseph H. Wender, and John F. Cogan.

[3] As noted above, both the Third Amended Complaint and the Fourth Amended Complaint list these three entities as Defendants in the case.

4

United States District Court
Northern District of California

16.  The Trust is managed by the Trustees.  *Id.* ¶¶ 19–20.  Pursuant to a contractual agreement between the Trust and the Advisor, known as the Investment Advisory Agreement ("IAA"), the Advisor handles day-to-day oversight of the Fund.  *Id.* ¶¶ 23, 154.  The SAC alleged claims based on (1) breach of fiduciary duty (against all Defendants); (2) breach of contract (against the Trust); (3) breach of the covenant of good faith and fair dealing (against the Trust and the Advisor); and (4) breach of contract as a third party beneficiary to the IAA (against the Advisor).

This Court dismissed the SAC on March 2, 2011.  *See* ECF No. 175 ("*Northstar III*").  The Court found all of Northstar's claims precluded by the Securities Litigation Uniform Standards Act of 1998 ("SLUSA") because all of the claims alleged misrepresentations or omissions of material fact made in connection with the purchase or sale of the Fund's shares.  15 U.S.C. § 77p.  The Court stated that "the central theme . . . of Plaintiffs' claims is that defendants made misrepresentations about how investments in the fund would be managed, that Plaintiffs purchased Fund shares relying on these misrepresentations, and that Plaintiffs were injured when these statements turned out to be false."  *Northstar III* at 9.

In addition to dismissing Northstar's claims based on SLUSA preclusion, the Court found that Northstar had failed to sufficiently allege a breach of contract claim despite specific instructions from Judge Illston in *Northstar I* to "add more specific allegations regarding the language plaintiff relies on to allege the formation of a contract, as well as each defendants' involvement."  *Northstar I* at 15.  In light of this fact, Northstar's breach of contract claim and Northstar's related claim for breach of the covenant of good faith and fair dealing were dismissed with prejudice.  *Northstar III* at 18–19.

Northstar's claim for third party beneficiary status was also dismissed, with leave to amend to "specify . . . what specific provisions of the Investment Advisor Agreement were allegedly breached, and how."  *Id.* at 24.

Finally, with respect to Northstar's breach of fiduciary duty claim, the Court noted that it was possible for this claim to fall outside the scope of SLUSA preclusion through a statutory

5

Case No. 08-CV-04119-LHK
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS FOURTH AMENDED COMPLAINT

United States District Court
Northern District of California

1    exception known as the Delaware carve-out.  Accordingly, Northstar was given leave to amend

2    Northstar's breach of fiduciary duty claim in order to clarify whether this claim could indeed fall

3    under the Delaware carve-out.  *Id.* at 15.

4        **4.** *Northstar IV*

5        Northstar filed a Third Amended Complaint (ECF No. 181 ("TAC")) on March 28, 2011.

6    For the first time, Northstar bifurcated potential Plaintiffs into two subclasses.  TAC ¶ 65.  First,

7    Northstar asserted claims on behalf of a "Pre-Breach" class, which consisted of "all persons or

8    entities who purchased shares of the Fund on or prior to August 31, 2007, and who continued to

9    hold their shares as of August 31, 2007."  *Id.*  Second, Northstar asserted claims on behalf of a

10   "Breach Class," which consisted of "all persons or entities who purchased shares of the Fund

11   during the period of September 1, 2007, through February 27, 2009."  *Id.*  The classes were

12   divided between August 31 and September 1 because Northstar alleged that "August 31, 2007

13   [was] the last day of the fiscal year preceding the one during which the Fund first began deviating

14   from its required fundamental investment policy to seek to track the Lehman Index through the

15   use of an indexing strategy."  *Id.*  Northstar alleged that the Fund "reverted back to its required

16   fundamental investment policy" on or around February 27, 2009.  *Id.* ¶ 66.  Northstar brought

17   five causes of action on behalf of each of the two classes, for a total of ten claims.  These were:

18   breach of fiduciary duty against both the Trustees and the Trust; breach of fiduciary duty against

19   the Advisor; aiding and abetting breach of fiduciary duty against the Trustees; aiding and abetting

20   breach of fiduciary duty against the Advisor; and breach of contract as third party beneficiary to

21   the IAA against the Advisor.  Northstar also incorporated by reference the breach of contract and

22   breach of the covenant of good faith and fair dealing claims from the SAC.  *Id.* ¶ 120.  Northstar

23   did not develop any new arguments with respect to these claims; Northstar asserted them solely

24   for purposes of preserving them for appeal.  *Id.*

25       On April 2, 2011, Defendants filed a motion to dismiss Northstar's TAC.  On August 8,

26   2011, this Court granted with prejudice Defendants' motion to dismiss the TAC.  ECF No. 190

27

28   Case No. 08-CV-04119-LHK
     ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS FOURTH
     AMENDED COMPLAINT

("*Northstar IV*").  On the breach of fiduciary duty claims, this Court found that any such claims must be derivative, and not direct, in nature.  *Northstar IV* at 12.  In other words, Northstar could not, according to the Court, bring these claims directly.  Northstar's fiduciary duty claims were therefore dismissed with prejudice.  Notably, the Court did not, in *Northstar IV*, "address the other arguments raised by the parties regarding Plaintiff's claims for breach of fiduciary duty, including whether claims against the Trustees were timely and whether Northstar successfully pled a fiduciary duty arising as a matter of fact." *Id.*  This Court also dismissed with prejudice Northstar's related aiding and abetting claims.  *Id.* at 12–13.  On Northstar's third party beneficiary claims, the Court found that the IAA's terms did not make clear an intention to benefit Fund shareholders.  Accordingly, these shareholders could not be considered third party beneficiaries, and Northstar's third party beneficiary claims were dismissed with prejudice.  *Id.* at 17–18.

### 5. *Northstar V*

On appeal, the Ninth Circuit reversed in part and vacated in part this Court's order in *Northstar IV*.  First, the Ninth Circuit clarified that this Court did not abuse its discretion in allowing Northstar to amend its pleadings to show that Northstar had standing to bring suit. *Northstar Fin. Advisors, Inc. v. Schwab Invs.* ("*Northstar V*"), 779 F.3d 1036, 1043 (9th Cir. 2015).  Second, the Ninth Circuit held "that the mailing of the proxy statement and the adoption of the two fundamental investment policies after the shareholders voted to approve them, and the annual representations by the Fund" were "sufficient to form a contract between the shareholders on the one hand and the Fund and the Trust on the other." *Id.* at 1054.  Accordingly, the Ninth Circuit reversed this Court's decision dismissing Northstar's breach of contract claim.  Third, the Ninth Circuit vacated this Court's finding that Northstar could only bring its fiduciary duty claims derivatively.  *Id.* at 1065.  Finally, the Ninth Circuit reversed this Court's decision to dismiss Northstar's third party beneficiary claims.  The Ninth Circuit determined that Northstar had sufficiently alleged facts to show that Northstar was a third party beneficiary to the IAA.  *Id.*

United States District Court
Northern District of California

7

United States District Court
Northern District of California

1    The Ninth Circuit did not discuss whether any (or all) of Northstar's claims were precluded by

2    SLUSA, instead leaving that determination to this Court on remand.  *Id.* at 1050.  Judge Bea

3    dissented from the majority opinion and argued that Northstar did not have standing to bring suit.

4    *Id.* at 1069 (Bea, J., dissenting).  Judge Bea did not examine any of the other issues discussed in

5    the majority's opinion.

6      In response to the Ninth Circuit's decision, Northstar filed its FAC on June 25, 2015.  This

7    Complaint states fourteen causes of action, with seven causes of action that pertain to the Pre-

8    Breach class and seven causes of action that pertain to the Breach class.[4]  Northstar asserted

9    seven causes of action on behalf of the Pre-Breach class.  Counts one through seven in the FAC

10    are: (1) breach of fiduciary duty against both the Trust and the Trustees; (2) breach of fiduciary

11    duty against the Advisor; (3) aiding and abetting breach of fiduciary duty against the Trustees; (4)

12    aiding and abetting breach of  fiduciary duty against the Advisor; (5) breach of contract as third

13    party beneficiary to the IAA against the Advisor; (6) breach of contract against the Trust; and (7)

14    breach of the covenant of good faith and fair dealing against the Advisor and the Trustees.

15      Northstar relied on the same allegations to assert seven causes of action on behalf of the

16    Breach class.  Counts eight through fourteen in the FAC are: (8) breach of fiduciary duty against

17    both the Trust and the Trustees; (9) breach of fiduciary duty against the Advisor; (10) aiding and

18    abetting breach of fiduciary duty against the Trustees; (11) aiding and abetting breach of

19    fiduciary duty against the Advisor; (12) breach of contract as third party beneficiary to the IAA

20    against the Advisor; (13) breach of contract against the Trust; and (14) breach of the covenant of

21    good faith and fair dealing against the Advisor and the Trustees.

22

23    [4] Northstar's thirteenth cause of action is labeled as a claim "on behalf of members of the Pre-
Breach Class for breach of contract."  FAC ¶ 247.  This appears to be a misprint.  The first seven

24    causes of action in the FAC pertain to the Pre-Breach class.  The latter seven causes of action
(with the exception of the thirteenth cause of action) essentially repeat the allegations made in the

25    first seven causes of action, but with respect to the Breach class.  Read literally, Northstar's
thirteenth cause of action would be redundant, as it simply repeats the allegations made in

26    Northstar's sixth cause of action.  *See id.* ¶¶ 177–89 (sixth cause of action); 247–59 (thirteenth
cause of action).  Consistent with the overall organization of the FAC, the Court therefore reads

27    the thirteenth cause of action to assert a claim for breach of contract on behalf of the Breach class.

8

28    Case No. 08-CV-04119-LHK
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS FOURTH
AMENDED COMPLAINT

Defendants filed the instant motion to dismiss on July 24, 2015, which contended that all of Northstar's causes of action were precluded by SLUSA, and also asserted a number of other arguments, discussed in greater detail below.  Northstar filed a response on August 26, 2015, which argued, in part, that Defendants were foreclosed from arguing for SLUSA preclusion with respect to several of Northstar's causes of action.  ECF No. 223 ("Opp'n") at 6.  Defendants filed a reply on September 10, 2015.  ECF No. 226 ("Reply").

Although not directly relevant to the disposition of this motion, Defendants have also filed a petition for a writ of certiorari in *Northstar V* before the U.S. Supreme Court.  ECF No. 222. Defendants' petition is pending.

## II.      LEGAL STANDARD

### A.   Motion to Dismiss

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a defendant may move to dismiss an action for failure to allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations omitted).  For purposes of ruling on a Rule 12(b)(6) motion, the Court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).

