1  Joseph J. Tabacco, Jr. (SBN 75484)
   jtabacco@bermandevalerio.com
2  Christopher T. Heffelfinger (SBN 118058)
   cheffelfinger@bermandevalerio.com
3  **BERMAN DEVALERIO**
   One California Street, Suite 900
4  San Francisco, CA  94111
   Telephone: (415) 433-3200
5  Facsimile:  (415) 433-6282

6  *Attorneys for Plaintiff Northstar Financial Advisors, Inc.*

7  [Additional Counsel on Signature Page]

8

9                **UNITED STATES DISTRICT COURT**
              **NORTHERN DISTRICT OF CALIFORNIA**
10                   **SAN JOSE DIVISION**

11 | NORTHSTAR FINANCIAL ADVISORS, | ) | Case No. Case No. 5:08-cv-04119-LHK
   | INC., on behalf of itself and all others | ) |
12 | similarly situated, | ) | **CLASS ACTION**
   | | ) |
13 | | ) | **PLAINTIFF'S NOTICE OF MOTION**
   | | ) | **AND MOTION FOR CLASS**
14 |                          Plaintiff, | ) | **CERTIFICATION; MEMORANDUM OF**
   | v. | ) | **POINTS AND AUTHORITIES IN**
15 | | ) | **SUPPORT THEREOF**
   | SCHWAB INVESTMENTS; MARIANN | ) |
16 | BYERWALTER, DONALD F. | ) | Date:          April 21, 2016
   | DORWARD, WILLIAM A. HASLER, | ) | Time:          1:30
17 | ROBERT G. HOLMES, GERALD B. | ) | Courtroom:  8, 4th Floor, San Jose
   | SMITH, DONALD R. STEPHENS, | ) | Judge:         Honorable Lucy H. Koh
18 | MICHAEL W. WILSEY, CHARLES R. | ) |
   | SCHWAB, RANDALL W. MERK, | ) |
19 | JOSEPH H. WENDER and JOHN F. | ) |
   | COGAN, as Trustees of Schwab | ) |
20 | Investments; and CHARLES SCHWAB | ) |
   | INVESTMENT MANAGEMENT, INC., | ) |
21 | | ) |
   |                          Defendants. | ) |
22 | | ) |

23

24

25

26

27

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................................................. ii

NOTICE OF MOTION FOR CLASS CERTIFICATION ......................................................... 1

STATEMENT OF ISSUES ...................................................................................................... 2

PRELIMINARY STATEMENT .............................................................................................. 3

STATEMENT OF FACTS ....................................................................................................... 5

    A.    The Parties ................................................................................................ 5

    B.    The Fund Establishes Its Fundamental Investment Objectives ............................ 5

        1.    The Government Bond Fund ................................................................5

        2.    The Index Fund Is Created To Attract New Investors ...............................5

    C.    The Fund Deviates From Its Fundamental Investment Objectives ........................ 8

    D.    Northstar Brings Suit; Other Relevant Procedural History..................................... 9

ARGUMENT ......................................................................................................................... 10

THE PROPOSED CLASS SATISFIES THE REQUIREMENTS OF FED. R. CIV. P 23 ......... 10

    A.    The Proposed Class Meets the Requirements of Rule 23(a)................................ 11

        1.    An Ascertainable Class Exists .................................................................11

        2.    The Proposed Classes Are So Numerous That Joinder is Impracticable...12

        3.    Plaintiffs' Claims Involve Common Questions of Law or Fact ................12

        3.    Plaintiffs' Claims Are Typical of the Members of the Class....................14

        4.    Northstar and Hall Satisfy the Adequacy of Representation Requirement15

            (a)    Northstar, Hall and their counsel possess no conflict of interest with other class members ....................................................16

            (b)    Northstar, Hall, and their counsel will vigorously prosecute this action ....................................................................16

    B.    The Proposed Class Meets the Requirements of Rule 23(b)(3)............................ 17

        1.    Common Questions of Law or Fact Predominate....................................17

        2.    A Class Action Is Superior to Other Available Methods for the Fair and Efficient Adjudication of Plaintiffs' Claims ............................................20

CONCLUSION....................................................................................................................... 22

1

## <u>TABLE OF AUTHORITIES</u>

2

**CASES**

3

4
*Amchem Prods., Inc. v. Windsor,*
521 U.S. 591 (1997).................................................................................................. 18

5
*Bruhl v. PricewaterhouseCoopers Int'l,*
257 F.R.D. 684 (S.D. Fla. 2008)............................................................................... 19

6

7
*Buffalo Laborer Sec. Fund v. J.P. Jeanneret Assocs.,*
09 Civ. 8362 (LBS), 2012 U.S. Dist. LEXIS 63549 (S.D.N.Y. May 3, 2012)......................... 14

8
*Chu v. Wells Fargo Investments*, LLC,
No. C 05-04526 MHP, 2009 U.S. Dist. LEXIS 88119 (N.D. Cal. Sept. 24, 2009)................. 16

9

10
*Cobell v. Norton,*
213 F.R.D. 43 (D.D.C. 2003)..................................................................................... 16

11
*Comcast Corp. v. Behrend,*
133 S.Ct. 1426 (2013)................................................................................................ 11

12

13
*Haddock v. Nationwide Fin. Servs.,*
293 F.R.D. 272 (D. Conn. 2013)......................................................................... 14, 20

14
*Hanlon v. Chrysler Corp.,*
150 F.3d 1011 (9th Cir. 1998) ........................................................................ 13, 15, 18

15

16
*Harris v. Palm Springs Alpine Estates, Inc.,*
329 F.2d 909 (9th Cir. 1964) ..................................................................................... 12

17
*In re High-Tech Employee Antitrust Litig.,*
985 F. Supp. 2d 1167 (N.D. Cal. 2013) ............................................................... 11, 19

18

19
*Hofstetter v. Chase Home Fin., LLC,*
No. 10-1313, 2011 U.S. Dist. LEXIS 38124 (N.D. Cal. Mar. 31, 2011)................................. 12

20
*Leyva v. Medline Indus.,*
716 F.3d 510 (9th Cir. 2013) ..................................................................................... 21

21

22
*Nguyen v. CTS Elecs. Mfg. Sols. Inc.,*
301 F.R.D. 337 (N.D. Cal. 2014)............................................................................... 17

23

24
*In re Northrop Grumman Corp. Erisa Litig.,*
CASE NO. CV 06-06213 MMMM (JCx), 2011 U.S. Dist. LEXIS 94451
(C.D. Cal. Mar. 29, 2011) .......................................................................................... 19

25

26
*Northstar Financial Advisors, Inc. v. Schwab Investments,*
609 F. Supp. 2d 938 (N.D. Cal. 2009) ...................................................................... 3, 9

27
*Northstar Financial Advisors, Inc. v. Schwab Investments,*
781 F. Supp. 2d 926 (N.D. Cal. 2011) .......................................................................... 3

28
*Northstar Financial Advisors, Inc. v. Schwab Investments,*
779 F. 3d 1036 (9th Cir. 2015) ........................................................................... *passim*

*O'Connor v. Boeing N. Am. Inc.*,
184 F.R.D. 311 (C.D. Cal. 1998) ................................................................. 12

*Pulaski & Middleman, LLC v. Google, Inc.*,
802 F.3d 979 (9th Cir. 2015) ............................................................... 11, 21

