Joseph J. Tabacco, Jr. (SBN 75484)
jtabacco@bermandevalerio.com
Christopher T. Heffelfinger (SBN 118058)
cheffelfinger@bermandevalerio.com
**BERMAN DEVALERIO**
One California Street, Suite 900
San Francisco, CA  94111
Telephone: (415) 433-3200
Facsimile:  (415) 433-6282

*Attorneys for Plaintiff Northstar Financial Advisors, Inc.*

[Additional Counsel on Signature Page]

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA
# SAN JOSE DIVISION

| | |
|---|---|
| NORTHSTAR FINANCIAL ADVISORS, INC., on behalf of itself and all others similarly situated,<br><br>　　　　　　　　Plaintiff,<br><br>v.<br><br>SCHWAB INVESTMENTS; MARIANN BYERWALTER, DONALD F. DORWARD, WILLIAM A. HASLER, ROBERT G. HOLMES, GERALD B. SMITH, DONALD R. STEPHENS, MICHAEL W. WILSEY, CHARLES R. SCHWAB, RANDALL W. MERK, JOSEPH H. WENDER and JOHN F. COGAN, as Trustees of Schwab Investments; and CHARLES SCHWAB INVESTMENT MANAGEMENT, INC.,<br><br>　　　　　　　　Defendants. | Case No. Case No. 5:08-cv-04119-LHK<br><br>**CLASS ACTION**<br><br>Date:　　　　April 21, 2016<br>Time:　　　　1:30 p.m.<br>Courtroom:　8, 4th Floor, San Jose<br>Judge:　　　Honorable Lucy H. Koh |

## DECLARATION OF STEVEN W. KOHLHAGEN IN SUPPORT OF PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

[08-cv-04119-LHK] DECL. OF STEVEN W. KOHLHAGEN IN SUPPORT OF PLTF'S MOT. FOR CLASS CERT.

I, Steven W. Kohlhagen, being duly sworn, hereby declares under the penalties of perjury, pursuant to 28 U.S.C. §1746, that:

**I.      QUALIFICATIONS, BACKGROUND, AND EXPERIENCE**

1. I hold a B.A. in Economics from the College of William & Mary, and an M.Sc. and Ph.D. in Economics from Stanford University. I taught for more than 12 years, first as a lecturer, teaching economics at Stanford University and California State University at Hayward, then as an Associate Professor teaching economics and business courses at the University of California at Berkeley.

2. I have obtained a variety of licenses in the investment industry, including Series 7 (General Securities Exam), Series 63 (Blue Sky State Exam), Series 24 (General Securities Principal), and Series 3 (Commodities and Futures Exam) licenses.

3. I spent two decades in the private sector as a consultant (while on the Berkeley faculty) and later as a managing director at banks and other financial services companies, including: First Union National Bank, predecessor to Wachovia National Bank and the current Wells Fargo; AIG Financial Products; Stamford Capital Group; Bankers Trust Corporation; and Lehman Brothers, Inc. At those institutions, I had responsibility for sales, trading, risk management, and research for investment banking products, including fixed income, equity, and derivative securities. I have also played an active role in the municipal bond business, and commercial and corporate hedging of all financial risks (e.g., interest rate, equity, currency, commodity, etc.), including trading, structuring deals, creating back office support systems, designing marketing materials, and direct marketing to clients.

4. Additionally, I have managed a fixed income fund, and have built and managed money management businesses that included equity, fixed income, mutual funds, and municipal bond products. From 2005 to 2010, I served as an Independent Member of the Board of Trustees of the IQ Mutual Funds, a family of Merrill Lynch investment companies, as well as a Chairman of its Nominating and Governance Committee, and as a member of its Audit Committee.

5. In the public sector, I have advised the Federal Reserve Board and the United States Treasury, as well as international organizations, and served as Senior Staff Economist for the Council of Economic Advisers on the White House staff. I currently serve on four private sector boards and committees, including: the Board of Directors of Freddie Mac, chairing its Risk Committee and serving as a member of its Compensation Committee; and the Advisory Board of the Stanford Institute for Economic Policy Research at Stanford University. I have served on various other boards of directors, both as a chairman and as a member of audit, risk, and governance committees. From 2000 to 2001, I sat on the Board of Directors of the Bond Market Association (currently known as the Securities Industry and Financial Markets Association).

