Joseph J. Tabacco, Jr. (SBN 75484)
jtabacco@bermandevalerio.com
Christopher T. Heffelfinger (SBN 118058)
cheffelfinger@bermandevalerio.com
**BERMAN DEVALERIO**
One California Street, Suite 900
San Francisco, CA  94111
Telephone: (415) 433-3200
Facsimile:  (415) 433-6282

*Attorneys for Plaintiff Northstar Financial Advisors, Inc.*

[Additional Counsel on Signature Page]

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN JOSE DIVISION

| | |
|---|---|
| NORTHSTAR FINANCIAL ADVISORS, INC., on behalf of itself and all others similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> SCHWAB INVESTMENTS; MARIANN BYERWALTER, DONALD F. DORWARD, WILLIAM A. HASLER, ROBERT G. HOLMES, GERALD B. SMITH, DONALD R. STEPHENS, MICHAEL W. WILSEY, CHARLES R. SCHWAB, RANDALL W. MERK, JOSEPH H. WENDER and JOHN F. COGAN, as Trustees of Schwab Investments; and CHARLES SCHWAB INVESTMENT MANAGEMENT, INC., <br><br> Defendants. | Case No. Case No. 5:08-cv-04119-LHK <br><br> **CLASS ACTION** <br><br> Date:      April 21, 2016 <br> Time:      1:30 p.m. <br> Courtroom: 8, 4th Floor, San Jose <br> Judge:     Honorable Lucy H. Koh |

### DECLARATION OF RICHARD BERSE IN SUPPORT OF PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

[08-cv-04119-LHK] DECL. OF RICHARD BERSE IN SUPPORT OF PLTF'S MOT. FOR CLASS CERT.

Richard Berse, being duly sworn, does hereby declare under the penalties of perjury, pursuant to 28 U.S.C. §1746, that:

1. I am the President and sole shareholder of plaintiff Northstar Financial Advisors, Inc. ("Northstar"). I make this Declaration on personal knowledge, in support of Northstar's motion to certify the class in this action defined as all persons who invested in shares of the Schwab Total Bond Market Fund, who held those shares as of August 31, 2007, or who acquired those shares at any time from September 1, 2007 through February 27, 2009, and who were damaged thereby.

## BACKGROUND

2. I graduated from Lehigh University, College of Business and Accounting, in 1976 with a Bachelor of Science in Accounting. I obtained my license as a Certified Public Accountant after passing all four parts of the CPA exam in 1980. From 1976 until early 1993, I was employed in public accounting in Newark, New Jersey and New York City. In addition to being a CPA, I also hold an American Institute of Certified Public Accountants Certificate in Financial Planning.

3. In 1993, I founded Northstar as a financial advisory firm. Northstar's financial advisory services are based primarily on an asset allocation formula using low-cost mutual funds. Northstar currently manages in excess of $50 million in assets on behalf of approximately 100 different investors.

4. In early 1994, I affiliated with The Charles Schwab Company ("Schwab") as an independent financial advisor. As an independent financial advisor, I had access to Schwab's financial products and could trade on Schwab's website on behalf of my clients. I chose to affiliate with Schwab because of its name recognition to my clients and reputation for integrity and quality investment products.

## NORTHSTAR'S INVESTMENT IN THE BOND FUND

5. In or about 2002, I conducted research on Schwab's website and chose the Schwab Total Bond Market Fund (the "Bond Fund") for those of my clients who I determined should have investments in bonds. I chose the Bond Fund because it was an index fund that had lower

1 management fees than actively managed funds and because I did not have to concern myself with an
2 active fund manager underperforming the index.
3       6.      From 2002 to early 2008, I followed the performance of the Bond Fund and was
4 satisfied that its performance was consistent with that of a bond index fund that tracked the Lehman
5 Index.

