UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| NORTHSTAR FINANCIAL ADVISORS INC.,<br><br>        Plaintiff,<br><br>    v.<br><br>SCHWAB INVESTMENTS, et al.,<br><br>        Defendants. | Case No. 08-CV-04119-LHK<br><br>**ORDER DENYING MOTION FOR LEAVE TO FILE MOTION FOR RECONSIDERATION, GRANTING MOTION FOR JUDGMENT ON THE PLEADINGS, AND DENYING AS MOOT MOTION FOR CLASS CERTIFICATION**<br><br>Re: Dkt. Nos. 243, 249, 252 |

Plaintiff Northstar Financial Advisors, Inc. ("Northstar") brings this action against Schwab Investments, the Board of Trustees of Schwab Investments, and Charles Schwab Management, Inc. (collectively, "Defendants"). Before the Court is (1) Northstar's motion for leave to file a motion for reconsideration of this Court's October 5, 2015 Order; (2) Defendants' motion for judgment on the pleadings of Northstar's Fourth Amended Complaint; and (3) Northstar's motion for class certification. ECF No. 243 ("MFR"); ECF No. 249 ("MJP"); ECF No. 252 ("Class Cert. Mot."). The Court finds these motions suitable for decision without oral argument pursuant to Civil Local Rule 7-1(b) and thus vacates the motions hearings set for February 25, 2016, at 1:30

1

p.m., and April 21, 2016, at 1:30 p.m.  Having considered the parties' submissions, the relevant law, and the record in this case, the Court DENIES Northstar's motion for reconsideration, GRANTS Defendants' motion for judgment on the pleadings, and DENIES AS MOOT Northstar's motion for class certification.

## I.    BACKGROUND

### A.  Factual Background

On August 28, 2008, Northstar filed its first complaint ("Original Complaint") in this putative class action on behalf of itself and all shareholders of the Schwab Total Bond Market Fund (the "Fund") at any time from August 31, 2007 to the present.  ECF No. 1 ("Compl.") ¶ 1. Northstar is a registered investment advisory and financial planning firm that serves both institutional and individual clients.  *Id*. ¶ 9.  Northstar manages both discretionary and nondiscretionary accounts on behalf of investors in its role as an investment advisor.  *Id*. Northstar traded through Charles Schwab's Institutional Advisor Platform, where it purchased shares in the Fund for its clients.  *Id*. ¶¶ 11–12.

Although Northstar has filed five complaints, Northstar's core allegations have remained the same.  Northstar alleges that Defendants deviated from the Fund's investment objective to track the Lehman Brothers U.S. Aggregate Bond Index (the "Lehman Index") in two ways.  First, Northstar alleges that, starting around August 31, 2007, the Fund began investing in high risk non-U.S. agency collateralized mortgage obligations ("CMOs") that were not part of the Lehman Index and that were substantially more risky than the U.S. agency securities and other instruments that comprised the Lehman Index.  *See id*. ¶ 3; ECF No. 214 ¶ 5.  Second, Northstar alleges that, beginning around August 31, 2007, the Fund deviated from the Fund's investment objectives (which prohibited investing more than 25% of the Fund's assets in any one industry, unless such concentration was necessary to track the Lehman Index) by investing more than 25% of the Fund's assets in U.S. agency and non-agency mortgage-backed securities and CMOs. Compl. ¶ 4; ECF No. 214 ¶ 6.  Northstar alleges that these actions exposed the Fund and Fund

2

United States District Court
Northern District of California

shareholders to tens of millions of dollars in losses due to a sustained decline in the value of non-agency mortgage-backed securities.  According to Northstar, the Funds' deviation from its fundamental investment objectives caused the Fund to incur a negative return of 4.80% for the period of September 1, 2007 through February 27, 2009, compared to a positive return of 7.85% for the Lehman Index over this same period.  ECF No. 214 ¶ 7.

## B. Procedural History

### 1. *Northstar I*

Based on the allegations described above, Northstar asserted the following four causes of action against a number of Schwab-related entities[1] in the Original Complaint: (1) violation of § 13(a) of the Investment Company Act of 1940 ("ICA"); (2) breach of fiduciary duty; (3) breach of contract; and (4) breach of the covenant of good faith and fair dealing.  Compl. ¶¶ 85–99. Northstar's § 13(a) claim was asserted under federal law; Northstar's remaining causes of action were asserted under state law.  On November 20, 2008, Defendants moved to dismiss the Original Complaint.  ECF No. 33.  U.S. District Judge Susan Illston, to whom this case was originally assigned, granted in part and denied in part Defendants' motion.  *See* ECF No. 74 ("*Northstar I*").

First, Judge Illston found that Northstar did not have standing to bring suit because Northstar "only purchased shares for its clients and not for itself."  *Northstar I* at 3.  Judge Illston, however, granted Northstar leave to amend because Northstar could cure this deficiency by receiving an assignment of claims from one of Northstar's clients.  *Id.* at 4.  Second, Judge Illston found that there was an implied private right of action under § 13(a) of the ICA and that Northstar

---

[1] In Northstar's Original Complaint, Northstar brought suit against Schwab Investments, Charles Schwab & Co., Charles Schwab Investment Management, Inc., and Schwab Total Bond Market Fund.  Compl. ¶¶ 14–17.  In Northstar's First Amended Complaint, Northstar brought suit against Schwab Investments and Charles Schwab Investment Management, Inc.  ECF No. 75 ¶¶ 16–17. Northstar's Second Amended Complaint, Third Amended Complaint, and Fourth Amended Complaint brought suit against Schwab Investments, the members of the Board of Trustees of Schwab Investments, and Charles Schwab Management, Inc. as Defendants.  ECF Nos. 127, 181, 214.

United States District Court
Northern District of California

had plausibly stated a cause of action for violation of shareholders' voting rights under this section. *Northstar I* at 7, 9–12. Finally, on Northstar's state law causes of action, Judge Illston dismissed Northstar's breach of fiduciary duty claim with leave to amend. Judge Illston instructed Northstar "to carefully examine whether each of the [D]efendants named in this claim can in fact be named in such a claim, and under which state's laws such a claim [may be] properly brought." *Id.* at 14–15. Because of the close relationship between Northstar's breach of fiduciary duty claim and Northstar's breach of contract claim, Judge Illston also dismissed with leave to amend Northstar's breach of contract claim. *Id.* at 15. Judge Illston denied Defendants' motion to dismiss Northstar's breach of the covenant of good faith and fair dealing claim. *Id.* at 15–16.

### 2. *Northstar II*

On March 2, 2009, Northstar filed its First Amended Complaint. On March 5, 2009, Defendants filed a motion seeking leave to file an interlocutory appeal in which Defendants would challenge Judge Illston's finding that Northstar could assert a private right of action under § 13(a) of the ICA. This motion was granted, ECF No. 108, and this action was stayed pending the outcome of Defendants' appeal. This case was stayed from April 27, 2009 through August 13, 2010. In the interim, this case was reassigned, first to U.S. District Judge Richard Seeborg, and then to the undersigned Judge. *See* ECF Nos. 115 & 117. On August 13, 2010, the Ninth Circuit reversed Judge Illston's order, and held that there is no private right of action under § 13(a). *Northstar Fin. Advisors, Inc. v. Schwab Invs.* ("*Northstar II*"), 615 F.3d 1106, 1122 (9th Cir. 2010).

### 3. *Northstar III*

In light of *Northstar II*, Northstar filed on September 28, 2010 its Second Amended Complaint ("SAC"), which did not include a § 13(a) claim. ECF No. 127 ("SAC"). In an attempt to address the standing issue identified by Judge Illston, Northstar also asserted an

Case No. 08-CV-04119-LHK
ORDER DENYING MOTION FOR LEAVE TO FILE MOTION FOR RECONSIDERATION, GRANTING MOTION FOR JUDGMENT ON THE PLEADINGS, AND DENYING AS MOOT MOTION FOR CLASS CERTIFICATION

United States District Court
Northern District of California

United States District Court
Northern District of California

1    assignment of claims from Henry Holz, a Northstar client who had owned Fund shares as of

2    August 31, 2007.  *See* ¶ 15.

3          The SAC named Schwab Investments (the "Trust"), the members of the Board of Trustees

4    of Schwab Investments (the "Trustees"),[2] and Charles Schwab Investment Management, Inc. (the

5    "Advisor") as Defendants.[3]  According to the SAC, the Trust is an investment trust organized

6    under Massachusetts law that "consists of a series of mutual funds, including the Fund."  SAC ¶

7    16.  The Trust is managed by the Trustees.  *Id.* ¶¶ 19–20.  Pursuant to a contractual agreement

8    between the Trust and the Advisor, known as the Investment Advisory Agreement ("IAA"), the

9    Advisor handles day-to-day oversight of the Fund.  *Id.* ¶¶ 23, 154.

10         In the SAC, Northstar asserted the following causes of action: (1) breach of fiduciary duty

11   against all Defendants; (2) breach of contract against the Trust; (3) breach of the covenant of

12   good faith and fair dealing against the Trust and the Advisor; and (4) breach of contract as a third

13   party beneficiary to the IAA against the Advisor.