Nonetheless, the Court is not required to "'assume the truth of legal conclusions merely because they are cast in the form of factual allegations.'" *Fayer v. Vaughn*, 649 F.3d 1061, 1064 (9th Cir. 2011) (quoting *W. Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981)).  Mere "conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss." *Adams v. Johnson*, 355 F.3d 1179, 1183 (9th Cir. 2004); *accord Iqbal*, 556 U.S. at 678.

Case No. 08-CV-04119-LHK
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS FOURTH AMENDED COMPLAINT

1    Furthermore, "'a plaintiff may plead [him]self out of court'" if he "plead[s] facts which establish

2    that he cannot prevail on his . . . claim." *Weisbuch v. Cnty. of L.A.*, 119 F.3d 778, 783 n.1 (9th Cir.

3    1997) (quoting *Warzon v. Drew,* 60 F.3d 1234, 1239 (7th Cir. 1995)).

4        **B. Leave to Amend**

5            Under Rule 15(a) of the Federal Rules of Civil Procedure, leave to amend "shall be freely

6    granted when justice so requires," bearing in mind "the underlying purpose of Rule 15 to facilitate

7    decision on the merits, rather than on the pleadings or technicalities." *Lopez v. Smith*, 203 F.3d

8    1122, 1127 (9th Cir. 2000) (en banc) (internal quotation marks and alterations omitted).

9    Generally, leave to amend shall be denied only if allowing amendment would unduly prejudice the

10   opposing party, cause undue delay, or be futile, or if the moving party has acted in bad faith.

11   *Leadsinger, Inc. v. BMG Music Publ'g*, 512 F.3d 522, 532 (9th Cir. 2008).

12   **III.    DISCUSSION**

13       **A. Breach of Fiduciary Duty Against the Trust & the Trustees (Claims One & Eight)**

14           Defendants assert a number of arguments regarding Northstar's breach of fiduciary duty

15   claims against the Trust and the Trustees.  This Court will review these arguments in turn.

16       **1. SLUSA Preclusion**

17           Defendants first contend that all of Northstar's claims are precluded by SLUSA.  Before

18   the Court can address this contention, the Court must examine whether Defendants are foreclosed

19   from asserting this argument with respect to Northstar's breach of fiduciary duty claims.

20           As background, Defendants argued for SLUSA preclusion with respect to all of Northstar's

21   claims in Defendants' motion to dismiss Northstar's SAC.  *See* ECF No. 150 ("Second MTD").

22   Curiously, Defendants did not re-assert these arguments in moving to dismiss Northstar's TAC.

23   *See* ECF No. 182 ("Third MTD").  Instead, Defendants noted that "Northstar [had] avoided

24   SLUSA preemption for its fiduciary claims" because Northstar had, in the TAC, asserted these

25   claims under Massachusetts law. *Id.* at 13 n.5.  Defendants did, in the Third MTD, assert a

26   SLUSA preclusion defense with respect to Northstar's third party beneficiary claims.  *Id.* at 13–

27

28   Case No. 08-CV-04119-LHK
     ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS FOURTH
     AMENDED COMPLAINT

United States District Court
Northern District of California

14.[5]  Now, in Defendants' instant motion, Defendants argue once more that all of Northstar's claims are barred by SLUSA.  Mot. at 8.  Northstar contends that Defendants abandoned these arguments with respect to Northstar's breach of fiduciary duty claims, and that Defendants cannot now revive these arguments.

The Court agrees.  Federal Rule of Civil Procedure 12(g)(2) states that "[e]xcept as provided in Rule 12(h)(2) or (3), a party that makes a motion under this rule must not make another motion under this rule raising a defense or objection that was available to the party but omitted from its earlier motion."  Federal Rule of Civil Procedure 12(h)(2), in turn, provides that arguments which pertain to a plaintiff's "[f]ailure to state a claim upon which relief can be granted . . . may be raised: (A) in any pleading allowed or ordered under Rule 7(a); (B) by a motion under Rule 12(c); or (C) at trial."[6]  To summarize, under Rule 12(g)(2) and Rule 12(h)(2), a party that seeks to assert a defense that was available but omitted from an earlier Rule 12 motion can only do so in a pleading, a Rule 12(c) motion, or at trial.

Here, Defendants seek to assert "a defense . . . that was available . . . but omitted from [an] earlier motion" to dismiss.  Fed R. Civ. P. 12(g)(2).  However, Defendants have not asserted this defense in a pleading, a Rule 12(c) motion, or at trial.  Instead, Defendants have asserted this defense in a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6).  Defendants are foreclosed from doing so because of Rule 12(g)(2) and Rule 12(h)(2).

A number of cases lend support to this conclusion.  In *Wafra Leasing Corporation 1999-A-1 v. Prime Capital Corporation*, 247 F. Supp. 2d 987, 999 (N.D. Ill. 2002), for instance, Defendants Smithburg and Walter filed three motions to dismiss for failure to state a claim, one

---

[5] Defendants did not need to assert SLUSA preclusion as to Northstar's breach of contract and breach of the covenant of good faith and fair dealing causes of action in the TAC.  The TAC merely incorporated by reference these causes of action from the SAC "for purposes of preserving those Causes of Action for appeal."  TAC ¶ 120.  The TAC further acknowledged that this Court had dismissed these claims with prejudice from the SAC in *Northstar III*.  *Id.*

[6] Rule 12(h)(3), another exception to Rule 12(g)(2), does not apply to the instant case.  Rule 12(h)(3) allows parties to challenge subject matter jurisdiction at any point in litigation.  Fed. R. Civ. P. 12(h)(3).  Subject matter jurisdiction is not at issue in this case.

Case No. 08-CV-04119-LHK
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS FOURTH AMENDED COMPLAINT

United States District Court
Northern District of California

1  each in response to Wafra's Original Complaint, First Amended Complaint, and Second Amended

2  Complaint.  Smithburg and Walter's first motion did not address counts one and two in the

3  Original Complaint.  Wafra subsequently filed a First Amended Complaint, which kept counts one

4  and two but also added a new count, count ten.  *Id.*  Smithburg and Walter's second motion to

5  dismiss included a number of additional arguments which addressed count ten, but, like Smithburg

6  and Walter's first motion to dismiss, did not include any arguments which addressed counts one

7  and two.  Finally, in Smithburg and Walter's third motion to dismiss, Smithburg and Walter

8  "rais[ed] arguments with respect to counts one and two that they failed to advance in either of their

9  previous motions to dismiss."  *Id.*

10       The district court in *Wafra* determined that Smithburg and Walter were "precluded from

11  raising these arguments in their third motion to dismiss."  *Id.*  The district court noted that Federal

12  Rule of Civil Procedure 12(g)(2) "generally precludes a defendant from bringing successive

13  motions to dismiss raising arguments that the defendant failed to raise at the first available

14  opportunity."  *Id.*  To be sure, Smithburg and Walter had not waived their arguments entirely.  As

15  the district court explained, under Federal Rule of Civil Procedure 12(h)(2), if a defendant "fails to

16  raise a defense . . . [in a] motion to dismiss for failure to state a claim," "the defendant may make

17  such an argument 'in any pleading permitted or ordered under Rule 7(a), or by motion for

18  judgment on the pleadings, or at the trial on the merits.'"  247 F. Supp. 2d at 999 (quoting Fed. R.

19  Civ. P. 12(h)(2)).  The defendant may not, however, assert any such defenses in a second pre-

20  answer motion.  *Id.*

21       Courts in this Circuit concur with the reasoning in *Wafra*.  In *Herron v. Best Buy Stores*,

22  *LP*, 2013 WL 4432019, at *4 (E.D. Cal. Aug. 16, 2013), for instance, Toshiba had "failed to

23  squarely raise [an] argument in its initial dismissal motion, even though the argument was

24  available to Toshiba when it originally sought to dismiss Plaintiff's complaint."  Accordingly,

25  "this portion of Toshiba's dismissal motion [was] not considered."  *Id.*  Similarly, in *Federal*

26  *Agricultural Mortgage Corporation v. It's A Jungle Out There, Inc.* ("*FAMC*"), 2005 WL

27

28  Case No. 08-CV-04119-LHK
   ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS FOURTH
   AMENDED COMPLAINT

1    3325051, at *5 (N.D. Cal. Dec. 7, 2005), the district court stated that, "[a]lthough the Ninth

2    Circuit has not had occasion to apply this principle, the weight of authority outside this circuit

3    holds that where the complaint is amended after the defendant has filed a Rule 12(b) motion, the

4    defendant may not thereafter file a second Rule 12(b) motion asserting objections or defenses that

5    could have been asserted in the first motion." *See also* Wright & Miller, 5C *Federal Practice &*

6    *Procedure* § 1388, 491–95 (3d ed. 2004) (citing additional cases applying Federal Rule 12(g)(2)

7    and Rule 12(h)(2)).

8         *Wafra*, *Herron*, and *FAMC* illuminate how courts have interpreted and applied Federal

9    Rule of Civil Procedure 12(g)(2) and Federal Rule of Civil Procedure 12(h)(2).  As with the

10   movants in those cases, Defendants here could have asserted a SLUSA-preclusion defense against

11   all of Northstar's claims in Defendants' motion to dismiss Northstar's TAC.  In fact, unlike the

12   movant in *Wafra*, Defendants *did* do so in a previous motion to dismiss.  Then, in a subsequent

13   motion to dismiss, Defendants asserted a SLUSA preclusion defense against only *some* of

14   Northstar's claims, *and* provided a reason as to why Defendants were not asserting a SLUSA

15   preclusion defense against Northstar's other claims.  Defendants may not re-assert in a successive

16   motion to dismiss arguments that Defendants abandoned in a prior motion to dismiss.

17        Defendants' arguments to the contrary are unavailing.  First, Defendants' reliance on

18   *Mattel, Inc. v. MGA Entertainment, Inc.*, 782 F. Supp. 2d 911, 1017 (C.D. Cal. 2011), is

19   inapposite.  In *Mattel*, the district court addressed Mattel and MGA's cross motions for partial

20   summary judgment, not a motion to dismiss.  *Id.* at 940–41.  To be clear, there is nothing in Rule

21   12(g) that prevents a party from re-asserting a previously waived defense in a motion for summary

22   judgment.  *See* Fed. R. Civ. P. 12(g)(2) ("Except as provided in Rule 12(h)(2) or (3), a party that

23   makes a motion *under this rule* must not make another motion *under this rule* raising a defense . . .

24   available to the party but omitted from its earlier motion.") (emphasis added).