*Rodriguez v. Hayes*,
591 F.3d 1105 (9th Cir. 2010) ........................................................ 13, 15, 16

*Schwab Invs. v. Northstar Fin. Advisors, Inc.*,
136 S. Ct. 240 (2015) ................................................................................ 3

*Spinner v. Nutt*,
417 Mass. 549 (1994) ............................................................................. 14

*Staton v. Boeing Co.*,
327 F.3d 938 (9th Cir. Wash. 2003) ....................................................... 16

*Trosper v. Styker Corp.*,
No. 13-CV-0607-LHK, 2014 U.S. Dist. LEXIS 117453
(N.D. Cal. Aug. 21, 2014) ................................................................ 15, 19, 21

*Valentino v. Carter-Wallace, Inc.*,
97 F.3d 1227 (9th Cir. 1996) ................................................................ 21

*Wal-Mart Stores, Inc. v. Dukes*,
131 S. Ct. 2541 (2011) .......................................................................... 13

*Ward v. Costello*,
2002 Mass. Super. LEXIS 545 (Mass. Super. Ct. Dec. 17, 2002) ............. 14

*Wolph v. Acer Am. Corp.*,
272 F.R.D. 477 (N.D. Cal. 2011) ............................................................ 12

**OTHER AUTHORITIES**

1 William B. Rubenstein, NEWBERG ON CLASS ACTIONS § 4.32,
at 4-130 to 4-131 (5th ed. 2011) ............................................................ 22

Manual for Complex Litigation (Fourth), §21.26 .................................... 16

**RULES**

Fed. R. Civ. P. 23(a) ...................................................................... *passim*

Fed. R. Civ. P. 23(b)(3) .................................................................. *passim*

U.S. District Court for the Northern District of California, Local Civil Rule 10-1 ..... 17

## NOTICE OF MOTION FOR CLASS CERTIFICATION
### (Pursuant to Civil Local Rule 7-2)

TO MARIANN BYERWALTER, DONALD F. DORWARD, WILLIAM A. HASLER, ROBERT G. HOLMES, GERALD B. SMITH, DONALD R. STEPHENS, MICHAEL W. WILSEY, CHARLES R. SCHWAB, RANDALL W. MERK, JOSEPH H. WENDER and JOHN F. COGAN, as TRUSTEES OF SCHWAB INVESTMENTS; CHARLES SCHWAB INVESTMENT MANAGEMENT, INC., and THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE THAT, on April 21, 2016, at 1:30 PM or as soon thereafter as the matter may be heard, in Courtroom 8, Fourth Floor, Plaintiff Northstar Financial Advisors, Inc. ("Northstar") will move this Court to enter an Order:

(1)      Certifying this action as a class action under Rules 23(a) and (b)(3) of the Federal Rules of Civil Procedure on behalf of all persons who either (i) owned shares of Schwab Total Bond Market Fund (the "Fund") as of August 31, 2007 (the "Pre-Breach Class") and/or (ii)  acquired those shares at any time from September 1, 2007 through February 27, 2009 (the "Breach Class"), and who were damaged as a result of the Fund's deviation from its stated fundamental investment policies.  Excluded from the Class are the defendants herein, any subsidiaries or affiliates of the defendants in which defendants or their affiliates have a controlling ownership interest, officers and directors of any of the defendants, heirs, successors and assigns of any of the defendants or their officers and directors, and any entity in which any defendant has a controlling ownership interest.

(2)      Amending Northstar's Fourth Amended Class Action Complaint  [Dkt. No. 214] pursuant to Federal Rules of Civil Procedure 15(a), 21 and 23 to add Paragraph 29a to the Complaint alleging that "Plaintiff Odessa Hall, a client of Northstar, purchased 14,011.799 shares in the Fund on August 2, 2002, and purchased additional Fund shares during the Pre-Breach and Breach Periods, and thus owned 17,352.02 shares in the Fund (net of sales) as of April 1, 2008."; and to provide that "[a]ll other allegations and claims in the Complaint alleged on behalf of plaintiff Northstar are deemed to be amended so as to be also alleged on behalf of plaintiff Hall."

1    (3)    Appointing Northstar and Odessa Hall as class representatives on behalf of the

2    Class; and

3    (4)    Appointing the law firms of Wolf Popper LLP and Greenbaum Rowe, Smith &

4    Davis LLP as lead counsel for the Class and Berman DeValerio as liaison counsel for the Class.

5    This motion is based on this Notice of Motion, the accompanying Memorandum of Points

6    and Authorities In Support Thereof, Declarations of Richard Berse, Odessa Hall, Steven W.

7    Kohlhagen and Robert C. Finkel, a proposed order, and the pleadings and papers on file in this

8    action, and such other written or oral argument as may be presented before the motion is taken

9    under submission by the Court.

10    **STATEMENT OF ISSUES**

11    1.    Whether this Court should certify a class (the "Class"), pursuant to Fed. R. Civ.

12    P. 23(a) and 23(b)(3), on Northstar's claims for breach of fiduciary duties, and for aiding and

13    abetting the breach of fiduciary duties, defined as all persons who either (i) owned shares of the

14    Schwab Total Bond Market Fund (the "Fund") as of August 31, 2007 (the "Pre-Breach Class")

15    and/or (ii) acquired Fund shares at any time from September 1, 2007 through February 27,

16    2009 (the "Breach Class"), and who were damaged as a result of the Fund's deviation from its

17    stated fundamental investment policies, when each of the elements of Northstar's claims can be

18    proven by common evidence and the criteria of Rules 23(a) and 23(b)(3) are clearly

19    established.

20    2.    Whether this Court should appoint Northstar as a class representative of the

21    Class, when Northstar has actively pursued this litigation for over seven years and is a

22    sophisticated, engaged and typical class member.

23    3.    Whether this Court should designate Odessa Hall as an additional class

24    representative plaintiff, when she had a substantial and direct investment in the Fund at the time

25    of the breach (approximately $170,000), has claims that are typical and in common with other

26    class members, and is dedicated to the successful prosecution of this action.

27

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**PRELIMINARY STATEMENT**

This action is particularly well-suited for certification as a class action.

Defendants are the Trustees of Schwab Investments, (the Trust that controls the assets of the Schwab Total Bond Market Fund (the "Fund")) and Charles Schwab Investment Management, Inc. (the "Advisor"), the advisor to the Fund. Plaintiff Northstar is an investment advisory firm and the assignee of claims against the defendants from one of its investment clients (Henry Holz). Holz is a direct investor in shares of the Fund and was damaged by defendants' misconduct alleged in this action.[1]

Northstar's claims against defendants for breach of their fiduciary duties to cause the Fund to adhere to its fundamental investment policies require proof of only (i) the existence of a fiduciary relationship, (ii) a breach of that fiduciary relationship, (iii) a causal connection between defendants' alleged fiduciary duty breaches and plaintiffs' damages, and (iv) damages. Those fundamental investment policies required the Fund to "attempt to provide a high level of current income consistent with preservation of capital by seeking to track the investment results of [the Lehman Brothers U.S. Aggregate Bond Index ("the Bond Index")] through the use of an indexing strategy," and not concentrate more than 25% of the Fund's portfolio in any one industry. Defendants breached the Fund's fundamental investment objectives by causing the Fund to concentrate in excess of 25% of the Fund's portfolio in non-U.S. agency collateralized mortgage obligations ("CMOs") that were not part of the Bond Index and were substantially more risky than securities that were part of the Bond Index. Similarly, plaintiffs' claims for