6. In my capacity as a financial services industry professional, I gained substantial experience with registration materials and disclosure documents for a wide array of securities products, including mutual funds. In addition to working on drafting and approving these materials and supervising their dissemination to investors, I analyzed and evaluated their comprehensiveness, accuracy, adequacy, and understandability under regulatory requirements and industry standards. I have been retained on several occasions to provide expert opinions relating to issues such as these in the financial services industry.

7. Attached as Exhibit A is a complete curriculum vitae, including a list of my publications and a list of all other cases in which I have testified as an expert.

## II. ENGAGEMENT

8. I understand that plaintiff Northstar Financial Advisors, Inc. ("Northstar") has alleged claims against the Trustees of Schwab Investments (the "Trust") and against Charles Schwab Investment Management, Inc. (the "Advisor") for breach of fiduciary duty to investors and aiding and abetting the breach of fiduciary duty to investors by causing the Schwab Total Bond Market Fund (the "Fund") to deviate from the Fund's fundamental investment objective to "attempt to provide a high level of current income consistent with preservation of capital by seeking to track the investment results of [the Lehman Brothers Aggregate Bond Index (the 'Bond Index')]." The defendants also caused the Fund to deviate from its fundamental investment objective to not

concentrate more than 25% of its portfolio in any industry (such as non-agency collateralized mortgage securities) that were not part of the Bond Index.  *See* Plaintiff's Fourth Amended Complaint dated June 25, 2014 [Dkt. No. 214], First through Fourth and Eighth through Eleventh Causes of Action.

9. With respect to these claims, I have reviewed plaintiff's Fourth Amended Complaint, the Ninth Circuit's decision sustaining plaintiff's claims for breach of fiduciary duty against the Trustees, 779 F.3d 1036, 1056-62 (9th Cir. 2015) and the District Court's decision dated October 5, 2015 [Dkt No. 229], at pages 23-27, sustaining plaintiff's claims for breach of fiduciary duty against the Advisor.  I have also reviewed Schwab Investment's July 25, 1997 Proxy Statement [Dkt. 218-1], establishing the Fund's fundamental investment objectives.

10. I have been asked by counsel for Northstar to analyze and express my professional opinions on the performance of the Fund for the period September 1, 2007 through February 27, 2009, especially as it compares to the Fund's stated fundamental investment objective in its July 25, 1997 Proxy Statement.

11. I have also been asked to analyze and express my professional opinions on the investment strategies implemented and investments made by the Advisor to the Fund, and the role of the Trustees, especially as they compare to investments that would be required to realize the Fund's stated fundamental investment objectives.

12. Last, I have been asked my professional opinion whether Northstar's claims for breach of fiduciary duty are suitable for class action treatment and specifically whether common issues of fact on Northstar's breach of fiduciary duty claims predominate over individual issues, and whether plaintiff's class claims for breach of fiduciary duty can be proven by common evidence or whether individual issues would predominate.

13. My compensation for this engagement is based on the number of hours worked and my customary hourly rate of $850.  I am also reimbursed for out-of-pocket expenses.

14. A list of the documents I relied upon in forming my opinions are attached as Exhibit B.

3

[08-cv-04119-LHK] DECL. OF STEVEN W. KOHLHAGEN IN SUPPORT OF PLTF'S MOT. FOR CLASS CERT.

## III. SUMMARY OF OPINIONS

15. Based on both my experience and my analysis of materials relevant to this case, I conclude that during the period September 1, 2007 through February 29, 2009, the Advisor and the Trustees breached their fiduciary duties by failing to manage the Fund's assets to achieve the Fund's fundamental investment objective of tracking the performance of the Bond Index. This caused the performance of the Fund to deviate from its investment objective. The Fund's performance simply stopped tracking the Bond Index and materially lagged behind the performance of the Bond Index and other fixed income funds with objectives similar to the Fund. Investors who placed money with the Bond Fund lost money compared to the Index, and other similar fixed income funds.

16. I also conclude that plaintiff's claims are appropriate for class action treatment because they can be proven by common evidence.