### DEFENDANTS' BREACH OF THEIR FIDUCIARY DUTIES TO TRACK THE INDEX

7       7.      In March 2008, the Bond Fund began to substantially underperform the Lehman
8 Index.  For example, from February 29, 2008 (the last trading day in February) to March 31, 2008
9 (the last trading day in March), the Bond Fund's net asset value (NAV) per share fell from $9.78 to
10 $9.43 (a decline of approximately 3.58%).  The Bond Index, during that same period of time, rose
11 from a closing price of 1,406.86 on February 29, 2008 to 1,411.66 on March 31, 2008.  At the time,
12 Northstar held approximately 240,000 shares of the Bond Fund under management, with a market
13 value of approximately $2,280,000.  *See* schedules of client holdings at Exhibit A.  Accordingly, in
14 March 2008 alone, my clients lost market value on those shares of approximately $81,600.
15       8.      By April 1, 2008, I grew concerned that the Schwab Bond Fund was not constructed
16 to track the Bond Index, and considered whether to sell my clients' shares in the Fund.  I was
17 concerned that Schwab was breaching its agreements and fiduciary duties to my clients, as well as to
18 other investors.
19       9.      On April 1, 2008, I spoke with Andrew M. Cook, who I understood was employed by
20 Charles Schwab Investment Management ("CSIM"), the investment advisor to the Index Fund, to
21 understand why the Bond Fund had underperformed his index.  Mr. Cook explained that Schwab did
22 not consider the Bond Fund to be an index fund, that CSIM was entitled to actively manage the
23 Index Fund's portfolio, and that CSIM had invested the portfolio in high risk collateralized mortgage
24 obligations that were not representative of the bonds that were part of the Bond Index.
25       10.     Mr. Cook's statements were not consistent with Schwab's contractual and fiduciary
26 obligations to operate the Bond Fund as an Index Fund.  After speaking to Mr. Cook, I entered trades
27 on Schwab's website to effectuate the sale of nearly all Bond Fund shares that I owned for my
28 clients.

[08-cv-04119-LHK] DECL. OF RICHARD BERSE IN SUPPORT OF PLTF'S MOT. FOR CLASS CERT.

11.     During the middle of 2008, I had various similar conversations with Schwab representatives, including Scott Smith and Kimon Daifotis (the portfolio manager).  In those conversations I asked Schwab (i) to reimburse my clients for the damage caused by the Bond Fund's deviation from the Index, and (ii) to comply with the Bond Fund's fundamental investment objective to track the Bond Index, or to hold a shareholder vote necessary to change the fundamental investment objective.  Schwab failed to do any of the above.

### MY DECISION TO FILE SUIT AND DEDICATION TO SEE THE CASE THROUGH TO CONCLUSION

12.     After failing to make progress with Schwab, I consulted with attorneys and filed this Action on my behalf and on behalf of a class of similarly situated investors in the Bond Fund.

13.     As neither Northstar nor I owned shares directly in the Fund, but rather only invested in the Fund on behalf of my clients, there existed a concern as to whether I had "standing" to sue Schwab for its deviation from the fundamental investment objective.  My brother-in-law Henry Holz, a Northstar client who invested in the Bond Fund, agreed to assign his claims to me to ensure my standing to pursue this litigation.  Copies of those assignments are annexed as Exhibits B and C.

14.     I recognize that as a class representative I have responsibilities to the Class and to the Court.  Among other things, I have consulted frequently with my counsel Greenbaum Rowe Smith & Davis LLP and Wolf Popper LLP with respect to litigation strategy, have reviewed and proposed changes to Court documents, and am willing to travel to San Francisco, if necessary, for Court appearances or to submit to deposition.

15.     As the case has proceeded, it has become apparent to me that Schwab will continue to contest my ability to proceed as the sole class representative by way of an assignment from Mr. Holz. Further, Schwab has argued that it actually began to deviate from the composition of the Bond Index as early as 2005 and has suggested that Henry Holz and I (by virtue of the assignment) may be an atypical or inadequate class representative because Mr. Holz first invested in 2007 after Schwab began to deviate from the Index.

16.     To moot those purported defenses, I asked one of my long-time clients, Odessa Hall, to join me as a second class representative plaintiff in this Action.  Ms. Hall is a retiree, on a fixed

income, and is exactly the type of investor that a passive bond index fund is suited to. I made on Ms. Hall's behalf an investment of $142,500 in the Bond Fund in 2002, one of the largest investments among Northstar's clients. Based on the calculations provided to me by my counsel in this action, Ms. Hall incurred damages of approximately $9,600 as a result of the defendants' failure to exercise their fiduciary duties to ensure that the Fund adhered to its fundamental investment objectives (of which she has received approximately $1,250 as compensation from the SEC Fair Fund).

17. Ms. Hall would be an excellent class representative. Although I am individually more than adequate to represent the Class, Ms. Hall would strengthen that representation.

18. There is no doubt that CSIM and the Trustees of the Schwab Investment trust violated their duties to investors when they caused the Bond Fund to deviate from the fund's stated fundamental investment objectives, and I am dedicated to seeing this case through to the end.

Dated: 1/13/16

_____
RICHARD BERSE

[08-cv-04119-LHK] DECL. OF RICHARD BERSE IN SUPPORT OF PLTF'S MOT. FOR CLASS CERT.