14         This Court dismissed the SAC on March 2, 2011.  *See* ECF No. 175 ("*Northstar III*").  The

15   Court found all of Northstar's causes of action precluded by the Securities Litigation Uniform

16   Standards Act of 1998 ("SLUSA") because all of Northstar's causes of action implicated a

17   misrepresentation or omission of material fact that was made in connection with the purchase or

18   sale of Fund shares.  The Court stated that "the central theme . . . of Plaintiffs' claims is that

19   [D]efendants made misrepresentations about how investments in the fund would be managed,

20   that Plaintiffs purchased Fund shares relying on these misrepresentations, and that Plaintiffs were

21   injured when these statements turned out to be false."  *Northstar III* at 9.

22

23

24   _____

    [2] Mariann Byerwalter, Donald F. Dorward, William A. Hasler, Robert G. Holmes, Gerald B.
25   Smith, Donald R. Stephens, Michael W. Wilsey, Charles R. Schwab, Randall W. Merk, Joseph H.
    Wender, and John F. Cogan.
26   [3] As noted above, both the Third Amended Complaint and the Fourth Amended Complaint sue the
    same three Defendants.
27                                                                      5
28   ORDER DENYING MOTION FOR LEAVE TO FILE MOTION FOR RECONSIDERATION, GRANTING
    MOTION FOR JUDGMENT ON THE PLEADINGS, AND DENYING AS MOOT MOTION FOR CLASS
    CERTIFICATION

United States District Court
Northern District of California

In addition to dismissing Northstar's causes of action based on SLUSA preclusion, the Court found that Northstar had failed to sufficiently allege a breach of contract claim despite specific instructions from Judge Illston in *Northstar I* to "add more specific allegations regarding the language [Northstar] relies on to allege the formation of a contract, as well as each [D]efendants' involvement." *Northstar I* at 15.  The Court thus dismissed with prejudice both Northstar's breach of contract claim and Northstar's related claim for breach of the covenant of good faith and fair dealing.  *Northstar III* at 18–19.

Northstar's third party beneficiary claim was dismissed with leave to amend so that Northstar could "specify . . . what specific provisions of the Investment Advisor Agreement were allegedly breached, and how." *Id.* at 24.

Finally, with respect to Northstar's breach of fiduciary duty claim, the Court recognized that this claim could fall outside the scope of SLUSA preclusion through a statutory exception known as the Delaware carve-out.  Accordingly, Northstar was granted leave to amend Northstar's breach of fiduciary duty claim in order to clarify whether this claim fell within the Delaware carve-out. *Id.* at 15.

### 4. *Northstar IV*

Northstar filed its Third Amended Complaint on March 28, 2011.  ECF No. 181 ("TAC"). For the first time, Northstar bifurcated putative class members into two subclasses. *Id.* ¶ 65. First, Northstar asserted causes of action on behalf of a "Pre-Breach" class, which consisted of "all persons or entities who purchased shares of the Fund on or prior to August 31, 2007, and who continued to hold their shares as of August 31, 2007." *Id.*  Second, Northstar asserted causes of action on behalf of a "Breach Class," which consisted of "all persons or entities who purchased shares of the Fund during the period of September 1, 2007, through February 27, 2009." *Id.*  The classes were divided between August 31 and September 1 because Northstar alleges that "August 31, 2007 [was] the last day of the fiscal year preceding the one during which the Fund first began deviating from its required fundamental investment policy to seek to track the Lehman Index

6

through the use of an indexing strategy." *Id.*  Northstar alleges that the Fund "reverted back to its required fundamental investment policy" on or around February 27, 2009.  *Id.* ¶ 66.  Northstar brought five causes of action on behalf of each of the two classes, for a total of ten causes of action.  These were: (1) breach of fiduciary duty against both the Trustees and the Trust; (2) breach of fiduciary duty against the Advisor; (3) aiding and abetting breach of fiduciary duty against the Trustees; (4) aiding and abetting breach of fiduciary duty against the Advisor; and (5) breach of contract as third party beneficiary to the IAA against the Advisor.  Northstar also incorporated by reference the breach of contract and breach of the covenant of good faith and fair dealing claims from the SAC.  *Id.* ¶ 120.  Northstar did not develop any new arguments with respect to these causes of action; it asserted these causes of action solely for purposes of preserving them for appeal.  *Id.*

On April 2, 2011, Defendants moved to dismiss the TAC.  On August 8, 2011, this Court granted with prejudice Defendants' motion to dismiss the TAC.  ECF No. 190 ("*Northstar IV*"). On the breach of fiduciary duty claims, this Court found that any such claims must be derivative, and not direct, in nature.  *Northstar IV* at 12.  As such, Northstar could not bring these claims directly, and Northstar's fiduciary duty claims were therefore dismissed with prejudice.  This Court also dismissed with prejudice Northstar's related aiding and abetting breach of fiduciary duty claims.  *Id.* at 12–13.  As to Northstar's third party beneficiary claims, the Court found that the IAA's terms did not make clear an intention to benefit Fund shareholders.  Accordingly, Fund shareholders could not be considered third party beneficiaries, and Northstar's third party beneficiary claims were dismissed with prejudice.  *Id.* at 17–18.

### 5. *Northstar V*

On appeal, the Ninth Circuit reversed in part and vacated in part this Court's order in *Northstar IV*.  First, the Ninth Circuit clarified that this Court did not abuse its discretion in allowing Northstar to amend its pleadings to establish standing to bring suit.  *Northstar Fin. Advisors, Inc. v. Schwab Invs.* ("*Northstar V*"), 779 F.3d 1036, 1043 (9th Cir. 2015).  Second, the

7

United States District Court
Northern District of California

United States District Court
Northern District of California

Ninth Circuit held "that the mailing of the proxy statement and the adoption of the two fundamental investment policies after the shareholders voted to approve them, and the annual representations by the Fund" were "sufficient to form a contract between the shareholders on the one hand and the Fund and the Trust on the other." *Id.* at 1054.  Accordingly, the Ninth Circuit reversed this Court's decision dismissing Northstar's breach of contract claim.  Third, the Ninth Circuit vacated this Court's finding that Northstar could only bring its fiduciary duty claims derivatively. *Id.* at 1065.  Finally, the Ninth Circuit reversed this Court's decision to dismiss Northstar's third party beneficiary claims.  The Ninth Circuit determined that Northstar had sufficiently alleged facts to show that Northstar was a third party beneficiary to the IAA. *Id.*  The Ninth Circuit did not discuss whether any or all of Northstar's causes of action were precluded by SLUSA, instead leaving that determination to this Court on remand. *Id.* at 1050.  Judge Bea dissented from the majority opinion and argued that Northstar did not have standing to bring suit. *Id.* at 1069 (Bea, J., dissenting).  Judge Bea's dissent did not address any of the other issues discussed in the majority's opinion.

### 6. *Northstar VI*

In response to the Ninth Circuit's decision, Northstar filed its Fourth Amended Complaint ("FAC") on June 25, 2015.  ECF No. 214 ("FAC").  This complaint asserted fourteen causes of action, with seven causes of action pertaining to the Pre-Breach class and seven causes of action pertaining to the Breach class.[4]

---

[4] Northstar's thirteenth causes of action is labeled as a cause of action "on behalf of members of the Pre-Breach Class for breach of contract." FAC ¶ 247.  This appears to be a misprint.  The first seven causes of action in the FAC pertain to the Pre-Breach class.  The latter seven causes of action (with the exception of the thirteenth cause of action) essentially repeat the allegations made in the first seven causes of action, but with respect to the Breach class.  Read literally, Northstar's thirteenth cause of action would be redundant, as it simply repeats the allegations made in Northstar's sixth cause of action. *See id.* ¶¶ 177–89 (sixth cause of action); 247–59 (thirteenth cause of action).  Consistent with the overall organization of the FAC, the Court therefore reads the thirteenth cause of action as asserting a breach of contract claim on behalf of the Breach class.