25        Similarly, Defendants' citation to cases such as *Massey v. Helman*, 196 F.3d 727 (7th Cir.

26   1999), *Spearman v. U.S. Steel Corporation*, 2013 WL 170667 (S.D. Ill. Jan. 16, 2013), and *In re*

27                                                    13

28   Case No. 08-CV-04119-LHK
     ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS FOURTH
     AMENDED COMPLAINT

United States District Court
Northern District of California

1   *Parmalat Securities Litigation*, 421 F. Supp. 2d 703 (S.D.N.Y. 2006), is not well taken.  As

2   Defendants themselves acknowledge, these cases stand for the proposition that an amended

3   complaint opens the door for "*previously unasserted* affirmative defenses."  Reply at 13 (emphasis

4   added).  Defendants' SLUSA preclusion defense does not fall within this category.

5          Third, Defendants' discussion of *United States v. Vaile*, 5 F.3d 544, at *1 (Table) (9th Cir.

6   1993), and *United States v. Flores*, 176 F. App'x 62 (11th Cir. 2006), is not relevant.  *Vaile* and

7   *Flores* are criminal cases, governed by the Federal Rules of Criminal Procedure.  The instant case

8   is a civil case, governed by the Federal Rules of Civil Procedure.  Federal Rule of Civil Procedure

9   12 specifically holds that 12(b)(6) defenses cannot be asserted if these defenses were available but

10  omitted in an earlier 12(b)(6) motion *unless* these defenses are asserted in a pleading, in a 12(c)

11  motion, or at trial.  Defendants have not asserted the instant defense in a pleading, a 12(c) motion,

12  or at trial.  Defendants cannot re-assert an abandoned SLUSA preclusion defense with respect to

13  Northstar's breach of fiduciary duty claims in the instant motion to dismiss.

14         In sum, the Court declines to consider SLUSA preclusion with respect to claims one and

15  eight, Northstar's breach of fiduciary duty claims against the Trust and the Trustees.  In addition,

16  the Court notes that Defendants did not assert a SLUSA preclusion defense with respect to *any* of

17  Northstar's breach of fiduciary duty claims in the TAC.  The Court therefore declines to discuss

18  SLUSA preclusion with respect to Northstar's breach of fiduciary duty claims against the Advisor,

19  claims two and nine.  Furthermore, claims three and ten, which allege that the Trustees aided and

20  abetted the Advisor's breach of the Advisor's fiduciary duties, and claims four and eleven, which

21  allege that the Advisor aided and abetted the Trustees' breach of the Trustees' fiduciary duties, are

22  clearly related to Northstar's underlying breach of fiduciary duty claims.  Accordingly, Defendants

23  may not raise a SLUSA preclusion defense on a successive motion to dismiss with respect to these

24  aiding and abetting claims (claims three, four, ten, and eleven).

25         **2. Existence of a Duty**

26         Next, Defendants acknowledge that, in *Northstar V*, the Ninth Circuit "held that the

27

28  Case No. 08-CV-04119-LHK
    ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS FOURTH
    AMENDED COMPLAINT

14

United States District Court
Northern District of California

*Trustees* owed fiduciary duties directly to the shareholders." Mot. at 20 (emphasis in original); *Northstar V*, 779 F.3d at 1056–57. Defendants contend that the Ninth Circuit "did not make any similar ruling with respect to the Trust or the Advisor." *Id.* Consequently, Defendants argue that no such fiduciary duty exists with respect to these entitites. The Court will analyze whether a fiduciary duty exists between Plaintiff and the Trust below, and whether a fiduciary duty exists between Plaintiff and the Advisor in Part III.B.

As for the Trust, the Court agrees with Defendants that no such fiduciary duty exists. Plaintiff's FAC describes the Trust as "an investment trust, organized under Massachusetts law and . . . a registered investment company under the Investment Company Act of 1940." FAC ¶ 30. "The Trust consists of a series of 94 Schwab-related mutual funds, including the Index Fund." *Id.* The Trust, in other words, serves as "an instrument of trust by which property is *held and managed by trustees* for the benefit of persons who are or become the holders of the beneficial interests in the trust estate." *Id.* ¶ 33 (emphasis added). According to Schwab Investments' Statement of Additional Information ("SAI"), the Trustees have in turn "delegated the responsibility for voting proxies to CSIM"—the Advisor—"through their respective Investment Advisory and Administration Agreements." ECF No. 218-6 ("SAI") at 83.

In short, the Trust consists of various assets managed by the Trustees for the benefit of shareholders. Many of these management responsibilities are thereby delegated to the Advisor through the IAA; the Advisor serves as an agent for the Trustees. To the extent that any fiduciary duties are owed at all to Northstar, those duties are owed by those who manage the Trust—not by the Trust itself. Four arguments counsel in favor of this determination: the Ninth Circuit's reasoning in *Northstar V*, the authority (or lack thereof) cited by Northstar in Northstar's opposition to the instant motion, case law found by the Court in the Court's own research, and the allegations made in the FAC. The Court will discuss each of these arguments in turn.

First, in *Northstar V*, the Ninth Circuit made clear its intention to respond directly to Defendants' assertion, made by Defendants at oral argument, that "the Trustees did not owe a

Case No. 08-CV-04119-LHK
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS FOURTH
AMENDED COMPLAINT

United States District Court
Northern District of California

fiduciary duty to the beneficiaries of the Schwab Trust."  779 F.3d at 1056; *see id.* (summarizing

Defendants' argument and then stating that "[t]here are several deficiencies in this argument.").

The Ninth Circuit cited cases such as *Fogelin v. Nordblum*, where the Supreme Judicial Court of

Massachusetts stated that "[i]t is axiomatic that the . . . *trustees* [stand] in a fiduciary relationship

to all the beneficiaries of the trust."  521 N.E.2d 1007, 1011 (Mass. 1998) (emphasis added).

Importantly, in *Fogelin*, the trustees brought suit against the trust's beneficiaries; no claims or

counterclaims were ever asserted against the trust itself.  Furthermore, after reviewing a collection

of secondary sources, the Ninth Circuit held that "[t]he allegations in the complaint . . . are

sufficient to support an argument that *the Trustees* violated . . . [the] duty of care."  *Id.* at 1059

(internal quotation marks and alterations omitted) (emphasis added).  Again, the Ninth Circuit did

not say whether such claims could be brought against the Trust.  Finally, in rejecting one of

Defendants' policy-based arguments, the Ninth Circuit stated that "the *trustees* of a mutual fund

cannot seriously be expected to induce arm's-length bargaining" with the Advisor.  *Id.* at 1061

(internal quotation marks omitted) (emphasis added).  The Ninth Circuit did not, however, discuss

whether the Trust could maintain any such relationship with the Advisor.  This summary

highlights the Ninth Circuit's determination that the Trustees owed shareholders a fiduciary duty

because of the Trustees' role in managing the Trust.  There is no evidence in *Northstar V* to

suggest that the Trust owed shareholders a fiduciary duty.

Second, in addition to the reasoning in *Northstar V*, the Court also notes that Northstar has

failed to identify a single case—and the Court has found none in the Court's own research—where

a trust's beneficiaries have successfully brought a breach of fiduciary duty claim against the trust

itself.  In every case identified in Northstar's opposition to Defendants' instant motion to dismiss,

courts have found that a fiduciary duty might exist between an individual that manages the trust

and the beneficiaries of that trust.  *See, e.g.*, *In re Hilson*, 863 N.E.2d 483, 493 (Mass. 2007)

(finding breach of fiduciary duty by trustee because trustee had improperly converted funds for

own use).  But again, none of these cases involve litigation against the trust itself.

United States District Court
Northern District of California

Third, in the course of the Court's own research, the Court has analyzed the existence of fiduciary duties in analogous contexts, and has found that the results of this analysis are not helpful to Northstar.  For example, in *Patsos v. First Albany Corp.*, 741 N.E.2d 841, 851 (Mass. 2001), the Supreme Judicial Court of Massachusetts held that if Patsos, the investor, "had merely alleged in very general terms that he trusted [his broker], that [his broker] was aware of his inexperience, and that he had transferred funds for [his broker] to invest on his behalf, that would be insufficient to establish that Patsos and [his broker] had entered into a general fiduciary relationship."  The Supreme Judicial Court only found the existence of a fiduciary relationship in *Patsos* after Patsos had pleaded at least eight different facts to show how Patsos' relationship with his broker was different from a typical investor-broker relationship.  *Patsos* appears to be the only case where a court has found that the brokerage—First Albany, in the case of *Patsos*—may also be held liable for breach of a fiduciary duty for the broker's actions.  However, in reaching this conclusion, the Supreme Judicial Court relied upon "principles of agency law," and found liability because Patsos's broker served as an agent to First Albany, the principal.

In the instant case, no such principal-agent relationship exists between the Trust and the Trustees.  The Trustees are not agents of the Trust.  The Trust contains assets, which are managed by the Trustees.  This is clear from the Declaration of Trust, which states that "the Trustees hereby declare that they will hold all cash, securities and other assets, which they may from time to time acquire in any manner as Trustees hereunder IN TRUST to manage and dispose of the same."  *See Northstar V*, 779 F.3d at 1039 (quoting from Declaration of Trust).  If anything, the only principal-agent relationship that exists is between that of the Trustees (the principal) and the Advisor (the agent), to whom the Trustees have delegated day-to-day management responsibilities.  The Trust itself, however, simply contains the assets for which the Trustees and the Advisor are jointly responsible.

Finally, Northstar's own submissions to the Court highlight the fact that the Trust does not owe a fiduciary duty to the shareholders.  In Northstar's response to Defendants' instant motion,

Case No. 08-CV-04119-LHK
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS FOURTH AMENDED COMPLAINT

United States District Court
Northern District of California

for example, Northstar defines "a fiduciary duty [as] aris[ing] whenever one reposes faith and confidence in another's integrity, advice or judgment." Opp'n at 22. Following Northstar's own definition, the Trust does not exercise integrity, advice, or judgment. These tasks are exercised by the Trustees and the Advisor. The allegations made in Northstar's FAC further corroborate the Court's analysis. Northstar states that "[t]he Trust also owed fiduciary duties to plaintiff and other members of the Class *by virtue of its affiliation with* and *being controlled by* or under the common control of or with the Trustees, defendant Charles Schwab and the Schwab Corp." FAC ¶ 129 (emphasis added). Fiduciary duties do not arise by affiliation. They arise where an entity, the fiduciary, is "under a duty to act for the benefit of the other as to matters within the scope of the relation." *Doe v. Harbor Sch., Inc.*, 843 N.E. 2d 1058, 1064 (Mass. 2006). The Trust has no such duty to act. The Trust is only an instrument through which the Trustees and the Advisors act.

Accordingly, the Court finds that Northstar has failed to sufficiently allege a fiduciary duty by the Trust. Moreover, the Court finds that amendment would be futile, given the way that the Trust, the Trustees, and the Advisor are organized. Additional factual allegations would not change the fact that the Trust does not owe a fiduciary duty to shareholders. The Trust is an instrument which contains assets that are managed by the Trustees and the Advisor. *See Lopez*, 203 F.3d at 1130 (court may dismiss claim without leave to amend where "pleading could not possibly be cured by the allegation of other facts.") (internal quotation marks omitted). Northstar's breach of fiduciary duty claims against the Trust, which constitute claims one and eight in the FAC, are therefore dismissed with prejudice.