---

[1] On three separate occasions, either this Court or the Ninth Circuit Court of Appeals has sustained the effectiveness of the assignments to provide Northstar with standing to pursue Holz's claims on a class-wide basis. *See Northstar Financial Advisors, Inc. v. Schwab Investments*, 609 F. Supp. 2d 938, 942 (N.D. Cal. 2009) ("The assignment of claims from one of Northstar's clients would … cure this deficiency."); 781 F. Supp. 2d 926, 932-33 (N.D. Cal. 2011) ("Defendants do not dispute that plaintiffs' assignment conferred standing when it was executed…. [Plaintiff's] supplemental pleading established plaintiffs' standing to sue based on the asserted assignment of claim."); 779 F. 3d 1036, 1048 (9th Cir. 2015) ("we agree that Judge Koh did not abuse her discretion in permitting Northstar to file a supplemental pleading after a post-complaint assignment from a party that clearly had standing"). Further, the United States Supreme Court has denied *certiorari* on Northstar's use of the assignment to provide standing. 136 S. Ct. 240 (2015).

aiding and abetting breaches of fiduciary duty require proof of only the aider and abettor's

(i) knowledge of another's breach of fiduciary duty and (ii) active participation in that breach.

Both claims already have been sustained as to each sub-class following defendants' motions to dismiss by the Ninth Circuit and this Court based on the allegations in Northstar's Fourth Amended Class Action Complaint ("4AC") (Dkt. No. 214). *See Northstar Financial Advisors, Inc. v. Schwab Investments,* 779 F.3d at 1056-62 (9th Cir. 2015) and this Court's October 5, 2015 decision [Dkt No. 229, at *23-27].

Moreover, plaintiff Northstar is well-suited to be appointed as a class representative. It is a sophisticated and engaged class representative that identified defendants' breach of fiduciary duties, brought them to the attention of counsel with instructions to commence litigation to cause defendants to comply with the Fund's fundamental investment objectives and to recover damages on behalf of class members, and has vigorously prosecuted this case for seven years, including through two appeals.

Although Northstar alone is an (exceptionally) adequate class representative, because defendants have continued to dispute the enforceability of the assignment of Holtz's claims, Northstar proposes that the Court add Odessa Hall, another of Northstar's clients, as an additional class representative plaintiff. *See* accompanying Declaration of Odessa Hall In Support of Plaintiff's Motion for Class Certification (the "Hall Decl.").[2] Ms. Hall made her first investment of $142,500 in the Fund in 2002 and incurred damages of approximately $9,600 from defendants' breaches of fiduciary duty. Ms. Hall is fully familiar with the issues in this lawsuit and would make an exceptional class representative. *Id.*

Accordingly, the proposed Class should be certified and Northstar and Ms. Hall should be designated as class representatives.

---

[2] Plaintiffs' proposed order granting the motions to amend the complaint and to certify the Class provides for the 4AC to be amended by Order of this Court to allege in ¶29a thereof that "Plaintiff Odessa Hall, a client of Northstar, purchased 14,011.799 shares in the Fund on August 2, 2002 and purchased additional shares during the Pre-Breach and Breach Periods, and thus owned 17,352.02 shares in the Fund (net of sales) as of April 1, 2008."

1

2                              **STATEMENT OF FACTS**

3        **A.      The Parties**

4            This action is brought by plaintiff Northstar individually, and on behalf of persons who

5    either (i) owned shares of the Schwab Total Bond Market Fund (*i.e.*, the "Fund") as of

6    August 31, 2007 (the "Pre-Breach Class") and/or (ii) acquired Fund shares at any time from

7    September 1, 2007 through February 27, 2009 (the "Breach Class"), and who were damaged as

8    a result of the Fund's deviation from its stated fundamental investment policies. 4AC ¶ 1.

9            The trustee-defendants are Trustees of Schwab Investments (the "Trust").  The Trust is

10   the sponsor (as of September 21, 2009) of a series of 94 Schwab-related mutual funds,

11   including the Fund.  Schwab Investment Management, Inc. (*i.e.*, the "Advisor") is the

12   investment advisor to each of those 94 mutual funds, including the Fund.  4AC ¶ 3.  The

13   Advisor is responsible for managing the Fund's assets (and the assets of the other 93 mutual

14   funds) pursuant to an Investment Advisory and Administration Agreement ("IAA") dated June

15   15, 1994 [Dkt No. 152-4].  *Id.*

16       **B.      The Fund Establishes Its Fundamental Investment Objectives**

17              **1.      The Government Bond Fund**

18           The Fund was initiated by the Trust on March 5, 1993 under a predecessor name, the

19   Schwab Long-Term Government Bond Fund, as an actively managed U.S. Government bond

20   fund.  The "investment objective" of the Government Bond Fund was "to provide a high level

21   of current income consistent with preservation of capital by investing primarily in securities

22   issued or guaranteed by the United States Government, its agencies or instrumentalities and

23   repurchase agreements covering those securities."  This "investment objective . . . [was]

24   fundamental and [could not] be changed without approval by holders of a majority of the

25   Fund's outstanding voting shares."  4AC ¶¶ 78-80.

26              **2.      The Index Fund Is Created To Attract New Investors**

27           Schwab was unsuccessful in marketing the Government Bond Fund.  4AC ¶ 81.  As of

28   August 31, 1997, after more than four years of operations, the Government Bond Fund had

only $24.8 million in investment assets.  4AC ¶ 82.  Hence, pursuant to the July 25, 1997 Proxy

Statement (the "Proxy Statement") (Dkt No. 218-1), the Trust sought a shareholder vote to

amend the Government Bond Fund's fundamental investment objectives.  4AC ¶ 83.   In

Proposal No. 2 of the Proxy Statement, the Board of Trustees of the Trust proposed to amend

the Fund's fundamental investment objective so that rather than operating as an actively

managed government bond fund, the Fund would "attempt to provide a high level of current

income consistent with preservation of capital *by seeking to track the investment results of a*

*particular bond index through the use of an indexing strategy*."  4AC ¶84 (quoting 1997 Proxy

Statement [Dkt. No. 218-1] at 17) (emphasis added).  The Proxy Statement identified that bond

index as the "Lehman Brothers Aggregate Bond Index."  *Id.* (citing the Proxy Statement at 16-

17).[3]

Proposal 2 provided that, if approved, the Fund's new "fundamental investment

objective" would only be changeable by shareholder vote.  4AC ¶ 85 (Proxy Statement at 24).

The Proxy Statement described in detail the "investment process of indexing" and

proposed "indexing strategy:"

> If the proposed investment objective is approved, the Funds would not be
> managed according to traditional methods of "active" investment management,
> which involve the buying and selling of securities based upon economic,
> financial, and market analyses and investment judgment. Instead, the Investment
> Manager would utilize a "passive" or "indexing" investment approach, to attempt
> to track the investment performance of each Fund's Index through statistical
> sampling and other procedures. The Funds would be unable to hold all of the
> individual issues which comprise the Indexes because of the large number of
> securities in the Indexes. Each Fund would hold a portfolio of fixed-income
> securities that is managed to closely approximate its Index's "characteristics" of
> coupon rate, duration, sector, quality and optionality (or convexity). 4AC ¶ 88
> (citing the Proxy Statement at 22).