## IV. OPINIONS---THE FUND AND THE INDEX

17. The July 25, 1997 Definitive Proxy Statement for the Fund [Dkt. No. 218-1] proposed a change in the Fund's fundamental investment objective. The Proxy Statement states (at 16) that the Fund's then-current "…fundamental investment objective is to attempt to provide a high level of current income consistent with preservation of capital by investing primarily in securities issued or guaranteed by the U.S. Government, its agencies or instrumentalities and repurchase agreements covering these securities." The Proxy Statement proposed (at 17-18) to change the Fund's fundamental investment objective to be to: "…attempt to provide a high level of current income consistent with preservation of capital by seeking to track the investment results of a particular bond index through the use of an indexing strategy…. If its proposed investment objective is approved, the Total Bond Fund would invest in a portfolio of fixed-income securities that seeks to track the Lehman Brothers Aggregate Bond Index (the 'Aggregate Bond Index'). The Aggregate Bond Index currently [and is still] a broad market-weighted index which encompasses the following classes of investment grade fixed-income securities: U.S. Treasury and agency securities, corporate bonds, international (dollar-denominated) bonds, mortgage-backed securities and asset-backed securities, all with maturities greater than one year."

18.     The July 25, 1995 Proxy Statement also proposed that the Fund adopt the Securities and Exchange Commission's definition of an "concentration" of securities, so that the Fund would not invest more than 25% of its portfolio in any industry, except as necessary to track the Bond Index. Dkt No. 218-1 at 32-33.

19.     This proposed change was approved by a majority vote of shareholders on September 22, 1997.  *See* Schwab Investments Prospectus Supplement dated September 25, 1997.

20.     In my opinion, a fund's fundamental investment objective is the most important term for investors in deciding in which funds to invest their money.  This Proxy Statement, after it was approved in September 1997, obligated the defendants to exercise their fiduciary duties to investors to cause the Fund to invest its assets in a portfolio of fixed-income securities to seek to track the investment results of the Bond Index through the use of an indexing strategy.  Defendants had a fiduciary duty to ensure that investors were invested in the U.S. dollar-denominated bond market as a whole, and were earning returns similar to the performance of that Index.

21.     The Index, now called the Barclays Capital Aggregate Bond Index, is described in its public materials as covering the USD-denominated, investment-grade, fixed-rate, taxable bond market of SEC-registered securities since 1986, with history measured back to January 1, 1976.  *See* The Benchmark In Fixed Income:  Barclays Capital Indices at pages 37 and 38 (Exhibit C).  In my professional experience and opinion, the Index is among the best, if not the preeminent, index used by investment professionals to measure the performance of the U.S. bond market.

22.     The Fund's Prospectuses incorporated the Fund's fundamental investment objective to track the Index.  In the introduction to the entire family of funds, the Fund's November 15, 2006 Prospectus (amended July 13, 2007) says, "THE SCHWAB TOTAL BOND MARKET FUND TM is designed to offer high current income by tracking the performance of the Lehman Brothers U.S. Aggregate Bond Index. The fund is intended for investors seeking to fill the fixed income component of their asset allocation plan." (Exhibit D; pp. 2, 14).

23.     The Prospectus adds (in all caps), immediately after the name of the Fund: "THE FUND SEEKS HIGH CURRENT INCOME BY TRACKING THE PERFORMANCE OF THE

5

1  LEHMAN BROTHERS U.S. AGGREGATE BOND INDEX" (the "Index") (p. 14). It goes on to
2  describe the Index and to state that "…Bonds are represented in the index in proportion to their
3  market value…" and (again, in all caps) "TO PURSUE ITS GOAL, THE FUND PRIMARILY
4  INVESTS IN A DIVERSIFIED PORTFOLIO OF DEBT INSTRUMENTS THAT IS DESIGNED
5  TO TRACK THE PERFORMANCE OF THE LEHMAN BROTHERS U.S. AGGREGATE BOND
6  INDEX.  The fund uses the index as a guide in structuring the fund's portfolio and selecting its
7  investments.…" (p. 14).