Case No. 08-CV-04119-LHK
ORDER DENYING MOTION FOR LEAVE TO FILE MOTION FOR RECONSIDERATION, GRANTING MOTION FOR JUDGMENT ON THE PLEADINGS, AND DENYING AS MOOT MOTION FOR CLASS CERTIFICATION

United States District Court
Northern District of California

1    Specifically, Northstar asserted the following seven causes of action on behalf of the Pre-

2    Breach class, which constitute the first through seventh causes of action in the FAC: (1) breach of

3    fiduciary duty against both the Trust and the Trustees; (2) breach of fiduciary duty against the

4    Advisor; (3) aiding and abetting breach of fiduciary duty against the Trustees; (4) aiding and

5    abetting breach of fiduciary duty against the Advisor; (5) breach of contract as third party

6    beneficiary to the IAA against the Advisor; (6) breach of contract against the Trust; and (7)

7    breach of the covenant of good faith and fair dealing against the Advisor and the Trustees.

8    Northstar relied on the same core allegations to assert seven causes of action on behalf of

9    the Breach class, which constitute the eighth through fourteenth causes of action in the FAC: (8)

10    breach of fiduciary duty against both the Trust and the Trustees; (9) breach of fiduciary duty

11    against the Advisor; (10) aiding and abetting breach of fiduciary duty against the Trustees; (11)

12    aiding and abetting breach of fiduciary duty against the Advisor; (12) breach of contract as third

13    party beneficiary to the IAA against the Advisor; (13) breach of contract against the Trust; and

14    (14) breach of the covenant of good faith and fair dealing against the Advisor and the Trustees.

15    Defendants filed a motion to dismiss the FAC on July 24, 2015, where Defendants argued

16    that all of Northstar's causes of action were precluded by SLUSA.  Defendants also asserted a

17    number of other arguments concerning Northstar's various causes of action.  ECF No. 217.  On

18    October 5, 2015, the Court granted in part and denied in part Defendants' motion to dismiss.

19    ECF No. 229 ("*Northstar VI*").

20    In particular, the Court granted with prejudice Defendants' motion to dismiss Northstar's

21    breach of contract claims and breach of the covenant of good faith and fair dealing claims.

22    *Northstar VI* at 41.  These claims constituted the fifth, sixth, seventh, twelfth, thirteenth, and

23    fourteenth causes of action in the FAC.  *Id.*  The Court concluded that SLUSA preclusion applied

24    to these causes of action and that these causes of action did not fall within the Delaware carve-

25    out.  *See id.* at 36–39.

26

27                                                      9

28

1   The Court also granted with prejudice Defendants' motion to dismiss Northstar's breach of

2   fiduciary duty claims "insofar as these claims pertain to an alleged breach of fiduciary duty by the

3   Trust." *Id.* at 41.  As the Court explained, "the Trust consists of various assets managed by the

4   Trustees for the benefit of shareholders. . . .  [Thus,] [t]o the extent that any fiduciary duties are

5   owed at all to Northstar, those duties are owed by those who manage the Trust—not by the Trust

6   itself." *Id.* at 15.  These claims constituted the first and eighth causes of action in the FAC.  *Id.* at

7   41.

8   Finally, the Court denied Defendants' motion to dismiss as to the remaining causes of

9   action in the FAC.  *Id.* at 41.  These causes of action all relate to the Trustees' and the Advisor's

10  alleged breach of a fiduciary duty owed to shareholders.  As background, Defendants had, in

11  moving to dismiss the SAC, asserted SLUSA preclusion with respect to all of Northstar's causes

12  of action.  However, in moving to dismiss the TAC, Defendants asserted a SLUSA preclusion

13  defense as to some of Northstar's causes of action, but did not assert a SLUSA preclusion defense

14  as to Northstar's breach of fiduciary duty claims.

15  The Court determined that, under such circumstances, Defendants had abandoned

16  Defendants' SLUSA preclusion defense as to Northstar's breach of fiduciary duty claims

17  pursuant to Federal Rule of Civil Procedure 12(g)(2), which states that, "[e]xcept as provided in

18  [Federal Rule of Civil Procedure] 12(h)(2) or (3), a party that makes a motion under this rule

19  must not make another motion under this rule raising a defense or objection that was available to

20  the party but omitted from its earlier motion."  Fed. R. Civ. P. 12(g)(2).  The Court went on to

21  analyze Defendants' remaining arguments with respect to Northstar's fiduciary duty claims, and

22  found these arguments unavailing.  *See, e.g.*, *Northstar VI* at 14–23.

23  On October 13, 2015, Defendants filed an answer to the FAC.  ECF No. 239.  The Court

24  held a case management conference on October 14, 2015.  During this case management

25  conference, Northstar stated that Northstar would move for leave to file a motion for

26  reconsideration of *Northstar VI*, and Defendants stated that Defendants would move for judgment

27                                                                    10

United States District Court
Northern District of California

1  on the pleadings. ECF No. 241. On October 15, 2015, Northstar filed its motion for leave to file

2  a motion for reconsideration. On November 4, 2015, Defendants filed their motion for judgment

3  on the pleadings. Northstar filed a response on November 18, 2015, and Defendants filed a reply

4  on November 25, 2015. *See* ECF No. 250 ("Opp'n"); ECF No. 251 ("Reply"). Finally, on

5  January 21, 2016, Northstar filed its motion for class certification. Defendants filed a response

6  on February 23, 2016. ECF No. 258. Northstar has not yet filed a reply.

7  **II.     LEGAL STANDARD**

8     **A.  Motion for Reconsideration**

9     Pursuant to Civil Local Rule 7–9(a), "[b]efore the entry of a judgment adjudicating all of

10 the claims and the rights and liabilities of all the parties in a case, any party may make a motion

11 before a Judge requesting that the Judge grant the party leave to file a motion for reconsideration

12 of any interlocutory order made by that Judge on any ground set forth in Civil L.R. 7–9(b). No

13 party may notice a motion for reconsideration without first obtaining leave of Court to file the

14 motion." Civil Local Rule 7-9(b) provides three grounds for reconsideration of an interlocutory

15 order:

16     (1)  That at the time of the motion for leave, a material difference in fact or
         law exists from that which was presented to the Court before entry of the
17       interlocutory order for which reconsideration is sought. The party also
         must show that in the exercise of reasonable diligence the party applying
18       for reconsideration did not know such fact or law at the time of the
         interlocutory order; or

19

20     (2)  The emergence of new material facts or a change of law occurring after
         the time of such order; or
21

22     (3)  A manifest failure by the Court to consider material facts or dispositive
         legal arguments which were presented to the Court before such
23       interlocutory order.

24

25     Civil Local Rule 7-9(c) further requires that "[n]o motion for leave to file a motion for

26 reconsideration may repeat any oral or written argument made by the applying party in support of

27                                                     11

28

United States District Court
Northern District of California

1    or in opposition to the interlocutory order which the party now seeks to have reconsidered."  In

2    general, motions for reconsideration should not be frequently made or freely granted.  *See*

3    *generally Twentieth Century–Fox Film Corp. v. Dunnahoo,* 637 F.2d 1338, 1341 (9th Cir. 1981).

4    **B.  Motion for Judgment on the Pleadings**

5        "After the pleadings are closed—but early enough not to delay trial—a party may move for

6    judgment on the pleadings."  Fed. R. Civ. P. 12(c).  "Judgment on the pleadings is properly

7    granted when, accepting all factual allegations in the complaint as true, there is no issue of

8    material fact in dispute, and the moving party is entitled to judgment as a matter of law."  *Chavez*

9    *v. United States*, 683 F.3d 1102, 1108 (9th Cir. 2012) (internal quotation marks and alteration

10   omitted).  Like a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a motion

11   under Rule 12(c) challenges the legal sufficiency of the claims asserted in the complaint.  *See id.*

12   Indeed, a Rule 12(c) motion is "functionally identical" to a Rule 12(b)(6) motion, and courts apply

13   the "same standard."  *Dworkin v. Hustler Magazine, Inc.*, 867 F.2d 1188, 1192 (9th Cir. 1989)

14   (explaining that the "principal difference" between Rule 12(b)(6) and Rule 12(c) "is the timing of

15   filing"); *see also U.S. ex rel. Cafasso v. Gen. Dynamics C4 Sys.*, 637 F.3d 1047, 1054 n.4 (9th Cir.