### 3. Existence of Breach

Defendants next argue that Northstar has failed to sufficiently plead "a breach of any fiduciary duty against any Defendant." Mot. at 19. The Court is unconvinced by this argument as it applies to the Trustees, particularly in light of *Northstar V*.

In *Northstar V*, the Ninth Circuit noted that "[d]efendants conceded at oral argument that the allegations in the operative complaint are sufficient to state a cause of action for breach of

18

1    fiduciary duty." 779 F.3d at 1056.  Instead, Defendants contended only that "the Trustees did not

2    owe a fiduciary duty to the beneficiaries of the Schwab Trust—namely, the shareholders." *Id.*

3    Rather, the Trustees owed fiduciary duties to the Trust, and any breach of fiduciary duty claims

4    would thus have to be brought by way of a derivative action.  *Id.*  The Ninth Circuit rejected this

5    argument, and explained why Northstar could proceed with a direct action against the Trustees.

6    *See id.* at 1056–62.

7        In light of Defendants' admission at oral argument, the Court may, under Ninth Circuit

8    precedent, treat Defendants' "concession . . . as binding."  *In re Adamson Apparel, Inc.*, 785 F.3d

9    1285, 1294 (9th Cir. 2015).

10       Moreover, even if the Court were to address Defendants' arguments on the merits, the

11   Court would find that they lack merit.  In *Northstar V*, the Ninth Circuit strongly implied that

12   Northstar had pled sufficient allegations of breach in Northstar's TAC.  As the Ninth Circuit

13   noted, "[t]he adoption by the shareholders of the fundamental investment objectives of the Fund

14   effectively imposed a restraint on the structural relationship in the Agreement and Declaration of

15   Trust."  *Northstar V*, 779 F.3d at 1059.  "The allegations in the complaint, although not *in haec*

16   *verba*, are sufficient to support an argument that the Trustees violated both specific restraints

17   imposed by the shareholders and the officials' duty of care."  *Id.* (internal quotation marks and

18   alteration omitted).

19       This Court is also mindful of the U.S. Supreme Court's decision in *Tibble v. Edison*

20   *International*, 135 S. Ct. 1823, 1827–28 (2015), where, in vacating and remanding another Ninth

21   Circuit decision, the Supreme Court stated that, "under trust law a fiduciary is required to conduct

22   a regular review of its investment with the nature and timing of the review contingent on the

23   circumstances."  In addition, "[t]his continuing duty exists separate and apart from the trustee's

24   duty to exercise prudence in selecting investments at the outset."  *Id.* at 1828.  In other words,

25   trustees have a duty to both select prudent investments at the outset *and* to monitor these

26   investments from time to time.  Per *Tibble*, the FAC is replete with allegations that the Trustees

27

28   Case No. 08-CV-04119-LHK
     ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS FOURTH
     AMENDED COMPLAINT

United States District Court
Northern District of California

19

1   failed to adequately undertake this sort of regular monitoring.  The FAC specifically alleges that

2   the Trustees neglected the Trustees' duties to monitor the Advisor's management decisions and

3   permitted the Advisor to deviate from the Fund's investment objectives.  *See, e.g.*, FAC ¶¶ 110–

4   11.  If the Trustees did in fact fail to regularly review the Advisor's management decisions, the

5   Trustees neglected to fulfill their fiduciary duty.  Thus, Northstar has pled sufficient factual

6   allegations to state a claim for breach of fiduciary duty by the Trustees.

7          **4. Statute of Limitations**

8          Next, Defendants argue that Northstar's breach of fiduciary duty claims against the

9   Trustees must be dismissed because they are time-barred.  The gist of Defendants' argument is

10  that Northstar alleges that the Trustees began to breach the Trustees' fiduciary duty "[o]n or

11  shortly before August 31, 2007."  FAC ¶ 4.  However, "[t]he Trustees were first added as

12  defendants in plaintiff's Second Amended Complaint dated September 28, 2010."  *Id.* ¶ 47.  Under

13  Massachusetts law, actions that allege breach of fiduciary duty must be brought "within three

14  years . . . after the cause of action accrues."  Mass. Gen. Laws. ch. 260, § 2A.  That would have

15  been August 31, 2010, according to Defendants' theory.  Because Northstar brought the Trustees

16  into this case on September 28, 2010, Northstar's claims are barred by the statute of limitations.

17         The Court finds Defendants' argument unsupported by the case law and by the facts in this

18  case.  Northstar's claim that Defendants began to deviate from Defendants' investment objectives

19  on or shortly before August 31, 2007 does not mean that Northstar's cause of action began to

20  accrue on or before August 31, 2007.  As the Supreme Judicial Court of Massachusetts has stated,

21  "when an action is brought against a trustee, the cause of action does not accrue until the trustee

22  repudiates the trust and the beneficiary has actual knowledge of that repudiation."  *Lattuca v.*

23  *Robsham*, 812 N.E. 2d 877, 884 (Mass. 2004).  In other words, the clock for Northstar's breach of

24  fiduciary duty claims start not at the moment of breach, but at the moment when Northstar actually

25  had knowledge of the breach.  In *Lattuca*, for instance, the Supreme Judicial Court rejected

26  "defendants' argument that Lattuca 'could have' conducted a . . . search . . . [or] 'could have'

27

28  Case No. 08-CV-04119-LHK
    ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS FOURTH
    AMENDED COMPLAINT

United States District Court
Northern District of California

1     investigated the trust's finances." *Id.* "Constructive knowledge is insufficient." *Id.* "[A] cause of

2     action for breach of fiduciary duty does not arise until the beneficiary is aware that repudiation has

3     occurred." *Id.*

4          It is unclear, based on the record in this case, when Northstar actually learned of

5     Defendants' repudiation of Defendants' fiduciary duties.  Northstar, of course, argues that it did

6     not have actual knowledge until after September 28, 2007.  In support of this point, Northstar

7     offers a chart which compares the Fund's total return against the total return of the Lehman Index.

8     FAC ¶ 121.  From this chart, it appears that the Fund and the Index closely tracked one another

9     until about October 2007—after this point, the Fund and the Index noticeably diverged.  Northstar

10    also alleges that Defendants filed with the SEC an Annual Certified Shareholder Report on

11    November 2, 2007, which documented the Fund's portfolio holdings as of August 31, 2007.  *See*

12    ECF 225-1 ("2007 SEC Rep.") at 5.  Thus, Northstar asserts that it could not have actually known

13    of the Fund's holdings before November 2, 2007.  Finally, Northstar states that the Fund's

14    investment objectives "prohibited any concentration of investments of '25% or more of the value

15    of the total assets in any industry' (other than *if necessary to track the Index*)."  FAC ¶ 6

16    (emphasis added).  Thus, even though 37% of the total holdings in the Fund were CMOs as of

17    August 31, 2007, it is possible to believe that Defendants were, on August 31, 2007, still simply

18    following the Lehman Index's lead.  That is, from Northstar's perspective, it would have been

19    possible to believe, on August 31, 2007, that Defendants had only concentrated 37% of Fund

20    holdings in CMOs because the Lehman Index had also decided to concentrate 37% of the Lehman

21    Index's holdings in CMOs.  It would take more time before Defendants' decision to deviate would

22    become apparent, as evidenced by the chart included by Northstar in the FAC.

23          Defendants have offered little to rebut these assertions.  At most, Defendants point to the

24    fact that the Annual Report, discussed above, provided a snapshot of the Fund's holdings on

25    August 31, 2007.  Reply at 11.  This argument is unavailing.  As noted above, an official certified

26    version of this Report was not filed with the SEC until November 2, 2007.  Defendants have

Case No. 08-CV-04119-LHK
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS FOURTH
AMENDED COMPLAINT

United States District Court
Northern District of California

1    offered no evidence to show that shareholders knew of the contents of this report prior to the

2    report's official filing.  Based on this information and based on the other factual allegations recited

3    above, Defendants have not convinced the Court that Northstar had actual knowledge of breach

4    prior to September 28, 2007.  Accordingly, the Court finds that Northstar's fiduciary duty claims

5    against the Trustees are not time-barred.

6        **5. Exculpatory Provision**

7        Finally, Defendants assert that the Trustees are protected by an exculpatory provision

8    contained in the Declaration of Trust.  This provision shields the Trustees from liability unless the

9    Trustees' conduct arises from "willful malfeasance, bad faith, gross negligence, or reckless

10   disregard."  Mot. at 24.  Northstar's FAC, Defendants argue, alleges only facts that would amount

11   to negligence.

12       This argument is without merit.  First, in the FAC, Northstar alleges that the Trustees acted

13   with "willful misfeasance, bad faith, gross negligence, or reckless disregard of their duties."  FAC

14   ¶ 132.  To be sure, to survive a motion to dismiss, Northstar must do more than simply recite the

15   pertinent clause's language.  The Court believes that Northstar has done so.  In the immediate

16   preceding paragraph, Northstar alleges that the Trustees "made or permitted or authorized

17   investments of trust property that were speculative, irresponsible and risky."  *Id.* ¶ 131.

18       In response, Defendants assert that the Trustees were only negligent in undertaking the

19   Trustees' duties.  This is a factual dispute: Northstar alleges one set of facts, and Defendants allege

20   a different set of facts.  Such disputes typically cannot be resolved on a motion to dismiss.  *See*

21   *ASARCO, LLC v. Union Pac. R.R. Co.*, 765 F.3d 999, 1004 (9th Cir. 2014) ("If, from the

22   allegations of the complaint as well as any judicially noticeable materials, an asserted defense

23   raises disputed issues of fact, dismissal under Rule 12(b)(6) is improper.").  Moreover, on a

24   motion to dismiss, Northstar's factual allegations must be accepted "as true and construe[d] . . . in

25   the light most favorable to the nonmoving party."  *Manzarek*, 519 F.3d at 1031.  Based on these

26   allegations and based on the legal standard that the Court must apply, the Court finds Defendants'

27

28   Case No. 08-CV-04119-LHK
     ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS FOURTH
     AMENDED COMPLAINT

22

United States District Court
Northern District of California

United States District Court
Northern District of California

1    exculpatory provision defense unavailing.

2        To summarize, the Court finds that the Trust did not owe a fiduciary duty to Northstar.

3    Amendment would not change this finding.  The Court therefore GRANTS with prejudice

4    Defendants' motion to dismiss the Trust from Northstar's breach of fiduciary duty claims, which

5    constitute claims one and eight in the FAC.  The Court, however, DENIES Defendants' motion to

6    dismiss with respect to Northstar's breach of fiduciary duty claims against the Trustees because

7    (1) Defendants are foreclosed from asserting a SLUSA preclusion defense, (2) Northstar has pled

8    sufficient factual allegations to state a claim for breach of fiduciary duty, (3) and Defendants have

9    failed to show that Northstar's claims are time-barred or that they fall within an exculpatory

10   clause.