The Proxy Statement further emphasized that the Fund's "indexing strategy" required

that "[b]efore purchasing or selling a security, the [Advisor] would analyze each security's

characteristics and determine whether purchasing or selling the security would help the Fund's

---

[3]  The Lehman Index [subsequently renamed Barclays] was described in the Proxy Statement as
"a broad market-weighted index which encompasses . . . U.S. Treasury and agency securities,
corporate bonds, international (dollar-denominated) bonds, agency mortgage-backed securities,
and asset-backed securities, all with maturities greater than one year." 4AC ¶86 (citing Proxy
Statement at 18).

1  portfolio approximate the characteristics of the Index."  4AC ¶ 89 (citing the Proxy Statement

2  at 22).

3         The Proxy Statement also proposed a change (Proposal No. 3) in the Fund's

4  "fundamental investment policies and investment restrictions" regarding concentration of

5  investments.  4AC ¶¶ 91-92 (citing Proxy Statement at 32).  Proposal No. 3 was expressly

6  intended to incorporate the SEC's interpretation of the term "concentration" as used in the

7  Investment Company Act of 1940 (which at the time was and remains 25%).  4AC ¶¶ 92-93

8  (Proxy Statement at 32-33).

9         As reported by the Trust in a Prospectus Supplement dated September 25, 1997, by

10  majority vote, the Fund's shareholders approved Proposal Nos. 2 and 3, including the

11  "[a]mendment of [the] Fund's fundamental investment objective resulting in changing [the]

12  Fund from a Government bond fund to a bond index fund that would include Government and

13  other fixed income securities."  4AC ¶ 95.  The Prospectus Supplement emphasized that "[a]s a

14  result of the shareholder vote, each Fund's fundamental investment objective is amended to

15  allow each Fund to pursue an indexing strategy:"

16        As a result of the amendment referenced in Item No. 1 above, as of November 1,
          1997, the name of the … Schwab Long-Term Government Bond Fund will be
17        changed to the Schwab Total Bond Market Index Fund. As a result of the
          shareholder vote, [the] Fund's fundamental investment objective is amended to
18        allow [the] Fund to pursue an indexing strategy. … Schwab Total Bond Market
          Index Fund will seek to track the Lehman Brothers Aggregate Bond Index. The
19        index is market-weighted and designed to track the performance of broad
          segments of the bond market. 4AC ¶96.
20

21         The Proxy Statement imposed detailed obligations on the Trustees of the Trust and the

22  Advisor on how the Fund would be managed. 4AC ¶ 97 (Proxy Statement at 22-23).  The

23  Proxy Statement also created voting rights on behalf of the Fund's existing and future

24  shareholders under which the investment objectives and fundamental policies of the Fund could

25  not be changed thereafter without a majority shareholder vote.  *Id*.  The adoption of the

26  changed fundamental investment objectives significantly restricted the discretion conferred on

27  the Trustees and the Advisor to manage the Fund and its assets.  4AC ¶ 98.  The Fund's

28  subsequent registration statements and prospectuses reflected the adoption of these restrictions.

1   *Id.  See also* accompanying Declaration of Steven W. Kohlhagen In Support of Motion for

2   Class Certification (the "Kohlhagen Decl."), ¶¶ 22-23 and Ex. D.

3           C.        **The Fund Deviates From Its Fundamental Investment Objectives**

4           From August 31, 1997 through August 31, 2007, an investment in the Fund

5   substantially performed in a manner that was consistent with the Index, returning an annualized

6   rate of 5.75% compared to 6.04% for the Index.  4AC ¶ 108; Kohlhagen Dec., ¶26, Exhibit K.

7   The Index Fund's net assets increased from $24 million as of August 31, 1997 to approximately

8   $1.5 billion as of August 31, 2007 – a period over which the Trust, the Trustees and the

9   Schwab Advisor managed the Fund to track the Index using an indexing strategy.  4AC ¶ 109.

10          By late August 2007, the Fund began improperly deviating from its stated fundamental

11  investment policies by purchasing high risk CMOs.  4AC ¶¶ 110, Kohlhagen Decl., ¶ 32, Ex.

12  N.  As of August 31, 2007, thirty-seven percent (37.0%) of the total assets of the Fund was

13  invested in non-agency CMOs. *Id.*  From August 31, 2007 through February 27, 2009, an

14  investment in the Fund underperformed the Index by 12.64%.  4AC ¶ 111; Kohlhagen Decl., ¶¶

15  29-31; Exhibit M.  The CMOs purchased for the Fund's portfolio violated the Fund's

16  investment objectives, as they were not issued by government agencies. 4AC ¶ 112.  Rather,

17  they were issued by financial institutions through subsidiaries and backed by residential loans

18  that did not conform to the agencies' high loan underwriting requirements.  *Id.*; Kohlhagen

19  Decl. ¶¶ 33-35, Exhibits N and O and Dkt No. 225-1.  Moreover, non-agency CMOs purchased

20  by the Advisor for the Fund represented tranches of mortgage-backed securities, such as

21  principal only or interest only payments, and were significantly more risky than the agency-

22  issued mortgage-backed securities that were authorized under the Index. 4AC ¶ 113;

23  Kohlhagen Decl., ¶ 35.  Included in the Fund's portfolio were CMOs sponsored by such

24  subprime lenders as Citigroup, Merrill Lynch, Countrywide, Bear Stearns, IndyBank, Lehman,

25  and Washington Mutual. *Id.*

26          The investment of 37% of the Fund's assets in such mortgage-backed securities not

27  only violated the Fund's indexing policies, but also violated the Fund's stated investment

28  objective forbidding the concentration of more than 25% of the Fund's assets in any one

industry (except as required by the Index).  4AC ¶ 114.   Concomitantly, the Fund's investment in non-agency CMOs as of August 31, 2007 also violated shareholders' voting rights, as set forth in the Proxy Statement, as it constituted a derogation from the Fund's fundamental investment objective to "seek to track" the Index "through the use of an indexing strategy" that could not be changed absent shareholder approval.  4AC ¶115.  The non-agency CMOs maintained by the Index Fund as of August 31, 2007 did not "closely approximate" the "characteristics" of the securities in the Lehman Index, as was required once the Fund's shareholders approved Proposal Nos. 2 and 3 in the Proxy Statement.  *Id.*; Proxy Statement at 22.

In a February 19, 2009 decision, the District Court (per Hon. Susan Illston), concluded that "Northstar's allegations are sufficient to state a claim that the Fund's significant investments in non-agency CMOs violated the Fund's investment objective."  609 F. Supp. 2d at 946.

By on or about February 27, 2009, subsequent to the filing of this action, defendants reverted back to the Fund's fundamental investment policy of seeking to track the Lehman Index through an indexing strategy. 4AC ¶ 9.  Since February 27, 2009, the Fund's assets and performance have substantially tracked the composition and performance of the Index.  4AC ¶ 10.

The Fund's investment in non-agency CMOs as of August 31, 2007, in light of all circumstances, was speculative, irresponsible and a gross deviation from the Fund's fundamental investment objectives and policies, and represented clear breaches of defendants' fiduciary duties.  4AC ¶ 120.