8      24.    In an October 2015 talk at Stanford University,
9  https://www.youtube.com/watch?v=W9Fqdqjacwk, Charles Schwab, the founder and current
10 Chairman of The Charles Schwab Corporation, discussed the value of investing in indexing in the
11 bond market.  In this context, he stated that he had learned quite some time ago that "…indexing
12 created ninety percent of the eventual outcome…if you're investing in bonds…."  He made the same
13 point about the value of indexing for other asset classes as well.

14 **V.     OPINIONS---IMPLEMENTATION AND RESULTS**

15     25.    I have compared the performance of the Fund in the Pre-Breach period from
16 inception in late 1997 through August 31, 2007 against the performance of six investment funds that
17 most closely matched the fundamental investment objective of the Schwab Total Bond Market Fund.
18 (In the event any of the funds were not in existence as of August 1, 1997 – the approximate date on
19 which the Fund began performance as a (purported) index fund -- the data is shown as of the first
20 reported trading date for that fund on Bloomberg.)

21     a.    The iShares Lehman Aggregate Bond Fund ETF [Electronic Traded Fund] (symbol:
22     AGG) (Investment Objective:  "The iShares Lehman Aggregate Bond Fund seeks
23     investment results that correspond generally to the price and yield performance,
24     before fees and expenses, of the total U.S. investment grade bond market as defined
25     by the Lehman Brothers U.S. Aggregate Index".  Exhibit E (Excerpt of Prospectus
26     dated July 1, 2007 at page 18)[1].

---

[1] Certain of the SEC filings referenced herein are only appended in abstract because the full filings are hundreds of pages consisting of primarily irrelevant information concerning unrelated funds.

6

[08-cv-04119-LHK] DECL. OF STEVEN W. KOHLHAGEN IN SUPPORT OF PLTF'S MOT. FOR CLASS CERT.

      b.      The Vanguard Total Bond Market ETF (symbol:  BND) (Investment Objective:  "The Fund seeks to track the performance of a broad, market-weighted bond index.")  Exhibit F (Excerpt of Prospectus dated April 2, 2007 at page 3).

      c.      Dreyfus Bond Market Index Fund (symbol:  DBMIX) (Investment Objective:  "The fund seeks to match the total return of the Lehman Brothers U.S. Aggregate Index.").  Exhibit G (Excerpt of Prospectus dated March 1, 2008 at page 1).

      d.      Fidelity Spartan U.S. Bond Index Fund (symbol:  FSITX) (Investment Objective: "The fund seeks to provide investment results that correspond to the aggregate price and interest performance of the debt securities in the Barclays Capital® U.S. Aggregate Bond Index.").  Exhibit H ("The fund seeks to provide investment results that correspond to the aggregate price and interest performance of the debt securities in the Barclays Capital® U.S. Aggregate Bond Index.") (Summary Prospectus dated May 10, 2011).

      e.      SPDR Lehman Aggregate Bond ETF (symbol: LAG; BNDS) (Investment Objective: "[T]o provide investment results that, before fees and expenses, correspond generally to the price and yield performance of an index that tracks the U.S. dollar denominated investment grade bond market.").  Exhibit I (Excerpt of Prospectus dated October 31, 2007 at page 22).

      f.      Vanguard Total Bond Market Index Fund (symbol: VBMFX) (Investment Objective: "The Fund seeks to track the performance of a broad, market-weighted bond index.").  Exhibit J (Excerpt of Prospectus dated April 2, 2007 at page 2).

26.     Exhibit K shows that the Schwab Total Bond Market Fund and the six other Bond Funds with similar investment objectives to the Fund tracked the Index quite closely through August 2007.  In my professional opinion, this is precisely what one would expect.  Portfolios with similar investment objectives should generate similar, but not necessarily identical, performance results to the index they are tracking.

---

The complete filings are available on the SEC's website and will be furnished to defendants or the Court upon request.

27. In fact, in Exhibit L (TB 00004527-57 at 24; Schwab Total Bond Fund Review dated June 30, 2007 – 2nd Quarter Review) Schwab shows that the Fund's returns for the five-year period ending June 30, 2007 have an R-squared of 98.93% when compared to the Index's returns.  This tells us that the Fund tracked the Index's returns very closely from 2002-2007, on the order of what we would expect in light of defendants' fiduciary duties.