16   2011).

17       Judgment on the pleadings should thus be entered when a complaint does not plead

18   "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*,

19   550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual

20   content that allows the court to draw the reasonable inference that the defendant is liable for the

21   misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "The plausibility standard is

22   not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant

23   has acted unlawfully."  *Id.* (internal quotation marks omitted).  For purposes of ruling on a Rule

24   12(c) motion, the Court "accept[s] factual allegations in the complaint as true and construe[s] the

25   pleadings in the light most favorable to the nonmoving party."  *Manzarek v. St. Paul Fire &*

26   *Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).

United States District Court
Northern District of California

1       The Court, however, need not accept as true allegations contradicted by judicially

2   noticeable facts, *see Shwarz v. United States*, 234 F.3d 428, 435 (9th Cir. 2000), and it "may look

3   beyond the plaintiff's complaint to matters of public record" without converting the Rule 12(c)

4   motion into a motion for summary judgment, *Shaw v. Hahn*, 56 F.3d 1128, 1129 n.1 (9th Cir.

5   1995).  Nor must the Court "assume the truth of legal conclusions merely because they are cast in

6   the form of factual allegations."  *Fayer v. Vaughn*, 649 F.3d 1061, 1064 (9th Cir. 2011) (per

7   curiam) (internal quotation marks omitted).  Mere "conclusory allegations of law and unwarranted

8   inferences are insufficient" to defeat a motion for judgment on the pleadings.  *Adams v. Johnson*,

9   355 F.3d 1179, 1183 (9th Cir. 2004).

10  **C.  Leave to Amend**

11      If the Court determines that judgment on the pleadings is warranted, it must then decide

12  whether to grant leave to amend.  *See Harris v. Cnty. of Orange*, 682 F.3d 1126, 1131 (9th Cir.

13  2012) (affirming district court's dismissal under Rule 12(c) but reversing for failure to grant leave

14  to amend).  Under Rule 15(a) of the Federal Rules of Civil Procedure, leave to amend "shall be

15  freely given when justice so requires," bearing in mind "the underlying purpose of Rule 15 to

16  facilitate decisions on the merits, rather than on the pleadings or technicalities."  *Lopez v. Smith*,

17  203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (internal quotation marks and alteration omitted).

18  When granting judgment on the pleadings, "a district court should grant leave to amend even if no

19  request to amend the pleading was made, unless it determines that the pleading could not possibly

20  be cured by the allegation of other facts."  *Id.* at 1130 (internal quotation marks omitted).

21  Accordingly, leave to amend generally shall be denied only if allowing amendment would unduly

22  prejudice the opposing party, cause undue delay, or be futile, or if the moving party has acted in

23  bad faith.  *Leadsinger, Inc. v. BMG Music Publ'g*, 512 F.3d 522, 532 (9th Cir. 2008).  "[W]hen a

24  district court has already granted a plaintiff leave to amend, its discretion in deciding subsequent

25  motions to amend is particularly broad."  *Chodos v. W. Publ'g Co.*, 292 F.3d 992, 1003 (9th Cir.

26  2002) (internal quotation marks omitted).

27                                              13

United States District Court
Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## III.   DISCUSSION

### A.  SLUSA Preclusion

#### 1.  Causes of Action Dismissed in *Northstar VI*

In *Northstar VI*, the Court dismissed the following causes of action from the FAC, which were asserted on behalf of the Pre-Breach Class, after finding them to be precluded by SLUSA: (5) breach of contract as third party beneficiary to the IAA against the Advisor; (6) breach of contract against the Trust; and (7) breach of the covenant of good faith and fair dealing against the Trust and the Advisor.  Likewise, the Court dismissed the following causes of action from the FAC on behalf of the Breach Class, after finding them to be precluded by SLUSA: (12) breach of contract as third party beneficiary to the IAA against the Advisor; (13) breach of contract against the Trust; and (14) breach of the covenant of good faith and fair dealing against the Trust and the Advisor.

Northstar moves for reconsideration of the Court's decision to dismiss these causes of action pursuant to Civil Local Rule 7-9(b)(3).  *See* MFR at 1; Civ. L.R. 7-9(b)(3) (moving party must show "[a] manifest failure by the Court to consider material facts or dispositive legal arguments which were presented to the Court."). According to Northstar, this Court's order in *Northstar VI* is (a) "inconsistent with the clear and unequivocal language of SLUSA" and is (b) "inconsistent with the Ninth Circuit's *Northstar [V]* and *Freeman* decisions."  MFR at 3, 5.  The Court disagrees with Northstar's contentions, and addresses them in turn.

#### a.  Inconsistent with SLUSA

First, Northstar argues that it removed phrases such as "misrepresentation," "inform," and "relied on" from the FAC.  MFR at 3.  In taking these measures, Northstar contends that it removed its causes of action from SLUSA's purview, and that *Northstar VI* is therefore "inconsistent with the clear and unequivocal language of SLUSA."  *Id.*

SLUSA preclusion applies to "covered class action[s]" that "alleg[e] a misrepresentation or omission of a material fact in connection with the purchase or sale of a covered security."  15

14

1   U.S.C. § 78bb(f)(1)(A).  The Ninth Circuit has interpreted this provision to apply whenever

2   "deceptive statements or conduct form the gravamen or essence of the claim."  *Freeman Invs.,*

3   *L.P. v. Pac. Life Ins. Co.*, 704 F.3d 1110, 1115 (9th Cir. 2013).  "Because [courts must] look to the

4   substance of the allegations, plaintiffs cannot avoid preclusion through artful pleading that

5   removes the covered words but leaves in the covered concepts."  *Id.* (internal quotation marks and

6   alteration omitted).  "Were it otherwise, SLUSA enforcement would reduce to a formalistic search

7   through the pages of the complaint for magic words—'untrue statement,' 'material omission,'

8   'manipulative or deceptive device'—and nothing more."  *Id.* (internal quotation marks omitted).

9        Consistent with *Freeman*, every circuit court to have considered this issue has held that, in

10  order to determine whether or not SLUSA preclusion applies, district courts must review the

11  gravamen behind the allegations in a complaint, rather than the exact words used in the complaint.

12  *See, e.g.*, *Segal v. Fifth Third Bank, N.A.*, 581 F.3d 305, 310–11 (6th Cir. 2009) ("Courts . . . must

13  look to . . . the substance of a complaint's allegations in applying SLUSA. . . .  It is whether the

14  complaint covers the prohibited theories, no matter what words are used (or disclaimed) in

15  explaining them."); *Rowinski v. Salomon Smith Barney Inc.*, 398 F.3d 294, 300 (3d Cir. 2005)

16  ("[P]reemption does not turn on whether allegations are characterized as facts or as essential legal

17  elements of a claim, but rather on whether the SLUSA prerequisites are alleged in one form or

18  another.  A contrary approach, under which only essential legal elements of a state law claim

19  trigger preemption, is inconsistent with the plain meaning of the statute.").