11   **B.  Breach of Fiduciary Duty Against the Advisor (Claims Two & Nine)**

12       The Court now turns to Defendants' arguments regarding whether the Advisor owed a

13   fiduciary duty to Northstar.  Because Defendants are foreclosed from arguing SLUSA preclusion,

14   the Court's discussion is limited to Defendants' contentions (1) that Northstar has failed to

15   sufficiently allege the existence of a fiduciary duty and (2) that Northstar has failed to sufficiently

16   allege the existence of a breach of this duty.

17       **1. Existence of Duty**

18       The Court turns first to Defendants' contention that no fiduciary duty exists.  Defendants'

19   argument is that the Advisor's obligations arise out of a contractual agreement, the IAA.  Any

20   such claims against the Advisor must thus be asserted as breach of contract claims, not breach of

21   fiduciary duty claims.  In support of this point, Defendants refer the Court to the Supreme Judicial

22   Court of Massachusetts' decision in *Chokel v. Genzyme Corporation*, 867 N.E. 2d 325, 330–31

23   (Mass. 2007), where the Supreme Judicial Court held that, "[w]hen rights of stockholders arise

24   under a contract, however, the obligations of the parties are determined by reference to contract

25   law, and not by the fiduciary principles that would otherwise govern."

26       This Court is not persuaded by Defendants' analysis.  First, the Court declines to treat

27

28   Case No. 08-CV-04119-LHK
     ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS FOURTH
     AMENDED COMPLAINT

*Chokel* as the last word on the matter because it is not, in fact, the last word on the matter.  In

*Selmark Associates, Inc. v. Ehrlich*, 5 N.E.3d 923, 933 (Mass. 2014), for instance, the Supreme

Judicial Court clarified its holding in *Chokel*, by stating that,  "when the challenged conduct at

issue in a case is *clearly* contemplated by the terms of the parties' written agreements, we have

declined to find liability for breach of fiduciary duty.  However, we have been equally clear that

the presence of a contract will not always supplant a shareholder's fiduciary duty." (internal

quotation marks and citations omitted) (emphasis added).  More tellingly, in *Merriam v. Demoulas*

*Super Markets, Inc.*, 985 N.E.2d 388, 394 n.14 (Mass. 2013), another case published post-*Chokel*,

the Supreme Judicial Court held that parties may "proceed with a claim for breach of fiduciary

duty in situations where a contract did not entirely govern the parties' rights and duties or where

the contract was breached."  Thus, even *if* the Advisor's misbehavior fell within the IAA,

Northstar could nonetheless bring a breach of fiduciary duty claim so long as Northstar also

sufficiently alleges a breach of contract claim.  In *Northstar V*, the Ninth Circuit all but stated that

Northstar had sufficiently alleged a breach of contract claim, when the Ninth Circuit found that a

contract existed between "shareholders on the one hand and the Fund and the Trust on the other,"

779 F.3d at 1054, and that Northstar had "adequately alleged that the investors are third-party

beneficiaries of the IAA," *id.* at 1065.  The Court thus finds *Chokel* inapposite.

Second, and relatedly, the Court finds Defendants' analysis belied by the reasoning in

*Northstar V*.  As the Ninth Circuit explained, the IAA requires the Advisor to "use the same skill

and care in providing such services as it would use in providing services to fiduciary accounts if it

had investment responsibilities for such accounts."  779 F.3d at 1062.  Such language, the Ninth

Circuit went on to note, "indicates the direct relationship that the shareholders have with the IAA

and the fact that they are the actual beneficiaries of the IAA."  *Id.* at 1063; *see also id.* at 1064

("Thus, the 'ultimate beneficiary' of the Schwab Advisor's contractual duties were the

shareholders.").  The Ninth Circuit's reasoning suggests that the Advisor did not operate at arm's

length.  Instead, the Advisor worked under the supervision of the Trustees on behalf of the

24

United States District Court
Northern District of California

United States District Court
Northern District of California

1    shareholders.  As such, the Advisor ultimately owed the shareholders certain fiduciary duties.  *Cf.*

2    Victor Brudney, *Contract and Fiduciary Duty in Corporate Law*, 38 B.C. L. Rev. 595, 663–64

3    (1997) (noting that conventional contract doctrine "focuses on a party's entitlement to benefit

4    himself, and the limits of that entitlement," while traditional fiduciary duty doctrine "addresses the

5    obligation of the fiduciary to serve the beneficiary.").

6            **2. Existence of Breach**

7            The Court rejects Defendants' contention that Northstar has insufficiently alleged breach

8    of fiduciary duty by the Advisor.  In *Northstar V*, the Ninth Circuit strongly suggested that the

9    Trustees had breached at least one of their fiduciary duties—the duty of care—by, in part,

10   violating the specific investment restraints imposed upon the Trustees by shareholders.  *Northstar*

11   *V*, 779 F.3d at 1059.  The FAC alleges that the Advisor was responsible for overseeing day-to-day

12   asset management, and that the Advisor would be subject to periodic reviews by the Trustees.

13   FAC at ¶¶ 58, 63.  As pointed out above, the relationship between the Trustees and the Advisor is

14   akin to the relationship between a principal and an agent.  Here, the Trustees—the principal—

15   delegated many responsibilities to the Advisor—the agent.  Indeed, as noted by the Ninth Circuit

16   in *Northstar V*, most mutual funds "are essentially puppets of the investment adviser."  779 F.3d at

17   1061.

18           In sum, given the more active management role undertaken by the Advisor as compared to

19   the Trustees, the Court finds that the FAC also pleads sufficient factual allegations to state a claim

20   for breach of fiduciary duty by the Advisor, for substantially the same reasons that underscored the

21   Court's earlier decision to find that the FAC sufficiently alleged breach of fiduciary duty by the

22   Trustees.  The Court therefore DENIES Defendants' motion to dismiss Northstar's breach of

23   fiduciary duty claims against the Advisor, which constitute claims two and nine in the FAC.

24       **C. Aiding and Abetting Breach of Fiduciary Duty (Claims Three, Four, Ten & Eleven)**

25           Northstar asserts that the Trustees aided and abetted the Advisor's breach of the Advisor's

26   fiduciary duties (claims three and ten), and that the Advisor aided and abetted the Trustees' breach

27

28   Case No. 08-CV-04119-LHK
     ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS FOURTH
     AMENDED COMPLAINT

of the Trustees' fiduciary duties (claims four and eleven).  Defendants challenge these aiding and abetting claims as being inadequately pleaded because (1) Northstar has failed to state an underlying claim for breach of fiduciary duty, and (2) because the "FAC is devoid of factual allegations establishing" aiding and abetting liability.  Mot. at 25.

The Court has already determined that Northstar has sufficiently alleged an underlying claim for breach of fiduciary duty by both the Trustees and the Advisor.  Hence, the sole remaining issue is whether the FAC sufficiently alleges a claim for aiding and abetting liability.  Northstar asserts the instant claims under Massachusetts law.  *See, e.g.*, FAC ¶ 147.  Under Massachusetts law, for purposes of aiding and abetting liability, "the plaintiff must show that the defendant knew of the breach and actively participated in it such that he or she could not reasonably be held to have acted in good faith."  *Spinner v. Nutt*, 631 N.E.2d 542, 546 (Mass. 1994).  The Court finds that the FAC satisfies these requirements.

The FAC, and the exhibits incorporated therein, suggest that the Trustees and the Advisor are to have a close working relationship.  Schwab Investments' 1997 Proxy Statement states, for instance, that the Trustees and the Advisor worked together in proposing new investment objectives for the Fund.  ECF No. 218-1 ("1997 Proxy") at 16.  Similarly, Schwab Investments' 1998 Prospectus states that "[e]ach Fund will seek a correlation between its total return and that of its Index of 0.9 or better . . . .  [The Advisor] will monitor the performance of each Fund against its index and will rebalance a Fund periodically to reduce tracking error.  In the event a correlation of 0.9 or better is not achieved, the Board of Trustees will consider alternative arrangements."  ECF No. 218-2 ("1998 Prospectus") at 8.  Schwab Investments' 2007 Annual Report includes several pages which document the overlapping responsibilities of the Trustees and the Advisor.  *See* 2007 Annual Rep. at 71–72.  Together, these statements strongly suggest that, if a breach did in fact occur, one Defendant knew what the other Defendant was doing, and may have helped facilitate the breach at issue.

The Court notes that the Court's decision today does not foreclose Defendants from

26

United States District Court
Northern District of California

United States District Court
Northern District of California

challenging Northstar's aiding and abetting claims at a later stage.  It is possible, for instance, that Defendants will be able to show that the Trustees did not actively participate in the Advisor's breach of the Advisor's fiduciary duties to Northstar.  However, based on the facts alleged in the FAC, the information in the exhibits included therein, and the cursory arguments made in Defendants' motion to dismiss, the Court finds dismissal inappropriate at this time.  The Court therefore DENIES Defendants' motion to dismiss Northstar's aiding and abetting claims, which constitute claims three, four, ten, and eleven in the FAC.

### D. Third Party Beneficiary of IAA Against the Advisor (Claims Five & Twelve)

With respect to Northstar's third party beneficiary claims, Defendants argue only that these claims are precluded by SLUSA.  The Court will begin with a brief overview of SLUSA's legal framework before analyzing whether Northstar's third party beneficiary claims survive SLUSA preclusion.

### 1. SLUSA Preclusion

SLUSA was enacted to stem the shift of class action lawsuits from federal to state court in the wake of the Private Securities Litigation Reform Act of 1995 ("PSLRA").  *Merrill Lynch v. Dabit*, 547 U.S. 71, 82 (2006).  In order to avoid the PSLRA's requirements, litigants began asserting what were essentially federal securities law claims as state law causes of action in state court.  *Id.*  Congress sought to end this practice by enacting SLUSA.

SLUSA bars private plaintiffs from bringing (1) a covered class action (2) based on state law claims (3) alleging that defendant made a misrepresentation or omission or employed any manipulative or deceptive device (4) in connection with the purchase or sale of (5) a covered security.  *Freeman Investments, L.P. v. Pacific Life Insurance Co.*, 704 F.3d 1110, 1114 (9th Cir. 2013); *see also Proctor v. Vishay Intertechnology Inc.*, 584 F.3d 1208, 1221–22 (9th Cir. 2009) (noting that covered class actions are class actions brought on behalf of more than 50 people).  The complaint need not allege scienter, reliance, or loss causation in order for SLUSA to apply.  *See Anderson v. Merrill Lynch Pierce Fenner & Smith, Inc.*, 521 F.3d 1278, 1285–87 (10th Cir. 2008).