### D.    Northstar Brings Suit; Other Relevant Procedural History

Northstar is a registered investment advisory and financial planning firm that manages both discretionary and nondiscretionary accounts on behalf of investors in its role as an investment advisor.  4AC ¶¶23-24.  As of August 31, 2007, Northstar had approximately 240,000 shares of the Fund under its management.  4AC ¶ 27.  *See* accompanying Declaration of Richard Berse In Support of Motion for Class Certification (the "Berse Decl."); ¶ 7, and Ex.

A.  Northstar filed this shareholder class action against the Trust and the Advisor in August 2008, alleging they deviated from the Fund's fundamental investment policies and exposed the Fund and its shareholders to tens of millions of dollars in losses.  Dkt No. 3-1.  Northstar's original complaint sought monetary damages and injunctive relief.

Henry Holz, a client of Northstar, began purchasing shares in the Fund on February 7, 2007.  4AC ¶ 29.  He originally owned 3,932.927 shares, and with additional monthly dividend reinvestments, came to own 4,181.043 shares in the Fund as of April 1, 2008.  *Id.*[4]  By way of an assignment dated December 8, 2008 (the "Assignment"), Holz assigned to Northstar "all of the Assignor's right, title and interest in any claim that the Assignor has or could have against Schwab Investments, Charles Schwab & Co., Inc., Charles Schwab Investment Management, Inc. and Schwab Total Bond Market Fund …."  4AC ¶ 29.  *See* Berse Decl., Ex. B.  The Assignment was amended on September 28, 2010 to include claims asserted against the Trustees of Schwab Investments.  *Id.*, Ex. C.

After various motions to dismiss, two appeals to the Ninth Circuit, and three amendments to the complaint, Northstar filed its Fourth Amended Complaint on June 25, 2015 [Dkt No. 214].  After further motion practice as to the Fourth Amended Complaint, Northstar has surviving causes of action for breaches of fiduciary duty and aiding and abetting breaches of fiduciary duty.  These claims are contained in the First through Fourth and the Eighth through Eleventh Causes of Action (4AC, ¶¶ 124-57 (investors who purchased during the Pre-Breach Period prior to August 31, 2007); and ¶¶ 194-227 (investors who purchased during the Breach Period beginning on or about August 31, 2007)).

Northstar now moves to certify the Pre-Breach Class and the Breach Class.

## ARGUMENT

### THE PROPOSED CLASS SATISFIES THE REQUIREMENTS OF FED. R. CIV. P 23

Rule 23 of the Federal Rules of Civil Procedure, which governs class certification, has two sets of distinct requirements that plaintiffs must meet before this Court may certify the

---

[4] A schedule of Holz's transactions in the Fund is annexed as part of Exhibit A to the Berse Decl.

proposed class.  Plaintiffs must meet all of the requirements of Rule 23(a) and must satisfy at least one of the prongs of Rule 23(b).  *See Pulaski & Middleman, LLC v. Google, Inc.*, 802 F.3d 979 (9th Cir. 2015) (reversing denial of class certification).

Under Rule 23(a), this Court may certify a class where "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a).

Upon satisfying the requirements of Rule 23(a), this Court must then determine whether plaintiffs have satisfied "through evidentiary proof" one of the three subsections of Rule 23(b). *Comcast Corp. v. Behrend,* 133 S.Ct. 1426, 1432 (2013).  Plaintiffs are seeking certification under Rule 23(b)(3), which permits class certification if the Court finds that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."

"Rule 23 grants courts no license to engage in free-ranging merits inquiries at the certification stage."  *In re High-Tech Employee Antitrust Litig*., 985 F. Supp. 2d 1167, 1179 (N.D. Cal. 2013) *quoting Amgen Inc. v. Conn. Ret. Plans and Trust Funds,* 133 S. Ct. 1184, 1194-95 (2013).  "If a court concludes that the moving party has met its burden of proof, then the court has broad discretion to certify the class."  *Id.*

### A.     The Proposed Class Meets the Requirements of Rule 23(a)

#### 1.     An Ascertainable Class Exists

"As a threshold matter, and apart from the explicit requirements of Rule 23(a), the party seeking class certification must demonstrate that an identifiable and ascertainable class exists." *Wolph v. Acer Am. Corp.*, 272 F.R.D. 477, 482 (N.D. Cal. 2011).  A class is adequately defined and ascertainable if it is "administratively feasible for the court to ascertain whether an individual is a member."  *O'Connor v. Boeing N. Am. Inc.*, 184 F.R.D. 311, 319 (C.D. Cal. 1998).  For example, class certification is appropriate where "defendants' business records

1   should be sufficient to determine the class membership status of any given individual."

2   *Hofstetter v. Chase Home Fin., LLC*, No. 10-1313, 2011 U.S. Dist. LEXIS 38124, at *42 (N.D.

3   Cal. Mar. 31, 2011).

4        Here, putative class members can readily be identified through defendants' business

5   records.  Thus, the proposed class is ascertainable.

6        **2.**     **The Proposed Classes Are So Numerous That Joinder is**

7        **Impracticable**

8        Under Rule 23(a)(1), a proposed class must be "so numerous that joinder of all

9   members is impracticable."  Fed. R. Civ. P. 23(a)(1).  "'Impracticability' does not mean

10   'impossibility,'" but rather calls on the court to consider the difficulty or inconvenience of

11   joining all members of the class.  *Harris v. Palm Springs Alpine Estates, Inc.*, 329 F.2d 909,

12   913-14 (9th Cir. 1964).

13        As of August 31, 2007, the Fund had over 157 million shares outstanding.  *See* Dkt No.

14   227-2 at 47.  Northstar itself held 240,000 shares of the Fund as of August 31, 2007 (far less

15   than 1% of the shares of the Fund), distributed among 101 client accounts.  Berse Decl., Ex. A.[5]

16   Thus, it is reasonable to assume that the shares of the Fund were held by well in excess of

17   1,000 investors. Thus, the numerosity component of Rule 23(a) is plainly satisfied.

18        **3.**     **Plaintiffs' Claims Involve Common Questions of Law or Fact**

19        "Commonality requires the plaintiff to demonstrate that the class members 'have

20   suffered the same injury,'" which "does not mean merely that they have all suffered a violation

21   of the same provision of law."  *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011)

22   (internal citation omitted).  The "claims must depend upon a common contention" and "[t]hat

23   common contention . . . must be of such a nature that it is capable of classwide resolution."  *Id.*

24   Commonality is satisfied by "the existence of shared legal issues with divergent factual

25   predicates" or a "common core of salient facts coupled with disparate legal remedies within the

26   class."  *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019-20 (9th Cir. 1998).  All issues of fact

27   and law do not need to be common to satisfy the rule.  *Id.*  Rather, there need only be one

28   _____

[5] Some clients held shares in multiple accounts.  *See* Berse Decl., Exh. A.

1  question of fact or law common as between the members of the proposed class.  *Rodriguez v.*

2  *Hayes*, 591 F.3d 1105, 1122 (9th Cir. 2010) (citation omitted).

3       Here, there are *several* questions of law or fact common among the claims of class

4  members.  The overarching one is whether defendants breached their fiduciary duties to

5  plaintiffs and the proposed class members in deviating from the Fund's fundamental investment

6  objective "to track the investment results of a particular bond index through the use of an

7  indexing strategy."  *See* 4AC ¶ 76.  This common question calls for an analysis of the elements

8  of a breach of fiduciary duty and the application of common facts to those elements.  Such

9  analysis demonstrates that the commonality requirement is satisfied in this case.