28. However, beginning in approximately September 2007, the Fund failed to track the performance of the Bond Index, while the other six investment funds continued to track the performance of the Bond Index.

29. As can be seen from Exhibit M, starting in September 2007 the performance of the Fund began to derail from the Bond Index and the other funds.  By February of 2008 the Fund was drastically underperforming the Bond Index and the other funds.  It was no longer tracking the Bond Index.  Not close to 98%.  Or even 90%.  It continued to fail to track the Bond Index through February of 2009.

30. As a direct result, the defendants' breach of fiduciary duty to cause the Fund to track the Index, anyone investing in the Fund would have lost money compared to defendants' obligation to manage the Fund pursuant to the Fund's fundamental investment objective.  In fact, investors in the Fund, whether invested at the beginning or during the Breach Period (commencing September 1, 2007), lost money compared to the performance of the Index.

31. During this period, as shown in Exhibit M, the other funds with similar investment objectives continued to track the Index while the Fund did not.  In my professional opinion, this is a material failure by the Fund to achieve its fundamental investment objective.

32. Upon inspection, not surprisingly in light of this performance failure, as of August 31, 2007 the Fund was no longer being managed by the defendants to track the performance of the Index.  Exhibit N shows the asset allocation differences between the August 31, 2007 iShares Core U.S. Aggregate Bond ETF [Electronic Traded Fund]" (symbol: AGG), one of the six investment funds

1  described in Paragraph 23 above that closely matched the fundamental investment objectives of the Fund.[2]

2

3  33. Note two things: 1) there are material differences between the Fund's portfolio composition from that of AGG; and 2) like the other five investment funds, AGG continued to meet its fundamental investment objective after August 31, 2007 of tracking the Index, while the Fund did not.

34. Exhibit N shows that as of August 31, 2007 the Schwab portfolio was exposed to dramatically more mortgage backed securities (60.8% as compared to 47.3%), including non-agency collateralized mortgage obligations (36.7% as compared to 0%), and much less to U.S. Government bonds (8.8% as compared to 23%). *Compare* Schwab Total Market Bond Fund Annual Report dated August 31, 2007 (abstracted at Dkt No. 225-1) to AGG Semi-Annual Report dated August 31, 2007, pages 1-5 and 40-45 (abstracted at Exhibit O). The result was the dramatic underperformance of the Fund relative to the Index (and AGG) starting in September 2007, but especially from November 2, 2007 through February 27, 2009.

35. The Bond Index was constructed to withstand market turmoil and illiquidity in less creditworthy securities that were not part of the Index. Defendants, by failing to manage the Fund's fundamental investment objective, subjected the Fund to an intensified liquidity crisis and flight to safety after August 2007 and throughout 2008 that investors in bond index funds that adhered to their fundamental investment objectives to track the Index were not subjected to.

36. I have also concluded that this case is appropriate for class action treatment. I have been asked to assume that the elements of a claim for breach of fiduciary duty are: (1) existence of a duty that is fiduciary in nature based upon the relationship of the parties, (2) breach of that duty, (3) damages, and (4) a causal connection between breach of the duty and the damages. Each of those elements can be proven by common evidence. The existence of a duty and the breach of that duty is uniform for all class members who held shares of the Fund at any time from September 1, 2007

---

[2] The actual composition of the index is not publicly available. However, the composition of the other investment funds is a reasonable proxy for the index.

through February 27, 2009. Damages can be proven by analyzing the difference in daily performance between the Bond Index (which is publicly reported under the symbol: LBUSTRUU) and the Fund's NAV (which is publicly reported under the symbol SWLBX). The causal connection between defendants' breaches of fiduciary duty and damages can also be proven by common evidence (*i.e.*, the under-performance of the securities that are not part of the Index compared to the securities that are part of the Index). In fact, the Schwab Total Bond Market is an open-ended mutual fund. Each share of the Fund is bought or sold directly in privity with the Trust, and thus defendants have knowledge of the names and trading information for all shareholders. There is no need for a damages expert to estimate class-wide damages. Damages can be calculated with mathematical precision for each shareholder.

Dated: January 20, 2016

*Steven W. Kohlhagen*
Steven W. Kohlhagen