20        In the instant case, the central theme in Northstar's numerous complaints is that

21  "[D]efendants made misrepresentations about how investments in the Fund would be managed,

22  that Plaintiffs purchased Fund shares relying on these misrepresentations, and that Plaintiffs were

23  injured when these statements turned out to be false."  *Northstar VI* at 29 (quoting *Northstar III* at

24  9–10).  Indeed, even though the FAC does not specifically use words such as "misrepresentation"

25  or "omission," the substantive allegations in the FAC nonetheless premise liability on a

26  misrepresentation or an omission of material fact.  As the Court pointed out in *Northstar VI*, for

                                        15

27  Case No. 08-CV-04119-LHK
28  ORDER DENYING MOTION FOR LEAVE TO FILE MOTION FOR RECONSIDERATION, GRANTING
    MOTION FOR JUDGMENT ON THE PLEADINGS, AND DENYING AS MOOT MOTION FOR CLASS
    CERTIFICATION

1    instance, the FAC states that "[i]t would make no sense if the Schwab Advisor were free to deviate

2    from the Fund's fundamental investment objectives during its management of the Fund." *Id.* at 30

3    (quoting FAC ¶ 166).  The Advisor did, however, deviate from these objectives.  *See, e.g.*, *id.* ¶¶ 7,

4    111–113, 121.  The Advisor thus represented to the Trust (and, ultimately, to shareholders) that

5    the Advisor would do one thing, but ended up doing another.  This, as the Court observed in

6    *Northstar VI*, was "a misrepresentation in the most classic sense."  *Northstar VI* at 30.  Thus,

7    Northstar's argument in its motion for reconsideration that Northstar removed words such as

8    "relied on" and "inform" from its pleadings is of no consequence.  The gravamen of Northstar's

9    allegations, from the Original Complaint to the FAC, have remained the same: that Defendants

10   misrepresented or omitted a material fact in their management of the Fund.  As this Court properly

11   determined in *Northstar VI*, such allegations are subject to SLUSA preclusion.

12                **b.  Inconsistent with *Northstar V* and *Freeman***

13         Northstar's contention that *Northstar VI* is inconsistent with *Northstar V* and *Freeman* is

14   also not well taken.  In *Northstar V*, the Ninth Circuit expressly declined to "reach the question of

15   whether *any* of Northstar's claims [we]re barred by SLUSA."  779 F.3d at 1050 (emphasis added).

16   Instead, the Ninth Circuit stated that the issue of "whether the allegations in [Northstar's

17   complaint] can survive under SLUSA" should be left for "[this Court] . . . to determine . . . in the

18   first instance."  *Id.*  There is thus no conflict between *Northstar V* and *Northstar VI*.  In *Northstar

19   V*, the Ninth Circuit did not consider arguments related to SLUSA preclusion, and instead left such

20   arguments for this Court to consider in *Northstar VI*.

21         Northstar's reliance on *Freeman* is likewise unavailing.  This Court discussed *Freeman* at

22   length in *Northstar VI*, and distinguished *Freeman* from the instant case.  *See Northstar VI* at 30

23   n.7.  As this Court noted, *Freeman* involved a dispute over the meaning of a specific contractual

24   term.  Plaintiffs in *Freeman* contended that a particular term should have been interpreted

25   according to certain industry standards, while defendant argued that the term should have been

26   interpreted based on other language in the insurance policy.  Thus, in order to "succeed on th[eir]

                                                16

27   Case No. 08-CV-04119-LHK

28   ORDER DENYING MOTION FOR LEAVE TO FILE MOTION FOR RECONSIDERATION, GRANTING
     MOTION FOR JUDGMENT ON THE PLEADINGS, AND DENYING AS MOOT MOTION FOR CLASS
     CERTIFICATION

United States District Court
Northern District of California

claim, plaintiffs need not show that [defendant] misrepresented the cost of insurance or omitted critical details.  They need only persuade the court that theirs is the better reading of [a] contract term." *Freeman*, 704 F.3d at 1115.

In the instant case, the parties do not dispute the meaning of the terms at issue.  There is no dispute that the Fund's investment objectives stated that Defendants would track the Lehman Index and that Defendants were not to concentrate more than 25% of the Fund's assets in any one industry.  The only issue is whether Defendants in fact deviated from these objectives.  If, as Northstar alleges, Defendants did deviate from the Fund's investment objectives, then Defendants committed a misrepresentation or omission of material fact.  Specifically, Defendants promised to manage the Fund one way, but ended up managing the Fund in a different way.

The Central District of California's recent decision in *Hampton v. Pacific Investment Management Company, LLC*, 2015 WL 7292128 (C.D. Cal. Nov. 2, 2015), lends further support to the Court's finding.  In *Hampton*, shareholders of a fund managed by defendants had been informed, via various prospectuses, that "up to 15% of [the fund's] assets" would be invested "in securities and instruments . . . tied to emerging market countries."  *Id.* at *1.  The parties referred to this limit as the "Cap" or the "15% Cap."  *Id.*  By September 2014, however, 23% of the fund's assets were being invested in emerging markets, thereby significantly exceeding the 15% Cap.  *Id.*  Accordingly, plaintiff brought suit against defendants and asserted "state law claims for breach of contract, breach of trust, breach of the covenant of good faith and fair dealing, and aiding and abetting."  *Id.* at *2.  Defendants, "arguing that each of [p]laintiff's claims [was] precluded by SLUSA," moved to dismiss.  *Id.*

The *Hampton* court granted defendants' motion to dismiss with prejudice.  In reaching this conclusion, the district court noted that "[d]efendants [had] promised to do one thing, ended up doing another thing, and in the process harmed [p]laintiff and other putative class members, who believed that the [d]efendants would keep their word."  *Id.* at *4.  "That," the district court observed, "is a misrepresentation claim."  *Id.*

17

1    The *Hampton* court went on to discuss and distinguish *Hampton* from *Freeman*.  As the

2    *Hampton* court explained, the *Freeman* plaintiffs could have prevailed on their contract claim

3    without needing to show that the defendant misrepresented or omitted relevant material

4    information.  "By contrast, here each of [p]laintiff's claims turns on whether or not representations

5    made by [d]efendants—namely, that they would not exceed the 15% Cap—were true or not."  *Id.*

6    Thus, plaintiff "may not prevail on any of his claims without a showing of a misrepresentation."

7    *Id.*; *see also id.* at *5 ("In short, [p]laintiff's claims all rise and fall with his allegation that

8    [d]efendants made an important misrepresentation about how the Fund would invest their money.

9    That is precisely the sort of claim SLUSA was intended to preclude in order to give the PLSRA

10   procedural requirements teeth.").

11   In sum, when presented with a substantially similar set of facts, the *Hampton* court found

12   *Freeman* distinguishable, and determined that claims based on a failure to follow certain

13   investment objectives were precluded by SLUSA.  Consistent with the reasoning in *Hampton* and

14   for the reasons stated above, the Court finds that *Northstar VI* was not inconsistent with the Ninth

15   Circuit's decisions in *Northstar V* and in *Freeman*.

16   Accordingly, the Court finds that Northstar has not demonstrated "[a] manifest failure by

17   the Court to consider material facts or dispositive legal arguments which were presented to the

18   Court," as required for motions for leave to file a motion for reconsideration.  Civ. L.R. 9-3(b).

19   Accordingly, Northstar's motion for leave to file a motion for reconsideration is therefore

20   DENIED.[5]

21

22   [5] Northstar also contends that *Northstar VI* is inconsistent with the ICA.  MFR at 8.  As noted
     above, in *Northstar I*, Judge Illston determined that § 13(a) of the ICA provided an implied private
23   right of action, and that Northstar had properly stated a cause of action under this section.  In
     *Northstar II*, the Ninth Circuit reversed Judge Illston's determination, with the Ninth Circuit
24   holding that "[n]either the language of § 13(a), the structure of the ICA, nor the statute's
     legislative history . . . reflect any congressional intent to create, or recognize a previously
25   established, private right of action to enforce § 13(a)."  615 F.3d at 1122.  In light of the Ninth
     Circuit's decision in *Northstar II*, Northstar did not assert an ICA claim in the SAC, TAC, or
26   FAC, and neither this Court nor the Ninth Circuit examined the ICA in *Northstar III*, *Northstar IV*,
     *Northstar V*, or *Northstar VI*.  Accordingly, *Northstar VI* does not conflict with the ICA.

27                                                                                      18

28

United States District Court
Northern District of California

United States District Court
Northern District of California

### 2. Causes of Action Not Dismissed in *Northstar VI*

#### a. Northstar's Fiduciary Duty Claims are Subject to SLUSA Preclusion

The following causes of action from the FAC, which were asserted on behalf of the Pre-Breach Class, survived dismissal in *Northstar VI*: (1) breach of fiduciary duty against the Trustees; (2) breach of fiduciary duty against the Advisor; (3) aiding and abetting breach of fiduciary duty against the Trustees; and (4) aiding and abetting breach of fiduciary against the Advisor.  In addition, the following causes of action, which were asserted on behalf of the Breach Class, also survived dismissal in *Northstar VI*: (8) breach of fiduciary duty against the Trustees;[6] (9) breach of fiduciary duty against the Advisor; (10) aiding and abetting breach of fiduciary duty against the Trustees; and (11) aiding and abetting breach of fiduciary against the Advisor.  For purposes of simplicity, the Court refers to these causes of action collectively as Northstar's "fiduciary duty" claims.