27

Case No. 08-CV-04119-LHK
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS FOURTH AMENDED COMPLAINT

1  In addition, the precluded state law claims need not contain a "specific element" of

2  misrepresentation.  *Proctor*, 584 F.3d at 1222 n.13.  Allegations of a material misrepresentation

3  may simply serve as the factual predicate of a state law claim in order to satisfy SLUSA's

4  misrepresentation prong.  *Id.*

5  **2. Delaware Carve-Out**

6  Federal law provides a narrow exception to SLUSA preclusion, known as the Delaware

7  carve-out.  This provision states that, notwithstanding the provisions discussed above, "a covered

8  class action . . . that is based upon the statutory or common law of the State in which the issuer is

9  incorporated (in the case of a corporation) or organized (in the case of any other entity) may be

10  maintained in a State or Federal court by a private party."  15 U.S.C. § 77p(d)(1)(A).  The action

11  must also constitute a "[p]ermissible action[]," as defined in 15 U.S.C. § 77p(d)(1)(B), in order to

12  fall within the scope of the Delaware carve-out.

13  For purposes of Northstar's third party beneficiary claims, however, it is unnecessary for

14  the Court to undertake a detailed Delaware carve-out analysis.  Northstar claims that shareholders

15  were intended third party beneficiaries of the IAA between the Trust and the Advisor, and "[t]he

16  IAA expressly states that it shall be governed by the laws of the State of California."  *Northstar V*,

17  779 F.3d at 1062 (internal quotation marks omitted).  Northstar alleges that Schwab Investments is

18  a trust organized under the laws of Massachusetts.  *See* FAC ¶ 12.  The Delaware carve-out does

19  not apply to claims brought under the law of one state against an entity organized under the law of

20  another state.  *See* 15 U.S.C. § 77p(d)(1)(A) (applying Delaware carve-out only to actions "based

21  upon the statutory  or common law of the State in which the issuer is incorporated . . . or

22  organized").  In the instant case, the Delaware carve-out cannot apply to claims brought under the

23  laws of California against a trust organized under the laws of Massachusetts.  Thus, because the

24  Delaware carve-out does not apply to Northstar's third party beneficiary claims, the Court must

25  analyze the SLUSA requirements described above.

26  **3. Misrepresentation or Omission of a Material Fact**

27

28  Case No. 08-CV-04119-LHK
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS FOURTH
AMENDED COMPLAINT

28

United States District Court
Northern District of California

In analyzing whether Northstar's third party beneficiary claims are precluded by SLUSA, the Court need only decide whether the action brought by Northstar is based on "a misrepresentation or omission of a material fact." 15 U.S.C. § 77bb. With respect to the other SLUSA requirements, Northstar does not dispute that the instant action constitutes a covered class action, that shares in the Fund are covered securities, that Plaintiff's claims are based entirely on the common or statutory law of a state, and that the class action is "in connection with the purchase or sale" of a covered security. *See Northstar III* at 8; *see also Northstar V*, 779 F.3d at 1049 n.5 ("There is no question that this class action is 'in connection with the purchase or sale' of a covered security, and the district judge properly so concluded."). Thus, Northstar's third party beneficiary claims rise and fall depending on whether this action is based on a misrepresentation or omission of material fact.

In *Northstar III*, this Court found that "the central theme of the [SAC] . . . is that defendants made misrepresentations about how investments in the Fund would be managed, that Plaintiffs purchased Fund shares relying on these misrepresentations, and that Plaintiffs were injured when these statements turned out to be false." *Northstar III* at 9–10. Thus, the Court found all of Northstar's claims barred by SLUSA.

Northstar has offered two arguments in response to the Court's previous finding of SLUSA preclusion. First, Northstar claims that the FAC removes "any allegations that could even arguably be found to concern misrepresentations with respect to the Fund's fundamental investment objectives." Opp'n at 7. Second, Northstar claims that the law has changed since the Court's decision in *Northstar III*, and that the law now permits Northstar to proceed with claims previously barred under SLUSA. The Court disagrees on both counts.

### i. Changes to the complaint

First, the Court is not persuaded by Northstar's attempts at artful wordsmithing. Northstar states, in the FAC, that "[t]he liability of the Investment Advisor . . . is not predicated on misrepresentations or omissions, or purchases or sales of securities by plaintiff and the members

United States District Court
Northern District of California

of the Class based thereon or in connection with."  FAC ¶ 175.  Saying something does not make

it so.  The FAC's other allegations clearly state liability based on a misrepresentation or an

omission.  For example, the SAC states: "[t]he Schwab Advisor breached the terms of the

Investment Advisory Agreement (a) by failing to invest the Fund's assets consistent with the

Fund's fundamental investment policy to 'seek to track' the Index 'through the use of an indexing

strategy' and (b) by 'concentrating' more than 25% of the Fund's total assets in 'investments in a

particular industry or group.'"  *Id.* ¶ 169.  The FAC also states: "[i]t would make no sense if the

Schwab Advisor were free to deviate from the Fund's fundamental investment objectives during

its management of the Fund."  *Id.* ¶ 166.  The Advisor did, however, deviate from these objectives.

*See, e.g.*, *id.* ¶¶ 7, 111–113, 121.  The Advisor represented to the Trust (and, ultimately, to

shareholders) that the Advisor would do one thing, but ended up doing another.  That is a

misrepresentation in the most classic sense.[7]

    Northstar contends that, in *Northstar III*, this Court identified and relied upon a particular

misrepresentation made by Defendants in a semi-annual report.  *See Northstar III* at 8

("Specifically, Plaintiffs allege that defendants blamed the deviation on 'the forced selling of

securities into a weak bond market' when the real cause of Fund's losses was 'the deviation of the

securities in the Fund from the Index.'") (quoting SAC ¶¶ 96–97).  Northstar has now deleted

references to this report in the FAC in an attempt to defeat SLUSA preclusion.  Even if this Court

were to adopt Northstar's arguments and find that the Advisor did not make a material

---

[7] In Northstar's opposition to Defendants' motion to dismiss, Northstar selectively quotes from the Ninth Circuit's decision in *Freeman Investments, L.P. v. Pac. Life Ins. Co.*, 704 F.3d 1110, 1118 (9th Cir. 2013), where the Ninth Circuit stated that "[p]laintiffs allege that their insurer promised one thing and delivered another.  That's a straightforward contract claim that doesn't rest on misrepresentation or fraudulent omission."  Northstar misreads *Freeman*.  *Freeman*, discussed in greater detail below, involved an interpretative dispute over a single contractual term.  Unlike the instant case, no misrepresentations or omissions were made in *Freeman*.  The only dispute was over how to calculate a particular cost—either based on certain industry standards (as understood by the plaintiffs) or based on an insurance company's particular policies (as understood by the defendant).  As the Ninth Circuit made clear, "[t]o succeed on th[eir] claim, plaintiffs need not show that Pacific misrepresented the cost of insurance or omitted critical details.  They need only persuade the court that theirs is the better reading of the contract term."  *Id.* at 1115.

30

Case No. 08-CV-04119-LHK
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS FOURTH
AMENDED COMPLAINT

1    misrepresentation to shareholders, the Court would nonetheless find Northstar's claims precluded.

2    SLUSA preclusion applies to both misrepresentations *and* omissions of material facts.  15 U.S.C.

3    § 77p.  The Advisor's decision to not say anything about the Advisor's purported decision to

4    deviate—and the resulting effect on the Fund's value—clearly constitutes a material omission.

5    *See Dudek v. Prudential Sec., Inc.*, 295 F.3d 875, 880 (8th Cir. 2002) (finding that failure to

6    disclose unsuitability of certain accounts amounted to omission of material fact).

7           To summarize, the material misrepresentation and material omission requirements form

8    two sides of the same coin in this case.  The Advisor stated that the Advisor would do one thing,

9    but ended up doing another.  Either the Advisor misrepresented what was going on (Northstar's

10   theory in the SAC) or the Advisor declined to inform shareholders of the Advisor's decision to

11   abandon the Fund's core investment objectives (Northstar's theory in the FAC).  SLUSA

12   preclusion applies to both scenarios.

13                          **ii. Changes to the law**

14          In the alternative, Northstar argues that the law has changed since the Court's decision in

15   *Northstar III*.  This argument is not well taken.  Northstar begins by charging that, of the cases that

16   the Court relied upon in finding SLUSA preclusion, two involved specific "allegations of false

17   statements or omissions of material facts."  Mot. at 9.  The Court fails to see why this is relevant.

18   The fact that some cases clearly and explicitly fall within the purview of SLUSA does not mean

19   that cases such as this one—where the alleged facts demonstrate a material misrepresentation or

20   omission—do not also fall within the purview of SLUSA.

21          The Ninth Circuit held as much in *Freeman Investments, L.P. v. Pacific Life Insurance*

22   *Co.*, the most recent case where the Ninth Circuit had opportunity to consider SLUSA preclusion.

23   Citing decisions from other circuits, the Ninth Circuit noted that SLUSA "operates wherever

24   deceptive statements or conduct form the gravamen or essence of the claim."  704 F.3d at 1115.

25   Courts must therefore "look to the substance of the allegations," and not allow litigants to escape

26   the purview of SLUSA through "artful pleading."  *Id.*

27

28
Case No. 08-CV-04119-LHK
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS FOURTH
AMENDED COMPLAINT

1    In *Freeman*, a group of Pacific Life Insurance policyholders brought suit against the

2    company, arguing that Pacific had "charged them too much for life insurance." Specifically, these

3    policyholders argued that a particular charge—the "cost of insurance"—was a term of art, to be

4    calculated "based on industry accepted actuarial determinations" rather than according to Pacific's

5    own independent determinations. *Id.* at 1115. Pacific asserted SLUSA preclusion. In rejecting

6    this defense, the Ninth Circuit stated that, "[t]o succeed on [their] claim, plaintiffs need not show

7    that Pacific misrepresented the cost of insurance or omitted critical details. They need only

8    persuade the court that theirs is the better reading of the contract term." *Id.*

9    The Court believes that these sorts of contract interpretation disputes, which do not

10   concern either a material misrepresentation or a material omission, are emblematic of the limited

11   number of securities-related actions that fall outside SLUSA's purview. Indeed, as the U.S.

12   Supreme Court has noted, SLUSA should be broadly construed. *See Dabit*, 547 U.S. at 86 ("The

13   presumption that Congress envisioned a broad construction follows not only from ordinary

14   principles of statutory construction but also from the particular concerns that culminated in

15   SLUSA's enactment."); *Anderson v. Merrill Lynch Pierce Fenner & Smith, Inc.*, 521 F.3d 1278,

16   1284 (10th Cir. 2008) ("A narrow interpretation of SLUSA would squarely conflict with the

17   congressional preference for national standards for securities class action lawsuits involving

18   nationally traded securities.") (internal quotation marks and alteration omitted).