10      "The elements of breach of fiduciary duty are:  (1) existence of a duty that is fiduciary

11  in nature based upon the relationship of the parties, (2) breach of that duty, (3) damages, and

12  (4) a causal connection between breach of the duty and the damages."  *Ward v. Costello*, 2002

13  Mass. Super. LEXIS 545, at *22 (Mass. Super. Ct. Dec. 17, 2002) (citing *Hanover Ins.*

14  *Company v. Sutton*, 46 Mass. App. Ct. 153, 164 (1999)).  To prove a claim of aiding and

15  abetting a breach of fiduciary duty, a plaintiff "must show that the defendant knew of the

16  breach [of fiduciary duty] and actively participated in it such that he or she could not

17  reasonably be held to have acted in good faith."  *Spinner v. Nutt*, 417 Mass. 549, 556 (1994)

18  (citing *Banks v. Everett Nat'l Bank*, 305 Mass. 178, 182 (1940)).

19      With respect to their claims for breach of fiduciary duty, Northstar and Hall easily meet

20  their burden of demonstrating "that the class members 'have suffered the same injury' and that

21  the common questions are of sufficient importance to the case 'that determination of [their]

22  truth or falsity will resolve an issue that is central to the validity of each one of the claims in

23  one stroke.'"  *See Buffalo Laborer Sec. Fund v. J.P. Jeanneret Assocs.*, 09 Civ. 8362 (LBS),

24  2012 U.S. Dist. LEXIS 63549, at *15-16 (S.D.N.Y. May 3, 2012) (quoting *Dukes*, 131 S. Ct. at

25  2550-51) (finding commonality satisfied in class certification motion because plaintiff was able

26  to show common questions of law or fact will determine each element of plaintiff's claim for

27  breach of fiduciary duty under ERISA); *Haddock v. Nationwide Fin. Servs.*, 293 F.R.D. 272,

28  286 (D. Conn. 2013) (the questions of law raised by the trustees—whether Nationwide

1   Financial Services, Inc., breached its fiduciary duties to the qualified ERISA pension benefit

2   plans and participants—were applicable to each member of the putative class, thus satisfying

3   the commonality requirement).

4          Plaintiffs will demonstrate, through common facts and expert testimony:  (1) that

5   defendants owed fiduciary duties to plaintiffs and the putative class members; (2) defendants

6   breached their fiduciary duties in deviating from the Fund's fundamental investment objective

7   to track the Index through the use of an indexing strategy and instead imprudently invested in

8   high risk CMOs; (3) plaintiffs and the putative class members suffered damages as a result of

9   this breach because the Fund underperformed the Index by 12.64%; and (4) it was defendants'

10  decision to invest in high risk CMOs that caused the Fund to underperform the Index by

11  12.64%.  If one or more class members brought suit individually, they would raise the same

12  legal claim.  Plaintiffs will also show through common facts that all defendants knew of the

13  breaches being committed, therefore supporting the added claim of aiding and abetting.  In fact,

14  the Ninth Circuit and this Court have already sustained Northstar's claims for breach of

15  fiduciary duty and aiding and abetting the breach based on the common allegations contained in

16  the 4AC.  *See Northstar Financial Advisors, Inc. v. Schwab Investments,* 779 F.3d at 1056-62

17  (9th Cir. 2015) and the District Court's decision dated October 5, 2015 [Dkt No. 229], at pages

18  23-27.

19          **3.      Plaintiffs' Claims Are Typical of the Members of the Class**

20          Under Rule 23(a)(3), the class representative must have claims or defenses that are

21  "typical of the claims or defenses of the class."  Fed. R. Civ. P. 23(a)(3).  Typicality is met

22  "when each class member's claim arises from the same course of events, and each class member

23  makes similar legal arguments to prove the defendant's liability." *Rodriguez*, 591 F.3d at 1124

24  (internal citations omitted).  This requirement is permissive and requires only that the

25  "representative's claims are 'typical' if they are reasonably co-extensive with those of absent

26  class members; they need not be substantially identical."  *Hanlon*, 150 F.3d at 1020; *Trosper v.*

27  *Styker Corp.,* No. 13-CV-0607-LHK, 2014 U.S. Dist. LEXIS 117453, at *38 (N.D. Cal. Aug. 21,

28  2014).

1    The claims of Northstar and Hall are typical of the members of the putative class

2   because their monetary losses and those of absent class members derive from the same course

3   of defendants' conduct.  Northstar alleges, as do all the putative class members, that defendants

4   breached their fiduciary duty in deviating from the Fund's stated fundamental investment

5   objectives.  Northstar obtained the Assignment from Holz, who owned 4,181.043 shares of the

6   Fund prior to selling his interest.  Hall was a direct investor in the Fund.  Regardless of when

7   Northstar, Hall, and the members of the putative class first acquired and then ultimately

8   divested themselves of their interests in the Fund during the period August 31, 2007 through

9   February 27, 2009, "each class member's claim arises from the same course of events, and each

10   class member makes similar legal arguments to prove the defendant's liability."  *See*

11   *Rodriguez*, 591 F.3d at 1124.

12    Where, as here, the class representatives' interests align with those of the putative class,

13   the typicality requirement is met.

14    **4.    Northstar and Hall Satisfy the Adequacy of Representation**

15    **Requirement**

16    Rule 23(a)(4) permits class certification only if the "representative parties will fairly

17   and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a)(4).  In the Ninth Circuit,

18   a court considers two questions in determining the adequacy of class representatives:  "(1) do

19   the representative plaintiffs and their counsel have any conflicts of interest with other class

20   members; and (2) will the representative plaintiffs and their counsel prosecute the action

21   vigorously on behalf of the class?"  *Staton v. Boeing Co.*, 327 F.3d 938, 957 (9th Cir. Wash.

22   2003) (citing *Hanlon*, 150 F.3d at 1020).  Here, plaintiff Northstar seeks appointment as a class

23   representative and to have the Court appoint Hall as an additional representative.  *See* Manual

24   for Complex Litigation (Fourth), §21.26 (*citing In re Telectronics Pacing Syst., Inc.*, 172

25   F.R.D. 271, 283 (S.D. Ohio 1997) ("The Court may permit intervention by a new representative

26   or many simply designate that person as a representative in the order granting class

27   certification.").  *See also Chu v. Wells Fargo Investments*, LLC, No. C 05-04526 MHP, 2009

28   U.S. Dist. LEXIS 88119, at *4-5 n.1 (N.D. Cal. Sept. 24, 2009) (citing *Telectronics*, and

observing that "courts have historically permitted the replacement or addition of class representatives simply by amending the complaint."); *Cobell v. Norton,* 213 F.R.D. 43, 45 (D.D.C. 2003) (*quoting* Alba Conte & Herbert Newberg, NEWBERG ON CLASS ACTIONS § 3.42 (4th ed. 2002) ("Under Rule 23, the court may … invite interventions to bolster or substitute for class representation."); *Nguyen v. CTS Elecs. Mfg. Sols. Inc.,* 301 F.R.D. 337, 341 (N.D. Cal. 2014) *quoting* Fed. R. Civ. P. 21(a) ("On motion or on its own, the court may at any time, on just terms, add or drop a party.").