Defendants attempted to assert SLUSA preclusion as to Northstar's fiduciary duty claims in moving to dismiss the FAC.  However, Defendants were precluded from asserting this defense because Defendants did not move to dismiss Northstar's fiduciary duty claims in the TAC on the basis of SLUSA preclusion.  Federal Rule of Civil Procedure 12(g)(2) provides that, "a party that makes a motion under [Federal Rule of Civil Procedure 12] must not make another motion under [Federal Rule of Civil Procedure 12] raising a defense or objection that was available to the party but omitted from its earlier motion," except "as provided in [Federal Rule of Civil Procedure] 12(h)(2) or (3)."  Fed. R. Civ. P. 12(g)(2).  Thus, pursuant to Federal Rule of Civil Procedure 12(g)(2), the Court concluded in *Northstar VI* that Defendants were foreclosed from asserting a SLUSA preclusion defense as to Northstar's fiduciary duty claims in moving to dismiss the FAC. However, the Court in *Northstar VI* noted that, pursuant to Federal Rule of Civil Procedure 12(h)(2), Defendants may re-raise a previously abandoned defense in a motion for judgment on

---

[6] In the FAC, Northstar asserted, in the first and eighth causes of action, a breach of fiduciary duty claim against both the Trust and the Trustees.  However, in *Northstar VI*, the Court dismissed with prejudice Northstar's breach of fiduciary duty claim against the Trust.  *Northstar VI* at 18.

19

United States District Court
Northern District of California

1   the pleadings.  *See* Fed. R. Civ. P. 12(h)(2) ("Failure to state a claim upon which relief can be

2   granted . . . may be raised . . . by a motion under [Federal Rule of Civil Procedure] 12(c).").  In

3   moving for judgment on the pleadings, Defendants argue that Northstar's fiduciary duty claims are

4   subject to SLUSA preclusion, and the Court must now consider Defendants' SLUSA preclusion

5   defense on the merits.

6        As the Court previously noted in *Northstar VI*, "SLUSA bars private plaintiffs from

7   bringing (1) a covered class action (2) based on state law claims (3) alleging that defendant made a

8   misrepresentation or omission or employed any manipulative or deceptive device (4) in connection

9   with the purchase or sale of (5) a covered security."  *Northstar VI* at 27 (citing *Freeman*, 704 F.3d

10  at 1114).  Of these requirements, "Northstar does not dispute that the instant action constitutes a

11  covered class action, that shares in the Fund are covered securities, that Plaintiff's claims are

12  based entirely on the common or statutory law of a state, and that the class action is 'in connection

13  with the purchase or sale' of a covered security."  *See Northstar VI* at 29; *see also* Opp'n at 1.[7]

14  Thus, the only requirement at issue is whether Northstar's fiduciary duty claims "are based on [an]

15  alleged misrepresentation[] or omission[]."  MJP at 4.

16       As the Court explained in *Northstar VI*, the central theme in Northstar's five complaints is

17  that Defendants committed a misrepresentation or omission of material fact because Defendants

18  promised to manage the Fund according to certain fundamental investment objectives, but did not

19  actually do so.  This theme applies with equal force to Northstar's fiduciary duty claims.  Indeed,

20  in opposing Defendants' motion for judgment on the pleadings, Northstar has itself described "the

21  gravamen of [its]'s breach of fiduciary duty claims [as] requir[ing] proof . . . that defendants

22  _____

23  [7] Federal law also provides an exception to SLUSA preclusion, known as the Delaware carve-out.
    Northstar, however, has declined to assert "arguments addressed to the applicability of the

24  Delaware carve-out" in response to Defendants' motion for judgment on the pleadings.  Opp'n at 2
    n.1.  As Northstar acknowledges, Northstar's "arguments were previously made in [Northstar]'s

25  Memorandum In Opposition to Defendants' Motion to Dismiss [the FAC,] . . . and [were] rejected
    by this Court in *Northstar VI*."  *Id.* (citation omitted).  In light of Northstar's position, the Court

26  does not undertake a Delaware carve-out analysis in this Order.  However, such an analysis may
    be found in the Court's discussion on pages 36 through 39 of *Northstar VI*.  *Northstar VI* at 36–39.

27

    Case No. 08-CV-04119-LHK

28  ORDER DENYING MOTION FOR LEAVE TO FILE MOTION FOR RECONSIDERATION, GRANTING
    MOTION FOR JUDGMENT ON THE PLEADINGS, AND DENYING AS MOOT MOTION FOR CLASS
    CERTIFICATION

1    Charles Schwab Investment Management, Inc. (the 'Advisor') and the trustees of Schwab

2    Investments (the 'Trustees') breached their fiduciary duties to adhere to the Schwab Total Bond

3    Fund (the 'Fund')'s fundamental investment objectives (i) to track the Lehman Brothers

4    Aggregate Bond Index (the '[Lehman] Index') and (ii) not concentrate in excess of 25% of its

5    assets in any one industry."  Opp'n at 1.  Thus, for the same reasons outlined in *Northstar VI* and

6    reiterated above with regard to Northstar's motion for leave to file a motion for reconsideration,

7    Northstar's fiduciary duty claims are also subject to SLUSA preclusion.

8          Moreover, in addition to the reasoning in *Northstar VI* and the reasoning above, several

9    other factors counsel in favor of finding Northstar's fiduciary duty claims precluded by SLUSA.

10   First, the allegations in the FAC describe the Trustees' fiduciary duty as follows: "The Schwab

11   Trustees . . . understood that the Fund's shareholders were reliant on them for the operation of the

12   Fund and for the discharge of the Fund's *fundamental investment objectives and policies*."  FAC ¶

13   129 (emphasis added).  Similarly, the FAC describes the Advisor's fiduciary duty as follows:

14   "[T]he Schwab Advisor was given, accepted and had delegated responsibility for the investment

15   and preservation of the property of Schwab Investments, including to invest the Trust's property . .

16   . in accordance with the Fund's stated *fundamental investment objectives and policies*."  *Id.* ¶ 138

17   (emphasis added).  Finally, Northstar's aiding and abetting claims allege that the Trustees assisted

18   the Advisor in deviating from the Fund's investment objectives, and vice versa.  *See, e.g.*, *id.* ¶

19   148 ("[The] Trustees knew of such breaches and actively participated in, rendered substantial

20   assistance to, or encouraged such breaches of fiduciary duty by the Schwab Advisor, by enabling

21   the Schwab Advisor to invest in assets that did not track the [Lehman] Index."); *id.* ¶ 154 ("[The]

22   Advisor knew of such breaches and actively participated in, rendered substantial assistance to, or

23   encouraged such breaches of fiduciary duty by the Schwab Trustees, by maintaining investments

24   in securities that did not track the [Lehman] Index.").

25          Thus, based upon the allegations in the FAC, all of Northstar's fiduciary duty claims arise

26   out of the fact (1) that Defendants represented that the Fund's assets would be invested according

27                                                    21

28

United States District Court
Northern District of California

to certain fundamental investment objectives, (2) that shareholders relied upon these representations, and (3) that Defendants did not invest in accordance with these representations. As the Court observed in *Northstar VI*, such claims constitute "a misrepresentation in the most classic sense:" the Advisor and Trustees represented to shareholders that they would do one thing, but ended up doing another. *See, e.g.*, *Northstar VI* at 30.