19   This case does not touch upon a mere contract interpretation dispute. The "essence of

20   [Northstar's] claim" is not only that Defendants deviated from the Fund's investment objectives.

21   *Freeman*, 704 F.3d at 1115. Rather, Northstar also alleges that Defendants violated Defendants'

22   "direct relationship [with] . . . shareholders" by not revealing Defendants' decision to deviate,

23   thereby causing shareholders to "suffer[] actual and direct financial damages." FAC ¶¶ 164, 174.

24   This is not a garden-variety contract claim. Rather, this claim implicates the very sort of

25   misrepresentations and omissions that fall within SLUSA's reach.

26   The Court finds the remaining two cases cited in Northstar's brief—*Tuttle v. Sky Bell*

27

28   Case No. 08-CV-04119-LHK
     ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS FOURTH
     AMENDED COMPLAINT

32

United States District Court
Northern District of California

*Asset Management, LLC* ("*Tuttle II*"), 2011 WL 208060 (N.D. Cal. Jan. 21, 2011), and *Stoody-Broser v. Bank of America, N.A.*, 2012 WL 1657187 (N.D. Cal. May 10, 2012)—inapposite.  In *Tuttle v. Sky Bell Asset Management, LLC* ("*Tuttle I*"), 2010 WL 4807093 (N.D. Cal. Nov. 19, 2010), Judge Alsup found SLUSA preclusion because "the gravamen of the instant complaint [was] that there were misrepresentations that plaintiffs' money was to be invested in massively diversified investments, when in fact almost all the money was funneled into funds-of-funds that invested in Ponzi schemes."  *Id.* at *6.  Plaintiffs were given leave to amend and, in a subsequent order (*Tuttle II*), Judge Alsup denied Defendants' motion to dismiss.

*Tuttle II* is distinguishable from the instant case.  In *Tuttle II*, Plaintiffs did more than simply remove language from the complaint.  Plaintiffs also removed several claims altogether— including claims alleging fraud.  Here, on the other hand, the FAC asserts all of the claims that were asserted in the SAC and the TAC.  In addition, key to the holding in *Tuttle II*, "the original complaint focused on the 'illusion' that the investments were being handled by knowledgeable staff," and thus implied that investors were misled.  *Tuttle II*, 2011 WL 208060, at *2.  On the other hand, "the amended complaint emphasizes that defendants had an obligation to act with due care and failed to do so," which grounded the Plaintiffs' claims in *Tuttle II* in negligence and failure to exercise due care.  Unlike in *Tuttle II*, in the instant case there has been no such change from fraud to negligence.  The thrust of Northstar's claims have remained the same: Defendants allegedly misrepresented or omitted a material fact from the Fund's shareholders, which resulted in financial losses to these shareholders.

Northstar's reliance on *Stoody-Broser v. Bank of America, N.A.*, 2012 WL 1657187 (N.D. Cal. May 10, 2012), is likewise unavailing.  As in *Tuttle II*, Plaintiff in *Stoody-Broser* filed an amended complaint that removed certain claims previously identified as precluded by SLUSA.  *Id.* at *4.  In addition, as in *Tuttle II*, "where the original complaint alleged that Plaintiff and other trust beneficiaries similarly situated were misled about the investment of their trust assets, the amended complaint alleges merely that Defendants fail to act with due care."  *Id.*  Plaintiff in

Case No. 08-CV-04119-LHK
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS FOURTH
AMENDED COMPLAINT

United States District Court
Northern District of California

*Stoody-Broser* had thus changed the nature of Plaintiff's claim, from one rooted in fraud to one rooted in the failure to exercise due care.  Here, on the other hand, Northstar's claims depend on misrepresentations or omissions of material facts by the Advisor to the shareholder.  Such claims are the very sort of claims that should be precluded under SLUSA.

In *Northstar III*, the Court provided Northstar with leave to amend the allegations made in the SAC in order to avoid SLUSA preclusion.  Northstar has failed to do so with respect to Northstar's third party beneficiary claims.  These third party beneficiary claims still hinge on the Advisor's purported misrepresentations or omissions of material fact which this Court identified in *Northstar III*.  *Northstar III* at 13.  The Court finds that providing additional leave to amend would be futile, particularly in light of the fact that Northstar's core allegations have remained the same, even though Northstar has amended its complaint four times.  *See Bonin v. Calderon*, 59 F.3d 815, 845 (9th Cir. 1995) ("Futility of amendment can, by itself, justify the denial of a motion for leave to amend.").  Accordingly, the Court GRANTS Defendants' motion to dismiss Northstar's claims as a third party beneficiary to the IAA and finds that further amendment would be futile.  These third party beneficiary claims, which constitute claims five and twelve in the FAC, are dismissed with prejudice.

### E.  Breach of Contract Against the Trust (Claims Six & Thirteen)

Defendants claim that Northstar's breach of contract claims against the Trust are barred by SLUSA.  The FAC does not specify under which state's laws these claims are being brought.  Unlike Northstar's third party beneficiary claims (claims five and twelve), which allege violation of a contract (the IAA) which, in turn, contained a specific choice of law provision (to apply California law to any and all claims brought), the alleged contract between the Trust and the Trust's shareholders does not include such a provision.  Indeed, as delineated by the Ninth Circuit in *Northstar V*, the contract between the Trust and the Trust's shareholders arose out of the "mailing of [a] proxy statement," "the adoption of . . . two fundamental investment policies," and "the annual representations by the Fund that it would follow these policies."  779 F.3d at 1054.  In

Case No. 08-CV-04119-LHK
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS FOURTH AMENDED COMPLAINT

1    other words, the contract between the Trust and the Trust's shareholders was largely an implied

2    contract, without an explicit choice of law provision.

3         In the absence of such a provision, Defendants assert that Northstar's breach of contract

4    claims are being brought under California law.  *See* Mot. at 15.  Northstar, on the other hand,

5    asserts that these claims are being brought under Massachusetts law.  *See* Opp'n at 12.  The Court

6    must therefore decide first which law to apply, before the Court can determine whether or not to

7    apply SLUSA preclusion.

8         **1. Choice of Law**

9         "A conflict of laws principle known as the 'internal affairs doctrine' posits that only one

10   state—usually the state of incorporation—should have the authority to regulate a corporation's

11   internal affairs."  *Grosset v. Wenaas*, 42 Cal.4th 1100, 1106 n.2 (2008).  The U.S. Supreme Court

12   has defined corporate internal affairs as "matters peculiar to the relationships among or between

13   the corporation and its current officers, directors, and shareholders—because otherwise a

14   corporation could be faced with conflicting demands."  *Edgar v. MITE Corp.*, 457 U.S. 624, 645

15   (1982).  "With respect to stock issues, the local law of the state of incorporation has nearly always

16   been applied."  Restatement (Second) of Conflict of Laws § 302 rptr. n.1.

17        The claims at stake involve an alleged breach of contract by the Trust to the Trust's

18   shareholders in regard to how certain assets should have been managed.  As the Ninth Circuit

19   explained in *Northstar V*, the contract between the Trust and the Trust's shareholders was formed

20   by "the mailing of the proxy statement and the adoption of the two fundamental investment

21   policies after the shareholders voted to approve them, and the annual representations by the Fund

22   that it would follow these policies."  779 F.3d at 1054.  Under these circumstances, the Court finds

23   that the internal affairs doctrine applies to the breach of contract claims at issue.  It is evident that

24   these actions deal with "matters peculiar to the relationship[] . . . between the corporation . . . and

25   [its] shareholders."  *Edgar*, 457 U.S. at 645.  Applied here, the internal affairs doctrine requires the

26   Court to apply Massachusetts law to Northstar's breach of contract claims, as the Trust was

27

28   Case No. 08-CV-04119-LHK
     ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS FOURTH
     AMENDED COMPLAINT

1  formed in Massachusetts.

2      **2. Delaware Carve-Out**

3      Because Massachusetts law applies, and because these breach of contract claims are being

4  brought against the Trust, a Massachusetts entity, the Court must now decide whether these claims

5  fall within the Delaware carve-out.[8]  The Delaware carve-out provides an exception to SLUSA

6  preclusion to litigants who bring claims "based upon the statutory or common law of the State in

7  which the issuer is incorporated . . . or organized." 15 U.S.C. § 77p(d)(1)(A).  As noted above, the

8  instant claims satisfy this first step: the Trust was organized in Massachusetts, and the breach of

9  contract claims are being brought under Massachusetts law.

10     Any such claims, however, must also constitute a "[p]ermissible action[]," as defined

11  under 15 U.S.C. § 77p(d)(1)(B), in order for the Delaware carve-out to apply.  Claims that are not

12  permissible actions do not fall within the Delaware carve-out.  These claims are subject to the

13  same SLUSA preclusion analysis discussed above.

14     Permissible actions are actions that involve:

15     (i) the purchase or sale of securities by the issuer or an affiliate of the issuer exclusively
16     from or to holders of equity securities of the issuer *or*

17     (ii) any recommendation, position, or other communication with respect to the sale of
       securities of the issuer that . . . is made by or on behalf of the issuer or an affiliate of the
18     issuer to holders of equity securities of the issuer . . . *and*

19     concerns decisions of those equity holders with respect to voting their securities, acting in
20     response to a tender or exchange offer, or exercising dissenters' or appraisal rights.

21  15 U.S.C. § 77p(d)(1)(B) (emphasis added).  Northstar's breach of contract claims do not

22

23

24  [8] The Court did not undertake a Delaware carve-out analysis with respect to Northstar's third party
   beneficiary claims because these claims were based on alleged violations of the IAA.  The IAA
25  specifies that any and all legal claims must be brought under California law.  Northstar's third
   party beneficiary claims were therefore brought under *California law* against an entity organized
26  in *Massachusetts*.  The Delaware carve-out does not apply to such situations.  The Delaware
   carve-out applies only to claims brought based upon the same law of the state where an entity is
27  incorporated or organized.

28  Case No. 08-CV-04119-LHK
   ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS FOURTH
   AMENDED COMPLAINT

United States District Court
Northern District of California

implicate subclause (i): "the purchase or sale of securities by the issuer . . . exclusively from or to holders of equity securities of the issuer," because Northstar does not claim to represent holders of equity securities, and the Declaration of Trust states that "the Trustees [will] . . . hold all cash, securities, and others assets . . . IN TRUST." *See Northstar V*, 779 F.3d at 1039 (quoting from Declaration of Trust). That leaves subclause (ii): whether "any recommendation, position, or other communication" was made by the Trust that concerns decisions of "equity holders with respect to voting their securities, acting in response to a tender or exchange offer, or exercising dissenters' or appraisal rights." 15 U.S.C. § 77p(d)(1)(B)(ii).