Northstar's determination to seek to add Hall as a representative plaintiff in this action is in response to defendants' recent and ongoing litigation strategies, and will cause no unfair prejudice to defendants.  *See* accompanying Declaration of Robert C. Finkel in Support of Motion for Class Certification.[6]

### (a)   Northstar, Hall and their counsel possess no conflict of interest with other class members

As assessed under the typicality analysis, Northstar's and Hall's interests are clearly aligned with that of the putative class members.  As such, there are no conflicts of interest between plaintiffs and the putative class members.  Hall was a direct investor in the Fund and Northstar obtained an Assignment of claims from Henry Holz, a beneficial owner of Fund shares.  *See* Berse Decl., ¶ 13; Exs. B and C.

### (b)   Northstar, Hall, and their counsel will vigorously prosecute this action

Both Northstar and its counsel have demonstrated their dedication to vigorously prosecuting this action since its inception in 2008, through four amendments to the Complaint, five motions to dismiss, and two appeals to the Ninth Circuit.  Richard Berse, the principal of Northstar, has consulted frequently with Greenbaum, Rowe, Smith & Davis LLP and Wolf Popper LLP with respect to litigation strategy, as well as reviewing, and proposing changes to

---

[6] Because Northstar is not seeking to file an amended complaint (while motions addressed to the existing pleading are pending before the Court), but merely to add a plaintiff as class representative pursuant to order of this Court, it has not appended an amended pleading.  *See* Local Rule 10-1 ("Any party filing or moving to file an amended pleading must reproduce the entire proposed pleading and may not incorporate any part of a prior pleading by reference.").

1   Court documents, and demonstrating a willingness to travel from his home in New Jersey to

2   San Francisco, if necessary, for Court appearances.  *Id.*, ¶ 14.  Mr. Berse is familiar with the

3   issues concerning this lawsuit.  As for Ms. Hall, she too is familiar with the issues concerning

4   this litigation, and has demonstrated her willingness and ability to participate in this Action,

5   including by appearing for depositions or court appearances.  Hall Decl., ¶ 11.

6          Additionally, Northstar and Hall have retained counsel who have successfully

7   prosecuted numerous complex class actions over the past several decades in courts throughout

8   the country.  *See*, resumes attached as Dkt No. 155.

9          **B.      The Proposed Class Meets the Requirements of Rule 23(b)(3)**

10         This case also meets the requirements of Rule 23(b)(3) certification.  For a class action

11  to be certified under Rule 23(b)(3), the class representatives must show that "the questions of

12  law or fact common to the members of the class *predominate* over any questions affecting only

13  individual members and that a class action is *superior* to other available methods for the fair

14  and efficient adjudication of the controversy."  Fed. R. Civ. P. 23(b)(3) (emphases added).

15  Here, that the class meets the requisite predominance and superiority are indisputably present.

16                **1.      Common Questions of Law or Fact Predominate**

17          "The Rule 23(b)(3) predominance inquiry" is intended to "tes[t] whether proposed

18  classes are sufficiently cohesive to warrant adjudication by representation."  *Amchem Prods.,*

19  *Inc. v. Windsor*, 521 U.S. 591, 623 (1997).  The Ninth Circuit has held that "there is clear

20  justification for handling the dispute on a representative rather than an individual basis" if

21  "common questions present a significant aspect of the case and they can be resolved for all

22  members of the class in a single adjudication . . . ."  *Hanlon*, 150 F.3d at 1022.

23         Plaintiffs seek to certify a class under Rule 23(b)(3) based on claims of breach of

24  fiduciary duty as to persons who held shares of the Fund over a finite period of time.  As

25  discussed above in the commonality analysis, the issues of law and fact arising from Northstar's

26  claims for breach of fiduciary duty and aiding and abetting breach of fiduciary duty are not only

27  common as among putative class members, but are the core questions to be resolved, and, as

28  such predominate over any individual ones.  Indeed, plaintiffs' claims are ideally suited for class

treatment because such claims focus on the "conduct of the defendants, not the plaintiffs." *See In re Northrop Grumman Corp. Erisa Litig.*, CASE NO. CV 06-06213 MMMM (JCx), 2011 U.S. Dist. LEXIS 94451, at *38 (C.D. Cal. Mar. 29, 2011); *Bruhl v. PricewaterhouseCoopers Int'l*, 257 F.R.D. 684, 698 (S.D. Fla. 2008) (granting class certification on breach of fiduciary duty claims where defendants owed same duty to each class member and breach could be established on class-wide basis).  These claims will require Northstar to demonstrate that each defendant breached a fiduciary duty to the putative class members, and that such breach was the proximate cause of Northstar's losses.  The common evidence that will be used to establish these elements outweighs any individualized issues.  *See also Trosper*, 2014 U.S. Dist. LEXIS 117453, at *29 ("Indeed, the central question in this lawsuit is whether, as Plaintiff contends, Howmedica's policy violated Section 2802 by failing to compensate sales representatives for business expenses….. The answer to that central question will determine the outcome of this case."); *In re High-Tech Employee Antitrust Litig*, 985 F. Supp. 2d at 1227 ("Given the considerable, compelling common proof Plaintiffs have submitted regarding Defendants' alleged antitrust violation, as well as the parties' actions indicating that they will vigorously litigate the question of whether Defendants engaged in an antitrust violation, this question is likely to be central to this litigation.").

First, the question whether a fiduciary duty was owed to the members of the class is a legal one that requires a common analysis and essentially already has been dispositively answered in Northstar's favor by virtue of the Ninth Circuit's opinion earlier this year.[7]  As stated in the Fourth Amended Complaint, "[u]ndeniably, the Schwab Trustees, the Schwab Trust and the Schwab Advisor owed Class members a fiduciary duty to manage the Fund's assets with the care and prudence of a professional in like circumstances and to adhere to the Fund's investment objectives and policies."  4AC ¶ 60.  As the District of Connecticut recognized in *Haddock* in granting a motion for class certification in a breach of fiduciary duty action under ERISA:

---

[7] *See* 779 F.3d at 1050-56.

'whether Nationwide [Financial Services, Inc.] is a fiduciary and whether it breached its obligations to the [pension] Plans as a fiduciary can be resolved on the basis of the characteristics of Nationwide's contractual relationship with the plans that are common to the Class. Furthermore, any breach of Nationwide's fiduciary obligations will be determined on the basis of conduct that is applicable to the whole Class.' [] Thus, because the plaintiffs' 'legal and factual theories are premised on the structural nature of Nationwide's contractual relationship with the Plans, which is identical across the Class,' [] the plaintiffs' liability case is particularly well suited for class-wide adjudication.

*Haddock*, 293 F.R.D. at 283-84 (internal citations omitted).  Here, as the Ninth Circuit held in this case, the Proxy Statement serves as the contract between the defendants and the putative class members, and defines the fiduciary obligations owed by defendants to the class members.  See 779 F.3d at 1050-56.  No individualized issues exist as to whether defendants owed the class members the duty of care and prudence, or the parameters of that duty.

Second, plaintiffs will demonstrate through common evidence that each defendant breached their fiduciary duties of care and prudence owed to the putative class members by failing to follow the Fund's fundamental investment objective—to track the Index—which objective served as the cornerstone of the Fund.  Specifically, class-wide evidence will demonstrate the existence of the fundamental investment objectives binding on defendants and that defendants breached their fiduciary duties to the putative class members when they deviated from those stated fundamental investment objectives by investing in high risk CMOs, failed to track the Index, and maintained more than 25% of the Fund's total assets in one industry.  No individualized issues exist as to the fiduciary duty owed to the class members.