Second, as noted above, Northstar's own opposition to Defendants' motion for judgment on the pleadings describes "the gravamen of [Northstar]'s breach of fiduciary duty claims [as] requir[ing] proof . . . that defendants Charles Schwab Investment Management, Inc. (the 'Advisor') and the trustees of Schwab Investments (the 'Trustees') breached their fiduciary duties to adhere to the Schwab Total Bond Fund (the 'Fund')'s fundamental investment objectives (i) to track the Lehman Brothers Aggregate Bond Index (the [Lehman] 'Index') and (ii) not concentrate in excess of 25% of its assets in any one industry." Opp'n at 1. Thus, under Northstar's own theory of the case, Defendants owed shareholders a fiduciary duty to execute specific investment objectives—to track the Lehman Index and to avoid concentrating more than 25% of the Fund's assets in any one industry. In order to show breach of Defendants' fiduciary duty, Northstar must show that these investment objectives were not followed. Such a showing would necessarily implicate a material misrepresentation or omission: Defendants had a duty to invest the Fund's assets in a particular manner, which Defendants allegedly did not do, to the harm of shareholders who "relie[d] on [Defendants] for the operation of the Fund and for the discharge of the Fund's fundamental investment objectives and policies." FAC ¶ 129.

Third, at the October 16, 2015 case management conference, counsel for Northstar described Northstar's "breach of fiduciary [duty] claim[s] . . . [as] essentially the same claim as [Northstar's] breach of contract claims." ECF No. 246 at 11–12. According to counsel, Northstar's breach of fiduciary duty claims are "just pled somewhat differently because it's based on the conduct and in enforcing the contract rather than the contract itself." *Id.* at 12. Northstar has thus acknowledged that its breach of fiduciary duty claims are essentially the same as its

22

United States District Court
Northern District of California

1    breach of contract claims—the very same breach of contract claims that were dismissed in

2    *Northstar VI* because they were found to be subject to SLUSA preclusion.  *See Northstar VI* at 40.

3        As a final point, Northstar alleges that the Advisor aided and abetted the Trustees' breach

4    of fiduciary duty and that the Trustees aided and abetted the Advisor's breach of fiduciary duty.

5    However, neither the Advisor nor the Trustees can "be held liable . . . as an aider and abettor"

6    unless Northstar can establish that "the underlying tort alleged here, i.e., breach of fiduciary duty"

7    was "committed."  *Richard B. LeVine, Inc. v. Higashi*, 32 Cal. Rptr. 3d 244, 250 (Ct. App. 2005).

8    As the *Higashi* court explained, "[t]he unifying principle under[lying] . . . aiding and abetting

9    [liability], is that [the aider or abettor's] liability depends upon the actual commission of a tort."

10   *Id.*  In other words, the Advisor and the Trustees may be held liable for aiding and abetting only if

11   Northstar can bring a viable breach of fiduciary duty claim.  Here, because Northstar's breach of

12   fiduciary duty claims are precluded by SLUSA, Northstar's aiding and abetting breach of fiduciary

13   duty claims must also fail.

14   **b.  Northstar's Contentions to the Contrary are Unavailing**

15       In response to Defendants' arguments, Northstar contends (1) that the Ninth Circuit and

16   this Court have already sustained Northstar's breach of fiduciary duty claims in *Northstar V* and

17   *Northstar VI*, respectively; and (2) that Northstar's breach of fiduciary duty claims do not require

18   Northstar to allege or prove a material misrepresentation or omission.  The Court briefly examines

19   these contentions in turn.

20       First, as noted above, the Ninth Circuit declined to "reach the question of whether *any* of

21   Northstar's claims [we]re barred by SLUSA" in *Northstar V*.  779 F.3d at 1050 (emphasis added).

22   Likewise, as noted above, this Court could not, pursuant to Federal Rule of Civil Procedure

23   12(g)(2), consider Defendants' SLUSA preclusion defense with respect to Northstar's breach of

24   fiduciary duty claims in *Northstar VI*.  Thus, in both *Northstar V* and *Northstar VI*, neither the

25   Ninth Circuit nor this Court sustained Northstar's fiduciary duty claims as neither the Ninth

26   Circuit nor this Court had opportunity to address Defendants' SLUSA preclusion defense on the

27                                              23

28

merits.

Second, Northstar argues that its "breach of a fiduciary duty [claim] . . . does not require allegations or proof of a material misrepresentation or omission."  Opp'n at 2; *see also id.* (reciting elements of a breach of fiduciary duty claim).  This fact, Northstar contends, removes its fiduciary duty claims from SLUSA's purview.

The Ninth Circuit has considered and rejected this argument.  In *Proctor v. Vishay Intertechnology Inc.*, 584 F.3d 1208, 1222 n.13 (9th Cir. 2009), the Ninth Circuit specifically observed that a "[m]isrepresentation need not be a specific element of the claim to fall within [SLUSA's] preclusion."  In reaching this determination, the Ninth Circuit relied upon supporting case law from the Third, Fifth, Sixth, and Eighth Circuits.  *Id.*  As the *Proctor* court further observed, allegations of a material misrepresentation need only serve as the factual predicate of a state law claim in order to satisfy SLUSA's "misrepresentation" or "omission" prong.  *Id.*  Here, a material misrepresentation or omission clearly serves as the factual predicate to Northstar's fiduciary duty claims.  In order to prove that Defendants breached their fiduciary duties, Northstar must demonstrate that Defendants promised to invest the Fund's assets in accordance with certain specific objectives and that Defendants deviated from these objectives.

None of the cases cited by Northstar compel a different result.  Northstar, for instance, cites the U.S. Supreme Court's decision in *Chadbourne & Parke LLP v. Troice*, 134 S. Ct. 1058 (2014).  According to Northstar, *Chadbourne* instructs federal courts to interpret SLUSA narrowly, in contrast to the U.S. Supreme Court's earlier decision in *Merrill Lynch, Pierce, Fenner & Smith Inc. v. Dabit*, 547 U.S. 71, 85–86 (2006), which instructed federal courts to construe SLUSA broadly.  In *Dabit*, for instance, the U.S. Supreme Court stated that "[t]he presumption that Congress envisioned a broad construction follows not only from ordinary principles of statutory construction but also from the particular concerns that culminated in SLUSA's enactment."  *Id.* at 86.

Northstar's reliance on *Chadbourne* is misplaced.  In *Chadbourne*, the U.S. Supreme Court

United States District Court
Northern District of California

stated only that SLUSA's "covered security" requirement should be read narrowly.  Specifically, the question before the U.S. Supreme Court in *Chadbourne* was "whether [SLUSA] encompasses a class action in which [] plaintiffs allege (1) that they purchased *uncovered* securities . . ., but (2) that [] defendants falsely told the victims that the *uncovered* securities were backed by *covered* securities." 134 S. Ct. at 1062 (internal quotation marks and alterations omitted).  As noted above, SLUSA does not apply to uncovered securities, and the U.S. Supreme Court held in *Chadbourne* that the covered security requirement should be construed narrowly.  *Id.* at 1066.  Moreover, to reinforce the fact that *Chadbourne* sought only to construe the covered security requirement narrowly, and not any other part of SLUSA, the *Chadbourne* Court specifically stated that "[w]e do not here modify *Dabit*," *id.* at 1066, which held that SLUSA as a whole should be construed broadly,  because *Dabit*—like the instant case—concerned covered securities.

Northstar's reliance on *Beckett v. Mellon Investor Services LLC*, 329 F. App'x 721 (9th Cir. 2009), is likewise inapposite.  In *Beckett*, the district court dismissed plaintiff's complaint with prejudice upon finding all of plaintiff's claims preempted by SLUSA.  *Id.* at 722.  The Ninth Circuit agreed with the district court's finding, and noted that all of plaintiff's claims "to some extent rely on the allegation that [defendant] did not disclose its fees; they are all therefore based on allegations of omission and are prohibited by SLUSA."  *Id.* at 723.

The Ninth Circuit nonetheless remanded *Beckett* to the district court because it determined that the plaintiff "could amend his class complaint to allege claims . . . not preempted" by SLUSA. *Id.*  Specifically, "plaintiff . . . claims [that defendant] excessively delayed in selling stock and failed to pay him and other class members the proper value of their shares."  *Id.*  Plaintiff did "not allege that [defendant] made any statements regarding these actions or that some material fact relating to them was omitted."  *Id.*  Thus, the Ninth Circuit determined that plaintiff "could conceivably allege a breach of contract class claim [with respect to these actions] that was not preempted."  *Id.*

Here, unlike *Beckett*, Northstar's fiduciary duty claims have hinged upon and continue to

25

United States District Court
Northern District of California

United States District Court
Northern District of California

1   hinge upon the same material misrepresentation or omission, even though Northstar has now filed

2   five complaints.  Specifically, Defendants represented, pursuant to a shareholder vote, that the

3   Fund would track the Lehman Index and that no more than 25% of the Fund's assets would be

4   concentrated in any one industry.  These representations were memorialized in a proxy statement

5   and in various other documents.  *See, e.g.*, *Northstar VI* at 26.  At some point, Defendants

6   allegedly breached their fiduciary duty to shareholders by deviating from these representations.