The Court acknowledges that the contract between the Trust and shareholders, and the subsequent communications between Defendants and shareholders, may have constituted a position or communication for purposes of 15 U.S.C. § 77p(d)(1)(B)(ii).  Yet with respect to the second part of subclause (ii), Northstar argues only that the Delaware carve-out applies because the action concerns shareholders voting their securities.

The Court declines to make such a finding.  The Court finds persuasive the analysis set forth in *Crimi v. Barnholt*, 2008 WL 4287566 (N.D. Cal. Sept. 17, 2008).  In *Crimi*, Plaintiffs sued current and former members of a company, KLA, "alleging that [KLA had] failed to inform Plaintiffs that KLA had issued backdated stock options to senior executives between 1997 and 2002, and therefore breached their fiduciary duty to Plaintiffs." *Id.* at *1.  As in this case, the district court in *Crimi* examined whether Plaintiffs' claims fell within the Delaware carve-out.

In undertaking its analysis, the district court divided Plaintiffs' claims "into two groups: 'holder claims' and 'voter claims.'" *Id.* at *3.  "The 'holder claims' ar[ose] from Plaintiffs' allegations that Defendants failed to disclose the options backdating in the proxy statements and therefore Plaintiffs were 'deprived' of their ability to make an informed decision concerning whether they should 'continue holding their shares of KLA-Tencor stock.'" *Id.*  The voting claims, on the other hand, arose "from . . . allegations that the non-disclosure in the proxy statements deprived [Plaintiffs] of their ability to make an informed decision concerning whether .

37

United States District Court
Northern District of California

1   . . to adopt the 2004 Equity Incentive Plan." *Id.* Those with voting claims were thus provided

2   with inaccurate or misleading information *in advance of* a vote.

3          The district court in *Crimi* found that the holder claims did "not fall within the second

4   prong of the [Delaware] carve-out because they [did] not meet the requirement that the complaint

5   involve a recommendation or communication about shareholders' decisions with respect to voting

6   their securities." *Id.* at *4 (internal quotation marks omitted).  Because these holder claims did not

7   fall within the Delaware carve-out, the district court proceeded to examine whether or not the

8   holder claims were precluded by SLUSA.  The district court found that these holder claims were

9   in fact subject to SLUSA preclusion, and thus granted the motion to dismiss these claims. The

10  district court, however, found that the voting claims "f[ell] within the second prong of the carve-

11  out," and were therefore not subject to SLUSA preclusion.  *Id.*

12         Under the reasoning in *Crimi*, it is clear that Northstar's breach of contract claims are

13  holder claims, and not voting claims.  The gist of Northstar's allegations, from its first Complaint

14  to the instant Complaint, is that shareholders were "deprived of their ability to make an informed

15  decision concerning whether they should continue holding their shares."  *Crimi*, 2008 WL

16  4287566, at *3.  These are holder claims.  These claims do not concern how shareholders should

17  have voted.  Rather, they concern whether or not shareholders should have held onto their shares.

18         The Court notes that the only vote to ever take place with respect to the Trust took place in

19  1997, when shareholders voted to approve the Fund's investment objectives.  FAC ¶¶ 83–98.

20  Unlike the voting claims at issue in *Crimi*, however, shareholders in the instant case were not

21  given misleading information in advance of a vote.  Shareholders in the instant case were not

22  induced by misrepresentations to vote one way or another.  Indeed, as Northstar notes, the Fund

23  "substantially performed in a manner that was consistent with the Index" from 1997 to August

24  2007. *Id.* ¶ 108.  Northstar has not alleged, and there is no reason for the Court to believe, that any

25  impropriety took place between 1997 and August 2007.  By all accounts, shareholders voted for a

26  package and, for ten years, got the package for which they voted.  Northstar's breach of contract

27

28

United States District Court
Northern District of California

38

Case No. 08-CV-04119-LHK
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS FOURTH
AMENDED COMPLAINT

claims hinge not on the fact that a vote occurred in 1997, or any impropriety that occurred in advance of this vote, but that Defendants deviated from (or, more aptly, breached) a set of stated investment objectives beginning in August 2007. Again, following the framework laid out in *Crimi*, these sorts of claims are holder claims, and not voting claims, and do not fall under the Delaware carve-out.

Two other decisions, *In re Metlife Demutualization Litigation*, 2006 WL 2524196 (E.D.N.Y. Aug. 28, 2006), and *City of Ann Arbor Employees' Retirement System v. Gecht*, 2007 WL 760568 (N.D. Cal. Mar. 9, 2007), lend further support to the Court's analysis. In *In re MetLife*, Defendants sought to convert MetLife Co. from a mutual life insurance company to a stock life insurance company. 2006 WL 2524196, at *1. MetLife Co. issued to policyholders materials that urged policyholders to approve the conversion. These materials purportedly "contained untrue statements and omitted material facts [to] mislead policyholders into approving the Plan." *Id.* Likewise, in *City of Ann Arbor*, Defendant "asked its shareholders to vote their securities to increase the authorized shares and increase the stock options," without disclosing to shareholders pertinent information about the backdating of certain options. 2007 WL 760568, at *1, *3. In sum, in both *In re Metlife* and *City of Ann Arbor*, entities provided false or misleading information in advance of a particular vote. This information was given to voters in an attempt to induce voters to vote in a certain way, similar to how information was not disclosed to voters in *Crimi* in order to induce voters in *Crimi* to vote a certain way.

That is not what happened in the instant case. Here, shareholders voted in favor of certain investment objectives based on accurate information at the time, and the Trust operated in accordance with these objectives for approximately ten years. Northstar's breach of contract claims thus do not concern shareholders "*voting* their securities," as the Delaware carve-out requires, but rather concern whether shareholders should have *held* onto their securities, in light of Defendants' alleged decision to deviate a decade after the vote.

### 3. SLUSA Preclusion

Case No. 08-CV-04119-LHK
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS FOURTH
AMENDED COMPLAINT

1    Just like the holder claims in *Crimi*, the Court must now analyze whether or not

2    Northstar's breach of contract claims are subject to SLUSA preclusion, as these claims do not fall

3    within the Delaware carve-out as discussed above.  The Court has covered in detail, in the

4    preceding discussion of Northstar's third party beneficiary claims, why Northstar's third party

5    beneficiary claims are subject to SLUSA preclusion.

6        The Court believes that the same reasoning applies to Northstar's breach of contract

7    claims.  Northstar's breach of contract claims and Northstar's third party beneficiary claims stem

8    from the same core allegation.  According to the FAC, Northstar's third party beneficiary claims

9    stem from the fact that the Advisor "breached the terms of the [IAA]" by deviating from the

10   investment objectives laid out in the IAA.  FAC ¶ 240.  According to the FAC, Northstar's breach

11   of contract claims stem from the fact that the Trust had certain investment objectives, which

12   formed the terms of the Trust's contract with shareholders.  However, "[b]eginning on or about

13   August 31, 2007, [the Trust] violated the terms of the contract with the Fund's shareholders . . . by

14   . . . allowing the . . . [Advisor] to direct the purchases of securities that deviated from" the Trust's

15   investment objectives.  FAC ¶ 258.

16       To summarize, in the IAA, the Advisor stated that the Advisor would do one thing, but

17   ended up doing another.  In the same way, the contractual terms governing the Trust required the

18   Trust to follow certain objectives, but the Trust did not in fact follow these objectives.  The Court

19   has already determined that, with respect to the Advisor, Northstar's third party beneficiary claims

20   implicated a misrepresentation or omission of material fact.  The Court finds now that, with

21   respect to the Trust, Northstar's breach of contract claims also implicate a misrepresentation or

22   omission of material fact.  Northstar has not contested the other elements required to find SLUSA

23   preclusion.  The Court therefore finds that SLUSA precludes Northstar from asserting Northstar's

24   breach of contract claims.

25       Accordingly, the Court GRANTS Defendants' motion to dismiss Northstar's breach of

26   contract claims.  Moreover, the Court finds that leave to amend would be futile.  Allegations of

27

28   Case No. 08-CV-04119-LHK
     ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS FOURTH
     AMENDED COMPLAINT

1   additional facts would not change the fact that, as a matter of law: (1) the Trust's alleged breach of

2   contract did not occur with respect to shareholders voting their securities, per 15 U.S.C. §

3   77p(d)(1)(B)(ii); (2) the Delaware carve-out does not apply; and (3) SLUSA preclusion applies.

4   Northstar's breach of contract claims, which constitute claims six and thirteen in the FAC, are

5   dismissed with prejudice.

6       **F.  Breach of the Covenant of Good Faith & Fair Dealing Against the Trust & the
            Advisor (Claims Seven & Fourteen)**

7            Finally, the Court will turn briefly to Northstar's seventh and fourteenth claims, which

8   seek relief against the Trust and the Advisor for breach of the covenant of good faith and fair

9   dealing.  *See* FAC ¶ 190.  These good faith and fair dealing claims are closely related to

10  Northstar's breach of contract claims and Northstar's third party beneficiary claims.  By

11  Northstar's own admission, "the Trust and the Investment Advisor have contractual obligations to

12  members of the Pre-Breach Class as alleged in the Fifth and Sixth Claims for Relief.  The

13  covenant of good faith and fair dealing is an implied term in those contracts."  *Id.* ¶ 191; *see also* ¶

14  261 (stating same claim for Breach Class).  Because the Court has dismissed with prejudice

15  Northstar's breach of contract claims and Northstar's third party beneficiary claims, Northstar's

16  claims for relief for breach of the covenant of good faith and fair dealing are no longer viable.

17  Accordingly, the Court GRANTS Defendants' motion to dismiss Northstar's breach of the

18  covenant of good faith and fair dealing claims.  These claims, which constitute claims seven and

19  fourteen in the FAC, are dismissed with prejudice.

20  **IV.    CONCLUSION**

21           To summarize, Defendants' motion to dismiss Northstar's fifth, sixth, seventh, twelfth,

22  thirteenth, and fourteenth claims is GRANTED with prejudice.  In addition, Defendants' motion to

23  dismiss Northstar's first and eighth claims insofar as these claims pertain to an alleged breach of

24  fiduciary duty by the Trust is also GRANTED with prejudice.  Defendants' motion to dismiss is

25  otherwise DENIED.

26

27

28

United States District Court
Northern District of California

Case No. 08-CV-04119-LHK
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS FOURTH
AMENDED COMPLAINT

1  **IT IS SO ORDERED.**

2

3  Dated: October 5, 2015

4  _Lucy H. Koh_

5  LUCY H. KOH
   United States District Judge

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Case No. 08-CV-04119-LHK
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS FOURTH
AMENDED COMPLAINT

United States District Court
Northern District of California