Third, common proof will demonstrate proximate cause.  If defendants had followed the fundamental investment objectives of the Fund and not invested in CMOs in the manner and degree to which they did, the class members would not have sustained such considerable losses. *See* Kohlhagen Decl., ¶¶ 33-35.

Fourth and finally, the damages suffered by each member of the putative class are readily ascertainable by computing the differential between the Index and the performance of the Fund on a daily basis.  *See* Kohlhagen Decl., ¶36; *Pulaski & Middleman, LLC,* 802 F.3d at 988, quoting *Yokoyama v. Midland Nat'l Life Ins. Co.*, 594 F.3d 1087, 1094 (9th Cir. 2010) ("[d]amages calculations alone ….cannot defeat certification…").  Of course, it is well-established that the fact that each class member did not suffer identical monetary damages is no

1   barrier to class certification.  *See Leyva v. Medline Indus.*, 716 F.3d 510, 514 (9th Cir. 2013)

2   (individualized damages do not preclude class certification); *Trosper,* 2014 U.S. Dist. LEXIS

3   117453, at *34 *(*"differences in the amount of an individual class member's damages do not

4   defeat class certification").  Here by contrast, all class members, from a pro rata perspective,

5   suffered identical damages due to the Fund's deviation from the Index.  No individualized

6   damages inquiry is needed.

7              **2.      A Class Action Is Superior to Other Available Methods for the Fair**

8                     **and Efficient Adjudication of Plaintiffs' Claims**

9              A class action brought under Rule 23(b)(3) also must be "superior to other available

10   methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).  To

11   make this determination the Court considers:  (1) the class members' interests in individually

12   controlling the prosecution or defense of separate actions; (2) the extent and nature of any

13   litigation concerning the controversy already begun by or against class members; (3) the

14   desirability or undesirability of concentrating the litigation of the claims in the particular

15   forum; and (4) the likely difficulties in managing a class action. Fed. R. Civ. P. 23(b)(3)(A)-

16   (D).  The superiority requirement tests whether "classwide litigation of common issues will

17   reduce litigation costs and promote greater efficiency." *Valentino v. Carter-Wallace, Inc.*, 97

18   F.3d 1227, 1234 (9th Cir. 1996).  Each of these factors here strongly weighs in favor of class

19   certification.

20              Plaintiffs are not aware of any member of the Class with an individual measure of

21   damages that would justify an individual action.  Nor do plaintiffs anticipate any difficulty in

22   trying this case on a classwide basis since proof of liability is common to all class members.

23   Defendants either did or did not exercise their fiduciary duties to cause the Fund to comply

24   with its fundamental investment objectives.

25              The Court has entered a case management plan providing for the orderly progress of the

26   case, which has already proceeded through motions to dismiss to the presently ongoing

27   production of documents and interrogatory responses, and resolution of discovery disputes.

28   Management of this case as a class action would not be so difficult as to render individual

1  actions a better alternative.  This weighs in favor of class certification.  *See* 1 William B.

2  Rubenstein, NEWBERG ON CLASS ACTIONS § 4.32, at 4-130 to 4-131 (5th ed. 2011) ("As has

3  been noted with the predominance test, Rule 23(b)(3) permits a class denial for lack of

4  superiority only when other available methods for the fair and efficient adjudication of the

5  controversy actually exist.").

6        That this case is appropriate to proceed as a class action is also established by

7  proceedings before the SEC with respect to the Bond Fund.  Specifically, in January 2011, the

8  SEC commenced an enforcement action against the Advisor, among other Schwab entities,

9  with respect to Schwab's YieldPlus and Total Bond Market investment funds.  *See SEC v.*

10 *Charles Schwab Inv. Mgmt.*, No. CV-11-0136 WHA (N.D. Cal.).  That enforcement action

11 related to the YieldPlus Fund's concentration of more than 25% of its assets in CMOs.  Though

12 it did not contain any allegations with respect to the Bond Fund's failure to adhere to its

13 fundamental investment policy to track the Lehman Index, the SEC enforcement action

14 included allegations similar to the ones plaintiffs assert here with respect to the Fund's

15 improper concentration of investments.

16       The SEC enforcement action was resolved on a class-wide basis with the Advisor and

17 the funds' underwriter (Charles Schwab & Co., Inc.) agreeing to disgorge and pay civil penalties

18 of $118.9 million for the benefit of investors in the YieldPlus and Index funds.  *See* Final

19 Judgment, *SEC YieldPlus Action* (Feb. 16, 2011), ECF No. 30.  Under the Plan of Allocation

20 approved by the District Court, Northstar's clients and the class of Fund investors who held

21 shares through March 31, 2008 received only a modest recovery (estimated at approximately

22 13% of damages through March 31, 2008) from that settlement fund.[8]  *See* Mot. for Approval of

23 Distribution Plan, *SEC YieldPlus Action* (May 2, 2011), ECF No. 30, and Order Approving

24 Distribution Plan with Modification (June 7, 2011), ECF No. 37.  Investors who continued to

25 hold shares in the Fund subsequent to March 31, 2008 received no incremental recovery.

26

27

28

---

[8] For example, plaintiffs estimate that Odessa Hall incurred damages of approximately $9,600 from defendants' misconduct, and recovered only approximately $1,250 (or 13% of her damages) from the SEC disgorgement fund.  *See* Hall Decl., ¶8.

1    Judge Alsup similarly granted class certification in the YieldPlus securities class action.

2    *See In re Charles Schwab Corp. Securities Litigation,* 09-cv-01510 (N.D. Cal.), Dkt Nos. 1102

3    and 1103.

4    That the *YieldPlus* and SEC enforcement action established class-wide settlements and

5    disgorgement funds for the benefit of the classes in those cases further evidences the

6    appropriateness of class certification in this action.

7    ## CONCLUSION

8    For the reasons stated herein, plaintiffs' motion for class certification should be granted.

9    Dated: January 21, 2016                     **BERMAN DEVALERIO**

10

11                                               Joseph J. Tabacco, Jr.
                                                 Christopher T. Heffelfinger
12                                               One California Street, Suite 900
                                                 San Francisco, CA  94111
13                                               Telephone: (415) 433-3200

14                                               *Local Counsel*

15                                               By: /s/*Robert C. Finkel*
                                                 Robert C. Finkel (admitted *pro hac vice*)
16                                               Joshua W. Ruthizer
                                                 Adam J. Blander
17                                               **WOLF POPPER LLP**
                                                 845 Third Avenue
18                                               New York, NY  10022
                                                 Telephone:  (212) 759-4600
19                                               Email: rfinkel@wolfpopper.com

20                                               Marc J. Gross (admitted *pro hac vice*)
                                                 Alan S. Naar
21                                               Jemi G. Lucey
                                                 **GREENBAUM ROWE SMITH & DAVIS LLP**
22                                               75 Livingston Street, Suite 301
                                                 Roseland, NJ  07068
23                                               Telephone:  (973) 535-1600
                                                 Email: mgross@greenbaumlaw.com
24

25                                               *Attorneys for Plaintiff Northstar Financial*
                                                 *Advisors, Inc.*
26

27

28