7   Thus, unlike in *Beckett*, Northstar has not alleged that Defendants owed shareholders a fiduciary

8   duty separate and apart from the material misrepresentations or omissions at issue.

9        Finally, neither *Falkowski v. Imation Corp.*, 309 F.3d 1123 (9th Cir. 2002), nor *In re*

10  *Kingate Management Ltd. Litigation*, 784 F.3d 128 (2d Cir. 2015), supports Northstar's position.

11  As Northstar acknowledges, the *Falkowski* court simply held that breach of contract claims which

12  are "garden variety state law claims" are not preempted by SLUSA.  309 F.3d at 1131–32.  The

13  holding in *Falkowski* is thus no different from the holding in *Freeman*: both cases involved breach

14  of contract claims which did not implicate a material misrepresentation or omission.  In *In re*

15  *Kingate*, the Second Circuit found certain claims not subject to SLUSA preclusion because these

16  claims "d[id] not require a showing of false conduct on the part of Defendants."  784 F.3d at 152.

17  However, in the instant case, Northstar's fiduciary duty claims would require such a showing.  As

18  the Court has explained, in order to prevail on its claims, Northstar would need to show that

19  Defendants promised to do one thing, but ended up doing another.  *See also Hampton*, 2015 WL

20  7292128, *5 (applying same reasoning).

21       Accordingly, the Court GRANTS Defendants' motion for judgment on the pleadings.  The

22  Court therefore dismisses the following eight causes of action from the FAC: breach of fiduciary

23  duty against the Trustees (first and eighth causes of action); breach of fiduciary duty against the

24  Advisor (second and ninth causes of action); aiding and abetting breach of fiduciary duty against

25  the Trustees (third and tenth causes of action); and aiding and abetting breach of fiduciary against

26  the Advisor (fourth and eleventh causes of action).

27

28

United States District Court
Northern District of California

### 3. Leave to Amend

In addition, the Court denies Northstar leave to amend. Although Northstar has filed five complaints, the thrust of Northstar's various causes of action—as Northstar itself acknowledges— have remained the same: that "Defendants breached their fiduciary duties to adhere to the Schwab Total Bond Fund's fundamental investment objectives (i) to track the Lehman Brothers Aggregate Bond Index and (ii) not concentrate in excess of 25% of its assets in any one industry." Opp'n at 1 (parentheticals removed).

By way of illustration, in the Original Complaint, filed in August 2008, Northstar stated that "[t]he Fund deviated from its stated investment objective by investing in high risk non-U.S. agency collateralized mortgage obligations ('CMOs'). The non-U.S. agency CMOs were not part of the Lehman Index. . . . The Fund also deviated from its stated fundamental investment objective by investing more than 25% of its total assets in U.S. agency and non-agency mortgage-backed securities and CMOs." Compl. ¶¶ 3–4; id. ¶ 88 (incorporating above allegations into breach of fiduciary duty claim).

In the First Amended Complaint, filed in March 2009, Northstar once again stated that "[t]he Fund deviated from its stated investment objective by investing in high risk non-U.S. agency collateralized mortgage obligations ('CMOs'). The non-U.S. agency CMOs were not part of the Lehman Index. . . . The Fund also deviated from its stated fundamental investment objective by investing more than 25% of its total assets in U.S. agency and non-agency mortgage-backed securities and CMOs." ECF No. 75 ¶¶ 3–4. Northstar also described Defendants as "ow[ing] Class members a fiduciary duty to manage the Fund's assets with the care and prudence of a professional in like circumstances and *to adhere to the Fund's investment objective and policies.*" *Id.* ¶ 105 (emphasis added).

In the Second Amended Complaint, filed in September 2010, Northstar again alleged that "[t]he Fund deviated from its stated investment objective by investing in high risk non-U.S. agency collateralized mortgage obligations ('CMOs'). The non-U.S. agency CMOs were not part

27

Case No. 08-CV-04119-LHK
ORDER DENYING MOTION FOR LEAVE TO FILE MOTION FOR RECONSIDERATION, GRANTING MOTION FOR JUDGMENT ON THE PLEADINGS, AND DENYING AS MOOT MOTION FOR CLASS CERTIFICATION

of the Lehman Index. . . .  The Fund also deviated from its stated fundamental investment objective by investing more than 25% of its total assets in U.S. agency and non-agency mortgage-backed securities and CMOs."  SAC ¶¶ 3–4.  Northstar also stated that Defendants had "breached their fiduciary duties to [P]laintiff and the members of the Class by the acts and omissions set forth above in violation of the shareholders' voting rights and the Fund's stated investment objectives."  *Id.* ¶ 134.

In the Third Amended Complaint, filed in March 2011, Northstar stated that "Defendants, acting in breach of their fiduciary duties and in violation of shareholders' rights, caused the Fund to deviate from the Fund's fundamental investment objective to seek to track the investment results of the Lehman Brothers U.S. Aggregate Bond Index."  TAC ¶ 4 (internal quotation marks omitted).  Once again, Northstar emphasized that Defendants had deviated from the Fund's fundamental investment objectives by purchasing high risk non-U.S. agency CMOs and by investing more than 25% of total Fund assets into such CMOs.  *Id.* ¶¶ 5–6.

Finally, in the Fourth Amended Complaint, filed in June 2015, Northstar states that "[D]efendants, acting in breach of their fiduciary duties and in violation of shareholders' contractual rights, caused the Fund to deviate from the Fund's fundamental investment objective to seek to track the investment results of the Lehman Brothers U.S. Aggregate Bond Index."  FAC ¶ 4 (internal quotation marks omitted).  Once again, Northstar emphasizes that Defendants had deviated from the Fund's fundamental investment objectives by purchasing high risk non-U.S. agency CMOs and by investing more than 25% of the Fund's assets into such CMOs.  *Id.* ¶¶ 5–6.

To summarize, over five successive complaints, Northstar's fiduciary duty claims have hinged upon and continue to hinge upon the same misrepresentation or omission of material fact.  "[W]hen a district court has already granted a plaintiff leave to amend, its discretion in deciding subsequent motions to amend is particularly broad."  *Chodos*, 292 F.3d at 1003 (internal quotation marks omitted).  Here, in light of the circumstances recited above, the Court finds that providing Northstar additional leave to amend would be futile.  *See Bonin v. Calderon,* 59 F.3d 815, 845 (9th

Case No. 08-CV-04119-LHK
ORDER DENYING MOTION FOR LEAVE TO FILE MOTION FOR RECONSIDERATION, GRANTING
MOTION FOR JUDGMENT ON THE PLEADINGS, AND DENYING AS MOOT MOTION FOR CLASS
CERTIFICATION

United States District Court
Northern District of California

1 Cir. 1995) ("Futility of amendment can, by itself, justify the denial of a motion for leave to

2 amend."). Accordingly, Defendants' motion for judgment on the pleadings is GRANTED with

3 prejudice.

4     **B. Motion for Class Certification**

5     Given the Court's decision to deny Northstar's motion for reconsideration and to grant

6 Defendants' motion for judgment on the pleadings, Northstar's motion for class certification is

7 moot. Accordingly, Northstar's motion for class certification is DENIED AS MOOT.

8 **IV. CONCLUSION**

9     For the foregoing reasons, Northstar's motion for leave to file a motion for reconsideration

10 is DENIED, Defendants' motion for judgment on the pleadings is GRANTED with prejudice, and

11 Northstar's motion for class certification is DENIED as moot. The Clerk shall close the file.

12 **IT IS SO ORDERED.**

13 Dated: February 23, 2016

14                *Lucy H. Koh*

15                LUCY H. KOH
               United States District Judge

Case No. 08-CV-04119-LHK
ORDER DENYING MOTION FOR LEAVE TO FILE MOTION FOR RECONSIDERATION, GRANTING
MOTION FOR JUDGMENT ON THE PLEADINGS, AND DENYING AS MOOT MOTION FOR CLASS
CERTIFICATION